UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; HERBERT ANTHONY GREEN; KHADAFY MANNING; QUINNETTA MANNING; MARVIN MCFIELD; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and MADISON COUNTY SHERIFF'S DEPUTIES JOHN DOES #1 through #6, in their individual capacities, <br><br> Defendants. | Civil Action No. 3:17-cv-00347-WHB-LRA |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF UNREDACTED DOCUMENTS**

In accordance with the Court's instructions on the telephonic conference held on October 17, 2017 and the Minute Entry entered by the Court on that same date, Plaintiffs respectfully submit this Memorandum of Law in support of Plaintiffs' Motion under Fed. R. Civ. P. 37 to compel production of certain documents Defendants refuse to produce in unredacted form based on alleged confidentiality considerations which, Defendants incorrectly assert, cannot be adequately addressed through the Protective Order agreed to by the parties and entered by the Court in this action.[1]

---

[1] The parties have resolved the other discovery dispute raised on the October 17, 2017 telephonic conference, which concerned Defendants' refusal to produce pre-2012 documents or to permit questioning of Defendants' witnesses regarding pre-2012 events.

# INTRODUCTION

This dispute concerns Defendants' refusal to produce unredacted records of law enforcement activities captured by Defendants' computer aided dispatch system ("CAD Reports"). Defendants contend that they are entitled to redact the street addresses at which these law enforcement activities occurred because "many of those addresses could be used to identify innocent victims and witnesses" and Defendants "do not believe it is worthwhile to take the time to distinguish between those that threaten privacy and those that do not." Defendants' position is untenable, and this Court should issue an order compelling Defendants to produce all CAD Reports for the period January 1, 2012 to the present in complete and unredacted form. Defendants have not explained (and cannot explain) why any legitimate privacy concerns could not be addressed through the Protective Order that has been entered in this action. Defendants also have not asserted any privilege or identified any provision of state or federal law that would either entitle or require Defendants to withhold this information, or otherwise articulated any basis for deviating from the general rule that non-privileged information contained in responsive documents cannot be redacted. Finally, Defendants have previously made substantial productions of unredacted CAD Reports, including street addresses, in response to pre-litigation public records requests by the ACLU of Mississippi. In so doing, Defendants have waived any argument that this information can be withheld from production.

For these reasons, and as set forth in greater detail herein, Plaintiffs' Motion to Compel should be granted.

# BACKGROUND

Plaintiffs commenced this class action litigation on May 8, 2017. Plaintiffs bring civil rights claims under 42 U.S.C. §§ 1983 and 2000d, and generally allege that the Madison County Sheriff's Department ("MCSD") engages in rampant unconstitutional policing practices that

2

violate the Fourth Amendment's proscriptions of unreasonable searches and seizures and the Fourteenth Amendment's prohibition against discrimination on the basis of race. Defendants answered the Complaint on June 29, 2017, and the parties are currently engaged in class certification discovery, which is currently scheduled to conclude on January 16, 2018.

The CAD Reports at issue were expressly requested in Plaintiffs' First Set of Requests for Production of Documents (Aug. 2, 2017), which define the term "document" to include "computer-aided dispatch ('CAD') reports" (Definition 8) and request all documents concerning "roadblock[s]" and "checkpoint[s]" (RFP 3), "searches" (RFP 4), "entry of MCSD personnel into any home" (RFP 5), "traffic stops" (RFP 6), "pedestrian stops" (RFP 7), the "scope of the MCSD's jurisdiction and authority over each municipality and incorporated area in Madison County" (RFP 1), and the "resources dedicated by the MCSD to policing each separate municipality and unincorporated area" (*id.*).[2] Beyond stating that their production of certain materials would be made "[s]ubject to the entry of a protective order," Defendants' September 1, 2017 Responses & Objections to these document requests did not specifically object to production of complete, unredacted CAD Reports on the basis of confidentiality and/or privacy concerns. This objection was subsequently articulated by Defendants on telephonic meet and confers between the parties, and was memorialized in an October 12, 2017 letter from Defendants' counsel, which stated that in any production of CAD Reports, other than CAD Reports solely relating to traffic stops,

> [Defendants] would delete the address column, because many of those addresses could be used to identify innocent victims and witnesses; we do not believe it is worthwhile to take the time to distinguish between those that threaten privacy and those that do

---

[2] CAD Reports are also responsive to Plaintiffs' Second Set of Requests for Production of Documents.

