IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LATOYA BROWN; LAWRENCE BLACKMON
HERBERT ANTHONY GREEN; KHADAFY MANNING;
QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS
SINGLETON; STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER, individually and on
behalf of a class of all other similarly situated,                               **PLAINTIFFS**

v.                                                          CIVIL ACTION NO. 3:17-cv-347 WHB LRA

MADISON COUNTY, MISSISSIPPI; SHERIFF
RANDALL C. TUCKER, in his official capacity; and
MADISON COUNTY SHERIFF'S DEPUTIES JOHN
DOES #1 through #6, in their individual capacities,                              **DEFENDANTS**

___

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR LEAVE TO FILE SUR-REPLY**

___

The issue, and the only issue, to be decided by this Court in resolving plaintiffs' motion to compel [Dkt. #64] is whether and under what circumstances plaintiffs are entitled to obtain the addresses associated with each of 118,000 incidents recorded in Sheriff Tucker's computer aided dispatch ("CAD") system since he took office at the beginning of 2012. To obtain those addresses in discovery, plaintiffs must explain how they have "any tendency to make a fact more or less probable that it would be without the evidence" or why they are "of consequence in determining the action" within the meaning of Fed. R. Evid. 401. Although their initial brief [Dkt. #65] made no such effort, they have added new arguments in every new paper filed with this Court, as well as during the course of the conference call with this Court on Tuesday, November 28, 2017.

Because of plaintiffs' constantly evolving argument, defendants sought leave to file a sur-reply brief [Dkt. #98], and their continuing revisions in their new papers and in the conference call

require further response.  In this brief, Sheriff Tucker reviews the facts shown by the record and demonstrates his right to make a full response to plaintiffs' argument.

## STATEMENT OF THE FACTS

The only sworn evidence in this record comes from defendants.  Sheriff Tucker swore, "To maintain public safety and encourage the citizens of Madison County to report crime, it is vital that the identity and location of witnesses and victims be kept confidential to anyone outside the MCSD."  [Dkt. #74, Ex. 2, at ¶ 7].  Sheriff Tucker has no objection to revealing the addresses of crime scenes or the locations of roadblocks and traffic stops, and he has in fact disclosed tens of thousands of such addresses in the 51,192 incident reports he has produced to plaintiffs.[1]  Those reports include all incidents of the types described in the complaint, such as roadblocks, traffic stops, and searches of homes.  However, the 118,000 addresses included in the CAD statistical reports which plaintiffs seek to discover include, not only the addresses of crime scenes and MCSD activities, but also the addresses of innocent victims and witnesses, which have been redacted from the incident reports with plaintiffs' consent.  As Sheriff Tucker has sworn, there is no way to distinguish between the types of addresses on the CAD statistical report without investigation of each address.  [Dkt. #74, Ex. 2, at ¶ 9].

In the brief that plaintiffs now propose to file in further support of their motion to compel, they argue that the locations of activities initiated by officers in the MCSD are somehow relevant to their claim of intentional racial discrimination against Sheriff Tucker, and they speculate that such activities can be identified from the time fields included in the CAD statistical report.  [Dkt. #101, Ex. 1, at 4].  Plaintiffs deposed defendants under Fed. R. Civ. P. 30(b)(6) and had the

---

[1] Defendants have already submitted a copy of a typical incident report under seal [Dkt. #98, Ex. 3], and other incident reports are being submitted as sealed exhibits to this brief.

opportunity to question defendants' representatives concerning the CAD statistical reports and any other records within the possession, custody, or control of defendants. Chief Deputy Jeremy Williams gave a general explanation of the statistical report [Dkt. #98, Ex. 2], but at no point during the deposition did plaintiffs inquire whether the time fields can be used for the purpose they now advance.

Plaintiffs emphasize that, before the beginning of this litigation, Sheriff Tucker produced several months of CAD statistical reports which include addresses, and they have submitted under seal a page from one of those reports [Dkt. #101, Ex. 2]. Although plaintiffs claim those addresses can be used by a statistician to prove their claim of intentional racial discrimination by Sheriff Tucker, they have submitted no sworn evidence from a statistician or anybody else to explain how it can be done.[2] Sheriff Tucker, of course, cannot rebut an argument that plaintiffs have never bothered to make. Against his sworn evidence that the disclosure of addresses would endanger public safety, plaintiffs offer no sworn evidence at all.

