UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; HERBERT ANTHONY GREEN; KHADAFY MANNING; QUINNETTA MANNING; MARVIN MCFIELD; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and MADISON COUNTY SHERIFF'S DEPUTIES JOHN DOES #1 through #6, in their individual capacities,<br><br>    Defendants. | Civil Action No.<br>3:17-cv-00347-WHB-LRA |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO MODIFY CASE MANAGEMENT ORDER**

    Plaintiffs respectfully submit this Memorandum of Law in support of Plaintiffs' Motion (the "Motion") to Modify the Case Management Order entered August 9, 2017 (the "Case Management Order") by extending the deadlines for the close of class certification-related discovery and the filing of Plaintiffs' motion for class certification by approximately two months, from January 16, 2018 and January 30, 2018 to March 16, 2018 and March 30, 2018, respectively.  As demonstrated in greater detail below, Plaintiffs have worked diligently and proactively throughout the class discovery period.  However, Plaintiffs respectfully submit that a modest extension of the deadlines to complete class discovery and file Plaintiffs' motion for class certification is appropriate in light of (i) continued deficiencies in Defendants' document productions; (ii) the fact that important aspects of Defendants' production remain incomplete;

(iii) Defendants' delay in scheduling depositions of the ten named Plaintiffs in this action; and (iv) the need to afford Plaintiffs and their expert and consultants time to review and analyze documents that were produced very late in the discovery period, or have yet to be produced, prior to filing their motion for class certification and accompanying expert submissions.

## INTRODUCTION

Plaintiffs commenced this class action litigation on May 8, 2017. Plaintiffs bring civil rights claims under 42 U.S.C. §§ 1983 and 2000d, and generally allege that the Madison County Sheriff's Department ("MCSD") engages in widespread unconstitutional policing practices that violate the Fourth Amendment's proscriptions of unreasonable searches and seizures and the Fourteenth Amendment's prohibition against discrimination on the basis of race. Defendants answered the Complaint on June 29, 2017, and the Court entered the Case Management Order on August 9, 2017. The Case Management Order entered in this case provides that the "Parties will conduct class certification-related discovery which shall end January 16, 2018" and that Plaintiffs will subsequently file a Motion for Class Certification "on or prior to January 30, 2018." The Case Management Order also provides that the parties would each be entitled to 60 requests for production of documents, 60 interrogatories, 60 requests for admission, and 30 depositions.

Since the Case Management Order was entered, Plaintiffs have diligently pursued discovery as it relates to their anticipated Motion for Class Certification (the "Class Certification Motion"). However, due to recently-resolved discovery disputes between the parties and as-yet unremedied issues with Defendants' document productions, discovery remains materially incomplete as of the date of this motion. This is a large, complex and important case, and Plaintiffs, along with their experts and consultants, require a reasonable time to receive, review, and analyze the substantial amounts of discovery material that Defendants have yet to produce,

2

or have only recently completed producing, in advance of filing for class certification. The brief extension requested in this Motion will enable Plaintiffs to do so.

In addition, while Plaintiffs have taken a substantial majority of the depositions Plaintiffs presently intend to take during the class certification stage, Defendants only recently began taking depositions of the ten named Plaintiffs in this action. Under the current schedule, six of these depositions will have to take place in the first two weeks of January, along with the modest number of further depositions Plaintiffs intend to take of Defendants. An extension of the discovery schedule will enable the parties to schedule these depositions in an orderly and reasonable manner that will be respectful of the schedules of the witnesses and counsel's other pre-existing commitments.

