**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**LATOYA BROWN; LAWRENCE BLACKMON
HERBERT ANTHONY GREEN; KHADAFY MANNING;
QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS
SINGLETON; STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER, individually and on
behalf of a class of all other similarly situated,**                        **PLAINTIFFS**

**v.**                                          **CIVIL ACTION NO. 3:17-cv-347 WHB LRA**

**MADISON COUNTY, MISSISSIPPI; SHERIFF
RANDALL C. TUCKER, in his official capacity; and
MADISON COUNTY SHERIFF'S DEPUTIES JOHN
DOES #1 through #6, in their individual capacities,**                **DEFENDANTS**

---

## DEFENDANTS' RESPONSE BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CASE MANAGEMENT ORDER

---

Perhaps the most remarkable aspect of plaintiffs' motion to modify case management order [Dkt. #142] is their admission in their brief that defendants have agreed to resolve the only problem plaintiffs have identified. [Dkt. #143 at 3 n.1]. Plaintiffs have identified no fact discovery that cannot be completed by the deadline of January 16, 2018, set in the case management order [Dkt. #30]. All of plaintiffs' arguments relate to the supposed "need to afford Plaintiffs and their experts and consultants time to review and analyze documents." [Dkt. #143 at 2]. Even though plaintiffs have submitted no evidence supporting their experts' supposed need for the time, defendants have agreed "that expert submissions in support of class certification, and related Rule 26 disclosures, would be filed concurrently with the submission of Plaintiffs' class certification motion and that the parties would then each have 30 days to file their respective opposition and reply briefs and any related expert submissions and disclosures, as well as to depose the other side's expert." [Dkt.

143 at 3 n.1].  Assuming this Court approves that agreement, fact discovery can be completed on time, and expert discovery can be completed shortly thereafter.

Should this Court be inclined to approve the parties' agreement, there is no need to read further.  Plaintiffs, however, for some reason felt the need to disparage defendants' compliance with their legal discovery obligations, as well as their willingness to cooperate.  Those assertions are not true, and they will be answered in full hereafter.

**ARGUMENT**

**I.    DEFENDANTS AGREE TO THE EXTENTION OF THE DEADLINE FOR FILING THE CERTIFICATION MOTION UNTIL SUCH DATE AS THIS COURT FINDS APPROPRIATE.**

Plaintiffs seek to modify the case management order to permit the filing of their motion for certification on March 30, 2018, arguing that they, "along with their experts and consultants, require a reasonable time to receive, review, and analyze the substantial amounts of discovery material."  [Dkt. #143 at 2].  Although plaintiffs offer no evidence from their experts or anybody else to support this assertion, defendants acknowledge that it is not implausible on its face.  In the absence of such evidence, defendants have no way of knowing whether 60 days represent a reasonable estimate of the needed time.  This Court must approve any modification of the order under Fed. R. Civ. P. 16(b)(4).  Defendants will not object to such extension as this Court feels to be justified by the record.

The key to the agreement is that expert discovery, which has not yet been conducted, will take place after the filing of the certification motion.  In neither their initial disclosures, served July 26, 2017, nor their supplemental disclosures, served December 22, 2017, did plaintiffs identify their experts, much less reveal their opinions.  Defendants timely sought those identifications and opinions through interrogatories, but plaintiffs objected on the grounds of prematurity.  Although plaintiffs supplemented their interrogatory answers on December 22, 2017,

2

the same day that they filed this motion, they still revealed nothing about their experts.  Until plaintiffs do so, defendants cannot conduct the expert discovery to which they are entitled.

Accepting at face value plaintiffs' representations that their experts need time to complete their work, defendants are satisfied to receive the responses to which they are entitled on the day of the filing of the certification motion.  The agreement grants defendants nothing more than the 30 days for a response to which they are explicitly entitled under Fed. R. Civ. P. 26(a)(2)(D)(ii).  Each side is entitled to depose the other's experts, and defendants have granted plaintiffs 30 days to file their reply brief.  This agreement, should this Court approve it, permits the orderly completion of expert discovery.  Because fact discovery will be timely completed, the approval of this agreement is all this Court need do to resolve this motion.

## II.   PLAINTIFFS HAVE NOT IDENTIFIED ANY FACT DEPOSITIONS THAT CANNOT BE TIMELY COMPLETED.

Plaintiffs acknowledge that they have taken 18 fact depositions.  [Dkt. #143 at 10].  Plaintiffs unilaterally cancelled a nineteenth deposition, and, although they claim to wish to take "three to five additional depositions of MCSD personnel" [Dkt. #143 at 11], they could not be bothered to identify them in their motion.  They offer no reason to believe that all fact depositions cannot be completed by January 16, 2018, nor do they explain why they could not have been completed in the five months since the entry of the case management order on August 9, 2017.

The cancelled deposition was that of Paul Griffin, a duly elected member of the Madison County Board of Supervisors.  For the reasons explained in plaintiffs' pending motion to strike [Dkt. #18], the Supervisors have no control over the operations of the Sheriff's Department.  Nevertheless, defendants agreed to allow Supervisors Trey Baxter and Paul Griffin to be deposed at plaintiffs' request.  Plaintiffs deposed Supervisor Baxter, but cancelled the deposition of Supervisor Griffin scheduled for the afternoon of December 8, 2017.  It is this cancellation to

which plaintiffs refer when they claim to "have had difficulty scheduling the deposition of one witness because Defendants have represented that he is only available outside of normal business hours." [Dkt. #143 at 11].  Plaintiffs' counsel apparently do not understand that the position of a Supervisor is a part-time job.  Supervisors customarily have other employment, and Supervisor Griffin's job prevents him from being available before 4:00 p.m. on weekday afternoons.  Plaintiffs cannot demonstrate any hardship caused by beginning a deposition after the witness finishes work at 4:00 p.m.  Indeed, plaintiffs have now filed a notice setting the deposition for 4:00 p.m. on January 10, 2018.  [Dkt. #156.]

Despite their asserted need to depose more deputies, not until January 2, 2018, 11 days after the filing of their motion, did plaintiffs identify one deputy, and no more.  Defendants have contacted the desired witness and see no impediment to scheduling that deposition before January 16.  Plaintiffs do not even pretend that they cannot timely complete the fact depositions they have actually requested.

Proving once again that no good deed goes unpunished, plaintiffs characterize defendants' willingness to let them monopolize the early weeks of depositions as somehow imposing a "burden on all parties caused by Defendants' delay in noticing depositions of the ten named Plaintiffs." [Dkt. #143 at 10].  They do not bother to explain how this supposed delay has inhibited their own discovery, nor do they deny that plaintiffs' depositions can be timely completed.  In fact, defendants filed notices for the depositions of all plaintiffs [Dkt. ##78-87] on November 9, 2017, substantially contemporaneously with the promised receipt of plaintiffs' supplementation of their original insufficient interrogatory answers.  The original notices set the depositions to take place beginning on December 12, 2017, and concluding a month later.  If plaintiffs found the "delay" inconvenient, they could have asked defendants to take them earlier.  Instead, plaintiffs asked for

4

more time, resulting in only one being taken before the filing of this motion.  Three more have

since been taken, and the rest are scheduled to be completed before the close of discovery.[1]

The record plainly shows that defendants have fully cooperated in making witnesses

available for deposition.  The remaining witnesses requested by plaintiffs will be made available

before January 16.  No extension of discovery is necessary to permit further depositions of fact

witnesses.

## III.   DEFENDANTS HAVE COMPLETED THEIR DOCUMENT PRODUCTION, SATISFYING BOTH THE LAW AND THEIR VOLUNTARY AGREEMENTS.

Plaintiffs' complaint about "the non-moving party's resistance to discovery" [Dkt. #143 at

6] has no basis in fact or law.  Defendants have produced tens of thousands of documents, some

of them in multiple formats at plaintiffs' request.  Plaintiffs demanded the receipt of the requested

Computer Aided Dispatch ("CAD") statistical reports while refusing to agree not to use the data

to contact private citizens, a condition this Court ultimately imposed.  The time necessary for this

massive production, as already seen, did not prevent plaintiffs from completing all the depositions

they wanted to take.  All the requested data has now been produced, and nothing inhibits plaintiffs'

experts from getting to work.

