**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**LATOYA BROWN; LAWRENCE BLACKMON**
**HERBERT ANTHONY GREEN; KHADAFY MANNING;**
**QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS**
**SINGLETON; STEVEN SMITH; BESSIE THOMAS; and**
**BETTY JEAN WILLIAMS TUCKER, individually and on**
**behalf of a class of all other similarly situated,**                **PLAINTIFFS**

**VS.**                         **CIVIL ACTION NO. 3:17-cv-347 WHB LRA**

**MADISON COUNTY, MISSISSIPPI; SHERIFF**
**RANDALL C. TUCKER, in his official capacity; and**
**MADISON COUNTY SHERIFF'S DEPUTIES JOHN**
**DOES #1 through #6, in their individual capacities,**            **DEFENDANTS**

---

**MEMORANDUM IN SUPPORT OF [DKT. #209] MOTION BY DEFENDANTS**
**FOR SUMMARY JUDGMENT AS TO INDIVIDUAL**
**AND CLASS BASED CLAIMS BY PLAINTIFF, LATOYA BROWN**

---

COME NOW Defendants, Madison County, Mississippi, and Sheriff Randall C. Tucker, in his official capacity, by and through counsel, and respectfully submit the following Memorandum in Support of their Motion for Summary Judgment as to Individual and Class Based Claims by Plaintiff, Latoya Brown.

**INTRODUCTION**

The instant class-action lawsuit was filed on May 8, 2017, by ten plaintiffs. The Complaint is 86 pages long and contains 337 paragraphs. Brown claims violations of her Fourth and Fourteenth Amendment rights by personnel of the Madison County Sheriff's Department ("MCSD") under 42 U.S.C. §1983 and intentional racial discrimination under Title VI of the Civil Rights Act of 1964. She sues on behalf of herself and a purported class of individuals she defines as:

People who (1) are, or who appear to be, Black and those in their company, and (2) were, are, or will be in Madison County, and (3) were, are, or will be, subject to the MCSD's policy, custom, and/or practice of systematically executing unreasonable searches and seizures of person, homes, cars, and property on the basis of race."

Brown seeks only injunctive and declaratory relief from Defendants.  (#1, Pgs. 82-85).

## STATEMENT OF THE FACTS

Defendants refer this Court to the Statement of Facts they are filing separately in this action under seal with a copy of Brown's deposition taken in this action (Exhibit A) and her Second Supplemental Responses and Objections to Defendants' First Set of Interrogatories (Collective Exhibit B).   They were required to do so because Brown marked several portions of her deposition testimony as "confidential" and her entire responses to interrogatories as "confidential."  Defendants rely on portions of these discovery pleadings to support their Motion for Summary Judgment.

## ARGUMENT AND AUTHORITIES

The party moving for summary judgment bears the responsibility of providing the  court with the basis of its motion and identifying the portions of the record in the case that establish the absence of a genuine issue of material fact.  *Celotex Corporation v. Catrett*, 477 U.S. 317,  323 (1986).  Once the moving party has properly supported his motion for summary judgment, the non-moving party must respond by setting forth "specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also United Steel Workers, Etc. v. University of Alabama*, 599 F.2d 56 (5th Cir.1979).  "The moving party bears the initial burden of showing that there is no genuine issue for trial;  it may do so by pointing out the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation

omitted) (internal quotations omitted).  If the moving party meets its burden, "the nonmoving party who will have the burden of proof at trial must come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant."  *Id*.

*************

Brown's claims must be dismissed for two separate reasons.  First, there is no evidence Sheriff Tucker has ever deprived her of any federal rights.  Second, even if she could prove violations in the past, there is no likelihood she will be subjected to similar violations in the future, rendering injunctive relief unavailable.

### A. Brown Cannot Establish That She Has Been Subjected to Intentional Racial Discrimination.

Although Brown in her testimony describes a series of encounters with the MCSD, the heart of her complaint is not a succession of incidents, but a supposed policy of racial discrimination.  The very first paragraph of her complaint alleges that the MCSD "implements a **coordinated top-down program** of methodically targeting Black individuals for suspicionless searches and seizures while they are driving their cars, walking in their neighborhoods, or even just spending time in their own homes (the "Policing Program")."  [Dkt. #1 ¶ 1 (emphasis in original)].  This claim of intentional racial discrimination is the only basis in her complaint for her request to represent a class, describing the common issue as "whether the MCSD has a policy, practice, and/or custom of targeting members of the Class for unreasonable searches and seizures on the basis of race in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment."  [Dkt. #1 ¶ 304].  To obtain the only relief she seeks, which is on behalf of the class, Brown must prove, not merely a violation of her rights, but the existence of the "Policing Program" that she alleged.

