**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**LATOYA BROWN; LAWRENCE BLACKMON
HERBERT ANTHONY GREEN; KHADAFY MANNING;
QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS
SINGLETON; STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER, individually and on
behalf of a class of all other similarly situated,                    PLAINTIFFS**

**VS.                                    CIVIL ACTION NO. 3:17-cv-347 WHB LRA**

**MADISON COUNTY, MISSISSIPPI; SHERIFF
RANDALL C. TUCKER, in his official capacity; and
MADISON COUNTY SHERIFF'S DEPUTIES JOHN
DOES #1 through #6, in their individual capacities,          DEFENDANTS**

---

**MEMORANDUM IN SUPPORT OF [DKT. # 211] MOTION BY DEFENDANTS
FOR SUMMARY JUDGMENT AS TO INDIVIDUAL
AND CLASS BASED CLAIMS BY PLAINTIFF, STEVEN SMITH**

---

LLCOME NOW Defendants, Madison County, Mississippi, and Sheriff Randall C. Tucker, in his official capacity, by and through counsel, and respectfully submit the following Memorandum in Support of their Motion for Summary Judgment as to Individual and Class Based Claims by Plaintiff, Steven Smith.

### INTRODUCTION

The instant class-action lawsuit was filed on May 8, 2017, by ten plaintiffs. The Complaint is 86 pages long and contains 337 paragraphs. Smith claims violations of his Fourth and Fourteenth Amendment rights by personnel of the Madison County Sheriff's Department ("MCSD") under 42 U.S.C. §1983 and intentional racial discrimination under Title VI of the Civil Rights Act of 1964. He sues on behalf of himself and a purported class of individuals he defines as:

> People who (1) are, or who appear to be, Black and those in their company, and (2) were, are, or will be in Madison County, and (3) were, are, or will be, subject to the MCSD's policy, custom, and/or practice of systematically executing unreasonable searches and seizures of person, homes, cars, and property on the basis of race."

Smith seeks only injunctive and declaratory relief from Defendants.  [Dkt. #1, Pgs. 82-85].

## STATEMENT OF THE FACTS

Defendants refer this Court to the Statement of Facts they are filing separately in this action under seal with a copy of Smith's deposition taken in this action (Exhibit A) and his Second Supplemental Responses and Objections to Defendants' First Set of Interrogatories (Exhibit B).  They were required to do so because Smith marked several portions of his deposition testimony as "confidential" and his entire responses to interrogatories as "confidential.  Defendants rely on portions of both discovery pleadings to support their Motion for Summary Judgment.

## ARGUMENT AND AUTHORITIES

The party moving for summary judgment bears the responsibility of providing the court with the basis of its motion and identifying the portions of the record in the case that establish the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has properly supported his motion for summary judgment, the non-moving party must respond by setting forth "specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also United Steel Workers, Etc. v. University of Alabama*, 599 F.2d 56 (5th Cir.1979).  "The moving party bears the initial burden of showing that there is no genuine issue for trial;  it may do so by pointing out the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir.1995) (citation

omitted) (internal quotations omitted). If the moving party meets its burden, "the nonmoving party who will have the burden of proof at trial must come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant." *Id.*

*************

Smith's claims must be dismissed for two separate reasons. First, there is no evidence Sheriff Tucker has ever deprived him of any federal rights. Second, even if he could prove violations in the past, there is no likelihood he will be subjected to similar violations in the future, rendering injunctive relief unavailable.

### A. Smith Cannot Establish that He Has Been Subjected to Intentional Racial Discrimination.

Although Smith in his testimony describes a series of encounters with the MCSD, the heart of his complaint is not a succession of incidents, but a supposed policy of racial discrimination. The very first paragraph of his complaint alleges that the MCSD "implements a **coordinated top-down program** of methodically targeting Black individuals for suspicionless searches and seizures while they are driving their cars, walking in their neighborhoods, or even just spending time in their own homes (the "Policing Program")." [Dkt. #1 ¶ 1 (emphasis in original)]. This claim of intentional racial discrimination is the only basis in his complaint for his request to represent a class, describing the common issue as "whether the MCSD has a policy, practice, and/or custom of targeting members of the Class for unreasonable searches and seizures on the basis of race in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment." [Dkt. #1 ¶ 304]. To obtain the only relief he seeks, which is on behalf of the class, Smith must prove, not merely a violation of his rights, but the existence of the "Policing Program" that he alleged.

