# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**LATOYA BROWN; LAWRENCE BLACKMON
HERBERT ANTHONY GREEN; KHADAFY MANNING;
QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS
SINGLETON; STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER, individually and on
behalf of a class of all other similarly situated,**                           **PLAINTIFFS**

**v.**                                                  **CIVIL ACTION NO. 3:17-cv-347 WHB LRA**

**MADISON COUNTY, MISSISSIPPI; SHERIFF
RANDALL C. TUCKER, in his official capacity; and
MADISON COUNTY SHERIFF'S DEPUTIES JOHN
DOES #1 through #6, in their individual capacities,**                           **DEFENDANTS**

---

## MOTION FOR SUMMARY JUDGMENT AS TO INDIVIDUAL AND CLASS BASED CLAIMS BY PLAINTIFF, BETTY JEAN WILLIAMS TUCKER

---

COME NOW defendants Madison County, Mississippi, and Sheriff Randall C. Tucker, in his official capacity, ("Defendants"), and move this Court pursuant to Fed. R. Civ. P. 56(a) to enter summary judgment in their favor on all claims by Plaintiff, Betty Jean Williams Tucker ("Tucker") in this action and would show unto the Court in support thereof the following:

1.      Tucker claims violations of her Fourth and Fourteenth Amendment rights by personnel of the Madison County Sheriff's Department ("MCSD") under 42 U.S.C. § 1983 and intentional racial discrimination under Title VI of the Civil Rights Act of 1964.   Tucker's complaint alleges that the MCSD "implements a **coordinated top-down program** of methodically targeting Black individuals for suspicionless searches and seizures while they are driving their cars, walking in their neighborhoods, or even just spending time in their own homes (the "Policing Program")."   [Dkt. #1, ¶ 1 (emphasis in original)].

2.      Tucker sues on behalf of herself and a purported class of individuals she defines as:

People who (1) are, or who appear to be, Black and those in their company, and (2) were, are, or will be in Madison County, and (3) were, are, or will be, subject to the MCSD's policy, custom, and/or practice of systematically executing unreasonable searches and seizures of person, homes, cars, and property on the basis of race.

3.      Tucker seeks only injunctive and declaratory relief from Defendants on behalf of herself and members of the class she purports to represent.    [Dkt. #1], at pp. 82-85.

4.      Tucker brings three causes of action.   The first two causes of action allege violations of 42 U.S.C. § 1983 by the MCSD infringing upon her Fourth and Fourteenth Amendment rights.   The third cause of action alleges the MCSD has intentionally discriminated against her in violation of Title VI (42 U.S.C. § 2000d *et seq*.).

5.      Tucker's claims are based upon two separate set of facts.   First, Tucker alleges that roadblocks are set up and operated by the MCSD in a racially discriminatory manner, thereby violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Title VI.   Tucker also alleges that these roadblocks violate the Fourth Amendment's prohibition of unreasonable searches and seizures.   Second, Tucker alleges that MCSD narcotics officers, who she refers to as the "jump-out boys," have subjected her friends and family to unreasonable searches and seizures based on those individuals' race on two different occasions.

6.      Tucker's claims regarding the MCSD roadblocks must be dismissed with prejudice pursuant to Fed. R. Civ. P. 56(a) for several reasons:

a.      There are no facts to establish that the MCSD road blocks were operated in a manner that violated the Fourth Amendment's prohibition on unreasonable searches and seizures.

b.      There are no facts to establish Tucker's claim that the MCSD road blocks violated the Fourteenth Amendment by intentionally discriminating against Blacks.   This claim is based

on Tucker's subjective belief that the MCSD sets up roadblocks with the aim of intentionally discriminating against Blacks.   She bases this belief on her not being aware of roadblocks being conducted in white neighborhoods and the fact that the only roadblocks she has encountered have been in Black neighborhoods.   Neither of these bases is sufficient proof of intentional discrimination and her claim that MCSD roadblocks violate the Fourteenth Amendment fails as a matter of law.

7.      Likewise, Tucker's claims regarding the "jump-out boys" must be dismissed with prejudice pursuant to Fed. R. Civ. P. 56(a) for several reasons:

a.      Tucker was not the subject of the two allegedly unlawful searches and seizures allegedly executed by MCSD officers upon which she has based her claims, therefore she lacks standing to bring her Fourteenth Amendment and Title VI claims regarding those two incidents and those claims fail as a matter of law.

b.      Similarly, Fourth Amendment rights are personal rights and because Tucker was not subject to the alleged unlawful searches and seizures by the "jump-out boys," her Fourth Amendment claims relating to these incidents fail as a matter of law.

c.      Even if Tucker did have standing to assert her Fourth Amendment, Fourteenth Amendment, and Title VI claims, her claims would fail because Tucker has no evidence that the "jump-out boys" incidents violated any constitutional rights or constituted intentional discrimination.   There are several lawful bases upon which the MCSD officers could have effectuated the alleged stops and searches in the manner in which Tucker describes.   Furthermore, Tucker has no proof that such incidents constituted intentional discrimination by the MCSD. Accordingly, those claims fail as a matter of law.

d.      Alternatively, even if Tucker did have standing, and such incidents did constitute

3

unreasonable searches or seizures or intentional discrimination, the three year statute of limitations on such claims has run and those claims are subject to being dismissed with prejudice for being time-barred.

8.   In support of the instant Motion, Defendants have attached the following exhibits:

**Exhibit A:** Tucker Deposition Transcript[1]

**Exhibit B:** Plaintiff Betty Jean Williams Tucker's Second Supplemental Responses and Objections to Defendants' First Set of Interrogatories

WHEREFORE, PREMISES CONSIDERED, this Court should dismiss all of Plaintiff Betty Jean Williams Tucker's claims against them with prejudice pursuant to Fed. R. Civ. P. 56(a).

Respectfully submitted this 12th day of March, 2018.

MADISON COUNTY, MISSISSIPPI and
SHERIFF RANDALL C. TUCKER, IN
HIS OFFICIAL CAPACITY

BY:   *s/Michael B. Wallace*
      Michael B. Wallace (MSB #6904)
      Charles E. Ross (MSB #5683)
      James E. Graves (MSB #102252)
      Charles E. Cowan (MSB #104478)
      WISE CARTER CHILD & CARAWAY, P.A.
      Post Office Box 651
      Jackson, Mississippi   39205-0651
      Telephone: 601-968-5534
      Facsimile: 601- 944-7738
      mbw@wisecarter.com
      cer@wisecarter.com
      jeg@wisecarter.com
      cec@wisecarter.com

      and

      T. Russell Nobile (MSB #100682)

---

[1]   Portions of Tucker's deposition excerpts have been redacted since Plaintiffs designated those portions as confidential pursuant to a confidentiality order previously entered by this Court in this matter. *See* [Dkt. #32].

4

WISE CARTER CHILD & CARAWAY, P.A.
2510 14th Street, Suite 1125
Gulfport, Mississippi   39501
Telephone: 228-867-7141
Facsimile: 228-867-7142
trn@wisecarter.com

OF COUNSEL:

Rebecca B. Cowan (MSB #7735)
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Dr.
Jackson, Mississippi   39232
P.O. Box 750
Jackson, Mississippi   39205-0750
Telephone: 601-969-1010
Facsimile:   601-969-5120
bcowan@curriejohnson.com

Katie Bryant Snell (MSB# 103607)
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi   39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

J. Lawson Hester
PETTIS, BARFIELD & HESTER, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi   39211
Telephone: 601-987-5300
lhester@pbhfirm.com

## **CERTIFICATE OF SERVICE**

      I, Michael B. Wallace, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

      Joshua Tom, Esq.
      American Civil Liberties Union of Mississippi Foundation
      233 E. Capitol Street
      Jackson, MS 39201
      PWu@aclu-ms.org
      JTom@aclu-ms.org

      Jonathan K. Youngwood, Esq. (*pro hac vice*)
      Janet A. Gochman, Esq. (*pro hac vice*)
      Isaac Rethy, Esq. (*pro hac vice*)
      Nihara K. Choudhri, Esq. (*pro hac vice*)
      Kavitha Satya Sivashanker, Esq. (*pro hac vice*)
      Brooke Jarrett, Esq. (*pro hac vice*)
      Jumin Lee, Esq. (*pro hac vice*)
      Christopher K. Shields, Esq. (*pro hac vice*)
      Simpson Thatcher & Bartlett, LLP
      425 Lexington Avenue
      New York, NY    10017
      jyoungwood@stblaw.com
      jgochman@stblaw.com
      irethy@stblaw.com
      nchoudhri@stblaw.com
      kavitha.sivashanker@stblaw.com
      bonnie.jarrett@stblaw.com
      christopherjumin.lee@stblaw.com
      christopher.shields@stblaw.com

      Ezekiel Edwards, Esq. (*pro hac vice*)
      Jeffery Robinson, Esq. (*pro hac vice*)
      American Civil Liberties Union Foundation
      125 Broad Street
      New York, NY 10004
      eedwards@aclu.org
      jrobinson@aclu.org

      So, certified this the 12th day of March, 2018.

                                 *s/ Michael B. Wallace*
                                 MICHAEL B. WALLACE

**In the Matter of:**

LATOYA BROWN

VERSUS

MADISON COUNTY, MISSISSIPPI, ET AL.

