**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**LATOYA BROWN; LAWRENCE BLACKMON
HERBERT ANTHONY GREEN; KHADAFY MANNING;
QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS
SINGLETON; STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER, individually and on
behalf of a class of all other similarly situated,**                  **PLAINTIFFS**

**VS.**                        **CIVIL ACTION NO. 3:17-cv-347 WHB LRA**

**MADISON COUNTY, MISSISSIPPI; SHERIFF
RANDALL C. TUCKER, in his official capacity; and
MADISON COUNTY SHERIFF'S DEPUTIES JOHN
DOES #1 through #6, in their individual capacities,**                  **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AS TO INDIVIDUAL AND CLASS BASED CLAIMS BY
<u>PLAINTIFF BETTY JEAN WILLIAMS TUCKER</u>**

COME NOW Defendants, Madison County, Mississippi, and Sheriff Randall C. Tucker, in his official capacity, by and through counsel, and respectfully submit the following Memorandum in Support of their Motion for Summary Judgment as to Individual and Class Based Claims by Plaintiff Betty Jean Williams Tucker.

**INTRODUCTION**

This class action lawsuit was filed on May 8, 2017, by ten plaintiffs. The Complaint is 86 pages long and contains 337 paragraphs. [Dkt. #1]. Plaintiff Betty Jean Williams Tucker ("Tucker") claims violations of her Fourth and Fourteenth Amendment rights by personnel of the Madison County Sheriff's Department ("MCSD") under 42 U.S.C. § 1983 and intentional racial discrimination under Title VI of the Civil Rights Act of 1964. She sues on behalf of herself and a purported class of individuals she defines as:

> People who (1) are, or who appear to be, Black and those in their company, and (2) were, are, or will be in Madison County, and (3) were, are, or will be, subject to the MCSD's policy, custom, and/or practice of systematically executing unreasonable searches and seizures of person, homes, cars, and property on the basis of race."

Tucker seeks only injunctive and declaratory relief from Defendants. [Dkt. #1], at pp. 82-85.

## STATEMENT OF FACTS

Plaintiff Betty Jean Williams Tucker ("Tucker") is married with four grown children and lives in Canton, Mississippi. *See* Tucker Deposition Transcript, Exhibit "A" to this Statement of Facts, at Pg. 8:13-24, Pg. 9:1-25, Pg. 10:1-11. For twenty-five years, Tucker lived at her address at 112 King Ranch Circle in Canton. *Id.*, at Pg. 10:18-23. Her claims against Defendants Madison County and Sheriff Randal C. Tucker ("Defendants") in this case relate to roadblocks set up by the Madison County Sheriff's Department ("MCSD") in Canton, Mississippi, and the "jump-out boys always jumping out unnecessarily." *Id.*, at Pg. 16:13-20. Tucker's claims are motivated by her desire to "slow down" the MCSD "jump-out boys" and roadblocks. Pg. 36:22-25, Pg. 41:24-25, Pg. 42:1-3.

**A. MCSD Roadblocks**

Tucker believes that "roadblocks are always in the black neighborhoods" and that she is "pretty sure" that the Madison County Sheriff's Department ("MCSD") does not set up roadblocks near white neighborhoods. *Id.*, at Pg. 16:21-25, Pg. 17:1-19. Her belief that roadblocks are set up near black neighborhoods and not near white neighborhoods is based on the fact that: (1) "most people put [roadblock locations] on Facebook or they're going to text you and let you know;" and

2

(2) she has not received a text message alerting her that there is a roadblock in a white neighborhood before.[1]  *Id*., at Pg. 17:20-25, 18:1-5.

Of the roadblocks Tucker remembers, they took place at three separate locations in Madison County all within the last year.  *Id*., at Pg. 20:19-22.  One particular roadblock she encountered was located at Martin Luther King Drive.  *Id*., at Pg. 20:10-13.  At that roadblock Tucker passed a MCSD officer her driver's license and the officer "walked to the back of [her] car and checked [her] tag back there."  *Id*., at Pg. 20:14-21.  They "took . . . a few minutes . . . to bring [her driver's license] back" and when they returned it to her "they . . . flashed the light in the car." *Id*., at Pg. 20:23-25.  Tucker has experienced the same process each and every time she has encountered an MCSD roadblock and she has observed the MCSD stop every car in front of her at each of these roadblocks.  *Id*., at Pg. 21:12-22.

