**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**LATOYA BROWN; LAWRENCE BLACKMON
HERBERT ANTHONY GREEN; KHADAFY MANNING;
QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS
SINGLETON; STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER, individually and on
behalf of a class of all other similarly situated**                    **PLAINTIFFS**

**v.**                                        **CIVIL ACTION NO. 3:17-cv-347-WHB-LRA**

**MADISON COUNTY, MISSISSIPPI; SHERIFF
RANDALL S. TUCKER, in his official capacity; and
MADISON COUNTY SHERIFF'S DEPUTIES JOHN
DOES #1 through #6, in their individual capacities**            **DEFENDANTS**

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON THE CLAIMS OF PLAINTIFF BESSIE THOMAS**

---

Defendants Madison County, Mississippi, and Sheriff Randall S. Tucker, by and through

counsel, file the following Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 on the

individual and class-based claims of Plaintiff Bessie Thomas:

1.       Bessie Thomas filed this action along with nine other plaintiffs alleging that the

Madison County Sheriff's Department ("MCSD") has "a **coordinated top-down program** of

methodically targeting Black individuals for suspicionless searches and seizures."  Complaint

[Docket # 1], at pg. 1 (emphasis in original).  Thomas' claims are based on two primary

allegations: (1) that the MCSD unlawfully entered her home to arrest her son; and (2) that she

been forced to stop at safety checkpoints (or roadblocks).  *Id.* at ¶¶ 285, 289.  Thomas alleges

that these alleged acts constitute Fourth Amendment violations intentionally committed against

her because she is Black, and she further alleges the MCSD's policy of intentional race

discrimination violates 42 U.S.C. § 1983 and 42 U.S.C.A. § 2000d of Title VI of the Civil Rights

Act of 1964.  She seeks injunctive and declaratory relief on behalf of herself and a purported

class of individuals she defines as:

> People who (1) are, or who appear to be, Black and those in their company, and
> (2) were, are, or will be in Madison County, and (3) were, are, or will be, subject
> to the MCSD's policy, custom, and/or practice of systematically executing
> unreasonable searches and seizures of person, homes, cars, and property on the
> basis of race."

Complaint [Docket # 1], at ¶ 300.

2.      Summary judgment should be granted on both Thomas' § 1983 and Title VI

claims.  Thomas' claims arising from the alleged unlawful entry into her home are time-barred

by the three-year statute of limitations prescribed by Miss. Code § 15-1-49.  Thomas admits that

the alleged unlawful entry occurred in or before 2008, but she did not file her claims until May 8,

2017.  Further, Thomas offers no evidence whatsoever to support her claim that the alleged entry

into her home was the result of a top-down policy of intentional race discrimination.  She

likewise offers no evidence to support her allegation that the checkpoints where she was stopped

constituted a Fourth Amendment violation, much less that they were established as part of a top-

down policy of intentional race discrimination.[1]

## **EXHIBITS**

3.      In support of this Motion, Defendants rely in part on the following exhibits:

Exhibit A        Thomas' Responses to Defendants' First Set of Interrogatories;

Exhibit B        Excerpts from Thomas' deposition; and

Exhibit C        Thomas' Second Supplemental Responses to Defendants' First Set
                 of Interrogatories.

---

[1] Thomas has abandoned her claim that the MCSD only sets up checkpoints in predominantly Black
neighborhoods, which she first asserted in ¶ 288 of her Complaint but did not include in the list of MCSD
policies she claims sanction or encourage" unreasonable searches and seizures or racial discrimination"
when supplementing her responses to an interrogatory inquiring about these policies.  *See* Thomas'
Second Supplemental Response to Interrogatory No. 8 of Defendants' First Set of Interrogatories,
(Exhibit C).

Defendants also on the Memorandum of Authorities submitted herewith.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully requests that this Court dismiss all of Plaintiff Bessie Thomas' claims against them with prejudice pursuant to Fed. R. Civ. P. 56(a).

Respectfully submitted this 12th day of March, 2018.

