IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

LATOYA BROWN; LAWRENCE BLACKMON
HERBERT ANTHONY GREEN; KHADAFY MANNING;
QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS
SINGLETON; STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER, individually and on
behalf of a class of all other similarly situated                                                PLAINTIFFS

v.                                              CIVIL ACTION NO. 3:17-cv-347-WHB-LRA

MADISON COUNTY, MISSISSIPPI; SHERIFF
RANDALL S. TUCKER, in his official capacity; and
MADISON COUNTY SHERIFF'S DEPUTIES JOHN
DOES #1 through #6, in their individual capacities                                              DEFENDANTS

---

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS
OF PLAINTIFF BESSIE THOMAS**

---

Defendants Madison County, Mississippi, and Sheriff Randall S. Tucker, by and through counsel, file the following Memorandum in support of their motion for summary judgment on the individual and class-based claims of Plaintiff Bessie Thomas:

**INTRODUCTION**

Bessie Thomas filed this action along with nine other plaintiffs alleging that the Madison County Sheriff's Department ("MCSD") has "a **coordinated top-down program** of methodically targeting Black individuals for suspicionless searches and seizures." Complaint [Docket # 1], at pg. 1 (emphasis in original). Thomas' claims are based on two primary allegations: (1) that the MCSD unlawfully entered her home to arrest her son; and (2) that she been forced to stop at safety checkpoints (or roadblocks). *Id.* at ¶¶ 285, 289. Thomas alleges that these alleged acts constitute Fourth Amendment violations intentionally committed against

1

her because she is Black, and she further alleges the MCSD's policy of intentional race discrimination violates 42 U.S.C. § 1983 and 42 U.S.C.A. § 2000d of Title VI of the Civil Rights Act of 1964.  She seeks injunctive and declaratory relief on behalf of herself and a purported class of individuals she defines as:

> People who (1) are, or who appear to be, Black and those in their company, and (2) were, are, or will be in Madison County, and (3) were, are, or will be, subject to the MCSD's policy, custom, and/or practice of systematically executing unreasonable searches and seizures of person, homes, cars, and property on the basis of race."

Complaint [Docket # 1], at ¶ 300.

Summary judgment should be granted on both Thomas' § 1983 and Title VI claims. Thomas' claims arising from the alleged unlawful entry into her home are time-barred by the three-year statute of limitations prescribed by Miss. Code § 15-1-49.  Thomas admits that the incident occurred in or before 2008,[1] but she did not file her claims until May 8, 2017.  Further, Thomas offers no evidence whatsoever to support her claim that the alleged entry into her home was the result of a top-down policy of intentional race discrimination.  She likewise offers no evidence to support her allegation that the checkpoints where she was stopped constituted a Fourth Amendment violation, much less that they were established as part of a top-down policy of intentional race discrimination.[2]

---

[1] Thomas stated in her interrogatory that the incident occurred "prior to 2008," but she testified in her deposition that it was in 2008.  The difference in these times is immaterial.  In either case, Thomas' claims are untimely.  *See* Thomas' Response to Interrogatory No. 2 of Defendant's First Set of Interrogatories (**Exhibit A**); Thomas' deposition (**Exhibit B**), at pg. 38.

[2] Thomas has abandoned her claim that the MCSD only sets up checkpoints in predominantly Black neighborhoods, which she first asserted in ¶ 288 of her Complaint but did not include in the list of MCSD policies she claims sanction or encourage" unreasonable searches and seizures or racial discrimination" when supplementing her responses to an interrogatory inquiring about these policies.  *See* Thomas' Second Supplemental Response to Interrogatory No. 8 of Defendants' First Set of Interrogatories, (**Exhibit C**).

## LEGAL STANDARD

"The moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by pointing out the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal quotations omitted). If the moving party meets its burden, "the nonmoving party who has the burden of proof at trial must come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant." *Id.*

## LEGAL ARGUMENT

### I.  SUMMARY JUDGMENT SHOULD BE GRANTED ON PLAINTIFF'S CLAIMS ARISING FROM THE ALLEGED 2008 HOME ENTRY.

Summary judgment should be granted on Thomas' claims arising from the alleged unlawful entry into her home for two independent reasons. First, the claims are barred by the applicable three-year statute of limitations. Second, Thomas has offered no evidence to support her allegation that the alleged unlawful entry was the result of a top-down policy of race discrimination.

