# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**LATOYA BROWN; LAWRENCE BLACKMON
HERBERT ANTHONY GREEN; KHADAFY MANNING;
QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS
SINGLETON; STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER, individually and on
behalf of a class of all other similarly situated** **PLAINTIFFS**

**v.** **CIVIL ACTION NO. 3:17-cv-347-WHB-LRA**

**MADISON COUNTY, MISSISSIPPI; SHERIFF
RANDALL S. TUCKER, in his official capacity; and
MADISON COUNTY SHERIFF'S DEPUTIES JOHN
DOES #1 through #6, in their individual capacities** **DEFENDANTS**

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
## THE CLAIMS OF PLAINTIFF NICHOLAS SINGLETON

Defendants Madison County, Mississippi, and Sheriff Randall S. Tucker, by and through

counsel, file the following Motion for Summary Judgment pursuant to Fed. Civ. P. 56 on the

individual and class-based claims of Plaintiff Nicholas Singleton:

1.      Nicholas Singleton filed this action along with nine other plaintiffs alleging that the

Madison County Sheriff's Department ("MCSD") has a top-down policy of intentional race

discrimination. *See* Complaint [Docket # 1], at ¶ 1. Singleton's claims are based on two primary

allegations: (1) that the MCSD unlawfully entered his home in 2011 following the controlled

delivery of a package; and (2) that he has been stopped by MCSD deputies at safety checkpoints

(or roadblocks) in Madison County. *Id.* at ¶¶ 263-268; Singleton's deposition (Exhibit A), at pg.

19, 22-23. Singleton alleges that these alleged acts constitute Fourth Amendment violations

intentionally committed against him because he is Black, and he further alleges the MCSD's policy

of intentional race discrimination violates 42 U.S.C. § 1983 and 42 U.S.C.A. § 2000d of Title VI

of the Civil Rights Act of 1964.  He seeks injunctive and declaratory relief on behalf of himself and a purported class of individuals he defines as:

> People who (1) are, or who appear to be, Black and those in their company, and (2) were, are, or will be in Madison County, and (3) were, are, or will be, subject to the MCSD's policy, custom, and/or practice of systematically executing unreasonable searches and seizures of person, homes, cars, and property on the basis of race."

Complaint [Docket # 1], at ¶ 300.

2.      Summary judgment should be granted on both Singleton's § 1983 and Title VI claims.  Singleton admits that the alleged unlawful entry into his home occurred in 2011, and he did not file the present lawsuit until May 8, 2017.  Any claim based upon this alleged unlawful entry is therefore barred by the applicable three-year statute of limitations.  Further, Singleton admitted in his deposition that he does not believe the alleged entry to his home was the result of intentional race discrimination.  *See* Exhibit A, at pg. 41.  Moreover, Singleton offers no evidence to support his allegation that the checkpoints where he was stopped constituted a Fourth Amendment violation, much less that they were established as part of a top-down policy of intentional race discrimination.[1]

## **EXHIBITS**

3.      In support of this Motion, Defendants rely in part on the following exhibits:

Exhibit A        Excerpts from Thomas' deposition; and

Exhibit B        Singleton's Second Supplemental Responses to Defendants' First Set of Interrogatories.

Defendants also rely on the Memorandum of Authorities submitted herewith.

---

[1] Singleton has abandoned his claim that the MCSD only sets up checkpoints in predominantly Black neighborhoods, which he first asserted in ¶ 267 of his Complaint but did not include in the list of MCSD policies he claims sanction or encourage" unreasonable searches and seizures or racial discrimination" when supplementing his responses to an interrogatory inquiring about these policies.  *See* Singleton's Second Supplemental Response to Interrogatory No. 8 of Defendants' First Set of Interrogatories, (Exhibit B).

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that this Court dismiss all of Plaintiff Nicholas Singleton's claims with prejudice pursuant to Fed. R. Civ. P. 56(a).

Respectfully submitted this 12th day of March, 2018.

