IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

LATOYA BROWN; LAWRENCE BLACKMON
HERBERT ANTHONY GREEN; KHADAFY MANNING;
QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS
SINGLETON; STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER, individually and on
behalf of a class of all other similarly situated                    **PLAINTIFFS**

v.                                          CIVIL ACTION NO. 3:17-cv-347-WHB-LRA

MADISON COUNTY, MISSISSIPPI; SHERIFF
RANDALL C. TUCKER, in his official capacity; and
MADISON COUNTY SHERIFF'S DEPUTIES JOHN
DOES #1 through #6, in their individual capacities                    **DEFENDANTS**

---

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS
OF PLAINTIFF LAWRENCE BLACKMON**

---

Defendants Madison County, Mississippi, and Sheriff Randall C. Tucker, by and through

counsel, file the following Memorandum in support of their motion for summary judgment on

the individual and class-based claims of Plaintiff Lawrence Blackmon:

## **INTRODUCTION**

Lawrence Blackmon filed this action along with nine other plaintiffs alleging that the

Madison County Sheriff's Department ("MCSD") has a top-down policy of intentional race

discrimination.  Blackmon's claims are based on two primary allegations: (1) that the MCSD

entered and searched his home on December 8, 2015, to arrest his cousin, Herbert Anthony Green;[1]

and (2) that Blackmon has been stopped by MCSD deputies at safety checkpoints (or roadblocks)

---

[1] Green is also a named as plaintiff in this lawsuit but has indicated that he no longer wants to participate.
A motion to dismiss his claims for failure to prosecute is currently pending.  [Dkt. # 182].  Green was not
at the home on December 8, 2015, and his claims are not related to the events that day.

in Madison County.  *See* Complaint [Dkt. # 1 ¶¶ 191-204].  Blackmon alleges that these alleged

acts constitute Fourth Amendment violations intentionally committed against him because he is

Black, and he further alleges that the MCSD's purported policy of intentional race discrimination

violates 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  He

seeks injunctive and declaratory relief on behalf of himself and a purported class of individuals he

defines as:

> People who (1) are, or who appear to be, Black and those in their company, and (2)
> were, are, or will be in Madison County, and (3) were, are, or will be, subject to the
> MCSD's policy, custom, and/or practice of systematically executing unreasonable
> searches and seizures of person, homes, cars, and property on the basis of race."

[Dkt. # 1 ¶ 300].

Summary judgment should be granted on both Blackmon's § 1983 and Title VI claims.  It

is undisputed that the officers who entered his home had a valid arrest warrant listing Blackmon's

home as the residence where Green might be found.  This authorized the deputies to enter the home

to conduct a search for Green.[2]  Further, Blackmon offers no evidence whatsoever to support his

claim that the alleged entry into his home was the result of a top-down policy of intentional race

discrimination.  He likewise offers no evidence to support his allegation that the checkpoints where

he was stopped constituted a Fourth Amendment violation, much less that they were established

as part of a top-down policy of intentional race discrimination.[3]

---

[2] Although Blackmon alleged in ¶ 197 of his unsworn complaint [Dkt. # 1] that the officer searched areas too small to hold a person, there is no evidence to support this allegation, and Blackmon did not testify that they conducted such a search in his deposition.

[3] Blackmon has abandoned his claim that the MCSD only sets up checkpoints in predominantly Black neighborhoods, which he first asserted in ¶¶ 4 and 203 of his complaint [Dkt. # 1], but did not include in the list of MCSD policies he claims sanction or encourage" unreasonable searches and seizures or racial discrimination" when supplementing his responses to an interrogatory inquiring about these policies.  *See* Blackmon's Third Supplemental Response to Interrogatory No. 8 of Defendants' First Set of Interrogatories, (**Exhibit 1**).

## FACTUAL BACKGROUND

The pertinent facts regarding the December 2015 home entry are as follows.  On December 7, 2015, the Madison County Chancery Court issued an arrest warrant for Herbert Anthony Green. *See* Arrest Warrant (**Exhibit 2-A**).  The warrant stated that Green "may be found at the following address: 320 Martin Luther King Dr. in Canton, MS 39046."  *Id.*  Blackmon testified in his deposition that 320 Martin Luther King Drive is a home owned by Blackmon's grandmother where he and other relatives, including Green, occasionally live.  *See* Blackmon's deposition (**Exhibit 3**), at pp. 74, 76, 120.

