```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                  NORTHERN DIVISION
```

**LATOYA BROWN, ET AL.**                                                **PLAINTIFFS**

**VS.**                                 **CIVIL ACTION NO. 3:17-cv-347-WHB-LRA**

**MADISON COUNTY, MISSISSIPPI, ET AL.**                                 **DEFENDANTS**

### OPINION AND ORDER

This cause is before the Court on three Motions that have been filed by Defendants in this civil rights action. Having considered the pleadings, the attachments thereto, as well as supporting and opposing authorities, the Court finds:

The Motion of Defendants to Strike certain allegations in Plaintiffs' Complaint is not well taken and should be denied.

The Motions of Defendants to Dismiss the claims of Plaintiffs Marvin McField and Herbert Anthony Green for lack of prosecution are well taken and should be granted. The claims of these plaintiffs will, however, be dismissed without prejudice.

### I.   Factual Background and Procedural History

Plaintiffs in this civil action are all black residents of Madison County, Mississippi ("Madison County"). They allege that they, and other black Madison County residents, have been methodically targeted by the Madison County Sheriff's Department ("MCSD") based on the color of their skin. Specifically,

Plaintiffs allege that the MCSD utilizes a "Policing Program", which allegedly implements the following practices:

> vehicular roadblocks designed and placed to target Black individuals for highly intrusive, pretextual, and suspicionless searches and seizures in Madison County's majority-Black towns, residential neighborhoods, and business districts;
>
> pedestrian "checkpoints" designed to target Black individuals for suspicionless searches and seizures, including while entering or exiting predominantly-Black housing complexes;
>
> warrantless and consentless searches of the homes of Black residents, sometimes accompanied by suspicionless searches and seizures of all persons within; and
>
> "Jump Out" patrols of plainclothes deputies deployed in unmarked cars in Black communities to stealthily and aggressively target Black individuals for unreasonable searches and seizures.

Compl. ¶ 4. Plaintiffs claim that these practices violate their constitutional rights under the Fourth and Fourteenth Amendments as well as their civil rights.

Based on these and other allegations, Plaintiffs filed a Complaint in this Court against Madison County, and its Sheriff, Randall S. Tucker ("Tucker"), seeking declarative, injunctive, and compensatory relief for the alleged violations of their constitutional and civil rights under 42 U.S.C. § 1983 and 42 U.S.C. § 2000(d).[1] Plaintiffs also request that they be permitted to proceed as a class consisting of "People who (1) are, or who

---

[1] As Plaintiffs have alleged claims arising under federal law, the Court may exercise federal subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331.

2

appear to be, Black and those in their company, and (2) were, are, or will be in Madison County, and (3) were, are, or will be, subject to the MCSD's policy, custom, and/or practice of systematically executing unreasonable searches and seizures of persons, homes, cars, and property on the basis of race." Compl., ¶ 300.

Relevant to the matters pending before the Court, the following allegations are contained in Plaintiffs' Complaint:

> 16. For at least a decade, the Madison County Board of Supervisors has known that MCSD systematically targets the Black community for unreasonable searches and seizures. The Madison County Board of Supervisors has also been aware of a pattern of constitutional violations suffered by the Black residents of Madison County as a direct result of the MCSD's Policing Program.
>
> 17. However, the Madison County Board of Supervisors has been deliberately indifferent to these constitutional violations by failing to investigate the MCSD's racially discriminatory policing practices and/or its pattern of conducting unreasonable searches and seizures, and by failing to require the MCSD to take any actions to: (a) establish policies that prohibit racially discriminatory policing practices and/or unreasonable searches and seizures; (b) screen, train, and supervise MCSD deputies, employees, and agents to prevent MCSD personnel from employing unconstitutional racially discriminatory policing practices and/or conducting unreasonable searches and seizures; (c) monitor MCSD deputies, employees, and agents to ensure that their policing practices comply with constitutional requirements; and/or (d) discipline MCDS deputies, employees, and agents who employ racially discriminatory policing practices and/or conduct unreasonable searches and seizures.
>
> ...
>
> 41. [T]he "chief policy making and administrative body" of the County is, and at all times relevant hereto has been, the Madison County Board of Supervisors ..., which

3

describes itself as "the one body which supervises almost everything that goes on in county government." The Board of Supervisors is comprised of five elected Supervisors, one from each of the five districts in Madison County. (quoting *Board of Supervisors*, Madison County, Mississippi, http://madison-co.com/elected-offices/board-of-supervisors)(last visited May 5, 2017).

....

119.   In July 2006, Canton resident Lauren Elaine attended a Madison County Board of Supervisors meeting on behalf of the Concerned Citizens of Canton. Sheriff [Toby] Trowbridge was present at the meeting, but he refused to meet with representatives from the Concerned Citizens of Canton. Sheriff Trowbridge denied the use of racial profiling, and stated that the MCSD would continue using roadblocks as a policing practice.

