## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**LATOYA BROWN; LAWRENCE BLACKMON**
**HERBERT ANTHONY GREEN; KHADAFY MANNING;**
**QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS**
**SINGLETON; STEVEN SMITH; BESSIE THOMAS; and**
**BETTY JEAN WILLIAMS TUCKER, individually and on**
**behalf of a class of all other similarly situated**                    **PLAINTIFFS**

**v.**                                    **CIVIL ACTION NO. 3:17-cv-347-WHB-LRA**

**MADISON COUNTY, MISSISSIPPI; SHERIFF**
**RANDALL C. TUCKER, in his official capacity; and**
**MADISON COUNTY SHERIFF'S DEPUTIES JOHN**
**DOES #1 through #6, in their individual capacities**                    **DEFENDANTS**

---

## DEFENDANTS' RESPONSE TO PLAINTIFFS' EXPEDITED
## MOTION FOR STATUS CONFERENCE

---

Defendants Madison County, Mississippi, and Sheriff Randall C. Tucker, by and through counsel, file the following response to Plaintiffs' Expedited Motion for Status Conference [Dkt # 245]:

1.      Plaintiffs request a status conference in this case for the purpose of allowing them to make an *ore tenus* motion to strike Defendants' motions to deny class certification and for summary judgment, as well as to place future limits on Defendants' right to seek relief under the Federal Rules of Civil Procedure.[1]  Plaintiffs argue that Defendants' motions should be stricken because they are not allowed under those Rules.  This is simply not true; Defendants' motions are indeed authorized by Rules 23 and 56.  Nothing in the Case Management Order [Dkt. # 30] or any

---

[1] *See* Plaintiffs' Motion, at ¶ 8.

other order of this Court limits in any way Defendants' rights under those Rules.  Plaintiffs' request

for a status conference, as well as their various requests, should therefore be denied.

       2.     Federal law is clear that a defendant may file a motion to deny class certification

regardless of when or if the plaintiff moves to certify the class.  *See Vinole v. Countrywide Home*

*Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009) ("[W]e conclude that Rule 23 does not preclude a

defendant from bringing a 'preemptive' motion to deny certification."); *Cook Cty. Coll. Teachers*

*Union, Local 1600, Am. Fed'n of Teachers, AFL-CIO v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972)

("One opposing a class action may move for an order determining that the action may not be

maintained as a class suit."); *Brown v. Milwaukee Spring Co.*, 82 F.R.D. 103, 104 (E.D. Wis. 1979)

("While the plaintiff has the burden of establishing her right to maintain a class action, the

defendants may test the propriety of the action by means of a motion for denial of class

certification."); *Fedotov v. Peter T. Roach & Assocs., P.C.*, 354 F. Supp. 2d 471, 478 (S.D.N.Y.

2005) ("The defendant need not wait for the plaintiff to act, however.  The defendant may move

for an order denying class certification."); 7AA Fed. Prac. & Proc. Civ. § 1785 ("Either plaintiff

or defendant may move for a determination of whether the action may be certified under Rule

23(c)(1).").  Indeed, courts in this Circuit have routinely considered, and granted, motions to deny

class certification.  *See*, *e.g.*, *Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 530 (N.D. Tex. 2005);

*Chevron USA, Inc. v. Vermilion Par. Sch. Bd.*, 215 F.R.D. 511 (W.D. La. 2003); *In re FIRSTPLUS*

*Fin., Inc.*, 248 B.R. 60, 78 (N.D. Tex. 2000); *Abernathy v. Bausch & Lomb Inc.*, 97 F.R.D. 470,

472 (N.D. Tex. 1983).  Thus, Defendants acted wholly within the Rules by filing their motion to

deny class certification.

       3.     Plaintiffs argue in ¶ 6 that Defendants, by filing their motion to deny certification

instead of including their arguments in a response to Plaintiffs' motion to certify, could potentially

exceed the 70-page limit set by this Court for Defendants to oppose Plaintiffs' class certification motion.  This argument does not justify striking the Defendants' motion.  First, as explained above, Defendants were entitled to file their own motion to deny class certification regardless of whether Plaintiffs filed a motion to certify.  Second, Plaintiffs have not been prejudiced by the filing of the Defendants' motion because Local Rule 7(b)(5) allows them an additional thirty-five (35) pages to respond to any arguments raised in Defendants' motion.  Third, and finally, it must be noted that the brief Defendants filed to deny class certification is only eight (8) pages long, excluding signatures.  Thus, even if (as Plaintiffs desire), this Court were to count the Defendants' brief against the 70-page limit this Court has already set for Defendants to oppose Plaintiffs' class certification motion, Defendants would still have sixty-two (62) pages to oppose class certification. Any argument about Defendants' exceeding the page limitations is therefore extremely premature. Plaintiffs' request to strike Defendants' motion to deny class certification should therefore be denied.

