# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

LATOYA BROWN; LAWRENCE BLACKMON;
HERBERT ANTHONY GREEN; KHADAFY
MANNING; QUINNETTA MANNING; MARVIN
MCFIELD; NICHOLAS SINGLETON; STEVEN
SMITH; BESSIE THOMAS; and BETTY JEAN
WILLIAMS TUCKER, individually and on behalf of a
class of all others similarly situated,

          Plaintiffs,

    v.

MADISON COUNTY, MISSISSIPPI; SHERIFF
RANDALL S. TUCKER, in his official capacity; and
MADISON COUNTY SHERIFF'S DEPUTIES JOHN
DOES #1 through #6, in their individual capacities,

          Defendants.

Civil Action No.
3:17-cv-00347-WHB-LRA

**ORAL ARGUMENT
REQUESTED**

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

AMERICAN CIVIL LIBERTIES UNION OF
    MISSISSIPPI FOUNDATION
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408

AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2610

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ........................................................................................................ 3

I.      RULE 23(b)(2) WAS DESIGNED FOR CASES CHALLENGING
        DISCRIMINATORY POLICIES SUCH AS THE MCSD'S POLICING
        PROGRAM ................................................................................................ 3

II.     THE NECESSITY DOCTRINE IS INAPPLICABLE ..................................... 5

        A.    The "Necessity Doctrine" Is Doctrinally Unsound .............................. 6

        B.    Even If The Necessity Doctrine Remains Viable, It Applies Only In
              Limited Circumstances Not Present Here ............................................ 7

III.    CLASS CERTIFICATION IS NECESSARY IN THIS CASE ......................... 12

        A.    Class Certification Is Necessary To Obtain The Full Scope Of Plaintiffs'
              Requested Relief .............................................................................. 12

        B.    Class Certification Is Necessary Because Plaintiffs Seek Affirmative
              Injunctive Relief .............................................................................. 14

        C.    Class Certification Is Necessary To Ensure That Declaratory And
              Injunctive Relief Inures To The Benefit Of All Class Members ......................... 16

        D.    Class Certification Is Necessary To Protect The Class Members In The
              Event Individual Claims Become Moot ................................................ 19

CONCLUSION ................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Arizonans for Official English v. Arizona,*
    520 U.S. 43 (1997) ............................................................................................. 20

*Arnett v. Combs*,
    508 F.3d 1134 (5th Cir. 2007) ............................................................................ 8

*Bailey v. Patterson*,
    323 F.2d 201 (5th Cir. 1963) .............................................................................. 8

*Bing v. Roadway Express, Inc.*,
    485 F.2d 441 (5th Cir. 1973) .............................................................................. 4

*Brown v. Giuliani*,
    158 F.R.D. 251 (E.D.N.Y. 1994) ...................................................................... 17

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*,
    249 F.R.D. 334 (N.D. Cal. 2008) ....................................................................... 6

*Christina A. ex rel. Jennifer A. v. Bloomberg*,
    197 F.R.D. 664 (D.S.D. 2000) .......................................................................... 16

*Conn. State Dep't of Soc. Servs. v. Shalala*,
    No. 99-cv-2020(SRU), 2000 WL 436616 (D. Conn. 2000) ........................... 14, 17

*Cook v. Luckett*,
    575 F. Supp. 485 (S.D. Miss. 1983) .................................................................. 9

*Cutler v. Perales*,
    128 F.R.D. 39 (S.D.N.Y. 1989) ........................................................................ 18

*Daniels v. City of N.Y.*,
    199 F.R.D. 513 (S.D.N.Y. 2001) ...................................................................... 13

*Dockery v. Fischer*,
    253 F. Supp. 3d 832 (S.D. Miss. 2015) ....................................................... 10, 15

*Fairley v. Forrest County, Miss.*,
    814 F. Supp. 1327 (S.D. Miss. 1993) ................................................................ 8

*Floyd v. City of New York*,
    283 F.R.D. 153 (S.D.N.Y. 2012) .................................................................... 5, 18

*Fujishima v. Bd. of Educ.*,
    460 F.2d 1355 (7th Cir. 1972) ............................................................................ 9

*Gatter v. Cleland*,
    87 F.R.D 66 (E.D. Pa. 1980) ........................................................................... 6

*Gayle v. Warden Monmouth Cnty. Corr. Inst.*,
    838 F.3d 297 (3d Cir. 2016) ........................................................................... 11

*Gulf King Shrimp Co. v. Wirtz*,
    407 F.2d 508 (5th Cir. 1969) ......................................................................... 16

*Harris v. Rainey*,
    299 F.R.D. 486 (W.D. Va. 2014) .............................................................. 11, 20

*In re Alien Children Educ. Litig.*,
    501 F. Supp. 544 (S.D. Tex. 1980) ........................................................... 10, 19

*Jane B. by Martin v. New York City Dept. of Soc. Servs.*,
    117 F.R.D. 64 (S.D.N.Y. 1987) ..................................................................... 14

*Jenkins v. United Gas Corp.*,
    400 F.2d 28 (5th Cir. 1968) ............................................................................. 4

*John Doe #1 v. Veneman*,
    380 F.3d 807 (5th Cir. 2004) ......................................................................... 13

*Johnson v. City of Opelousas*,
    658 F.2d 1065 (5th Cir. 1981) ......................................................................... 8

*Johnson v. State of Miss.*,
    78 F.R.D. 37 (N.D. Miss. 1977) .................................................................... 8, 9

*Jones v. Diamond*,
    519 F.2d 1090 (5th Cir. 1975) .............................................................. 4, 12, 13

*Koster v. Perales*,
    108 F.R.D. 46 (E.D.N.Y. 1985) ...................................................................... 9

*Littlewolf v. Hodel*,
    681 F. Supp. 929 (D.D.C. 1988) ..................................................................... 6

*M.R. v. Bd. of Com'rs of Mobile Cty.*,
    286 F.R.D. 510 (S.D. Ala. 2012) .................................................................... 9

*Miss. Prot. & Advocacy Sys., Inc. v. Cotton*,
    No. Civ. A. J87-0502(L), 1989 WL 224953 (S.D. Miss. Aug. 7, 1989) ................. 3

*Moore v. Tangipahoa Parish School Bd.*,
    625 F.2d 33 (5th Cir. 1980) ........................................................................... 17

