# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

LATOYA BROWN; LAWRENCE
BLACKMON; HERBERT ANTHONY
GREEN; KHADAFY MANNING;
QUINNETTA MANNING; MARVIN
MCFIELD; NICHOLAS SINGLETON;
STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER,
individually and on behalf of a class of all
others similarly situated,

      Plaintiffs,

         v.

MADISON COUNTY, MISSISSIPPI;
SHERIFF RANDALL S. TUCKER, in his
official capacity; and MADISON COUNTY
SHERIFF'S DEPUTIES JOHN DOES #1
through #6, in their individual capacities,

      Defendants.

Civil Action No.
3:17-cv-00347-WHB-LRA

**ORAL ARGUMENT
REQUESTED**

# MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' AMENDED
MOTION TO STRIKE NEWSPAPER ARTICLES ATTACHED TO
<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...........................................................................1

BACKGROUND ...............................................................................................2

ARGUMENT....................................................................................................7

    I.     THE NEWS REPORTS SHOULD NOT BE EXCLUDED BECAUSE THE
           FEDERAL RULES OF EVIDENCE NEED NOT BE SATISFIED AT THE
           CLASS CERTIFICATION STAGE ...................................................7

    II.    THE NEWS REPORTS ARE NOT INADMISSIBLE HEARSAY ....................9

           A.     Four of The News Reports Are Not Offered For The Truth Of The
                     Matter Asserted And Thus Are Not Hearsay ..............................9

           B.     Five of the News Reports Fall Under Appropriate Hearsay Exceptions...11

           C.     Defendants' Authorities Are Inapposite ..................................14

           D.     Other Evidence Corroborates The Content Underlying The News
                     Reports..................................................................................16

CONCLUSION................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Astre v. McQuaid, et al.*,
No. 3:18-CV-00138-WHO, 2018 WL 2215832 (N.D. Cal. May 15, 2018)..........................10

*Bell v. Addus Healthcare, Inc.*,
No. C06-5188RJB, 2007 WL 3012507 (W.D. Wash. Oct. 12, 2007).....................................7

*Bell v. Ascendant Sols., Inc.*,
422 F.3d 307 (5th Cir. 2005) ...................................................................................................8

*Castillo v. Tyson Foods, Inc.*,
No. CIV.A. H-14-2354, 2015 WL 6039236 (S.D. Tex. Oct. 15, 2015).................................2

*Dallas Cty. v. Commercial Union Assur. Co.*,
286 F.2d 388 (5th Cir. 1961) ..........................................................................................15, 16

*FDIC v. Mmahat*,
907 F.2d 546 (5th Cir. 1990) .................................................................................................11

*Flores v. Anjost Corp.*,
284 F.R.D. 112 (S.D.N.Y. 2012) .............................................................................................7

*Gonzalez v. Millard Mall Servs., Inc.*,
281 F.R.D. 455 (S.D. Cal. 2012).............................................................................................7

*Hamilton v. First Am. Title Ins. Co.*,
266 F.R.D. 153 (N.D. Tex. 2010),
*vacated on other grounds*, 423 F. App'x 425 (5th Cir. 2011) ............................................7, 8

*Hicks v. Charles Pfizer & Co. Inc.*,
466 F. Supp. 2d 799 (E.D. Tex. 2005) ..................................................................................12

*In re Carthage Tr.*,
No. 212CV10861ODWPJWX, 2013 WL 12182678 (C.D. Cal. Jan. 11, 2013)....................10

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
644 F.3d 604 (8th Cir. 2011) ...................................................................................................8

*Kean v. Clark*,
56 F. Supp. 2d 719 (S.D. Miss. 1999) ...................................................................................15

*Merrill v. S. Methodist Univ.*,
806 F.2d 600 (5th Cir. 1986) .................................................................................................15

*Nash-Utterback v. Sch. Bd. of Palm Beach Cty.*,
No. 11-CV-80513-JMH, 2012 WL 12865852 (S.D. Fla. June 8, 2012) ................................9

*Perez v. Alcoa Fujikura, Ltd.*,
 969 F. Supp. 991 (W.D. Tex. 1997) ..................................................................9, 10

*Positive Black Talk Inc. v. Cash Money Records, Inc.*,
 394 F.3d 357 (5th Cir. 2004),
 *abrogated by Reed Elsevier, Inc. v. Muchnick*,
 559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010) ........................................15

*Ritter v. Hughes Aircraft Co.*,
 58 F.3d 454 (9th Cir. 1995) ....................................................................................10

*Roberts v. City of Shreveport*,
 397 F.3d 287 (5th Cir. 2005) ..................................................................................15

*Steward v. Janek*,
 315 F.R.D. 472 (W.D. Tex. 2016) ........................................................................7, 8

*Unger v. Amedisys Inc.*,
 401 F.3d 316 (5th Cir. 2005) ....................................................................................8

*United States v. Chaney*,
 299 F. App'x 447 (5th Cir. 2008) ............................................................................11

*United States v. Michtavi*,
 155 F. App'x 433 (11th Cir. 2005) ............................................................................9