3

> not, so we would simply delete them all. We would produce the column that identifies the city. …

Oct. 12, 2017 Letter from Defendants. Defendants also claimed in this letter that "[t]he production of any such chronological statistical report would necessarily contain many incidents that are totally irrelevant to this litigation," and "reserve[d] the right to object that any particular incidents are not relevant and therefore not subject to discovery." *Id.*

The Court held a telephonic conference on October 17, 2017 to address Defendants' refusal to produce unredacted CAD Reports, as well as another discovery dispute that has since been resolved consensually. Following further discussions, Defendants confirmed by email on October 20, 2017 that "the parties have reached an impasse on the CAD (statistical reports) issue and Judge Anderson will have to address that dispute by way of motion briefing."[3]

## ARGUMENT

The Federal Rules of Civil Procedure authorize discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Federal Rules are construed broadly and liberally in favor of discovery. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("The deposition-discovery rules are to be accorded a broad and liberal treatment."). Moreover, "[f]ederal policy favors broad discovery in civil rights actions" such as this, and "the 'normally predominant principle of utilizing all rational means for ascertaining truth' ... is at its strongest in civil-rights cases." *Dunn v. Dunn*, No. 2:14CV601-MHT, 2016 WL 4127769, at *5 (M.D. Ala. Aug. 2, 2016).

---

[3] In that same email, Defendants "agree[d] to produce the un-redacted CAD data (statistical reports) for the traffic stop category of incidents as soon as feasible" This motion therefore concerns CAD Reports relating to all categories of reported law enforcement activity other than traffic stops.

4

## I. THE CAD REPORTS, INCLUDING ASSOCIATED STREET ADDRESSES, ARE RELEVANT AND MUST BE PRODUCED

Since "the mid-1980s, virtually every medium and large-size police department [has] recorded activities of its patrol officers through CAD applications." TOM MCEWEN, COMPUTER AIDED DISPATCH IN SUPPORT OF COMMUNITY POLICING 18 (2002). CAD Reports contain lists of law enforcement activities conducted by a law enforcement agency, including their location, time, date, and duration, the category of activity (*e.g.*, "traffic stop" or "suspicious activity"), and their outcomes (*e.g.*, "arrest made" or "report filed"). CAD Reports and similar materials that aggregate data on policing activities are basic discovery in civil rights litigation over policing practices, and Defendants do not contend that the CAD Reports are themselves irrelevant or nonresponsive. *See, e.g.*, *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 305 (5th Cir. 1973) ("In the problem of racial discrimination, statistics often tell much, and Courts listen."); POLICE MISCONDUCT: LAW AND LITIGATION § 8:2 ("[C]ases consistently require production of the information gathered in police investigations of alleged criminal activity and have repeatedly held that § 1983 claims require complete and generous discovery.").

In this action, Plaintiffs allege that Defendants, as a matter of policy, engage in policing practices that unlawfully discriminate against Black persons in Madison County, including by targeting Black neighborhoods and majority-Black apartment complexes within Madison County with aggressive, suspicionless stops, searches, and detentions. The information Defendants are refusing to produce—the street addresses at which particular law enforcement encounters took place—is highly relevant to Plaintiffs' analysis of Defendants' overall patterns of policing in Madison County and to Plaintiffs' collection of evidence regarding the unconstitutional policing policies at issue, both for purposes of class certification and for the merits phase of this case. Defendants have not claimed that any undue burden would result from producing the CAD

5

Reports materials in unredacted form, and such a production would simply involve an electronic export of the data from Defendants' CAD system into a spreadsheet or similar document. Because the CAD Reports are plainly relevant, responsive, and non-privileged; are readily available within Defendants' possession, custody, and/or control; and can be produced without any undue burden, this Court should enter an order compelling their production.