## ARGUMENT

**I.    DEFENDANTS SHOULD BE ALLOWED TO RESPOND HEREIN TO PLAINTIFFS' LATEST EFFORT TO EXPLAIN WHY THEY BELIEVE THE CAD STATISTICAL REPORT TO BE RELEVANT TO THEIR CLAIMS.**

Plaintiffs' original brief in support of their motion to compel simply asserted without analysis or explanation that the 118,000 addresses are supposedly "relevant to Plaintiffs' analysis of Defendants' analysis overall patterns of policing in Madison County and the Plaintiffs' collection of evidence regarding the unconstitutional policing policies at issue." [Dkt. #65, at 5]. While they accuse Sheriff Tucker of "targeting Black neighborhoods and majority Black apartment

---

[2] During the November 28 call, plaintiffs' counsel argued against production on an attorneys' eyes only basis because only a statistician could understand them. No statistician has identified himself, subjected himself to the jurisdiction of the Court, and established the need for these 118,000 addresses.

complexes within Madison County," *id*., they have never explained why, even if true, such attention would prove intentional racial discrimination.[3] They certainly have never explained why the thousands of documents already produced by Sheriff Tucker, containing many addresses, are insufficient to establish whatever connection they believe to exist.

In the event that this Court should grant defendants' motion to file a sur-reply brief [Dkt. #98], plaintiffs now seek leave to file a response. [Dkt. #101, at ¶ 4]. Defendants are happy to consent. Defendants could have moved to strike the belatedly submitted relevance argument in plaintiffs' reply brief [Dkt. #99 at 5 n. 4, citing *Gillaspy v. Dallas Indep. Sch. Dist*., 278 F. App'x 307, 315 (5th Cir. 2008)], but they declined to do so, recognizing this Court's interest in dispensing substantial justice. That intent was clearly displayed in this Court's questions during the November 28 conference call. Plaintiffs are welcome to make any argument they wish to establish the relevance of the 118,000 addresses so long as Defendants have the opportunity to respond. Allowing a sur-reply in this instance will ensure that defendants, the non-movants, are "allowed sufficient opportunity to respond" to plaintiffs' relevance argument. *S. Lavon Evans, Jr. Drilling Venture, LLC v. Laredo Energy Holdings, LLC*, Civil Action No. 2:11-CV-12-KS-MTP, 2011 WL 1104150, at *1 (S.D. Miss. Mar. 23, 2011). This reason is sufficient to grant defendants' motion for leave to file a sur-reply.

---

[3] Proving that no good deed goes unpunished, plaintiffs characterize defendants' observation that "[p]roof of targeting might arguably be relevant to plaintiffs' claim that Sheriff Tucker is intentionally discriminating on the basis of race" [Dkt. #74 at 4] as a concession that identification of officer-initiated incidents "would be relevant to Plaintiffs' 'targeting' claims." [Dkt. #102 at 3 n.1]. All defendants said was that "[t]he locations of traffic stops and roadblocks *may* give some indication of the areas to which Sheriff Tucker gives priority in deciding to investigate or patrol, whether or not that activity might be accurately described as targeting." [Dkt. #74 at 5 (emphasis added)]. Defendant can hardly be faulted for attempting to anticipate arguments plaintiffs did not actually make until their reply brief [Dkt. # 91 at 3], especially since to this day plaintiffs have offered no suggestion of how so-called "targeting" proves intentional racial discrimination, rather than an effort to enforce the law and to protect innocent citizens.

## II. PLAINTIFFS' CONTENTION THAT THE CAD STATISTICAL REPORT ALLOWS THEM TO RELIABLY DISTINGUISH BETWEEN OFFICER AND CITIZEN INITIATED INCIDENTS IS DEMONSTRABLY FALSE.

Plaintiffs also claim that defendants' proposed sur-reply is wrong in contending that the CAD statistical report does not distinguish between citizen-initiated and officer-initiated incidents. [Dkt. #102 at 5]. Plaintiffs assert that "officer-initiated incidents can be identified in CAD Report data by looking at the time when a call is received; the time the dispatcher contacts an officer to respond to the call; and the time the officer arrives on the scene." *Id*. at 6. Plaintiffs' proposed response to defendants' proposed sur-reply elaborates on the theory that the CAD statistical report data allow them to distinguish between citizen and officer initiated incidents. [Dkt. #101 at 4]. For citizen initiated calls, plaintiffs theorize that the CAD statistical report "lists different times for each of these time fields." They contend:

> Since the officer is not on the scene initiating the incident, the CAD Report for a citizen-initiated usually lists one time in the "RECV" field for when the dispatcher receives the call; a slightly later time in the "DISP" field for when the dispatcher assigns an officer to respond to the call; and a further later time in the "ARIV" field for when the officer arrives on the scene.