Therefore, and as set forth in greater detail below, good cause exists for the Court to modify the Case Management Order, and set deadlines of (1) March 16, 2018 for the Parties to complete class certification-related discovery and (2) March 30, 2018 for Plaintiffs to file the Class Certification Motion.[1]

## ARGUMENT

**I.    GOOD CAUSE EXISTS TO MODIFY THE DEADLINES SET FORTH IN THE CASE MANAGEMENT ORDER FOR COMPLETING CLASS CERTIFICATION DISCOVERY AND FILING THE CLASS CERTIFICATION MOTION**

Courts may modify the dates set forth in scheduling orders for matters such as the close of discovery or the deadlines for filing motions upon a showing of good cause. Fed. R. Civ. P. 16(b); *see Texas Indigenous Council v. Simpkins*, 544 Fed. Appx. 418, 420 (5th Cir. 2013); *S &*

---

[1] On December 21, 2017, counsel for the parties reached an oral agreement that expert submissions in support of class certification, and related Rule 26 disclosures would be filed concurrently with the submission of Plaintiffs' class certification motion, and that the parties would then each have 30 days to file their respective opposition and reply briefs and any related expert submissions and disclosures, as well as to depose the other side's expert.

*W Enters., L.L.C. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003). In this District, where an action is filed as a class action, Local Uniform Civil Rule 23 similarly permits a court to modify the scheduling order by granting additional time to a party conducting class discovery and preparing a Rule 23 motion for class certification upon a showing of good cause. L. U. Civ. R. 23. If the moving party meets the good cause standard, the deadline can and should be extended. *Id.*; *see also Joseph N. Main P.C. v. Elec. Data Sys. Corp.*, 168 F.R.D. 573, 577 (N.D. Tex. 1996) (plaintiff who seeks further discovery before filing a motion for class certification motion may move for extension of time).

For the reasons set forth below, good cause exists such that the Court should modify the Case Management Order by extending by two months the class discovery period and Plaintiffs' deadline to file their Class Certification Motion.

### A. **Defendants' Document Production Remains Incomplete**

Good cause to modify a scheduling order exists where a party shows "that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Texas Indigenous Council*, 544 Fed. Appx. at 420 (quoting *S & W Enters.*, 315 F.3d at 535). Such scenarios include where discovery was not made available to the party seeking modification, or where such discovery is otherwise incomplete. *See Stewart v. Coyne Textile Serv.*, 212 F.R.D. 494, 496-97 (S.D. W. Va. 2003) (finding good cause to modify scheduling order where parties lacked full opportunity to obtain discovery due to defendants' delayed responses to discovery requests); *Reynolds v. Home Depot, Inc.*, 203 F.R.D. 643, 645 (D. Kan. 2001) (good cause exists for extending deadline to amend pleading where defendant failed to respond to discovery requests). Here, despite Plaintiffs' best efforts to meet the January 16, 2018 class discovery deadline set by the Court, the numerous outstanding or only recently resolved issues with Defendants' production of documents warrant a reasonable extension of the discovery period.

4

Plaintiffs served their First Set of Requests for Production of Documents ("Plaintiffs' First Requests") on August 2, 2017. Plaintiffs served their Second Set of Requests for Production of Documents on September 22, 2017, and their Third Set of Requests for Production of Documents on December 15, 2017.[2] Plaintiffs' First Requests sought, *inter alia*, all "documents" concerning roadblocks/checkpoints (RFP 3), traffic stops (RFP 6), and pedestrian stops (RFP 7). Plaintiffs' First Requests define the term "document" to include "incident reports," "computer-aided dispatch (CAD) reports," and "any other reports" (Definition 8). The individual incident reports and statistical reports sought in Plaintiffs' First Requests would be important in any case challenging racially discriminatory policing policies, but are especially critical in this action because the MCSD does not maintain aggregated racial data or racial statistics of any kind, and does not keep centralized records or statistics concerning many of the law enforcement activities conducted by its departments and deputies.[3] As discussed below, Defendants' production of these core documents, as well as other central components of Defendants' document production, remain materially incomplete.

       **1.    Discovery Has Been Delayed By Defendants' Resistance To Discovery And The Need To Prosecute Motions To Compel**

On October 25, 2017, Plaintiffs moved to compel the production of computer-aided dispatch report data ("CAD Reports") without the street address redactions Defendants were

---

[2] The Third Set of Requests for Production of Documents, which is not at issue on this Motion, contains a single request, which seeks documents relating to internal investigations or other personnel actions, if any, that may have been initiated by the MCSD as a result of discovery taken in this action.