### A.     This Court has found no unjustified behavior on the part of defendants.

Despite extensive negotiations between the parties, from which this Court was mercifully

spared, plaintiffs filed only a single motion to compel [Dkt. #64], seeking the production of

addresses contained in CAD statistical reports.  To their credit, plaintiffs acknowledge that this

---

[1] The only fact witnesses who will not be deposed before January 16 are the 14 individuals identified for the first time in plaintiffs' interrogatory answers served on December 22, 2017.  Those answers incorporated affidavits, which were not served until December 29, 2017, even though 13 had been executed in October and the last in November.  Should plaintiffs seek to introduce those affidavits in support of their certification motion, defendants will move to strike, because they should have been identified in their mandatory disclosures and produced in response to document requests.

Court's decision to grant access to those addresses was made "subject to the entry of an order establishing heightened restrictions on the review and use of the CAD Reports."  [Dkt. #143 at 6]. Although plaintiffs never submitted any evidence explaining their need for the addresses, Sheriff Tucker's uncontradicted affidavit explained how access to the addresses of innocent victims and witnesses could threaten law enforcement in Madison County.  [Dkt. #74-2].  Plaintiffs, however, refused to agree not to use the reports to contact such innocent parties, and asked this Court not to impose any such restriction.  [Dkt. #91 at 8 n.4].  This Court disagreed and granted such protection in paragraph 7 of its order entered December 27, 2017.  [Dkt. #144].  Defendants promptly produced the requested information.

Plaintiffs also complain of Sheriff Tucker's denial of any responsibility to produce documents in the possession, custody, or control of his employees, and they misunderstand the import of an informal telephone conference under paragraph 6.F.4 of the case management order [Dkt. #30].  Plaintiffs asserted that Sheriff Tucker was obliged under Fed. R. Civ. P. 34 to produce all discoverable documents in the personal possession, custody, or control of all of his employees,[2] although they did not cite a single case in which any government or government agency had been required to produce documents controlled, not by the government, but by its individual employees. Contrary to plaintiffs' contention [Dkt. #143 at 6], this Court did not direct defendants to do anything in the conference of November 28, 2017.  Without either a motion or a review of the controlling law, this Court could not and did not issue an order, but the Court did express an inclination that plaintiffs were asking for too much, and defendants were offering too little.

---

[2] Defendants never objected, and produced all documents of deputies stored on MCSD equipment.

Thereafter, plaintiffs identified particular categories of documents to be produced by particular employees, less than half of the total, and defendants promptly complied.[3]

Defendants fully agree that "[t]his is a large, complex and important case." [Dkt. #143 at 2]. The preservation of the people's right of self-government in Madison County is of the utmost importance and is entitled to federal protection under Section 4 of Article IV of the Constitution. Notwithstanding the massive effort in which the parties have been engaged, this Court has issued only one order and only one recommendation compromising discovery disputes between the parties. To characterize this history as "Defendants' resistance to the production of relevant documents" [Dkt. #143 at 7] is ludicrous.

### B. The parties reached an agreement on production of documents, which complies with controlling law.

Plaintiffs complain at great length about the electronic format in which defendants produced some of the tens of thousands of documents demanded by plaintiffs. Discovery of electronically stored information ("ESI") is governed by Federal Rules of Civil Procedure 26 and

---

[3] Late in the afternoon on Friday, December 1, 2017, plaintiffs submitted their list of 25 deputies, and defendants worked to obtain any responsive hard copy and electronic documents in their personal possession. Most of these documents only existed in hard copy form, many of which were actual carbon copies of citations or tickets kept by the deputies after turning the originals in to the Justice Court. The vast majority of the other documents were copies of arrest report forms the deputies filled out and left with the Madison County Detention Center each time they brought an arrestee there subsequent to his arrest. Defendants produced those documents, which totaled over 4,950 pages of additional documents, on December 28, 2017.

34.    Rule 34 allows parties to request production of ESI within the scope of Rule 26(b).[4]  Rule

34(b)(2)(E)[5] sets forth additional procedures governing the production of documents or ESI:

> Unless otherwise stipulated or ordered by the court, these procedures apply to
> producing documents or electronically stored information: (i) A party must produce
> documents as they are kept in the usual course of business or must organize and
> label them to correspond to the categories in the request; (ii) If a request does not
> specify a form for producing electronically stored information, a party must
> produce it in a form or forms in which it is ordinarily maintained or in a reasonably
> usable form or forms; and (iii) A party need not produce the same electronically
> stored information in more than one form.

Rule 34 also establishes the mechanics for determining the form for production:  a party requesting

ESI production may specify the format in which it desires such information to be produced.  Fed.

R. Civ. P. 34(b)(1)(C).  The responding party may object to the requested format and must state

the form it intends to use for the production of ESI.  Fed. R. Civ. P. 34(b)(1)(D).  If the parties

"cannot agree and the court resolves the dispute, the court is not limited to the forms initially

chosen by the requesting party, stated by the responding party, or specified in this rule for situations

in which there is no court order or party agreement."  *See* Committee Note to 2006 Amendment to

Rule 34.  Here, the parties reached agreement without the intervention of the Court.

---

[4] Rule 26(b)(2)(B) addresses ESI discovery specifically, providing that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible *because of undue burden or cost.*"  *Id.* (emphasis added); *see also Dizdar v. State Farm Lloyds*, 2015 WL 12780640, at *3 (S.D. Tex. Jan. 21, 2015) (explaining that whether a producing party should be required to convert ESI from the way it is ordinarily maintained to a "more usable form" should be addressed under Rule 26(b)(2)(B)).

[5] Courts are split on whether both Rule 34(b)(2)(E)(i) and Rule 34(b)(2)(E)(ii) apply to ESI productions or whether an ESI production must comply with only Rule 34(b)(2)(E)(ii).  *Compare, e.g., Holmes v. N. Texas Health Care Laundry Coop. Ass'n*, 2016 WL 1366269, at *7 (N.D. Tex. Apr. 6, 2016) (citations omitted).  (Rules 34(b)(2)(E)(i) and 34(b)(2)(E)(ii) both apply to ESI productions), *with, e.g., Anderson Living Trust v. WPX Energy Prod.*, LLC, 298 F.R.D. 514, 520–27 (D.N.M. 2014) (holding the Rule 34(b)(2)(E)(i) requirement that documents be produced either in the usual course of business or labeled to correspond to categories in the request does not apply to ESI).

Local Rules in the Southern District also require parties to discuss, but not necessarily to agree on, an ESI protocol prior to the case management conference.  *See* Local Rule 26(e)(2)(B).  In the instant case, the parties initially were unable to reach an agreement regarding ESI protocols prior to the August 8, 2017, case management conference.  Following that conference, the parties renewed their efforts, engaging in substantial negotiations regarding various production protocols for all types of documents, both hard copy and ESI.  There were several areas of disagreement during the course of those negotiations, especially related to the ESI protocols demanded by Plaintiffs.  Plaintiffs demanded that ESI be produced in Tagged Image File Format ("TIFF"), while defendants demanded to retain the right to produce documents and ESI in Portable Document Format ("PDF").  Because defendants would bear the exorbitant expense of production, and given the uncertainty about volume of documents they would need to produce, defendants demanded that they retain the ability to produce most documents and ESI in PDF format.