She asserts her claims of intentional racial discrimination in the second and third causes of action of her complaint.  The second cause of action seeks relief under 42 U.S.C. § 1983 for violations of the Equal Protection Clause, which, of course, requires proof of intentional racial discrimination.  *Coleman v. Houston Independent School District,* 113 F.3d 528, 533 (5th Cir. 1997) (citations omitted).  *See also Vera v. Tue,* 73 F.3d 604, 609 (5th Cir.1996) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.")  Her third cause of action seeks relief under Title VI, 42 U.S.C. § 2000(d) *et seq.*, under which Brown, as a private party, must prove race discrimination by an entity that receives federal funds.  *Alexander v. Sandoval,* 532 U.S. 276, 280 (2001).  She cannot succeed with this claim simply by proving disparate impact.  *Id.*  Further, both the United States Supreme Court and the Fifth Circuit Court of Appeals have held that a private right of action under Title VI can only be brought for acts of intentional discrimination.  *Id.* at 281 ("What we said in *Alexander v. Choate*, 469 U.S. 287, 293 (1985), is true today, 'Title VI itself directly reaches only instances of intentional discrimination.'"

The only racial discrimination claim Brown describes in her deposition involves the MCSD's conducting roadblocks or checkpoints in predominately Black neighborhoods.[1]  She bases this claim solely on her observing checkpoints during the three and one-half years she lived in Canton Estates.  She saw five of these checkpoints while walking through her neighborhood, which is a predominately Black neighborhood, and one checkpoint set up on a highway on which, in her opinion, Blacks travel in order to go to work.  Brown's allegation is

---

[1]  Although Brown claimed in both her complaint [Dkt. #1 ¶ 4] and during her deposition that the MCSD has a policy of targeting only Black neighborhoods while conducting checkpoints, she does not include this policy while identifying and describing all MCSD policies she claims sanction or encourage" unreasonable searches and seizures or racial discrimination" while supplementing her responses to an interrogatory inquiring about these policies.  Therefore, it appears that she has abandoned this claim. (Exhibit B, Pgs. 3-6).

4

actually nothing more than an assertion that the roadblocks she questions were racially motivated because they were in predominately Black areas.  She in no way offers any evidence that Black areas were intentionally targeted.

This unreliable and sparse evidence is insufficient to support Brown's claims of a "Policing Program" of intentional racial discrimination by the MCSD throughout all of Madison County.  "A plaintiff's subjective belief of race discrimination cannot alone establish that he has been a victim of intentional discrimination." *Laborde v. City of Houston*, 31 F. App'x 151 (5th Cir. 2001) (citing *Ray v. Tandem Computers, Inc*., 63 F.3d 429, 434- 435 (5th Cir. 1995)).  *See also Nichols v. Grocer,* 138 F.3d 563, 570 (5th Cir. 1998) ("[A] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief.").  What Brown offers is her subjective belief that MCSD checkpoints are set up with the aim of intentionally discriminating against Blacks.  Without more, Brown cannot establish that MCSD checkpoints are placed or operate in such a manner as to intentionally discriminate against Blacks.  *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.") (en banc).   Brown's second and third causes of action, therefore, should be dismissed.

###    B.    Brown Cannot Create Genuine Issues of Material Fact Regarding Any Element of her Fourth Amendment Claims under 42 U.S.C. §1983.

To hold Madison County liable to her under §1983 in her first cause of action, Brown must allege and establish two threshold elements: (1) that she was deprived of a right or interest secured by the Constitution and laws of the United States, and (2) that the deprivation occurred under color of state law.  *See West v. Atkins,* 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor,* 451 U.S. 527, 535 (1981)), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S.

327, 331-32 (1986).  Defendants submit that Brown cannot satisfy the first element of this test because no act by any MCSD personnel violated her constitutional rights.[2]

Brown's §1983 claims against Defendants arise out of the following events: (1) three safety checkpoints conducted by the MCSD where Brown was asked to show her identification as a passenger in a vehicle; (2) an alleged warrantless entry into her apartment by deputies looking for a missing child; (3) two instances where Brown was approached by MCSD deputies and asked for her identification while in the parking lot of her apartment complex; (4) and two vehicle safety checkpoints where Brown was asked for her identification while voluntarily walking through them.  A review of the law applicable to these alleged constitutional violations shows that Brown has no §1983 claim against Defendants.