He asserts his claims of intentional racial discrimination in the second and third causes of action of his complaint.  The second cause of action seeks relief under 42 U.S.C. §1983 for violations of the Equal Protection Clause, which, of course, requires proof of intentional racial discrimination.  *Coleman v. Houston Independent School District,* 113 F.3d 528, 533 (5th Cir. 1997) (citations omitted).  *See also Vera v. Tue,* 73 F.3d 604, 609 (5th Cir.1996) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.")  His third cause of action seeks relief under Title VI, 42 U.S.C. § 2000d *et seq.*, under which Smith, as a private party, must prove race discrimination by an entity that receives federal funds.  *Alexander v. Sandoval,* 532 U.S. 276, 280 (2001).  He cannot succeed with this claim simply by proving disparate impact.  *Id.*  Further, both the United States Supreme Court and the Fifth Circuit Court of Appeals have held that a private right of action under Title VI can only be brought for acts of intentional discrimination.  *Id.* at 281 ("What we said in *Alexander v. Choate*, 469 U.S. 287, 293 (1985), is true today, 'Title VI itself directly reaches only instances of intentional discrimination.'")

The only racial discrimination claims Smith describes in his deposition involve the event that occurred on January 23, 2017, when he encountered MCSD deputies outside Canton Estates, and the MCSD's targeting of predominantly Black neighborhoods to conduct roadblocks or checkpoints.[1]  Smith's description of what occurred the night of January 23 does not in any way suggest that the deputies stopped him solely because of his race.  There is no evidence that either deputy made a racially derogatory remark to him or treated him any differently because of his

---

[1] Although Smith claimed in both his complaint [Dkt. #1 ¶ 4] and during his deposition that the MCSD has a policy of targeting only Black neighborhoods while conducting checkpoints, he does not include this policy in his supplemental interrogatory responses.  The interrogatories ask him to identify and describe all MCSD policies he claims sanction or encourage "unreasonable searches and seizures or racial discrimination." Therefore, it appears that he has abandoned this claim.  (Exhibit B, Pgs. 3-6).

race. Further, had they made any such comments, this would not be enough to establish intentional discrimination. *See Williams v. Bramer,* 180 F.3d 699, 706 (5th Cir.), *decision clarified on reh'g,* 186 F.3d 633 (5th Cir. 1999). Finally, he cannot claim that he was arrested that night because of his race since valid warrants existed for his arrest. He bases his claim that the MCSD checkpoints are racially discriminatory on two things, telephone conversations he had on a particular holiday with his grandparents, who told him that they had not seen any checkpoints in their neighborhood across town, and his review of a Facebook page "at the most" 10 times and seeing checkpoints that were going to be set up near Canton Estates. (Exhibit A, Pg. 66:4-19). Smith could not testify whether these posts only listed checkpoints scheduled in his neighborhood or whether they included those scheduled for all areas in Madison County. Smith's allegation is actually nothing more than an assertion that the checkpoints he questions were racially motivated because they were in predominantly Black areas. He in no way offers any evidence that Black areas were intentionally targeted.

This unreliable and sparse evidence is insufficient to support Smith's claims of a "Policing Program" of intentional racial discrimination by the MCSD throughout all of Madison County. What Smith offers is simply his subjective belief that he was stopped based on his race on January 23, 2017, and that MCSD checkpoints are set up with the aim of intentionally discriminating against Blacks. "A plaintiff's subjective belief of race discrimination cannot alone establish that he has been a victim of intentional discrimination." *Laborde v. City of Houston*, 31 F. App'x 151 (5th Cir. 2001) (citing *Ray v. Tandem Computers, Inc*., 63 F.3d 429, 434- 435 (5th Cir. 1995)). *See also Nichols v. Grocer,* 138 F.3d 563, 570 (5th Cir. 1998) ("[A] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief."). Without more, Smith cannot establish that MCSD checkpoints are placed or operate in

such a manner as to intentionally discriminate against Blacks. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.") (en banc). Smith's second and third causes of action, therefore, should be dismissed.

> **B.    Smith Cannot Create Genuine Issues of Material Fact Regarding Any Element of his Fourth Amendment Claims under 42 U.S.C. §1983.**

To hold Madison County liable to his under §1983 in this action, Smith must allege and establish two threshold elements: (1) that he was deprived of a right or interest secured by the Constitution and laws of the United States, and (2) that the deprivation occurred under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor,* 451 U.S. 527, 535 (1981)), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 331-32 (1986). Defendants submit that Smith cannot satisfy the first element of this test because no act by any MCSD personnel violated his constitutional rights.[2]

Smith's §1983 claims against Defendants arise out of the following events: (1) a January 23, 2017, incident where he was stopped while walking to Canton Estates by two MCSD deputies, asked for his identification, and subsequently arrested on two outstanding Justice Court warrants; (2) MCSD holiday checkpoints he claims were focused only on Canton Estates rather than on White communities of Madison County; (3) MCSD "jump-out procedures" involving MCSD deputies' stopping and searching a vehicle; (4) a 2015 Halloween night "home invasion" of his apartment at Canton Estates; and (5) another alleged "home invasion" he claims occurred in his neighborhood.