---

*WILLIAMS, BETTY*

*December 19, 2017*

---



844.533.DEPO

**EXHIBIT "A"**

```
 1                 IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 2                        JACKSON DIVISION

 3   LATOYA BROWN; LAWRENCE BLACKMON
     HERBERT ANTHONY GREEN; KHADAFY MANNING;
 4   QUINETTA MANNING; MARVIN MCFIELD;
     NICHOLAS SINGLETON; STEVEN SMITH;
 5   BESSIE THOMAS; and BETTY JEAN WILLIAMS
     TUCKER, individually and on behalf of a
 6   class of all other similarly situated,        PLAINTIFFS

 7   VERSUS                  CIVIL ACTION NO. 3:17-cv-347 WHB LRA

 8   MADISON COUNTY, MISSISSIPPI;
     SHERIFF RANDALL S. TUCKER, in his
 9   official capacity; and MADISON COUNTY
     SHERIFF'S DEPUTIES JOHN DOES #1 through #6,
10   in their individual capacities,               DEFENDANTS

11


12


13          DEPOSITION OF BETTY JEAN WILLIAMS TUCKER

14                 taken on December 19th, 2017,
               commencing at approximately 9:00 a.m.
15    at the Law Offices of Wise, Carter, Child & Caraway
                     401 East Capitol Street
16                         Suite 600
                      Jackson, Mississippi
17


18


19


20


21


22   REPORTED BY:  BECKY LYNN LOGAN, RPR, CCR #1750
                    eDeposition Services
23                  Post Office Box 14148
                    Jackson, MS 39236
24                    (844) 533-DEPO
                     edeposition.com
25
```

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                    Pages 2..5

Page 2

APPEARANCES
1
2  JOSHUA TOM, ESQ.
   JTom@aclu-ms.org
3  JADE MORGAN
   jmorgan@aclu-ms.org
4  AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI FOUNDATION
   233 East Capitol Street
5  Jackson, MS 39201
   COUNSEL FOR PLAINTIFFS
6
7  JAMES E. GRAVES, ESQ.
   jeg@wisecarter.com
8  CHARLES E. ROSS, ESQ.
   cer@wisecarter.com
9  WISE, CARTER, CHILD & CARAWAY
   401 E. Capitol Street
10 Suite 600
   Jackson, MS 39201
11 COUNSEL FOR DEFENDANTS
12
13 REBECCA B. COWAN, ESQ.
   bcowan@curriejohnson.com
14 CURRIE, JOHNSON & MYERS, P.A.
   10:44 River Oaks Drive
15 Jackson, MS 39232
   COUNSEL FOR DEFENDANTS
16
17
18 ALSO PRESENT:  RANDY TUCKER
19
20
21
22
23
24
25

Page 3

TABLE OF CONTENTS

1
2
3  Title Page...........................        1
4  Appearance...........................        2
5  Table of Contents....................        3
6  Stipulations.........................        5
7
8  EXAMINATION BY:
9     Mr. Graves......................         6
10
11 Certificate of Deponent..............       44
12 Errata Sheet.........................       45
13 Certificate of Reporter..............       46
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

STIPULATIONS

1
2      It is hereby stipulated and agreed by and between
3  the parties hereto, through their respective attorneys
4  of record, that this deposition may be taken at the time
5  and place hereinbefore set forth, by Becky Lynn Logan,
6  Registered Professional Reporter and Notary Public,
7  pursuant to the Federal Rules of Civil Procedure;
8          That the formality of READING AND SIGNING is
9  specifically NOT WAIVED;
10          That all objections, except as to the form of
11 the questions and the responsiveness of the answers, are
12 reserved until such time as this deposition, or any part
13 thereof, may be used or is sought to be used in
14 evidence.
15
16
17
18
19
20
21
22
23
24
25

Page 5

1          BETTY JEAN WILLIAMS TUCKER
2      after having been first duly sworn, was examined and
3  testified as follows:
4              EXAMINATION
5  BY MR. GRAVES:
6      Q.  Ms. Tucker -- do you go by Tucker?
7      A.  Yes.
8      Q.  My name is James Graves.  I don't think we have
9  met before, but I'm one of the lawyers representing
10 Madison County and the sheriff in this lawsuit.  The
11 first thing I'll ask you is, have you ever given a
12 deposition before?
13     A.  No.
14     Q.  Well, there are a few ground rules.  You're
15 sworn in, so just like you would be if you were on the
16 witness stand at trial, so you have to tell the truth.
17 But other than that, it's a lot more informal.
18     If you need to take a break at any time, let me
19 know.  If I ask you a question that you don't
20 understand, you can tell me.  It won't hurt my feelings.
21 And I'll try to clear it up and get us back on track, if
22 I can.  But if you answer one of my questions, I'll
23 assume you understood what I was asking.  Is that fair?
24     A.  Yes.
25     Q.  The first thing I want you to do is tell me

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                    Pages 6..9

Page 6

1   what your full name is.
2   A.   Betty Jean Williams Tucker.
3   Q.   Betty Jean?
4   A.   Yes.
5   Q.   Williams Tucker?
6   A.   Yes.
7   Q.   Tell me what your birth name is.
8   A.   Betty Jean Williams.
9   Q.   And Tucker, is that your married name?
10   A.   Yes.
11       MR. TOM:  Hey, James, let me tell you something
12   real quick.
13       MR. GRAVES:  Sure.
14       MR. TOM:  Ms. Tucker has recently had surgery,
15   and she's still recovering.  She actually went to the
16   hospital this morning at 3:00 a.m.  So there's a slight
17   chance that she may have to leave.
18       MR. GRAVES:  Okay.
19       MR. TOM:  This is going to be up to her.  I
20   don't imagine anything coming up, but she is in poor
21   health.  So I don't know how you want to handle that.
22   How do you feel right now, Ms. Tucker?
23       DEPONENT:  I'm okay.
24       MR. TOM:  Do you think you can make it through
25   maybe three hours -- three or four hours?

Page 7

1       DEPONENT:  Three or four I don't know.  Two --
2   One or two I probably could, but three or four is too
3   long for me.
4       MR. GRAVES:  Well, I think what we'll do is try
5   to get through what we can, and if we have to come back
6   and finish up, we'll do that.  I mean, I'll be here
7   until I go to Virginia next week.
8   BY MR. GRAVES:
9   Q.   Well, let me ask you this: ▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮

Page 8

1   Q.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6   Q.   Well, like I just told your lawyer, what I want
7   to do right now is go through as much as we can today.
8   A.   Yes, that's fine.
9   Q.   If at any point you feel like you need to stop
10   for today and for us to come back, let me know, and
11   we'll deal with it at that point.
12   A.   Okay.
13   Q.   But what I was going to ask you about, Tucker
14   you said is your married name.  Are you currently
15   married now?
16   A.   Yes, I am.
17   Q.   Who is your husband?
18   A.   Alva James Tucker.
19   Q.   Alva James?
20   A.   Yes.
21   Q.   And what's his birth date?
22   A.   ▮▮▮▮▮▮▮▮
23   Q.   How long have you two been married?
24   A.   Seven and a half years.
25   Q.   Is that your first marriage?

Page 9

1   A.   Yes.
2   Q.   Do you have kids?
3   A.   Yes.
4   Q.   What are your kids' names?
5   A.   Kimla Williams.
6   Q.   Kimla?
7   A.   Yes, K-i-m-l-a.
8   Q.   Kimla Williams.  And who else?
9   A.   KaShondra Williams, James Williams, Akesha
10   Williams.
11   Q.   Akesha, could you spell that for me?
12   A.   A-k-e-s-h-a.  And Kara Williams, K-a-r-a.
13   Q.   Let me go back through these one at a time.
14   Kimla, what is her birthday?
15   A.   Kimla is the ▮▮▮▮▮▮▮▮▮ '74.
16   Q. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18   Q.   Where does she live?
19   A.   She lives in Ridgeland.
20   Q.   KaShondra, when is her birthday?
21   A.   ▮▮▮▮▮▮▮▮▮ 1975.
22   Q.   Where does she live?
23   A.   She lives in Ridgeland also.
24   Q.   James, what's his birth date?
25   A.   James' birthday is ▮▮▮▮▮▮ 1979.

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                    Pages 10..13

**Page 10**

1   Q.  Where does he live?
2   A.  He lives in Jackson.
3   Q.  Akesha?
4   A.  Akesha's birthday is ███████ 1979.
5   Q.  Where does she live?
6   A.  She lives in Canton.
7   Q.  And then Kara, what's her birthday?
8   A.  Kara's birthday is ███████ 1984.  She
9 lives in Texas.
10   Q.  Where do you live currently?
11   A.  I live in Canton.
12   Q.  At ███████████████
13   A.  Yes.
14   Q.  And how long have you lived there?
15   A.  I have lived there since April of this year.
16   Q.  Is that a house?
17   A.  Yes, it is.
18   Q.  Where did you live before that?
19   A.  I lived at 112 King Ranch Circle.
20   Q.  How long did you live there?
21   A.  I lived there 25 years.
22   Q.  And is that a house too?
23   A.  Yes, it is.
24   Q.  Now, who else lives with you at your current
25 address?

**Page 11**

1   A.  My husband, Alva James Tucker.  Two
2 granddaughters.
3   Q.  What are their names?
4   A.  ████████████████████████
   ████████████
   ████████████████
   ████████████████████
   ████████████
10   A.  Yes.  And Truman Williams.
11   Q.  We'll go through these one at a time.  Is that
12 all?
13   A.  Yes.
   ████████████████████
   ██████████████████████
   ██████████████████████
   ███████████
   ████████████████████████
   ██████████████████████
   ████████████████████████████
25   Q.  And then Truman?

**Page 12**

1   A.  Truman is my brother.  He's 60 years old.
2   Q.  And when you were living at King Ranch Circle,
3 who else lived with you?
4   A.  No one other than those right there.
5   Q.  The same group of people?
6   A.  Yes.
7   Q.  What did you do to prepare for this deposition
8 today?
9   A.  What did I do?
10   Q.  Yes, ma'am.
11   A.  What do you mean?
12   Q.  Did you meet with your attorneys?
13   A.  Yes, I did.
14   Q.  When did you do that?
15   A.  Yesterday.
16   Q.  What time was that?
17   A.  It was after 2:00.
18   Q.  How long did you meet with them?
19   A.  For about two hours.
20   Q.  Where was it?
21   A.  At home.
22   Q.  Your house?
23   A.  Yes.
24   Q.  Who was there?
25   A.  Who was there?

**Page 13**

1   Q.  Which lawyers came by?
2   A.  (Indicating.)
3   Q.  Mr. Tom sitting here?
4   A.  Yes.
5   Q.  Did you look over any documents?
6   A.  Yes, I did.
7   Q.  Which documents did you look over?
8   A.  I don't remember, but I remember I looked over
9 some.
10   Q.  Did you grow up in the Canton area?
11   A.  Yes, I did.
12   Q.  Where did you go to high school?
13   A.  Canton Public High.
14   Q.  Did you graduate?
15   A.  No.
16   Q.  How far did you make it?
17   A.  12th grade.
18   Q.  What did you do when you left high school?
19   A.  I went to work.
20   Q.  Where did you work?
21   A.  Canton Manufacturing.
22   Q.  Do you still work there?
23   A.  No.
24   Q.  How long did you work there?
25   A.  11 years.