   B.   **Unreasonable Seizures**

Tucker testified the "jump-out boys" are "plain-dressed" MCSD officers that drive a "plain car or truck" and when they "jump out, they say they are narcotics."  *Id*., at Pg. 21:23-25, Pg. 22:1-4.  Tucker subjectively believes the MCSD officers she described, who she refers to as the "jump-out boys," target black neighborhoods for their "jumping out," but she could not say that they did not similarly patrol white neighborhoods.  *Id*, at Pg. 16:15-24.  These officers have never arrested her or jumped out and approached her, but they approached the outside of her house "a few years back."  *Id*., at Pg. 22:5-7, 23:11-15.  Although she does not know which MCSD officers "jumped out," she testified the incident happened at her former residence at 112 King Ranch Circle, which

---

[1] Tucker no longer possesses any of the text messages she has received related to roadblock locations in Madison County even though she has received such texts after this litigation began. Ex. A, at Pg. 18:8-10. Tucker received such a text in September 2017 from friends, but she cannot remember: (1) the location of the subject roadblock (2) the names of those friends; or (3) the content of the text except that it alerted her that a roadblock was "set up over there."  *Id*., at Pg. 18:11-20.

lies outside the city limits of Canton, Mississippi, in unincorporated Madison County.  *Id*., at Pg. 23:16-20.  Tucker testified about an incident more than five years ago[2] on a summer holiday where she observed the "jump-out boys" park their truck[3] while Tucker's friends and family were barbecuing and "walk[] in [her yard]." Ex. A, at Pg. 23:21-25, Pg. 25:1-4, Pg. 30:21-23.  She observed the incident from her kitchen and she claims they "searched everybody that was sitting out there" and "searched the ground."[4]  *Id*., at Pg. 23:25, Pg. 24:1-2, Pg. 25:25, Pg. 28:6-11.  There were seven individuals in the yard and the officers asked anyone if they "had any illegal drugs out there and everybody said no." *Id*., at Pg. 24:3-6.  The two unnamed MCSD officers did not find anything and they "left" after approximately five minutes.  *Id*., at Pg. 24:2, Pg. 29:2-4.  The MCSD officers never entered her house and Tucker never talked to them.  *Id*., at Pg. 28:12-15.

Tucker described a second incident more than five years ago where MCSD officers came into her yard, grabbed her grandson by the hand, and "searched him" as he crossed the street in front of her house.[5]  *Id*., at Pg. 29:9:15, Pg. 30:14-20.  Tucker testified the MCSD officers asked her grandson what he was doing and Tucker responded for him, saying "That's my grandson.  He was just coming over here to fix his brother's bike." *Id*., at Pg. 29:17-18.  Tucker testified the officers let him go, stated "Next time tell him to put a shirt on[,]" and "got in their truck and left." *Id*., at Pg. 29:18-20.

---

[2] Tucker was asked whether the barbecue incident was more than five years ago to which she responded "Probably so."  *Id.*, at Pg. 30:21-23.

[3] Tucker later testified she did not actually observe "them pull up," but she knows they "pulled up" around a corner near the road upon which her house sat.  *Id*., at Pg. 27:2-9.

[4] Tucker's complaint alleges the MCSD officers "got down on their hands and knees to search [her] patio." [Doc. #1], at p. 72, ¶ 293.

[5] Tucker's complaint tells a different account of this incident.  Rather than simply grabbing his hand, the complaint states the MCSD officers "tackled her grandson to the ground."  *Id*., at pp. 72-73, ¶ 294.

4

**SUMMARY JUDGMENT STANDARD**

On summary judgment, the moving party bears the responsibility of providing the court with the basis of its motion and identifying the portions of the record in the case that establish the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must respond by setting forth "specific facts showing that there is a genuine issue for trial." *Id.* at 324. "The moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by pointing out the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted) (internal quotations omitted). If the moving party meets its burden, "the nonmoving party who has the burden of proof at trial must come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant." *Id.*

**I.   TUCKER ASSERTS TWO SETS OF FACTS FOR WHICH SHE SEEKS RELIEF IN THREE CAUSES OF ACTION.**

The first paragraph of Tucker's complaint alleges that the MCSD "implements a **coordinated top-down program** of methodically targeting Black individuals for suspicionless searches and seizures while they are driving their cars, walking in their neighborhoods, or even just spending time in their own homes (the "Policing Program")." [Dkt. #1, ¶ 1 (emphasis in original)]. This claim of intentional racial discrimination is the only basis in her complaint for her request to represent a class, describing the common issue as "whether the MCSD has a policy, practice, and/or custom of targeting members of the Class for unreasonable searches and seizures on the basis of race in violation of the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment." [Dkt. #1, ¶ 304]. To obtain the only relief she seeks, which is on behalf

5

of the class, Tucker must prove, not merely a violation of her rights, but the existence of the "Policing Program" that racially discriminates as she alleges.