**MADISON COUNTY, MISSISSIPPI and SHERIFF RANDALL C. TUCKER, IN HIS OFFICIAL CAPACITY**

BY:     *s/ James E. Graves, III*
        Michael B. Wallace (MSB #6904)
        Charles E. Ross (MSB #5683)
        James E. Graves, III (MSB #102252)
        Charles E. Cowan (MSB #104478)
        WISE CARTER CHILD & CARAWAY, P.A.
        Post Office Box 651
        Jackson, Mississippi  39205-0651
        Telephone: 601-968-5534
        Facsimile: 601- 944-7738
        mbw@wisecarter.com
        cer@wisecarter.com
        jeg@wisecarter.com
        cec@wisecarter.com

        and

        T. Russell Nobile (MSB #100682)
        WISE CARTER CHILD & CARAWAY, P.A.
        2510 14th Street, Suite 1125
        Gulfport, Mississippi  39501
        Telephone: 228-867-7141
        Facsimile: 228-867-7142
        trn@wisecarter.com

OF COUNSEL:

Rebecca B. Cowan (MSB #7735)
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Dr.
Jackson, Mississippi  39232
P.O. Box 750
Jackson, Mississippi  39205-0750
Telephone: 601-969-1010
Facsimile:  601-969-5120
bcowan@curriejohnson.com

Katie Bryant Snell (MSB# 103607)
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi  39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

J. Lawson Hester
PETTIS, BARFIELD & HESTER, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi  39211
Telephone: 601-987-5300
lhester@pbhfirm.com

4

**CERTIFICATE OF SERVICE**

I, James E. Graves, III, hereby certify that I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which will automatically send email notification to all counsel

of record.

This the 12th day of March, 2018.

_s/ James E. Graves, III_____
JAMES E. GRAVES, III

CONFIDENTIAL

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

LATOYA BROWN; LAWRENCE
BLACKMON; HERBERT ANTHONY
GREEN; KHADAFY MANNING;
QUINNETTA MANNING; MARVIN
MCFIELD; NICHOLAS SINGLETON;
STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER,
individually and on behalf of a class of all
others similarly situated,

      Plaintiffs,

        v.

MADISON COUNTY, MISSISSIPPI;
SHERIFF RANDALL S. TUCKER, in his
official capacity; and MADISON COUNTY
SHERIFF'S DEPUTIES JOHN DOES #1
through #6, in their individual capacities,

      Defendants.

Civil Action No.
3:17-cv-00347-WHB-LRA

**PLAINTIFF BESSIE THOMAS'S
RESPONSES AND OBJECTIONS
TO DEFENDANTS' FIRST SET
OF INTERROGATORIES**

        Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Bessie

Thomas ("Plaintiff" or "Ms. Thomas"), by and through her attorneys, hereby submits the

following responses and objections to Defendants' First Set of Interrogatories served by

Defendants on Plaintiffs on September 22, 2017 (collectively, the "Interrogatories," and each an

"Interrogatory").  These responses and objections are hereby designated as Confidential pursuant

to the Stipulated Protective Order (Dkt. No. 32), so-ordered by the Court on September 6, 2017

in the above-captioned action.  Plaintiff hereby objects and responds to the Interrogatories as set

forth below:



EXHIBIT

A

CONFIDENTIAL

neither relevant to the claims or defenses of any party to the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

*Interrogatory No. 1(d)*.  Plaintiff objects to Interrogatory No. 1(d) in its entirety and incorporates herein each of the General Objections and the specific objections set forth above. Plaintiff further objects to this Interrogatory on the grounds that it seeks information already in the possession, custody, or control of or that is known to or otherwise equally available to Defendants, and/or in the possession, custody, or control of third-party entities.  Plaintiff further objects to this Interrogatory on the grounds that it is abusive and designed solely to harass Plaintiff.

**Interrogatory No. 2:**

Please state if you have ever been present when the Madison County Sheriff's Department conducted a search of a home, and for each, state:

(a)     The date;

(b)     The address;

(c)     Whether a warrant was involved;

(d)     The name of all officers involved; and

(e)     The name, address and telephone number of any witnesses.

**Response to Interrogatory No. 2:**

In addition to the General Objections set forth above, Plaintiff objects to Interrogatory No. 2 on the grounds that this Interrogatory seeks information already in the possession, custody, or control of or that is known to or otherwise equally available to Defendants.  Plaintiff further objects to this Interrogatory as premature, given, *inter alia*, that class-certification related discovery is ongoing and the CMO provides that it will not be concluded until January 16, 2018. Plaintiff further objects to this Interrogatory as vague and unduly burdensome.  Plaintiff further

CONFIDENTIAL

objects to Interrogatory No. 2(e) to the extent it seeks information that is protected from

disclosure by, or disclosure of which is prohibited or restricted under, any privilege or immunity,

and/or any constitutional, statutory, and/or common law rights of privacy.