#### A.  Plaintiff's claim is time-barred.

Federal courts apply state law statutes of limitations to federal civil rights claims arising under § 1983 and Title VI. *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1521 (5th Cir. 1993). In this case, the applicable statute is Mississippi's three-year statute of limitations prescribed by Miss. Code § 15-1-49. *Walker v. Epps*, 550 F.3d 407, 415 (5th Cir. 2008). This statute applies even though Thomas is only seeking declaratory and injunctive relief to prevent future conduct. *Id.* at 411-412. In other words, Thomas must first prove that a prior constitutional violation was

committed against her within the statutory period before she can obtain injunctive relief against future conduct. *Id.*

Application of § 15-1-49 bars Thomas' unlawful home entry claims. Although Thomas initially alleged in her Complaint that the alleged unlawful entry occurred in 2014,[3] she later admitted in both her interrogatory responses and her deposition that the alleged incident occurred in or before 2008. *See* Exhibit A, at Response to Interrogatory No. 2; Exhibit B, at pg. 38. Any alleged civil rights claim arising from this incident thus accrued in 2008 and expired three years later in 2011. *See Walker*, 550 F.3d at 414 (holding that a § 1983 claim accrues, and the limitations period begins to run, "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.").[4] Because Thomas did not file the present action until May 8, 2017, her claims are therefore time-barred.

        **B.**        **Plaintiff offers no evidence to support her allegation that the alleged unlawful entry was the result of a top-down policy of race discrimination.**

In addition to being time barred, Thomas' unlawful home entry claims fail on the merits. To succeed on her claim under § 1983 or Title VI, Thomas must prove intentional race discrimination. *See* Alexander *v. Sandoval,* 532 U.S. 276, 280 (2001) (holding that Title VI requires proof of intentional discrimination); *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997) ("In order to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race."); *Vera v. Tue*, 73 F.3d 604,

---

[3] *See* Complaint [Docket # 1], at ¶¶ 285-286.
[4] Accepting Thomas' allegations in her Complaint as true, she knew or should have known that she had a potential claim in 2008 when the incident allegedly occurred because she claims that the MCSD deputies kicked in her door and never showed her a warrant. Complaint [Docket # 1], at ¶ 285.

609 (5th Cir.1996) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). Thomas fails to meet this burden.

Thomas alleges that the entry into her home was the result of "a **coordinated top-down program** of methodically targeting Black individuals for suspicionless searches and seizures." Complaint [Docket # 1], at ¶ 1 (emphasis in original). However, Thomas offers no evidence to support her allegation that the MCSD has a top-down policy of race discrimination, much less that the alleged entry into her home was the result of that policy. Further, Thomas' own subjective belief that the alleged entry into her home was the result of intentional race discrimination, without more, is insufficient to defeat summary judgment. *Laborde v. City of Houston*, 31 F. App'x 151 (5th Cir. 2001) ("A plaintiff's subjective belief of race discrimination cannot alone establish that he has been a victim of intentional discrimination.") (citing *Ray v. Tandem Computers, Inc.*, 63 F .3d 429, 435 (5th Cir.1995)). This serves as additional ground for granting summary judgment on Thomas' § 1983 and Title VI claims arising from the alleged unlawful home entry.

## II. PLAINTIFF'S ALLEGATIONS CONCERNING SAFETY CHECKPOINTS ARE UNSUPPORTED BY THE EVIDENCE.

Thomas alleges in her Complaint that she has been stopped at safety checkpoints (or roadblocks) conducted by the MCSD in Canton and that "she believes" these checkpoints are only conducted in Black neighborhoods. *See* Complaint [Docket # 1], at ¶ 289. Thomas made similar claims in her deposition and in her initial interrogatory responses, but she later abandoned that theory in her supplemental interrogatory answers. *See supra* n.1. Summary judgment should be granted on Thomas' safety checkpoint-related claims for this reason alone.

Summary judgment can, and should, also be granted because Thomas presents no evidence supporting her allegation that the safety checkpoints at which she was stopped

5

constituted a violation of the Fourth Amendment intentionally committed against her because of her race.  The law is clear that "discretionless stops designed to check a driver's license and registration are permissible."  *United States v. Green*, 293 F.3d 855, 858 (5th Cir. 2002).  And, once a vehicle is stopped, officers "can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation" without running afoul of the Fourth Amendment.  *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993) (holding that during an otherwise valid stop officers as long as the detention does not exceed its original scope).  Thomas does not allege, much less prove, that the MCSD's checkpoints failed to comply with these standards.