**MADISON COUNTY, MISSISSIPPI, and SHERIFF RANDALL C. TUCKER, IN HIS OFFICIAL CAPACITY**

BY:     *s/ James E. Graves, III*
          Michael B. Wallace (MSB #6904)
          Charles E. Ross (MSB #5683)
          James E. Graves, III (MSB #102252)
          Charles E. Cowan (MSB #104478)
          WISE CARTER CHILD & CARAWAY, P.A.
          Post Office Box 651
          Jackson, Mississippi  39205-0651
          Telephone: 601-968-5534
          Facsimile: 601- 944-7738
          mbw@wisecarter.com
          cer@wisecarter.com
          jeg@wisecarter.com
          cec@wisecarter.com

          and

          T. Russell Nobile (MSB #100682)
          WISE CARTER CHILD & CARAWAY, P.A.
          2510 14th Street, Suite 1125
          Gulfport, Mississippi  39501
          Telephone: 228-867-7141
          Facsimile: 228-867-7142
          trn@wisecarter.com

          OF COUNSEL:

          Rebecca B. Cowan (MSB #7735)
          CURRIE JOHNSON & MYERS, P.A.
          1044 River Oaks Dr.
          Jackson, Mississippi  39232
          P.O. Box 750
          Jackson, Mississippi  39205-0750
          Telephone: 601-969-1010

Facsimile:  601-969-5120
bcowan@curriejohnson.com

Katie Bryant Snell (MSB# 103607)
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi  39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

J. Lawson Hester
PETTIS, BARFIELD & HESTER, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi  39211
Telephone: 601-987-5300
lhester@pbhfirm.com

## CERTIFICATE OF SERVICE

I, James E. Graves, III, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record.

This the 12th day of March, 2018.

s/ James E. Graves, III
JAMES E. GRAVES, III

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Nicholas Singleton - 12/29/2017

```
 1              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 2                      JACKSON DIVISION

 3    LATOYA BROWN; LAWRENCE BLACKMON
      HERBERT ANTHONY GREEN; KHADAFY MANNING;
 4    QUINETTA MANNING; MARVIN MCFIELD;
      NICHOLAS SINGLETON; STEVEN SMITH;
 5    BESSIE THOMAS; and BETTY JEAN WILLIAMS
      TUCKER, individually and on behalf of a
 6    class of all other similarly situated,        PLAINTIFFS

 7    VERSUS           CIVIL ACTION NO. 3:17-cv-347 WHB LRA

 8    MADISON COUNTY, MISSISSIPPI;
      SHERIFF RANDALL S. TUCKER, in his
 9    official capacity; and MADISON COUNTY
      SHERIFF'S DEPUTIES JOHN DOES #1 through #6,
10    in their individual capacities,               DEFENDANTS

11

12

13             DEPOSITION OF NICHOLAS SINGLETON

14              taken on December 29th, 2017,
           commencing at approximately 10:30 a.m.
15     at the Law Offices of Wise, Carter, Child & Caraway
                   401 East Capitol Street
16                      Suite 600
                   Jackson, Mississippi

17

18

19

20

21

22    REPORTED BY:  BECKY LYNN LOGAN, RPR, CCR #1750
                    eDeposition Services
23                  Post Office Box 14148
                    Jackson, MS 39236
24                   (844) 533-DEPO
                    edeposition.com
25
```

EXHIBIT

A

```
 1   the ACLU?

 2       A.    I don't remember.

 3       Q.    Was it more than three?

 4       A.    I don't know exactly.

 5       Q.    Did Rasheid ever go to any of the meetings?

 6       A.    Once that I know of.

 7       Q.    Do you know why he's not a plaintiff in this

 8   lawsuit?

 9       A.    I do not.

10       Q.    Have you made any efforts to get anybody else

11   to join in this lawsuit?

12       A.    I don't remember exactly.

13       Q.    You don't know if you have talked to anybody

14   else about possibly joining the lawsuit?

15       A.    No.   I don't remember that exactly.

16       Q.    What is it you plan to get out of this lawsuit?

17       A.    To not be harassed or have to deal with the

18   same circumstances that were happening prior to it.

19       Q.    And what circumstances are you talking about?

20       A.    The initial situation where they came to my

21   house, and then the circumstances where there's a

22   roadblock on every other corner in black neighborhoods

23   as opposed to any other neighborhood.

24             MR. GRAVES:   Let's take a short break.

25             (A short break was taken off the record at
```