On the morning of December 8, 2015, Deputy Scott McDonald and Lieutenant Jeff Waldrop of the MCSD went to 320 Martin Luther King Drive to execute the arrest warrant on Green.  *See* Affidavit of Scott McDonald (**Exhibit 2**), at ¶ 2.  McDonald had never met Green before, but he confirmed before heading out that 320 Martin Luther King Drive was Green's known address.  *Id.* at ¶ 3.

When McDonald and Waldrop arrived at the residence, McDonald knocked on the door, and Blackmon asked, "Who is it?"  *Id.* at ¶ 4; Exhibit 3, at pg. 74.  McDonald responded by telling Blackmon to come to the front door.  *See* Exhibit 2-A, at ¶ 4; Exhibit 3, at pg. 74.  McDonald testified via affidavit that Blackmon came to the door, opened it briefly and then slammed it shut. *See* Exhibit 2-A, at ¶ 5.  Believing Blackmon to be Green, McDonald told Blackmon through the closed door that he had a warrant for his arrest.  *Id* at ¶ 6.  Blackmon came to the front door and, with the door still closed, asked to see the warrant, which McDonald then held up to the window next to door.  *Id.* at ¶¶ 7-8; Exhibit 3, at pg. 75.[4]  McDonald then asked Blackmon again to open

---

[4] Blackmon testified that the officer held up a "piece of paper," but he admitted that he could not deny that it was a warrant because he never saw what was on it. Exhibit 3, at pp. 75, 115-119.  McDonald's testimony that what he held up to the window was the arrest warrant is therefore undisputed.  Further, although Blackmon testified that he could not read the warrant through the window, it is undisputed that he never

the door.  *See* Exhibit 3, at 75.  When Blackmon refused, McDonald attempted to make a forced entry believing Blackmon was Green.  *Id.*; Exhibit 2, at ¶ 10.  Once inside, the deputies told Blackmon to get on the ground, handcuffed him, and questioned him about his identity.  *See* Exhibit 3, at pp. 75-76.

While the deputies were questioning Blackmon, one of Blackmon's cousins, Darrell Evans, came into the front room holding a gun, which the officers temporarily confiscated until leaving the home.  *Id.* at 76, 87-89; MCSD Incident Report (**Exhibit 2-B**), at pg. 2.  According to Blackmon, the deputies searched a bedroom to see if anyone else was in the house as Blackmon and Evans stayed in the front room.  *See* Exhibit 3, at pp. 76, 90.  Blackmon testified that the deputies then returned to the front room and asked Blackmon where his identification was located.  *Id.* at 76-77, 94.[5]  After confirming that Blackmon was not Green, the deputies attempted to remove the handcuffs from Blackmon but could not immediately locate the correct key.  *Id.* at 94; Exhibit 2-B, at pg. 2.[6]  After trying three different keys, officers successfully removed the handcuffs and left the residence.  *Id.*; Exhibit 2-B, at pg. 2.  According the Blackmon, the whole incident lasted approximately 15 to 20 minutes from the time the deputies first arrived until the time they left.  *See* Exhibit 3, at pg. 93.

Green was arrested at the same address (320 Martin Luther King Drive) on the same arrest warrant by the Canton Police Department approximately one month later.  *See* Exhibit 2, at ¶ 15; Exhibit 2-A (showing the return of service date as January 5, 2016).

---

asked whose name was on the warrant and did not tell the deputies at that time that he was not Green.  *See* Exhibit 2, at ¶ 9.

[5] Blackmon testified that he made a brief phone call lasting "[m]aybe 30 seconds" to his father Ed Blackmon's law firm while the officers were checking to see if someone was in the bedroom.  *Id.* at 91-93.

[6] Blackmon admitted that the officers moved quickly to locate the correct key, but he told them "not to rush" and not to leave until his lawyer/father arrived.  *See* Exhibit 3, at pp. 94-95.