120.   On information and belief, the Madison County Board of Supervisors took no action to investigate or address the Concerned Citizens of Canton's claims. However, for a period of time after the petition was submitted, there was a noticeable decrease in roadblocks in Canton, but a corresponding uptick in Flora roadblocks.

121.   According to a July 2007 article in The Clarion-Ledger, District 5 Supervisor Paul Griffin ("Supervisor Griffin"), who is Black, said that many people in Madison County were aware that the MCSD was perceived as targeting Black community members, and had tried to get Sheriff Trowbridge to meet with his critics. However, Supervisor Griffin stated that "[t]here is a limit to what the Board of Supervisors can do because the [S]heriff is elected by the people to do his job."

....

124.   In November 2007, Sheriff Trowbridge denied charges of racial profiling at a meeting of the Madison County Board of Supervisors. Three white members of the Board of Supervisors expressed their support for Sheriff Trowbridge during the meeting. However, former District 4 Supervisor Karl Banks ("Supervisor Banks"), who is Black, expressed his disappointment at the way the Board of Supervisors had addressed the issue of racial profiling. Then-Supervisor Banks stated that he routinely fielded complaints about the MCSD, and said that Sheriff

4

Trowbridge should work with people to change the department's image. "The conversation today was about a feeling in the community.... I know, as an African American, that there is a real feeling in the community that the [Sheriff's] department is discriminating against people."

125. None of the minutes for the Board of Supervisors' meetings reference claims or discussions of racial profiling. However, minutes from the November 19, 2007 Board of Supervisors meeting indicate[] that the Board authorized Sheriff Trowbridge to use $50,000 in grant funds for "public safety checkpoints." Because the MCSD uses the terms "roadblock" and "checkpoint" interchangeably, these "public safety checkpoints" may have encompassed the racially discriminatory roadblocks described herein.

....

169. The Board of Supervisors serves as "the chief policy making and administrative body of Madison County. By its own description, the Board of Supervisors is "the one body which supervises almost everything that goes on in county government."

170. The Board of Supervisors is comprised of five elected Supervisors, one from each of the five districts in Madison County. "[T]ogether the members set policy" for Madison County and "are expected to look after the good of the county as a whole."

171. For at least a decade, the Madison County Board of Supervisors has known that the MCSD systematically targets the Black community for unreasonable searches and seizures:

a) In 2006, the Concerned Citizens of Canton presented the Board of Supervisors with a petition bearing 664 signatures demanding an end to "frequent roadblocks in the predominantly black neighborhoods," "the excessive force and brutality administered by police officers," and "racial profiling."

b) In July 2006, representatives of the Concerned Citizens of Canton attended a Board of Supervisors meeting to raise these concerns. Sheriff Trowbridge was present at the meeting but refused to meet with the

5

>  Concerned Citizens of Canton. Significantly, Sheriff Trowbridge stated that the MCSD would not end the use of roadblocks.
>
>  c)   In November 2007, Sheriff Trowbridge addressed charges of racial profiling during a Board of Supervisors meeting.  He claimed that the MCSD did not engage in racial profiling.
>
>  172.  The Board of Supervisors is also presumed to have knowledge of the allegations of Mr. Gibson's complaint, and the commonly-known harms suffered by the Black residents of Madison County as a result of these practices.
>
>  173. Although the Board of Supervisors has been aware of a pattern of constitutional violations suffered by the Black residents of Madison County, the Board of Supervisors has been deliberately indifferent to these violations. The Board of Supervisors has failed to investigate the MCSD's racially discriminatory policing practices and/or its pattern of conducting unreasonable searches and seizures, and has also failed to require the MCSD to take any actions to: (a) establish policies that prohibit racially discriminatory policing practices and/or unreasonable searches and seizures; (b) screen, train, and supervise MCSD deputies, employees, and agents to prevent MCSD personnel from employing unconstitutional racially discriminatory policing practices and/or conducting unreasonable searches and seizures; (c) monitor MCSD deputies, employees, and agents to ensure that their policing practices comply with constitutional requirements; and/or (d) discipline MCSD deputies, employees, and agents who employ racially discriminatory policing practices and/or conduct unreasonable searches and seizures.
>
>  174.  This "policy of inaction" by the Madison County Board of Supervisors is the functional equivalent of a decision by Madison County itself to violate the Constitution. By failing to take any steps to investigate or remedy the MCSD's systematic targeting of Black residents for unreasonable searches and seizures, the Board of Supervisors has implicitly sanctioned and endorsed the Policing Program.