4.      Plaintiffs' request to strike Defendants' motions for summary judgment should also be denied.  Plaintiffs' argue that Defendants' filing of these motions constitutes a "procedural impropriety" because this Court has not yet ruled on the issue of class certification.[2]  This argument lacks merit.  Rule 56 specifically authorizes any party to "file a motion for summary judgment **at any time** until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b) (emphasis added). This means a motion for summary judgment may be filed "as early as the commencement of the action."  Fed. R. Civ. P. 56 cmt. 2009 Amendment.  Thus, Defendants acted wholly within the bounds of the Rules by filing their motions when they did.

---

[2] *See* Plaintiffs' Motion, at ¶ 8.

5.      Furthermore, the Fifth Circuit has made clear that in many cases it is prudent for district courts to consider summary judgment motions before ruling on class certification to prevent defendants from being "subject to harassing expense or adverse publicity attendant to a class suit if plaintiffs' claims are not meritorious."  7AA Fed. Prac. & Proc. Civ. § 1785.  *See*, *e.g.*, *Camp v. Allstate Ins. Co.*, 100 F.3d 953 (5th Cir. 1996) ("Plaintiffs first assert that . . . the district court erred in dismissing the instant case on its merits without first determining whether the claim could be certified as a class action.  We disagree."); *Floyd v. Bowen*, 833 F.2d 529, 534–35 (5th Cir. 1987) ("[T]he class action litigation may be halted by a Rule 12 motion to dismiss or by a Rule 56 motion for summary judgment.  We therefore conclude that the district court did not abuse its discretion in failing to rule on the class certification issue because it ruled for the Secretary on the merits of its summary judgment motion.") (citing 7 Fed. Prac. & Proc. Civ. § 1785); *Whiting v. Kelly*, 255 F. App'x 896, 900 (5th Cir. 2007) ("The district court's failure to revisit the class certification issue prior to granting summary judgment was not an abuse of discretion because the grant of summary judgment for the defendants terminated the suit on the merits."); *Allen v. Johnson*, 194 F. App'x 204, 205 (5th Cir. 2006) ("We conclude that the district court did not abuse its discretion by granting summary judgment without re-examining the certification issue.").  In this case, Plaintiffs' own admissions prove that their claims are not meritorious.

6.      Plaintiffs complain in ¶ 1 of their motion that Defendants' motions are inconsistent with the Case Management Order and the positions taken by Defendants at the case management conference, but that is simply not true.  In order to determine whether Plaintiffs are proper representatives of the proposed class, Defendants had every right to investigate whether their claims were typical of the claims of their purported class.  Early in discovery, Defendants propounded to each Plaintiff the following interrogatory:

Interrogatory No. 15:

State the evidence supporting each element of each claim you intend to present, and explain why your claim is typical of the claims of each class member you propose to represent.

Instead of providing sworn evidence delineating and supporting their claims, every Plaintiff simply referred to the allegations of the complaint. Typical is the response of Betty Jean Williams Tucker, whose supplemental responses are being filed under seal as Exhibit 1, because Plaintiffs have declared them confidential. Rather than engage in endless motion practice on the sufficiency of that answer, Defendants scheduled Ms. Tucker's deposition and discovered that the events of which she complained happened more than five years ago. Nothing in the CMO or in any Rule of Court requires Defendants to ignore the statute of limitations, so they moved for summary judgment [Dkt. # 219] to call the deficiency to this Court's attention. A similar process of perfectly valid discovery similarly disclosed fatal defects in the claims of other Plaintiffs.

7.      Plaintiffs can hardly contend that their own discovery has been limited to class certification issues.[3]  For example, their first set of interrogatories[4] covered a wide area of subject matter encompassing both class certification and the merits.  Most indisputably related to the merits is the following interrogatory:

25.      Identify and describe the bases or justifications for any detention, search, or arrest described in the Complaint with respect to any of the Plaintiffs.

---

[3] Plaintiffs imply that discovery is still in its infancy and has been limited only to facts relevant to class certification. This is simply not true. Plaintiffs have propounded, and Defendants have responded to, eighty (80) interrogatories, thirty-nine (39) requests for production of documents and twelve (12) requests for admission, most of which go directly to the merits of Plaintiffs' claims. Additionally, Plaintiffs have taken more than two dozen depositions, and Defendants have produced over 100,000 pages of documents, covering a wide range of issues, many of which had nothing to do with class certification. In other words, although this Court has yet to set a deadline on merits-based discovery, Plaintiffs have been vigorously conducting it for many months.

[4] A copy of Plaintiffs' first set of interrogatories is attached hereto as Exhibit 2.

Just as Defendants asked Plaintiffs to provide the evidentiary bases of their claims, so too did Plaintiffs ask Defendants to provide the evidentiary bases of their defenses.  Once that evidence has been established, there is no good reason why this Court should not determine whether Plaintiffs have raised a genuine issue of material fact.

8.     Plaintiffs state no reason why they need further evidence to support the sufficiency of their own claims.  Indeed, it is their own evidence which forms the basis of Defendants' motions for summary judgment.[5]  Further, if Plaintiffs truly believe Defendants' motions are premature, the proper remedy is a request for additional discovery under Rule 56(d), not a motion to strike. Plaintiffs, however, have not made such a request and have not provided the necessary affidavit to support such a request.

9.     For these reasons, Plaintiff's motions for a status conference, as well as their request to strike Defendants' motions, should be denied.

Respectfully submitted this 27th day of March, 2018.

> **MADISON COUNTY, MISSISSIPPI, and SHERIFF RANDALL C. TUCKER, IN HIS OFFICIAL CAPACITY**
>
> BY:   *s/ Michael B. Wallace*
> Michael B. Wallace (MSB #6904)
> Charles E. Ross (MSB #5683)
> James E. Graves, III (MSB #102252)
> Charles E. Cowan (MSB #104478)
> Wise Carter Child & Caraway, P.A.
> Post Office Box 651
> Jackson, Mississippi  39205-0651
> Telephone: 601-968-5534
> Facsimile: 601- 944-7738
> mbw@wisecarter.com
> cer@wisecarter.com

---

[5] The only evidence besides Plaintiffs' interrogatory responses and deposition testimony Defendants presented in support of any of their summary judgment motions is the affidavit of Scott McDonald, whom Plaintiffs have already deposed.

jeg@wisecarter.com
cec@wisecarter.com

and

T. Russell Nobile (MSB #100682)
WISE CARTER CHILD & CARAWAY, P.A.
2510 14th Street, Suite 1125
Gulfport, Mississippi  39501
Telephone: 228-867-7141
Facsimile: 228-867-7142
trn@wisecarter.com

OF COUNSEL:

Rebecca B. Cowan (MSB #7735)
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Dr.
Jackson, Mississippi  39232
P.O. Box 750
Jackson, Mississippi  39205-0750
Telephone: 601-969-1010
Facsimile:  601-969-5120
bcowan@curriejohnson.com


Katie Bryant Snell (MSB# 103607)
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi  39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

J. Lawson Hester
PETTIS, BARFIELD & HESTER, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi  39211
Telephone: 601-987-5300
lhester@pbhfirm.com

## CERTIFICATE OF SERVICE

I, Michael B. Wallace, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record.

This the 27th day of March, 2018.

*s/ Michael B. Wallace*
MICHAEL B. WALLACE

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**LATOYA BROWN; LAWRENCE BLACKMON
HERBERT ANTHONY GREEN; KHADAFY MANNING;
QUINETTA MANNING; MARVIN MCFIELD; NICHOLAS
SINGLETON; STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER, individually and on
behalf of a class of all other similarly situated,**        **PLAINTIFFS**

**v.**        **CIVIL ACTION NO. 3:17-cv-347 WHB LRA**

**MADISON COUNTY, MISSISSIPPI; SHERIFF
RANDALL C. TUCKER, in his official capacity; and
MADISON COUNTY SHERIFF'S DEPUTIES JOHN
DOES #1 through #6, in their individual capacities,**        **DEFENDANTS**

---

## EXHIBIT 1

---

Exhibit 1 to Defendants' Response to Plaintiffs' Expedited Motion for Status Conference is being filed conventionally under seal pursuant to the stipulated protective order entered by this Court on September 6, 2017.   *See* [Dkt. #32].