*Morrow v. Washington*,
    277 F.R.D. 172 (E.D. Tex. 2011)............................................................. 5, 10, 15

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) ...................................................................... 18

*Nehmer v. U.S. Veterans' Admin.*,
    118 F.R.D. 113 (N.D. Cal. 1987)................................................................ 16

*Odle v. Wal-Mart Stores, Inc.*,
    747 F.3d 315 (5th Cir. 2014) ...................................................................... 19

*Parsons v. Ryan*,
    289 F.R.D. 513 (D. Ariz. 2013) .................................................................. 15

*Pederson v. La. State Univ.*,
    213 F.3d 858 (5th Cir. 2000) ................................................................ 2, 7, 10

*Plekowski v. Ralston-Purina Co.*,
    557 F.2d 1218 (5th Cir. 1977) .................................................................... 14

*Reynolds v. Giuliani*,
    118 F. Supp. 2d 352 (S.D.N.Y. 2000)......................................................... 20

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010).......................................................................... 2, 6, 7, 17

*United Farmworkers of Fla. Housing Proj., Inc. v. City of Delray Beach, Fla.*,
    493 F.2d 799 (5th Cir. 1974) ........................................................................ 8

*Valenti v. Hartford City, Ind.*,
    No. 15-cv-63, 2016 WL 5662097 (N.D. Ind. 2016) ...................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................................................... 3

*Westcott v. Califano*,
    460 F. Supp. 737 (D. Mass. 1978) .............................................................. 16

**Statutes, Rules, and Consitutional Provisions**

Fed. R. Civ. P. 23 .................................................................................... 6, 7, 17

Fed. R. Civ. P. 23(a) .................................................................................... 4, 6

Fed. R. Civ. P. 23(b)(2)............................................................................ passim

Fed. R. Civ. P. 23(b)(3)................................................................................... 7

iv

Fed. R. Civ. P. 65(d) ................................................................................................ 15

Fed. R. Civ. P. 71 ..................................................................................................... 17

L.U. Civ. R. 7(b)(6)(A) ............................................................................................... 1

U.S. CONST. amend. XIV, § 1 ...................................................................................... 1

**Other Authorities**

2 William B. Rubenstein,
   *Newberg on Class Actions*, § 4:35 (5th ed. 2017) ..................................................... 6

7AA C. Wright, A. Miller & M. Kane,
   Fed. Prac. & Proc. § 1785.2 (3d ed. 2005).................................................... 11, 12

Fed. R. Civ. P. 23, Adv. Comm. Notes,
   39 F.R.D. 69 (1966) ................................................................................................ 4

Plaintiffs Latoya Brown, Lawrence Blackmon, Khadafy Manning, Quinnetta Manning, Nicholas Singleton, Steven Smith, Bessie Thomas and Betty Jean Williams Tucker ("Plaintiffs" or "Named Plaintiffs") respectfully submit this memorandum in opposition to the motion to deny certification (the "Motion" or "Motion to Deny Certification") (ECF No. 237) filed by Defendants Madison County, Mississippi and Sheriff Randall Tucker ("Defendants").[1] Pursuant to L.U. Civ. R. 7(b)(6)(A), Plaintiffs request oral argument on Defendants' Motion.

## PRELIMINARY STATEMENT

On March 14, 2018, Plaintiffs moved for class certification under Fed. R. Civ. P. 23(b)(2) in this civil rights action challenging the deeply-entrenched racially discriminatory policing practices implemented by the Madison County Sheriff's Department ("MCSD"), at the direction of Sheriff Randall Tucker. Plaintiffs seek to end the MCSD's longstanding policy of racially profiling and targeting Madison County's Black citizens, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (the "Policing Program"). The Policing Program is effectuated through the disproportionate placement of roadblocks in predominantly Black neighborhoods, as well as routine suspicionless stops and searches of Black pedestrians, among other unconstitutional tactics.

This is a quintessential case for Rule 23(b)(2), which was specifically designed to permit class treatment in civil rights actions such as this one challenging racially discriminatory practices. To obtain certification under Rule 23(b)(2), Plaintiffs must only demonstrate that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs have provided this Court with substantial evidence of

---

[1] Defendants Memorandum of Authorities in Support of Defendants' Motion to Deny Certification (ECF No. 238) is referred to herein as "Mem. __."

Defendants' unconstitutional Policing Program, which Defendants have broadly applied to the members of the class and the two subclasses defined in Plaintiffs' Motion for Class Certification (ECF No. 232). To ensure that these racially discriminatory programs are dismantled, Plaintiffs have asked this Court to require Defendants to, *inter alia*, maintain comprehensive records of the MCSD's law enforcement activity and to establish new policies for training and supervising MCSD personnel, among other forms of declaratory and injunctive relief.

Defendants ask this Court to deny certification based on the self-serving contention that class certification is not "necessary" for Plaintiffs to obtain the relief they seek. Nothing in the text of Rule 23(b)(2) requires courts to consider "necessity" when determining whether to certify a class, and the Supreme Court has recently reiterated that Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). It is doubtful that any "necessity doctrine" articulated in prior case law survives the Supreme Court's clear directive that Rule 23 is to be applied in accordance with its plain terms.

For its part, the Fifth Circuit has expressly "declined to decide whether necessity can play a role in class certification decisions." *Pederson v. La. State Univ.*, 213 F.3d 858, 867 n.8 (5th Cir. 2000) (*Pederson II*). In a handful of cases, the Fifth Circuit has affirmed denials of class certification that relied in part on the necessity doctrine. But even assuming those holdings survive *Shady Grove*, their circumstances are strikingly different from those at issue here. Those cases involve straightforward challenges to statutes or regulations capable of redress through a simple prohibitory decree or injunction. This case, by contrast, challenges entrenched and largely unwritten policing policies which cannot simply be redressed by an injunction against violating the Constitution.

As such, even assuming the necessity doctrine applies, class certification is plainly necessary under the circumstances of this case. Class certification is necessary to ensure that Plaintiffs obtain affirmative injunctive relief of sufficiently broad scope to redress the class-wide harms at issue here, and to provide workable enforcement mechanisms for unnamed class members to enforce such relief. Defendants cite no cases in which class certification was denied under the necessity doctrine in comparable circumstances, and Defendants' attempts to extend the necessity doctrine to this case would effectively nullify Rule 23(b)(2). Under Defendants' logic, certification pursuant to Rule 23(b)(2) would hardly ever be appropriate, because the very facts which would make certification possible would render it unnecessary. This is not the law. Certification of Plaintiffs' proposed Rule 23(b)(2) class and subclasses is both necessary and appropriate, and the Court should deny Defendants' Motion.