*Young v. Fortis Plastics, LLC*,
 294 F.R.D. 128 (N.D. Ind. 2013),
  *modified in part sub nom. Lace v. Fortis Plastics LLC*, No. 3:12-CV-363 JD,
 2015 WL 1383806 (N.D. Ind. Mar. 24, 2015) ..........................................................8

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................7

Fed. R. Evid. 201(b) .......................................................................................................10

Fed. R. Evid. 801(c) .........................................................................................................9

Fed. R. Evid. 801(d)(2)(A) ......................................................................................11, 14

Fed. R. Evid. 807 ...........................................................................................................11

**Other Authorities**

11-56 Moore's Federal Practice - Civil § 56.91 (2018) ....................................................2

Plaintiffs Latoya Brown, Lawrence Blackmon, Khadafy Manning, Quinnetta Manning, Nicholas Singleton, Steven Smith, Bessie Thomas, and Betty Jean Williams Tucker ("Plaintiffs") respectfully submit this Memorandum of Law in response to the Amended Motion to Strike Newspaper Articles Attached to Plaintiffs' Motion For Class Certification ("Motion") filed by Defendants Madison County, Mississippi and Sheriff Randall Tucker ("Defendants"). (ECF No. 274.) Pursuant to L.U. Civ. R. 7(b)(6)(A), Plaintiffs respectfully request oral argument on Defendants' Motion.[1]

## PRELIMINARY STATEMENT

On March 14, 2018, Plaintiffs filed a Motion for Class Certification, in which they cited substantial evidentiary support, a fraction of which included nine news reports (each a "News Report" and collectively, "News Reports"). Defendants have filed a motion to strike the News Reports, with Defendants' sole two-paragraph argument being that such reports purportedly are inadmissible hearsay with a single string cite to a few inapposite cases. As set forth in detail herein, however, the News Reports were each properly included in Plaintiffs' Motion for Class Certification either because they are not cited for their truth or are otherwise encompassed within appropriate hearsay exceptions. Moreover, the deposition testimony of Defendants' own witnesses corroborates the statements and propositions for which these News Reports are cited, as does other documentary evidence.

In any event, the evidentiary standards for a motion for class certification are far more relaxed than those that apply at trial. Any questions as to the admissibility of the News Reports at trial do not prevent the Court from considering and relying upon these materials in ruling on

---

[1] Because the issues presented by this Motion overlap with the issues presented by Plaintiffs' pending Motion for Class Certification (ECF No. 231), Plaintiffs request that argument on the instant Motion should be held jointly with argument on Plaintiffs' Motion for Class Certification.

Plaintiffs' Motion for Class Certification. The News Reports provide useful evidence for the Court's consideration in evaluating Plaintiffs' Motion for Class Certification, including, among other points, to show that complaints of racial profiling by the Madison County Sheriff's Department ("MCSD") and Black citizens' protests of the MCSD's racially discriminatory policing practices were widely reported during former Sheriff Toby Trowbridge's administration and that Sheriff Randall Tucker intended to maintain the policies of the former administration.

Ultimately, Defendants' Motion simply is yet another example of Defendants' attempt to proliferate collateral motion practice surrounding Plaintiffs' Motion for Class Certification and thus delay its resolution.[2] These tactics should be soundly rejected, and Defendants' Motion should be denied.

## BACKGROUND

Plaintiffs cite the nine News Reports for statements made by Defendants and their representatives, including Sheriff Tucker and former Sheriff Trowbridge, and to provide evidence of events reported in Madison County during the time period relevant to Plaintiffs' allegations in the Complaint. The propositions for which Plaintiffs cite the News Reports further have been affirmed, or corroborated, by Sheriff Tucker, former Sheriff Trowbridge, and other Madison County personnel in their deposition testimony, as well as through other documentary evidence.

---

[2] In response to Plaintiffs' Motion for Class Certification, in addition to this Motion, Defendants have filed (i) a Motion to Strike Declarations (ECF No. 285); (ii) a Conditional Motion for Evidentiary Hearing (ECF No. 269); (iii) a Daubert Motion and Motion in Limine to Exclude the Report and Testimony of Bryan Ricchetti (ECF No. 270); and (iv) a Motion in Limine to Exclude the Declaration and Testimony of Rahul Guha (ECF No. 272). Motions to strike evidence also are disfavored, 11-56 Moore's Federal Practice - Civil § 56.91 (2018), and courts in the Fifth Circuit have held that "[t]here is no need to make a separate motion to strike," reclassifying such motions as objections. *Castillo v. Tyson Foods, Inc.*, No. CIV.A. H-14-2354, 2015 WL 6039236, at *2 (S.D. Tex. Oct. 15, 2015) (citation omitted) (denying motion to strike affidavit in support of opposing party's motion).