## II. THE CAD REPORTS' STREET ADDRESS DATA MUST BE PRODUCED IN UNREDACTED FORM

It is well-established that "Defendants cannot properly redact nonprivileged information from any responsive document." *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-CV-2498-B, 2016 WL 98603, at *7 (N.D. Tex. Jan. 8, 2016); *see also, e.g.*, *Bonnell v. Carnival Corporation*, 2014 WL 10979823, at *4 (S.D. Fla. Jan. 31, 2014) (defendant "*cannot* unilaterally redact portions of otherwise discoverable, non-privileged documents based on its own belief that portions of the documents are irrelevant to the claims in this case") (emphasis in original); *ArcelorMittal Cleveland Inc. v. Jewell Coke Co., L.P.*, 2010 WL 5230862, at *3 (N.D. Ohio Dec. 16, 2010) ("The Court is not persuaded that [Defendant] is entitled to redact [nonprivileged] information in its document production …. Indeed, the language of Rule 34 discusses production of 'documents,' rather than paragraphs or sentences.").

Defendants have not argued that the information at issue is subject to any legal privilege, or that any law or regulation prohibits its disclosure. Instead, Defendants state in highly general and conclusory language that "many of those addresses could be used to identify innocent victims and witnesses," and that Defendants "do not believe it is worthwhile to take the time to distinguish between those that threaten privacy and those that do not." Oct. 12, 2017 Letter from Defendants. Confidentiality or privacy concerns, even if properly substantiated, do not, however, justify withholding materials from production, but rather are properly addressed by

producing the relevant information under a protective order that limits its use or dissemination outside the litigation. *See McKinney*, 2016 WL 98603, at *7 (ordering production pursuant to a protective order); *see also ArcelorMittal*, 2010 WL 5230852, at *4 (compelling "production of nonredacted versions of all documents redacted by Jewell on the grounds that the information is sensitive or confidential" subject to a protective order). The Court has entered a stipulated Protective Order in this action containing provisions negotiated by the parties regarding the protection of confidential information, and Defendants have not explained why the provisions of that Order should not suffice to address any legitimate concerns Defendants may have as to the confidentiality or privacy of street address information contained in the CAD Reports.

Courts overseeing discovery in other civil rights litigations have rejected similar arguments by law enforcement agencies against production of personal identifying information contained in investigative reports. For instance, in *Gwerder v. Besner*, No. CIV.07-335-HA, 2007 WL 2916513, at *3 (D. Or. Oct. 5, 2007), the court ordered the production of reports of law enforcement activities in the possession of the Portland, Oregon police department. The *Gwerder* court's reasoning applies equally to the instant motion:

> [D]efendants' general concerns about disclosure of information ... pertain to privacy matters such as "names, telephone numbers, and birthdates" … and the speculative impact that pretrial disclosure might have upon the Division's effectiveness. Good cause for precluding the discovery requests pertaining to these documents altogether is not established. Defendants' concerns as presently stated are addressed in the proposed protective order.

*Id.* (citations omitted). Similarly, in *Tyner v. City of Jackson, Miss.*, 105 F.R.D. 564, 565 (S.D. Miss. 1985), itself a Section 1983 case, defendants opposed production of internal affairs investigative files on the grounds that discovery would "hamstring internal affairs investigative efforts by reducing the willingness of police officers and civilians from cooperating with such investigative procedures." The court rejected this argument and compelled discovery, reasoning

that the files were relevant to the litigation and that denying such discovery would be appropriate "only in the rarest of cases" involving "extraordinary" circumstances. *Id.* at 566; *see also Coffie v. City of Chicago*, 2006 WL 1069132, at *3 (N.D. Ill. Apr. 21, 2006) (rejecting municipal defendants' argument—that the "names of complainants and witnesses [should] be redacted" because production of this information "would have a chilling effect on the filing of complaints and witness statements"—as unpersuasive).