*Id*. at 5. For officer-initiated incidents, on the other hand, plaintiffs state that the CAD statistical report "typically" lists the same time for the RECV, DISP, and ARIV fields. *Id*. at 5.

To support their theory that the times displayed on the CAD statistical report will allow them to reliably distinguish between officer and citizen initiated incidents, plaintiffs prepared and have attached charts of officer-initiated incidents and of citizen-initiated incidents. [Dkt. #101, Ex. 4]; [Dkt. #101, Ex. 5].[4] Plaintiffs' list of officer-initiated incidents possesses the indicia they claim to distinguish an incident as officer-initiated (*i.e*., the same RECV, DISP, and ARIV times). [Dkt. #101, Ex. 5]. However, plaintiffs' *own* table of purported officer-initiated incidents proves

---

[4] These exhibits were filed by plaintiffs under seal and separately transmitted to the Court via email.

5

that their theory of officer-initiated incidents having the same RECV, DISP, and ARIV times is unreliable and encompasses citizen-initiated incidents. For example, two of the alleged officer-initiated incidents on plaintiffs' cherry-picked table have dispatcher comments that indicate an officer was flagged down by a citizen. *See* Incident No. SO16012643, Exhibit 1; Incident No. SO16013399, Exhibit 2.[5] Certainly, if an officer is flagged down by a citizen while on patrol one could hardly describe such an incident as officer-initiated. Under plaintiffs' theory, however, these types of interactions are officer-initiated rather than citizen-initiated.

Not only does plaintiffs' own table expose the faults in their theory that the times on the CAD statistical report will reliably distinguish between officer-initiated and citizen-initiated incidents, but so does the sample page of the CAD statistical report they appended to their proposed response. *See* [Dkt. #101, Ex. 2]. Incidents in that exhibit with the same RECV, DISP, and ARIV times clearly are citizen-initiated. For example, one incident on the sample page of the CAD statistical report details how a citizen dialed 911 only to hang up. *See* Incident No. SO16011760, Exhibit 3. The caller dialed back and advised dispatch he dialed 911 by mistake. *Id*. The CAD statistical report entry for this incident contains the same RECV, DISP, and ARIV times (1:07 p.m.), but this incident is *not* an officer-initiated incident. *Id*. Only by reading the corresponding incident report for this CAD statistical report entry is a reader able to discern whether this incident is officer-initiated or citizen-initiated.[6]

---

[5] The exhibits to this brief are confidential pursuant to the agreed protective order entered by this Court [Dkt. #32]. Defendants are moving for leave to submit them under seal.

[6] The matching of times simply is not a reliable indicator that an incident is officer initiated. For instance, if an officer is in the immediate vicinity when a call comes through, the officer can arrive on the scene within a minute or two of a citizen call coming into dispatch, resulting in the incident having the same RECV, DISP, and ARIV times. In other instances, a member of the public may catch an officer's attention or otherwise initiate an interaction with the officer resulting in dispatch ascribing the same RECV, DISP, and ARIV times for an incident that is citizen-initiated. Furthermore, delay in the dispatcher's entry into the CAD system can result in citizen-initiated incidents having the same RECV, DISP, and ARIV times.

The same is true of another incident on the same page of the CAD statistical report. In that incident, labeled "TRAFFIC-OBSTRUCTING," the reporting party[7] "advised of a limb blocking one lane of traffic." *See* Incident No. SO16011767, Exhibit 4. Dispatcher comments indicate that dispatch then called the City of Madison Police Department to report the obstruction. *Id*. Clearly, this incident was not officer-initiated.[8]

Defendants have utilized only the information provided by plaintiffs in their proposed response to defendants' motion for leave to file a sur-reply to demonstrate how the matching of RECV, DISP, and ARIV times is not a reliable method of determining whether an incident is citizen or officer initiated.[9] Even if the locations of officer-initiated incidents are somehow relevant to some issue in the case, the CAD statistical reports cannot be used to identify them.

### III. BECAUSE PLAINTIFFS HAVE THE INFORMATION THEY NEED IN THE 51,192 INCIDENT REPORTS ALREADY PRODUCED, THE PRODUCTION OF DUPLICATIVE INFORMATION IS NOT PROPORTIONAL TO ANY NEED IN THE CASE.

Even if plaintiffs could succeed in establishing the relevance of the 118,000 addresses, they could not obtain them in discovery without satisfying the proportionality requirement of Fed. R. Civ. P. 26(b)(1), as plaintiffs demonstrated in Part II of their original opposition brief [Dkt. #74]. Defendants have produced 51,192 incident reports, each of which should contain enough

---

[7] "R/P" in law enforcement jargon means reporting party or reporting person.