[3] For instance, the MCSD has no system for tracking the activities of the Neighborhood Enhancement Team, an undercover "special operations" unit that focuses on majority-Black neighborhoods and apartment complexes, and which Plaintiffs believe may be directly involved a material amount of the unconstitutional policing practices at issue in this case. Defendants have represented in their interrogatory responses that "[t]he only method for tracking the utilization and deployment of the Neighborhood Enhancement Team is by reviewing incident reports and monthly Activity/Citations Reports."

seeking to apply. As Plaintiffs explained in the extensive briefing on this issue, the data contained in CAD Reports was relevant, *inter alia*, to the MCSD's disproportionate targeting of majority-Black neighborhoods, and the street addresses at issue were necessary to this analysis. During a telephonic conference held on December 20, 2017, the Court granted the motion and directed Defendants to produce unredacted CAD Reports, subject to the entry of an order establishing heightened restrictions on the review and use of the CAD Reports. The parties submitted an agreed proposed order to the Court on December 22, 2017. The language of the proposed Order, consistent with the Court's instructions at the December 20 conference, allows Defendants until December 29, 2017 to produce the unredacted CAD Reports. After these materials are produced, Plaintiffs and their experts and consultants will need time to conduct a meaningful evaluation and analysis of the data contained in the CAD Reports, which Defendants have represented contains data concerning 118,000 distinct incidents. Delays that are occasioned, as here, by the non-moving party's resistance to discovery and the time required for the movant to file and prosecute a motion to compel, warrant extension of the related discovery deadlines. *See Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488, 493-94 (S.D. Tex. 2009) (defendant's filing of motion to compel plaintiff's deposition was evidence of defendant's diligence in seeking discovery, and plaintiff's subsequent failure to show up on noticed date established good cause for court to extend deadline to conduct deposition).

      Defendants also refused to produce documents in the possession of individual MCSD deputies, claiming that such documents were outside Defendants' possession, custody, or control. Plaintiffs brought this issue to the attention of the Court, and during a telephonic conference held on November 28, 2017, this Court directed Defendants to produce documents in the possession of an appropriate subset of MCSD personnel to be identified by Plaintiffs. On

December 1, 2017, in accordance with this Court's instructions, Plaintiffs provided Defendants with the names of selected MCSD personnel. Defendants have agreed in principle to produce documents in the possession of the identified MCSD personnel, but, again, have not yet done so. Once Defendants produce these documents, Plaintiffs will require time for review and analysis. As above, this delay, which has also been occasioned by Defendants' resistance to the production of relevant documents, similarly justifies an extension of the discovery schedule.

### 2. Discovery Has Also Been Delayed As A Result Of Unresolved Deficiencies In Defendants' Document Productions

Even where the parties appear to have been able to address discovery disputes without the Court's intervention, a number of significant issues, addressed below, remain unresolved as of this date, or are only just now in the process of being resolved. The fact that these issues remain unresolved, and that Defendants have not yet cured significant deficiencies in their productions, also gives rise to good cause for the brief extension requested by Plaintiffs.

**Incident Reports**. Defendants began producing individual incident reports on October 2, 2017, approximately two months after Plaintiffs requested such documents in their First Requests. On that date, Defendants produced approximately 3,500 pages of incident reports. On October 12, 2017, Defendants produced an additional 18,000 pages of incident reports. The bulk of Defendants' incident report production has been made in November and December. On November 3, 2017, Defendants produced approximately 19,000 pages of incident reports. On November 22, 2017, the day before Thanksgiving, Defendants produced almost 1,500 pages of incident reports. Since Thanksgiving, Defendants have produced approximately 17,000 pages of incident reports. Defendants have advised Plaintiffs that their final production of incident reports was made on December 7, 2017. Defendants did not produce these incident reports chronologically, nor were the incident reports grouped together by category of law enforcement

counter.  The haphazard nature of Defendants' incident report production has compounded the difficulty of reviewing these materials.