The parties prepared a private Stipulation Regarding Production of ESI and Other Discovery Procedures ("stipulation") that included compromise language that, while recognizing Plaintiffs' preference for TIFF format, explicitly preserved defendants' ability to use PDF in many instances.  [Dkt. #143-1 at 9, Part II. A (*e.g.*, "[a]bsent special circumstances, emails held electronically shall be produced as a TIFF rather than as a PDF.")].[6]  Documents that existed only

---

[6] Neither during the previous negotiations nor now have plaintiffs adequately explained why their demand for TIFF format rather than PDF format is material to the documents that have been produced by defendants or how their failure to receive them in PDF format would ever justify a two-month discovery extension.  Defendants are filing as an exhibit, under seal, an example email produced in both PDF format (Bates stamped MC – EMAILS 1453) and TIFF format (Bates stamped MCSD_Emails_Reproduced-01687).  *See* Exhibit 1 to this Response.  A quick review of the same email in the different formats shows no material difference in how the email is displayed.  It is worth noting that PDF and TIFF file image formats are used interchangeably in litigation in district courts in the Fifth Circuit.  *See T-Rex Prop. AB v. JCDecaux N. Am., Inc.*, 2016 WL 9525603 (E.D. Tex. Sept. 12, 2016) (ordering all electronic documents to be produced in TIFF or PDF).  Likewise, courts have held that PDF versions of ESI are a "reasonably usable format consistent with Rule 34(b)" and "routinely prepared for litigation purposes."  *Dizdar v. Lloyds*, 2015 WL 12781039, at *12 (S.D. Tex. Jan. 21, 2015); *Gutierrez v. State Farm Lloyds*, 2015 WL 13188353, at *11 (S.D. Tex. Jan. 22, 2015); *Dizdar v. State Farm Lloyds*, 2015 WL 12781020, at *12 (S.D.

in hard-copy format were to be produced either as a physical hard copy, a TIFF image file, *or* PDF image file.  *Id.*, at 9, Part I. A.  The production of such documents was to be unitized and produced in the order in which they are kept in the usual course of business.  *Id.*, Part I. B.  With respect to most ESI, the producing party could produce either in a TIFF-image format or PDF-image format.  *Id.*, Part II. A.  Certain file types, *e.g.*, Excel documents, other Microsoft-based documents, and image or video files, were to be produced in their native file formats.[7]  *Id.*, Part II. B.  Contrary to the plaintiffs' claims, defendants have substantially complied with terms of the stipulation.

It is important to note that the instant dispute is not before the Court pursuant to enforcement of the stipulation or a motion to compel under Rule 37.  It is plain, then, that plaintiffs now have in their possession all responsive documents in proper form.  Instead, plaintiffs have assembled several alleged immaterial violations of the stipulation, which they acknowledge are moot, in order to urge this Court to grant two additional months of discovery.  Given plaintiffs' acknowledgment that they now have all documents, there is no basis to grant them two additional months of discovery, a burden and expense imposed upon the defendants that would unquestionably outweigh any benefit to plaintiffs, thereby violating the balancing test of Rule 26(b)(1) ("whether the burden of expense of the proposed discovery outweighs its likely benefit").

### C. Defendants have been cooperative throughout the discovery process, responding promptly to plaintiffs' requests so that discovery has not been hindered.

Plaintiffs portray defendants as uncooperative throughout the class discovery process.  This could not be further from the truth.  Defendants have provided plaintiffs with all of the documents

---

Tex. Jan. 7, 2015); *Reyna v. Lloyds*, 2015 WL 12940021, at *11 (S.D. Tex. Jan. 8, 2015); and *Dizdar v. State Farm Lloyds*, 2015 WL 12780640, at *11 (S.D. Tex. Jan. 21, 2015).

[7] This provision presupposes such files currently exist in native format in the MCSD's possession, custody, or control.  For example, there is no affirmative obligation to convert PDFs of an Excel spreadsheet into an editable Excel document.

they have requested within the scope of Rule 26(b) and produced them as promptly as possible.[8] The relative discovery burdens in this case are demonstrably one-sided. To date, plaintiffs have produced a total of seventy-three (73) pages of documents while defendants have produced over ninety thousand (90,000) pages of documents. Plaintiffs nevertheless cite several immaterial and moot production issues to justify two additional months of discovery.

More specifically, in Section I (A)(2) of their brief, plaintiffs repeatedly reference "deficiencies" in defendants' document production, suggesting defendants have documents in their possession that they have failed to produce. [Dkt. #143 at 7.] To the contrary, plaintiffs' complaints center around the format in which certain documents have been produced. In most instances, plaintiffs have complained about the production of documents in PDF format rather than TIFF format because, presumably, it is easier for plaintiffs' document review software to process documents in a TIFF file format.[9] The reason for defendants' production of certain documents in PDF format rather than TIFF format is really rather simple. Defendants had the ability to convert electronic documents into PDF format in-house because the process was simpler, more cost-efficient, and did not require the aid of an outside vendor to perform the unduly burdensome and costly TIFF conversion. Beyond this, defendants understood PDF file formats as a universally accepted manner of viewing, analyzing, and utilizing files in an electronic format, and that the

---

[8] This includes documents that were not actually in defendants' possession, custody or control, or subject to a proper request for production. For instance, defendants produced entire discovery files related to third-party litigation wholly unrelated to these proceedings in response to plaintiffs' informal requests.

[9] If this is the true reason, it would not have been unreasonable for plaintiffs to utilize a different document management software even if they incurred some cost in doing so, given the incredible discovery-related costs borne by defendants in this action.

parties reserved the option to produce certain documents as PDFs in the stipulation.[10]  *See* n. 6, *supra*.

Nevertheless, defendants continuously aimed to limit ESI disputes and granted each and every one of plaintiffs' requests to immediately reproduce massive amounts of documents in this case in TIFF format where plaintiffs complained, even though defendants were not obliged to do so under the Rules.  *See* Rule 34(b)(2)(E) ("A party need not produce the same electronically stored information in more than one form.").  Defendants agreed to endure the unnecessary expense of double production, rather than the expense of litigating the issues before the Court.  Importantly, plaintiffs offer no evidence demonstrating that their ability to review, analyze, and utilize these documents has been hindered by the initial production of PDFs rather than TIFFs.

Plaintiffs contend, again without evidence, that defendants' production of incident reports has been "haphazard" and that the almost three months it took to complete this production has prejudiced them in the discovery process, which warrants an extension of the class discovery.  Responsive incident reports were produced, and they were produced in a timely fashion.[11]  Once defendants received plaintiffs' first set of discovery requests at the end of September 2017, defendants immediately reached out to the vendor for the MCSD law enforcement database to discern a manner by which the incident reports could be exported *en masse* and reviewed by defendants' attorneys for responsiveness and for any needed redactions for privacy or privilege.  Defendants presented plaintiffs two options, including specimens, illustrating how incident report

---

[10] Production of a document in PDF rather than TIFF format does not change its appearance or the way in which the content is viewed.  A witness reviewing the documents would be unable to distinguish the difference in a document produced in PDF format rather than TIFF format by looking at the face of the document.

[11] This contention is remarkable by comparison.  It took defendants three months to review 85,688 incident reports before redacting and producing responsive reports.  It took plaintiffs over two months to produce declarations from putative class members they had in their possession.  *See* n. 1, *supra*.

data could be produced either in the form of a traditional incident report or in an Excel file format. *See* September 2017 Email Exchange Regarding Production of Incident Reports, Exhibit 2 to this Response.  Plaintiffs had several additional questions requiring several conference calls, emails, and other inquiries by defendants to technicians in order to provide informed responses to plaintiffs' various concerns.  Plaintiffs' counsel expressed their preference for production of the incident report data in the incident report format, and defendants began the process for exporting the potentially responsive incident reports from the MCSD law enforcement database.[12]

Defendants began producing responsive incident reports on October 2, 2017, and completed the process by December 7, 2017, forty days prior to the expiration of the class related discovery deadline on January 16, 2018.  Attorney Charles E. Cowan's affidavit [Dkt. #74-1] filed during the briefing on plaintiffs' motion to compel the production of unredacted addresses in the CAD statistical reports [Dkt. #64] explains the efforts undertaken by defendants to complete the production of incident reports in a timely fashion, which entailed reviewing approximately 85,688 incident reports and required more than six (600) hours of attorney time by that time.[13]  Plaintiffs are correct that some of these reports were not produced chronologically, which the law does not require, but this was primarily the result of plaintiffs' written demand for rolling productions of reports.  Regardless, because defendants produced the incident reports consistent with Part II of the stipulation (in TIFF format), plaintiffs were fully capable of easily categorizing and organizing

---

[12] The beginning of the review process was delayed by plaintiffs' demand that defendants produce unredacted incident reports, which would have provided personal identifying information regarding victims, witnesses, and (in some cases) confidential informants.  Substantial time was lost while defendants explained to plaintiffs why their demand for production of materials with sensitive personal information was wholly unreasonable.