First, Brown suffered no constitutional violation when she was asked to show her identification while traveling through a MCSD checkpoint as a passenger.  In *United States v. Wise,* 877 F.3d 209, 220 (5th Cir. 2017), the Court held that "'a seizure does not occur simply because a police officer approaches an individual and asks a few questions.'" (quoting *Florida v. Bostick,* 501 U.S. 429, 434 (1991)).  The individual in *Wise* was a passenger on a bus who was approached by officers and consented to their request to show them his identification and to allow them to search his luggage.  The Court held that "police do not need reasonable suspicion to approach someone for questioning;" instead, "'[t]he encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.'" (quoting *Bostick*, 501 U.S. at 434). The *Wise* court held that "an encounter with police is "consensual" so long as the civilian would feel free to either terminate the encounter or disregard the questioning." *Id.* (citing *Bostick*, 501

---

[2] In addition, to secure relief against the County and Sheriff Tucker in his official capacity, Brown "must demonstrate a policy or custom which caused the alleged violation." *Brooks v. George County*, 84 F.3d 157, 165 (5th Cir.), *cert. denied*, 519 U.S. 948 (1996).  No evidence of any such policy exists, but the Court need not reach that issue, because no evidence of any violation of constitutional rights exists.

U.S. at 434).  Brown does not claim that she refused to show her identification to the officers at these checkpoints.[3]  Therefore, any protection she held at the time under the Fourth Amendment was not triggered.

Second, it is undisputed that the circumstances surrounding the MCSD deputies' entry into Brown's apartment did not involve an investigation of any criminal activity, *i.e.*, they did not enter her apartment to arrest anyone or obtain evidence of a crime.  Instead, Brown readily admits that the deputies immediately told her and Smith that they were searching for a missing child who lived at the apartment complex.  She also admits that while in her apartment, the deputies only looked in areas where a child could hide and shined a flashlight in the face of Brown's child who apparently was near the missing girl's age.  Finally, Brown acknowledges that the deputies were going door to door, walking up and down stairs of her building, and searching other apartments.

These circumstances described by Brown were clearly exigent ones that did not require the MCSD deputies to obtain search warrant.  As recognized by the Court in *Mincey v. Arizona,* 437 U.S. 385, 394 (1978), officers may enter a home if "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.  *Id.*  As stated above, the deputies were not conducting a criminal investigation.  Rather, they were searching for a missing child and wanted to return her to her mother.  Because probable cause was not an issue during their search, their entry into Brown's apartment was not a violation of her Fourth Amendment rights.  *See, e.g., U.S. v. Taylor,* 624 F.3d 626, 632-633 (4th Cir. 2010)(officers were not required to obtain a warrant before entering defendant's house with an abandoned four-year old girl to search for her parents); *see also*

---

[3] Other courts have applied these principles to passengers in an automobile at a checkpoint where the stop was not unreasonably extended.  *United States v. Slater*, 411 F.3d 1003, 1004-05 (8th Cir. 2005).

*Hunsberger v. Wood,* 570 F.3d 546 (4th Cir. 2009) (exigent circumstances allowed officers to enter a home at night to search for a teenage girl whose parents could not get her to answer her cell phone).

Third, the deputies who had two brief consensual encounters with Brown in her apartment complex parking lot did not violate her Fourth Amendment rights by asking her to show them her identification. The Fifth Circuit Court of Appeals has recognized three different "'tiers of citizen-police contact for purposes of [F]ourth [A]mendment analysis:'"

> The first tier involves no coercion or detention and does not implicate the fourth amendment. The second tier, an investigatory stop, is a brief seizure that must be supported by reasonable suspicion . . . Finally, the third tier is a full scale arrest [which] must be supported by probable cause.

*Lincoln v. Turner*, 874 F.3d 833, 840 (5th Cir. 2017) (quoting *United States v. Massi,* 761 F.3d 512, 520 (5th Cir. 2014). Brown's encounter falls under the first tier, and, as a result, nothing the deputies did while speaking with her constituted a seizure under the Fourth Amendment. *See, e.g., U.S. v. Cooper,* 43 F.3d 140, 145 (5th 1995) ("[A] "consensual encounter," during which an individual agrees to speak to officers, "may be initiated by the police without any objective level of suspicion" and is not a "seizure" under the Fourth Amendment).

The same holds true for Brown's claim that she was asked to show her identification to officers while walking through two vehicle safety checkpoints. Brown obviously consented to walking through both checkpoints since she did not turn around and walk away. Further, the fact that she was asked to show her identification or provide her Social Security number at the checkpoint does not support a claim that she was "seized." For a seizure to have occurred, Brown must have believed that she could not avoid the checkpoint by walking in another direction. *See, e.g., United States v. Mendenhall,* 446 U.S. 544, 554 (1980) (a seizure occurs only if "in view of all of the circumstances surrounding the incident, a reasonable person would

have believed that he was not free to leave . . . .").  Unlike someone driving a vehicle though a checkpoint, Brown's person was not seized during the checkpoints in question because she was free to walk away.  She did not testify that she was threatened by the presence of the officers at the checkpoint, that any of the officers displayed a weapon, that the officers made any physical contact with her or that they used words threatening her with compliance.  Without something to indicate that she was not free to walk away from the checkpoint, no seizure or a violation of Brown's Fourth Amendment rights occurred.  *See, e.g., Terry v. Ohio,* 392 U.S. 1, 19, n. 16 (1968).