---

[2] In addition, to secure relief against the County and Sheriff Tucker in his official capacity, Smith "must demonstrate a policy or custom which caused the alleged violation." *Brooks v. George County*, 84 F.3d 157, 165 (5th Cir.), *cert. denied*, 519 U.S. 948 (1996). No evidence of any such policy exists, but the Court need not reach that issue, because no evidence of any violation of constitutional rights exists.

6

Smith claims he suffered a violation of his Fourth Amendment rights when he was stopped by a MCSD deputy, asked to take his hands out of his pockets, asked to show his identification, and then arrested. The incident occurred at night while Smith and a high school friend were walking on a public street toward Canton Estates. Defendants submit that the circumstances surrounding this event do not trigger Fourth Amendment protections.

In *U.S. v. Drayton*, 536 U.S. 194, 203-204 (2002), the Court affirmed the district court's finding that no Fourth Amendment violation occurred when an officer boarded a bus and began to question its passengers. Both respondents, who were passengers, complied with every request the officers made to them, including allowing searches of their luggage and of their persons. Both respondents were arrested after the officers found drugs taped between their shorts. While affirming the respondents' criminal convictions, the Court agreed that "everything that took place between Officer Land and [respondents] suggests that it was cooperative," and that their encounter with the officers involved "no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice." *Id.*

The Court in *United States v. Wise,* 877 F.3d 209, 220 (5th Cir. 2017), applied *Drayton* while holding that "'a seizure does not occur simply because a police officer approaches an individual and asks a few questions.'" *Id.* (quoting *Florida v. Bostick,* 501 U.S. 429, 434 (1991)). Wise was also a passenger on a bus who, after being approached by officers, consented to their request to show them his identification and to allow them to search his luggage. Wise subsequently was arrested for possession of drugs. The Court refused to find that Wise's Fourth Amendment rights were violated during his encounter with the officers. It held that "police do not need reasonable suspicion to approach someone for questioning;" instead, "'[t]he encounter

7

will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.'" (quoting *Bostick*, 501 U.S. at 434). It also held that "an encounter with police is "consensual" so long as the civilian would feel free to either terminate the encounter or disregard the questioning." *Id.* (citing *Bostick*, 501 U.S. at 434). Applying *Drayton,* the Court held that the officers gave the passengers on the bus "no reason to believe that they were required to answer the [officers'] questions." *Id.* at 221. Like the respondents in *Wise* and *Drayton*, Smith never refused any of the MCSD deputies' requests that night. Rather, he testified that once asked, he took his hands out of his pockets and gave the deputy his identification. Smith, therefore, consented to the stop and was not "seized" under the Fourth Amendment.

Smith bases his "jump-out procedures" claim on two separate stops and searches of vehicles by MCSD deputies that he observed, one in a parking lot and the one in a park. When pressed about any specific knowledge he has about the circumstances surrounding these stops, Smith could provide nothing. He does not know the individuals involved and cannot provide the bases of these stops and searches. This conclusory and unreliable evidence cannot be used to support a Fourth Amendment claim by Smith in this action.

Both Brown and Smith have given details of the events of that night, but Smith recalls more of what the deputies told him when they came to his apartment door. He admits that the deputies told him that they were searching every apartment for a missing girl and that they even identified the girl. Smith also confirms that the deputies did not single out his apartment while searching; instead, Smith agrees that the deputies told him they intended to search every apartment and describes hearing these deputies climbing stairs in his building after they left his apartment. Smith's testimony never suggests that the deputies who entered his apartment were conducting a criminal investigation, removing any claim he may make that they needed probable

8

cause to enter.  Finally, Smith's testimony clearly shows that the deputies' entry was based on exigent circumstances, thereby removing their actions from any scrutiny under the Fourth Amendment.  Defendants adopt the authorities they cited in support of the Motion for Summary Judgment of Brown's claims in further support of their position that this claim by Smith does not trigger Fourth Amendment protections and should be dismissed by this Court.

Like Smith's description of the two "jump-out procedures" he claims he witnessed, Smith lacks any knowledge of the details surrounding his second "home invasion" claim by MCSD deputies.  Smith only recalls that he was in a neighbor's house, that MCSD deputies arrived at the house, and, upon entry into the house, asked Smith and his companion to leave the house.  Smith does not know who lived in the home and cannot provide any details about why the deputies entered the home.  As a result, this claim should also be dismissed with prejudice as completely lacking any evidentiary basis to show a violation of the Fourth Amendment.

### C. Smith Lacks Standing under Article III to Bring His Own Claims for Injunctive and Declaratory Relief, as well as those of His Purported Class Members.