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                                     Pages 14..17

Page 14

1    Q.   What did you do?
2    A.   I was a spot welder.
3    Q.   All right.  I know I'm kind of jumping around,
4  but I want to go back to your children.  Kimla -- who is
5  Kimla's father?
6    A.   Alva Tucker.
7    Q.   KaShondra?
8    A.   Alva Tucker.
9    Q.   James?
10   A.   Alva Tucker.
11   Q.   Akesha?
12   A.   I don't know Akesha's dad, now.
13   Q.   And Kara?
14   A.   Alva Tucker.
15   Q.   All right.  After you left Canton
16 Manufacturing, where did you work?
17   A.   I went to Presto Manufacturing Company.
18   Q.   Presto?
19   A.   Yes.
20   Q.   How long did you work there?
21   A.   About two years.
22   Q.   What did you do there?
23   A.   I was on an assembly line.
24   Q.   Then what did you do?
25   A.   I came back to -- I think I was working at the

Page 15

1  nursing home.  I went to the nursing home.
2    Q.   Which nursing home was that?
3    A.   Madison County Nursing Home.
4    Q.   What did you do there?
5    A.   I was a cook.
6    Q.   How long did you work there?
7    A.   I worked there for about five years.
8    Q.   What year was it when you left high school?
9    A.   What year was it?  It was in 1975.
10   Q.   What did you do after you left the nursing
11 home?
12   A.   I babysat my grandchildren.
13   Q.   Have you had any other jobs since then?
14   A.   Probably so, in between.
15   Q.   You just don't remember which ones?
16   A.   No.
17   Q.   Are you currently working now?
18   A.   No.
19   Q.   When was the last time you worked?
20   A.   Oh, it has been so long, I don't remember.
21   Q.   I assume you never were in the military, right?
22   A.   Right.
23   Q.   Have you seen any -- I know you don't remember
24 specifically what documents you went through yesterday
25 right now, but have you seen any policies or reviewed

Page 16

1  any policies from the Madison County Sheriff's
2  Department?
3    A.   I don't understand that.
4    Q.   I mean like any written documents from the
5  sheriff's department.  Have you seen or did you review
6  any of those yesterday?
7    A.   I don't know.
8    Q.   If you did, you just don't remember right now
9  is what you're saying?
10   A.   Right.
11   Q.   Tell me what you're claiming in this lawsuit.
12   A.   What do you mean?
13   Q.   Why did you file this lawsuit?
14   A.   Why did I file the lawsuit?
15   Q.   Right.
16   A.   Because for the roadblocks in Canton, because
17 for the jump-out boys always jumping out unnecessarily.
18   Q.   So roadblocks and jump-out boys.  Anything
19 else?
20   A.   I can't think of nothing else.
21   Q.   Roadblocks -- What's your problem with the
22 roadblocks?
23   A.   Well, they are always --
24       MR. TOM:  Objection.  She didn't say a problem.
25 BY MR. GRAVES:

Page 17

1    Q.   You can answer.  Go ahead.
2    A.   Well, the roadblocks are always in the black
3  neighborhoods.
4    Q.   Are you saying that the sheriff's department
5  always has roadblocks in the black neighborhoods?
6    A.   That's what I said.
7    Q.   Do you know if they do roadblocks in other
8  neighborhoods also?
9    A.   What do you mean other?
10   Q.   Like white neighborhoods?
11   A.   No.
12   Q.   You don't know?
13   A.   I haven't seen any.
14   Q.   You say you haven't seen any, but do you know
15 that they don't, or you just haven't seen them?
16   A.   Say that again.
17   Q.   I'm asking you, are you sure that they don't,
18 or are you just saying you haven't seen them?
19   A.   I'm pretty sure that they don't.
20   Q.   Why do you say that?
21   A.   Because whatever roadblocks is at, most people
22 put it on Facebook or they're going to text you and let
23 you know.  They haven't texted one time to say it's a
24 roadblock over in the white neighborhood.  There's a lot
25 of blacks who live in the white neighborhoods.

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                                                    Pages 18..21

Page 18

1    Q.   So what you're saying is you have gotten
2  notifications of roadblocks in black neighborhoods, but
3  you have never gotten notification of roadblocks in
4  white neighborhoods?
5    A.   That's what I said.
6    Q.   Do you have a copy of any of those texts?
7    A.   No.  I should have saved them.
8    Q.   When was the last time you got one of those
9  texts?
10   A.   I would say about three months ago.
11   Q.   Do you remember what roadblock locations were
12  on that text message?
13   A.   No.
14   Q.   Who sent you the text?
15   A.   Some friends.
16   Q.   What are their names?
17   A.   I don't even remember.
18   Q.   What did the text message say?
19   A.   It said, "Roadblocks is over there.  It's a
20  roadblock set up over there."
21   Q.   Which street?
22   A.   Mostly be Martin Luther King and King Ranch
23  Road.
24   Q.   Martin Luther King and King Ranch Road.  What
25  else?

Page 19

1    A.   I don't remember about that.
2    Q.   Let me ask you this:  Where have you been
3  stopped at a roadblock before?
4    A.   King Ranch Road, Adeline.
5    Q.   Adeline?
6    A.   And Martin Luther King, yes.  On 22 and King
7  Ranch Road.
8    Q.   All right, let me go through those one at a
9  time.  Adeline, Martin Luther King, King Ranch Road.
10  Anywhere else?
11   A.   22 and King Ranch Road.
12   Q.   Highway 22?
13   A.   Yes.
14   Q.   That's separate from -- When you say King Ranch
15  Road, that's a different --
16   A.   It runs into 22.
17   Q.   Where else?
18   A.   I don't know.  I don't remember.
19   Q.   So the only ones you remember right now are
20  Adeline, Martin Luther King, and Highway 22 and King
21  Ranch Road?
22   A.   That's the only ones I remember at this moment.
23   Q.   When was the last time you were stopped at
24  Adeline?
25   A.   Oh, that's been about a year ago.

Page 20

1    Q.   What about at Martin Luther King?
2    A.   At Martin Luther King, that's been maybe six
3  months ago, if not sooner.
4    Q.   What about at Highway 22 and King Ranch Road?
5    A.   That might have been about seven or eight
6  months ago.
7    Q.   Let me ask you this:  Have you ever gotten a
8  citation at any of these roadblocks?
9    A.   No.
10   Q.   The last time you were at a roadblock, what I
11  have down is you said about six months ago you were
12  stopped at Martin Luther King?
13   A.   Yes.
14   Q.   Do you remember what happened at that
15  roadblock?
16   A.   I passed my license.  I had my insurance card,
17  but they didn't ask for the insurance card.
18   Q.   So you showed them that, and they gave it back
19  to you and told you to keep going?
20   A.   No.  They got it and looked and walked to the
21  back of the car and checked my tag back there.  They
22  might have called it in because it took them a few
23  minutes for them to bring it back.  Then when they
24  brought it back, they gave it to me and flashed the
25  light in the car.  My grandchildren were in there, and

Page 21

1  it kind of frightened them a little bit.
2    Q.   Which grandchildren were in the car with you?
3    A.   ▮▮▮▮ was in there and ▮▮▮▮ was in the car
4  with me.
5    Q.   ▮▮▮▮ and ▮▮▮▮
6    A.   Yes, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was in
7  there.  She was in the car.
8    Q.   Now, that process you have just described, is
9  that pretty much the same process you have experienced
10  at all of the roadblocks you have got stopped at?
11   A.   No.
12   Q.   Let me ask you this:  When was there a
13  different process?
14   A.   No, it wasn't any different, but it just wasn't
15  nobody else in the car with me at the time.
16   Q.   So what the police officers did was the same;
17  it just may or may not have been somebody else riding
18  with you?
19   A.   They ain't did nothing different.
20   Q.   Were they stopping every car that came through
21  at these roadblocks?
22   A.   That was in front of me.
23   Q.   Now, you said the jump-out boys.  Who are the
24  jump-out boys?
25   A.   They are plain-dressed -- plain-dressed and no

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                    Pages 22..25

Page 22

1 county car. They are in a plain car or truck. Most of
2 the time, they will be in a truck. Sometimes they will
3 be in the cars as well. And if they jump out, they say
4 they are narcotics.
5   **Q.   Has one of those what I'll call the narcotics**
6 **deputies ever arrested you?**
7   A.  No.
8   **Q.   Have you ever been arrested?**
9   A.  No.
10  **Q.**



Page 23

1   A.
8   **Q.   All right. So back to the narcotics**
9 **plainclothes, you said they jump out all the time?**
10  A.  Sure, they do.
11  **Q.   Well, let me ask you this: They have never**
12 **jumped out or approached you, right?**
13  A.  They approached my house outside.
14  **Q.   When was that?**
15  A.  That was a few years back.
16  **Q.   Who was it? Do you remember which deputies it**
17 **was?**
18  A.  No.
19  **Q.   Which house was it?**
20  A.  It was 112 King Ranch Circle.
21  **Q.   Tell me when that was. You said it was a few**
22 **years ago, but do you remember --**
23  A.  Some of the details I do. We were barbecuing,
24 and they parked their truck. And the next thing we
25 know, they had walked in the car. They searched

Page 24

1 everybody that was sitting out there. They searched the
2 ground. They didn't find anything, and they left.
3   **Q.   How many people was it?**
4   A.  It was about seven of them sitting out there.
5 They asked if anybody had any illegal drugs out there,
6 and everybody said no.
7   **Q.   You don't know any of the deputies' names?**
8   A.  No.
9   **Q.   Were they white or black?**
10  A.  They were white, I know that much.
11  **Q.   All seven of them?**
12  A.  No. The jump-out boys were white.
13  **Q.   I'm sorry, so when you said seven people, you**
14 **were talking about there were seven people in your yard?**
15  A.  Yes.
16  **Q.   So I'm going to come back to that. So seven**
17 **people were there with you barbecuing?**
18  A.  Yes.
19  **Q.   How many deputies were there?**
20  A.  Two.
21  **Q.   And you don't know either one of their names?**
22  A.  No.
23  **Q.   Would you recognize them if you saw them?**
24  A.  No.
25  **Q.   So tell me about this day. What time of year**