Tucker's first cause of action alleges Defendants, through the Policing Program, have subjected her to a policy of unreasonable searches and seizures in violation of the Fourth Amendment. The second cause of action seeks relief under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment's Equal Protection Clause, which, of course, requires proof of intentional racial discrimination. *Vera v. Tue,* 73 F.3d 604, 609 (5th Cir. 1996) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). Likewise, Tucker's third cause of action, under Title VI (42 U.S.C. § 2000d *et seq*.), requires Tucker, as a private party, to prove intentional race discrimination by an entity that receives federal funds.[6] *Alexander v. Sandoval,* 532 U.S. 276, 281 (2001) ("What we said in *Alexander v. Choate*, 469 U.S. 287, 293 (1985), is true today, 'Title VI itself directly reaches only instances of intentional discrimination.'"). Tucker cannot succeed with any of her claims in her three causes of action simply by proving disparate impact. *Id.*

Those three causes of action seek relief with regard to two separate sets of alleged facts, which are roadblocks and the MCSD plain clothes narcotics officers, whom she calls the "jump-out boys." First, Tucker alleges that roadblocks are set up and operated by the MCSD in a racially discriminatory manner, thereby violating the Fourteenth Amendment to the United States Constitution and Title VI, as well as the Fourth Amendment prohibition of unreasonable searches and seizures. Second, Tucker alleges that the "jump-out boys" have subjected her friends and

---

[6] Title VI provides that: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

family to unreasonable searches and seizures based on those individuals' race on two different occasions.

Certain legal principles apply to both sets of facts. To hold Madison County liable under § 1983 for the operation of the MCSD roadblocks and the alleged acts of the "jump-out boys" in her first and second causes of action, Tucker must establish two threshold elements: (1) that *she* was deprived of a right or interest secured by the Constitution and laws of the United States, and (2) that the deprivation occurred under color of state law.[7] *See West v. Atkins,* 487 U.S. 42, 48 (1988) (citation omitted) (emphasis added). The same analysis that applies to Tucker's Fourteenth Amendment claim in her second cause of action applies with equal force to her Title VI claim in her third cause of action. *United States v. Fordice*, 505 U.S. 717, 732 n. 7 (1992) ("Our cases make clear . . . that the reach of Title VI's protection extends no further than the Fourteenth Amendment.").

Tucker cannot establish that she suffered a violation of her constitutional rights in connection with the MCSD's operation of roadblocks. Thus, Tucker's claims regarding the MCSD's roadblocks must be dismissed because she has no evidence to establish that the MCSD roadblocks violated the Fourth Amendment or that the MCSD operated the roadblocks in a manner that intentionally discriminates against Blacks sufficient to support her Fourteenth Amendment and Title VI claims.

Finally, Tucker's § 1983 and Title VI claims regarding the "jump-out boys" must be dismissed for separate reasons. First, Tucker does not having standing to assert claims regarding alleged constitutional violations by MCSD officers when she was not the subject of the alleged

---

[7] In addition, to secure relief against the County and Sheriff Tucker in his official capacity, Tucker "must demonstrate a policy or custom which caused the alleged violation." *Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996). No evidence of any such policy exists, but the Court need not reach that issue, because no evidence of any violation of constitutional rights exists.

violations. Second, assuming arguendo Tucker was the subject of the alleged constitutional violations, those claims are nevertheless time barred by the applicable three year statute of limitations.

II. **TUCKER CANNOT CREATE A DISPUTE OF MATERIAL FACT REGARDING HER § 1983 AND TITLE VI CLAIMS RELATED TO MCSD ROADBLOCKS AND, THUS, THEY FAIL AS A MATTER OF LAW.**

   A. **Tucker's Claim That MCSD Roadblocks Have Violated Her Fourth Amendment Rights Fails as a Matter of Law**

On their face, there are no facts that establish the roadblocks Tucker encountered were operated in a manner that violated the Fourth Amendment to the United States Constitution. Each encounter lasted a few minutes, Ex. A, at Pg. 20:21-23, MCSD officers checked Tucker's identification and walked to the back of her car to observe her license plate. None of the details of which she complains violated the Fourth Amendment.