In response to Interrogatory No. 2, subject to, and without waiving, the General

Objections and the specific objections set forth above, Plaintiff has been present when the

Madison County Sheriff's Department conducted a search of a home[1] including, but not limited

to, the following:

- Plaintiff states that, sometime prior to 2008, police officers came into Ms. Thomas's
  home located at 712 Kings Ranch Road, Canton, MS 39046, while Ms. Thomas was
  sitting with her family on the porch of her home.  Ms. Thomas's son, Dekara Clanton,
  who resides in Texas, her deceased sister, and her mother, Emma Williams, who resides
  at 343 N. West Street, Canton, MS 39046, were witnesses to this incident.  Ms. Thomas
  further refers Defendants to: (i) the allegations set forth at paragraphs 283 and 285-286 of
  the Complaint; and (ii) any relevant incident reports and/or other documents that have
  been or will be produced by Defendants in this action.

**Interrogatory No. 3:**

Please state whether you have been involved in or witnessed a search, seizure or arrest at a
'vehicular roadblock' or 'vehicular checkpoint' conducted by the Madison County Sheriff's
Department.  If so, please state:

(a)     The date it occurred;

(b)     The address or approximate location where it occurred;

(c)     The name, address, and telephone number of any person arrested or searched;

---

[1] To the extent Plaintiff's response sets forth any incident(s) in response to this Interrogatory or
any other Interrogatory, such incident(s) are not necessarily confined solely to the category of
conduct requested in the Interrogatory, but may be applicable to any relevant categories of
conduct described in any of the Interrogatories or otherwise.

CONFIDENTIAL

Dated: October 20, 2017

By:  /s/ Joshua Tom
     Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Yukiu Chan (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
monica.chan@stblaw.com

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice*)
Jeffery Robinson (*pro hac vice*)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiff*

## Verification

I hereby declare under penalty of perjury that the responses contained in the foregoing Responses and Objections to Defendants' First Set of Interrogatories, which were prepared with the assistance of counsel, are true and correct to the best of my knowledge, information, and belief.

```
 1              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 2                      JACKSON DIVISION

 3   LATOYA BROWN; LAWRENCE BLACKMON
     HERBERT ANTHONY GREEN; KHADAFY MANNING;
 4   QUINETTA MANNING; MARVIN MCFIELD;
     NICHOLAS SINGLETON; STEVEN SMITH;
 5   BESSIE THOMAS; and BETTY JEAN WILLIAMS
     TUCKER, individually and on behalf of a
 6   class of all other similarly situated,        PLAINTIFFS

 7   VERSUS              CIVIL ACTION NO. 3:17-cv-347 WHB LRA

 8   MADISON COUNTY, MISSISSIPPI;
     SHERIFF RANDALL S. TUCKER, in his
 9   official capacity; and MADISON COUNTY
     SHERIFF'S DEPUTIES JOHN DOES #1 through #6,
10   in their individual capacities,               DEFENDANTS

11

12

13              DEPOSITION OF BESSIE THOMAS

14              taken on December 14th, 2017,
           commencing at approximately 9:00 a.m.
15    at the Law Offices of Wise, Carter, Child & Caraway
                401 East Capitol Street
16                      Suite 600
                   Jackson, Mississippi
17

18

19

20

21

22   REPORTED BY:  BECKY LYNN LOGAN, RPR, CCR #1750
                     eDeposition Services
23                   Post Office Box 14148
                     Jackson, MS 39236
24                    (844) 533-DEPO
                     edeposition.com
25
```