Furthermore, Thomas presents no evidence that the stops at these checkpoints resulted from a top-down policy of intentional race discrimination.  As stated above, Thomas' "subjective belief of race discrimination cannot alone establish that [s]he has been a victim of intentional discrimination."  *Laborde v. City of Houston*, 31 F. App'x 151 (5th Cir. 2001) (citing *Ray v. Tandem Computers, Inc.*, 63 F .3d 429, 435 (5th Cir.1995)).  Thus, her statement in her Complaint that "she believes" the MCSD only conducts checkpoints in predominantly Black neighborhoods, without substantive evidence, is simply insufficient to defeat summary judgment. *Id.* (affirming grant of judgment as a matter of law on the plaintiff's § 1983 and equal protection claims).

The only evidence Thomas offers that even remotely touches on the issue of race is her own testimony that, during one on the alleged safety checkpoints, one of the MCSD deputies said to her, "I've got all these niggers off the side of this road."  *See* Exhibit B, at pp. 28-30, 66,

68, 77.[5]  This testimony is simply insufficient to establish the requisite equal protection violation necessary to succeed on a claim under § 1983 or Title VI.  The Fifth Circuit has expressly held that "an officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation."  *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999).  Thomas presents no evidence that the officer's alleged use of the racial slur was combined with conduct depriving her of an established right.  In fact, she testified that she "has no idea what he meant" by his comment.  *See* Exhibit B, at pp. 77-78.  Because Thomas presents no evidence that the officer's alleged use a racial slur was accompanied by some other unlawful conduct, she cannot defeat summary judgment.  *Williams*, 180 F.3d at 706 (affirming grant of summary judgment on § 1983 claim alleging that officer used a racial epithet when addressing the plaintiff).  In the words of the Fifth Circuit, "[w]here [as here] the [the alleged wrongful] conduct at issue consists solely of speech, there is no equal protection violation."  *Id.*

## CONCLUSION

For the reasons stated above, summary judgment should be granted on all of Thomas' claims.

Respectfully submitted this 12th day of March, 2018.

        **MADISON COUNTY, MISSISSIPPI and
SHERIFF RANDALL C. TUCKER, IN
HIS OFFICIAL CAPACITY**

        BY:   *s/ James E. Graves, III*
                Michael B. Wallace (MSB #6904)
                Charles E. Ross (MSB #5683)
                James E. Graves, III (MSB #102252)

---

[5] Thomas initially testified that the officer stated, "I've got too many cars here." *Id.* at 66.  She subsequently changed her testimony to say that he used the racial slur, but she offered no explanation as to why she did not mention the racial slur in her earlier testimony.

        Charles E. Cowan (MSB #104478)
        WISE CARTER CHILD & CARAWAY, P.A.
        Post Office Box 651
        Jackson, Mississippi  39205-0651
        Telephone: 601-968-5534
        Facsimile: 601- 944-7738
        mbw@wisecarter.com
        cer@wisecarter.com
        jeg@wisecarter.com
        cec@wisecarter.com

        and

        T. Russell Nobile (MSB #100682)
        WISE CARTER CHILD & CARAWAY, P.A.
        2510 14th Street, Suite 1125
        Gulfport, Mississippi  39501
        Telephone: 228-867-7141
        Facsimile: 228-867-7142
        trn@wisecarter.com

        OF COUNSEL:

        Rebecca B. Cowan (MSB #7735)
        CURRIE JOHNSON & MYERS, P.A.
        1044 River Oaks Dr.
        Jackson, Mississippi  39232
        P.O. Box 750
        Jackson, Mississippi  39205-0750
        Telephone: 601-969-1010
        Facsimile:  601-969-5120
        bcowan@curriejohnson.com

        Katie Bryant Snell (MSB# 103607)
        KATIE BRYANT SNELL, PLLC
        P.O. Box 3007
        Madison, Mississippi  39130-3007
        Telephone: 601-460-9800
        katie@katiebryantsnell.com

        J. Lawson Hester
        PETTIS, BARFIELD & HESTER, P.A.
        4450 Old Canton Road, Suite 210
        Jackson, Mississippi  39211
        Telephone: 601-987-5300
        lhester@pbhfirm.com

## **CERTIFICATE OF SERVICE**

      I, James E. Graves, III, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record.

      This the 12th day of March, 2018.

*s/ James E. Graves, III*_____
JAMES E. GRAVES, III