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Nicholas Singleton - 12/29/2017                                              Page 22

1   

5        Q.    Have you been arrested other than that 2006

6   incident?

7        A.    The 2011 event.

8        Q.    And that was with the delivery to your house

9   you were talking about?

10       A.    Yes.



14       Q.    Have you ever reviewed any written policies

15   from the sheriff's department?

16       A.    When you say written policies --

17       Q.    Like documents, written policies of the

18   sheriff's department?

19       A.    No.

20       Q.    All right.  So if I understood your testimony

21   correctly, there are essentially two things you're

22   claiming in this lawsuit:  One, the box delivery

23   incident in 2011, and, two, being stopped at safety

24   checkpoints, which you say are only in black

25   neighborhoods and not in white neighborhoods, right?

```
 1      A.    Yes.

 2            MR. TOM:   Objection.

 3  BY MR. GRAVES:

 4      Q.    Anything else that you're claiming in this

 5  lawsuit besides those two things?

 6      A.    No.

 7      Q.    Let's take them one at a time.  Tell me about

 8  the 2011 incident with the box delivery.  Where did that

 9  happen?

10      A.    In my home.

11      Q.    And that's ▆▆▆?

12      A.    Yes.

13      Q.    Do you know what the date was?

14      A.    I can't remember the exact date.

15      Q.    If I had a document that said March 24th, 2011,

16  you wouldn't dispute that, would you?

17      A.    I don't know.

18      Q.    Well, let me show you this (indicating).

19            MR. GRAVES:  Let's mark this as Exhibit 1.

20            (Exhibit 1 marked for identification.)
```

```
 1      Q.   Because you thought it was unusual that he
 2  would be getting a package at that house?
 3      A.   Not necessarily.  It's just normally when
 4  someone has a package delivered, they will let you know,
 5  "Okay, I have a delivery coming here."  Because at the
 6  time, I was unemployed, and I was at home, so a package
 7  -- I would get mail from other relatives so that it
 8  wouldn't be stolen or removed.
 9      Q.   I gotcha.  So it wasn't unusual for a relative
10  to ask you to receive a package for them because they
11  knew you would be at the house, correct?
12      A.   Yes.
13      Q.   But it was unusual because Bryan hadn't called
14  you beforehand in this case?
15      A.   Yes.
16      Q.   So you weren't expecting it?
17      A.   No, I was not.
18      Q.   And that's what you were calling about?
19      A.   Yes.
20      Q.   Now, do you think that that incident was based
21  on race discrimination?
22      A.   No.
23      Q.   Now let's move to the roadblocks.  You do think
24  those are based on race discrimination?
25      A.   Yes, I do.
```

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Nicholas Singleton - 12/29/2017                                    Page 43

```
 1       A.   Let me see -- At the entrance of Canton

 2   Estates, at the entrance of the new projects, McNeal

 3   Elementary.  Let me see where else -- on King Ranch

 4   Road.

 5       Q.   Okay, you said Canton Estates and you said the

 6   new projects.  What are the new projects?

 7       A.   It's like a housing complex.

 8       Q.   Do you know what the name of it is?

 9       A.   Not exactly at the moment.

10       Q.   When you say new projects, it's like a new

11   development you mean?  Why are you saying new projects?

12       A.   Because we have old projects and new projects.

13       Q.   And new projects is called new because it's

14   newer?

15       A.   Yes.

16       Q.   When was that developed?

17       A.   I don't know exactly.

18       Q.   What street is it on?

19       A.   Is it Martin Luther King, or does it turn into

20   -- I think it's Martin Luther King, if I'm not mistaken.

21            MR. TOM:  Only testify to what you know.  Don't

22   guess.

23            DEPONENT:  Okay.

24   BY MR. GRAVES:

25       Q.   So it may be?  Are you sure, or you don't know?
```