## LEGAL STANDARD

"The moving party bears the initial burden of showing that there is no genuine issue for trial; it may do so by pointing out the absence of evidence supporting the nonmoving party's case." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (internal quotations omitted). If the moving party meets its burden, "the nonmoving party who has the burden of proof at trial must come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant." *Id.*

## LEGAL ARGUMENT

### I.   SUMMARY JUDGMENT SHOULD BE GRANTED ON BLACKMON'S CLAIMS ARISING FROM THE EXECUTION OF THE ARREST WARRANT.

#### A.   There was no Fourth Amendment violation.

Summary judgment should be granted on Blackmon's claims arising from the alleged unlawful entry because there is no evidence of a Fourth Amendment violation.  It is undisputed that the officers had a valid arrest warrant, which gave them authority to enter the home.  Further, because the officers reasonably believed Blackmon was the subject of the arrest warrant (*i.e.,* Green), the temporary detention of Blackmon was wholly within the bounds of the Fourth Amendment.

The Supreme Court has held that "an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest."  *Steagald v. United States*, 451 U.S. 204, 221 (1981).  In this case, it is undisputed that McDonald and Waldrop had an arrest warrant for Green, which specifically stated that Green "may be found at the following address: 320 Martin Luther King Dr. in Canton, MS 39046."  Exhibit 2-A.  It is also undisputed, and in fact admitted by Blackmon, that

Green sometimes lived at that address.  *See* Exhibit 3, at pg. 120.  Moreover, before attempting to execute the warrant, McDonald confirmed that 320 Martin Luther King Drive was Green's known address.  *See* Exhibit 2, at ¶ 3.  This gave the officers authority to enter the home to effect Green's arrest.  *Steagald*, 451 U.S. at 221.  Their entry into the home to search for and arrest Green, therefore, did not constitute a Fourth Amendment violation.  *Id.*

Likewise, McDonald's decision to temporarily handcuff Blackmon until he could confirm Blackmon's identify also complied with the Fourth Amendment.  The Supreme Court has long held that, "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 802 (1971) (internal quotation marks omitted).  The Fifth Circuit has followed suit holding that "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even if the wrong person is arrested, if the arresting officer had a reasonable, good faith belief that he was arresting the correct person."  *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994).

As stated above, it is undisputed that McDonald had a valid warrant for Green's arrest at the address where Blackmon was located.  Further, due to Blackmon's admitted refusal to open the door or to identify himself even after being shown the warrant, McDonald reasonably believed Blackmon was Green.  *See* Exhibit 2, at ¶ 10.  Thus, McDonald's temporary detention of Blackmon was not a violation of the Fourth Amendment.  *See Hill*, 401 U.S. at 802-04 (holding that the Fourth Amendment was not violated even though the person arrested told officers he was not the suspect they were looking for and produced identification to prove it); *Blackwell*, 34 F.3d at 304 (finding no Fourth Amendment violation in mistaken identity case even though person arrested gave officer her identification showing that she was not the person named in the arrest warrant).

Summary judgment should be granted on Blackmon's home entry-related claims for this reason alone.

> **B.** **Blackmon offers no evidence to support his allegation that the entry into his home was the result of a top-down policy of race discrimination.**

Summary judgment should also be granted on Blackmon's home entry-related claims for failure to prove an equal protection violation. To succeed on his claim under § 1983 or Title VI, Blackmon must prove intentional race discrimination. *See* Alexander *v. Sandoval,* 532 U.S. 276, 280 (2001) (holding that Title VI requires proof of intentional discrimination); *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997) ("In order to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race."); *Vera v. Tue*, 73 F.3d 604, 609 (5th Cir.1996) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."). He fails to meet this burden.

Blackmon alleges that the entry into his home was the result of "a **coordinated top-down program** of methodically targeting Black individuals for suspicionless searches and seizures." [Dkt. # 1 ¶ 1]. However, he offers no evidence to support his allegation that the MCSD in fact has a top-down policy of race discrimination, much less that the alleged entry into his home was the result of such a policy. His own subjective belief that such a policy exists or that the alleged entry into his home was the result of intentional race discrimination, without more, is insufficient to defeat summary judgment. *Laborde v. City of Houston*, 31 F. App'x 151 (5th Cir. 2001) ("A plaintiff's subjective belief of race discrimination cannot alone establish that he has been a victim of intentional discrimination.") (citing *Ray v. Tandem Computers, Inc.*, 63 F .3d 429, 435 (5th

Cir.1995)).  This serves as additional ground for granting summary judgment on Blackmon's §

1983 and Title VI claims.