Comp., paragraphs as referenced (alterations in original)(most

citations omitted). Defendants have now moved to strike the above quoted paragraphs in the Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. They have also moved for the dismissal of Plaintiffs Marvin McField and Herbert Anthony Green from this action on the grounds that both failed to respond to discovery requests and to appear at a duly noticed deposition. The Court now considers the Motions before it.

## II.  Discussion

### A.  Motion to Strike

Defendants have moved to strike the above quoted allegations in Plaintiffs' Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Under Rule 12(f), "the court may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Motions to strike, however, are generally viewed with disfavor and infrequently granted. See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982)("[M]otions to strike ... are generally disfavored."); Pan Am. Life Ins. Co. v. Blanco, 311 F.2d 424, 428 n.13 (5th Cir. 1962)("Motions to strike are not favored. Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the

7

matter may raise an issue, the motion should be denied.")(citations omitted). Thus, "to succeed on a motion to strike, the movant must show 'that the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration ... and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party.'" United States v. Montelongo, 2008 WL 631245, at *1 (N.D. Tex. Mar. 3, 2008)(quoting Federal Deposit Ins. Corp. v. Niblo, 821 F.Supp. 441, 449 (N.D. Tex. 1993)). As explained by United States District Judge Tom S. Lee:

> Motions to strike matters from pleadings, pursuant to Rule 12(f), are disfavored by the courts and should not be granted, even in cases where averments complained of are literally within provisions of federal rule providing for striking of redundant, immaterial, impertinent or scandalous matter, in absence of demonstration that allegations attacked have no possible relation to controversy and may prejudice other party.

McCullough v. Owens Enters., Inc., 2008 WL 2374245, at *3 (S.D. Miss. June 5, 2008)(alterations in original)(citations omitted).

Defendants argue that the subject allegations should be struck from the Complaint because the Madison County Board of Supervisors does not possess any authority over the law enforcement activities about which Plaintiffs complain but, instead, the alleged activities "are solely within the province of Sheriff Tucker" under Mississippi law. Mot. to Strike [Docket No. 18], ¶ 4. Further, Defendants argue that the allegations should be struck because they "call into question the motives of elected officials (the Board) who have not been named as parties and whose motives have no

8

bearing on law enforcement in Madison County." Id. at ¶ 4.

Although the Madison County Board of Supervisors was not named as a party in this case, Madison County, which acts through the Board of Supervisors, has been so named. Having reviewed the Complaint, the Court finds that there are both fact and matter-of-law issues regarding whether all of the activities about which Plaintiffs complain are/were "solely within the province of Sheriff Tucker." Based on this finding, the Motion to Strike must be denied, and the issues resolved on their merits. See Augustus v. Board of Pub. Instruction of Escambia Cty., Fla., 306 F.2d 862, 868 (5th Cir. 1962)(explaining that disputed questions of fact cannot, and "substantial questions of law" should not, be decided on a motion to strike. Instead, courts are instructed to "defer action on the motion and leave the sufficiency of the allegations for determination on the merits.").

**B.  Motions to Dismiss**

Defendants have moved for the dismissal of the claims alleged by Marvin McField ("McField") and Herbert Anthony Green ("Green") pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. This Rule provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule – except one for lack of jurisdiction, improper venue, or

9

>    failure to join a party under – operates as an
>    adjudication on the merits.

Defendants argue that McField and Green have failed/refused to prosecute their claims as evidenced by their failure/refusal to (1) respond and/or supplement their discovery responses and (2) appear at at least one duly noticed deposition. Defendants request that McField's and Green's claims be dismissed with prejudice. In response, Plaintiffs do not oppose the dismissal of McField's or Green's claims, but argue that the dismissal should be made without prejudice.

Having considered the pleadings, the Court agrees that McField's and Green's claims should be dismissed under Rule 41(b) for lack of prosecution. The Court additionally finds that because dismissal with prejudice is considered "an extreme sanction", and the Court cannot presently determine whether lesser sanctions would have prompted either plaintiff to prosecute his claims[2], see Berry v. CIGNA/RSI-CIGNA, 975 F.2d 1188, 1191 (5th Cir. 1992), that the dismissal of the claims should be made without prejudice.

---

[2] The United States Court of Appeals for the Fifth Circuit "will affirm dismissals with prejudice for failure to prosecute only when (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile." Berry, 975 F.2d at 1191. Here, there has been no request for lesser sanctions and, therefore, the Court cannot determine the effect, if any, they would have had in this case.

### III.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendants to Strike [Docket No. 18] is hereby denied.

IT IS FURTHER ORDERED that the Motions of Defendants to Dismiss [Docket Nos. 180 and 182] are hereby granted.  The claims alleged by Plaintiffs Marvin McField and Herbert Anthony Green are hereby dismissed, without prejudice.

SO ORDERED this the 16th day of March, 2018.

s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE