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; HERBERT ANTHONY GREEN; KHADAFY MANNING; QUINNETTA MANNING; MARVIN MCFIELD; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and MADISON COUNTY SHERIFF'S DEPUTIES JOHN DOES #1 through #6, in their individual capacities,<br><br>     Defendants. | Civil Action No.<br>3:17-cv-00347-WHB-LRA<br><br>**PLAINTIFFS' FIRST SET OF INTERROGATORIES** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs, by and through their attorneys, hereby submit the following interrogatories (each an "Interrogatory," and collectively the "Interrogatories") to be answered separately and fully in writing under oath by You, within thirty (30) days, in accordance with the definitions and instructions set forth below.

## DEFINITIONS

1.    Unless otherwise defined, all words and phrases used herein shall be accorded their ordinary meaning.

2.    The term "Answer" means the "Answer and Affirmative Defenses of Defendants, Madison County, Mississippi and Sheriff Randall C. Tucker, In His Official Capacity" filed in this action and dated June 29, 2017.

EXHIBIT
2

3.      The term "Board of Supervisors" refers to the Board of Supervisors of Madison County, Mississippi, and includes, but is not limited to, any or all individual members of the Board of Supervisors of Madison County, Mississippi, any predecessors or successors, and any agents, attorneys, representatives, employees, and/or other persons acting or purporting to act on behalf of the Board of Supervisors of Madison County, Mississippi.

4.      The term "communication" means any oral, written, electronic, or other exchange or transmittal of words, thoughts, information, ideas or opinions to another person or entity, however made.  The term "communications" shall include, without limitation, printed, typed, handwritten, or other readable documents, correspondence, memoranda, reports, contracts, drafts (both initial and subsequent), computer discs or transmissions, e-mails, instant messages, text messages, tape or video recordings, voicemails, diaries, log books, minutes, notes, studies, surveys and forecasts, and any and all copies thereof.

5.      The term "complaint" means any expression of disagreement or dissatisfaction, in any format, by any person, including MCSD personnel (as defined below), in connection with any policy, custom, practice, action, and/or inaction of or by Defendants (as defined below), including (i) the types of complaints described in Section 17, entitled *Investigations: Internal Affairs*, of the MCSD's POLICIES AND PROCEDURES; and (ii) complaints included within any performance evaluations, reviews, referrals, or processes in any personnel file.

6.      The term "concerning" means discussing, addressing, relating to, regarding, referring to, describing, evidencing, consisting of, or constituting.

7.      The terms "Defendants," "You," or "Your" refer to Sheriff Randall Tucker, in his official capacity, and to Madison County, Mississippi, and include, but are not limited to, any predecessors or successors, and any board members, supervisors, agents, attorneys, representatives, employees, and/or other persons acting or purporting to act on behalf of Sheriff

2

Tucker and/or Madison County, Mississippi.  The term "Defendants" includes the MCSD and all

MCSD personnel, as defined below.

8.      The term "document" shall have the broadest meaning possible under the Federal

Rules of Civil Procedure and shall include, but not be limited to, any written, recorded, or

graphic material of any kind, whether prepared by You or by any other person, that is in Your

possession, custody, or control.  The term "document" includes communications (as defined

above); training materials; MVR recordings; computer-aided dispatch ("CAD") reports; incident

reports; 911 logs; records of radio traffic involving MCSD personnel; arrest reports and/or

records; Uniform Crime Reports; data, information, statistics, or any other information submitted

to the Federal Bureau of Investigation's Uniform Crime Reporting Program; any other reports;

any other summaries; any other audio or video recordings; agreements; contracts; letters;

telegrams; memoranda; records; instructions; specifications; notes; notebooks; scrapbooks;

diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts;

graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of

meetings, conferences, and telephone or other conversations or communications; invoices;

purchase orders; recordings; published or unpublished speeches or articles; publications;

transcripts of telephone conversations; voicemail; electronic-mail; text messages; ledgers;

financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs.

The term "document" also includes but is not limited to: (i) all drafts of a document and all

copies that differ in any respect from the original, including any notation, underlining, marking,

or information not on the original; (ii) electronically stored data in its original digital format from

which information can be obtained either directly or by translation through detection devices or

readers (any such document is to be produced in a reasonably legible and usable form); and (iii)

information stored in, or accessible through, computer or other information retrieval systems

(including any computer archives or back-up systems), in its original digital format, together with instructions and all other materials necessary to use or interpret such data compilations.