## <u>ARGUMENT</u>

**I.     RULE 23(b)(2) WAS DESIGNED FOR CASES CHALLENGING DISCRIMINATORY POLICIES SUCH AS THE MCSD'S POLICING PROGRAM**

"Rule 23(b)(2) allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (*quoting* Fed. R. Civ. P. 23(b)(2)). The rule was specifically enacted to facilitate class certification in civil rights actions challenging racially discriminatory practices, such as the MCSD's Policing Program. *See, e.g.*, *id.* at 361 ("[C]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture.") (internal quotation marks, alterations, and citation omitted); *Miss. Prot. & Advocacy Sys., Inc. v. Cotton*, Civ. A. J87-0502(L), 1989 WL 224953, at *4 (S.D. Miss. Aug. 7, 1989) ("[T]he primary purpose of 23(b)(2) is to facilitate cases such as

this one in which the class representative seeks broad injunctive or declaratory relief for violations of civil rights"), *aff'd*, 929 F.2d 1054 (5th Cir. 1991); Advisory Committee's Notes to Rule 23, 39 F.R.D. 69, 102 (1966) ("Illustrative [of cases in which certification under Rule 23(b)(2) is appropriate] are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.").

Consistent with the purpose for which Rule 23(b)(2) was adopted, the Fifth Circuit has found certification under Rule 23(b)(2) warranted in numerous cases where, as here, plaintiffs brought suit to challenge racially discriminatory policies and practices. *See Jones v. Diamond*, 519 F.2d 1090, 1094, 1101 (5th Cir. 1975) (reversing district court's denial of class certification in a civil rights action alleging that defendants engaged in "particular discrimination against black prisoners"); *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 447 (5th Cir. 1973) (class action properly brought under Rule 23(b)(2) where a motor carrier "refused to hire blacks as road drivers" and the company's "no-transfer rule and the union's seniority scheme perpetuated the effects of [the company's] discrimination"); *Jenkins v. United Gas Corp.*, 400 F.2d 28, 33-34 (5th Cir. 1968) (reversing district court's denial of class certification where plaintiffs alleged "system-wide racially discriminatory employment practices," and instructing that "the nature of the claims asserted make it a 23(b)(2) class action"). Indeed, the Fifth Circuit has instructed that Rule 23(a)'s requirements "must be read liberally in the context of civil rights suits," particularly "when the class action falls under Rule 23(b)(2)." *Jones*, 519 F.2d at 1099. The *Jones* court also cautioned that "unless class actions are hospitably received into our judicial system, many valid constitutional claims may be stymied." *Id.* at 1100.

Cases such as this one challenging racially discriminatory policing practices are textbook examples of actions warranting class treatment under Rule 23(b)(2). For example, in *Morrow v. Washington*, the Eastern District of Texas certified a Rule 23(b)(2) class where plaintiffs contended that defendants had "developed an illegal practice that targeted racial minorities for pretextual traffic stops in violation of the Equal Protection Clause of the Fourteenth Amendment." 277 F.R.D. 172, 196 (E.D. Tex. 2011). The *Morrow* court determined that "[t]he proposed class … alleges classwide racial and ethnic discrimination … and is, thus, *precisely the type of class for which Rule 23(b)(2) was created.*" *Id.* at 197 (emphasis added). Similarly, in *Floyd v. City of New York*, 283 F.R.D. 153 (S.D.N.Y. 2012), the Southern District of New York certified a Rule 23(b)(2) class where the plaintiffs claimed that defendants had implemented a racially discriminatory stop-and-frisk policy. The *Floyd* court observed that "[i]t is precisely for cases such as this that Rule 23(b)(2) was designed." *Id.* at 177.

Plaintiffs' challenge to the MCSD's Policing Program also falls squarely within the ambit of Rule 23(b)(2). Plaintiffs have demonstrated, through evidence developed during class certification discovery, that "Defendants' behavior was generally applicable to the class as a whole, making injunctive relief appropriate." *Morrow*, 277 F.R.D. at 198. Unless this Court grants Plaintiffs' Motion for Class Certification, "the vast majority" of Madison County's Black citizens who are unlawfully racially profiled, stopped, seized, and/or searched by the MCSD "will never bring suit to vindicate their rights." *Floyd*, 283 F.R.D. at 177.

## II.     THE NECESSITY DOCTRINE IS INAPPLICABLE

Defendants ask this Court to deny class certification in a civil rights action challenging racially discriminatory policing practices because, in Defendants' view, certification is not "necessary" in order for Plaintiffs to obtain the declaratory and injunctive relief Plaintiffs seek. For the reasons set forth below, the necessity doctrine rests on unsound textual and precedential

footing, and has been substantially undercut by recent Supreme Court precedent. Defendants'

motion can be denied on those grounds alone. Should the Court determine that the necessity

doctrine still retains vitality, the Court should deny the motion because the circumstances that

have justified application of the doctrine in past precedents are absent here.

### A.   The "Necessity Doctrine" Is Doctrinally Unsound

Nothing in Rules 23(a) or 23(b)(2) instructs courts to consider the "necessity" of a class

action when determining whether certification is warranted. "Many courts have rejected the

necessity doctrine outright as being non-textual, noting that a need requirement finds no support

in Rule 23 and, if applied, would entirely negate any proper class certifications under [Rule

23(b)(2)], a result hardly intended by the Rules Advisory Committee." 2 William B. Rubenstein,

*Newberg on Class Actions*, § 4:35 (5th ed. 2017) (collecting cases).[2]

The Supreme Court's recent decision in *Shady Grove Orthopedic Associates v. Allstate

Insurance Co.*, 559 U.S. 393 (2010), calls into serious doubt the viability of judicially-created

limitations on class actions that are otherwise authorized by the text of Rule 23. In *Shady Grove*,

the Court rejected the defendant's contention that "Rule 23 neither explicitly nor implicitly

empowers a federal court 'to certify a class in each and every case' where the Rule's criteria are

met." *Id.* at 399-400. The Court stated:

> But that is *exactly* what Rule 23 does: It says that if the prescribed
> preconditions are satisfied '[a] class action *may be maintained*' —

---

[2] *See, e.g.*, *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) ("[T]here is no requirement that class certification must be 'necessary.' Indeed, such a requirement would effectively eviscerate Rule 23(b)(2), which was specifically designed with the benefits of collective action in mind.") (internal citations omitted); *Littlewolf v. Hodel*, 681 F. Supp. 929, 937 (D.D.C. 1988) ("Were class certification inappropriate if 'unnecessary,' it would be inappropriate whenever only injunctive relief is sought, as the proposed relief would apply to all persons, whether class members or not. Thus, the idea that a class may be certified only if 'necessary' flies in the face of the Federal Rules."); *Gatter v. Cleland*, 87 F.R.D 66, 70 (E.D. Pa. 1980) ("[T]he adoption of a 'need' requirement would virtually eliminate class certification under Rule 23(b)(2), for there would rarely be a need to have the questions presented by a class rather than by an individual litigant.").