Five of the News Reports concern complaints of discrimination and racial profiling by the MCSD during the tenure of then-Sheriff Trowbridge and Sheriff Trowbridge's response:

- *New supervisors take office Friday*, MADISON COUNTY JOURNAL (Jan. 2, 2008) [Mot. for Class Cert. Ex. 69] reports that Sheriff Trowbridge has "been the subject of complaints from African-Americans living in Canton and Flora who say he practices racial profiling." Sheriff Trowbridge testified that he was aware of the protests and complaints concerning racial profiling during his administration. *See* Ex. 1, Trowbridge Tr. 95:17-19 (Q: "You were aware that the protests were going on?" A: "Oh, yes, I was there."). Supervisor Paul Griffin, the Supervisor for District 5 of the Board of Supervisors for Madison County, also affirmed the reports of such complaints under Sheriff Trowbridge's administration. *See* Ex. 2, Griffin Tr. 107:3-6 (Q: "[Y]ou had had complaints from citizens of Madison County about roadblocks under Sheriff Trowbridge; right?" A: "Uh-huh."), 108:17-21 (Q: "Now, when you had those complaints against Sheriff Trowbridge about the roadblocks, did you have concerns about racial profiling under Sheriff Trowbridge?" A: "Yes.").

- *Is system fair*?, THE CLARION-LEDGER (July 22, 2007) [Mot. for Class Cert. Ex. 70], an exhibit introduced at the depositions of Supervisor Griffin and former Sheriff Trowbridge, recounts statements by Supervisor Griffin regarding how the MCSD was perceived as targeting Black community members by many people in Madison County. Supervisor Griffin reaffirmed the reported statements in his deposition, testifying that this perception of Black community members was valid. Ex. 2, Griffin Tr. 123:22-124:3 (Q: "Do you think that the Concerned Citizens of Canton, their concerns about frequent roadblocks in the predominantly black areas … had merit?" A: "Yes.").

- *Roadblocks questioned in Canton*, THE CLARION-LEDGER (July 18, 2006) [Mot. for Class Cert. Ex. 71], an exhibit introduced at the depositions of Supervisor Griffin and former Sheriff Trowbridge, reports that hundreds of residents of Canton, Mississippi petitioned to end racial profiling and frequent roadblocks in predominantly Black neighborhoods. In his deposition, Supervisor Griffin recalled the residents' petition and stated that these racial profiling concerns had merit. Ex. 2, Griffin Tr. 115:8-19 (Q: "So do you remember in 2006 when a group of Canton residents … presented the Madison County Board of Supervisors with a petition bearing 664 signatures, demanding the end of frequent roadblocks in the predominantly black areas…?" A: "Yeah, I remember that." Q: "And did you think that those concerns had merit?" A: "Yes, I think they did."). Supervisor Griffin also was asked specifically about this News Report and he reiterated his belief that the citizens' concerns had merit. *Id.* 123:22-124:3.

- Elizabeth Crisp, *Racial profiling accusations thrown at Madison sheriff in board meeting*, THE CLARION-LEDGER (Nov. 6, 2007) [Mot. for Class Cert. Ex. 72], an exhibit introduced at the deposition of former Sheriff Trowbridge, reported that citizens accused the MCSD of racial discrimination during a Madison County Board of Supervisors meeting and that Sheriff Trowbridge had stated that he did not meet with residents to discuss complaints. Karl Banks, a Black member of the Board of Supervisors, was quoted as stating, "there is a real feeling in the community that the department is discriminating against people," and that these concerns were not being addressed. Supervisor Griffin testified that he remembered this board meeting and the citizens' complaints, and that he agreed with the sentiment expressed by Mr. Banks. Ex. 2, Griffin Tr. 117:10-118:11 (Q: "Do you remember that [2007 board meeting]?" A: "Yes." Q: "And do you agree with

Mr. Banks that there's a feeling in the community about racial discrimination?" A: "Yes."). Sheriff Trowbridge also testified that he refused to meet with residents to discuss complaints. *See* Ex. 1, Trowbridge Tr. 103:3-17 (Q: "Is it correct that you would not meet with residents to discuss complaints?" A: "No, I'm not going to go into a group of people and just start fending for myself, no." Q: "And why not?" A: "Well, I felt like everything was going the way it should be. You're going to have disgruntled people whether it be in law enforcement or the car business if they don't like the way their car's running or whatever, and for me to just go sit in there and field 20, 30, 40, 50 questions of just throwing them at me left and right, I wasn't going to let it get out of hand like that. Any complaint that came to the sheriff's office was given to the chief, Belvedresi, to look into.").

- Elizabeth Crisp, *House panel considers bill to outlaw racial profiling*, THE CLARION-LEDGER (Jan. 14, 2009) [Mot. for Class Cert. Ex. 73] reports of Sheriff Trowbridge's refusal to attend a 2009 state legislature panel assembled to consider a law prohibiting racial profiling and his public criticism of the proposal.