In this case, Defendants' conclusory and speculative assertions regarding potential privacy issues that might exist with respect to some unspecified subset of the street address information contained in the CAD Reports in no way establish the kind of extraordinary and exceptionally rare circumstance that would warrant Defendants' wholesale unilateral redaction of non-privileged and highly relevant information. Defendants should be compelled to produce this information subject to appropriate confidentiality designations as contemplated by the Protective Order.[4]

---

[4] Earlier in this litigation, in order to expedite production and potentially avoid an unnecessary discovery dispute, the parties entered into a stipulation that allowed Defendants to apply redactions to certain limited personal identifying information in certain "incident reports," a form of law enforcement record that is separate and distinct from the CAD Reports at issue here. That stipulation expressly recognizes that "[t]he parties dispute whether" the redactions "are appropriate." It also contains explicit statements that (i) "this Stipulation does not represent a finding, concession, or admission that any or all of the redactions Defendants may apply to any document prior to production are appropriate or justified under F.R.C.P. 26 or other applicable law" (emphasis in original); (ii) Plaintiffs "reserve all rights, including their right to file a motion seeking an order compelling production in unredacted form of any or all of the information whose redaction is contemplated by this Stipulation"; and (iii) "nothing in this Stipulation shall be construed as impairing, limiting, or otherwise affecting Plaintiffs' rights to seek such an order." There is no dispute that this stipulation, by its terms, does not apply to the CAD Reports. Even if it did apply to the CAD Reports, given the numerous express disclaimers and reservations of rights set forth in this stipulation, it would provide Defendants with no conceivable support for their position regarding redaction of addresses in the CAD Reports.

### III. DEFENDANTS HAVE WAIVED CONFIDENTIALITY BY PRODUCING UNREDACTED CAD REPORTS IN RESPONSE TO PRE-SUIT PUBLIC RECORDS REQUESTS

Finally, even if Defendants could somehow establish good cause to redact street address information contained in CAD Reports, Defendants have waived any such arguments by producing "printouts of *several months* of [CAD Reports]"—*including street addresses*—in unredacted form in response to pre-suit requests by the ACLU of Mississippi made under the Mississippi Public Records Act. Oct. 12, 2017 Letter from Defendants (emphasis added). Notably, these pre-suit productions were made without any confidentiality protections or restrictions, even though they contain the same exact category of information that Defendants now claim is too sensitive to even be produced subject to the restrictions on use and disclosure contained in the Protective Order. Under these circumstances, allowing Defendants to withhold this information from production in its entirety would be inappropriate. *See, e.g.*, *Town of Grafton v. Pulte Homes of New England, LLC*, No. CIV.A. 12-10524-TSH, 2013 WL 5948000, at *1-3 (D. Mass. Nov. 4, 2013) (rejecting argument that disclosure of documents "would hamper [state agency's] ability to conduct future investigations by disclosing its investigative techniques" where the agency had publicly posted a report on the investigation at issue and therefore waived its claim of privilege); *State of Delaware Dep't of Nat. Res. & Envtl. Control v. U.S. Army Corp of Engineers*, 722 F. Supp. 2d 535, 544 (D. Del. 2010) (rejecting claim of deliberative process privilege where "the documents at issue were voluntarily produced ... pursuant to a Freedom of Information Act ("FOIA") request").

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel should be granted.

Dated: October 24, 2017

        /s/ Joshua Tom
        Joshua Tom

| SIMPSON THACHER & BARTLETT LLP | AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI FOUNDATION |
|---|---|
| Jonathan K. Youngwood (*pro hac vice*) | Joshua Tom (Miss. Bar No. 105392) |
| Janet A. Gochman (*pro hac vice*) | 233 East Capitol Street |
| Isaac Rethy (*pro hac vice*) | Jackson, MS 39201 |
| Kavitha Sivashanker (*pro hac vice*) | (601) 354-3408 |
| Nihara K. Choudhri (*pro hac vice*) | JTom@aclu-ms.org |
| Yukiu Chan (*pro hac vice*) | |
| 425 Lexington Avenue | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| New York, NY 10017 | Ezekiel Edwards (*pro hac vice*) |
| (212) 455-2000 | Jeffery Robinson (*pro hac vice*) |
| jyoungwood@stblaw.com | 125 Broad Street |
| jgochman@stblaw.com | New York, NY 10004 |
| irethy@stblaw.com | (212) 549-2610 |
| kavitha.sivashanker@stblaw.com | eedwards@aclu.org |
| nchoudhri@stblaw.com | jrobinson@aclu.org |
| monica.chan@stblaw.com | |
| | *Attorneys for Plaintiffs* |

**CERTIFICATE OF SERVICE**

      I, Joshua F. Tom, hereby certify that on the 24th day of October, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all parties on file with the Court.


                                          /s/ Joshua Tom_____
                                          Joshua Tom