[8] Another incident on plaintiffs' sample page of the CAD statistical report is citizen-initiated even though it has almost identical REC and DISP times and the DISP time is the same as the ARIV time. *See* Incident No. SO16011781, Exhibit 5. In this incident, an investigator met with a victim whose firearm had been stolen at that victim's home after that victim had called regarding the theft. *Id*. This incident is clearly citizen-initiated and not officer-initiated.

[9] It is certainly possible that plaintiffs recognize the weakness of their claim that these indicia differentiate between citizen and officer-initiated by qualifying their method through use of the word "typically" throughout their proposed response to defendants' motion for leave to file a sur-reply. [Dkt. #101, Ex. 1 at 3, 5]. Regardless, defendants have established that this method is not reliable based on the evidence submitted by plaintiffs, since inevitably a whole host of citizen-initiated incidents are interspersed throughout the sub-category of incidents plaintiffs' theory would deem officer-initiated.

information to reveal whether the incident was initiated by one of Sheriff Tucker's deputies or by somebody else. Defendants explained how this could be determined in their proposed sur-reply brief [Dkt. #98, Ex. 1 at 4-5], and nothing plaintiffs have submitted takes issue with that. Plaintiffs already have in their possession sufficient discovery to identify every arguably relevant officer-initiated incident since the beginning of 2012; should they have any basis for believing that the addresses for any of those incidents are relevant to their claims, then they can ask this Court to require their production. Requiring the production of additional data in an attempt to get the same information twice is obviously disproportionate to the needs of any case.

Of course, if relevance and proportionality were the only issues in dispute, this matter would not be before this Court. Defendant Tucker, the duly elected Sheriff of Madison County, swore that the production of addresses sufficient to identify innocent victims and witnesses will endanger some of those people and will adversely affect his ability to protect the County's citizens. Plaintiffs offer no evidence to the contrary. Indeed, their continued refusal to accept any restriction on their ability to contact individuals identified through the CAD statistical reports [Dkt. #101, Ex. 1 at 4 n.3] substantiates Sheriff Tucker's concern for the privacy of local citizens.

## CONCLUSION

Plaintiffs' demand for the production of 118,000 addresses should be overruled by this Court.

This the 1st day of December, 2017.

            Respectfully submitted:

            **MADISON COUNTY, MISSISSIPPI and**
            **SHERIFF RANDALL C. TUCKER, IN**
            **HIS OFFICIAL CAPACITY**

            BY: *s/Michael B. Wallace*
                Michael B. Wallace (MSB #6904)

Charles E. Ross (MSB #5683)
James E. Graves (MSB #102252)
Charles E. Cowan (MSB #104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi  39205-0651
Telephone: 601-968-5534
Facsimile: 601- 944-7738
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com

and

T. Russell Nobile (MSB #100682)
WISE CARTER CHILD & CARAWAY, P.A.
2510 14th Street, Suite 1125
Gulfport, Mississippi 39501
Telephone: 228-867-7141
Facsimile: 228-867-7142
trn@wisecarter.com

OF COUNSEL:

Rebecca B. Cowan #7735
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Dr.
Jackson, MS   39232
P.O. Box 750
Jackson, Mississippi  39205-0750
Telephone: 601-969-1010
Facsimile:  601-969-5120
bcowan@curriejohnson.com

Katie Bryant Snell (MSB# 103607)
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi 39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

9

**CERTIFICATE OF SERVICE**

    I, Michael B. Wallace, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

Joshua Tom, Esq.
Paloma Wu, Esq. (*pro hac vice*)
American Civil Liberties Union of Mississippi Foundation
233 E. Capitol Street
Jackson, MS 39201
PWu@aclu-ms.org
JTom@aclu-ms.org

Jonathan K. Youngwood, Esq. (*pro hac vice*)
Janet A. Gochman, Esq. (*pro hac vice*)
Isaac Rethy, Esq. (*pro hac vice*)
Nihara K. Choudhri, Esq. (*pro hac vice*)
Yukiu Chan, Esq. (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
Jumin Lee (*pro hac vice*)
Simpson Thatcher & Bartlett, LLP
425 Lexington Avenue
New York, NY 10017
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
monica.chan@stblaw.com
bonnie.jarrett@stblaw.com
christopherjumin.lee@stblawcom

Ezekiel Edwards, Esq. (*pro hac vice*)
Jeffery Robinson, Esq. (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
eedwards@aclu.org
jrobinson@aclu.org

This the 1st day of December, 2017.

                                                *s/Michael B. Wallace*
                                                Michael B. Wallace