Defendants also did not produce the incident reports in their original format, or in the relatively complete format in which they had been produced in response to pre-litigation public records requests.  Instead, Defendants provided exports prepared by a vendor, which contained a more limited set of information.  Significantly, the incident report exports produced by Defendants exclude a number of key data fields, including the original code entered by the dispatcher, the disposition code (*i.e.*, a description of the resolution of the incident, whether by arrest, citation, or otherwise), and the arrival and departure times showing the duration of the officer's involvement in the incident at issue.  After Plaintiffs raised this production deficiency, Defendants agreed to attempt to remedy this problem by producing Excel file "overlays," but to date, the parties have not yet reached a resolution, and Plaintiffs are presently awaiting confirmation that Defendants will be able to produce an Excel overlay in a workable format that permits Plaintiffs to cross-reference the underlying documents and the overlays without undue burden.  Assuming such confirmation is provided, it will likely take some time for Defendants to produce the overlays.  Plaintiffs and their experts and consultants will then require time to analyze and cross-reference the numerous relevant individual incident reports against these Excel overlays and to assess the implications of this new data.

**E-mails And Other Electronically-Stored Information.**  Defendants did not make a substantive production of e-mails until November 22, 2017.  This e-mail production consisted of a single 1,500 page scanned PDF, rather than—as required by the plain terms of the parties' Stipulation Regarding Production of Electronically Stored Information and Other Discovery Procedures (the "ESI Protocol," attached to the Motion as Exhibit A)—individual e-mails

produced in TIFF format with accompanying metadata files.  Numerous other electronically-stored documents were produced in similarly noncompliant fashion.  These serious production deficiencies have substantially impeded Plaintiffs' ability to review and analyze Defendants' production, as well as Plaintiffs' ability to assess its completeness.  On December 22, 2017 (the same day this Motion is being filed), Defendants purported to reproduce e-mails and certain other electronically stored information in a manner that complies with the terms of the ESI Protocol.  Plaintiffs will need time to review these files and to determine whether Defendants' production is complete, or whether it contains deficiencies or gaps that will need to be addressed by the parties.

**Composite PDF Files.**  As noted above with respect to Defendants' e-mail production, a large number of documents were produced by Defendants in the form of extremely voluminous, composite PDF files that are unusually difficult to review and do not comply with the ESI Protocol.  The ESI Protocol requires that electronic documents be appropriately "unitized" (*i.e.*, that a single multi-page document be produced as such, rather than split into individual pages or compiled with other documents into a composite record) and that hard copy documents be produced, if in hard copy, in the manner in which they are kept in the ordinary course of business.  Instead of applying the provisions of the ESI Protocol, Defendants lumped together all documents from particular sources into massive, unwieldy composite PDF files.

For example, Defendants produced a 6,400-page PDF consisting of several thousand separate and distinct Monthly Activity Forms and Monthly Citation Forms (MC-RFP (2) 26-1 to MC-RFP (2) 26-6415), which detail each deputy's activities.  These forms are not organized by date or by deputy.  By letter dated November 10, 2017, Defendants agreed to reproduce this PDF file in the appropriate format.  More than one month later, and less than a month before the

scheduled close of discovery, Defendants have not reproduced these materials. Once the materials have been produced in the proper format, Plaintiffs will require time to review and analyze these materials.