[13] Collectively, document review in this matter, covering more than just the incident reports for the past five years, eclipsed more than nine hundred (900) hours of attorney time.

the small fraction of incident reports that were produced out of order during the rolling production. Any implication that defendants may have deliberately produced documents in this manner to frustrate discovery is baseless.

On October 23, 2017, three weeks after the first production, and well after they had approved the specimen, plaintiffs' counsel emailed defendants claiming that the format of the incident reports that plaintiffs had chosen omitted "key data fields." Defendants responded by noting that the law enforcement database utilized different incident report formats based on whether: (1) the incident report was one printed in hard copy using the law enforcement database module, which is only available for requesting and rendering *individual* incident reports, one at a time; or (2) the incident report was one electronically exported *en masse* from the law enforcement database module. *See* October 25, 2017, email from Charles Cowan to Issac Rethy, Exhibit 3 to this Response. Because all incident reports from Sheriff Tucker's tenure (2012 to present) totaled over 100,000 in number, the law enforcement database vendor electronically exported the incident reports; the law enforcement database module was not capable of printing such a substantial number of reports *en masse* and to produce the incident reports in that format on that scale would have required the vendor significantly rewrite the software used by Madison County. *Id*. Defendants further pointed out that the "missing" data fields were inconsequential and did not omit any information that was material to plaintiffs' claims in the case.[14] *Id*.

Nevertheless, to allay plaintiffs' concerns, defendants agreed to work with their vendor to produce Excel files containing the additional information and defendants sent examples of the

---

[14] Fields that were not displayed in the incident reports included, *inter alia*,: (1) the original dispatch code for the type of incident as opposed to the final dispatch code for the incident type; (2) the received, dispatched, arrived, and cleared from dispatch times; (3) subdivision/neighborhood, if any; (4) day of the week; (5) building number, if any; and (6) apartment number, if any.

Excel files containing this information on November 7, 2017.  *See* November 7, 2017, email from Charles Cowan to Issac Rethy, Exhibit 4 to this Response.  It was not until December 13, 2017, over five weeks later, that plaintiffs finally acknowledged they indeed wished for defendants to produce this additional information subject to several specific formatting changes to one of the files.  *See* December 13, 2017, email from Issac Rethy to defendants' counsel, Exhibit 5 to this Response.  Defendants, after conferring with their law enforcement database vendor, produced the entirety of these files on December 28, 2017, two weeks after receiving plaintiffs' request.  The incident reports originally produced by defendants contain all potentially relevant class-related information,[15] and plaintiffs have used approximately eighty-nine (89) of these incident reports in the various depositions they have taken of individuals in this case.

Plaintiffs also take issue with the PDF production of emails by defendants.  Defendants produced three hundred seventy-four (374) pages of responsive emails and accompanying documents on September 1, 2017, *in PDF format*.  Defendants informed plaintiffs they had culled emails using the search terms "Traffic Stop, "Roadblocks," "Road Blocks," "Safety Checkpoints," "Pedestrian Stops," "Searches," "Search," or "Search Warrants."  Notably, on October 2, 2017, plaintiffs emailed their objection to defendants' choice of search terms, submitting their own extensive list of search terms for defendants to use instead.  *See* Email from Kavitha Sivashanker to defendants' counsel on Oct. 2, 2017, Exhibit 6 to this Response.  Nowhere in this email did plaintiffs object to defendants' producing emails in PDF form.  In fact, plaintiffs never objected to the use of PDF for producing emails until after defendants acquiesced to their demands to research all emails using their expanded search terms.

---

[15] For example, information regarding those who have been the subject of searches, seizures, and arrests by MCSD deputies is contained in those incident reports.  The "key data fields" Plaintiffs identify have nothing to do with identifying those individuals who could potentially be class members.

Following receipt of plaintiffs' expanded search terms, defendants searched all MCSD emails, including any that existed prior to 2012, using the new search terms proposed by plaintiffs. The results of this search were reviewed by counsel for defendants.  This process was completed by November 22, 2017, and resulted in the production of approximately two thousand one hundred and fourteen (2,114) pages of emails and various attachments, all of which were produced in PDF format.  Finally, on December 13, 2017, plaintiffs complained that the production of the emails in PDF format violated the stipulation and demanded that defendants undertake the effort to reproduce the emails in TIFF image format.  Ex. 5.  Plaintiffs, of course, were wrong because "special circumstances" existed within the meaning of the stipulation.  Plaintiffs dramatically expanded the search by including search terms of little or no relevance, and they waited over two months to raise their format objections.   Despite the additional costs and the fact that Rule 34(b)(2)(E)(3) did not require reproduction, defendants reproduced materials eight days after the objection was raised, on December 21, 2017, while plaintiffs continued to use the allegedly deficiently-produced documents during depositions of defendants.

Plaintiffs also complain that the production of emails in PDF format rather than TIFF image format hampered their ability to review and analyze defendants' document production.  As PDFs are a universally accepted and easily digested electronic format in which to view documents, plaintiffs cannot claim production of the emails in PDF format affected their ability to review and analyze these emails.  Indeed, on at least twelve (12) occasions plaintiffs have utilized emails produced by defendants in PDF format in the depositions of individuals in this case.  The same logic applies to the "Composite PDF Files" plaintiffs discuss in their brief.  [Dkt. #143 at 9-10.][16]

_____

[16] Defendants did not agree to reproduce the entirety of the MCSD DUI monthly reports from 2012 until present (MC – DUI MONTHLY RPTS – 1 to MC – DUI MONTHLY RPTS – 12275) because they were hard copy documents and not electronically stored information.  These documents were organized chronologically and produced in the manner in which they were kept in the ordinary course of business.

Plaintiffs complain that the production of these files in PDF file format rather than TIFF image file format has affected their ability to review these documents, but, again, they offer no evidence of how an attorney reviewing a TIFF image rather than a PDF could possibly impede that attorney's review of the impact of that material on his or her case.[17]

## CONCLUSION

The evidence submitted by defendants demonstrates the extraordinary, and extraordinarily expensive, efforts they have undertaken to satisfy plaintiffs' unreasonable discovery demands. Plaintiffs have submitted no evidence whatsoever, nor have they shown any conceivable reason for extending this expensive process by another two months. This Court should overrule plaintiffs' motion to extend the discovery deadline.

The parties have reached an agreement on the sequence of expert discovery in connection with the forthcoming motion for class certification. Defendants have agreed that plaintiffs may provide the required expert disclosures and respond to defendants' expert discovery on the date that they file the certification motion. Within 30 days thereafter, defendants will have the right to depose plaintiffs' experts, and defendants will present their own expert disclosures and discovery responses along with the filing of their opposition brief at the end of that period. Thereafter, plaintiffs will have 30 days to depose defendants' experts and file their reply brief.

---

Plaintiffs complained of the manner in which these were produced (again requesting that they be produced in TIFF image format). Defendants explained that the ESI stipulation allowed them to produce any hard copy documents in hard copy format (i.e., to make print copies of them and produce), but that they produced them in an electronic format (PDF) for the parties' convenience. If plaintiffs so desired, defendants explained that they would print these off and mail them to plaintiffs. Plaintiffs refused. Again, plaintiffs' complaints involve the format of production, but not that defendants have failed to produce documents.

[17] Plaintiffs specifically address defendants' production of MCSD deputies' Monthly Activity Forms and Monthly Citation Forms (MC – RFP (2) 26-1 to MC – RFP (2) 26-6415). They claim these are not organized by date or deputy. Defendants have reviewed these and found that they are indeed logically organized by month and year (i.e., June 2012, July 2012, August 2012 . . . .). Defendants have agreed to reproduce these forms in TIFF image format. It is the only set of documents that plaintiffs have requested defendants reproduce that remain outstanding.