> **C.     Brown Lacks Standing under Article III to Bring Her Own Claims for Injunctive and Declaratory Relief, as well as those of Her Purported Class Members.**

The United States Supreme Court has recognized three requirements for Article III standing.  First, "the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of . . . .  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *United States v. Hays,* 515 U.S. 737, 742-43 (1995) (quoting *Lujan v. Defenders of. Wildlife,* 504 U.S. 555, 560-561 (1992).  Further, because Brown is seeking injunctive and declaratory relief, she must show that she is "likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury."  *James v. City of Dallas,* 254 F.3d 551, 563 (5th Cir. 2001) *cert. denied,* 534 U.S. 1113 (2002).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."  *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495-96).  Instead, a plaintiff seeking injunctive or declaratory

9

relief "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future" *i.e.,* a "'substantial and continuing controversy' between two adverse parties" that is not "conjectural, hypothetical, or contingent . . . ." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003).

Brown cannot satisfy any of these Article III standing requirements.  She has no individual standing because she has not suffered a violation of her Fourth or Fourteenth Amendment rights.  She has proven no private right to sue under Title VI.  Finally, she cannot show that she is likely to suffer any injury in the future from any conduct by the MCSD since she no longer resides in Madison County or, for that matter, in the State of Mississippi.  Without standing under Article III, Brown cannot "seek [injunctive] relief on behalf of . . . herself or any other member of the [purported] class." *James,* 254 F.3d at 563 (citing *O'Shea,* 414 U.S. at 494). For these reasons, Brown lacks standing to pursue her claims or those of her purported class. Her individual claims should be dismissed with prejudice, and she should be disqualified from representing the class of individuals she seeks to represent in this matter.

## CONCLUSION

For the reasons set forth above, all of Brown's claims against Defendants should be dismissed with prejudice.

This the 7th day of March, 2018.

Respectfully submitted:

**MADISON COUNTY, MISSISSIPPI and SHERIFF RANDALL C. TUCKER, IN HIS OFFICIAL CAPACITY**

By:   */s/ Rebecca B. Cowan*
      Rebecca B. Cowan (MSB #7735)

OF COUNSEL:
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Dr.
Jackson, MS   39232
P.O. Box 750
Jackson, Mississippi  39205-0750
Telephone: 601-969-1010
Facsimile:  601-969-5120
bcowan@curriejohnson.com

Michael B. Wallace (MSB #6904)
Charles E. Ross (MSB #5683)
James E. Graves (MSB #102252)
Charles E. Cowan (MSB #104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39205-0651
Telephone: 601-968-5534
Facsimile: 601-944-7738
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com

T. Russell Nobile (MSB #100682)
WISE CARTER CHILD & CARAWAY, P.A.
2510 14th Street, Suite 1125
Gulfport, Mississippi 39501
Telephone: 228-867-7141
Facsimile: 228-867-7142
trn@wisecarter.com

Katie Bryant Snell (MSB #103607)
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi 39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

J. Lawson Hester (MSB #2394)
PETTIS, BARFIELD & HESTER, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
Telephone:  601-987-5300
Facsimile:  601-987-5353
lhester@pbhfirm.com

11

## CERTIFICATE OF SERVICE

I, Rebecca B. Cowan, do hereby certify that I have this day, electronically filed the above and foregoing with the Clerk of the Court using the ECF system which will automatically provide e-mail notification of said filing upon the following:

Joshua Tom, Esq.
American Civil Liberties Union of Mississippi Foundation
233 E. Capitol Street
Jackson, Mississippi 39201
JTom@aclu-ms.org

Jonathan K. Youngwood, Esq. (*pro hac vice*)
Janet A. Gochman, Esq. (*pro hac vice*)
Isaac Rethy, Esq. (*pro hac vice*)
Nihara K. Choudhri, Esq. (*pro hac vice*)
Brooke Jarrett, Esq. (*pro hac vice*)
Jumin Lee, Esq. (*pro hac vice*)
Christopher K. Shields, Esq. (*pro hac vice*)
Simpson Thatcher & Bartlett, LLP
425 Lexington Avenue
New York, NY 10017
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
bonnie.jarrett@stblaw.com
christopherjumin.lee@stblaw.com

Ezekiel Edwards, Esq. (*pro hac vice*)
Jeffery Robinson, Esq. (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
eedwards@aclu.org
jrobinson@aclu.org

So, certified this the 7th day of March, 2018.

/s/ Rebecca B. Cowan