The United States Supreme Court has recognized three requirements for Article III standing.  First, "the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of . . . .  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *United States v. Hays,* 515 U.S. 737, 742-43 (1995) (quoting *Lujan v. Defenders of. Wildlife,* 504 U.S. 555, 560-561 (1992).  Further, because Smith is seeking injunctive and declaratory relief, he must show that he is "likely to suffer future injury by the defendant and that the sought-after relief will prevent that future

injury." *James v. City of Dallas,* 254 F.3d 551, 563 (5th Cir. 2001) *cert. denied,* 534 U.S. 1113 (2002).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 495-96).  Instead, a plaintiff seeking injunctive or declaratory relief "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future" *i.e.,* a "'substantial and continuing controversy' between two adverse parties" that is not "conjectural, hypothetical, or contingent . . . ." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003).

      Smith cannot satisfy any of these Article III standing requirements.  He has no individual standing because he has not suffered a violation of his Fourth or Fourteenth Amendment rights.  He has proven no private right to sue under Title VI.  Finally, he cannot show that he is likely to suffer any injury in the future from any conduct by the MCSD since he no longer resides in Madison County or, for that matter, in the State of Mississippi.  Without standing under Article III, Smith cannot "seek [injunctive] relief on behalf of . . . [himself] or any other member of the [purported] class." *James,* 254 F.3d at 563 (citing *O'Shea,* 414 U.S. at 494).  For these reasons, Smith lacks standing to pursue his claims or those of his purported class.  His individual claims should be dismissed with prejudice, and he should be disqualified from representing the class of individuals he seeks to represent in this matter.

## CONCLUSION

      For the reasons set forth above, all of Smith's claims against Defendants should be dismissed with prejudice.

This the 7th day of March, 2018.

                              Respectfully submitted:

                              **MADISON COUNTY, MISSISSIPPI and SHERIFF RANDALL C. TUCKER, IN HIS OFFICIAL CAPACITY**

By:    /s/ Rebecca B. Cowan

                              OF COUNSEL:

Rebecca B. Cowan (MSB #7735)
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Dr.
Jackson, MS   39232
P.O. Box 750
Jackson, Mississippi  39205-0750
Telephone: 601-969-1010
Facsimile:  601-969-5120
bcowan@curriejohnson.com

Michael B. Wallace (MSB #6904)
Charles E. Ross (MSB #5683)
James E. Graves (MSB #102252)
Charles E. Cowan (MSB #104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39205-0651
Telephone: 601-968-5534
Facsimile: 601-944-7738
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com

and

T. Russell Nobile (MSB #100682)
WISE CARTER CHILD & CARAWAY, P.A.
2510 14th Street, Suite 1125
Gulfport, Mississippi 39501
Telephone: 228-867-7141
Facsimile: 228-867-7142
trn@wisecarter.com

11

        Katie Bryant Snell (MSB #103607)
        KATIE BRYANT SNELL, PLLC
        P.O. Box 3007
        Madison, Mississippi 39130-3007
        Telephone: 601-460-9800
        katie@katiebryantsnell.com

        J. Lawson Hester (MSB #2394)
        PETTIS, BARFIELD & HESTER, P.A.
        4450 Old Canton Road, Suite 210
        Jackson, Mississippi 39211
        Telephone:  601-987-5300
        Facsimile:  601-987-5353
        lhester@pbhfirm.com

**CERTIFICATE OF SERVICE**

      I, Rebecca B. Cowan, do hereby certify that I have this day, electronically filed the above and foregoing with the Clerk of the Court using the ECF system which will automatically provide e-mail notification of said filing upon the following:

Joshua Tom, Esq.
American Civil Liberties Union of Mississippi Foundation
233 E. Capitol Street
Jackson, Mississippi 39201
JTom@aclu-ms.org

Jonathan K. Youngwood, Esq. (*pro hac vice*)
Janet A. Gochman, Esq. (*pro hac vice*)
Isaac Rethy, Esq. (*pro hac vice*)
Nihara K. Choudhri, Esq. (*pro hac vice*)
Brooke Jarrett, Esq. (*pro hac vice*)
Jumin Lee, Esq. (*pro hac vice*)
Christopher K. Shields, Esq. (*pro hac vice*)
Simpson Thatcher & Bartlett, LLP
425 Lexington Avenue
New York, NY 10017
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
bonnie.jarrett@stblaw.com
christopherjumin.lee@stblaw.com

Ezekiel Edwards, Esq. (*pro hac vice*)
Jeffery Robinson, Esq. (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
eedwards@aclu.org
jrobinson@aclu.org

So, certified this the 7th day of March, 2018.

                                          /s/ Rebecca B. Cowan