Page 25

1 was it?
2   A.  It was hot.
3   **Q.   So summertime sometime?**
4   A.  Yes.
5   **Q.   And you don't remember what year it was?**
6   A.  No.
7   **Q.   Tell me, for what were you barbecuing? Was it**
8 **some type of holiday, or what was it for?**
9   A.  It was some type of holiday.
10  **Q.   Do you remember which one it was?**
11  A.  No. I don't know whether it was Memorial Day
12 or Labor Day or the 4th. It was one of those.
13  **Q.   Who else was there?**
14  A.  My husband was there. My son was there. Some
15 of his friends were there.
16  **Q.   When you say your son,** was there?
17  A.  Yes. I only have one son.
18  **Q.   So some of his friends?**
19  A.  No.
20  **Q.   Who were --**
21  A.  My husband's friends.
22  **Q.   Do you remember who they were?**
23  A.  No.
24  **Q.   Who else?**
25  A.  I was there. I was in the house in the kitchen

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                    Pages 26..29

Page 26

1 window. My sister was there. My girls were there.
2     Q.   What's your sister's name?
██████████████████████████
4     Q.   Can you spell that for me?
██████████████████████
6     Q.   Where does she live?
7     A.   She lives over there on Short Hickory.
8     Q.   Short?
9     A.   Yes, Short Hickory.
10    Q.   Short Hickory?
11    A.   Yes.
12    Q.   Is that in the Canton area?
13    A.   Yes, it is.
14    Q.   What's her phone number, do you know?
15    A.   I don't have my phone with me, and it's in my
16 phone.
17    Q.   Do you know what her address is?  You said the
18 street, but can you remember what the number is?
19    A.   I don't know.
20    Q.   All right.  And then you said your girls were
21 there.  Were all three of them -- all four of them
22 there?
23    A.   I know three were there.
24    Q.   Which ones were there?
25    A.   ███████was there, ██████████was there, and██████

Page 27

1 was there.
2     Q.   All right.  So let's go back.  You said you
3 were in the house at the time they pulled up?
4     A.   I didn't see them pull up.  They didn't pull up
5 at my house.
6     Q.   Okay, where did they pull up?
7     A.   Around the corner.  I live in a circle, and
8 they pulled up there in that, around the corner in the
9 curve.
10    Q.   Okay, let me back up.  Who was outside at the
11 time?
12    A.   My husband was outside, my son was outside, my
13 grandson was outside, and some of my husband's friends
14 were outside.
15    Q.   Which grandson is that?
16    A. ████████████████
17    Q. ████████████████mother?
18    A. ████████████
████████████████████████
21    Q.   So who else was outside?
22    A.   Some of my husband's friends.  I don't remember
23 who all it was.
24    Q.   Tell me what you remember.  What happened?
25 What were you doing at the time?

Page 28

1     A.   I was in the kitchen looking out the window
2 seeing to some meat in the sink when I saw them, so I
3 went to the other window and looked out the window, you
4 know, to see what was going on over on that side.
5     Q.   What did you see?
6     A.   I saw two white men dressed in plainclothes,
7 and they had their guns and stuff.  They had the stun
8 gun and the real gun.  And they were searching everybody
9 outside.  And they didn't find nothing in their pockets,
10 and then they searched the ground.  And they didn't find
11 nothing on the ground, and they left.
12    Q.   They never came inside the house?
13    A.   No, they never came inside the house.
14    Q.   Did you have a conversation with them?
15    A.   No, I did not.
16    Q.   Did you hear any conversations?
17    A.   Did I hear any conversations with them?
18    Q.   Right.
19    A.   Yes because the kitchen window was up, and I
20 was right there at the kitchen window.  They just asked,
21 "Have y'all got any illegal drugs out here?"  I heard
22 that.
23    Q.   Do you know what time of day it was?
24    A.   It was mid-afternoon.
25    Q.   Was anybody arrested?

Page 29

1     A.   No.
2     Q.   How long were they there?
3     A.   They weren't there no more than about 5
4 minutes.  If I had timed them, that's what I would say.
5     Q.   Is that the only time plainclothes deputies
6 have come to your house?
7     A.   No.
8     Q.   When else have they come to your house?
9     A.   They came into my yard.  My grandson was
10 walking across the street.  He lives across the street.
11 And they were coming by, and as he made it from his
12 house over across the street to my yard, they came by
13 and jumped out of the truck.  And he didn't have a shirt
14 on, and they grabbed him by his hand and they searched
15 him.  And they asked him what he was doing.
16    I told them -- I jumped up off my porch, and I said,
17 "That's my grandson.  He was just coming over here to
18 fix his brother's bike."  And they let him go.  They
19 said, "Next time tell him to put a shirt on," and they
20 got in their truck and left.
21    Q.   What's your grandson's name?
22    A. ████████████████
23    MR. GRAVES:  Let's take a quick break.
24    (A short break was taken off the record at
25 9:31 a.m.)

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                          Pages 30..33

Page 30

1        (Deposition resumed on the record at 9:38 a.m.)
2   BY MR. GRAVES:
3        **Q.   When we took the break, you were talking about**
4   **your grandson getting stopped I guess out -- was he in**
5   **the front yard or in the street?**
6        A.   He was crossing the street coming into my yard.
7   He lives across the street from me.
8        **Q.   So he was walking to your house?**
9        A.   Yes.
10       **Q.   And that's when he got stopped?**
11       A.   Yes.
12       **Q.   Do you know how long ago that was?**
13       A.   No.
14       **Q.   What time of day was it?**
15       A.   It was -- It had to be in the afternoon or
16  evening.  It was not dark because we were sitting on my
17  front porch.  It wasn't dark.
18       **Q.   Was it more than five years ago?**
19       A.   It could have been.  Yes, it was, because --
20  Yes, it was.
21       **Q.   What about the barbecue thing, was that more**
22  **than five years ago?**
23       A.   Probably so.
24       **Q.   What about more than ten years ago on the**
25  **barbecue thing?**

Page 31

1        A.   No.
2        **Q.   What about with your grandson, you said that**
3   was more than five years; was it more than ten?
4        A.   No.
5        **Q.   Have any of the relatives who lived with you at**
6   112 King Ranch Circle when you were living there, have
7   any of them ever been arrested?
8        A.   That lives with me now?
9        **Q.   Right.**
10       A.   No.
11       **Q.   What about when you were living on King Ranch**
12  Circle, did anybody who lived with you on King Ranch
13  Circle, have any of --
14       MR. GRAVES:  Strike that.
15  BY MR. GRAVES:
16       **Q.   When you were living on King Ranch Circle, you**
17  also had some relatives living with you, right?
18       A.   Yes.
19       **Q.   Have any of them ever been arrested?**
20       A.   No.
21       Q.

Page 32


13       **Q.   I understand.**
14       A.   Okay.
15       **Q.   Now, the plainclothes officers jumping out of**
16  their cars, are you saying that that somehow involves
17  race discrimination?
18       A.   I would say so.
19       **Q.   Why is that?**
20       A.   Because they are always in the black
21  neighborhoods jumping out.
22       **Q.   Are you saying they don't patrol in the white**
23  neighborhoods?
24       A.   I didn't say that.  I'm not going to say that.
25       **Q.   Have you ever filed a complaint with the**

Page 33

1   sheriff's department or any other law enforcement agency
2   for anything?
3        A.   No.
4        **Q.   Have you ever been involved in another lawsuit?**
5        A.   No.
6        **Q.   Have you ever met any other plaintiffs in this**
7   lawsuit?
8        A.   No.
9        **Q.   Have you talked to anybody else about this**
10  lawsuit?
11       A.   Any of the plaintiffs?
12       **Q.   Yes, any of the plaintiffs?**
13       A.   No.
14       **Q.   Have you talked to anybody besides your lawyers**
15  about this lawsuit?
16       A.   No.
17       **Q.   The text messages you said you get about**
18  roadblocks, you said you deleted the one you got about
19  three months ago, right?
20       A.   I didn't say I deleted it three months ago.
21  You delete it after you get them.
22       **Q.   Have your lawyers instructed you to keep text**
23  messages like that in this lawsuit?
24       A.   They haven't said nothing to me about that.
25       **Q.   Are you on social media?**

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                      Pages 34..37

Page 34
1    A.  What is that?
2    Q.  Like Facebook, Instagram, any of those things?
3    A.  I have Facebook on my phone.  I don't post
4 anything on Facebook unless it's a happy birthday.
5    Q.  Is Facebook one of the ways you said you get
6 these notices about roadblocks?
7    A.  It's text messages.  They will send texts.
8 People will send texts.  And they will send it in a
9 group, so a lot of people will get that.
10   Q.  A group text message?
11   A.  Yes.
12   Q.  I know you said you haven't met any of the
13 other plaintiffs in this lawsuit.  Do you know what any
14 of them are claiming?
15   A.  Do I know them?
16   Q.  Do you know what they are claiming in this
17 lawsuit, what type of claims they have alleged?
18   A.  No.  No, I don't.
19   Q.  Have you tried to get anybody else to join in
20 this lawsuit?
21   A.  Have I tried to get anybody else to join in
22 this lawsuit?
23   Q.  Right.
24   A.  I'm not going to answer that.  I don't want to
25 answer that question.

Page 35
1    Q.  Well, go ahead.
2       MR. TOM:  You have to answer it.
3       DEPONENT:  I have to answer that?
4       MR. TOM:  Yes, just go ahead and answer.
5    A.  I have talked to some people about that.
6 BY MR. GRAVES:
7    Q.  Who have you talked to?
8    A.  Who have I talked to?  Some friends.
9    Q.  Who?
10   A.  I have to answer that as well?
11   Q.  Yes.
12   A.  Okay.  I talked to Nason.  I have talked to
13 Rasheid Davis.  I have talked to my son.  That's all.
14   Q.  Did you say Nason?
15   A.  Nason.  N-a-s-o-n.
16   Q.  What's Nason's last name?
17   A.  That's their last name.
18   Q.  Where do the Nasons live?
19   A.  They live on Holmes Avenue.
20   Q.  When did you talk to them about trying to get
21 in the lawsuit?
22   A.  That's been a few months ago.
23   Q.  What did you tell them?
24   A.  I just told them about what was going on and
25 asked if they wanted to participate.