Although MCSD officers' act of shining a light in her car may have scared her grandchildren who were passengers on one occasion, *id*., at Pg. 20:23-24, Pg. 21:1-4, such act did not make an otherwise valid roadblock stop unconstitutional. *See United States v. Lara*, 517 F.2d 209, 211 (5th Cir. 1975) (holding that "[t]he fact that contents of the vehicle may not have been visible without the use of a searchlight does not preclude such observation from application of the plain-view doctrine").

Tucker's claim that MCSD officers handled her identification did not violate the Fourth Amendment. *See United States v. Green*, 293 F.3d 855, 858 (5th Cir. 2002) ("[D]iscretionless stops designed to check a driver's license and registration are permissible."); *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993) (holding that during an otherwise valid stop officers "can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation" as long as the detention does not exceed its original scope). Likewise,

8

Tucker's testimony regarding MCSD officers checking her license plate/car tag does not constitute a violation of the Fourth Amendment. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 529 (5th Cir. 1999) ("A motorist has no privacy interest in her license plate number" since "a car's license plate number is constantly open to the plain view of [passersby].") (citations omitted).

The length of the stops were constitutionally permissible under the Fourth Amendment. Tucker testified that during each of these stops MCSD officers took her license and checked her tag and that it "took them a few minutes for them to bring [her license] back." Ex. A, at Pg. 20:20-25. This testimony, without more, cannot possibly establish that the length of her detention exceeded the scope of the stop and was, thus, constitutionally impermissible. *See Green*, 293 F.3d at 860 (acknowledging that the United States Supreme Court has found three to five minute stops at roadblocks to be "minimal") (citation omitted); *United States v. Machucha-Barrera*, 261 F.3d 425, 435 (5th Cir. 2001) (fact officer took a "couple of minutes" to ask questions regarding citizenship at immigration checkpoint did not the scope of the stop outside of its constitutionally permissible purpose).

Furthermore, the mere fact that MCSD officers temporarily stopped her vehicle at the roadblock "without reasonable suspicion" does not establish that Tucker's roadblock encounters violated the Fourth Amendment as Tucker's Complaint claims. [Dkt. #1, ¶ 298]. Law enforcement may temporarily detain motor vehicles without reasonable suspicion as long as the stop is made in the context of a roadblock/checkpoint set up for a constitutionally permissible purpose. *See Michigan Dep't of State Police v. Sitz*, 496 U.S. 444 (1990) (condoning use of roadblocks to check drivers for impairment); *Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (condoning use of roadblocks to ensure driver safety and compliance with motor vehicle laws).

In sum, Tucker has no evidence that any of the three roadblocks she testified she has encountered violated the Fourth Amendment. Thus, her individual Fourth Amendment claim regarding MCSD roadblocks set forth as part of her first cause of action should be dismissed with prejudice, and she should be disqualified from representing the class of individuals she seeks to represent in this matter.

### B.  Tucker's Claims That MCSD Roadblocks Have Violated the Fourteenth Amendment and Title VI By Intentionally Discriminating Against Her Fail as a Matter of Law.

Tucker claims in conclusory fashion that MCSD roadblocks are set up only in predominantly Black neighborhoods and that this fact establishes that the roadblocks are placed and operated in a manner that intentionally discriminates against Blacks. As a preliminary matter, Tucker has abandoned this claim.[8] To the extent she has not abandoned this claim, her claim nevertheless cannot survive summary judgment. This evidence supporting her roadblock claim is based solely on: (1) her not being aware of roadblocks being conducted in white neighborhoods; and (2) the fact the roadblocks she *has* encountered have been in Black neighborhoods. Ex. A, at Pg. 16:21-25, Pg. 17:1-25, Pg. 18:1-5. Of the three roadblocks she is able to recall, all three have been located near predominantly Black neighborhoods. *Id*, at Pg. 19:19-22.