EXHIBIT

B

```
 1   she didn't say it, but I'm asking her if that's what

 2   she's saying.

 3      A.   No, I'm not saying that.

 4   BY MR. GRAVES:

 5      Q.   Which ones of those are you saying where they

 6   didn't use blue lights?

 7           MS. SIVASHANKER:  Objection to form.

 8      A.   I didn't see the blue lights on the street in

 9   front of Mt. Levi that runs between the trailer parks.

10   I didn't see the lights on Martin Luther King -- not

11   Martin Luther King, King Ranch.

12   BY MR. GRAVES:

13      Q.   And when you're saying you didn't see them --

14      A.   The headlights are on; the flashing lights are

15   not, you know, the blue lights.

16      Q.   When you're saying you didn't see them, are you

17   saying they weren't flashing for sure, or are you saying

18   you just didn't see them?

19           MS. SIVASHANKER:  Objection to form.

20      A.   They couldn't have been on.  I didn't see them.

21   BY MR. GRAVES:

22      Q.   When you went through on Mt. Levi, was it --

23   how many times are we talking about you went through

24   roadblocks at Mt. Levi?

25      A.   I was stopped once over there.
```

```
 1      Q.    One time, okay.  Was it during the daytime or

 2   nighttime?

 3      A.    Night.

 4      Q.    What time do you know -- Do you remember what

 5   time it was?

 6      A.    I don't.

 7      Q.    Do you remember when it was?

 8      A.    Not specific dates.

 9      Q.    How long ago was it?

10      A.    Last year.

11      Q.    Did you get a citation issued?

12      A.    I did.

13      Q.    What was the citation for?

14      A.    No child restraint.

15      Q.    So you had a kid in the car with you?

16      A.    I did.

17      Q.    Who was that?

18      A.    Someone I was picking up to take home.

19      Q.    And who was that?

20      A.    Her name was Sherrill.

21      Q.    Sherrill?

22      A.    I'm not sure of Sherrill's last name.

23      Q.    Do you remember who the sheriff's deputy was

24   that wrote your citation?

25      A.    I don't.
```

```
 1       Q.    And who is Sherrill?

 2       A.    Sherrill is a lady that I was over at her

 3  house, you know.  I was coming from her house.

 4       Q.    So you were riding with a child that didn't

 5  have a seat belt on?

 6             MS. SIVASHANKER:  Objection to form.

 7  BY MR. GRAVES:

 8       Q.   You can answer.

 9       A.   Yes.

10       Q.    What happened with that?  Did you pay that

11  ticket?

12       A.    Yes.

13       Q.    On King Ranch you said there were no blue

14  lights.  How many times were you stopped at King Ranch?

15             MS. SIVASHANKER:  Objection.  Asked and

16  answered.  But you can answer again.

17       A.    I was stopped there many times because I live

18  on King Ranch.

19  BY MR. GRAVES:

20       Q.    Are you saying they never turned on blue lights

21  when they were stopping you at King Ranch?

22             MS. SIVASHANKER:  Objection.  Mischaracterizes

23  her testimony.  But you can answer, if you can.

24       A.    If they are parked at the apartment, I don't

25  see the lights.  If they are parked up above that at the
```

```
 1      Q.   And what was her name?

 2      A.   I don't know.

 3      Q.   Do you remember the name of the officer in any

 4  of those three citations?

 5      A.   I do not.

 6      Q.   And are you saying for sure that each of those

 7  three times it was at a roadblock that --

 8           MS. SIVASHANKER:  Objection.

 9  BY MR. GRAVES:

10      Q.   -- you were stopped?

11           MS. SIVASHANKER:  Objection to form.

12      A.   Yes.

13  BY MR. GRAVES:

14      Q.   All right, back to the home invasions.  What

15  home specifically are you talking about that they have

16  entered without a warrant?

17           MS. SIVASHANKER:  Objection to form.  Are you

18  talking about at any point?

19           MR. GRAVES:  Period.

20      A.   Mine.

21  BY MR. GRAVES:

22      Q.   When did they enter your house without a

23  warrant?

24      A.   2008.

25      Q.   Tell me about that.  Where were you when this
```

| | | |
|---|---|---|
| 1 | Q. | What officer? |
| 2 | A. | I don't know his name. |
| 3 | Q. | When was this? |
| 4 | A. | When I got the citation on the street in front |

5  of Mt. Levi.

6       Q.   All right, let's go through that.  Tell me

7  about that.  What happened when you got stopped?

8       A.   I was trying to tell him that I had just picked

9  her up and was fixing to take them home, you know, and I

10  shouldn't have had a restraint because that's not my

11  child, you know, and I was just giving them a ride.  And

12  he went to cursing and told me the next time, that I

13  have already had two, that I can be -- I can go to jail

14  if I got another one.

15       Q.   What curse words did he say to you?

16       A.   He used damn, and, "I don't give a damn.  I've

17  got too many cars here."

18       Q.   Do you remember what deputy it was?

19       A.   I don't.

20       Q.   Was it a white or a black deputy?

21           MS. SIVASHANKER:  Objection.  Asked and

22  answered.  Go ahead.