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Nicholas Singleton - 12/29/2017                                    Page 44

```
 1      A.    I don't know the exact street address.

 2      Q.    So Canton Estates, what you're calling the new

 3  projects, and where else?

 4      A.    Boyd Street, King Ranch, I can't think of the

 5  other locations at the moment.

 6      Q.    So you're saying more than 20 times, but you

 7  have only listed four different places right now?

 8            MR. TOM:  Objection.  He said he remembered

 9  four and doesn't remember more than that.  He didn't say

10  there was only four.

11            MR. GRAVES:  I know he didn't.

12  BY MR. GRAVES:

13      Q.    Here is my question though:  When you say you

14  have seen more than 20 on that side of the tracks --

15      A.    Yes.

16      Q.    -- how many different locations are you talking

17  about?

18      A.    I don't have an exact number of locations.

19      Q.    More than ten?

20      A.    Yes.

21      Q.    More than 15?

22      A.    Yes.

23      Q.    All right.  So it's more than 15 locations, but

24  so far you have only named four.  You can't think of any

25  more?
```

```
1       A.    Kingston Place, Highway 16 old and new, Highway

2    43, Highway 51, Highway 17, and that's all I can think

3    of at the moment.  I don't have a list at the moment.

4       Q.    Now, the next question is:  Of all these you

5    have just listed, are these ones you have actually seen,

6    or are these ones you have been stopped at?

7       A.    Ones I have been stopped at.

8       Q.    When were you stopped at the Canton Estates

9    checkpoint?

10       A.    When I went to see my cousin because they

11    stayed in that complex.

12       Q.    When was that?

13       A.    I don't have an exact date.

14       Q.    How long ago was it?

15       A.    I don't know exactly because it has been a

16    while.

17       Q.    Like more than four years ago?

18       A.    Less than that.

19       Q.    More than three years ago?

20       A.    I would say two years ago.

21       Q.    Were you given a citation?

22       A.    No.

23    ███████████████████████████████████████████████
     ████████████████████████████████████████████
     ████████████████████████████████████████████████
```

LATOYA BROWN VERSUS MADISON COUNTY, MISSISSIPPI, ET AL.
Nicholas Singleton - 12/29/2017                                   Page 53

```
 1      Q.    On Highway 43 how many times were you stopped
 2   at a roadblock?
 3      A.    Once.
 4      Q.    When was that?
 5      A.    Between two and three years ago.
 6      Q.    Does anything stand out as significant about
 7   that?
 8      A.    Not that I remember.
 9      Q.    Highway 51 -- Now, let me back up to about the
10   Highway 51 because I think you said one of the
11   roadblocks you saw on what you called the white side of
12   the tracks, was that also Highway 51?
13      A.    It would be probably the only place.
14      Q.    So how many different places on Highway 51 have
15   you seen roadblocks?
16      A.    On both ends of Canton.
17      Q.    And you're saying one is on the white side and
18   one is on the black side of the tracks?
19      A.    Primarily it's more in a neutral -- that's more
20   in a neutral zone as opposed to how they set up a
21   roadblock on Boyd Street.
22      Q.    So the ones on Highway 51 you're calling a
23   neutral zone?
24      A.    Yes.
25      Q.    Now, how many times have you been stopped on
```

```
 1      Q.   Now backing up, you called 51 a neutral zone.

 2   What do you mean by neutral zone?

 3      A.   It's not classified -- it's not as to say

 4   classified as a site of a neighborhood where roadblocks

 5   would be sometimes in the neighborhood as opposed to on

 6   the highway.

 7      Q.   Well, let me ask you this:  All these other

 8   highway locations, 16, 43, and 17, would you consider

 9   those neutral zones too?

10      A.   I guess I would have to say yes.

11           MR. GRAVES:  Let's go off the record real

12   quick.

13           (A short break was taken off the record at

14   12:10 p.m.)

15           (Deposition resumed on the record at

16   12:19 p.m.)

17   BY MR. GRAVES:

18      Q.   You told me about meetings you attended before

19   joining this lawsuit with the ACLU.  Have you been to

20   any events hosted by the ACLU?

21      A.   No.

22      Q.   Have you ever been given an award by the ACLU?

23      A.   No.

24      Q.   Do you keep a journal or diary?

25      A.   No.
```