## II.    BLACKMON'S SAFETY CHECKPOINT-RELATED CLAIMS HAVE BEEN ABANDONED AND, REGARDLESS, LACK EVIDENTIARY SUPPORT.

Blackmon initially alleged in his complaint that he has been stopped at safety checkpoints

(or roadblocks) conducted by the MCSD only in predominantly Black neighborhoods, and that he

has "never seen" a similar checkpoint conducted by the MCSD outside of these areas.  [Dkt. # 1 ¶

203].  He later abandoned that theory in his supplemental interrogatory answers.  *See supra* n.1.

Summary judgment should be granted on his safety checkpoint-related claims for this reason alone.

Summary judgment can, and should, also be granted because Blackmon presents no

evidence supporting his allegation that the safety checkpoints at which he was stopped constituted

a violation of the Fourth Amendment intentionally committed against him because of his race.

The law is clear that "discretionless stops" at safety checkpoints "designed to check a driver's

license and registration are permissible."  *United States v. Green*, 293 F.3d 855, 858 (5th Cir.

2002).  Further, once a vehicle is stopped, officers "can request a driver's license, insurance papers,

vehicle registration, run a computer check thereon, and issue a citation" without running afoul of

the Fourth Amendment.  *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993).  Blackmon

admits that the checkpoints where he was stopped complied with these standards.

Blackmon testified that the procedure followed by MCSD officers at every checkpoint

where he stopped was "pretty much the same."  Exhibit 3, at pg. 146.  A deputy would "come to

the window," ask for his "license, maybe [his] registration or . . . insurance or whatever," and

would allow him to "pass through" after he showed them the requested documents.  *Id.* at 146-

147.  This is exactly what the Fifth Circuit has held the officers are allowed to do under the Fourth Amendment.  *See Green*, 293 F.3d at 858.

Furthermore, Blackmon presents no evidence whatsoever to support his claim that the MCSD sets up its roadblocks in a racially discriminatory manner.  He presents no evidence to support his claim that the checkpoints are set up only in predominantly Black neighborhoods, and his "subjective belief of race discrimination cannot alone establish that he has been a victim of intentional discrimination."  *Laborde*, 31 F. App'x 151 (citing *Ray*, 63 F .3d at 435).

<u>**CONCLUSION**</u>

For the reasons stated above, summary judgment should be granted on all of Blackmon's claims.

Respectfully submitted this 14th day of March, 2018.

> **MADISON COUNTY, MISSISSIPPI and SHERIFF RANDALL C. TUCKER, IN HIS OFFICIAL CAPACITY**
>
> BY:     *s/ James E. Graves, III*_____
>         Michael B. Wallace (MSB #6904)
>         Charles E. Ross (MSB #5683)
>         James E. Graves, III (MSB #102252)
>         Charles E. Cowan (MSB #104478)
>         WISE CARTER CHILD & CARAWAY, P.A.
>         Post Office Box 651
>         Jackson, Mississippi  39205-0651
>         Telephone: 601-968-5534
>         Facsimile: 601- 944-7738
>         mbw@wisecarter.com
>         cer@wisecarter.com
>         jeg@wisecarter.com
>         cec@wisecarter.com
>
>         and

T. Russell Nobile (MSB #100682)
WISE CARTER CHILD & CARAWAY, P.A.
2510 14th Street, Suite 1125
Gulfport, Mississippi  39501
Telephone: 228-867-7141
Facsimile: 228-867-7142
trn@wisecarter.com

OF COUNSEL:

Rebecca B. Cowan (MSB #7735)
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Dr.
Jackson, Mississippi  39232
P.O. Box 750
Jackson, Mississippi  39205-0750
Telephone: 601-969-1010
Facsimile:  601-969-5120
bcowan@curriejohnson.com

Katie Bryant Snell (MSB# 103607)
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi  39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

J. Lawson Hester
PETTIS, BARFIELD & HESTER, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi  39211
Telephone: 601-987-5300
lhester@pbhfirm.com

## CERTIFICATE OF SERVICE

I, James E. Graves, III, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record.

This the 14th day of March, 2018.

s/ James E. Graves, III\
JAMES E. GRAVES, III