9.      The phrase "in connection with" means discussing, addressing, relating to, referring to, during the course of, and incident to.

10.     The term "MCSD" refers to the Madison County Sheriff's Department, and includes any predecessors or successors, as well as any current or former sheriffs, deputy sheriffs, agents, attorneys, representatives, employees and/or other persons acting or purporting to act on the MCSD's behalf, including but not limited to (i) all current or former employees or agents of Defendants identified in Defendants' Initial Disclosures, and (ii) all current or former employees or agents of Defendants identified in Defendants' initial production in response to Plaintiffs' First Request for Production of Documents.  Any or all of the foregoing persons are also referred to herein as "MCSD personnel."  As used herein, any reference to any actions or omissions by MCSD personnel refers to actions or omissions committed by such persons under color of law.

11.     The term "person" means any natural person of any age or gender, as well as any corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office or other business or legal entity, whether private or governmental.

12.     The term "Plaintiffs" refers to the named plaintiffs in the operative Complaint filed in this action (Latoya Brown, Lawrence Blackmon, Herbert Anthony Green, Khadafy Manning, Quinnetta Manning, Marvin McField, Nicholas Singleton, Steven Smith, Bessie Thomas, and Betty Jean Williams Tucker).

13.     The term "policy" means all formal and informal policies, rules, regulations, guidelines, procedures, restrictions and limitations that are published or promulgated by, or expressly or implicitly approved of and/or enforced by any or all Defendants.  This term includes

but is not limited to any policy which Defendants may believe or contend constitutes a "policy"

under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and its progeny.

14.    The term "roadblock/checkpoint" means any installation, barricade, checkpoint,

roadblock and/or other police presence in connection with which MCSD personnel stop any or

all motor vehicles and/or any or all persons passing by on foot or bicycle, for any purpose,

including sobriety checkpoints and safety checkpoints, regardless of whether any such

installation, barricade, checkpoint, roadblock and/or other police presence is specifically or

formally designated by the MCSD as a "roadblock" or "checkpoint."  The term

"roadblock/checkpoint" also includes any police presence at which (a) marked or unmarked

MCSD vehicles are parked or stopped at any location on public or private property, including

roadsides, intersections, or parking lots, and (b) MCSD deputies on foot, near or around the

aforementioned parked or stopped MCSD vehicles, flag down, by any means, any or all vehicles,

pedestrians, or bicyclists passing by.

15.    To bring within the scope of these requests all information that might otherwise

be construed to be outside of their scope, the following rules of construction apply: (a) the word

"including" shall be read to mean including without limitation; (b) the present tense shall be

construed to include the past tense and vice versa; (c) the use of the singular form of any word

includes the plural and vice versa; (d) the terms "any," "all," and "each" shall be read to mean

any, all, each, and every; (e) the connections "and" and "or" shall be construed either

disjunctively or conjunctively as necessary to bring within the scope of the request all responses

and documents that might otherwise be construed to be outside its scope; and (f) the terms

"between" and "among" shall be construed as "between" or "among" as necessary to bring

within the scope of the request all responses and documents that might otherwise be construed to

be outside its scope.

## INSTRUCTIONS

1.      The answers to these Interrogatories shall include all information in Your possession, custody, or control, including that held by Your agents, employees, representatives, or any other person over which You have control.

2.      Each Interrogatory, including any subparts, shall be answered separately, completely, and fully.  If You are unable to respond to any Interrogatory in full after exercising due diligence to secure the requested information, answer to the fullest extent possible.

3.      If any Interrogatory is objected to in whole or in part, specify all grounds on which such objection rests.  You should clearly indicate to which part of an Interrogatory any objection is directed and respond to the remaining parts of the Interrogatory to which You do not object.

4.      If You object to any Interrogatory, whether in whole or in part, on the grounds that the information sought therein is privileged or confidential, state the following:  (a) identify the privileged information; (b) identify the persons who received the privileged information and/or the persons present during the privileged communication; (c) identify the persons who made the privileged communication; (d) identify the general subject matter of the privileged information; and (e) state the basis for Your claim of privilege with respect to such information.