6

> not '*a class action may be permitted*." Courts do not maintain
> actions; litigants do. The discretion suggested by Rule 23's 'may'
> is discretion residing in the plaintiff: He may bring his claim in a
> class action if he wishes.

*Id.* (emphasis in original). *Shady Grove* held that the text of Rule 23 "creates a categorical rule

*entitling* a plaintiff whose suit meets *the specified criteria* to pursue his claim as a class action."

*Id.* at 398 (emphasis added). The concept of "necessity" is, of course, wholly absent from the text

of Rule 23(b)(2), which requires nothing more than a defendant who "has acted or refused to act

on grounds that apply generally to the class," rendering class-wide declaratory or injunctive

relief appropriate. The Supreme Court's reasoning in *Shady Grove* confirms that grafting a

textually-unsupported "necessity" requirement onto Rule 23(b)(2) is improper.[3] *See, e.g.*, *Valenti*

*v. Hartford City, Ind.*, No. 15-cv-63, 2016 WL 5662097, at *6 (N.D. Ind. 2016) ("Although the

necessity argument was not the *Shady Grove* Court's focus, its ruling forecloses any argument

that a court should, in an exercise of discretion, determine whether certification is 'necessary'

once the party seeking certification has satisfied the requirements of Rule 23(a) and 23(b)(2).").

In short, the necessity doctrine is textually unsupported, its application is not compelled

by any binding precedent, and it is inconsistent with recent Supreme Court guidance as to the

proper interpretation of Rule 23. This Court can and should deny Defendants' Motion on these

grounds alone.

### B.   Even If The Necessity Doctrine Remains Viable, It Applies Only In Limited Circumstances Not Present Here

The Fifth Circuit has yet to "decide whether necessity can play a role in class certification

decisions," *Pederson II*, 213 F.3d at 867 n.8, and has not revisited the issue since the Supreme

---

[3] Notably, the drafters of the Rules knew how to impose such additional requirements when they wanted to: Rule 23(b)(3), for instance, requires that the court find that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy," and sets forth a nonexhaustive four-factor test pertinent to this superiority determination. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Court issued its ruling in *Shady Grove*. Thus, within the Fifth Circuit, "[t]here is a division of authority on whether a trial judge properly may deny certification to an otherwise eligible class solely because of 'lack of need,' *i.e.*, because all potential class members will benefit automatically from any relief granted to the named plaintiff." *Johnson v. City of Opelousas*, 658 F.2d 1065, 1069-70 (5th Cir. 1981).[4]

Defendants point to a handful of decisions in which the Fifth Circuit and the Southern District of Mississippi have found class certification unnecessary. These cases involved very narrow questions concerning the constitutionality of a statute, regulation or policy. *See Arnett v. Combs*, 508 F.3d 1134 (5th Cir. 2007) (affirming denial of class certification based on the necessity doctrine where the only remaining issue was the constitutionality of Texas's Unclaimed Property Law); *United Farmworkers of Fla. Housing Proj., Inc. v. City of Delray Beach, Fla.*, 493 F.2d 799 (5th Cir. 1974) (finding class certification unnecessary in a case challenging a city's racially discriminatory refusal to allow a low-income housing project to tap into the city's water and sewer systems)[5]; *Fairley v. Forrest County, Miss.*, 814 F. Supp. 1327 (S.D. Miss. 1993) (finding class certification unnecessary where plaintiffs challenged a supervisory redistricting plan for the election of supervisors and election commissioners); *Cook*

---

[4] Defendants contend that *Johnson* "recognized that a *majority* of courts support the [necessity] doctrine, and that remains the case today." Mem. 8 (citing *Johnson*, 658 F.2d at 1069 n.5) (emphasis added). But *Johnson* said only that "*[s]ome* courts consider the class action device superfluous when the plaintiff has challenged a statute as facially constitutional." 658 F.2d at 1069 n.5 (emphasis added).

[5] In reaching its decision, the *United Farmworkers* court relied on *Bailey v. Patterson*, 323 F.2d 201 (5th Cir. 1963), which predated the 1966 enactment of Rule 23(b)(2). At issue in *Bailey* was the plaintiffs' entitlement to unsegregated transportation service from the defendants. The *Bailey* court found it "unnecessary to determine ... whether [the] action was properly brought under Rule 23(a), for whether or not appellants may properly represent all Negroes similarly situated, the decree to which they are entitled is the same." 323 F.2d at 206. Rule 23(b)(2), enacted *after* the *Bailey* decision, was specifically designed to facilitate class certification in civil rights actions challenging racially discriminatory practices. In *Johnson v. State of Miss.*, the Northern District of Texas found that *Bailey* was not "dispositive" of the question of whether the necessity doctrine precluded certification of a Rule 23(b)(2) class in a racial discrimination action challenging a Mississippi statute governing the availability of school transportation. 78 F.R.D. 37, 40 (N.D. Miss. 1977), *remanded on other grounds*, 586 F.2d 387 (5th Cir. 1987),

*v. Luckett*, 575 F. Supp. 485 (S.D. Miss. 1983) (finding class certification unnecessary where plaintiffs challenged county districting schemes where competing proposed class representatives had conflicting interests), *vacated on other grounds*, 735 F.2d 912 (5th Cir. 1984). In each of these cases, resolving the plaintiffs' claims primarily required a change to the statute, regulation or policy itself; the plaintiffs did not require, as here, extensive affirmative relief to ensure that the change to the statute, regulation or policy was appropriately and comprehensively implemented. *See, e.g.*, *Koster v. Perales*, 108 F.R.D. 46, 54-55 (E.D.N.Y. 1985) (finding necessity doctrine inapplicable because "the classic case where individual relief benefits a class, making certification unnecessary, is where a law is held unconstitutional," but in the case at issue, "the plaintiffs seek to enjoin a practice or pattern of alleged unlawful activity.").[6]