The remaining four News Reports concern statements made by Sheriff Tucker, both during his campaign for the office of Sheriff and his subsequent administration:

- Lacey McLaughlin, *Making Amends*, JACKSON FREE PRESS (Aug. 17, 2011) [Mot. for Class Cert. Ex. 75], an exhibit introduced at the deposition of Sheriff Tucker, and *Madison County Sheriff's Deputy Captain Randy Tucker to Run for Madison County Sheriff*, Y'ALL POLITICS (Jan. 19, 2011) [Mot. for Class Cert. Ex. 76] both report that Sheriff Tucker pledged, during his campaign, to maintain Sheriff Trowbridge's policies if elected. During his deposition, Sheriff Tucker testified that he had promised during his

election campaign to maintain the policies of the past administration. Ex. 3, R. Tucker Tr. 96:25-97:5 (Q: "Would it be a true statement on, as of August 2011, was it your desire to maintain the quality of law enforcement that we have under Sheriff Trowbridge?" A: "Yes."), 99:11-16 (Q: "[A]nd part of your campaign promises were to maintain the level of professional integrity and high quality of law enforcement … that were in place under Sheriff Trowbridge; correct?" A: "Yes, he had some very good qualities."). Defendants also produced a memorandum from Sheriff Tucker corroborating these News Reports. *See* Memo from Sheriff Tucker to All Deputies/Employees (Jan. 3, 2012) [Mot. For Class Cert. Ex. 77] (notifying deputies and employees that Sheriff Tucker's administration was maintaining the "policies and procedures under the administration of Sheriff Toby Trowbridge").

- *Madison sheriff responds to Jackson councilman's remarks*, THE CLARION-LEDGER (Jan. 4, 2016) [Mot. for Class Cert. Ex. 80], is a News Report featuring an embedded video of an interview in which Sheriff Tucker, on camera, referred to Jackson, Mississippi residents as "thug constituents" of Jackson city councilman Kenneth Stokes, and stated that Mr. Stokes was "setting his race back by implicating a race issue."[3]  Sheriff Tucker has since testified that he used the words "he's putting his race back" with respect to Mr. Stokes, and he stands by his remarks in this video (and also did not dispute that he made those statements). Ex. 3, R. Tucker Tr. 287:21-25.

- *Q&A with Sheriff Randy Tucker*, MADISON COUNTY JOURNAL (Jan. 14, 2015) [Mot. for Class Cert. Ex. 100] reports Sheriff Tucker's statement that the MCSD does not have any

---

[3] The video can be viewed at https://www.clarionledger.com/videos/news/local/2016/01/04/78247954/. The quoted statements are at 1:50-57 and 4:46-50 in the video.

plans to introduce police body cameras and his view that such cameras are unnecessary. In Sheriff Tucker's deposition, he confirmed that he viewed the proposed bill to introduce body cameras as "ridiculous." Ex. 3, R. Tucker Tr. 171:23-172:4 ( (Q: "What did you find ridiculous about [the introduced bills for body cameras]?" A: "I'm sure if I thought they were ridiculous, I thought they were ridiculous."), 175:10-11 ("I think the body cameras are an extreme burden to law enforcement…"). Defendants also produced an email from Sheriff Tucker calling the proposed bill for body cameras "utterly ridiculous." Jan. 8, 2016 Email [Mot. For Class Cert. Ex. 99].

## ARGUMENT

I.   **THE NEWS REPORTS SHOULD NOT BE EXCLUDED BECAUSE THE FEDERAL RULES OF EVIDENCE NEED NOT BE SATISFIED AT THE CLASS CERTIFICATION STAGE**

As an initial matter and before even addressing Defendants' deficient argument that the News Reports are purportedly inadmissible hearsay, Defendants' Motion must fail given it completely ignores the significantly lower standard for the Court's consideration of evidence at the class certification stage. Rule 23 of the Federal Rules of Civil Procedure does not set forth any evidentiary standards, and courts, including those in the Fifth Circuit, have found that "the rules of evidence do *not* apply in full force" at the class certification stage. *Steward v. Janek*, 315 F.R.D. 472, 478 (W.D. Tex. 2016) (emphasis added).[4] Therefore, a district court may consider

---

[4] *See also Gonzalez v. Millard Mall Servs., Inc.*, 281 F.R.D. 455, 459 (S.D. Cal. 2012) ("Since a motion to certify a class is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence… Therefore, the [c]ourt may consider inadmissible evidence at the class certification stage."); *Bell v. Addus Healthcare, Inc.*, No. C06-5188RJB, 2007 WL 3012507, at *2 (W.D. Wash. Oct. 12, 2007) ("[C]lass certification is not a dispositive motion that requires Plaintiff to submit admissible evidence in support of her arguments for certification."); *Flores v. Anjost Corp.*, 284 F.R.D. 112, 124 n.3 (S.D.N.Y. 2012) (finding that on a motion for class certification, "most district courts … have held that evidence need not be admissible under the Federal Rules of Evidence—or that the rules should not be applied strictly"); *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 159

and rely on evidence, including news reports, at the class certification stage that ultimately may not be admissible at trial. *See In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 611 (8th Cir. 2011) ("We have never required a district court to decide conclusively at the class certification stage what evidence will ultimately be admissible at trial."); *Young v. Fortis Plastics, LLC*, 294 F.R.D. 128, 135 (N.D. Ind. 2013) (considering newspaper article offered as exhibit to class certification motion, and finding that "[w]hile th[e] newspaper article may not be admissible at trial, the [c]ourt can rely on the article at this stage of the proceedings"), *modified in part sub nom. Lace v. Fortis Plastics LLC*, No. 3:12-CV-363 JD, 2015 WL 1383806 (N.D. Ind. Mar. 24, 2015).[5]

Accordingly, the News Reports should be considered as evidence in support of Plaintiffs' Motion for Class Certification, regardless of their admissibility. The Court can and should consider all available and useful evidence in determining whether or not to certify the class, and thus, Defendants' Motion should be denied. *See Steward*, 315 F.R.D. at 478-79.