Similarly, the day before Thanksgiving, Defendants produced a single PDF file consisting of more than 12,000 pages of documentation relating to sobriety checkpoints (MC-DUI MONTHLY RPTS-1 through MC-DUI MONTHLY RPTS-12275). These documents are relevant both to Plaintiffs' claims regarding the unconstitutional roadblocks maintained by Defendants, and to Defendants' contentions in opposition that the MCSD only conducts roadblocks for purposes of traffic safety and in accordance with specific sobriety checkpoint rules. Defendants have thus far refused to reproduce the PDF in a proper format, and have instead stated that they will only answer "questions about where one family of documents begins and where another one ends." December 16, 2017 e-mail from Charles Cowan to Isaac Rethy. Plaintiffs are disinclined to burden the Court with disputes over production formatting, and thus may accept Defendants' proposal, however inadequate. Doing so, however, clearly increases the burden and time associated with Plaintiffs' review of these materials.

### B. The Brief Extension Requested By Plaintiffs Will Also Facilitate The Reasonable And Orderly Scheduling Of Remaining Depositions

In addition to allowing Plaintiffs the necessary time to review Defendants' delayed production of documents, extending the discovery schedule will also ease the burden on all parties caused by Defendants' delay in noticing depositions of the ten named Plaintiffs. Plaintiffs filed their first Notices of Deposition of Defendants' witnesses on September 28, 2017. To date, Plaintiffs have taken 18 out of the 19 depositions noticed (out of the 30 depositions permitted under the CMO). Plaintiffs have attempted to proceed expeditiously with depositions even though Defendants' document productions were substantially incomplete, in an effort to

complete discovery in a reasonable and timely manner. Plaintiffs have had difficulty scheduling the deposition of one witness because Defendants have represented that he is only available outside of normal business hours. Plaintiffs expect to take this witness's deposition in January, along with approximately three to five additional depositions of MCSD personnel that Plaintiffs have recently determined are necessary, based on information learned in the course of discovery.

Defendants, on the other hand, did not file notices of deposition for any of ten named Plaintiffs until November 9, 2017, despite repeated requests by Plaintiffs to do so in a timely fashion. Defendants noticed four depositions for dates in mid-December, and six depositions for dates in the first two weeks of January 2018.[4] Plaintiffs are, as requested, producing four witnesses for deposition during December, which leaves six depositions of named Plaintiffs for January. Scheduling these six depositions in two weeks, along with the remaining depositions of Defendants, is substantially inconvenient, particularly in light of the numerous other discovery issues that will also require the parties' attention during this time period. A brief extension of the discovery period, as requested by Plaintiffs herein, will alleviate these issues and allow the parties to conclude discovery in a reasonable and non-prejudicial manner.

### C. Extending The Class Discovery Period Is Reasonable And Appropriate And Will Not Prejudice Defendants

Plaintiffs' Class Action Complaint was filed less than eight months ago, and Plaintiffs seek only a modest extension of the relevant deadlines by approximately two months. Plaintiffs have not requested any extensions of deadlines prior to this Motion, and the requested two month extension of the class discovery and Class Certification Motion deadlines, respectively, does not

---

[4] Defendants also did not ask for an executed medical records release for Khadafy Manning until November, and subsequently claimed that they could not proceed with Mr. Manning's deposition prior to January 2018 because they needed time to request and review his medical records.

significantly impede or alter the progress of this litigation. Because the class certification inquiry is complex and fact-dependent, sufficient time is required for parties to conduct discovery and prepare motions with respect to such issues. *See* Manual for Complex Litigation (4th) § 21.11 (Class certification decisions are "critical and should only be made after consideration of all relevant information and arguments presented by the parties."). While Rule 23(c)(1)(A) instructs courts to determine whether to certify a suit as a class action "at an early practicable time" after the suit is brought, Rule 23 also emphasizes "the parties' obligation to present the court with sufficient information to support an informed decision on certification," as "[p]arties need sufficient time to develop an adequate record." *Id.* § 21.133. Indeed, in the note to the 2003 Amendment of Rule 23(c)(1)(A), the Advisory Committee makes clear that "[t]ime may be needed to gather information necessary to make the certification decision."