This Court should approve that agreement under Rule 16(b)(4). The only matter on which the parties have not agreed is the due date for the certification motion. While 60 days seems unduly lengthy to defendants, plaintiffs' failure to reveal anything at all about their experts makes it difficult to judge. Defendants will accept whatever date this Court should determine to be appropriate.

This the 5th day of January, 2018.

Respectfully submitted:

**MADISON COUNTY, MISSISSIPPI and
SHERIFF RANDALL C. TUCKER, IN
HIS OFFICIAL CAPACITY**

BY:     *s/ Michael B. Wallace*
   Michael B. Wallace (MSB #6904)
   Charles E. Ross (MSB #5683)
   James E. Graves (MSB #102252)
   Charles E. Cowan (MSB #104478)
   WISE CARTER CHILD & CARAWAY, P.A.
   Post Office Box 651
   Jackson, Mississippi  39205-0651
   Telephone: 601-968-5534
   Facsimile: 601- 944-7738
   mbw@wisecarter.com
   cer@wisecarter.com
   jeg@wisecarter.com
   cec@wisecarter.com

   and

   T. Russell Nobile (MSB #100682)
   WISE CARTER CHILD & CARAWAY, P.A.
   2510 14th Street, Suite 1125
   Gulfport, Mississippi 39501
   Telephone: 228-867-7141
   Facsimile: 228-867-7142
   trn@wisecarter.com

OF COUNSEL:

Rebecca B. Cowan #7735
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Dr.
Jackson, MS   39232
P.O. Box 750
Jackson, Mississippi  39205-0750
Telephone: 601-969-1010
Facsimile:  601-969-5120
bcowan@curriejohnson.com

Katie Bryant Snell (MSB# 103607)
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi 39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

## <u>CERTIFICATE OF SERVICE</u>

I, Michael B. Wallace, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

Joshua Tom, Esq.
American Civil Liberties Union of Mississippi Foundation
233 E. Capitol Street
Jackson, MS 39201
JTom@aclu-ms.org

Jonathan K. Youngwood, Esq. (*pro hac vice*)
Janet A. Gochman, Esq. (*pro hac vice*)
Isaac Rethy, Esq. (*pro hac vice*)
Nihara K. Choudhri, Esq. (*pro hac vice*)
Yukiu Chan, Esq. (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
Jumin Lee (*pro hac vice*)
Simpson Thatcher & Bartlett, LLP
425 Lexington Avenue
New York, NY 10017
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
monica.chan@stblaw.com
bonnie.jarrett@stblaw.com
christopherjumin.lee@stblaw.com

Ezekiel Edwards, Esq. (*pro hac vice*)
Jeffery Robinson, Esq. (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
eedwards@aclu.org
jrobinson@aclu.org

This the 5th day of January, 2018.

*s/Michael B. Wallace*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**LATOYA BROWN; LAWRENCE BLACKMON**
**HERBERT ANTHONY GREEN; KHADAFY MANNING;**
**QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS**
**SINGLETON; STEVEN SMITH; BESSIE THOMAS; and**
**BETTY JEAN WILLIAMS TUCKER, individually and on**
**behalf of a class of all other similarly situated,**                    **PLAINTIFFS**

**v.**                                        **CIVIL ACTION NO. 3:17-cv-347 WHB LRA**

**MADISON COUNTY, MISSISSIPPI; SHERIFF**
**RANDALL C. TUCKER, in his official capacity; and**
**MADISON COUNTY SHERIFF'S DEPUTIES JOHN**
**DOES #1 through #6, in their individual capacities,**                    **DEFENDANTS**

---

**EXHIBIT 1**

---

Exhibit 1 to Defendants' Response Brief in Opposition to Plaintiffs' Motion to Modify Case Management Order is being filed conventionally under seal pursuant to the stipulated protective order entered by this Court on September 6, 2017.   *See* [Dkt. #32].

| From: | Rethy, Isaac |
| --- | --- |
| To: | Russell Nobile; Charles Cowan |
| Cc: | Charlie Ross; Mike Wallace; Becky Cowan; katie@katiebryantsnell.com; James Graves; Youngwood, Jonathan; JTom@aclu-ms.org; PWu@aclu-ms.org; eedwards@aclu.org; jrobinson@aclu.org; Choudhri, Nihara K; Gochman, Janet A. |
| Subject: | RE: Confidentiality Order [EXT] |
| Date: | Friday, September 15, 2017 5:10:52 PM |
| Attachments: | image001.png |

Russ,

As we discussed a few minutes ago, we are in agreement that documents other than emails (excluding the various types of files to be produced in native or otherwise treated separately, per the other terms of the stip) can be produced in TIFF or PDF form, and that emails will be produced as TIFFs, not PDFs.  You will get back to me on defendants' position on including custodian metadata fields.  Once that issue is addressed, we will be done with the ESI stip.

As we also discussed, we think it makes sense at this time to produce the incident reports in PDF format.  You agreed that defendants would produce the incident reports in that format.

Best,
Isaac

---

Isaac Rethy
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

T: +1-212-455-3869
irethy@stblaw.com

**From:** Russell Nobile [mailto:trn@wisecarter.com]
**Sent:** Thursday, September 14, 2017 4:12 PM
**To:** Rethy, Isaac <IRethy@stblaw.com>; Charles Cowan <cec@wisecarter.com>
**Cc:** Charlie Ross <cer@wisecarter.com>; Mike Wallace <mbw@wisecarter.com>; Becky Cowan <bcowan@curriejohnson.com>; katie@katiebryantsnell.com; James Graves <jeg@wisecarter.com>; Youngwood, Jonathan <jyoungwood@stblaw.com>; JTom@aclu-ms.org; PWu@aclu-ms.org; eedwards@aclu.org; jrobinson@aclu.org; Choudhri, Nihara K <NChoudhri@stblaw.com>; Gochman, Janet A. <jgochman@stblaw.com>
**Subject:** RE: Confidentiality Order [EXT]

Isaac,

      Attached are several delimited CSV files ("Excel") with the exported data contained in the incident report samples we previously sent.   As we discussed, each incident report extracts underlying information from several data files.  Each of the attached Excel files contains data that is



displayed in the incident reports but exported into Excel from the data files.  The incident numbers are listed in "column 1."

Each incident is unique as is the information collected.  Thus, each incident report may not contain information for each data files because no information relating to that data file was entered when the incident was created.  For example, the sample report for the apartment walk thru (SO12000002) we previously provided you does not utilize the "PERSONS.CSV" because that incident did not have any information regarding persons recorded, only an address (contained in the EVENTS.csv).  These Excel files I've attached to this email represent the data files that contain information from the sample reports we sent.

We've been working internally to try to figure out a way to facilitate the exporting of information into one excel file.  Unfortunately, the incident data must be extracted from the respective data files and results in an Excel file for all the discoverable information in each data file.  The exporting of the incident data into the incident reports in PDF format provide the most immediate context and complete information when reviewing.  Accordingly, Defendants intend to produce information regarding each incidents in an image format of the incident reports like the samples we previously provided you.  Otherwise, the exporting of the incident data into multiple Excel files (such as these attached) rather than through images of the incident report creates data issues.  This was what I attempted to briefly explain when we spoke a few minutes ago.  Regardless, all of the original underlying data will be maintained.

Regarding your revisions to the ESI stipulation circulated, there seems to be backtracking on issues we previously believed we'd reached an agreement on.  First, we conceded to Plaintiffs requests for TIFF files and metadata, especially as it relates to emails, but said that we reserved the right to produce certain electronic and hard copy files as PDFs, on a case by case basis.  That option was struck from your revised draft.  I can only speculate as to Plaintiffs concerns about PDFs, but unquestionably it is a standard production format in federal districts across the country, including the SDMS.  Second, many of the specific provisions you added back in add additional levels of complexity and little substance.  As we previously mentioned, we view the specifications as burdensome and needlessly increasing costs, and do not account for various issues that will arise given the breadth of the RFPs.  Nevertheless, to move this process along, we have accepted most of your edits, save those noted in the attached revision.