Page 36
1    Q.  And what did they say?
2    A.  They said yes.
3    Q.  Did you give them any other information?
4    A.  I just gave them about why we were petitioning
5 and stuff, and that was it.
6    Q.  When they said they wanted to participate, what
7 did you tell them to do?
8    A.  Talk to some of the people that I was talking
9 to.
10   Q.  People where?  At the ACLU or something?
11   A.  Yes.
12   Q.  Rasheid Davis, is that one person?
13   A.  Yes, it is.
14   Q.  And when did you talk to Rasheid?
15   A.  I talked to him all during the summer.
16   Q.  Where did he live?
17   A.  He lives in Jackson -- Ridgeland.
18   Q.  You said Jackson?
19   A.  I would say Ridgeland.
20   Q.  Okay.  How do you know Rasheid?
21   A.  He cuts my hair.
22   Q.  So what did you tell him about this lawsuit?
23   A.  I just told him about the roadblocks and the
24 jump-out boys and that we were trying to slow them down
25 and stop it.

Page 37
1    Q.  Did he say he wanted to be involved or not?
2    A.  He was involved.
3    Q.  I'm talking about in this lawsuit.
4    A.  That's what I'm talking about.  He was
5 involved, but he dropped out of it.
6    Q.  When did he drop out?
7    A.  I don't know when he dropped out.
8    Q.  How long ago was it when you all had the
9 conversation initially about him being involved?  You
10 said over the summer?
11   A.  Yes.
12   Q.  What about your son, when did you have
13 conversations with him about being involved in this
14 lawsuit?
15   A.  All the time.
16   Q.  Has he said whether or not he wants to be
17 involved?
18   A.  He did, but he dropped out of it too.
19   Q.  Do you know why he dropped out?
20   A.  I know why he dropped out, but I'm not going to
21 say.
22   Q.  Why did he drop out?
23   A.  I don't want to say.
24   Q.  Why did he drop out?  You have to tell me.
25   A.  No, I don't want to tell you.

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                                      Pages 38..41

Page 38

1   Q.  Why did he drop out?
2   A.  I'm not going to say.
3   Q.  Do you keep a journal or a diary?
4   A.  No.
5   Q.  I know you said on Facebook you usually do
6   birthdays or something like that.  Have you posted
7   anything about this lawsuit?
8   A.  No.
9   Q.  Have you posted anything about the Madison
10  County Sheriff's Department?
11  A.  No.
12  Q.  Have you had any other pages other than
13  Facebook where you used to have them but you deleted
14  them or you no longer use them?
15  A.  About what?
16  Q.  I mean like any other social media pages
17  similar to Facebook where you used to have a page but
18  you don't have it now?
19  A.  No.
20  Q.  Do you have any documents from any of the
21  roadblocks you got stopped at?
22  A.  No.
23  Q.  Any documentation regarding any of those?
24  A.  No.
25  Q.  What about for the barbecue thing?

Page 39

1   A.  No.
2   Q.  Have you ever called the sheriff's department
3   for any reason?
4   A.  Yes.
5   Q.  What did you call them for?
6   A.  I called them for when my son was missing for a
7   few days.  I called them, and it has been a long, long
8   time ago, but when my daughter left and left her baby
9   and didn't come home for a couple of days.  And that was
10  it.
11  Q.  When your son went missing, did they help you
12  find your son, or did he just show back up?
13  A.  He showed up when he realized I had called the
14  sheriff's department.
15  Q.  What about the incident with your daughter,
16  what did they do then?
17  A.  I went to the city police department.
18  Q.  So the Canton City Police?
19  A.  Yes.  I went there because where she was, it
20  was in the city limits.
21      MR. GRAVES:  Let's take one more break.  I'm
22  almost done, I think.
23      (A short break was taken off the record at
24  9:52 a.m.)
25      (Deposition resumed on the record at

Page 40

1   10:02 a.m.)
2       MR. TOM:  Before we start, I would like to mark
3   as confidential any of the minor children -- or just
4   minors that Ms. Tucker has mentioned in the deposition.
5       MR. GRAVES:  Okay, do you mean the --
6       MR. TOM:  Just their names and information.
7   BY MR. GRAVES:
8       Q.  ████████████████████████████████
████████████████████████
████████████████████████████████
████████████████████████████
████████████████████████
████████████████████████████
████████████████████████
████████████████████████████████
████████████████████
████████████████████████████
████████████████████████
████████████████████████
████████████████████████████████

Page 41

1       A.  I really found out about this lawsuit through
2   some friends.
3       Q.  Who talked to you about it first?
4       A.  Rasheid Davis.
5       Q.  So he told you about the lawsuit first?
6       A.  Yes.
7       Q.  Because I'm going back, and I think initially
8   you were saying that this summer you were trying to talk
9   him into getting involved in this lawsuit, right?
10      A.  No, I was trying to get him to join me with the
11  lawsuit, but he explained to me why he couldn't
12  participate in it.
13      Q.  Why is that?
14      A.  ████████████████████████████████████
████████████████████████████████████████
██████████████████████████████
17      Q.  But he actually told you about the lawsuit
18  before you talked to him about it?
19      A.  Yes, he did.
20      Q.  When was that?
21      A.  That was sometime this year or last year one.
22      Q.  And what did he say about it when he first told
23  you about it?
24      A.  He said, "You all have roadblocks on y'all's
25  road a lot."  I said, "I know."  He said, "There are

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                                      Pages 42..45

Page 42

1  some people who can help y'all out with that," and he
2  told me -- he gave me Jade and them's number, and I
3  called them.
4       Q.   Did he give you a business card, or he just
5  gave you a phone number?
6       A.   He gave me a phone number.
7       Q.   ███████████████████████████████████████
   ███████████████████████████████████████████
   ██████████████████████████████████
   ████████████████████████████████████████
   ████████████████████████████████
   ████████████████████████████████
   █████████████████████████████
14       Q.   When you got that number, you said you got the
15  number for Jade?
16       A.   Yes.
17       Q.   Did you call her?
18       A.   Sure, I did.
19       Q.   Do you remember when that was?
20       A.   No, I don't.
21       Q.   Kenderrick, do you know when his birthday is?
22       A.   July 25th, 19 -- I don't know the year of his
23  birthday, but I know it's July 25th.
24       Q.   Do you know about how old he is?
25       A.   He's 25.

Page 43

1       Q.   And just to be sure, you did say James was at
2  that cookout, right?
3       A.   Yes.
4            MR. GRAVES:  That's all the questions I have.
5            MR. TOM:  No questions from us.
6            (Whereupon, the above-entitled deposition was
7  concluded at 10:07 a.m.)

Page 44

1             IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
2                    JACKSON DIVISION
3  LATOYA BROWN; LAWRENCE BLACKMON
   HERBERT ANTHONY GREEN; KHADAFY MANNING;
4  QUINETTA MANNING; MARVIN MCFIELD;
   NICHOLAS SINGLETON; STEVEN SMITH;
5  BESSIE THOMAS; and BETTY JEAN WILLIAMS
   TUCKER, individually and on behalf of a
6  class of all other similarly situated,      PLAINTIFFS
7  VERSUS            CIVIL ACTION NO. 3:17-cv-347 WHB LRA
8  MADISON COUNTY, MISSISSIPPI;
   SHERIFF RANDALL S. TUCKER, in his
9  official capacity; and MADISON COUNTY
   SHERIFF'S DEPUTIES JOHN DOES #1 through #6,
10  in their individual capacities,         DEFENDANTS
11              CERTIFICATE OF DEPONENT
12     I, BETTY JEAN WILLIAMS TUCKER, do hereby certify
13  that I have read the deposition and that it is a true
14  and accurate transcription of the deposition given by me
15  in this cause with the corrections or addition, if any,
16  indicated by me on the attached errata sheet.
17
18                    _____
                      BETTY JEAN WILLIAMS TUCKER
19
20     Subscribed and sworn to before me this _____ day of
21  _____, 201___.
22                    _____
                      NOTARY PUBLIC
23
24  MY COMMISSION EXPIRES:
25  _____

Page 45

1                    ERRATA SHEET
2  PAGE        LINE        CORRECTIONS (IF ANY)
3  _____       _____       _____
4  _____       _____       _____
5  _____       _____       _____
6  _____       _____       _____
7  _____       _____       _____
8  _____       _____       _____
9  _____       _____       _____
10  _____       _____       _____
11  _____       _____       _____
12  _____       _____       _____
13  _____       _____       _____
14  _____       _____       _____
15  _____       _____       _____
16  _____       _____       _____
17  _____       _____       _____
18  _____       _____       _____
19  _____       _____       _____
20  _____       _____       _____
21  _____       _____       _____
22  _____       _____       _____
23  _____       _____       _____
24  _____       _____       _____
25  _____       _____       _____

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                                                    Page 46

```
                                                    Page 46
 1                 CERTIFICATE OF COURT REPORTER
 2          I, BECKY LYNN LOGAN, Court Reporter and Notary
 3    Public, in and for the County of Lincoln, State of
 4    Mississippi, do hereby certify:
 5          That on the 19th day of December, 2017, there
 6    appeared before me BETTY JEAN WILLIAMS TUCKER;
 7          That the witness was sworn by me to tell the
 8    truth, the whole truth, and nothing but the truth in
 9    said cause;
10          That the foregoing pages contain a full, true,
11    and correct transcription of all testimony of said
12    witness as taken by me at the time and place heretofore
13    stated;
14          That I am not of kin or in anywise associated
15    with any of the parties to said cause of action or their
16    counsel, and that I am not financially interested in the
17    action.
18          IN WITNESS WHEREOF, I have hereunto set my hand
19    and seal, this the 26th day of December, 2017.
20

21                 BECKY LYNN LOGAN, RPR, CCR #1750
22
23
24    MY COMMISSION EXPIRES:  September 10th, 2021
25
```

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.