Tucker's Fourteenth Amendment equal protection claim and her Title VI claims relating to the MCSD roadblocks are actually nothing more than an assertion that the roadblocks were racially motivated because they were placed in predominantly Black areas. She has no evidence that the particular roadblocks she encountered were part of a policy to intentionally discriminate

---

[8] Tucker has abandoned this claim, first stated in ¶ 4 of her complaint, because she did not include this policy in her list of MCSD policies she claims sanction or encourage" unreasonable searches and seizures or racial discrimination" when supplementing her responses to an interrogatory inquiring about these policies. *See* Plaintiff Betty Jean Williams Tucker's Second Supplemental Responses and Objections to Defendants' First Set of Interrogatories, Exhibit "B" to Defendants' Motion for Summary Judgment on Individual and Class Claims of Plaintiff Betty Jean Williams Tucker, at Pgs. 3-6.

against Blacks. Instead, Tucker claims, in conclusory fashion, that the MCSD roadblocks occur only in Black neighborhoods because she is not aware of instances where roadblocks are set up in White communities. This unsupported assertion is patently insufficient to establish that the MCSD roadblocks are part of a "Policing Program" of intentional racial discrimination throughout all of Madison County. The Fifth Circuit has held over and over again that "[a] plaintiff's subjective belief of race discrimination cannot alone establish that he has been a victim of intentional discrimination." *Laborde v. City of Houston*, 31 F. App'x 151 (5th Cir. 2001) (citation omitted). *See Nichols v. Grocer,* 138 F.3d 563, 570 (5th Cir. 1998) ("[A] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief."). What Tucker offers is her subjective belief that MCSD roadblocks are set up with the aim of intentionally discriminating against Blacks. Without more, Tucker cannot establish that MCSD roadblocks are placed or operate in such a manner as to intentionally discriminate against Blacks. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.") (en banc). This same logic applies to Tucker's claim brought under Title VI, which prohibits only intentional discrimination.

Accordingly, Tucker's § 1983 and Title VI claims that MCSD roadblocks intentionally discriminate against Blacks, found in the second and third causes of action in her Complaint, should be dismissed with prejudice, and she should be disqualified from representing the class of individuals she seeks to represent in this matter.

**III.    BECAUSE TUCKER CANNOT CREATE A DISPUTE OF MATERIAL FACT REGARDING HER § 1983 AND TITLE VI CLAIMS RELATED TO THE MCSD "JUMP-OUT BOYS," THEY FAIL AS A MATTER OF LAW.**

Tucker claims that plain-clothes MCSD narcotics officers, who she refers to as the "jump-out boys," routinely target black neighborhoods and "jump out" of unmarked vehicles to subject Blacks to unlawful seizures in Madison County. Ex. A, at Pg. 21:23-25, Pg. 22:1-4, 32:15-21. Tucker admits that these officers have never arrested her or jumped out and approached her, but she has observed them do so to other people on two occasions.[9] *Id.*, at Pg. 22:5-9, Pg. 23:8-15. The first incident involved a barbecue in her yard where MCSD officers purportedly approached her friends and family in the yard and searched everyone out in the yard and searched the ground around them. *Id.*, at Pg. 23:16-25, Pg. 24-29. The second incident occurred when a MCSD officer purportedly grabbed her grandson by his hand and searched him before releasing him and telling her he should be wearing a t-shirt. *Id.*, at Pg. 29:8-22. Importantly, Tucker has no information relating to the circumstances leading up to either of these two encounters.

### A. Tucker Lacks Standing Under Article III to Bring Her Own Claims and Those of Potential Class Members for Injunctive and Declaratory Relief Relating to the "Jump-Out Boys."

As a threshold matter,[10] this Court should determine whether Tucker has Article III standing in order to bring a claim under § 1983 and Title VI (*i.e.*, whether a justiciable case or controversy exists relating to her claims concerning the "jump-out boys.").[11] *Williams v. Berry*, 977 F. Supp.

---

[9] Defendants have no records of these incidents ever having taken place.

[10] The Fifth Circuit has held that "before considering any other matters raised by the parties, we are obliged to resolve the standing question as a threshold matter of jurisdiction." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008) (internal quotation marks and citation omitted). This is consistent with the Supreme Court's proscription of courts exercising "hypothetical jurisdiction" over a party's claim when the party lacks Article III standing to bring that claim. *Steel Co. v. Citizens for a Better Envr.*, 523 U.S. 83, 101 (1998).