23       A.   He was white.

24  BY MR. GRAVES:

25       Q.   If you saw him again, would you recognize him?

```
 1              MS. SIVASHANKER:  Objection to form.

 2       A.   I'm saying I don't recall getting any other

 3  ticket.

 4  BY MR. GRAVES:

 5       Q.   So that incident when you got the citation and

 6  you said the officer used vulgar language, is that the

 7  only incident where you say a sheriff's deputy used

 8  vulgar language with you?

 9              MS. SIVASHANKER:  Objection to form.

10       A.   Yes.

11  BY MR. GRAVES:

12       Q.   Are you claiming that he used vulgar language

13  with you because you're black?

14              MS. SIVASHANKER:  Objection to form.

15       A.   Yes.

16  BY MR. GRAVES:

17       Q.   Why is that?

18       A.   Because of the way he was saying it.

19       Q.   What did he say?

20       A.   "I don't want to hear that damn" -- you know,

21  I'm not a curser, but, "I don't want to here that damn

22  stuff.  I've got too many other folks over here, all

23  these niggers over here."

24       Q.   So you don't think he would have said that if

25  you weren't black?
```

```
 1            MR. GRAVES:  Okay.

 2   BY MR. GRAVES:

 3       Q.   You said that during the roadblock, a deputy

 4   used vulgar language toward you during one of the

 5   roadblock stops, right?

 6       A.   Yes.

 7       Q.   Did he ever use racial slurs?

 8       A.   Yes.

 9       Q.   Which slur did he use?

10       A.   "I've got all these niggers off the side of

11   this road."

12       Q.   Who said that?

13       A.   The officer.

14       Q.   What officer?

15       A.   I don't know.

16       Q.   When was this?

17       A.   At the road stop on -- in front of Mt. Levi

18   through the trailer park.

19       Q.   He said, "I've got all these niggers on the

20   side of the road"?

21            MS. SIVASHANKER:  Objection to form.

22       A.   Yes.

23   BY MR. GRAVES:

24       Q.   Was he talking to you?

25       A.   I was talking to him.
```

```
 1     Q.    What did he mean by that?  What was he saying?

 2           MS. SIVASHANKER:  Objection to form.

 3     A.    I have no idea what he meant.

 4  BY MR. GRAVES:

 5     Q.    But did he actually call you -- Did he use a

 6  racial slur towards you, or was he just generally

 7  talking about people?

 8           MS. SIVASHANKER:  Objection to form.

 9     A.    He stated -- I was trying to explain, and he

10  stated, "I don't give a D.  I've got all these -- I'm

11  sitting all these niggers on the side of this road."

12  BY MR. GRAVES:

13     Q.    Why didn't you tell me that he said that before

14  when I asked you what he said?

15     A.    I did say that.

16     Q.    You told me that he said he didn't give a damn,

17  but you didn't tell me he said, "I've got all these

18  niggers on the side of the road."

19           MS. SIVASHANKER:  Objection.  Argumentative.  I

20  think she did say that.  But you can answer again.

21     A.    I did.

22  BY MR. GRAVES:

23     Q.    And you didn't report that to the sheriff's

24  department, did you?

25           MS. SIVASHANKER:  Objection to form.
```

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

LATOYA BROWN; LAWRENCE
BLACKMON; HERBERT ANTHONY
GREEN; KHADAFY MANNING;
QUINNETTA MANNING; MARVIN
MCFIELD; NICHOLAS SINGLETON;
STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER,
individually and on behalf of a class of all
others similarly situated,

     Plaintiffs,

     v.

MADISON COUNTY, MISSISSIPPI;
SHERIFF RANDALL S. TUCKER, in his
official capacity; and MADISON COUNTY
SHERIFF'S DEPUTIES JOHN DOES #1
through #6, in their individual capacities,

     Defendants.

Civil Action No.
3:17-cv-00347-WHB-LRA

**PLAINTIFF BESSIE THOMAS'S
SECOND SUPPLEMENTAL
RESPONSES AND OBJECTIONS
TO DEFENDANTS' FIRST SET
OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Bessie

Thomas ("Plaintiff"), by and through her attorneys, hereby submits the following supplemental

responses and objections to Interrogatories Nos. 8 and 14 of Defendants' First Set of

Interrogatories served by Defendants on Plaintiffs on September 22, 2017 (collectively, the

"Interrogatories," and each an "Interrogatory"). The Second Supplemental Responses and

Objections set forth below are made in further response to the Interrogatories and supplement the

Responses and Objections previously served by Plaintiff.