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

LATOYA BROWN; LAWRENCE
BLACKMON; HERBERT ANTHONY
GREEN; KHADAFY MANNING;
QUINNETTA MANNING; MARVIN
MCFIELD; NICHOLAS SINGLETON;
STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER,
individually and on behalf of a class of all
others similarly situated,

    Plaintiffs,

    v.

MADISON COUNTY, MISSISSIPPI;
SHERIFF RANDALL S. TUCKER, in his
official capacity; and MADISON COUNTY
SHERIFF'S DEPUTIES JOHN DOES #1
through #6, in their individual capacities,

    Defendants.

Civil Action No.
3:17-cv-00347-WHB-LRA

**PLAINTIFF NICHOLAS
SINGLETON'S SECOND
SUPPLEMENTAL RESPONSES
AND OBJECTIONS TO
DEFENDANTS' FIRST SET OF
INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Nicholas

Singleton ("Plaintiff"), by and through his attorneys, hereby submits the following supplemental

responses and objections to Interrogatories Nos. 8 and 14 of Defendants' First Set of

Interrogatories served by Defendants on Plaintiffs on September 22, 2017 (collectively, the

"Interrogatories," and each an "Interrogatory").  The Second Supplemental Responses and

Objections set forth below are made in further response to the Interrogatories and supplement the

Responses and Objections previously served by Plaintiff.



## GENERAL OBJECTIONS

Plaintiff hereby incorporates by reference the General Objections set forth in his

Responses and Objections to Defendants' First Set of Interrogatories dated October 20, 2017 and

his Supplemental Responses and Objections to Defendants' First Set of Interrogatories dated

November 14, 2017.  Plaintiff asserts those General Objections as to each Interrogatory, whether

or not such objections are repeated below in response to each individual Interrogatory.

## SPECIFIC SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS
## TO INTERROGATORIES NOS. 8 AND 14

### Interrogatory No. 8:

Please identify and describe in detail the form and substance of any policy or procedure of the
Defendants or the Madison County Sheriff's Department you contend constitutes a policy
sanctioning or encouraging unreasonable searches and seizures or racial discrimination. For each
such policy, please state:

(a)      the name of the policy;

(b)      the terms of the policy;

(c)      the date it went into effect;

(d)      the means by which it went into effect;

(e)      how you learned of such policy; and

(f)      the name, address, and telephone number of the person who provided it to you.

### Supplemental Response to Interrogatory No. 8:

In addition to the General Objections incorporated herein by reference, Plaintiff objects

to Interrogatory No. 8 on the grounds that it seeks information already in the possession, custody,

or control of or that is known to, equally available to, or solely available to Defendants.  Plaintiff

further objects to this Interrogatory on the grounds that it seeks information that is protected

from disclosure by, or disclosure of which is prohibited or restricted under, any privilege or

immunity, including the attorney-client privilege, the work product doctrine, the joint defense

2

privilege, the common interest privilege or any other applicable privilege, immunity or limitation on discovery. Plaintiff also objects to this Interrogatory as vague, overbroad, and unduly burdensome. Plaintiff further objects to this Interrogatory because class certification-related discovery is ongoing and incomplete, and to the extent that this Interrogatory purports to require Plaintiffs to marshal evidence in support of any right or claim. Plaintiff also objects to this Interrogatory as vague, overbroad, and unduly burdensome. Plaintiff further objects to this Interrogatory on the grounds that it requests information regarding counsel's preparation of the case on behalf of the named Plaintiffs and the proposed class, rather than information that is within the personal knowledge of Plaintiff. Any information provided by Plaintiff in response to this Interrogatory is provided subject to and without waiver of these objections and qualifications.