5.      The Interrogatories set forth herein are to be deemed continuing so as to require supplemental responses in accordance with the Federal Rules of Civil Procedure; whenever additional information is obtained or becomes known to You, it shall be supplied in writing under oath as though expressly requested by separate Interrogatories.

6.      Defendants reserve the right to serve supplemental and additional interrogatories.

## INTERROGATORIES

1.     For all persons identified on the document produced by Defendants at RFP 1-2 to 1-3, provide a narrative description of each person's role and responsibilities within the MCSD, including his/her immediate and indirect supervisor(s) and any person(s) whom such person directly or indirectly supervises, and his/her assignment to any unit, department, team, task force, working group, or similar subdivision of the MCSD.

2.     Identify, define and explain the meaning of any and all codes used by the MCSD, including radio and signal codes and abbreviations (including disposition codes) in CAD reports, activity reports, "stat" sheets, incident reports and any other MCSD documents.

3.     Identify and describe all units, departments, teams, task forces, working groups, or similar subdivisions of the MCSD that existed at any time between 2007 and the present, including formation date, date of dissolution, purpose, responsibilities, and how it is staffed, supervised, and operated.

4.     Describe the manner(s) in which the MCSD "utilizes patrols known as the 'NET' or Neighborhood Enhancement Team," including the criteria used in determining whether, when, and how the Neighborhood Enhancement Team is "disbursed at night in neighborhoods to combat crimes…" and "used in apartment complexes and on streets and highways…," as stated in paragraph 4 of Defendants' Answer.

5.     Identify and describe all instances, from 2012 to the present, in which Defendants have utilized or deployed the Neighborhood Enhancement Team.

6.     Describe the criteria employed by Defendants in reviewing personnel and in making any hiring, disciplinary, firing, promotion, or demotion decisions with respect to MCSD personnel.

7.     Identify by name, title, and responsibilities all current or former MCSD personnel who are or appear to be Black between 2007 and the present.  For all such personnel whose

employment was terminated or who otherwise separated from service with the MCSD, describe the circumstances of their termination or separation.

8.     Identify and describe any unwritten or oral policies, procedures, or guidelines that Defendants contend are maintained by the MCSD.

9.     Identify and describe all changes and/or variations, whether formal, informal, written, or unwritten, made by Sheriff Tucker to the policies and procedures in place under Sheriff Toby Trowbridge.

10.     Identify and describe all instances of actual or alleged racial discrimination towards any individual or group of people by MCSD personnel.

11.     Identify and describe all instances of actual or alleged use of excessive, unlawful, unconstitutional, or otherwise wrongful use of physical force by any MCSD personnel.

12.     Identify and describe all instances in which any current or former MCSD personnel were arrested, cited, detained, sued, or charged in connection with any civil or criminal offense, regardless of whether the arrest, citation, detention, suit or charge arose out of the individual's performance of his or her duties as a current or former employee of the MCSD. This Interrogatory encompasses instances that predate any individual's employment with the MCSD to the extent that Defendants have now or at any point had knowledge of any such arrest, citation, detention, suit or charge.

13.     Identify and describe every database or other recordkeeping system employed by the MCSD at any time from 2012 through the present, including (i) the purposes and function of any such database or recordkeeping system, and (ii) whether the database or recordkeeping tracks the race, ethnicity, and/or national origin of any person identified therein.

14.     Identify and describe (a) every database, whether local, county, state, federal or privately-run, that is accessed or checked when the MCSD runs a background check in the course of its law enforcement duties; and (b) whether the MCSD keeps logs or records of these

checks, including who ran the checks, when the checks were run, where the checks were run, on whom the checks were run, and the results of any such checks.

15.     Identify and describe all reports or records, including CAD reports and citation data, that MCSD personnel are required to prepare to memorialize any type of law enforcement encounter, including (i) the method or form used to prepare any such report or record; (ii) whether there is any review process for such reports/records, and if so, who reviews them; (iii) the circumstances under which the report or record must be completed, including whether an incident report must be prepared for every traffic stop based on a violation of the law, such as a seatbelt violation or improper vehicle equipment, regardless of whether the stop results in a citation or an arrest; and (iv) the document retention policy for any such report or record.

16.     Identify and describe every oral or written request made by any person or organization (whether incorporated or unincorporated) in Madison County, Mississippi, including managers of apartment complexes, municipal police departments, business owners, and schools, for assistance of any type from the MCSD, as stated in paragraphs 3 and 210 of Defendants' Answer, including the date, the identity of the individual requestor and his or her institutional affiliation, the specific nature of the assistance requested, and any action taken by the MCSD in response to such request.