Defendants also fail to mention cases in which courts in the Fifth Circuit have held that necessity is *not* an appropriate consideration when determining whether to certify a class under Rule 23(b)(2). For example, in *Johnson v. State of Mississippi*, the court rejected the defendants' contention that "the classes should not be certified because the relief, if granted, will automatically inure to the benefit of all members of the proposed classes without the need for certification." 78 F.R.D. 37, 39 (N.D. Miss. 1977), *remanded on other grounds*, 586 F.2d 387 (5th Cir. 1978). The court quoted with approval the Seventh Circuit's holding in *Fujishima v. Board of Education*, 460 F.2d 1355, 1360 (7th Cir. 1972), that "if the prerequisites and conditions of Fed. R. Civ. P. 23 are met, a court may not deny class status because there is no

---

[6] *M.R. v. Bd. of Com'rs of Mobile Cty.*, 286 F.R.D. 510 (S.D. Ala. 2012), a Southern District of Alabama decision featured prominently in Defendants' Motion, also involved a straightforward policy change without the need for extensive affirmative relief to ensure that the change would be appropriately and comprehensively implemented. The plaintiffs in *M.R.* sought only a declaration that the custom of the Board of School Commissioners of Mobile County to impose long-term suspensions without notice and a hearing violated the due process clause, as well as an injunction requiring written notice and a hearing before the imposition of long-term sanctions. *M.R.* is worlds apart from the instant challenge to the MCSD's far-reaching discriminatory policing practices.

'need' for it." *Id.* at 39-40. Similarly, in *In re Alien Children Education Litigation*, the Southern

District of Texas certified a Rule 23(b)(2) class in a case challenging the constitutionality of a

Texas statute prohibiting the use of a state fund to educate undocumented children, as

implemented by the policies of different school districts. In so doing, the court determined that

"[c]onsideration of the nature of the relief sought and the problems of securing compliance with

a judicial decree suggests that a class action is appropriate." 501 F. Supp. 544, 553 n.11 (S.D.

Tex. 1980) (*Alien Children*), *aff'd sub nom. Plyler v. Doe*, 457 U.S. 202 (1982). And, in

*Pederson II*, the Fifth Circuit reversed the district court's decision decertifying a Rule 23(b)(2)

class, holding that "a class was necessary, *if any such requirement exists.*" *Pederson II*, 213 F.3d

at 884 (emphasis added).

      These, of course, are not the only courts within the Fifth Circuit to have certified Rule

23(b)(2) classes. This Court recently certified a Rule 23(b)(2) class in *Dockery v. Fischer*,

finding, that "the Rule 23(a) and Rule 23(b)(2) prerequisites are satisfied with respect to the [ ]

Class as well as the identified subclasses" and that "any injunction ordered by the Court would

provide relief to each member of the class." 253 F. Supp. 3d 832, 855-56 (S.D. Miss. 2015). In

*Morrow*, the Eastern District of Texas certified a class seeking injunctive relief against an

"interdiction program that unlawfully targeted members of racial and ethnic minorities for stops

in violation of the Equal Protection Clause of the Fourteenth Amendment." 277 F.R.D. at 197.

The court noted that "[t]he Supreme Court has also recognized that civil rights cases, like this

one, 'alleging racial or ethnic discrimination are often by their nature class suits, involving

classwide wrongs' and common questions of law or fact are typically present." *Id.* (quoting *East

Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977)). While neither

*Dockery* nor *Morrow* expressly addresses the necessity doctrine, both recognize and reaffirm the

vitality of Rule 23(b)(2) in this Circuit as a means for redressing class-wide civil rights violations.

Thus, Defendants' suggestion that the necessity doctrine renders certification under Rule 23(b)(2) inappropriate except in cases presenting special mootness considerations (Mem. 6-8) is simply wrong. Certain courts within this Circuit have, in individual cases, employed the necessity doctrine in cases that challenge a specific, formal statute or rule and are resolvable through a simple, prohibitory injunction. Courts within this Circuit also, however, continue to grant class certification under Rule 23(b)(2) in cases such as *Dockery* and *Morrow* that challenge systemic deficiencies or unwritten policies that result in class-wide constitutional violations.

This more restrained, case-specific approach to the necessity doctrine is consistent with broader trends in the law. Courts and commentators have recognized that even those courts that continue to apply the necessity doctrine do so with increased reluctance and greater attention to the specific needs of the case at hand. *See, e.g.*, *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297, 310 (3d Cir. 2016) ("The circumstances in which classwide relief offers no further benefit, however, will be rare, and courts should exercise great caution before denying class certification on that basis."); *Harris v. Rainey*, 299 F.R.D. 486, 492 (W.D. Va. 2014) ("Over the last forty years, however, the necessity doctrine has been employed with less frequency. Indeed, many have rejected the necessity doctrine outright as being nontextual. …") (citing *Shady Grove* and collecting other authorities); 7AA C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1785.2 (3d ed. 2005) ("A review of the cases invoking this requirement reveals that there have been some important changes in its application as courts have become more sensitive to some of the effects of refusing class certification.").[7] As further discussed below,

---

[7] Notably, this section of Wright & Miller, relied upon by Defendants as support for the proposition that most courts have accepted some form of the necessity doctrine, also criticizes decisions that uncritically

even if this Court chooses to apply the necessity doctrine, in this case, class certification is both necessary and appropriate.

## III.    CLASS CERTIFICATION IS NECESSARY IN THIS CASE

Class certification is necessary in this case for at least four reasons. First, class certification is necessary because the scope of declaratory and injunctive relief that is available in a class action is potentially broader than that available in a case involving only the claims of individual plaintiffs. Second, class certification is also necessary because Plaintiffs seek affirmative injunctive relief, not merely a decree invalidating a specific statute or rule. Third, class certification is necessary to ensure that all class members have the practical ability to enforce a judgment that is entered for their benefit. Fourth, Defendants have demonstrated an intent to challenge the claims of the named Plaintiffs on standing and mootness grounds, and class certification will protect the rights of the class members to obtain relief in the event the claims of individual named Plaintiffs are found to be moot. Each one of these reasons provides independent grounds for denying Defendants' Motion.