---

(N.D. Tex. 2010) (finding that the lack of direct evidence on the number of class members presented no bar to a finding of numerosity), *vacated on other grounds*, 423 F. App'x 425 (5th Cir. 2011).

[5] In a fraud-on-the-market theory case, not applicable here, the Fifth Circuit has held that a determination of class certification must be based on adequate admissible evidence. *Unger v. Amedisys Inc.*, 401 F.3d 316, 319, 325 (5th Cir. 2005). However, *Unger* specifically dealt with examination of plaintiffs' fraud-on-the-market allegations and, even in that limited context, it held that class certification findings should be based on "adequate" admissible evidence, not that all evidence the court may consider must be admissible. *See* 401 F.3d at 319; *see also Hamilton*, 266 F.R.D. at 159 ("[*Unger*] held only that plaintiffs seeking to certify a securities-fraud class action under a fraud-on-the-market theory are not entitled to a class-wide presumption of reliance unless they introduce admissible evidence that the security at issue is traded in an efficient market…  Outside of that specific context, 'the lack of any direct evidence' … [was] no bar."); *Bell v. Ascendant Sols., Inc.*, 422 F.3d 307, 312–13 (5th Cir. 2005) (noting that *Unger* concerned "the standards and procedures used by district courts when considering certification of securities class actions dependent on the 'fraud on the market' theory") (citation omitted). As previously noted, the News Reports further represent only a fraction of the substantial evidence cited by Plaintiffs in support of class certification.

## II.      THE NEWS REPORTS ARE NOT INADMISSIBLE HEARSAY

Should the Court still consider Defendants' sole argument that the News Reports should be excluded as supposedly constituting inadmissible hearsay under the Federal Rules of Evidence (ECF No. 275 at 4), this argument also fails. All of the News Reports may be considered on class certification. First, four of the News Reports are not hearsay, as they are not being offered for the truth of the matter asserted. Second, the remaining five News Reports fall under appropriate hearsay exceptions. Therefore, Defendants are not entitled to an order striking the News Reports, and Defendants' Motion should be denied.

### A.      Four of The News Reports Are Not Offered For The Truth Of The Matter Asserted And Thus Are Not Hearsay

Pursuant to Rule 801(c) of the Federal Rules of Evidence, hearsay is a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement." News reports may be considered to the extent that "they are being offered not to prove the truth of the matters asserted, but only that they were reported." *Perez v. Alcoa Fujikura, Ltd.*, 969 F. Supp. 991, 999 (W.D. Tex. 1997); *see also United States v. Michtavi*, 155 F. App'x 433, 435–36 (11th Cir. 2005) (finding no abuse of discretion in trial court's consideration of newspaper articles where "the Government did not offer the newspaper articles to prove the truth of the matter asserted therein … but rather to show that newspaper articles reporting a New York drug bust existed"); *Nash-Utterback v. Sch. Bd. of Palm Beach Cty.*, No. 11-CV-80513-JMH, 2012 WL 12865852, at *2 n.3 (S.D. Fla. June 8, 2012) (finding statements in news reports were "not hearsay when offered to make a showing that [p]laintiff made statements that can be considered critical of the [d]efendant … and not to prove the truth of the matters asserted.").

In support of their Motion for Class Certification, Plaintiffs have offered four of the News Reports not for their truth, but to show that complaints of racial profiling by the MCSD

and Black citizens' protests of the MCSD's racially discriminatory policing practices were widely reported during former Sheriff Trowbridge's administration. *See New supervisors take office Friday* at 2 (noting that Sheriff Trowbridge had "been the subject of complaints from African-Americans living in Canton and Flora who say he practices racial profiling"); *Is system fair?* (Supervisor Griffin stating that the MCSD was perceived as targeting Black community members); *Roadblocks questioned in Canton*; *Racial profiling accusations thrown at Madison sheriff in board meeting.* For example, *Roadblocks questioned in Canton* reports that Canton residents presented a petition bearing 664 signatures to the Madison County Board of Supervisors demanding an end to the "frequent roadblocks in predominantly black neighborhoods" and "racial profiling." Plaintiffs offer this News Report to show the widespread accounts of the civilian complaints that were brought to the attention of Sheriff Trowbridge, not for the truth of the underlying claims. Mem. of Law in Support of Pls.' Mot. for Class Cert. (ECF No. 232) at 4-5. Thus, these four News Reports are not used to prove that racial profiling and protests, in fact, occurred, but rather to demonstrate that such issues were widely reported and Defendants were aware of the complaints and community discontent described in such reports. *See Perez*, 969 F. Supp. at 999 (considering news articles as evidence that the events were reported, not for the truth of the matters asserted). These four News Reports are not hearsay, and such helpful evidence should be considered by this Court on class certification.[6]

---

[6] Furthermore, Defendants fail to make any argument disputing the fact that the events of the petition and complaints occurred as reported in the News Reports. As a result, the Court may take judicial notice of the petition and complaints documented in the News Reports, since they are facts "generally known within the trial court's territorial jurisdiction," or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458-59 (9th Cir. 1995) (permitting judicial notice of an event reported in a newspaper article); *Astre v. McQuaid, et al.*, No. 3:18-CV-00138-WHO, 2018 WL 2215832, at *3 n.3 (N.D. Cal. May 15, 2018) (same); *In re Carthage Tr.*, No. 212CV10861ODWPJWX, 2013 WL 12182678, at *1 n.3 (C.D. Cal. Jan. 11, 2013) (same).