Because of this, courts frequently grant extensions for class discovery and the filing of class certification motions where parties have not been able to complete discovery in the originally-scheduled timeframe. In particular, due to the high volume and complexity of the information involved, courts have significantly extended class discovery periods in proposed civil rights class actions that allege unconstitutional and/or racially discriminatory policies, customs, and/or practices on the part of municipal defendants. *See, e.g.*, Text Only Order, *Dockery, et al. v. Epps, et al.,* No 13-cv-00326 (S.D. Miss. Feb. 13, 2014) (M.J. Roper) (granting motion to extend deadline for plaintiffs to file motion for class certification by more than five months in Section 1983 suit filed by prisoners); *Floyd, et al. v. City of New York*, No. 08 Civ. 1034, ECF No. 165 (S.D.N.Y. Nov. 7, 2011) (motion for class certification regarding "stop and frisk" practices filed nearly four years after complaint and after multiple extensions related to class discovery). Under the modified schedule proposed in this Motion, Plaintiffs' Class

Certification Motion would be filed less than 11 months after filing the Complaint in this Action, a much more expeditious schedule than those that have been entered in comparable civil rights litigations.

Defendants cannot claim prejudice from the brief extension of the class discovery period and the deadline for Plaintiffs to file the Class Certification Motion, particularly where the extension is necessitated by the fact that their own discovery obligations remain incomplete and unsatisfied. *See Stewart*, 212 F.R.D. at 496-97; *Hernandez*, 617 F. Supp. 2d at 493-94 (extending deadline for defendant to take deposition "where defendant's failure to depose [plaintiff] was through no fault of its own").[5] By contrast, Plaintiffs will be prejudiced if the current class certification deadlines remain in place, because Plaintiffs and their expert and consultants need some reasonable amount of time to review and analyze the large volumes of data Defendants have not yet produced, or are only now in the process of producing, before Plaintiffs can file for class certification and Plaintiffs' expert can present an opinion based on an analysis of these materials. The lack of cognizable prejudice to Defendants, the importance of class certification to Plaintiffs' prosecution of their case, and the modest nature of the extension clearly suffice to show that good cause exists for granting the two-month extension requested by Plaintiffs.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs Motion to Modify the Case Management Order and enter new deadlines related to class

---

[5] Further, any conceivable prejudice to Defendants is cured by the fact that Defendants similarly will have time to prepare their defenses under an extended deadline. Defendants also would benefit from an extension of the class discovery period—as most of the outstanding noticed depositions are scheduled to be taken by Defendants, an extension would obviate the need for Defendants to compress six depositions into a two week period in January

certification as follows: (1) class certification-related discovery shall end March 16, 2018; and (2) Plaintiffs shall file their Class Certification Motion on or prior to March 30, 2018. In the alternative, Plaintiffs respectfully request that the Court extend the class certification-related deadlines set forth in the Case Management Order to new dates beyond those currently set in the Case Management Order as the Court deems reasonable and appropriate.

Dated: December 22, 2017

By: /s/ *Joshua Tom*
     Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Yukiu Chan (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
Jumin Lee (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
monica.chan@stblaw.com
bonnie.jarrett@stblaw.com
christopherjumin.lee@stblaw.com

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice*)
Jeffery Robinson (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 22, 2017, I caused the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO MODIFY CASE MANAGEMENT ORDER** to be electronically filed with the Clerk of the Court using the CM/ECF system, through which copies have been served to:

WISE CARTER CHILD & CARAWAY, P.A.
Michael B. Wallace (Miss. Bar No. 6904)
Charles E. Ross (Miss. Bar No. 5683)
James E. Graves (Miss. Bar No. 102252)
Charles E. Cowan (Miss. Bar No. 104478)
T. Russell Nobile (Miss. Bar No. 100682)
Post Office Box 651
Jackson, MS 39205
(601) 968-5534
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com

CURRIE JOHNSON & MYERS, P.A.
Rebecca B. Cowan (Miss. Bar No. 7735)
P.O. Box 750
Jackson, MS 39205
(601) 969-1010
bcowan@curriejohnson.com

*/s/ Jade Morgan*
Jade Morgan