Please let me know if you have any questions.  I'm happy to speak with you further about the incident reports issues.

Russ


**From:** Rethy, Isaac [mailto:IRethy@stblaw.com]
**Sent:** Wednesday, September 13, 2017 2:11 PM
**To:** Charles Cowan <cec@wisecarter.com>
**Cc:** Charlie Ross <cer@wisecarter.com>; Mike Wallace <mbw@wisecarter.com>; Becky Cowan

<bcowan@curriejohnson.com>; katie@katiebryantsnell.com; James Graves <jeg@wisecarter.com>;
Youngwood, Jonathan <jyoungwood@stblaw.com>; JTom@aclu-ms.org; PWu@aclu-ms.org;
eedwards@aclu.org; jrobinson@aclu.org; Choudhri, Nihara K <NChoudhri@stblaw.com>; Gochman,
Janet A. <jgochman@stblaw.com>; Russell Nobile <trn@wisecarter.com>
**Subject:** RE: Confidentiality Order

Charles,

Please let us know when you will be able to get back to us regarding the revised ESI stipulation
I circulated in my email below.

Also, in your email from last Thursday, you stated that you would provide a sample of the
exported data in Excel format from the MCSD database so that we could determine whether
production of this data in that format was workable.  I don't believe you have sent this yet.
Could you also let us know your anticipated timing on that?  We would like to get both of
these issues resolved as soon as possible.

Thanks much,
Isaac

_____

Isaac Rethy
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

T: +1-212-455-3869
irethy@stblaw.com

**From:** Rethy, Isaac
**Sent:** Monday, September 11, 2017 12:16 PM
**To:** Charles Cowan <cec@wisecarter.com>
**Cc:** Charlie Ross <cer@wisecarter.com>; Mike Wallace <mbw@wisecarter.com>; Becky Cowan
<bcowan@curriejohnson.com>; katie@katiebryantsnell.com; James Graves <jeg@wisecarter.com>;
Youngwood, Jonathan <JYoungwood@STBLAW.com>; JTom@aclu-ms.org; PWu@aclu-ms.org;
eedwards@aclu.org; jrobinson@aclu.org; Choudhri, Nihara K <NChoudhri@stblaw.com>; Gochman,
Janet A. <jgochman@stblaw.com>; Russell Nobile <trn@wisecarter.com>
**Subject:** RE: Confidentiality Order

Charles,

I've attached revisions to your draft, in track changes on a version that accepts your latest
changes.  Our added language is intended to ensure that production specifications are
reasonably uniform across productions and document types, and we do not believe that these

| From: | Charles Cowan |
|---|---|
| To: | "Rethy, Isaac" |
| Cc: | Mike Wallace; Youngwood, Jonathan; Russell Nobile; Becky Cowan; katie@katiebryantsnell.com; James Graves; JTom@aclu-ms.org; PWu@aclu-ms.org; eedwards@aclu.org; jrobinson@aclu.org; Choudhri, Nihara K; Gochman, Janet A.; Charlie Ross; Sivashanker, Kavitha |
| Subject: | RE: Brown, et al. v. Madison County, et al. - Incident reports |
| Date: | Wednesday, October 25, 2017 11:11:00 AM |
| Attachments: | image001.png |

Issac,

I write in response to your 10/23/17 email regarding the incident reports.  Your email raises several concerns regarding information fields and incident report formats.  Your email concludes by directing the Defendants to "re-produce complete versions [of] all responsive incident reports."

Defendants have gone to great lengths to respond to Plaintiffs' document requests.  In particular, Defendants worked for several weeks to address technical issues created by the Plaintiffs' requests, before holding several calls with the Plaintiffs' team to discuss production issues. Plaintiffs received copies of the "seemingly complete versions" of the incident reports as part of the ACLU's public records requests and copies of the "seemingly complete versions" of incident reports on the individual Plaintiffs as part of Defendants' September 1, 2017, initial disclosures.  Plaintiffs received a sample report on August 31, 2017, which was in the batch format to which Plaintiffs now object.  Following that email, the parties continued to meet and confer regarding the format for producing electronically stored incident reports, *en masse*, as reflected in Defendants' September 14, 2017, email to Plaintiffs.  That email explained the extraction process and the options available to Plaintiffs and again provided sample incident reports with the same batch formatting and information contained in the reports to which Plaintiffs now object.   By email dated September 15, 2017, Plaintiffs confirmed that of the two options for electronic export, Plaintiffs chose the batch format option rather than the Excel format option.  Plaintiffs never objected that the batch format omitted information or that the incident reports were not otherwise in the identical format of the individual incident reports that had been in Plaintiffs' possession for over year following ACLU's public information request or for two weeks in this litigation. The reason for providing sample incident reports in the batch format during the meet and confer was so Plaintiffs would be aware of the incident report formatting and the information contained therein.  Plaintiffs were afforded the opportunity to review different production formats before choosing their preferred format prior to production.  Additionally, your email now references "other produced iterations of these documents," which seems to suggest that Defendants have produced the same incident reports, *en masse*, in different formats.  That is not the case.  It is unclear if your concerns are based on the specific technical capabilities of MCSD's system or Plaintiffs' expectations of how MCSD's law enforcement software should operate. Despite those questions, and doubts about the materiality of the information fields you cite, we respond to your concerns.

EXHIBIT

3

tabbies'

Taking the issues out of order, I begin with the concerns contained the second paragraph to your email wherein you claim that Defendants have produced incident reports in multiple formats.   Again, that is not the case here.  The "seemingly complete version" format you reference (MC RFP 9-46 and 9-47) and the "Public Release" version are examples of incident reports that were printed in hard copy using the law enforcement software module. This module is only available for requesting and rendering *individual* incident reports, one at a time.  Here, all incident reports from Sheriff Tucker's tenure, which total over 100,000, were potentially responsive to Plaintiffs' extensive document requests.  The module is not capable of rendering or exporting such a substantial number of reports, *en masse*.   We understand that to produce the "seemingly complete version" you now request in the scale required by your request for production would require that the vendor significantly rewrite the software used by Madison County.  We are limited by the capabilities of the law enforcement database software given the *en masse* nature of the request.  Likewise, any allegedly omitted information can be provided separately.

The batch reports do have superficial differences in the fields displayed compared to the incident reports produced individually, as described above.  For example, the information fields that the batch reports are incapable of providing are the "Reported as" field and the "Call Disposition" field, as your email noted were omitted.  I note, the "Incident Type" field displayed on the batch reports is the same as the "Actual Offense" field on the individual reports.  We disagree with your claim the incident report production excluded "key fields" and "critical relevant information."  The fields you cite are simply not material.

Nevertheless, we understand that Madison County can produce the immaterial information contained in the additional data fields you identified.   We can produce this information in a series of files in Excel file format covering every batch incident report Defendants are producing.  This would provide Plaintiffs the information you contend is needed and "critical."

Charles E. Cowan
*Attorney*
Post Office Box 651
Jackson, MS 39205-0651
600 Heritage Building
401 East Capitol St.
Jackson, MS 39201
P: 601-968-5514
F: 601-968-5519
E: cec@wisecarter.com
www.wisecarter.com



Connect with us  Linked in

The preceding e-mail is privileged and confidential and is intended only for the named addressee.  If you received this message in error, please delete it and notify the sender by return e-mail or by phone at the numbers noted above.

**From:** Rethy, Isaac [mailto:IRethy@stblaw.com]
**Sent:** Monday, October 23, 2017 3:17 PM
**To:** Mike Wallace <mbw@wisecarter.com>; Charles Cowan <cec@wisecarter.com>; Youngwood, Jonathan <jyoungwood@stblaw.com>; Russell Nobile <trn@wisecarter.com>; Becky Cowan <bcowan@curriejohnson.com>; katie@katiebryantsnell.com; James Graves <jeg@wisecarter.com>; JTom@aclu-ms.org; PWu@aclu-ms.org; eedwards@aclu.org; jrobinson@aclu.org; Choudhri, Nihara K <NChoudhri@stblaw.com>; Gochman, Janet A. <jgochman@stblaw.com>; Charlie Ross <cer@wisecarter.com>; Sivashanker, Kavitha <Kavitha.Sivashanker@stblaw.com>
**Subject:** Brown, et al. v. Madison County, et al. - Incident reports

Counsel,

It has come to our attention that the versions of the incident reports produced by defendants appear to be missing several key fields, including the "Call Disposition" field and the fields for "Reported As" or "Actual Offense." The incident reports instead include a field for "Incident Type." It is not clear whether the "Incident Type" field corresponds to the "Reported As" field or the "Actual Offense" field.  The produced reports also exclude other relevant data, including the "Arrived" and "Cleared" times that appear in other produced iterations of these documents.