Betty Williams - 12/19/2017

**1**

**11** 13:25

**11-24-52** 8:22

**112** 10:19 23:20 31:6

**11th** 8:3

**12th** 13:17

**13** 11:19

**16** 22:15,16

**17** 11:15

**1975** 9:21 15:9

**1979** 9:25 10:4

**1984** 10:8

**1st** 9:15

**2**

**22** 19:6,11,12,16,20 20:4

**242** 10:12

**24th** 10:8

**25** 10:21 27:20

**26th** 9:25

**2:00** 12:17

**3**

**3:00** 6:16

**4**

**4th** 25:12

**5**

**5** 29:3

**51** 22:15,22

**6**

**60** 12:1

**6th** 10:4

**7**

**74** 9:15

**8**

**8th** 9:21

**9**

**9:31** 29:25

**9:38** 30:1

**9:52** 39:24

**A**

**A-k-e-s-h-a** 9:12

**a.m.** 6:16 29:25 30:1 39:24

**ACLU** 36:10

**address** 10:25 26:17

**Adeline** 19:4,5,9, 20,24

**afternoon** 30:15

**agency** 33:1

**ahead** 17:1 35:1,4

**Akesha** 9:9,11 10:3 14:11

**Akesha's** 10:4 14:12

**alleged** 34:17

**Alva** 8:18,19 11:1 14:6,8,10,14

**Anniah** 21:6

**approached** 23:12, 13

**April** 10:15

**area** 13:10 26:12

**arrested** 22:6,8 28:25 31:7,19,22, 24,25

**assembly** 14:23

**assume** 5:23 15:21

**attorneys** 12:12

**Avenue** 35:19

**B**

**baby** 9:16 39:8

**babysat** 15:12

**back** 5:21 7:5,24 8:3,4,10 9:13 14:4, 25 20:18,21,23,24 23:8,15 24:16 27:2, 10 39:12

**bad** 7:18

**barbecue** 30:21,25 38:25

**barbecuing** 23:23 24:17 25:7

**Betty** 5:1 6:2,3,8

**bike** 29:18

**birth** 6:7 8:21 9:24

**birthday** 9:14,20,25 10:4,7,8 34:4

**birthdays** 38:6

**bit** 21:1

**black** 17:2,5 18:2 24:9 32:20

**blacks** 17:25

**blood** 7:13

**Boulevard** 10:12

**boys** 16:17,18 21:23,24 24:12 36:24

**break** 5:18 29:23, 24 30:3 39:21,23

**bring** 20:23

**brother** 12:1

**brother's** 29:18

**brought** 20:24

**C**

**call** 22:5 39:5

**called** 7:19 20:22 39:2,6,7,13

**Canton** 10:6,11 13:10,13,21 14:15 16:16 23:1 26:12 39:18

**car** 20:21,25 21:2,3, 7,15,20 22:1 23:25

**card** 20:16,17

**cars** 22:3 32:16

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                    Index: casino..Graves

**casino** 22:19

**chance** 6:17

**charge** 32:3

**charged** 22:10

**charges** 32:3

**checked** 20:21

**child** 31:25 32:2,4

**children** 14:4

**circle** 10:19 12:2 23:20 27:7 31:6,12, 13,16

**citation** 20:8

**city** 39:17,18,20

**claiming** 16:11 34:14,16

**claims** 34:17

**clear** 5:21

**Company** 14:17

**complaint** 32:25

**conversation** 28:14 37:9

**conversations** 28:16,17 37:13

**cook** 15:5

**copy** 18:6

**corner** 27:7,8

**county** 5:10 15:3 16:1 22:1,18 38:10

**couple** 39:9

**court** 32:10

**crime** 22:10

**crossing** 30:6

**current** 10:24

**curve** 27:9

**cuts** 36:21

---

**D**

**dad** 14:12

**dark** 30:16,17

**date** 8:21 9:24

**daughter** 11:16,17, 21 39:8,15

**Davis** 35:13 36:12

**day** 24:25 25:11,12 28:23 30:14

**days** 39:7,9

**deal** 8:11

**December** 9:21

**delete** 33:21

**deleted** 33:18,20 38:13

**department** 16:2,5 17:4 33:1 38:10 39:2,14,17

**DEPONENT** 6:23 7:1 35:3

**deposition** 5:12 12:7 30:1 39:25

**deputies** 22:6 23:16 24:19 29:5

**deputies'** 24:7

**details** 23:23

**diabetes** 7:14

**diary** 38:3

**discrimination** 32:17

**doctor** 7:19

**documentation** 38:23

**documents** 13:5,7 15:24 16:4 38:20

**Doris** 10:12

**dressed** 28:6

**drop** 37:6,22,24 38:1

**dropped** 37:5,7,18, 19,20

**drugs** 24:5 28:21

**duly** 5:2

---

**E**

**endangerment** 31:25 32:2,4

**enforcement** 33:1

**evening** 30:16

**EXAMINATION** 5:4

**examined** 5:2

**experienced** 21:9

---

**F**

**Facebook** 17:22 34:2,3,4,5 38:5,13, 17

**fair** 5:23

**father** 14:5

**February** 10:4,8

**feel** 6:22 8:9

**feelings** 5:20

**file** 16:13,14

**filed** 32:3,10,25

**find** 24:2 28:9,10 39:12

**fine** 8:8

**finish** 7:6

**fix** 29:18

**flashed** 20:24

**follow-up** 8:2

**Francis** 10:12

**friends** 18:15 25:15,18,21 27:13, 22 35:8

**frightened** 21:1

**front** 21:22 30:5,17

**full** 6:1

---

**G**

**gave** 20:18,24 36:4

**girls** 26:1,20

**give** 36:3

**grabbed** 29:14

**grade** 13:17

**graduate** 13:14

**grandchildren** 15:12 20:25 21:2

**granddaughters** 11:2

**grandson** 27:13,15 29:9,17 30:4 31:2

**grandson's** 29:21

**Graves** 5:5,8 6:13, 18 7:4,8 16:25 29:23 30:2 31:14, 15 35:6 39:21

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                                Index: ground..left

| | | | |
|---|---|---|---|
| **ground** 5:14 24:2 28:10,11 | **hot** 25:2 | 8:18,19 9:9,24 11:1 14:9 25:16 | **Kiara** 11:4,5,18 21:3,5 |
| **group** 12:5 34:9,10 | **hours** 6:25 12:19 | **James'** 9:25 | **kids** 9:2 |
| **grow** 13:10 | **house** 10:16,22 12:22 23:13,19 25:25 27:3,5 28:12, 13 29:6,8,12 30:8 | **Jean** 5:1 6:2,3,8 | **kids'** 9:4 |
| **guess** 30:4 | | **jobs** 15:13 | **Kimla** 9:5,6,8,14,15 14:4 26:25 27:18 |
| **gun** 28:8 | **hurt** 5:20 | **join** 34:19,21 | **Kimla's** 14:5 |
| **guns** 28:7 | **husband** 8:17 11:1 25:14 27:12 | **journal** 38:3 | **kind** 14:3 21:1 |
| | | **July** 9:25 | **King** 10:19 12:2 18:22,24 19:4,6,9, 11,14,20 20:1,2,4, 12 23:20 31:6,11, 12,16 |
| **H** | **husband's** 25:21 27:13,22 | **jump** 22:3 23:9 | |
| | | **jump-out** 16:17,18 21:23,24 24:12 36:24 | |
| **H-a-n-d-y** 26:5 | **I** | | **kitchen** 25:25 28:1, 19,20 |
| **hair** 36:21 | | **jumped** 23:12 29:13,16 | **Kyrie** 11:8,22 |
| **half** 8:24 | **idea** 32:11 | **jumping** 14:3 16:17 32:15,21 | |
| **hand** 29:14 | **illegal** 24:5 28:21 | | **L** |
| **handle** 6:21 | **imagine** 6:20 | **K** | |
| **Handy** 26:3 | **incident** 39:15 | | **L-e-e** 26:5 |
| **happened** 20:14 22:17 27:24 | **Indicating** 13:2 | **K-a-r-a** 9:12 | **Labor** 25:12 |
| **happy** 34:4 | **informal** 5:17 | **K-i-a-r-a** 11:6 | **law** 33:1 |
| **health** 6:21 | **information** 36:3 | **K-i-m-l-a** 9:7 | **lawsuit** 5:10 16:11, 13,14 33:4,7,10,15, 23 34:13,17,20,22 35:21 36:22 37:3, 14 38:7 |
| **hear** 28:16,17 | **initially** 37:9 | **K-y-r-i-e** 11:9 | |
| **heard** 28:21 | **inside** 28:12,13 | **Kamya** 11:4,14 21:3,5 | |
| **Hey** 6:11 | **Instagram** 34:2 | **Kamya's** 11:24 | **lawyer** 8:6 |
| **Hickory** 26:7,9,10 | **instructed** 33:22 | **Kara** 9:12 10:7 11:17 14:13 26:25 | **lawyers** 5:9 13:1 33:14,22 |
| **high** 7:13 13:12,13, 18 15:8 | **insurance** 20:16,17 | **Kara's** 10:8 11:21 | **leaking** 7:18 |
| **Highway** 19:12,20 20:4 22:22 | **involved** 33:4 37:1, 2,5,9,13,17 | **Kashondra** 9:9,20 14:7 26:25 | **leave** 6:17 |
| **holiday** 25:8,9 | **involves** 32:16 | **Kenderrick** 27:16, 19,20 29:22 31:21 | **Lee** 26:3 |
| **Holmes** 35:19 | **J** | **Kenderrick's** 27:17 | **left** 13:18 14:15 15:8,10 24:2 28:11 29:20 39:8 |
| **home** 12:21 15:1,2, 3,11 39:9 | **Jackson** 10:2 36:17,18 | | |
| **hospital** 6:16 7:16 | **James** 5:8 6:11 | | |

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Betty Williams - 12/19/2017                                    Index: license..pretty