[11] The United States Supreme Court explained that the personal nature of Fourth Amendment rights already answers "many of [the] traditional standing inquiries" and that the "definition of [Fourth Amendment rights] is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Rakas v. Illinois*, 439 U.S. 128, 140 (1978). Nevertheless, courts in the Fifth Circuit continue to apply a traditional Article III standing analysis to Fourth Amendment claims. *See United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010) ("Because Fourth Amendment rights are personal, the

2d 621, 628-29 (S.D. Miss. 2013). The United States Supreme Court has recognized three requirements for Article III standing:

> [First], the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*United States v. Hays,* 515 U.S. 737, 742-43 (1995) (internal quotation marks and citation omitted). Applicable here, if a plaintiff cannot show personal injury, then a federal court is without power to hear the grievance, which includes claims that a government act violated the Equal Protection Clause to the Fourteenth Amendment and Title VI.[12] *Data Processing Servs. v. Camp*, 397 U.S. 150 (1970) (holding that a Title VI plaintiff must establish that "the challenged action has caused him injury in fact, economic or otherwise"); *Pederson v. La. State Univ.*, 213 F.3d 858 (5th Cir. 2000) (noting that a plaintiff must show a personal injury to establish standing for an equal protection violation). Similarly, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas*, 439 U.S. at 133-34 (internal quotation marks and citations omitted).

Here, Tucker cannot meet the first element required to establish standing because she has suffered no "injury in fact." Tucker was not the subject of the two allegedly unlawful searches and seizures allegedly executed by MCSD officers upon which she has based her claims. *See Enclave*

---

Supreme Court has stated that there is no useful analytical purpose to be served by considering a matter of standing distinct from the merits of a defendant's Fourth Amendment claim ... Despite this admonishment, for brevity's sake, courts often refer to the question of whether or not a defendant is asserting a violation of his own Fourth Amendment rights as one of 'standing.'). This distinction has no effect on the ultimate outcome: Tucker may not bring Fourth Amendment claims related to unlawful searches and seizures unless she was actually subject to those alleged unlawful searches and seizures.

[12] The individual injury requirement is not met simply because the person alleges an injury "has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which she purports to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

13

*Arlington Associates Ltd. Partnership v. City of Arlington, Tex.*, 401 Fed. App'x 936, 939 (5th Cir. 2010) (holding that apartment complex could not bring action to enforce the Fourth Amendment rights of its residents because it "may not assert a Fourth Amendment claim based on the rights of third parties"); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 704 (5th Cir. 1991) (dismissing plaintiff's fourth amendment claims relating to unlawful searches and seizures of store's patron on his property for lack of standing because the "right to be free from unreasonable searches and seizures is a personal right which cannot be asserted vicariously" and the record was "devoid of any evidence that [the plaintiff] was personally subjected to an illegal search or seizure").

Even if Tucker had suffered an injury-in-fact, she would lack standing because her seeking injunctive and declaratory relief requires her to establish that she is "likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury." *James v. City of Dallas,* 254 F.3d 551, 563 (5th Cir. 2001). Tucker cannot do so. In order to confer standing, an injury must be, *inter alia,* "actual or imminent." *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009). Tucker cannot show any likelihood that she will be subject to any future unlawful search and seizure by the "jump-out boys." Tucker has lived in Madison County for more than twenty-five (25) years. Ex. A, at Pg. 10:18-23. She has never been approached by them in the past, so it is highly unlikely she will ever be approached by them in the future.

Accordingly, Tucker has no individual standing to bring any claims related to the "jump-out boys" because she has not personally suffered a violation of her Fourth or Fourteenth Amendment rights and she has not personally suffered an injury necessary to establish her Title VI claim. Simply put, Tucker cannot assert the third party rights of others. Without standing under Article III, Tucker cannot "seek [injunctive] relief on behalf of . . . herself or any other member of the [purported] class." *Id*. at 563 (citation omitted). For these reasons, Tucker lacks standing to

pursue her Fourth and Fourteenth Amendment claims and Title VI claim or those of her purported class relating to the MCSD "jump-out boys" and she should be disqualified from representing the class of individuals she seeks to represent in this matter.