## GENERAL OBJECTIONS

Plaintiff hereby incorporates by reference the General Objections set forth in her

Responses and Objections to Defendants' First Set of Interrogatories dated October 20, 2017, her

Supplemental Responses and Objections to Defendants' First Set of Interrogatories dated

November 10, 2017, and her Amended and Superseding Responses and Objections to

Defendants' First Set of Interrogatories dated December 13, 2017.  Plaintiff asserts those General

Objections as to each Interrogatory, whether or not such objections are repeated below in

response to each individual Interrogatory.

## SPECIFIC SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO INTERROGATORIES NOS. 8 AND 14

### Interrogatory No. 8:

Please identify and describe in detail the form and substance of any policy or procedure of the Defendants or the Madison County Sheriff's Department you contend constitutes a policy sanctioning or encouraging unreasonable searches and seizures or racial discrimination. For each such policy, please state:

(a)     the name of the policy;

(b)     the terms of the policy;

(c)     the date it went into effect;

(d)     the means by which it went into effect;

(e)     how you learned of such policy; and

(f)     the name, address, and telephone number of the person who provided it to you.

### Supplemental Response to Interrogatory No. 8:

In addition to the General Objections incorporated herein by reference, Plaintiff objects

to Interrogatory No. 8 on the grounds that it seeks information already in the possession, custody,

or control of or that is known to, equally available to, or solely available to Defendants.  Plaintiff

further objects to this Interrogatory on the grounds that it seeks information that is protected

2

from disclosure by, or disclosure of which is prohibited or restricted under, any privilege or immunity, including the attorney-client privilege, the work product doctrine, the joint defense privilege, the common interest privilege or any other applicable privilege, immunity or limitation on discovery.  Plaintiff also objects to this Interrogatory as vague, overbroad, and unduly burdensome.  Plaintiff further objects to this Interrogatory because class certification-related discovery is ongoing and incomplete, and to the extent that this Interrogatory purports to require Plaintiffs to marshal evidence in support of any right or claim.  Plaintiff also objects to this Interrogatory as vague, overbroad, and unduly burdensome.  Plaintiff further objects to this Interrogatory on the grounds that it requests information regarding counsel's preparation of the case on behalf of the named Plaintiffs and the proposed class, rather than information that is within the personal knowledge of Plaintiff.  Any information provided by Plaintiff in response to this Interrogatory is provided subject to and without waiver of these objections and qualifications.

Subject to and without waiver of the foregoing objections, and in addition to the information previously provided by Plaintiff in response to this Interrogatory, Plaintiff states that policies and procedures of Defendants or the Madison County Sheriff's Department that constitute a policy sanctioning or encouraging unreasonable searches and seizures or racial discrimination include, but are not limited to:

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks without appropriate procedural safeguards, including (i) roadblocks conducted using unmarked cars, (ii) roadblocks conducted using cars without emergency lighting engaged and/or using flashlights as a primary light source, (iii) roadblocks conducted by plainclothes or undercover officers, including narcotics officers

and members of the "NET Team," "Jump Out Detail," and/or "Apartment Detail," (iv) roadblocks conducted in inadequately lit areas, (v) "roving" roadblocks, and (vi) roadblocks at which officers do not stop every car, but instead use their discretion to only stop certain vehicles.

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks at which officers require persons other than the driver to produce identification or provide other information, or otherwise search or detain persons without reasonable suspicion or probable cause.

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks at which Madison County Sheriff's Department personnel stop, question, detain, and/or search pedestrians in the vicinity of the roadblock without reasonable suspicion or probable cause and/or on the basis of race.

- The Madison County Sheriff's Department's policy, custom, and/or practice of stopping, questioning, detaining, and/or searching pedestrians travelling through majority-Black areas of Madison County without reasonable suspicion or probable cause and/or on the basis of race, including as implemented by narcotics officers and members of the "NET Team," "Jump Out Detail," and/or "Apartment Detail."

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks for the purpose of checking for outstanding warrants, including but not limited to as described in the Notices produced at (i) MC T. CHASTAIN LAPTOP 17, (ii) MC MAD. COUNTY MAIN SERVER 1, and (iii) MC – SANDRIDGE DESKTOP 23, as well as the Notice annexed to the Complaint and the incident report produced at Bates numbers MC-RFP-Inc. Rep. 010886-010887.