Subject to and without waiver of the foregoing objections, and in addition to the information previously provided by Plaintiff in response to this Interrogatory, Plaintiff states that policies and procedures of Defendants or the Madison County Sheriff's Department that constitute a policy sanctioning or encouraging unreasonable searches and seizures or racial discrimination include, but are not limited to:

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks without appropriate procedural safeguards, including (i) roadblocks conducted using unmarked cars, (ii) roadblocks conducted using cars without emergency lighting engaged and/or using flashlights as a primary light source, (iii) roadblocks conducted by plainclothes or undercover officers, including narcotics officers and members of the "NET Team," "Jump Out Detail," and/or "Apartment Detail," (iv) roadblocks conducted in inadequately lit areas, (v) "roving" roadblocks, and (vi)

3

roadblocks at which officers do not stop every car, but instead use their discretion to only stop certain vehicles.

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks at which officers require persons other than the driver to produce identification or provide other information, or otherwise search or detain persons without reasonable suspicion or probable cause.

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks at which Madison County Sheriff's Department personnel stop, question, detain, and/or search pedestrians in the vicinity of the roadblock without reasonable suspicion or probable cause and/or on the basis of race.

- The Madison County Sheriff's Department's policy, custom, and/or practice of stopping, questioning, detaining, and/or searching pedestrians travelling through majority-Black areas of Madison County without reasonable suspicion or probable cause and/or on the basis of race, including as implemented by narcotics officers and members of the "NET Team," "Jump Out Detail," and/or "Apartment Detail."

- The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks for the purpose of checking for outstanding warrants, including but not limited to as described in the Notices produced at (i) MC T. CHASTAIN LAPTOP 17, (ii) MC MAD. COUNTY MAIN SERVER 1, and (iii) MC – SANDRIDGE DESKTOP 23, as well as the Notice annexed to the Complaint and the incident report produced at Bates numbers MC-RFP-Inc. Rep. 010886-010887.

- The Madison County Sheriff's Department's policy, custom, and/or practice of disproportionately conducting traffic stops in majority-Black areas, conducting pretextual

traffic stops on the basis of race, and disproportionately issuing citations to and making arrests of Black individuals during traffic stops.

- The Madison County Sheriff's Department's policy, custom, and/or practice of discriminatorily arresting, citing, and/or charging Black individuals at higher rates, and/or with greater severity, than white persons engaged in the same or similar conduct.

- The Madison County Sheriff's Department's policy, custom, and/or practice of entering the homes of Black residents of Madison County without warrants or other valid legal justification in the course of serving warrants and/or conducting investigations, and of conducting unreasonable and warrantless searches of such premises in connection therewith.

- The Madison County Sheriff's Department's deliberate indifference to violations of the Fourth and Fourteenth Amendments by its personnel, as demonstrated by (i) the Madison County Sheriff's Department's failure to adequately train, supervise, and/or discipline officers with respect to unconstitutional policing practices and with respect to officers' exercise of discretion in conducting law enforcement activities, (ii) the Madison County Sheriff's Department's failure to adequately investigate or otherwise respond to citizen complaints, (iii) the Madison County Sheriff's Department's failure to maintain data and/or statistics regarding incidents involving the use of force and the racial composition of persons subject to the Madison County Sheriff's Department's policing activities, and (iv) the Madison County Sheriff's Department's culture of racial discrimination and of explicitly or implicitly condoning, authorizing, and/or acquiescing to racially discriminatory attitudes, statements, and actions by Madison County Sheriff's Department personnel.