17.     Explain and describe the policing activity that MCSD performs in response to the requests that Defendants produced in RFPs 10-26 to 10-45, including the tactics, policies, procedures and practices used when interacting with individuals at these locations.

18.     Identify every action taken by Defendants "to ensure that the Black community has input into the daily operations of the Madison County Sheriff's Department" and/or to "communicate and coordinate with" the Black community "regarding the services of the Madison County Sheriff['s] Department," as stated in paragraphs 8 and 112 of Defendants' Answer.

9

19.     Identify the author of the MCSD's General Roadblocks Policy and describe the circumstances in which roadblocks/checkpoints have been conducted pursuant to the General Roadblocks Policy.  To the extent Defendants contend that the General Roadblocks Policy is inoperative, identify any directive superseding or negating the General Roadblocks Policy and explain why the General Roadblocks Policy nonetheless remains part of the MCSD's POLICIES AND PROCEDURES.

20.     Identify and describe any roadblock/checkpoint at which: (i) MSCD personnel used one or more unmarked vehicles; (ii) any or all MCSD personnel present at the roadblock/checkpoint wore plainclothes and/or clothing other than a complete uniform; and/or (iii) MCSD personnel did not employ emergency and/or overhead lighting.

21.     Identify every roadblock/checkpoint conducted in conjunction or cooperation with, at the request of, or with the assistance of, any other governmental or law enforcement agency.  For each such roadblock/checkpoint, identify the time, date, location, and the name of the relevant agency.

22.     Describe in detail any requirement, policy, or practice concerning advance public notice provided by the MCSD for roadblocks/checkpoints.  To the extent that such requirements, policies, or practices differ depending on the nature, purpose, or location of the roadblock/checkpoint, separately specify the requirement, policy, or practice applicable to each type of roadblock/checkpoint.

23.     Identify all criteria used for selecting locations for roadblocks/checkpoints, and the relevant weight placed on each criterion.  To the extent that these criteria differ depending on the purpose for which the roadblock/checkpoint is established, separately specify the criteria for selecting locations for each type of roadblock/checkpoint.

24.     Identify and describe any means by which MCSD tracks or measures roadblock/checkpoint activity, including tracking based on: (i) the number of

10

roadblocks/checkpoints conducted in any given time period; (ii) the number of vehicles, pedestrians, or bicyclists stopped; (iii) the number of searches conducted; (iv) the number of search warrants issued; (v) the number, type, and/or value of contraband found; (vi) the amount of time spent by any or all MCSD personnel at any or all roadblocks/checkpoints; and (vii) the number of arrests made and/or or citations issued by MCSD personnel.  This includes any tracking or measuring of roadblock/checkpoint activity as part of the MCSD's monitoring and/or enforcement of targets and quotas, as well as the MCSD's general statistics-gathering and/or productivity-tracking efforts.

25.     Identify and describe the bases or justifications for any detention, search, or arrest described in the Complaint with respect to any of the Plaintiffs.

26.     Identify and describe every complaint and/or petition of any kind made to the Board of Supervisors or any individual member of the Board of Supervisors concerning the MCSD, including the date of the complaint/petition, the name of the individual or entity making the complaint/filing the petition, the substance of the complaint/petition, a list of any documents concerning the complaint/petition, and a description of any actions taken by the Board of Supervisors or the MCSD in response.

27.     Identify all current or former MCSD personnel who received and/or reviewed any complaint by any person or entity concerning any of the customs, policies, and/or practices alleged in the Complaint, including any actual or alleged incident of racial discrimination or profiling, any traffic stop, any pedestrian stop, any search, any entry into any home, any use of physical force, and any roadblock/checkpoint.

28.     Identify and describe any practices, policies, and/or procedures for determining when MCSD deputies respond to an incident that is within the jurisdiction of a municipal police department within Madison County, Mississippi.

11

Dated: September 22, 2017

By: */s/ Joshua Tom*
     Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*
forthcoming)
Nihara K. Choudhri (*pro hac vice*)
Yukiu Chan (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
kavitha.sivashanker@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
monica.chan@stblaw.com

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Paloma Wu (*pro hac vice*)
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
PWu@aclu-ms.org
JTom@aclu-ms.org


AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice* forthcoming)
Jeffery Robinson (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiffs*

12