### A.    <u>Class Certification Is Necessary To Obtain The Full Scope Of Plaintiffs' Requested Relief</u>

Class certification is necessary because the scope of the injunctive and declaratory relief available could otherwise be limited by the specific injuries suffered by the Plaintiffs themselves. The Fifth Circuit's decision in *Jones*, 519 F.2d 1090, is again instructive. There, the court reversed denial of class certification where the plaintiff sought a "broad, system-wide injunction" requiring comprehensive reform of a county jail. *Id.* at 1096. The Fifth Circuit found the case

---

adopt the doctrine, explaining that "what is lacking in these decisions is any analysis of whether in the particular case at hand it is appropriate to conclude that the same result could be achieved by individual litigation that would occur using Rule 23, or whether, even if the ultimate judgment in an individual action would benefit all affected by defendant's conduct, there are other reasons that support the need for class relief. Rather, in these cases, the presumption that there is no need is invoked and class certification is denied without any further inquiry." 7AA Wright & Miller at § 1785.2.

before it was "not a situation where the final injunctive order would be the same whether or not the action proceeds under Rule 23." *Id.* The *Jones* court explained that "[i]f plaintiff's action here were stripped of its class character, [the plaintiff] would lack standing to complain of conditions, practices, and procedures that had not touched him personally." *Id.* at 1095. The Fifth Circuit determined that "the injunction requiring the defendants to submit a comprehensive jail reform plan to the court [had] been foreclosed [by the district court's order denying class certification] as surely as if the order had spelled out the specific words 'injunction denied.'" *Id.* at 1096-97.

Similarly, in *Daniels v. City of New York*, the Southern District of New York denied a motion by defendants in a policing class action to decertify the class as unnecessary based on the defendants' submission of a stipulation stating that they "will apply the Court's declaratory and injunctive rulings in the above-captioned action, to all persons similarly situated to the named plaintiffs." 199 F.R.D. 513, 514 (S.D.N.Y. 2001). The Court specified several reasons as to why this stipulation did not render class certification inappropriate, including that "there are legitimate concerns over the scope of relief that can be awarded in the absence of class certification." *Id.* at 515. The court explained that if the class were decertified, "Defendants may very well argue that the type of complex, affirmative relief sought by plaintiffs is less appropriate for ten individual plaintiffs than it might be for a class of hundreds, if not thousands," including by arguing for geographic restrictions on the relief based on the individual plaintiffs' particular circumstances. *Id.*

The same is true here. The system-wide injunctions that may be appropriate in the class action context may be less appropriate in an individual action. *Cf. John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004) (district court "must narrowly tailor an injunction to remedy the

specific action which gives rise to the order"); *Plekowski v. Ralston-Purina Co.*, 557 F.2d 1218, 1221 (5th Cir. 1977) (recognizing that "the denial of class certification in some circumstances may for all practical purposes be tantamount to refusing an injunction"). Class certification is thus necessary to ensure that Plaintiffs and the class members they seek to represent are not improperly constrained in their ability to obtain appropriate declaratory and injunctive relief addressing the injuries suffered by the class as a result of the MCSD's Policing Program.

**B.**  **Class Certification Is Necessary Because Plaintiffs Seek Affirmative Injunctive Relief**

Courts have also found class certification necessary where, as here, "the plaintiffs are not merely seeking to stop the defendant's conduct" but are also "seeking an order that the defendant start acting to correct the alleged problems." *Conn. State Dep't of Soc. Servs. v. Shalala*, No. 99-cv-2020(SRU), 2000 WL 436616, at *3 (D. Conn. 2000) (certifying Rule 23(b)(2) class); *see also Jane B. by Martin v. New York City Dept. of Soc. Servs.*, 117 F.R.D. 64, 72 (S.D.N.Y. 1987) (necessity doctrine does not apply to preclude class certification "where the remedy sought is *mandatory*, requiring affirmative action on the part of the state to upgrade a constitutionally insufficient practice") (internal quotation marks, alterations, and citation omitted).

In *Mitchell v. Johnston*, another ruling ignored by Defendants, the Fifth Circuit held that class certification was "necessary" because "plaintiffs sought not only declaratory and injunctive relief, but moved the district court to require appellants to give notice to all eligible [ ] children of the reinstatement of their guaranteed benefits." 701 F.2d 337, 345 (5th Cir. 1983). The Fifth Circuit emphasized that "[t]his is not a case in which the plaintiffs simply attack the facial validity of a statute and seek to have it declared unenforceable." *Id.* As in *Mitchell*, Plaintiffs do not simply seek a declaration that the MCSD's Policing Program is unconstitutional. Plaintiffs also seek affirmative injunctive relief—such as requiring Defendants to create and maintain

comprehensive records of law enforcement encounters—to ensure that the MCSD's Policing Program is fully dismantled.

Several categories of the relief requested by Plaintiffs would require the MCSD to maintain comprehensive records of its law enforcement activity so that Plaintiffs and this Court will be able to objectively verify that the MCSD has ended its discriminatory policing practices. Complaint, Prayer for Relief, C(v)-(vii). For example, Plaintiffs ask this Court to order Defendants to "implement appropriate measures to ensure that MCSD deputies document ... all roadblocks and checkpoints, including the location of each roadblock and checkpoint and the number, race, and gender of each individual(s) stopped." *Id.* at C(v)(1). Plaintiffs further request that the Court order Defendants to maintain data concerning vehicular stops and other law enforcement encounters in an "up-to-date computerized database" and to make this data "publicly available, on a semiannual basis." *Id.* at C(vi)-(vii). Plaintiffs also ask this Court to require Defendants "to institute and implement improved policies and programs with respect to training, discipline and promotion designed to eliminate" all vestiges of the MCSD's racially discriminatory Policing Program. Complaint, Prayer for Relief, C(iii).[8] Class certification is