**B.**     **Five of the News Reports Fall Under Appropriate Hearsay Exceptions**

The other five News Reports fall under the admission by party opponent hearsay exception and/or the residual hearsay exception, and thus cannot be excluded on hearsay grounds.

Plaintiffs cited the video interview of Sheriff Tucker embedded in *Madison sheriff responds to Jackson councilman's remarks*. In this recorded video interview, Sheriff Tucker, on camera, referred to Jackson, Mississippi residents as "thug constituents" of Jackson city councilman Kenneth Stokes, and stated that Mr. Stokes was "setting his race back by implicating a race issue." *See Madison sheriff responds to Jackson councilman's remarks* video, at 1:50-57, 4:46-50. Video evidence is subject to the same hearsay standards as documentary evidence. *See, e.g.*, *United States v. Chaney*, 299 F. App'x 447, 452-53 (5th Cir. 2008) (allowing evidence of a video recording of defendant under the party-opponent exception). A statement is not hearsay if "[t]he statement is offered against an opposing party and … was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). Thus, a statement by a defendant is "clearly admissible as a non-hearsay admission." *FDIC v. Mmahat*, 907 F.2d 546, 551 (5th Cir. 1990). Here, this evidence involves a direct statement from Defendant Sheriff Tucker, acting in his official capacity as Sheriff of Madison County, and Plaintiffs are offering the statement against Sheriff Tucker, the MCSD, and Madison County. This video, and Sheriff Tucker's statements therein, clearly fall under the hearsay exception for admission by a party opponent and should not be excluded. *Id.*

News reports also can be considered as evidence under the residual hearsay exception pursuant to Rule 807 of the Federal Rules of Evidence, where the report has "equivalent circumstantial guarantees of trustworthiness," is offered in sufficient advance of trial to put the opponent on notice, demonstrative of a material fact, more probative on the point than any other

11

evidence that can be obtained through reasonable efforts, and where the general purposes of the Federal Rules of Evidence would be best served by consideration of the report. *Hicks v. Charles Pfizer & Co. Inc.*, 466 F. Supp. 2d 799, 807-811 (E.D. Tex. 2005) (finding news reports were proper evidence under the residual hearsay exception). Where a news report predates any motive to fabricate facts, contains information about which other individuals would have a motive to correct any inaccuracies, was reported by a separate author in a separate newspaper, was written nearly contemporaneously with the events in question, and concerns a "binary" fact (*i.e.*, it either happened or did not), the article has sufficient indicia of trustworthiness to be considered under the residual hearsay exception. *Id.* at 808-809.

First, the remaining four News Reports[7] all are offered sufficiently in advance of trial to eliminate any dangers of prejudice or unfair surprise, as Plaintiffs already have disclosed these News Reports at the class certification stage. Second, these four News Reports all are probative evidence of material facts: (i) *House panel considers bill to outlaw racial profiling* reports Sheriff Trowbridge's criticism of a proposed law prohibiting racial profiling; (ii) *Making Amends* and *Madison County Sheriff's Deputy Captain Randy Tucker to Run for Madison County Sheriff* both are helpful evidence demonstrating that Sheriff Tucker intended to maintain the policies of the former administration*; and* (iii) *Q&A with Sheriff Randy Tucker* reports Sheriff Tucker was opposed to introducing body cameras for police officers. Third, allowing the Court to consider these News Reports serves the general purposes of the Federal Rules of Evidence of ensuring the truth is ascertained, as they provide strong evidence of the respective facts reported therein.

---

[7] *House panel considers bill to outlaw racial profiling*; *Making Amends*; *Madison County Sheriff's Deputy Captain Randy Tucker to Run for Madison County Sheriff*; *Q&A with Sheriff Randy Tucker*.

Finally, as described in detail below, all four of these News Reports demonstrate sufficient elements of trustworthiness to be considered under the residual exception to hearsay.

For example, the News Report *House panel considers bill to outlaw racial profiling* describes former Sheriff Trowbridge's refusal to attend a state legislature panel to consider a law prohibiting racial profiling and quotes former Sheriff Trowbridge as saying that the legislators were "wasting people's time and money" by debating the bill (at 2). Former Sheriff Trowbridge's statement falls under the exception to hearsay for an admission by party opponent,[8] and the News Report more broadly falls under the residual exception to hearsay. The News Report is trustworthy in that (i) it predates any motive to fabricate facts (even if this litigation could generate such a motive in this context, the News Report predates this litigation by several years); (ii) members of the MCSD, including Sheriff Trowbridge, would have motive to correct the statement if it was inaccurate; (iii) it was written contemporaneously with the state legislature panel; and (iv) the event was binary, as either Sheriff Trowbridge attended the panel or he did not. Therefore, this News Report sufficiently falls under the two hearsay exceptions identified and cannot properly be stricken.