Defendants appear to have produced incident report in multiple formats, including a seemingly complete version (see, for example, MC RFP 9-46 to 47); a "Public Release" version, which seems to contain some but not all of the information contained in the complete version of these incident reports; and an even more limited and incomplete version of the "public release" version, which appears to be the version defendants are presently producing in discovery in this action. (Defendants have produced more complete versions of limited subsets of these same incident reports in response to, for example, public records requests filed by the ACLU of Mississippi).

In light of this, it appears that the incident reports defendants have produced in discovery in this litigation are missing critical relevant information.  Defendants must therefore re-produce

complete versions all responsive incident reports. Please confirm that Plaintiffs will receive this revised production promptly.

Best,
Isaac

_____

Isaac Rethy
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

T: +1-212-455-3869
irethy@stblaw.com

| From: | Charles Cowan |
|---|---|
| To: | "Rethy, Isaac" |
| Cc: | Mike Wallace; "Youngwood, Jonathan"; Russell Nobile; "Becky Cowan"; "katie@katiebryantsnell.com"; James Graves; "JTom@aclu-ms.org"; "PWu@aclu-ms.org"; "eedwards@aclu.org"; "jrobinson@aclu.org"; "Choudhri, Nihara K"; "Gochman, Janet A."; Charlie Ross; "Sivashanker, Kavitha" |
| Subject: | RE: Brown, et al. v. Madison County, et al. - Incident reports |
| Date: | Tuesday, November 07, 2017 5:44:00 PM |
| Attachments: | VehicleFile.xlsx |
| | PropertyFile.xlsx |
| | PersonsFile.xlsx |
| | EventFile.xlsx |
| | image001.png |

Issac,

In follow up to my email below, I have attached to this email a series of four (4) excel files covering the three representative incident reports I provided to you earlier.  These files contain complete listing of fields contained in the printed-off incident report, but not the batch incident report.  I note that only two of the incidents used the vehicle database file, while the other example did not.  The same logic applies to the three other file types (property, persons, and event).  Whether a particular report utilizes a particular database file depends on the nature of the incident report.

Thanks,

Charles E. Cowan
*Attorney*
Post Office Box 651
Jackson, MS 39205-0651
600 Heritage Building
401 East Capitol St.
Jackson, MS 39201
P: 601-968-5514
F: 601-968-5519
E: cec@wisecarter.com
www.wisecarter.com



Connect with us  Linked **in**

EXHIBIT

4

The preceding e-mail is privileged and confidential and is intended only for the named addressee.  If you received this message in error, please delete it and notify the sender by return e-mail or by phone at the numbers noted above.

**From:** Charles Cowan
**Sent:** Friday, November 03, 2017 6:35 PM
**To:** Rethy, Isaac <IRethy@stblaw.com>
**Cc:** Mike Wallace <mbw@wisecarter.com>; Youngwood, Jonathan <jyoungwood@stblaw.com>; Russell Nobile <trn@wisecarter.com>; Becky Cowan <bcowan@curriejohnson.com>; katie@katiebryantsnell.com; James Graves <jeg@wisecarter.com>; JTom@aclu-ms.org; PWu@aclu-ms.org; eedwards@aclu.org; jrobinson@aclu.org; Choudhri, Nihara K <NChoudhri@stblaw.com>; Gochman, Janet A. <jgochman@stblaw.com>; Charlie Ross <cer@wisecarter.com>; Sivashanker, Kavitha <Kavitha.Sivashanker@stblaw.com>
**Subject:** RE: Brown, et al. v. Madison County, et al. - Incident reports

Issac,

  Attached are side-by-side comparisons showing the batch incident reports produced by Defendants en masse and the "seemingly complete" incident reports (using your terminology) individually printed in hard copy form from the law enforcement software module.

  As for the third category of your request, the vendor needs additional time, until Tuesday, to work on the programming of the production of the additional data fields into the Excel files for these three representative reports I attached.  Once I'm provided a copy, I will forward to you.

Charles E. Cowan
*Attorney*
Post Office Box 651
Jackson, MS 39205-0651
600 Heritage Building
401 East Capitol St.
Jackson, MS 39201
P: 601-968-5514
F: 601-968-5519
E: cec@wisecarter.com
www.wisecarter.com



| From: | Rethy, Isaac |
|---|---|
| To: | James Graves; Mike Wallace; Russell Nobile; Charlie Ross; bcowan@curriejohnson.com; Katie Snell; Charles Cowan |
| Cc: | Joshua Tom; jrobinson@aclu.org; Youngwood, Jonathan; Gochman, Janet A.; Sivashanker, Kavitha; Choudhri, Nihara K; Jarrett, Bonnie; eedwards@aclu.org |
| Subject: | Latoya Brown, et al. v. Madison County, MS, et al., No. 3:17-cv-347 WHB LRA |
| Date: | Wednesday, December 13, 2017 10:49:12 AM |

Counsel,

I am writing regarding a number of discovery issues.

First, regarding the scheduling of plaintiffs' depositions, we can confirm Ms. Manning's availability for deposition on December 22.  We can also make Mr. Singleton available for deposition on December 29.  However, due to Mr. Singleton's work schedule, we will need to start the deposition at 10:30 a.m.  Please confirm that this works for you.

Second, on December 1, we emailed you with a list of MCSD personnel for whom we request that you produce documents in their "personal" possession, per Judge Anderson's guidance. We also asked you to confirm the date by which Defendants anticipate completing such productions and to advise if production of such documents was already complete with respect to any of the custodians.  Defendants have not responded.  Please do so.

Third, regarding production of MVR recordings, we ask that Defendants produce all MVR records corresponding to the following incidents:

- Incident SO12012392  (August 2, 2012, approximately 11 pm @ George Washington Ave. and Martin Luther King Dr.)
- Incident SO13016118  (September 18, 2013, approximately 10 pm @ Weisenberger Road)
- Incident SO15004075  (March 19, 2015, approximately 10 am @ 100 Middle Road and Highway 49)
- Incident SO16002097  (February 9, 2016, approximately 2 am @ M-Tek, Church Road and Old Jackson Road)
- Incidents SO16018449 and SO16018450  (November 27, 2016, approximately 3 am @ I-55 northbound, near Highway 16)

The times and locations listed above are as set forth in the reports related to these incidents. Please note that we reserve the right to seek additional MVR data, and this request does not represent agreement with Defendants' position that they have no production obligations with respect to MVR recordings absent such specific requests.

Fourth, our response to your December 8 email concerning technical deficiencies in



EXHIBIT
5

Defendants' document production is below.

Hard Copy Documents:  The problem with the production of hard copy documents is not the PDF conversion itself, but the way in which Defendants have chosen to format the PDFs. Nearly every PDF file that Defendants have produced to date has merged distinct documents into a single record; with the DUI reports, for example, it appears thousands of distinct documents have been merged into a single PDF file.  As such, Plaintiffs are not even able to determine where a particular report begins and ends within the consolidated PDF file.  This is directly contrary to the ESI Protocol, which specifically requires logical unitization for this reason (among others).  ESI Stip. at 2 ("[Converted] documents should be logically unitized (i.e., distinct documents shall not be merged into a single record . . . and be produced in the order in which they are kept in the usual course of business.").  Even notwithstanding the ESI Protocol, such requirement is a basic standard for any production of documents, so that a party can understand the association between individual documents and families of documents.  And there is, of course, no basis for requesting "cost shifting" where re-production is necessitated by Defendants' repeated violations of the ESI stipulation.  Plaintiffs are not requesting re-production in hard copy form, but simply proper unitization of Defendants' PDF production.