**license** 20:16

**light** 20:25

**limits** 39:20

**live** 9:18,22 10:1,5, 10,11,18,20 17:25 26:6 27:7 32:12 35:18,19 36:16

**lived** 10:14,15,19, 21 12:3 31:5,12

**lives** 9:19,23 10:2, 6,9,24 26:7 29:10 30:7 31:8 36:17

**living** 12:2 31:6,11, 16,17

**locations** 18:11

**long** 7:3 8:4,23 10:14,20 12:18 13:24 14:20 15:6, 20 22:21 23:2,3 29:2 30:12 37:8 39:7

**longer** 38:14

**looked** 13:8 20:20 28:3

**Lord** 22:21

**lot** 5:17 17:24 34:9

**Luther** 18:22,24 19:6,9,20 20:1,2,12

**M**

**made** 29:11

**Madison** 5:10 15:3 16:1 22:18 38:9

**make** 6:24 13:16

**Manufacturing** 13:21 14:16,17

**marijuana** 32:1,6

**marriage** 8:25

**married** 6:9 8:14, 15,23

**Martin** 18:22,24 19:6,9,20 20:1,2,12

**meat** 28:2

**media** 33:25 38:16

**medication** 7:10,12

**medicine** 7:14

**meet** 12:12,18

**Memorial** 25:11

**men** 28:6

**message** 18:12,18 34:10

**messages** 33:17,23 34:7

**met** 5:9 33:6 34:12

**mid-afternoon** 28:24

**military** 15:21

**minutes** 20:23 29:4

**missing** 39:6,11

**moment** 19:22

**months** 11:23 18:10 20:3,6,11 33:19,20 35:22

**morning** 6:16 7:15 8:1

**mother** 11:20 27:17

**N**

**N-a-s-o-n** 35:15

**names** 9:4 11:3 18:16 24:7,21

**narcotics** 22:4,5 23:8

**Nason** 35:12,14,15

**Nason's** 35:16

**Nasons** 35:18

**needed** 8:2

**neighborhood** 17:24

**neighborhoods** 17:3,5,8,10,25 18:2,4 32:21,23

**night** 7:18

**notices** 34:6

**notification** 18:3

**notifications** 18:2

**number** 26:14,18

**nursing** 15:1,2,3,10

**O**

**O-r-a** 26:5

**Objection** 16:24

**officers** 21:16 32:15

**Ora** 26:3

**P**

**pages** 38:12,16

**parked** 23:24

**participate** 35:25 36:6

**passed** 20:16

**patrol** 32:22

**people** 12:5 17:21 24:3,13,14,17 34:8, 9 35:5 36:8,10

**perform** 7:21

**performed** 7:23

**person** 36:12

**petitioning** 36:4

**phone** 26:14,15,16 34:3

**phonetic** 21:6

**plain** 22:1

**plain-dressed** 21:25

**plainclothes** 23:9 28:6 29:5 32:15

**plaintiffs** 33:6,11, 12 34:13

**pocket** 32:1

**pockets** 28:9

**point** 8:9,11

**police** 21:16 39:17, 18

**policies** 15:25 16:1

**poor** 6:20

**porch** 29:16 30:17

**possession** 32:6

**post** 34:3

**posted** 38:6,9

**prepare** 12:7

**pressure** 7:13

**Presto** 14:17,18

**pretty** 17:19 21:9

**problem** 16:21,24

**process** 21:8,9,13

**Public** 13:13

**pull** 27:4,6

**pulled** 27:3,8

**put** 17:22 29:19

**Q**

**question** 5:19 34:25

**questions** 5:22

**quick** 6:12 29:23

**R**

**race** 32:17

**Ranch** 10:19 12:2 18:22,24 19:4,7,9, 11,14,21 20:4 23:20 31:6,11,12, 16

**Rasheid** 35:13 36:12,14,20

**real** 6:12 7:18 28:8

**realized** 39:13

**reason** 39:3

**recently** 6:14

**recognize** 24:23

**record** 29:24 30:1 32:11 39:23,25

**recovering** 6:15

**relatives** 31:5,17

**released** 8:1

**remember** 13:8

15:15,20,23 16:8 18:11,17 19:1,18, 19,22 20:14 22:20 23:5,7,16,22 25:5, 10,22 26:18 27:22, 24

**representing** 5:9

**rest** 7:14

**resumed** 30:1 39:25

**review** 16:5

**reviewed** 15:25

**Ridgeland** 9:19,23 36:17,19

**riding** 21:17

**Road** 18:23,24 19:4,7,9,11,15,21 20:4

**roadblock** 17:24 18:11,20 19:3 20:10,15

**roadblocks** 16:16, 18,21,22 17:2,5,7, 21 18:2,3,19 20:8 21:10,21 33:18 34:6 36:23 38:21

**rules** 5:14

**runs** 19:16

**S**

**saved** 18:7

**school** 13:12,18 15:8

**searched** 23:25 24:1 28:10 29:14

**searching** 28:8

**send** 34:7,8

**separate** 19:14

**set** 18:20

**sheriff** 5:10

**sheriff's** 16:1,5 17:4 33:1 38:10 39:2,14

**shirt** 29:13,19

**short** 26:7,8,9,10 29:24 39:23

**show** 39:12

**showed** 20:18 39:13

**side** 28:4

**similar** 38:17

**sink** 28:2

**sister** 26:1

**sister's** 26:2

**sitting** 13:3 24:1,4 30:16

**slight** 6:16

**slow** 36:24

**social** 33:25 38:16

**son** 11:24 25:14,16, 17 27:12 35:13 37:12 39:6,11,12

**sooner** 20:3

**specifically** 15:24

**spell** 9:11 26:4

**spot** 14:2

**stand** 5:16

**staples** 7:17

**started** 7:18

**stomach** 7:17

**stop** 8:9 36:25

**stopped** 19:3,23 20:12 21:10 30:4, 10 38:21

**stopping** 21:20

**street** 18:21 26:18 29:10,12 30:5,6,7

**Strike** 31:14

**stuff** 28:7 36:5

**stun** 28:7

**summer** 36:15 37:10

**summertime** 25:3

**supposed** 8:3

**surgery** 6:14 7:22, 23,24

**sworn** 5:2,15

**T**

**tag** 20:21

**talk** 35:20 36:8,14

**talked** 33:9,14 35:5, 7,8,12,13 36:15

**talking** 24:14 30:3 36:8 37:3,4

**ten** 30:24 31:3

**testified** 5:3

**Texas** 10:9

**text** 17:22 18:12,14, 18 33:17,22 34:7, 10

**texted** 17:23

**texts**  18:6,9 34:7,8

**thing**  5:11,25 23:24 30:21,25 38:25

**things**  34:2

**thinner**  7:13

**ticket**  22:12

**tickets**  23:4

**time**  5:18 9:13 11:11 12:16 15:19 17:23 18:8 19:9,23 20:10 21:15 22:2, 21 23:3,9 24:25 27:3,11,25 28:23 29:5,19 30:14 37:15 39:8

**timed**  29:4

**today**  8:7,10 12:8

**told**  7:19 8:6 20:19 29:16 35:24 36:23

**Tom**  6:11,14,19,24 13:3 16:24 35:2,4

**town**  22:16,23

**track**  5:21

**traffic**  22:12 23:4

**trial**  5:16

**truck**  22:1,2 23:24 29:13,20

**Truman**  11:10,25 12:1

**truth**  5:16

**Tucker**  5:1,6 6:2,5, 9,14,22 8:13,18 11:1 14:6,8,10,14

**type**  7:9,12,21 25:8, 9 34:17

## U

**understand**  5:20 16:3 32:13

**understood**  5:23

**unnecessarily**  16:17

## V

**Virginia**  7:7

## W

**walked**  20:20 23:25

**walking**  29:10 30:8

**wanted**  35:25 36:6 37:1

**ways**  34:5

**week**  7:7,23 8:5

**welder**  14:2

**white**  17:10,24,25 18:4 24:9,10,12 28:6 32:22

**Williams**  5:1 6:2,5, 8 9:5,8,9,10,12 11:4,8,10 21:6 27:16,18 29:22

**Williams'**  11:17

**window**  26:1 28:1, 3,19,20

**work**  13:19,20,22, 24 14:16,20 15:6

**worked**  15:7,19

**working**  14:25 15:17

**written**  16:4

## Y

**y'all**  28:21

**yard**  24:14 29:9,12 30:5,6

**year**  10:15 15:8,9 19:25 24:25 25:5

**Year's**  9:16

**years**  8:24 10:21 12:1 13:25 14:21 15:7 23:15,22 30:18,22,24 31:3

**yesterday**  12:15 15:24 16:6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; HERBERT ANTHONY GREEN; KHADAFY MANNING; QUINNETTA MANNING; MARVIN MCFIELD; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated,<br><br>　　　Plaintiffs,<br><br>　　　　v.<br><br>MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and MADISON COUNTY SHERIFF'S DEPUTIES JOHN DOES #1 through #6, in their individual capacities,<br><br>　　　Defendants. | Civil Action No.<br>3:17-cv-00347-WHB-LRA<br><br><br>**PLAINTIFF BETTY JEAN WILLIAMS TUCKER'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF INTERROGATORIES** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Betty Jean Williams Tucker ("Plaintiff"), by and through her attorneys, hereby submits the following supplemental responses and objections to Interrogatories Nos. 8 and 14 of Defendants' First Set of Interrogatories served by Defendants on Plaintiffs on September 22, 2017 (collectively, the "Interrogatories," and each an "Interrogatory"). The Second Supplemental Responses and Objections set forth below are made in further response to the Interrogatories and supplement the Responses and Objections previously served by Plaintiff.

# EXHIBIT "B"

## GENERAL OBJECTIONS

Plaintiff hereby incorporates by reference the General Objections set forth in her Responses and Objections to Defendants' First Set of Interrogatories dated October 20, 2017 and her Supplemental Responses and Objections to Defendants' First Set of Interrogatories dated November 14, 2017.  Plaintiff asserts those General Objections as to each Interrogatory, whether or not such objections are repeated below in response to each individual Interrogatory.

## SPECIFIC SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES NOS. 8 AND 14

**Interrogatory No. 8:**

Please identify and describe in detail the form and substance of any policy or procedure of the Defendants or the Madison County Sheriff's Department you contend constitutes a policy sanctioning or encouraging unreasonable searches and seizures or racial discrimination. For each such policy, please state:

(a)     the name of the policy;

(b)     the terms of the policy;

(c)     the date it went into effect;

(d)     the means by which it went into effect;

(e)     how you learned of such policy; and

(f)     the name, address, and telephone number of the person who provided it to you.

**Supplemental Response to Interrogatory No. 8:**

In addition to the General Objections incorporated herein by reference, Plaintiff objects to Interrogatory No. 8 on the grounds that it seeks information already in the possession, custody, or control of or that is known to, equally available to, or solely available to Defendants.  Plaintiff further objects to this Interrogatory on the grounds that it seeks information that is protected from disclosure by, or disclosure of which is prohibited or restricted under, any privilege or immunity, including the attorney-client privilege, the work product doctrine, the joint defense

2

privilege, the common interest privilege or any other applicable privilege, immunity or limitation on discovery. Plaintiff also objects to this Interrogatory as vague, overbroad, and unduly burdensome. Plaintiff further objects to this Interrogatory because class certification-related discovery is ongoing and incomplete, and to the extent that this Interrogatory purports to require Plaintiffs to marshal evidence in support of any right or claim. Plaintiff also objects to this Interrogatory as vague, overbroad, and unduly burdensome. Plaintiff further objects to this Interrogatory on the grounds that it requests information regarding counsel's preparation of the case on behalf of the named Plaintiffs and the proposed class, rather than information that is within the personal knowledge of Plaintiff. Any information provided by Plaintiff in response to this Interrogatory is provided subject to and without waiver of these objections and qualifications.