  **B.  Tucker Has No Evidence to Establish That the Alleged Stops Violated the Fourth Amendment, Fourteenth Amendment, or Title VI.**

  Tucker's descriptions of the two "jump-out boys" incidents she observed do not, on their face, indicate that they were violative of the Fourth Amendment, Fourteenth Amendment, or Title VI. Tucker's deposition testimony exhibits no knowledge of what circumstances led up to the barbecue incident she described or the stopping of her grandson. Tucker has the burden of setting forth sufficient proof of an essential element of her claims under § 1983 and Title VI. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (once party moving for summary judgment points out evidence in record contains insufficient proof concerning an element of nonmoving party's claim, nonmoving party must produce significant probative evidence showing a genuine issue for trial). That essential element is that a constitutional violation actually took place. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (municipal liability under § 1983 requires "a violation of constitutional rights . . . ").

  Here, Tucker cannot prove that either of the two incidents constituted an unreasonable search or seizure under the Fourth Amendment. The MCSD officers who allegedly seized and searched the individuals at the barbecue just as well could have had reasonable suspicion to effectuate a stop and frisk of the individuals nearby if they had reasonable, articulable suspicion of criminal activity. *United States v. Scroggins*, 599 F.3d 433, 441 (5th Cir. 2010) (holding that "[u]nder *Terry*, officers may briefly detain an individual on the street for questioning without probable cause, when they possess, reasonable articulable suspicion of criminal activity" and officers) (citation omitted). In fact, with reasonable suspicion, officers may frisk subjects for

weapons if they reasonably suspect someone may carry. *Id*. *Terry* authorizes further steps including, *inter alia*, handcuffing if the circumstances warrant it. *Id*. Likewise, Tucker cannot establish that the stop of her grandson violated the constitutional rights of anyone because, again, circumstances may have warranted the alleged activities of the MCSD officers.

The same logic applies to Tucker's claims that the "jump-out boys'" activities violated the Fourteenth Amendment or Title VI.[13] She has no evidence to establish that the alleged seizures and searches by the "jump-out boys'" were acts of intentional discrimination against the individuals at the barbecue or her grandson and, thus, those claims based upon the "jump-out boys'" activities cannot survive summary judgment.

### C. Alternatively, Even If Tucker Did Have Standing to Assert § 1983 and Title VI Claims Relating to the MCSD "Jump-Out Boys," Such Claims Are Barred by the Applicable Statute of Limitations.

Assuming arguendo Tucker's Fourth Amendment § 1983 and Title VI claims relating to the alleged acts of the MCSD "jump-out boys" were personal to her and, thus, she had standing to bring such claims, those claims would nevertheless be barred by the applicable statute of limitations. In cases where there is no federal statute of limitations for a cause of action arising under a federal civil rights statute, federal courts apply the most appropriate statute of limitations period provided by state law. *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1521 (5th Cir. 1993). In Mississippi, the general three year statute of limitations of § 15–1–49 of the Mississippi Code applies to § 1983 claims. *Thomas v. City of Albany*, 901 F.2d 476, 476 (5th Cir. 1990). A claim accrues under § 1983 when a plaintiff has a complete and present cause of action, *i.e.*, when the plaintiff can file suit and obtain relief. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citations

---

[13] To establish a violation of Title VI, Tucker has to prove that the MCSD officers practiced intentional discrimination in the "jump-out boys" incidents. *Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001) (reaffirming requirement that plaintiff must prove intentional discrimination to establish claim under Title VI).

omitted). "Under federal law, the [limitations] period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal quotation marks and citations omitted).

Here, assuming Tucker's Fourth Amendment claims related to the MCSD "jump-out boys" were personal to her and she had standing, they nevertheless accrued more than three (3) years prior to the date she filed her lawsuit (May 8, 2017) and, thus, they are barred by the statute of limitations. The first incident on which Tucker bases her "jump-out boys" claim involved her grandson allegedly being accosted and searched in her front yard as he finished crossing the street in front of her house. In her deposition, Tucker confirmed this incident occurred more than five years ago. Ex. A, at Pg. 30:18-20 ("Q. Was it more than five years ago? A. It could have been. Yes, it was, because—Yes, it was."). The second incident on which she bases her "jump-out boys claim" involved a barbecue where the "jump-out boys" allegedly seized and searched individuals in her yard. Tucker's testimony establishes that more likely than not this incident occurred more than five years ago. *Id.*, at Pg. 30:21-23 ("Q. What about the barbecue thing, was that more than five years ago? A. Probably so.").[14] The same logic applies to Tucker's Title VI claim regarding the "jump-out boys," and it is likewise time-barred even if she had standing to bring that claim. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015) ("The Supreme Court's reasoning in applying state personal injury limitations periods to § 1983 claims thus applies with equal force to Title IX claims . . . .").