- The Madison County Sheriff's Department's policy, custom, and/or practice of disproportionately conducting traffic stops in majority-Black areas, conducting pretextual traffic stops on the basis of race, and disproportionately issuing citations to and making arrests of Black individuals during traffic stops.

- The Madison County Sheriff's Department's policy, custom, and/or practice of discriminatorily arresting, citing, and/or charging Black individuals at higher rates, and/or with greater severity, than white persons engaged in the same or similar conduct.

- The Madison County Sheriff's Department's policy, custom, and/or practice of entering the homes of Black residents of Madison County without warrants or other valid legal justification in the course of serving warrants and/or conducting investigations, and of conducting unreasonable and warrantless searches of such premises in connection therewith.

- The Madison County Sheriff's Department's deliberate indifference to violations of the Fourth and Fourteenth Amendments by its personnel, as demonstrated by (i) the Madison County Sheriff's Department's failure to adequately train, supervise, and/or discipline officers with respect to unconstitutional policing practices and with respect to officers' exercise of discretion in conducting law enforcement activities, (ii) the Madison County Sheriff's Department's failure to adequately investigate or otherwise respond to citizen complaints, (iii) the Madison County Sheriff's Department's failure to maintain data and/or statistics regarding incidents involving the use of force and the racial composition of persons subject to the Madison County Sheriff's Department's policing activities, and (iv) the Madison County Sheriff's Department's culture of racial discrimination and of explicitly or implicitly condoning, authorizing, and/or acquiescing to racially

discriminatory attitudes, statements, and actions by Madison County Sheriff's Department personnel.

The policies, customs, and/or practices described above have been identified through analysis of deposition testimony taken in this Action, documents produced by the parties, and documents received in response to requests made under the Mississippi Public Records Act. Plaintiff's investigation, discovery, and preparation of her case and her legal theories, through counsel, are ongoing, and Plaintiff reserves all rights to identify other policies and/or procedures, to clarify or refine Plaintiff's characterizations of the above-mentioned policies and/or procedures, and/or to rely on other or additional evidence concerning any such policies and/or procedures, including as a result of documentary or testimonial evidence that may be adduced in this Action after the date hereof.

**Interrogatory No. 14:**

Please state the questions of law and fact you contend are common to the class your Complaint alleges, and identify any documents related to the common questions of law and fact.

**Supplemental Response to Interrogatory No. 14:**

In addition to the General Objections incorporated herein by reference, Plaintiff objects to Interrogatory No. 14 on the grounds that it seeks information that is protected from disclosure by, or disclosure of which is prohibited or restricted under, the attorney-client privilege, the work product doctrine, the joint defense privilege, the common interest privilege or any other applicable privilege, immunity, or limitation on discovery. Plaintiff further objects to this Interrogatory because class certification-related discovery is ongoing and incomplete, and to the extent that this Interrogatory purports to require Plaintiffs to marshal evidence in support of any right or claim. Plaintiff also objects to this Interrogatory as vague, overbroad, and unduly burdensome. Plaintiff further objects to this Interrogatory on the grounds that it requests

violates the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution constitute common questions that are appropriately resolved on a class-wide basis.

The common questions of fact and/or law described above have been identified through

analysis of deposition testimony taken in this Action, documents produced by the parties, and

documents received in response to requests made under the Mississippi Public Records Act.

Plaintiff's investigation, discovery, and preparation of her case and her legal theories, through

counsel, are ongoing, and Plaintiff reserves all rights to identify other common questions of law

and/or fact, to clarify or refine Plaintiff's characterizations of the above-mentioned common

questions of law and/or fact, and/or to rely on other or additional evidence concerning any such

common questions of law and/or fact, including as a result of documentary or testimonial

evidence that may be adduced in this Action after the date hereof.

Dated: January 16, 2018

By:  /s/ Joshua Tom
       Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Jumin Lee (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
christopherjumin.lee@stblaw.com
bonnie.jarrett@stblaw.com

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice*)
Jeffery Robinson (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiff*

## Verification

I hereby declare under penalty of perjury that the responses contained in the foregoing Supplemental Responses and Objections to Interrogatories propounded by Defendants, which were prepared with the assistance of counsel, are true and correct to the best of my knowledge, information, and belief.