The policies, customs, and/or practices described above have been identified through analysis of deposition testimony taken in this Action, documents produced by the parties, and documents received in response to requests made under the Mississippi Public Records Act. Plaintiff's investigation, discovery, and preparation of his case and his legal theories, through counsel, are ongoing, and Plaintiff reserves all rights to identify other policies and/or procedures, to clarify or refine Plaintiff's characterizations of the above-mentioned policies and/or procedures, and/or to rely on other or additional evidence concerning any such policies and/or procedures, including as a result of documentary or testimonial evidence that may be adduced in this Action after the date hereof.

**Interrogatory No. 14:**

Please state the questions of law and fact you contend are common to the class your Complaint alleges, and identify any documents related to the common questions of law and fact.

**Supplemental Response to Interrogatory No. 14:**

In addition to the General Objections incorporated herein by reference, Plaintiff objects to Interrogatory No. 14 on the grounds that it seeks information that is protected from disclosure by, or disclosure of which is prohibited or restricted under, the attorney-client privilege, the work product doctrine, the joint defense privilege, the common interest privilege or any other applicable privilege, immunity, or limitation on discovery. Plaintiff further objects to this Interrogatory because class certification-related discovery is ongoing and incomplete, and to the extent that this Interrogatory purports to require Plaintiffs to marshal evidence in support of any right or claim. Plaintiff also objects to this Interrogatory as vague, overbroad, and unduly burdensome. Plaintiff further objects to this Interrogatory on the grounds that it requests information regarding counsel's preparation of the case on behalf of the named Plaintiffs and the proposed class, rather than information that is within the personal knowledge of Plaintiff. Any

The common questions of fact and/or law described above have been identified through analysis of deposition testimony taken in this Action, documents produced by the parties, and documents received in response to requests made under the Mississippi Public Records Act. Plaintiff's investigation, discovery, and preparation of his case and his legal theories, through counsel, are ongoing, and Plaintiff reserves all rights to identify other common questions of law and/or fact, to clarify or refine Plaintiff's characterizations of the above-mentioned common questions of law and/or fact, and/or to rely on other or additional evidence concerning any such common questions of law and/or fact, including as a result of documentary or testimonial evidence that may be adduced in this Action after the date hereof.

Dated: January 16, 2018

By:  /s/ *Joshua Tom*  
Joshua Tom

SIMPSON THACHER & BARTLETT LLP  
Jonathan K. Youngwood (*pro hac vice*)  
Janet A. Gochman (*pro hac vice*)  
Isaac Rethy (*pro hac vice*)  
Kavitha S. Sivashanker (*pro hac vice*)  
Nihara K. Choudhri (*pro hac vice*)  
Jumin Lee (*pro hac vice*)  
Brooke Jarrett (*pro hac vice*)  
425 Lexington Avenue  
New York, NY 10017  
(212) 455-2000  
jyoungwood@stblaw.com  
jgochman@stblaw.com  
irethy@stblaw.com  
kavitha.sivashanker@stblaw.com  
nchoudhri@stblaw.com  
christopherjumin.lee@stblaw.com  
bonnie.jarrett@stblaw.com

AMERICAN CIVIL LIBERTIES UNION  
OF MISSISSIPPI FOUNDATION  
Joshua Tom (Miss. Bar No. 105392)  
233 East Capitol Street  
Jackson, MS 39201  
(601) 354-3408  
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION  
FOUNDATION  
Ezekiel Edwards (*pro hac vice*)  
Jeffery Robinson (*pro hac vice* forthcoming)  
125 Broad Street  
New York, NY 10004  
(212) 549-2610  
eedwards@aclu.org  
jrobinson@aclu.org

*Attorneys for Plaintiff*

10

## Verification

I hereby declare under penalty of perjury that the responses contained in the foregoing Supplemental Responses and Objections to Interrogatories propounded by Defendants, which were prepared with the assistance of counsel, are true and correct to the best of my knowledge, information, and belief.