---

[8] Footnote 3 of Defendants' brief appears to question whether the relief requested by Plaintiffs is sufficiently specific for purposes of Fed. R. Civ. P. 65(d). While not directly relevant to the necessity doctrine issue presented by this motion, any such suggestion by Defendants is wrong. While it is true that, to merit certification under Rule 23(b)(2), "the injunctive relief [sought] must be specific," at the class certification stage, plaintiffs do not need to set forth "[t]he precise terms of the injunction." *Dockery*, 253 F. Supp. 3d at 851. The key question is instead whether "the class members' claim is such that a sufficiently specific injunction *can be conceived*." *Id.* (emphasis added, citations omitted); *see also Morrow*, 277 F.R.D. at 198 ("The real issue, however, is not whether Plaintiffs have precisely defined the requested injunction at the class certification state, but whether the class is 'sufficiently cohesive' … that an injunction *can be crafted* that meets the specificity requirements of Rule 65(d).") (emphasis added); *Parsons v. Ryan*, 289 F.R.D. 513, 524 (D. Ariz. 2013) ("[P]laintiffs are not required to come forward with an injunction that satisfie[s] Rule 65(d) with exacting precision at the class certification stage") (internal quotation marks and citation omitted), *aff'd* 754 F.3d 657 (9th Cir. 2014). The relief requested by Plaintiffs plainly suffices at the class certification stage. *See Morrow*, 277 F.R.D. at 199 (finding the requested relief sufficiently specific for Rule 23(b)(2) purposes where the "the injunction would focus on ending [the discriminatory policing program] and putting safeguards in place to monitor future stops to make racial profiling less likely"); *see also Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 517 (5th Cir.

necessary to ensure that Plaintiffs are not improperly constrained from obtaining appropriate forms of class-wide injunctive relief.

     C.     **Class Certification Is Necessary To Ensure That Declaratory And Injunctive Relief Inures To The Benefit Of All Class Members**

Defendants claim any relief ordered by this Court "will equally affect all citizens of Madison County, whether or not a class is certified." Mem. 2. Even if true, that does not, as discussed above, mean that the *same* relief will be appropriate regardless of whether a class is certified. And "even in a case where declaratory and injunctive relief would automatically inure to the benefit of those similarly situated with the plaintiffs," class certification is necessary because it "may facilitate the enforcement of a favorable judgment where a defendant fails to comply with a court order." *Westcott v. Califano*, 460 F. Supp. 737, 746 (D. Mass. 1978), *aff'd*, 443 U.S. 76 (1979); *see also Christina A. ex rel. Jennifer A. v. Bloomberg*, 197 F.R.D. 664, 672 (D.S.D. 2000) ("While this Court does not doubt the good faith of the Defendants, the class certification will insure that any injunctive relief, if ordered, will apply not just to the named Plaintiffs but to all those subject to any conditions found to be unconstitutional."); *Nehmer v. U.S. Veterans' Admin.*, 118 F.R.D. 113, 119 (N.D. Cal. 1987) (explaining that the necessity doctrine "overlooks [numerous] procedural and substantive advantages" of class certification, such as the fact that "[c]lass actions enable unidentified class members to enforce court orders with contempt proceedings").

As an initial matter, while Defendants repeatedly assert that "[a]n injunction entered at the behest of a single plaintiff, if appropriate, will have exactly the same effect as one issued for a certified class" (Mem. 3), Defendants nowhere actually concede that they will agree to apply

---

1969) (finding an injunction met Rule 65(d)'s requirements because "its command that [the defendant] keep and preserve records is clearly understandable").

any Order ultimately issued by this Court on a class-wide basis. Class certification is necessary for this reason alone. *See Mitchell*, 701 F.2d at 345 (finding a class action "necessary" where the defendants had not "agreed to apply the court's judgment on a classwide basis"); *Shalala*, 2000 WL 436616, at *3 (finding the defendants' representations that a judgment would apply classwide insufficient to preclude class certification based on the necessity doctrine, where the defendants had not "offered a clear stipulation" to this effect); *Brown v. Giuliani*, 158 F.R.D. 251, 269 (E.D.N.Y. 1994) (finding "class certification necessary" where the defendant had not "agreed that the underlying judgment against it would bind it with respect to all potential claimants").

Defendants also cite to Fed. R. Civ. P. 71, an infrequently-litigated provision stating that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." But whether a future order entered in this case if class certification is denied might ultimately "grant[ ] relief for a nonparty" or "be enforced by a nonparty" cannot be determined at this stage, and it is in no way clear that Defendants would not resist both the issuance of any such order and any attempts by nonparties to enforce such an order against them.[9] And in any event, the Federal Rules of Civil Procedure simply do not express a preference for Rule 71 over Rule 23, or require Plaintiffs to attempt to avail themselves of Defendants' preferred procedural vehicles before pursuing an otherwise properly-constituted class action. *See Shady Grove*, 559 U.S. at 399 ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his

---

[9] For instance, if the Court denies certification but grants relief that extends to non-parties, a non-party will still independently need to establish standing in order to enforce the Order. *Moore v. Tangipahoa Parish School Bd.*, 625 F.2d 33, 34 (5th Cir. 1980) ("While Rule 71 allows non-parties to enforce orders made in their favor, it can not be adopted by one to enforce an order in an action in which she has no standing to sue.") (citations omitted).

claim as a class action."); *Gayle*, 838 F.3d at 311 (in considering the necessity doctrine, courts

should take care to avoid "'plac[ing] the defendant in the driver's seat,' and allowing the

defendant to, in essence, unilaterally prevent classwide relief") (quoting *Campbell-Ewald Co. v.

Gomez*, 136 S. Ct. 663, 672 (2016)).[10]

Even if Defendants agreed to apply any orders on a class-wide basis and the Court

authorized nonparties to enforce its orders, many members of the proposed class likely lack the

resources to procure their own legal representation and come to this Court to seek enforcement

of its orders. *See, e.g.*, *Gayle*, 838 F.3d at 311 ("Where class certification is denied on the ground

of necessity, yet would-be class members continue to be subjected to injury, their only option

may be to undertake the expense, burden, and risk of instituting their own litigation—barriers

that in many cases will be prohibitive. The consequences can be significant for those who would

otherwise benefit from the relief afforded by Rule 23(b)(2) ..."); *Floyd*, 283 F.R.D. at 177

(finding class certification necessary because "[t]he vast majority of New Yorkers who are

unlawfully stopped will never bring suit to vindicate their rights"); *Cutler v. Perales*, 128 F.R.D.

39, 47 (S.D.N.Y. 1989) (finding class certification necessary where "most putative class

members ... could not as effectively bring separate actions").