*Making Amends* and *Madison County Sheriff's Deputy Captain Randy Tucker to Run for Madison County Sheriff* also both fall under the hearsay exception for party-opponent admission and the residual hearsay exception. These News Reports describe how now-Sheriff Tucker, during his campaign for the office of Sheriff of Madison County, pledged to maintain the policies of the previous administration. Specifically, in *Making Amends*, Sheriff Tucker is quoted as saying that, if elected, he would "maintain the quality of law enforcement that we have under

---

[8] Former Sheriff Trowbridge was acting in a representative capacity on behalf of the MCSD and Madison County at the time of making the statement, as he was the acting Sheriff of the MCSD at the time those statements were made and reported. *See id.* at 2.

Sheriff Trowbridge" (at 1). In *Madison County Sheriff's Deputy Captain Randy Tucker to Run for Madison County Sheriff*, Sheriff Tucker is quoted as stating, "[m]y campaign for Sheriff will be about maintaining the professionalism, integrity and high quality of law enforcement in Madison County" (at 1). Sheriff Tucker's statements qualify as non-hearsay admissions. Fed. R. Evid. 801(d)(2)(A). The reporters' accounts of Sheriff Tucker's statements further fall under the residual hearsay exception, since (i) they predate a motive to lie, as again these statements were made years before this litigation commenced, (ii) Sheriff Tucker would have been motivated to correct any inaccuracies in how his answers were recorded, including because he was running for Sheriff at the time, (iii) two separate authors by two separate newspapers both reported the same facts, and (iv) the reports were written contemporaneously with the Sheriff election race.[9]

In sum, these five News Reports fall under appropriate hearsay exceptions, and thus the Court may consider this evidence in support of Plaintiffs' Motion for Class Certification.

### C.     Defendants' Authorities Are Inapposite

Defendants cite five cases for the proposition that the News Reports are inadmissible hearsay, all of which can be easily distinguished or further support Plaintiffs' position. (ECF No. 275 at 4.)

First and foremost, none of the cases Defendants cite found that news reports cannot be considered where an appropriate hearsay exception applies. Furthermore, Defendants do not cite

---

[9] *Q&A with Sheriff Randy Tucker* also falls under the party-opponent and residual hearsay exceptions. This News Report presents a question-and-answer session with Sheriff Tucker in which he was asked if the MCSD had body cameras or any plans to introduce them. Sheriff Tucker responds in the negative to both questions. His response again is a classic non-hearsay admission pursuant to Federal Rule of Evidence 801(d)(2)(A), and the reporter's recording of these statements falls under the residual exception. The News Report further demonstrates sufficient indicia of trustworthiness as (i) it predates any motive to lie, (ii) Sheriff Tucker would be motivated to correct any inaccuracies, and (iii) it was written contemporaneously with the interview, when the contents remain timely.

14

a single case where a court excluded or granted a motion to strike news reports at the class

certification stage, which, as set forth above, has more relaxed evidentiary standards than those

at trial. *See supra* Part I, at 7-8. Rather, all of the cases used by Defendants were determined at

the summary judgment or trial stage. *See Roberts v. City of Shreveport*, 397 F.3d 287, 289 (5th

Cir. 2005) (appeal of denial of summary judgment); *Positive Black Talk Inc. v. Cash Money*

*Records, Inc.*, 394 F.3d 357, 363 (5th Cir. 2004) (appeal of district court's judgment in jury

trial), *abrogated by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Merrill v. S. Methodist*

*Univ.*, 806 F.2d 600, 602 (5th Cir. 1986) (appeal of bench trial verdict); *Kean v. Clark*, 56 F.

Supp. 2d 719, 720 (S.D. Miss. 1999) (summary judgment). In addition, the Fifth Circuit in

*Positive Black Talk Inc.* focused not on the potential hearsay issue, but rather on the fact that the

specific question of substantial similarity of two songs in the copyright infringement context

(completely irrelevant here) for which the news reports were being offered was one typically left

to the fact-finder. 394 F.3d at 378. The Fifth Circuit also stated that the potential hearsay issue

with the news reports would have been cured by testimony from the authors of the reports, given

the case was at the trial stage, which again has different evidentiary standards from class

certification. *Id.* Further, in *Merrill*, the news reports in question were "never offered into

evidence or made part of any offer of proof" during the trial; thus, the court undoubtedly could

not have considered the news articles on appeal regardless of any hearsay issues. 806 F.2d at 610

n.10.

Defendants also cite to *Dallas Cty. v. Commercial Union Assur. Co.*, 286 F.2d 388, 397–

98 (5th Cir. 1961), but, there, the court actually found the news report at issue *admissible*

because "it [wa]s necessary and trustworthy, relevant and material, and its admission [wa]s

within the trial judge's exercise of discretion." While Defendants quote this case for the

15

proposition that "a newspaper article is hearsay," Defendants conveniently fail to note that the court goes on to explain that "the hearsay rule is not absolute; it is replete with exceptions." *Id.* at 391-92.