Emails and other ESI:  We consider the parties in agreement that Defendants will make a corrective re-production of the files maintained in electronic form, including emails.  However, we reiterate that such files should be produced in a manner that is compliant with the entirety of Section II and any other relevant provisions of the ESI Protocol, and not solely Section II(A) or II(B) of the ESI Protocol, as indicated in your December 8th email.  We further request that such re-production be made by the end of this week, particularly in light of Sheriff Tucker's deposition next week.  Plaintiffs should not be required to request specific documents on a one-off basis in connection with such re-production, as the ESI Protocol was entered into to avoid issues like these.

Media Files:  The ESI Stipulation clearly states that "[a]bsent special circumstances, any spreadsheet-type file (e.g., .xls, .xlsx, .csv), any PowerPoint or similar presentation file (e.g., .ppt, .pptx) and any photographic image, video or audio media file ('Media file') (e.g., video recording) shall be produced in its native format."  ESI Stip. at 3 (emphasis added).  This means that all Media Files that were originally kept in a different format but have been produced as PDF printouts are in violation of the ESI Stipulation.  *See, e.g.,* MC – RFP – 3 – 1-101 (Excel spreadsheet produced as PDF printout of grayscale image file); MC D. Smith Laptop 1-12 (photographic images produced as PDF printouts).  Please confirm that all Media Files (and, to be clear, not just the subset of examples set forth in the preceding sentence) will be re-produced in their native format when Defendants make their corrective re-production.

Finally, regarding incident report overlays, Plaintiffs would be willing to accept

supplementation via the Excel files described in Defendants' original proposal, with the following modifications to the Event File, which represent the minimum information necessary for Plaintiffs to make reasonable use of the Excel overlays:

1. The Event File Excel spreadsheet must contain both the original offense code and the actual offense code;

2. The codes must be listed using the actual names of the codes, rather than numbers representing the codes; and

3. The Event File must contain a date field; and

4. Defendants must produce one complete Event File Excel spreadsheet that reflects an entry for every incident report produced, in chronological order.

Please let us know if this proposal resolves this issue, and, if so, when Plaintiffs can expect to receive the supplemental spreadsheets.

Best,
Isaac

_____

Isaac Rethy
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

T: +1-212-455-3869
irethy@stblaw.com

| From: | Sivashanker, Kavitha |
|---|---|
| To: | Mike Wallace; Youngwood, Jonathan |
| Cc: | Charles Cowan; jtom@aclu-ms.org; PWu@aclu-ms.org; eedwards@aclu.org; jrobinson@aclu.org; Russell Nobile; James Graves; Charlie Ross; Rebecca Cowan (bcowan@curriejohnson.com); Gochman, Janet A.; Rethy, Isaac; Choudhri, Nihara K |
| Subject: | RE: Brown v. Madison County, et al. |
| Date: | Monday, October 02, 2017 12:12:52 PM |
| Attachments: | Brown v Madison - Plaintiffs' Proposed Search Terms.docx |

Mike,

In advance of our meet and confer tomorrow (Tuesday, October 3rd) at 1 PM CT, we highlight the following issues, reserving our rights to discuss any of the issues covered in the parties' recent correspondence on discovery.

Despite now being in receipt of pages of correspondence from Defendants, we still do not have an answer to the most basic discovery question in any litigation involving the collection of electronic documents and that we asked in our August 30, 2017 letter: whose emails, files, and documents did Defendants search and review for responsive documents? As we have repeatedly requested, in advance of tomorrow's call, please identify the current and former employees, agents, and/or representatives of defendant Madison County (or any other individuals or entities) whose emails, files, and/or documents have been collected and reviewed in response to Plaintiffs' Requests for Production of Documents. Simply stating that "[n]o individual deputy is considered a custodian of any file" is not a sufficient response from Defendants to this straightforward and necessary question for discovery discussions to proceed between the parties in any reasonable manner without the Court's intervention.

The narrow search terms that Defendants used to cull email data (as set forth in your September 22, 2017 letter) further are wholly inadequate for identifying all responsive and relevant documents concerning the practices at issue and in response to Plaintiffs' Requests for Production of Documents. Accordingly, please find attached Plaintiffs' proposed additions to Defendants' search terms. We request that Defendants run the attached search terms over any and all email and other electronic data potentially relevant to Plaintiffs' Requests for Production of Documents. Plaintiffs further reserve all rights to supplement and amend these search terms as the discovery process proceeds and further productions are received from Defendants.

Your September 26, 2017 letter also raises a number of other significant issues, including the following, which we ask that you be prepared to address on tomorrow's call. First, Defendants appear to be taking the position that to the extent information (such as CAD data) is included in the incident reports, Defendants will not be producing other responsive documents containing some of that same information (such as CAD reports and "after action" reports). This position is clearly untenable. Plaintiffs are entitled to all responsive documents, regardless of whether the information in those documents is or is not reflected in whole or part in the incident reports.

Second, Defendants' position that documents pre-dating January 2012 "are unlikely to provide relevant information" is not a proper basis for limiting discovery, or a proper objection under the federal rules. As Defendants are aware, Plaintiffs' Complaint alleges that the unconstitutional



EXHIBIT

6

policies at issue were in effect prior to Sheriff Tucker's tenure, and that Sheriff Tucker has continued these policies.  Documents from Sheriff Trowbridge's tenure therefore are both responsive and relevant, and must be produced.

Third, Defendants are not exempted from their obligation to produce responsive MVR records simply because Defendants have established a purportedly burdensome process for retrieving such records.  Defendants' suggestion that Plaintiffs must identify and justify requests for individual MVR records to ease Defendants' burden of production is unworkable, and improperly shifts the burden onto Plaintiffs to identify responsive records that are within Defendants' knowledge, custody, and control.


Best,
Kavitha

_____

Kavitha Sivashanker
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

T: +1-212-455-2197
kavitha.sivashanker@stblaw.com

**From:** Mike Wallace [mailto:mbw@wisecarter.com]
**Sent:** Friday, September 29, 2017 3:48 PM
**To:** Youngwood, Jonathan <jyoungwood@stblaw.com>
**Cc:** Sivashanker, Kavitha <Kavitha.Sivashanker@stblaw.com>; Charles Cowan <cec@wisecarter.com>; jtom@aclu-ms.org; PWu@aclu-ms.org; eedwards@aclu.org; jrobinson@aclu.org; Russell Nobile <trn@wisecarter.com>; James Graves <jeg@wisecarter.com>; Charlie Ross <cer@wisecarter.com>; Rebecca Cowan (bcowan@curriejohnson.com) <bcowan@curriejohnson.com>; Gochman, Janet A. <jgochman@stblaw.com>; Rethy, Isaac <IRethy@stblaw.com>; Choudhri, Nihara K <NChoudhri@stblaw.com>
**Subject:** RE: Brown v. Madison County, et al. [EXT]

We can confirm that we will be available at 1pm Mississippi time on Tuesday.  We can discuss the rest of your message at that time.

**From:** Youngwood, Jonathan [mailto:jyoungwood@stblaw.com]
**Sent:** Friday, September 29, 2017 2:11 PM
**To:** Mike Wallace <mbw@wisecarter.com>
**Cc:** Sivashanker, Kavitha <Kavitha.Sivashanker@stblaw.com>; Charles Cowan <cec@wisecarter.com>; jtom@aclu-ms.org; PWu@aclu-ms.org; eedwards@aclu.org; jrobinson@aclu.org; Russell Nobile <trn@wisecarter.com>; James Graves <jeg@wisecarter.com>; Charlie Ross <cer@wisecarter.com>; Rebecca Cowan (bcowan@curriejohnson.com) <bcowan@curriejohnson.com>; Gochman, Janet A. <jgochman@stblaw.com>; Rethy, Isaac <IRethy@stblaw.com>; Choudhri, Nihara K <NChoudhri@stblaw.com>