Subject to and without waiver of the foregoing objections, and in addition to the information previously provided by Plaintiff in response to this Interrogatory, Plaintiff states that policies and procedures of Defendants or the Madison County Sheriff's Department that constitute a policy sanctioning or encouraging unreasonable searches and seizures or racial discrimination include, but are not limited to:

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks without appropriate procedural safeguards, including (i) roadblocks conducted using unmarked cars, (ii) roadblocks conducted using cars without emergency lighting engaged and/or using flashlights as a primary light source, (iii) roadblocks conducted by plainclothes or undercover officers, including narcotics officers and members of the "NET Team," "Jump Out Detail," and/or "Apartment Detail," (iv) roadblocks conducted in inadequately lit areas, (v) "roving" roadblocks, and (vi)

roadblocks at which officers do not stop every car, but instead use their discretion to only stop certain vehicles.

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks at which officers require persons other than the driver to produce identification or provide other information, or otherwise search or detain persons without reasonable suspicion or probable cause.

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks at which Madison County Sheriff's Department personnel stop, question, detain, and/or search pedestrians in the vicinity of the roadblock without reasonable suspicion or probable cause and/or on the basis of race.

- The Madison County Sheriff's Department's policy, custom, and/or practice of stopping, questioning, detaining, and/or searching pedestrians travelling through majority-Black areas of Madison County without reasonable suspicion or probable cause and/or on the basis of race, including as implemented by narcotics officers and members of the "NET Team," "Jump Out Detail," and/or "Apartment Detail."

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks for the purpose of checking for outstanding warrants, including but not limited to as described in the Notices produced at (i) MC T. CHASTAIN LAPTOP 17, (ii) MC MAD. COUNTY MAIN SERVER 1, and (iii) MC – SANDRIDGE DESKTOP 23, as well as the Notice annexed to the Complaint and the incident report produced at Bates numbers MC-RFP-Inc. Rep. 010886-010887.

- The Madison County Sheriff's Department's policy, custom, and/or practice of disproportionately conducting traffic stops in majority-Black areas, conducting pretextual

traffic stops on the basis of race, and disproportionately issuing citations to and making arrests of Black individuals during traffic stops.

- The Madison County Sheriff's Department's policy, custom, and/or practice of discriminatorily arresting, citing, and/or charging Black individuals at higher rates, and/or with greater severity, than white persons engaged in the same or similar conduct.

- The Madison County Sheriff's Department's policy, custom, and/or practice of entering the homes of Black residents of Madison County without warrants or other valid legal justification in the course of serving warrants and/or conducting investigations, and of conducting unreasonable and warrantless searches of such premises in connection therewith.

- The Madison County Sheriff's Department's deliberate indifference to violations of the Fourth and Fourteenth Amendments by its personnel, as demonstrated by (i) the Madison County Sheriff's Department's failure to adequately train, supervise, and/or discipline officers with respect to unconstitutional policing practices and with respect to officers' exercise of discretion in conducting law enforcement activities, (ii) the Madison County Sheriff's Department's failure to adequately investigate or otherwise respond to citizen complaints, (iii) the Madison County Sheriff's Department's failure to maintain data and/or statistics regarding incidents involving the use of force and the racial composition of persons subject to the Madison County Sheriff's Department's policing activities, and (iv) the Madison County Sheriff's Department's culture of racial discrimination and of explicitly or implicitly condoning, authorizing, and/or acquiescing to racially discriminatory attitudes, statements, and actions by Madison County Sheriff's Department personnel.

5

The policies, customs, and/or practices described above have been identified through analysis of deposition testimony taken in this Action, documents produced by the parties, and documents received in response to requests made under the Mississippi Public Records Act. Plaintiff's investigation, discovery, and preparation of her case and her legal theories, through counsel, are ongoing, and Plaintiff reserves all rights to identify other policies and/or procedures, to clarify or refine Plaintiff's characterizations of the above-mentioned policies and/or procedures, and/or to rely on other or additional evidence concerning any such policies and/or procedures, including as a result of documentary or testimonial evidence that may be adduced in this Action after the date hereof.

**Interrogatory No. 14:**

Please state the questions of law and fact you contend are common to the class your Complaint alleges, and identify any documents related to the common questions of law and fact.

**Supplemental Response to Interrogatory No. 14:**

In addition to the General Objections incorporated herein by reference, Plaintiff objects to Interrogatory No. 14 on the grounds that it seeks information that is protected from disclosure by, or disclosure of which is prohibited or restricted under, the attorney-client privilege, the work product doctrine, the joint defense privilege, the common interest privilege or any other applicable privilege, immunity, or limitation on discovery. Plaintiff further objects to this Interrogatory because class certification-related discovery is ongoing and incomplete, and to the extent that this Interrogatory purports to require Plaintiffs to marshal evidence in support of any right or claim. Plaintiff also objects to this Interrogatory as vague, overbroad, and unduly burdensome. Plaintiff further objects to this Interrogatory on the grounds that it requests information regarding counsel's preparation of the case on behalf of the named Plaintiffs and the proposed class, rather than information that is within the personal knowledge of Plaintiff. Any

information provided by Plaintiff in response to this Interrogatory is provided subject to and without waiver of these objections and qualifications.

Subject to and without waiver of the foregoing objections, and in addition to the information previously provided by Plaintiff in response to this interrogatory, Plaintiff states that the existence, scope, and implementation of the following policies and/or procedures of the Madison County Sheriff's Department constitute common questions that are appropriately resolved on a class-wide basis:

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks without appropriate procedural safeguards, including (i) roadblocks conducted using unmarked cars, (ii) roadblocks conducted using cars without emergency lighting engaged and/or using flashlights as a primary light source, (iii) roadblocks conducted by plainclothes or undercover officers, including narcotics officers and members of the "NET Team," "Jump Out Detail," and/or "Apartment Detail," (iv) roadblocks conducted in inadequately lit areas, (v) "roving" roadblocks, and (vi) roadblocks at which officers do not stop every car, but instead use their discretion to only stop certain vehicles.

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks at which officers require persons other than the driver to produce identification or provide other information, or otherwise search or detain persons without reasonable suspicion or probable cause.

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks at which Madison County Sheriff's Department

personnel stop, question, detain, and/or search pedestrians in the vicinity of the roadblock without reasonable suspicion or probable cause and/or on the basis of race.

- The Madison County Sheriff's Department's policy, custom, and/or practice of stopping, questioning, detaining, and/or searching pedestrians travelling through majority-Black areas of Madison County without reasonable suspicion or probable cause and/or on the basis of race, including as implemented by narcotics officers and members of the "NET Team," "Jump Out Detail," and/or "Apartment Detail."

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks for the purpose of checking for outstanding warrants, including but not limited to as described in the Notices produced at (i) MC T. CHASTAIN LAPTOP 17, (ii) MC MAD. COUNTY MAIN SERVER 1, and (iii) MC – SANDRIDGE DESKTOP 23, as well as the Notice annexed to the Complaint and the incident report produced at Bates numbers MC-RFP-Inc. Rep. 010886-010887.

- The Madison County Sheriff's Department's policy, custom, and/or practice of disproportionately conducting traffic stops in majority-Black areas, conducting pretextual traffic stops on the basis of race, and disproportionately issuing citations to and making arrests of Black individuals during traffic stops.

- The Madison County Sheriff's Department's policy, custom, and/or practice of discriminatorily arresting, citing, and/or charging Black individuals at higher rates, and/or with greater severity, than white persons engaged in the same or similar conduct.

- The Madison County Sheriff's Department's policy, custom, and/or practice of entering the homes of Black residents of Madison County without warrants or other valid legal justification in the course of serving warrants and/or conducting investigations, and of

conducting unreasonable and warrantless searches of such premises in connection therewith.

- The Madison County Sheriff's Department's deliberate indifference to violations of the Fourth and Fourteenth Amendments by its personnel, as demonstrated by (i) the Madison County Sheriff's Department's failure to adequately train, supervise, and/or discipline officers with respect to unconstitutional policing practices and with respect to officers' exercise of discretion in conducting law enforcement activities, (ii) the Madison County Sheriff's Department's failure to adequately investigate or otherwise respond to citizen complaints, (iii) the Madison County Sheriff's Department's failure to maintain data and/or statistics regarding incidents involving the use of force and the racial composition of persons subject to the Madison County Sheriff's Department's policing activities, and (iv) the Madison County Sheriff's Department's culture of racial discrimination and of explicitly or implicitly condoning, authorizing, and/or acquiescing to racially discriminatory attitudes, statements, and actions by Madison County Sheriff's Department personnel.

In addition to the above, and in addition to the common questions of law and fact previously identified by Plaintiffs in response to this Interrogatory, the legal questions of whether each of the above-referenced policies of the Madison County Sheriff's Department (i) constitutes a policy, custom, and/or practice that is attributable to Defendants for purposes of liability under Section 1983; (ii) violates the Fourth Amendment to the United States Constitution; and/or (iii) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution constitute common questions that are appropriately resolved on a class-wide basis.

The common questions of fact and/or law described above have been identified through analysis of deposition testimony taken in this Action, documents produced by the parties, and documents received in response to requests made under the Mississippi Public Records Act. Plaintiff's investigation, discovery, and preparation of her case and her legal theories, through counsel, are ongoing, and Plaintiff reserves all rights to identify other common questions of law and/or fact, to clarify or refine Plaintiff's characterizations of the above-mentioned common questions of law and/or fact, and/or to rely on other or additional evidence concerning any such common questions of law and/or fact, including as a result of documentary or testimonial evidence that may be adduced in this Action after the date hereof.

Dated: January 16, 2018

By:  _/s/ *Joshua Tom*_____
       Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Jumin Lee (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
christopherjumin.lee@stblaw.com
bonnie.jarrett@stblaw.com

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice*)
Jeffery Robinson (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiff*

10

## Verification

I hereby declare under penalty of perjury that the responses contained in the foregoing Supplemental Responses and Objections to Interrogatories propounded by Defendants, which were prepared with the assistance of counsel, are true and correct to the best of my knowledge, information, and belief.

Betty John W. Tucker