---

[14] Following her deposition in this matter Tucker attempted to change the substance of this testimony. She attempted to change her response from "Probably so" to "I don't know." Tucker gave no explanation for this change in the substance of her deposition testimony as required by Fed. R. Civ. P. 30(e), so Defendants have filed a motion to strike her errata sheet consistent with law from this Court and the Fifth Circuit requiring that a party's errata sheet be struck for failure to comply with the mandates of Rule 30(e). *See* [Dkt. #198].

Assuming her claims regarding the "jump-out boys" were personal to her (and, thus, she had standing to bring such claims), Tucker's testimony establishes that these incidents took place more than five years ago. Accordingly, Tucker's Fourth and Fourteenth Amendment claims and Title VI claim relating to the "jump-out boys" should be dismissed with prejudice and she should be disqualified from representing the class of individuals she seeks to represent in this matter.

## CONCLUSION

For the reasons set forth above, all of Tucker's claims against Defendants should be dismissed with prejudice.

This the 12th day of March, 2018.

        Respectfully submitted:

        **MADISON COUNTY, MISSISSIPPI and SHERIFF RANDALL C. TUCKER, IN HIS OFFICIAL CAPACITY**

BY:    *s/Michael B. Wallace*
        Michael B. Wallace (MSB #6904)
        Charles E. Ross (MSB #5683)
        James E. Graves (MSB #102252)
        Charles E. Cowan (MSB #104478)
        WISE CARTER CHILD & CARAWAY, P.A.
        Post Office Box 651
        Jackson, Mississippi  39205-0651
        Telephone: 601-968-5534
        Facsimile: 601- 944-7738
        mbw@wisecarter.com
        cer@wisecarter.com
        jeg@wisecarter.com
        cec@wisecarter.com

        and

        T. Russell Nobile (MSB #100682)
        WISE CARTER CHILD & CARAWAY, P.A.
        2510 14th Street, Suite 1125
        Gulfport, Mississippi  39501
        Telephone: 228-867-7141

                Facsimile: 228-867-7142
                trn@wisecarter.com

                OF COUNSEL:

                Rebecca B. Cowan (MSB #7735)
                CURRIE JOHNSON & MYERS, P.A.
                1044 River Oaks Dr.
                Jackson, Mississippi  39232
                P.O. Box 750
                Jackson, Mississippi  39205-0750
                Telephone: 601-969-1010
                Facsimile:  601-969-5120
                bcowan@curriejohnson.com

                Katie Bryant Snell (MSB# 103607)
                KATIE BRYANT SNELL, PLLC
                P.O. Box 3007
                Madison, Mississippi  39130-3007
                Telephone: 601-460-9800
                katie@katiebryantsnell.com

                J. Lawson Hester
                PETTIS, BARFIELD & HESTER, P.A.
                4450 Old Canton Road, Suite 210
                Jackson, Mississippi  39211
                Telephone: 601-987-5300
                lhester@pbhfirm.com

## **CERTIFICATE OF SERVICE**

      I, Michael B. Wallace, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

Joshua Tom, Esq.
American Civil Liberties Union of Mississippi Foundation
233 E. Capitol Street
Jackson, MS 39201
PWu@aclu-ms.org
JTom@aclu-ms.org

Jonathan K. Youngwood, Esq. (*pro hac vice*)
Janet A. Gochman, Esq. (*pro hac vice*)
Isaac Rethy, Esq. (*pro hac vice*)

Nihara K. Choudhri, Esq. (*pro hac vice*)
Kavitha Satya Sivashanker, Esq. (*pro hac vice*)
Brooke Jarrett, Esq. (*pro hac vice*)
Jumin Lee, Esq. (*pro hac vice*)
Christopher K. Shields, Esq. (*pro hac vice*)
Simpson Thatcher & Bartlett, LLP
425 Lexington Avenue
New York, NY  10017
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
kavitha.sivashanker@stblaw.com
bonnie.jarrett@stblaw.com
christopherjumin.lee@stblaw.com
christopher.shields@stblaw.com

Ezekiel Edwards, Esq. (*pro hac vice*)
Jeffery Robinson, Esq. (*pro hac vice)*
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
eedwards@aclu.org
jrobinson@aclu.org

So, certified this the 12th day of March, 2018.

*s/ Michael B. Wallace*
MICHAEL B. WALLACE