Class members may well also be deterred for other reasons from coming to court to

obtain individual relief. *See, e.g.*, *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th

Cir. 1999) (noting that "potential class members … might be unwilling to sue individually or join

a suit for fear of retaliation …"). And, of course, there is no reason to believe that the Court, the

---

[10] Indeed, Defendants' attempts to construct a complex set of workarounds that would approximate the
effects of class certification only serve to demonstrate the inapplicability of the necessity doctrine. The
necessity doctrine, on its own terms, properly applies where class certification would be a mere formality,
or serve no purpose—not where alternative procedures, more burdensome to Plaintiffs and the class
members than class certification, could be adopted that would in some respects mimic the effects of
certification.

parties, or the class would be better served through piecemeal enforcement attempts brought by individual aggrieved members of the public as opposed to the comprehensive oversight and remediation procedures that could be developed in a class action.[11] Under the circumstances of this case, "[c]onsideration of the nature of the relief sought and the problems of securing compliance with a judicial decree suggests that a class action is appropriate." *Alien Children,* 501 F. Supp. at 553 n.11.

### D. Class Certification Is Necessary To Protect The Class Members In The Event Individual Claims Become Moot

Defendants repeatedly claim that class certification is not necessary because "the issue of mootness ha[s] not arisen" in this case. Mem. 7; *see also* Mem. 8 ("Neither the mootness possibility recognized in *Johnson* nor any other complication appears in this record."). Yet Defendants have moved for summary judgment on the claims of two of the named plaintiffs in this action—Latoya Brown and Steven Smith—on substantially similar grounds. *See* Motion for Summary Judgment as to Individual and Class Based Claims by Plaintiff, Latoya Brown (ECF 209); Motion for Summary Judgment as to Individual and Class Based Claims by Plaintiff, Steven Smith (ECF 211). Defendants incorrectly contend that Ms. Brown and Mr. Smith are not likely to suffer any injury in the future as a result of the MCSD's Policing Program because they no longer reside in Madison County.[12]

---

[11] Along similar lines, 25 members of the proposed class have submitted declarations concerning Defendants' violations of their constitutional rights. *See* Exs. 37-61, Pls.' Mot. for Class Cert. (ECF Nos. 231-37 through 231-61). The statutes of limitations applicable to these class members' claims are currently tolled during the pendency of Plaintiffs' class certification motion. *See Odle v. Wal-Mart Stores, Inc.*, 747 F.3d 315, 320 (5th Cir. 2014). If class certification is denied, those class members, as well as other members of the class, may seek to independently litigate those claims in order to protect their rights. Certification of the class will avoid the need for such piecemeal litigation of class members' similar claims against Defendants, all of which arise from the same unconstitutional polices alleged by Plaintiffs.

[12] This claim is both factually and legally wrong. While Ms. Brown temporarily left Madison County, she has since returned and currently resides in Canton, Mississippi. *See* L. Brown Decl. (Apr. 29, 2018), Ex. 30, Pls.' Consolidated Resp. in Opp. to Defs.' Mots. for Summ. J. (ECF No. 260-30). Mr. Smith presently

Defendants' ill-conceived standing and mootness arguments with respect to the claims asserted by Ms. Brown and Mr. Smith highlight the necessity for class certification in this action. Though unlikely, it is possible that named Plaintiffs may choose to move out of Madison County for economic or personal reasons. Because there is a risk that such Plaintiffs' claims may become moot, certification is necessary here. *See, e.g.*, *Harris*, 299 F.R.D. at 493 ("[A] romantic break-up, a death, or an out-of-state move could moot the claims of either of the named same-sex couples; certifying the class would avoid the resultant waste of judicial resources if the claims of a named plaintiff were to become moot."); *Reynolds v. Giuliani*, 118 F. Supp. 2d 352, 391 (S.D.N.Y. 2000) ("[C]lass certification is not a mere formality because it will insure against the danger of this action becoming moot"); *accord Arizonans for Official English v. Arizona*, 520 U.S. 43, 72 n.27 (1997) (noting that mootness concerns could have been avoided had the plaintiff sought class certification instead of proceeding as an individual).

---

resides in Dallas, Texas, but he has deep and longstanding connections to Madison County, where he was born and spent most of his life. He not only plans to return in the near term to visit his family, but also intends to permanently reside in Madison County once he is financially able to do so. Ms. Brown and Mr. Smith have one child together, and they are expecting another. Mr. Smith will be returning to Madison County and staying for an extended period of time when the child is born in summer 2018. *See* S. Smith Decl. (Apr. 28, 2018), Ex. 34, Pls.' Consolidated Resp. in Opp. to Defs.' Mots. for Summ. J. (ECF No. 260-34).

## CONCLUSION

For all these reasons, and as further set forth in Plaintiffs' Motion for Class Certification, this Court should certify the class and subclasses proposed by Plaintiffs and deny Defendants' Motion to Deny Class Certification.

Dated: May 8, 2018

By:   /s/ Joshua Tom
　　　　　　Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Christopher K. Shields (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
christopher.shields@stblaw.com
bonnie.jarrett@stblaw.com

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice*)
Jeffery Robinson (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiffs*

21

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2018, I caused the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION** to be electronically filed with the Clerk of the Court using the CM/ECF system, through which copies have been served to:


WISE CARTER CHILD & CARAWAY, P.A.
Michael B. Wallace (Miss. Bar No. 6904)
Charles E. Ross (Miss. Bar No. 5683)
James E. Graves (Miss. Bar No. 102252)
Charles E. Cowan (Miss. Bar No. 104478)
T. Russell Nobile (Miss. Bar No. 100682)
Post Office Box 651
Jackson, MS 39205
(601) 968-5534
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com
trn@wisecarter.com

CURRIE JOHNSON & MYERS, P.A.
Rebecca B. Cowan (Miss. Bar No. 7735)
P.O. Box 750
Jackson, MS 39205
(601) 969-1010
bcowan@curriejohnson.com

KATIE BRYANT SNELL, PLLC
Katie Bryant Snell (Miss. Bar No. 103607)
P.O. Box 3007
Madison, Mississippi  39130-3007
(601) 460-9800
Katie@katiebryantsnell.com

PETTIS, BARFIELD & HESTER, P.A.
J. Lawson Hester (Miss. Bar No. 2394)
Jason E. Dare (MSB No. 100973)
4450 Old Canton Road, Suite 210
Jackson, Mississippi  39211
(601) 987-5300
lhester@pbhfirm.com
jdare@pbhfirm.com


/s/ Joshua Tom
Joshua Tom