### D.    <u>Other Evidence Corroborates The Content Underlying The News Reports</u>

While the News Reports should be considered by the Court on class certification for the many reasons already discussed, there also is substantial, additional documentary and testimonial evidence that supports the content underlying the News Reports. For example, the substance of three of the News Reports is further validated by documents produced by Defendants during class certification discovery. Two of the News Reports are used as evidence that Sheriff Tucker pledged to "maintain the quality of law enforcement that [the MCSD] ha[d] under Sheriff Trowbridge." *See Making Amends*, at 1; *see also Madison County Sheriff's Deputy Captain Randy Tucker to Run for Madison County Sheriff*, at 1. Defendants also have produced a memorandum from Sheriff Tucker corroborating such content, in which Sheriff Tucker notifies all deputies and employees that he was maintaining the "policies and procedures under the administration of Sheriff Toby Trowbridge" during his administration. Memo from Sheriff Tucker to All Deputies/Employees (Jan. 3, 2012 ) [Mot. for Class Cert. Ex. 77]. Similarly, *Q&A with Sheriff Randy Tucker* reports statements from Sheriff Tucker regarding how the MCSD does not have a need for body cameras to record police actions. The substance of this News Report further is supported by an email from Sheriff Tucker produced by Defendants calling the proposed bill for body cameras "utterly ridiculous." Jan. 8, 2016 Email [Mot. for Class Cert. Ex. 99].

As set forth in substantial detail above, the content underlying the News Reports further is corroborated and affirmed by deposition testimony from Sheriff Tucker, former Sheriff Trowbridge, and other Madison County personnel. *See supra* Background, at 2-7. Notably, in

their Motion, Defendants further do not dispute the specific content of any of the News Reports, or claim such content is inaccurate.

Since the content of the News Reports is supported by other documentary and testimonial evidence demonstrating their reliability, the Court can and should consider them as additional available and helpful evidence in ruling upon Plaintiffs' Motion for Class Certification.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion.

Dated: June 7, 2018

By: */s/ Joshua Tom*_____
     Joshua Tom

| | |
|---|---|
| SIMPSON THACHER & BARTLETT LLP | AMERICAN CIVIL LIBERTIES UNION |
| Jonathan K. Youngwood (*pro hac vice*) | OF MISSISSIPPI FOUNDATION |
| Janet A. Gochman (*pro hac vice*) | Joshua Tom (Miss. Bar No. 105392) |
| Isaac Rethy (*pro hac vice*) | 233 East Capitol Street |
| Kavitha S. Sivashanker (*pro hac vice*) | Jackson, MS 39201 |
| Nihara K. Choudhri (*pro hac vice*) | (601) 354-3408 |
| Christopher K. Shields (*pro hac vice*) | JTom@aclu-ms.org |
| Brooke Jarrett (*pro hac vice*) | |
| 425 Lexington Avenue | AMERICAN CIVIL LIBERTIES UNION |
| New York, NY 10017 | FOUNDATION |
| (212) 455-2000 | Ezekiel Edwards (*pro hac vice*) |
| jyoungwood@stblaw.com | Jeffery Robinson (*pro hac vice* forthcoming) |
| jgochman@stblaw.com | 125 Broad Street |
| irethy@stblaw.com | New York, NY 10004 |
| kavitha.sivashanker@stblaw.com | (212) 549-2610 |
| nchoudhri@stblaw.com | eedwards@aclu.org |
| christopher.shields@stblaw.com | jrobinson@aclu.org |
| bonnie.jarrett@stblaw.com | |
| | *Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2018, I caused the foregoing **MEMORANDUM OF**

**LAW IN RESPONSE TO DEFENDANTS' AMENDED MOTION TO STRIKE**

**PLAINTIFFS' NEWSPAPER ARTICLES** to be electronically filed with the Clerk of the

Court using the CM/ECF system, through which copies have been served to:

WISE CARTER CHILD & CARAWAY, P.A.
Michael B. Wallace (Miss. Bar No. 6904)
Charles E. Ross (Miss. Bar No. 5683)
James E. Graves (Miss. Bar No. 102252)
Charles E. Cowan (Miss. Bar No. 104478)
T. Russell Nobile (Miss. Bar No. 100682)
Post Office Box 651
Jackson, MS 39205
(601) 968-5534
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com
trn@wisecarter.com

CURRIE JOHNSON & MYERS, P.A.
Rebecca B. Cowan (Miss. Bar No. 7735)
P.O. Box 750
Jackson, MS 39205
(601) 969-1010
bcowan@curriejohnson.com

KATIE BRYANT SNELL, PLLC
Katie Bryant Snell (Miss. Bar No. 103607)
P.O. Box 3007
Madison, Mississippi 39130-3007
(601) 460-9800
Katie@katiebryantsnell.com

PETTIS, BARFIELD & HESTER, P.A.
J. Lawson Hester (Miss. Bar No. 2394)
Jason E. Dare (MSB No. 100973)
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
(601) 987-5300
lhester@pbhfirm.com
jdare@pbhfirm.com

/s/ Joshua Tom
Joshua Tom

18