# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; HERBERT ANTHONY GREEN; KHADAFY MANNING; QUINNETTA MANNING; MARVIN MCFIELD; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and MADISON COUNTY SHERIFF'S DEPUTIES JOHN DOES #1 through #6, in their individual capacities,<br><br>　　　　　Defendants. | Civil Action No.<br>3:17-cv-00347-WHB-LRA<br><br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO STRIKE DECLARATIONS

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

AMERICAN CIVIL LIBERTIES UNION OF
　　MISSISSIPPI FOUNDATION
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408

AMERICAN CIVIL LIBERTIES UNION
　　FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2610

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .............................................................................1

ARGUMENT ......................................................................................................4

I.  THE DECLARATIONS ARE RELEVANT TO CLASS CERTIFICATION ...................4

    A.  The Declarations Provide Tangible Evidence Of The MCSD's
        Discriminatory Policing Program ...........................................................4

    B.  The Declarations Are Relevant To The Commonality, Typicality, and
        Adequacy Analyses Required By Rule 23 ...........................................14

    C.  Defendants' Argument Conflates Relevance And Sufficiency ..............17

II.  DEFENDANTS' SPECIFIC EVIDENTIARY CHALLENGES ALSO FAIL ................18

    A.  Defendants' Rule 403 Challenges Fail ................................................19

        1.  Rule 403 Weighing Of Probative Value Against Prejudice Is
            Inapplicable At The Class Certification Stage ..........................19

        2.  The Declarations Are Admissible Even Assuming Rule 403
            Applies.......................................................................................21

            (a)  Evidence Of Pre-May 8, 2014 Incidents Is Relevant To
                Class Certification ...............................................21

            (b)  Defendants' "Vagueness" Argument Fails....................23

            (c)  Defendants' Statute Of Limitations Arguments Do Not
                Affect The Majority Of The Testimony Set Forth In The
                Declarations ........................................................25

    B.  Testimony, If Any, Concerning Incidents Predating Sheriff Tucker's
        Administration Is Relevant...................................................................27

    C.  Federal Rule Of Evidence 104 Is Inapposite .......................................28

    D.  *Heck v. Humphrey* Does Not Provide A Basis For Striking The
        Declarations .......................................................................................29

        1.  *Heck* Is Not A Rule Of Evidence.............................................30

2. Defendants' *Heck* Argument, Even If Correct, Would Not Warrant Wholesale Exclusion Of The Declarations.................................................31

III. DEFENDANTS' ALTERNATIVE REQUEST FOR FURTHER DISCOVERY SHOULD BE REJECTED .................................................................................................33

CONCLUSION ............................................................................................................................35

# **TABLE OF AUTHORITIES**

**Cases**

*Abramson v. American University,*
  No. 86-1413, 1988 WL 152020 (D.D.C. June 13, 1988) ........................................29

*Beckmann v. CBS, Inc.,*
  192 F.R.D. 608 (D. Minn. 2000) ............................................................................17

*Black Law Enforcement Officers Ass'n v. City of Akron,*
  824 F.2d 475 (6th Cir. 1987) ................................................................................23

*Brown v. Nucor Corp.,*
  785 F.3d 895 (4th Cir. 2015) ..........................................................................15, 16

*Conyers v. City of Chicago,*
  No. 12 CV 06144, 2017 WL 4310511 (N.D. Ill. Sept. 28, 2017) .........................17

*Cowen v. Allstate Insurance Co.,*
  No. 11-118, 2012 WL 10591 (E.D. La. Jan. 3, 2012) ..........................................20

*Dartez v. Fibreboard Corp.,*
  765 F.2d 456 (5th Cir. 1985) ................................................................................23

*Dixon v. Henderson,*
  186 F. Appx. 426 (5th Cir. 2006) .........................................................................19

*DL v. District of Columbia,*
  820 F. Supp. 2d 27 (D.D.C. 2011) ........................................................................24

*Dockery v. Fischer,*
  253 F. Supp. 3d 832 (S.D. Miss. 2015) ................................................................16

*Donaldson v. The Pillsbury Co.,*
  554 F.2d 825 (8th Cir. 1977) ................................................................................15

*Fitzgerald v. Henderson,*
  251 F.3d 345 (2d Cir. 2001) .................................................................................22

*Flores v. Anjost Corp.,*
  284 F.R.D. 112 (S.D.N.Y. 2012) ..........................................................................19

*Floyd v. City of New York,*
  283 F.R.D. 153 (S.D.N.Y. 2012) ..........................................................................24

*Gander Mountain Co. v. Cabela's, Inc.,*
  No. 04-CV-3125, 2007 WL 2026751 (D. Minn. July 10, 2007) ...........................34

*Gulf States Utilities Co. v. Ecodyne Corp.*,
    635 F.2d 517 (5th Cir. 1981) ........................................................................19, 20

*Hardesty v. Barcus*,
    No. CV-11-103-M-DWM-JCL, 2012 WL 5906797 (D. Mon. Nov. 26, 2012) ....................31

*Hartman v. Duffy*,
    158 F.R.D. 525 (D.D.C. 1994) ...............................................................................15

*Heck v. Humphrey*,
    512 U.S. 477 (1994) ............................................................................3, 19, 29, 30

*Hill v. Shell Oil Co.*,
    No. 98 C 5766, 2002 WL 663583 (N.D. Ill. Mar. 28, 2002)..................................15

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
    --- F. Supp. 3d ---, 2018 WL 1229761 (S.D.N.Y. 2018)......................................20

*In re Tropicana Orange Juice Marketing & Sales Practices Litigation*,
    No. CV 2:11-07382, 2017 WL 2362848 (D.N.J. May 31, 2017)............................20

*In the Matter of M&M Wireline & Offshore Services., LLC*,
    No. 15-4999, 2017 WL 430063 (E.D. La. Jan. 31, 2017) .....................................20

*International Brotherhood Of Teamsters v. United States*,
    431 U.S. 324 (1977) .............................................................................................2

*Joint Equity Committee of Investors of Real Estate Partners, Inc. v.*
    *Coldwell Banker Real Estate Corp.*,
    281 F.R.D. 422 (C.D. Cal. 2012).............................................................................24

*Jones v. Commander, Kansas Army Ammunitions Plant, Dep't of Army*,
    147 F.R.D. 248 (D. Kan. 1993) ...............................................................................23

*Koppman v. South Central Bell Telephone Co.*,
    No. 90-4503, 1992 WL 280793 (E.D. La. July 12, 1992)..................................18, 23

*Laborde v. City of Houston*,
    31 F. Appx. 151 (5th Cir. 2001) ...........................................................................18

*Lehrman v. Gulf Oil Corp.*,
    464 F.2d 26 (5th Cir. 1972) ..................................................................................18

*Marks v. Smith*,
    No. 15-5454, 2017 WL 2214977 (E.D. La. May 8, 2017) ..............................30, 31

*Melton v. Murphy*,
    No. 05-366, 2008 WL 2697333 (E.D. Pa. Jul. 9, 2008) ........................................31

*Moore v. Napolitano*,
269 F.R.D. 21 (D.D.C. 2010) ...................................................................16

*Moore v. Napolitano*,
926 F. Supp. 2d 8 (D.D.C. 2013)........................................................15, 16

*National Railroad Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) ...............................................................................22

*Nelson v. City of Lake Charles*,
No. 12-cv-02770, 2013 WL 5890316 (W.D. La. Nov. 1, 2013) ...........20

*New Jersey v. T.L.O.*,
469 U.S. 325 (1985) ...............................................................................17

*Perez v. Bruister*,
Nos. 3:13-cv-1001-DPJ-FKB, 2014 WL 3779640 (S.D. Miss. Jul. 31, 2014)......................20

*Ray v. Tandem Computers, Inc.*,
63 F.3d 429 (5th Cir. 1995) ...................................................................18

*Savarese v. Pearl River Navigation, Inc.*,
No. 09-129, 2010 WL 3070376 (E.D. La. Aug. 2, 2010).......................21

*Selzer v. Board of Education of the City of New York*,
112 F.R.D. 176 (S.D.N.Y. 1986)......................................................15, 17

*Shell Offshore Inc. v. Tesla Offshore, L.L.C.*,
No. CIV.A. 13-6278, 2015 WL 2131274, (E.D. La. May 7, 2015) .......17

*Simpson v. Thomas*,
528 F.3d at 696 (9th Cir. 2008) .............................................................30

*Steward v. Janek*,
315 F.R.D. 472 (W.D. Tex. 2016)..........................................................19

*Texas Gas Transmission, LLC v. 18.08 Acres +/- in Southeast Quarter of Section 24*,
No. 2:08-cv-240-B-V, 2012 WL 12926064 (N.D. Miss. Apr. 5, 2012)................................20

*United Air Lines, Inc. v. Evans*,
431 U.S. 553 (1977) ...............................................................................22

*United States v. Ashdown*,
509 F.2d 793 (5th Cir. 1975) .................................................................22

*United States v. Madera*,
574 F.2d 1320 (5th Cir. 1978) ...............................................................18

*United States v. McRae,*
    593 F.2d 700 (5th Cir. 1979) ............................................................................23

*Velez v. Novartis Pharmaceuticals Corp.,*
    244 F.R.D. 243 (S.D.N.Y. 2007) .......................................................................15

*Village of Arlington Heights v. Metropolitan Housing Development Corp.,*
    429 U.S. 252 (1977) ..........................................................................................22

*Wojciechowski v. Nat'l Oilwell Varco, L.P.,*
    763 F. Supp. 2d 832 (S.D. Tex. 2011) ...............................................................18

*Wolpert v. Abbott Labs.,*
    No. CIV.A. 08-4849 JBS, 2012 WL 1600437 (D.N.J. May 7, 2012) .....................29

## Rules

Fed. R. Civ. P. 23(a) ................................................................................................15

Fed. R. Civ. P. 23(a)(3) ...........................................................................................16

Fed. R. Civ. P. 23(a)(4) ...........................................................................................16

Fed. R. Civ. P. 23(b)(2) .............................................................................................1

Fed. R. Evid. 1006 ....................................................................................................1

Fed. R. Evid. 104 ....................................................................................................29

Fed. R. Evid. 104(b) ..........................................................................................19, 28

Fed. R. Evid. 401 ....................................................................................................19

Fed. R. Evid. 401(a) ...........................................................................................15, 21

Fed. R. Evid. 403 ..............................................................................................passim

L.U. Civ. R. 7(b)(6)(A) .............................................................................................1

Plaintiffs Latoya Brown, Lawrence Blackmon, Khadafy Manning, Quinnetta Manning, Nicholas Singleton, Steven Smith, Bessie Thomas and Betty Jean Williams Tucker ("Plaintiffs" or "Named Plaintiffs") respectfully submit this memorandum in opposition to the motion to strike declarations (the "Motion" or "Motion to Strike Declarations") filed by Defendants Madison County, Mississippi and Sheriff Randall Tucker ("Defendants").[1] Pursuant to L.U. Civ. R. 7(b)(6)(A), Plaintiffs request oral argument on Defendants' Motion.

## PRELIMINARY STATEMENT

On March 14, 2018, Plaintiffs moved for class certification under Fed. R. Civ. P. 23(b)(2) in this civil rights action challenging the deeply-entrenched racially discriminatory policing practices implemented by the Madison County Sheriff's Department ("MCSD"), at the direction of Sheriff Randall Tucker. Plaintiffs seek to end the MCSD's longstanding policy of racially profiling and targeting Madison County's Black citizens, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (the "Policing Program"). The Policing Program is effectuated through the disproportionate placement of roadblocks in predominantly Black neighborhoods, as well as routine suspicionless stops and searches of Black pedestrians, among other unconstitutional tactics.

Plaintiffs submitted substantial evidence in support of their motion for class certification. This evidence included extensive documentary evidence, 26 deposition transcripts, as well as the expert report of Dr. Bryan Ricchetti and the Fed. R. Evid. 1006 declaration of Dr. Rahul Guha. Plaintiffs also submitted numerous sworn declarations, including declarations (the "Declarations") from 25 potential members of the class Plaintiffs seek to certify (the "Declarants"). In the Declarations, the Declarants set forth testimony regarding their personal

---

[1] The Memorandum of Authorities filed in support of Defendants' Motion is cited herein as "Mem. __."

experiences with the MCSD which provides probative and corroborative evidence of the Policing Program challenged by Plaintiffs. This testimony contains detailed descriptions of the aggressive and discriminatory tactics employed by the MCSD in policing the Black community in Madison County, including the MCSD's practices of routinely deploying constitutionally-defective vehicular roadblocks in predominantly-Black communities, as well as the MCSD's extensive use of improper, suspicionless pedestrian stops. As demonstrated below, the Declarations are paradigmatic examples of the types of anecdotal evidence that courts rely on when determining whether a policy or pattern of discrimination exists. Not only are the Declarations admissible in their entirety, but they provide powerful testimonial proof of the MCSD's longstanding discriminatory Policing Program. The Declarants' accounts of "their personal experiences" with the MCSD bring "the cold numbers" of the MCSD's racial disparities in arrests and citations "convincingly to life." *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 339 (1977).

As discussed in detail herein, none of the evidentiary objections Defendants raise in their Motion to Strike Declarations have any merit. Defendants' attempt to attack the Declarations as irrelevant on the basis that the Declarations solely express the Declarants' subjective belief that the MCSD discriminates on the basis of race fails because it ignores the substantial factual evidence contained in the Declarations that goes well beyond expressions of subjective belief and that is highly relevant to the commonality, typicality, and adequacy inquiries before the Court on Plaintiffs' motion for class certification. It also fails because Defendants' position that testimony regarding subjective belief is inadmissible runs contrary to precedent and confuses the basic question of relevancy with the wholly separate question of evidentiary sufficiency.

Defendants' attempt to exclude the Declarations as prejudicial similarly lacks merit. As a preliminary matter, courts weigh probative value against prejudice before admitting evidence

that will be considered by a jury; this procedure is, however, unnecessary and inappropriate where evidence is introduced in a proceeding, such as the instant class certification motion, in which the Court itself, not a jury, is the sole decision-maker. In any event, Defendants have not demonstrated any cognizable prejudice. Defendants claim that certain incidents described in certain Declarations pre-date the applicable three-year statute of limitations period, but Defendants' argument is both factually flawed and legally unsound; the statute of limitations is not a rule of evidence, and the probative value of incidents that pre-date the limitations period is a question of weight, not admissibility. Defendants' novel invocation of the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1992), as an evidentiary bar is similarly misplaced. Those courts to have considered the issue have agreed that, like the statute of limitations, *Heck* creates a defense, not a rule of evidence. In any event, even if *Heck* somehow applied to bar specific testimony contained in certain Declarations concerning incidents related to convictions (largely for traffic offenses) of certain Declarants, the great majority of the testimony contained in the Declarations would be unaffected because it has no connection to any such convictions.

Finally, Defendants argue that in the event the Court denies their motion, the Court should allow them to depose or cross-examine the Declarants, something Defendants intentionally decided not to do while the discovery period was ongoing—because, Defendants assert, they "have always regarded" the Declarations "as inadmissible"—and are now raising for the first time, four months after the close of class certification discovery. Defendants, however, made a conscious strategic choice not to seek to depose any of the Declarants during the discovery period, nor to seek an extension of the discovery period, but instead to gamble that they would prevail on the instant motion. Permitting Defendants to now reopen discovery in the event their assessment is proven wrong would substantially delay the resolution of Plaintiffs'

motion for class certification and thus seriously prejudice Plaintiffs. Defendants should be held

to the consequences of their choices, and discovery should not be reopened.

 For all these reasons, and as discussed in detail below, Defendants' Motion to Strike

Declarations should be denied.

## ARGUMENT

## I. THE DECLARATIONS ARE RELEVANT TO CLASS CERTIFICATION

 Defendants argue that the Declarations "should be stricken as irrelevant to the class

certification issue" because "the only evidence offered in the Declarations are mere subjective

beliefs that the MCSD's actions were motivated by race," which is "insufficient to establish a

claim against a Defendant [for] race discrimination." Mem. 9. This argument suffers from three

basic flaws. First, Defendants' contention that the Declarations solely contain expressions of

subjective belief is incorrect. The Declarations specifically address, and provide probative

evidence of, the Declarants' experiences with the policing policies challenged by Plaintiffs.

Second, the Declarations are plainly relevant to the commonality, typicality, and adequacy

arguments that are before the Court on Plaintiffs' Motion for Class Certification. Third,

Defendants' argument that the Declarations are themselves "insufficient" to prove Plaintiffs'

claims conflates relevance and sufficiency. Contrary to Defendants' contentions, the fact that

evidence—including testimony reflecting a declarant's understanding or belief—may not be

case-dispositive does not mean that such evidence is inadmissible.

### A. The Declarations Provide Tangible Evidence Of The MCSD's Discriminatory Policing Program

 Defendants' attempt to strike the Class Members' Declarations hinges on the incorrect

assertion that "the only evidence offered in the Declarations are mere subjective beliefs that the

MCSD's actions were motivated by race." Mem. 9. In fact, as shown below, all of the 25

Declarations are replete with detailed descriptions of the MCSD's unconstitutional policing policies—including with respect to vehicular roadblocks, pedestrian stops, and traffic stops—that corroborate the other substantial evidence presented by Plaintiffs in support of class certification:

1.    **Bysheba Brown**, a 28 year-old Black woman who resides in Ridgeland, Mississippi, testified that she has encountered MCSD roadblocks on Pine Knoll Road, which leads to a majority-Black community in Ridgeland where she resides. Ex. J (B. Brown Decl.) ¶¶ 1-6. The MCSD deputies manning the roadblocks turn off all the lights on their vehicles, and "look like pedestrians until they start waving their flashlights to signal cars to stop." *Id.* ¶¶ 3-4. Ms. Brown also testified that she has never seen MCSD roadblocks in Ridgeland anywhere but Pine Knoll Road. *Id.* ¶ 6.

2.    **Lester Hollins**, a 32 year-old Black man who lives in Ridgeland, Mississippi, similarly testified that he has witnessed countless MCSD roadblocks set up on Pine Knoll Road. Ex. R (L. Hollins Decl.) ¶¶ 1-2. He testified that two or three MCSD deputies pull their cars off to the side of the road after dark and then stand in the middle of the street stopping cars as they enter the development. *Id.* ¶ 3. He also has witnessed MCSD deputies waving white drivers through roadblocks while stopping Black drivers at those same roadblocks. *Id.* ¶ 1-4. On one occasion he asked the MCSD deputy manning the roadblock "why he was stopping Black drivers and waving through white drivers." *Id.* ¶ 5. The MCSD deputy told Mr. Hollins that it was because "white drivers were 'good people.'" *Id.*

3.    **Antonio Howard**, a 26 year-old Black man who lives in Ridgeland, Mississippi also testified that the MCSD regularly establishes roadblocks on Pine Knoll Road. Ex. S (A. Howard Decl.) ¶¶ 1-3. Mr. Howard testified that the MCSD deputies typically "turn off their lights" and "wave cars down with a flashlight." *Id.* ¶ 4. Mr. Howard has been stopped at

roadblocks on numerous occasions, and that MCSD deputies have requested his identification even when he has been a passenger in the vehicle. *Id.* ¶¶ 5, 8. Mr. Howard also testified that he has "never seen" an MCSD roadblock at any location in Ridgeland other than the entrance to his predominantly Black neighborhood. *Id.* ¶¶ 2, 10.

4.   **Domunique Doss**, a 31 year-old Black man who frequently visits his grandparents in Flora, Mississippi, testified that the MCSD regularly sets up roadblocks in and around Flora's majority-Black communities, particularly when there are holidays or celebrations. Ex. O (D. Doss Decl.) ¶¶ 1-4. On two occasions, MCSD deputies conducted intrusive searches of his person and his vehicle—even asking him to take off his shoes—because he did not have his driver's license with him. *Id.* ¶¶ 6-7. Mr. Doss testified that he has missed family events in Flora because he did not "want to have to pass through a roadblock." *Id.* ¶ 5.

5.   **Antonio Mitchell**, a 29 year-old Black man who resides in Flora, Mississippi, testified that he has been stopped at roadblocks at the entrance to his neighborhood about ten times in the last three years. Ex. W (A. Mitchell Decl.) ¶¶ 1-2, 4. Mr. Mitchell has seen roadblocks set up where the MCSD stops every Black person and waves the white drivers through. *Id.* ¶ 9. MCSD deputies "rarely have their lights on" at the roadblocks "so it is impossible to see" that there is a roadblock ahead. *Id.* ¶ 3. During roadblock stops, MCSD deputies talk to Mr. Mitchell as if he is a criminal and assume that he has drugs in the vehicle. *Id.* ¶ 4. On multiple occasions, MCSD deputies have intrusively searched his person —even in his pants and around his genitals—on the side of the road during roadblock stops. *Id.* ¶ 6. Mr. Mitchell testified that these experiences have been "humiliating." *Id.*

Mr. Mitchell also testified that he has been stopped by the MCSD's jump out patrol. *Id.* ¶ 12. Last year, when he was driving his mother's car with two friends, MCSD deputies jumped

out of their vehicle and immediately started yelling at Mr. Mitchell and his friends. They pulled Mr. Mitchell and his friends out of Mr. Mitchell's mother's car, and threatened to taser them and take them to jail. *Id.* ¶ 14. After an hour-long search, the MCSD deputies found nothing and finally gave up and drove away. *Id.*

6.   **Anthony Brown**, a 43 year-old Black man who lives in Kearney Park, Mississippi, testified that the MCSD frequently establishes roadblocks at the entrance to the majority-Black Magnolia Heights neighborhood in Kearney Park. Ex. I (A. Brown Decl.) ¶¶ 1, 7. During one such roadblock stop, an MCSD deputy conducted a 30-minute-long search of Mr. Brown's person and his vehicle even though Mr. Brown had provided the MCSD deputy with his license and registration. *Id.* ¶¶ 2-6.

7.   **James Bacon**, a 58 year-old Black man who resides in Camden, Mississippi, testified that the MCSD establishes roadblocks in Camden that interfere with his business and disrupt community events. Ex. G (J. Bacon Decl.) ¶¶ 1-3, 7. For Mr. Bacon, the MCSD's roadblocks have been much more than a mere inconvenience. On one occasion, Mr. Bacon was arrested at a roadblock based on a warrant for the arrest of his son, who had died three years earlier. *Id.* ¶¶ 4-6. MCSD deputies transported Mr. Bacon to jail; he was released only upon payment of approximately $1,400. *Id.* ¶ 5.

8.   **Willie Carter**, a 69 year-old Black man who lives in Camden, Mississippi, testified that MCSD deputies set up roadblocks in Camden "more than once a month." Ex. K (W. Carter Decl.) ¶¶ 1-2, 5. MCSD deputies manning these roadblocks "turn off all their lights" and then signal drivers to pull over with flashlights. *Id.* ¶ 2. On one occasion, Mr. Carter drove through two MCSD roadblocks in a span of thirty minutes. *Id.* ¶ 4. In Mr. Carter's experience, the MCSD often sets up roadblocks "[w]henever they get word of Black people gathering

7

together at a celebration or a wedding." *Id.* ¶ 5. Mr. Carter testified that even though his license

and registration are current, he "drive[s] less" to avoid encountering roadblocks. *Id.* ¶ 6.

9.    **Archie McKay**, a 52 year-old Black man who resides in Camden, Mississippi

testified that the MCSD has established roadblocks on a rural road in his community where only

a handful of families live. Ex. V (A. McKay Decl.) ¶¶ 1-2, 4. Mr. McKay was also arrested at an

MCSD roadblock based on a warrant for his son. *Id.* ¶¶ 5-6. Even though the MCSD mistakenly

arrested Mr. McKay, he spent the weekend in jail and paid $1,400 to be able to leave. *Id.* ¶ 6.

10.    **Quincy Smith**, a 29 year-old Black man who resides in Canton, Mississippi,

testified that he has "driven through as many as thirty roadblocks" in the past three or four years.

Ex. Z (Q. Smith Decl. ¶¶ 1-2). In Mr. Smith's experience, MCSD deputies turn off all the lights

on their vehicles at these roadblocks. *Id.* ¶ 3. Mr. Smith testified that the MCSD often sets up

roadblocks at the entrance and exit of the apartment complex where he previously resided. *Id.* ¶

4. "At least half of the times" Mr. Smith has passed through a MCSD roadblock, the officer has

not even asked for his license or insurance, but instead demanded Mr. Smith's social security

number so as to check for outstanding warrants. *Id.* ¶ 5. During one roadblock stop in 2014, the

MCSD deputy did not ask to see Mr. Smith's license but instead immediately began questioning

Mr. Smith about drugs. *Id.* ¶ 6. On another occasion, Mr. Smith was stopped at a roadblock while

he was riding his bicycle. *Id.* ¶ 11.

Mr. Smith further testified that he was once stopped while he was a passenger in a

vehicle driven by a Black friend. *Id.* ¶ 14. The Black MCSD deputy who had initiated the stop

told his white colleague that he was going to let Mr. Smith and the driver of the vehicle go

without citations. *Id.* But the white MCSD deputy stated, "I'm not going to help a nigger out,"

and issued tickets to Mr. Smith's friend, the driver. *Id.*

11.     **Rasheid Davis,** a 40 year-old Black man who owns multiple businesses in Canton, Mississippi, testified that the MCSD frequently establishes roadblocks in Canton, sometimes as often as every night. Ex. L (R. Davis Decl.) ¶¶ 1-2. These roadblocks have adversely impacted Mr. Davis's businesses because the MCSD's policing practices cause customers to "just stay home." *Id.* ¶¶ 9-10. In Mr. Davis's experience, MCSD deputies typically pull over to the side of the road, turn off all their lights, and "shine their flashlights into drivers' cars." *Id.* ¶ 3. He testified that during one roadblock stop, the MCSD deputy told him to stop "smoking dope" even though Mr. Davis had passed a sobriety test. *Id.* ¶¶ 7-8.

12.     **Veronica Davis,** a 37 year-old Black woman who lives in Canton, Mississippi, testified that the MCSD routinely establishes roadblocks at the entrance to Canton Estates, the majority-Black housing complex where Ms. Davis resides. Ex. M (V. Davis Decl.) ¶¶ 1-2. During a stop of Ms. Davis at a MCSD roadblock, the officers took her identification and drove away without returning it. *Id.* ¶¶ 3-5. A year later, six MCSD deputies came to her home and arrested her for failing to pay a ticket purportedly issued at the prior roadblock, even though Ms. Davis had never been given a ticket or a summons. *Id.* ¶¶ 5-6. The MCSD deputies held Ms. Davis in jail, apart from her four children, for three full days. *Id.* ¶ 7. She was not released until her sister paid the cost of the ticket. *Id.*

13.     **Undrea Guise**, a Black woman who lives in Canton, Mississippi, testified that the MCSD sets up roadblocks at the entrance to Canton Estates, where she resides, as often as once a week. Ex. P (U. Guise Decl.) ¶¶ 1, 5. Ms. Guise has also witnessed MCSD deputies "driving in unmarked vehicles and jumping out and stopping Black drivers." *Id.* ¶ 6. Ms. Guise testified that she is frightened to drive and sometimes avoids leaving her home "[b]ecause of the roadblocks and the jump out patrol." *Id.* ¶ 7. Ms. Guise also testified that when she has asked MCSD

deputies for help, including when a man once threatened to kill her, the MCSD has refused to provide any assistance. *Id.* ¶¶ 8-10.

14. **Kenneth Harris**, a 38 year-old Black man who lives in Canton, Mississippi, testified that he has seen "countless roadblocks" established by the MCSD in his town. Ex. Q (K. Harris Decl.) ¶¶ 1-2. Mr. Harris has been stopped and searched at such roadblocks for as long as 45 minutes, even though he produced a valid license and had a four year-old child in the backseat. *Id.* ¶¶ 2-4.

15. **Montreal Tillman**, a 29 year-old Black man who resides in Canton, Mississippi, testified that he has seen more than twenty roadblocks in the ten years he has lived in Canton and has driven through more than five in the last three years. Ex. CC (Tillman Decl.) ¶¶ 1-2, 4. Mr. Tillman has also twice been a passenger in a car at a roadblock and both times was required to produce identification. *Id.* ¶¶ 6-8. At one of those stops, Mr. Tillman testified that "for no reason at all" the deputy asked him "where are the drugs?" *Id.* ¶ 7. Mr. Tillman also testified that during a traffic stop an MCSD deputy threatened to "drag [Mr. Tillman's] black ass up and down the street." *Id.* ¶¶ 22-23.

Mr. Tillman has also been stopped as a pedestrian and required to show his license to MCSD deputies. *Id.* ¶ 12. On one such occasion, Mr. Tillman was walking in the predominantly-white neighborhood where his fiancé lived when he was subjected to a long, "humiliating" stop by an MCSD deputy during which the deputy repeatedly asked him what he was doing in the neighborhood, demanded Mr. Tillman's identification, and searched him before allowing him to leave. *Id.* ¶¶ 17-20.

16. **Earline Wilder**, a 41 year-old Black woman who resides in Canton, Mississippi, testified that the MCSD regularly sets up roadblocks at the entrance to Canton Estates, the

majority-Black housing complex where she lives. Ex. DD (Wilder Decl.) ¶¶ 1-2. She also testified that the MCSD jump-out patrol drives recklessly around her neighborhood, "speeding around on the grass . . . where children are out playing." *Id.* ¶ 6. As a result, she keeps her children and grandchildren inside when the MCSD is around. *Id.* ¶ 7.

17.     **Demario Day**, a 26 year-old Black man who resides in Canton, Mississippi, testified that he has been stopped by the MCSD's jump out patrol on more than ten occasions while he was doing nothing more than standing outside the majority-Black apartment complex, Madison Heights, where he resides. Ex. N (D. Day Decl.) ¶¶ 1-5. Mr. Day testified that he finds the MCSD deputies "intimidating," and that he is afraid of "what would happen" if he refused to give the MCSD deputies his license or social security number. *Id.* ¶ 6.

18.     **Terrance Thompson**, a 24 year-old Black man who resides in Canton, Mississippi, testified that he was with Plaintiff Steven Smith on the night in January 2017 when both men were stopped at an MCSD checkpoint at the entrance to Canton Estates, the majority-Black housing complex where Mr. Smith lived. Ex. BB (T. Thompson Decl.) ¶¶ 1-2. As Mr. Thompson and Mr. Smith attempted to walk through the entrance to the complex, the deputies demanded the two men take their hands out of their pockets, and then began to search the two men without explanation. *Id.* ¶¶ 3-5. Mr. Thompson testified that he told the deputy searching him that he had an appropriately registered handgun, which the deputy retrieved, checked, and returned to Mr. Thompson. *Id.* ¶¶ 5-6. However, the deputy arresting Mr. Smith for an outstanding warrant insisted that Mr. Thompson be arrested anyway. *Id.* ¶ 8. Mr. Thompson was unable to afford the cost of defending himself against the MCSD, so he pled guilty to a concealed weapon charge. *Id.* ¶ 10.

Mr. Thompson also testified that he was stopped twice by the MCSD's "jump out" patrol.

On one occasion in 2015, the MCSD deputy repeatedly referred to him as a "Black dope boy" because, while searching Mr. Thompson, the deputy had located some cash in his pocket. *Id.* ¶¶ 12-15. On another occasion, in 2014, Mr. Thompson testified that two MCSD deputies pulled up on Mr. Thompson and his friend, jumped out, and put the two men in handcuffs. *Id.* ¶¶ 17-18. The deputies searched Mr. Thompson and his friend and after they found nothing demanded Mr. Thompson's social security number. *Id.* ¶ 18. Mr. Thompson testified that he complied because he was handcuffed and he "did not feel that [he] had any choice." *Id.* ¶ 19.

19.    **Michael Bracey**, a 53 year-old Black man who resides in Kearney Park, Mississippi, testified that a MCSD deputy held a gun to the back of his head, arrested him, and handcuffed him shortly after Mr. Bracey had pulled into the driveway of his own home and exited his vehicle. Ex. H (M. Bracey Decl.) ¶¶ 1-7. The MCSD deputy told Mr. Bracey that he believed that Mr. Bracey was not wearing his seatbelt (he was) and that he was evading law enforcement (he was not). *Id.* at ¶ 8. Because of this incident, Mr. Bracey is now frightened to drive in Madison County, and can no longer work as a truck driver. *Id.* ¶ 12.

20.    **Destiny Jones**, a 24 year-old Black woman whose family lives in Canton, Mississippi testified that when she was at the scene of an accident, an MCSD deputy dragged her out of her vehicle and arrested her. Ex. T (D. Jones Decl.) ¶¶ 1, 3-18. She testified that the MCSD deputy "was extremely forceful" and yanked and twisted her arms, and that she "couldn't understand" why the deputy was arresting her. *Id.* ¶¶ 11-12. Ms. Jones testified that she was "crying and trying to comply with competing instructions from different officers." *Id.* ¶ 12. Following the incident, Ms. Jones filed a complaint against the MCSD deputy, but the MCSD never contacted her "to find out what happened or investigate." *Id.* ¶¶ 17-18.

21.    **Lisa Lewis Jones**, a 46 year-old Black woman who lives in Canton, Mississippi,

also testified regarding the incident described in the Declaration of Destiny Jones, Ms. Jones'
daughter, which she witnessed. Ex. U (L. Jones Decl.) ¶¶ 7-17. Ms. Jones further testified that
she has "witnessed the MCSD target and mistreat the Black community" in Canton. *Id.* ¶ 19. Ms.
Jones was once stopped at a roadblock for 20 minutes even though she provided the MCSD
deputy with a valid license and proof of insurance. *Id.* ¶ 22. Before letting her go, the MCSD
deputy questioned whether the letters on her license plate (B, A, and D) represented "some sort
of gang affiliation." *Id.* ¶¶ 23-24. She explained to him that those were the initials of her children
(Brian, Aaron and Destiny). *Id.* ¶ 25. Ms. Jones testified that the MCSD's treatment of her family
and her neighbors makes her feel "sad and afraid." *Id.* ¶ 27.

22. **Michelle Williams**, a 31 year-old Black woman who resides in Florida, testified
to an experience with the MCSD that resulted in her losing her opportunity to practice law in
Mississippi. Ms. Williams testified that when she was a law student, she and her husband were
driving at night through Madison County with their infant child when an MCSD deputy began to
follow them. Ex. EE (M. Williams Decl.) ¶¶ 1-2, 4-6. The deputy followed them into a darkened
area before signaling Ms. Williams to pull over. *Id.* ¶ 6. Ms. Williams testified that because she
was scared for her safety, she slowed down and called dispatch to try to negotiate pulling over
once they reached a lighted area, but the deputy would not agree. *Id.* ¶ 11. Instead, he falsely
insisted that the next lighted area was hours away and began to drive menacingly around Ms.
Williams' vehicle. *Id.* ¶¶ 11-13. After giving the dispatch all of her relevant information,
dispatch told Ms. Williams she would just receive a ticket in the mail; however, the next day she
was arrested and transferred to the Madison County Detention Center. *Id.* ¶¶ 15, 17, 19-20.

23. **Earnest Pate,** a 46 year-old Black man who resides in Flora, Mississippi, testified
that during a traffic stop, an MCSD searched his person and asked to see his license even though

Mr. Pate was only a passenger in the vehicle. Ex. X (E. Pate Decl.) ¶¶ 1-9. The MCSD deputy cursed and yelled at Mr. Pate, and threatened to take him to jail on a warrant for a bad check written by his ex-wife. *Id.* ¶¶ 7-9. In Mr. Pate's experience, MCSD deputies "mistreat Black people" and "target[ ] the Black community in Flora." *Id.* ¶ 12.

24.     **Delores Smith**, a 56 year-old Black woman who resides in Camden, Mississippi testified that she was pulled over by an MCSD deputy driving an undercover truck. Ex. Y (D. Smith) Decl. ¶¶ 1, 4-5. The deputy screamed and cursed at her for not pulling over sooner. *Id.* ¶ 5. Ms. Smith testified that she was "shaken up for days" afterwards. *Id.* She also testified that on another occasion, an MCSD deputy pulled over her son. *Id.* ¶ 6. When her son asked why, the MCSD deputy informed him that he "fit a profile because he has dreadlocks and was wearing a hat." *Id.* Ms. Smith testified that she is afraid for her young sons because MCSD deputies "are disrespectful, and often scary," and target young Black men. *Id.* ¶¶ 2-3, 6.

25.     **John Spann**, a 27 year-old Black man, testified that he was subjected to a lengthy and intrusive stop by the MCSD while driving home from visiting his grandmother in Madison County. Ex. AA (J. Spann Decl.) ¶¶ 1, 4. Over the course of the 45-minute stop, which did not result in a traffic citation, Mr. Spann testified that the MCSD deputy repeatedly asked him whether he was drinking or had any drugs or weapons. *Id.* ¶¶ 8, 10, 12. The deputy even directed Mr. Spann to conduct a search of his own vehicle while the deputy observed, instructing Mr. Spann to uncover a plate of food from his grandmother and show that there was nothing underneath a baseball cap. *Id.* ¶ 9.

**B.     The Declarations Are Relevant To The Commonality, Typicality, and Adequacy Analyses Required By Rule 23**

Plaintiffs submitted the Declarations in support of their Motion for Class Certification. In adjudicating Plaintiffs' motion, the Court's focus is on the elements of numerosity, commonality,

typicality, and adequacy set forth in Fed. R. Civ. P. 23(a), and the Declarations are plainly

relevant to multiple facets of this inquiry. First, the Declarations render the existence of the

Policing Program challenged by Plaintiffs "more . . . probable," Fed. R. Evid. 401(a), which

supports Plaintiffs' contention that Rule 23(a)(2)'s commonality requirement has been satisfied.

Courts routinely consider declarations from prospective class members at the class certification

stage as probative anecdotal evidence of a policy or practice of discrimination. *See, e.g.*, *Moore*

*v. Napolitano*, 926 F. Supp. 2d 8, 30 (D.D.C. 2013) (granting class certification where

declarations from named plaintiffs and class members, together with statistical evidence,

"raise[d] an inference of discrimination"); *Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 266

(S.D.N.Y. 2007) (granting class certification; declarations were "valuable" because they could

"persuade a reasonable factfinder that a pattern or practice of discrimination exists").[2]

For example, in *Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015), the Fourth Circuit

found that declarations by the named plaintiffs and class members provided evidence that a steel

plant was "infected by express racial bias and stereotypes." *Id.* at 910. Many of the class

members' declarations included testimony concerning their subjective beliefs of racial

discrimination, supported by descriptions of their own personal experiences.[3] Based in part on

---

[2] *See also, e.g.*, *Hill v. Shell Oil Co.*, No. 98 C 5766, 2002 WL 663583, at *3 (N.D. Ill. Mar. 28, 2002)
(granting class certification where plaintiffs "offered numerous [class member] declarations and customer
complaints of allegedly discriminatory treatment in addition to their own testimony of alleged
discrimination"); *Hartman v. Duffy*, 158 F.R.D. 525, 539 (D.D.C. 1994), *aff'd in part, remanded in part
on other grounds*, 88 F.3d 1232 (D.C. Cir. 1996) (granting class certification where the "sworn
declarations of class members" and other evidence demonstrated that "discriminatory practices . . .
adversely affected female applicants"); *Selzer v. Bd. of Educ. of the City of New York*, 112 F.R.D. 176,
179 (S.D.N.Y. 1986) (granting class certification where the plaintiffs offered class member declarations
supporting their allegations "that the Board of Education has discriminated against them individually 'in
the same general fashion' as against the proposed class"); *cf. Donaldson v. The Pillsbury Co.*, 554 F.2d
825, 830-32 (8th Cir. 1977) (affidavits from other employees whose allegations of discrimination were
"plainly rooted in the same bias asserted" by the plaintiff supported class certification).

[3] *See, e.g.*, Declaration of Eric Conyers, *Brown v. Nucor Corp.*, No. 2:04-22005-12BG (D.S.C.) (ECF
185-9) ¶ 5 ("I don't believe that Paul Nowlin ever submitted my bid. I believe that he did not want to see

15

this anecdotal evidence, the Fourth Circuit "remand[ed] the case to the district court with instructions to certify the class." *Id.* at 922. Similarly, in *Moore v. Napolitano*, 926 F. Supp. 2d 8 (D.D.C. 2013), the court granted the plaintiffs' motion for class certification in an employment discrimination action. The class members' declarations included testimony concerning their subjective beliefs of racial discrimination, based on their personal employment experiences.[4] The court found that this anecdotal evidence, together with other evidence presented by the plaintiffs, "raise[d] an inference of discrimination" that was sufficient to establish commonality. *Id.* at 30. Like the class member declarations found probative by the Fourth Circuit in *Brown* and the district court in *Moore*, the Declarations at issue here are relevant to and probative of the question of whether the MCSD implements a racially discriminatory Policing Program. *Cf. Dockery v. Fischer*, 253 F. Supp. 3d 832, 853-54 (S.D. Miss. 2015) (Barbour, J.) (plaintiffs had demonstrated existence of a policy or practice for purposes of commonality through, *inter alia*, affidavits from prospective class members).

The Declarations are also relevant to the Rule 23(a)(3) and (a)(4) typicality and adequacy inquiries. The Declarations demonstrate that the proposed class is subjected to the same policies Plaintiffs challenge; that the claims of the Named Plaintiffs are typical of the proposed class; and that the interests of the proposed class are aligned with the interests of the Named Plaintiffs. *See,*

---

me advance . . . because of my race."); Declaration of Robyn Spann (ECF 185-13) ¶ 3 ("I met the posted qualifications for this position and believe that I was not considered for it because of my race."); Declaration of Earl Ravenell (ECF 185-14) ¶ 7 ("I believe that other African Americans who are subject to the discrimination I experienced are afraid to come forward and say what is happening for fear of losing their jobs."); Declaration of Byron Turner (unnamed class member) (ECF 185-16) ¶ 6 ("I believe I have been unfairly disciplined for speaking out about racial issues at Nucor.").

[4] For example, Agent Wayne Robinson testified that he "'believe[d]'" that the Secret Service imposed requirements on African-American agents that were not imposed on white agents. *See Moore v. Napolitano*, 269 F.R.D. 21, 31 (D.D.C. 2010). Agent Angela Burns-Ramirez testified that she "believe[d]" that she received a low score on her evaluation because of racial discrimination, and further testified that she "'believe[d]'" that she did not get positions she applied for because of her race. *See id.*

*e.g.*, *Conyers v. City of Chicago*, No. 12 CV 06144, 2017 WL 4310511, at *7 (N.D. Ill. Sept. 28, 2017) ("The declarations from the eight proposed class members who were arrested within the class period also indicate that the plaintiffs' claims are typical of the claims of the class."); *Beckmann v. CBS, Inc.*, 192 F.R.D. 608, 614 (D. Minn. 2000) (finding typicality satisfied where "the affidavits and declarations of the named Plaintiffs and the prospective class members demonstrate that the named Plaintiffs have the same or similar grievances as the prospective class members"); *Selzer v. Bd. of Educ. of City of New York*, 112 F.R.D. 176, 180 (S.D.N.Y. 1986) ("The sum of the affidavits submitted by Ms. Selzer, Ms. Jawin and the five proposed class members is sufficient to establish the existence of a class as to whom there are common questions of law and fact and the typicality of the named plaintiffs' claims.").

### C.    Defendants' Argument Conflates Relevance And Sufficiency

Even if Defendants were correct that the Declarations contained nothing more than "subjective beliefs of race discrimination," Defendants' argument that the Declarations should therefore be stricken because such evidence is "insufficient" to prove race discrimination (Mem. 9) would still fail. The purported insufficiency of a piece of evidence standing by itself to prove the merits of a claim does not render such evidence irrelevant or otherwise inadmissible. *See, e.g.*, *Shell Offshore Inc. v. Tesla Offshore, L.L.C.*, No. CIV.A. 13-6278, 2015 WL 2131274, at *1-2 (E.D. La. May 7, 2015) (argument that testimony "should be excluded as irrelevant because [it] will be 'insufficient to prove' that Shell acted unreasonably when responding to the incident . . . erroneously conflates the relevance of [the] testimony with its sufficiency").[5]

---

[5] *See also New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985) ("[I]t is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'") (citation omitted); *United States v. Madera*, 574 F.2d 1320, 1322 (5th Cir. 1978) ("Evidence need not be conclusive of a material issue in order to be admitted."); *Lehrman v. Gulf Oil Corp.*, 464 F.2d 26, 42 (5th Cir. 1972) ("Gulf confuses the

Defendants' argument has been specifically rejected by district courts within this Circuit. For instance, in *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, the defendant asserted that "certain of Plaintiff's contentions—such as Plaintiff's statement that she 'believes she has been discriminated against because she is female'—are based on Plaintiff's 'subjective beliefs' and as such are inadmissible." 763 F. Supp. 2d 832, 847 (S.D. Tex. 2011). The court overruled the objection, explaining that while "[a]n employee's subjective belief that she has been the victim of discrimination is insufficient," the fact that "Plaintiff's statements are based on her subjective beliefs does not alone make her statements inadmissible . . . and Defendant's objection goes to the weight rather than the admissibility of the evidence." *Id.*; *see also Koppman v. S. Cent. Bell Tel. Co.*, No. 90-4503, 1992 WL 280793, at *7 (E.D. La. July 12, 1992)  (allowing "witnesses to testify about their subjective beliefs of discrimination" so long as they had personal knowledge).[6] This Court should similarly reject Defendants' challenges to the relevance of the Declarations.

## II.   DEFENDANTS' SPECIFIC EVIDENTIARY CHALLENGES ALSO FAIL

In addition to their across-the-board challenge to the relevance of the Declarations, Defendants challenge certain Declarations under four distinct theories. First, Defendants contend that testimony concerning incidents that occurred outside the applicable statute of limitations period should be stricken under Fed. R. Evid. 403 as unduly prejudicial. Second, Defendants

---

relevance of a piece of evidence with its sufficiency to prove a contested proposition of fact. . . . [T]he testimony was relevant because it made the proposition sought to be demonstrated more likely of belief than it would have been in the absence of the testimony, *even though* the McDonald's testimony alone would not necessarily make the proposition more likely to be true than untrue.").

[6] Defendants' own authorities involve evidence of subjective belief of racial discrimination that was admitted at trial. *See Laborde v. City of Houston*, 31 F. Appx. 151, at *1 (5th Cir. 2001) (cited at Mem. 9) ("At trial, Laborde offered little more than his subjective belief that some of his superiors recommended firing him based on his race."); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995) (also cited at Mem. 9) (plaintiff "provides no evidence . . . other than her own assertions"). While the courts in those cases concluded that the evidence was insufficient to prove the claims in those cases, there was no suggestion that the insufficiency of that evidence somehow rendered it inadmissible.

argue that testimony concerning incidents that occurred before Sheriff Tucker's tenure as Madison County sheriff are irrelevant under Fed. R. Evid. 401. Third, Defendants argue that at least one Declaration is inadmissible under Fed. R. Evid. 104(b), which governs conditional relevance. Finally, Defendants argue that testimony concerning incidents that resulted in the criminal convictions of certain Declarants is inadmissible under *Heck v. Humphrey*, 512 U.S. 477 (1994). For the reasons discussed below, each of these arguments is meritless.[7]

  **A.**  **Defendants' Rule 403 Challenges Fail**

    **1.**  **Rule 403 Weighing Of Probative Value Against Prejudice Is Inapplicable At The Class Certification Stage**

  As a threshold issue, Defendants' bid to exclude the Declarations under Fed. R. Evid. 403 based on purported "prejudice" fails because the Court is the sole decision-maker at the class certification stage and the "weighing of probative value against prejudice . . . has no logical application" where evidence is presented to a judge, rather than a jury. *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981); *see also Dixon v. Henderson*, 186 F. Appx. 426, 429-30 (5th Cir. 2006) ("[T]he provision of Fed. R. Evid. 403 allowing for the exclusion of evidence if the probative value is outweighed by the danger of unfair prejudice ha[s] no application" where the judge is the sole decision maker.). To the extent that any particular piece of evidence might raise "improper inferences," the Fifth Circuit has explained that a judge can "[c]ertainly . . . exclude those improper inferences from his mind in reaching a decision." *Gulf States*, 635 F.2d at 519. In keeping with this, courts in the Fifth Circuit reject challenges under

---

[7] Also, and as discussed further in Plaintiffs' concurrently-filed opposition to Defendants' Motion to Strike Newspaper Articles, "the rules of evidence do not apply in full force" at the class certification stage. *Steward v. Janek*, 315 F.R.D. 472, 478 (W.D. Tex. 2016); *see also Flores v. Anjost Corp.*, 284 F.R.D. 112, 124 n.3 (S.D.N.Y. 2012) (same). This presents yet another basis to deny the instant Motion.

Fed. R. Evid. 403 in proceedings where the judge, not a jury, is the decision-maker.[8]

That same rule applies with equal, if not greater force in the class certification context, both because the Court is the sole decision-maker at class certification, and because the rules of evidence are not strictly applied at the class certification stage. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, --- F. Supp. 3d ---, 2018 WL 1229761, at *12 n.7 (S.D.N.Y. 2018) ("declin[ing] to apply Rule 403" because "Rule 403's concerns regarding unfair prejudice and misleading the jury have less force in the class certification context, where the Court serves as the trier of fact"); *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, No. CV 2:11-07382, 2017 WL 2362848, at *4 (D.N.J. May 31, 2017) (argument that testimony should be excluded under Rule 403 is "easily rejected" because "there is no jury present at class certification," and "[t]he Court's 'gatekeeping function' is, therefore, less of a concern"). To the extent that the Court finds any aspect of the Declarations to be "unduly prejudicial," the Court is plainly "capable of separating the unduly prejudicial nature of otherwise relevant testimony." *Perez v. Bruister*, Nos. 3:13-cv-1001-DPJ-FKB, 3:13-cv-1081-DPJ-FKB, 2014 WL 3779640, at *2 (S.D. Miss. Jul. 31, 2014) (overruling, in a bench trial, "[a]ll Rule 403 objections based on unfair prejudice"); *see also Savarese v. Pearl River Nav., Inc.*, No. 09-129, 2010 WL 3070376, at *1 (E.D. La. Aug. 2, 2010) (denying motion to exclude "[b]ecause the Court will be able to

---

[8] *See, e.g.*, *In the Matter of M&M Wireline & Offshore Servs., LLC*, No. 15-4999, 2017 WL 430063, at *7 (E.D. La. Jan. 31, 2017) (denying motion to exclude testimony; "because this is a bench trial, there is substantially less danger that [the] evidence may produce any unfair prejudice or confuse the issues"); *Nelson v. City of Lake Charles*, No. 12-cv-02770, 2013 WL 5890316, at *2 (W.D. La. Nov. 1, 2013) (denying motion to exclude evidence under Fed. R. Evid. 403 because "dangers of unfair prejudice [and] confusion of the issues . . . are not valid concerns in the context of a non-jury trial"); *Texas Gas Transmission, LLC v. 18.08 Acres +/- in Se. Quarter of Section 24*, No. 2:08-cv-240-B-V, 2012 WL 12926064, at *1 (N.D. Miss. Apr. 5, 2012) (denying motion to "exclude as unduly prejudicial evidence or testimony of speculative hazards brought by the presence of [a] pipeline" on the grounds that "Rule 403 is inapplicable to a bench trial"); *Cowen v. Allstate Ins. Co.*, No. 11-118, 2012 WL 10591 (E.D. La. Jan. 3, 2012) (denying motion to exclude extrinsic acts evidence, and reasoning that "any danger of unfair prejudice is negated by the fact that this is a bench trial").

exclude any improper inferences . . . in reaching its decision at trial"). All of Defendants'

arguments under Rule 403 should therefore be rejected.

### 2.    The Declarations Are Admissible Even Assuming Rule 403 Applies

Even assuming that weighing of probative value against prejudice under Fed. R. Evid.

403 was appropriate at the class certification stage (as set forth above, it is not), Defendants'

objections under this Rule lack merit. Specifically, Defendants contend that the Court should

strike the portions of the Class Members' Declarations that concern events that occurred before

May 8, 2014, and thus outside of the statute of limitations period, because "any probative value

is substantially outweighed by unfair prejudice to Defendants, given that the Declarations are

vague so old memories may have failed [*sic*], and relate to incidents outside the three year statute

of limitations." Mem. 11. This is wrong for two reasons. First, to the extent Defendants argue

that incidents outside of the statute of limitations period are categorically irrelevant, Defendants

are simply incorrect as a matter of law. Second, to the extent Defendants argue prejudice because

certain Declarations "fail to provide dates or the names of the involved officers" and Defendants

purportedly "have no way to investigate or defend against" the contents of such Declarations (*id.*

at 12), this argument, even if true, goes to the weight of the evidence, not its admissibility. In any

event, even if Defendants' arguments were correct, they are simply inapplicable to a substantial

majority of the testimony presented in the Declarations.

### (a)    Evidence Of Pre-May 8, 2014 Incidents Is Relevant To Class Certification

Defendants challenge certain testimony under Fed. R. Evid. 403 solely on the basis that it

relates to incidents outside the statute of limitations period, but do not explain how evidence of

such pre-May 8, 2014 incidents is inherently prejudicial. This argument—essentially, a Fed. R.

Evid. 401(a) relevance argument disguised as a Fed. R. Evid. 403 prejudice argument—lacks

merit. Evidence of pre-May 8, 2014 incidents is relevant and germane to the class certification inquiry, and the possibility that civil rights claims arising from these incidents might be time-barred does not render evidence of these incidents inadmissible.

The law is clear that courts may consider evidence from outside the limitations period when assessing claims of a pattern or practice of discrimination. *See generally Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-67 (1977) ("The historical background . . . is one evidentiary source" for "[d]etermining whether invidious discriminatory purpose was a motivating favor," and is particularly relevant "if it reveals a series of official actions taken for invidious purposes."); *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) ("A discriminatory act which is not made the basis for a timely charge . . . may constitute relevant background evidence in a proceeding in which the status of the current practice is at issue."); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (plaintiff may use evidence of time-barred discriminatory acts "as background evidence in support of a timely claim").

Indeed, the Fifth Circuit has expressly held that "the statute of limitations has no bearing on the admissibility of evidence." *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975) (finding no error in the admission of "evidence of acts committed beyond the statute of limitations period" where the offenses at issue "all occurred within the [limitations] period and the evidence admitted help[ed] establish the scheme" in question). This is because "[t]he statute of limitations is a defense . . . not a rule of evidence." *Id.*; *see also Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001) ("A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period."); *Black Law Enforcement Officers Ass'n v. City of Akron*, 824 F.2d 475 (6th Cir. 1987) (holding that "the district court erred in using the statute of limitations to bar the

admission of evidence" and that the improperly excluded evidence was essential for the plaintiffs to prove the "long history of discrimination" they alleged).[9] Defendants' reliance on the statute of limitations to seek to exclude the Declarations is thus unavailing.

(b)    <u>Defendants' "Vagueness" Argument Fails</u>

Defendants also claim prejudice from the ostensibly "vague" description of pre-May 8, 2014 incidents discussed in six Declarations. This does not even approach the high bar for exclusion of evidence pursuant to Fed. R. Evid. 403. *See, e.g.*, *Dartez v. Fibreboard Corp.*, 765 F.2d 456, 461 (5th Cir. 1985) ("[B]ecause Rule 403 permits the exclusion of probative evidence, it is an extraordinary remedy that must be used sparingly."); *United States v. McRae,* 593 F.2d 700, 707 (5th Cir. 1979) ("[T]he application of Rule 403 must be cautious and sparing. . . . It is not designed to permit the court to 'even out' the weight of the evidence."); *Koppman*, 1992 WL 280793, at *8 (rejecting argument that "evidence of discrimination against nonparties, if it is relevant, would be more prejudicial than probative, and should be excluded pursuant to Fed. R. Evid. 403" and noting that "[t]he Fifth Circuit has explicitly held that 'the testimony of . . . similarly situated employees and the reasons for their discharge are relevant in proving a pattern and practice of [employment] discrimination'") (quoting *Harpring v. Continental Oil Co.*, 628 F.2d 406, 409 (5th Cir. 1980)).

---

[9] Time-barred events are inherently more probative in cases alleging a policy or longstanding custom of discrimination than in cases that concern individual incidents. For example, in *Wright v. Weaver*, 516 F. App'x. 306 (5th Cir. 2013)—a decision relied on by Defendants—the Fifth Circuit considered the relevance of past events for the purpose of determining whether a 24-year old was a reckless driver. The Fifth Circuit held that the events at issue did not show recklessness because they were "either too remote in time or . . . not driving-related." *Id.* at 309-310. The Fifth Circuit's ruling in *Wright* concerning an individual's driving capabilities, which change over time, has no application to this case. Defendants also cite to *Jones v. Commander, Kansas Army Ammunitions Plant, Dep't of Army*, 147 F.R.D. 248 (D. Kan. 1993), but *Jones*, if anything, supports Plaintiffs' position. That employment discrimination case merely recited that "incidents too remote in time or too attenuated from plaintiff's situation are not relevant" before finding that documents predating the supervisory relationship at issue were, in fact, relevant and thus proper subjects of discovery. *Id.* at 251.

Defendants focus on the lack of specific dates or names of involved officers in these Declarations. However, inability to ascertain the specific dates of an incident or the identities of the officers involved is not uncommon, particularly in cases such as this which concern, in large part, improper suspicionless stops that do not result in arrests or citations and thus do not generate any records. *See, e.g.*, *Floyd v. City of New York*, 283 F.R.D. 153, 176 (S.D.N.Y. 2012) (rejecting argument that class certification should be denied because "the parties have not been able to identify the police officers involved in five of the plaintiffs' eight alleged stops"). The ostensible vagueness of the descriptions of this limited subset of incidents goes, if anything, to the weight the Court places on the evidence, not to its admissibility. *See, e.g.*, *DL v. District of Columbia*, 820 F. Supp. 2d 27, 29 (D.D.C. 2011) ("Defendants' vagueness challenge is overruled because it goes to the weight of the evidence, not its admissibility."). The district court's decision in *Joint Equity Committee of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422 (C.D. Cal. 2012), is instructive on this point. There, defendants argued that the court should "strike or disregard" the class member declarations proffered in support of the plaintiffs' motion for class certification because the declarants could "no longer recall the relevant events." *Id.* at 426. The court held that there were "insufficient grounds to strike or disregard the declarations," and explained that it would "assess the strengths and weaknesses of the class member declarations—along with all other properly submitted evidence—as it consider[ed] whether the requirements of Rule 23 have been met." *Id.* at 427.[10]

---

[10] Defendants similarly argue in cursory fashion that the Declarations of Bysheba Brown, Veronica Davis, and Kenneth Harris should be stricken under Fed. R. Evid. 403 because they do not specifically indicate that the roadblocks at issue were set up by the MCSD, as opposed to a different law enforcement agency. *See* Mem. 16, 17, 20. This argument improperly reads specific sentences of these Declarations in isolation without considering their context, which makes clear that the Declarations concern MCSD policing practices. Ms. Brown's Declaration begins by stating that Ms. Brown "has seen around five roadblocks" at the entrance to her neighborhood. The very next sentence is a description of those roadblocks: "the Madison County Sheriff's Department comes to my neighborhood with as many as four cars. They park

(c)   Defendants' Statute Of Limitations Arguments Do Not Affect The Majority Of The Testimony Set Forth In The Declarations

Even if Defendants' statute of limitations-based Rule 403 arguments had merit—and as discussed above, they do not—these arguments do not affect a substantial majority of the testimony contained in the Declarations. Defendants do not attempt to raise such arguments as to 11 Declarations,[11] and most of the purported statute of limitations issues raised with respect to the remaining Declarations are spurious. While Defendants assert statute of limitations-based challenges to testimony contained in 14 Declarations, only four Declarations actually focus primarily on incidents that occurred before May 8, 2014.[12] Two more discuss events occurring both before and after May 8, 2014.[13] The remainder of Defendants' challenges are defective for the reasons discussed below.

First, many of Defendants' statute of limitations challenges fail because they are based on other, irrelevant pre-May 8, 2014 incidents reflected in court records Defendants themselves

---

in the parking lots . . . and turn off all their lights." Ms. Brown then proceeds to describe roadblocks in Canton, and concludes, "I believe the MCSD engages in discriminatory policing toward black people. In Canton and Ridgeland MCSD only sets up roadblocks in Black neighborhoods." Ms. Davis's Declaration states that the MCSD regularly sets up roadblocks in her neighborhood; that "[i]n 2014 [Ms. Davis] was stopped by two officers at a roadblock," and that Ms. Davis "believe[s she] was the subject of discriminatory policing by the MCSD." It strains credulity for Defendants to take the first sentence out of context and then argue that Ms. Davis might have meant that she was stopped by an agency other than the MCSD. Similarly, Mr. Harris's Declaration describes the roadblocks he has encounters, discussing the "officers" and their interaction and concludes "I don't believe the officers have any cause to stop me. I believe the MCSD targets me . . . ." These Declarations provide plainly relevant evidence concerning the MCSD's policing practices and do not pose any cognizable prejudice to Defendants, much less the sort of extraordinary prejudice that could warrant exclusion under Fed. R. Evid. 403.

[11] Defendants do not raise statute of limitations challenges to Exs. J (B. Brown Decl.); L (R. Davis Decl.); P (U. Guise Decl.); T (D. Jones Decl.); U (L. Jones Decl.); V (A. McKay Decl.); X (E. Pate Decl.); Y (D. Smith Decl.); AA (J. Spann Decl.); BB (T. Thompson Decl.); or EE (M. Williams Decl.).

[12] These four Declarations are Exs. G (J. Bacon Decl.), H (M. Bracey Decl.), M (V. Davis Decl.), and O (D. Doss Decl.). Plaintiffs assume for purposes of this motion, but do not concede, that claims under 42 U.S.C. § 1983 and 42 U.S.C. 4000d arising from the pre-May 8, 2014 incidents (if any) discussed in these Declarations would be time-barred.

[13] *See* Exs. Z (Q. Smith Decl.) and CC (M. Tillman Decl.).

submitted, not anything actually discussed in the Declarations.

- Anthony Brown's Declaration discusses a stop and search at a roadblock in 2014. Ex. I (A. Brown Decl.) ¶¶ 2-6. Mr. Brown's Declaration does not address any traffic stops in 2012. Defendants nonetheless cite a traffic citation they allege Mr. Brown received in 2012 for failure to obey a stop sign. *See* Mem. 15. There is, however, no basis to believe that this 2012 citation is related to the 2014 roadblock, or that Mr. Brown would be cited at a roadblock for failure to obey a stop sign.

- Demario Day's Declaration describes the MCSD's current practice of conducting "jump-out" patrols at his Canton-area apartment complex. Ex. N (D. Day Decl.) ¶¶ 2-4. Defendants cite to a 2010 arrest record, but there is no basis to believe that this incident—a narcotics arrest, rather than a warrant check—is addressed in Mr. Day's Declaration. Mem. 17-18.

- Kenneth Harris' Declaration describes being stopped at six MCSD roadblocks within the last year. Ex. Q (K. Harris Decl.) ¶ 2. Defendants cite traffic violation records from 2012 through 2015 and argue that claims arising from incidents underlying the pre-May 2014 traffic violations would be time-barred, but none of these incidents is addressed in Mr. Harris's declaration. Mem. 19-20.

- Lester Hollins' Declaration concerns the MCSD's practice of setting up roadblocks at the entrance to majority-Black apartment complexes in Ridgeland, Mississippi during the past four years in which he has been a Ridgeland resident. Ex. R. (L. Hollins Decl.) ¶ 2. Defendants cite court records from 2005, but Mr. Hollins' Declaration is plainly limited to the past four years. Mem. 20-21.

- Antonio Mitchell's Declaration concerns stops at roadblocks within the last three years. Ex. W (A. Mitchell Decl.) ¶2. Defendants cite traffic violation records from 2007, 2010, and 2011, but Mr. Mitchell's Declaration does not discuss any of the incidents underlying these traffic violations. Mem. 23.

Second, Defendants assert that certain Declarations that discuss the MCSD's use of roadblocks in predominantly-Black areas of Madison County do not provide dates for each roadblock stop that is discussed, and argue that certain of those stops could therefore fall outside the statute of limitations.[14] This argument also misses the mark, because these Declarations do

---

[14] Specifically, Defendants challenge the Declarations submitted by (1) James Bacon, discussing roadblocks in Camden, Mississippi; (2) Willie Carter, also discussing roadblocks in Camden; (3) Lester Hollins, discussing roadblocks in Ridgeland, Mississippi; (4) Antonio Howard, also discussing roadblocks in Ridgeland; and (5) Earline Wilder, discussing roadblocks in Canton, Mississippi. Defendants also challenge Declaration of Demario Day, concerning stops by the MCSD's "jump out patrol," on these same grounds. That challenge similarly fails, for the same reasons discussed above.

not purport to assert specific claims concerning individual roadblock stops, but rather to provide evidence of the MCSD's current and historical practice of targeting Madison County's Black community through discriminatory vehicular roadblocks. Because each declaration describes an ongoing practice, the possibility that these Declarants encountered roadblocks before May 8, 2014, as well as after that date, does not in any way make their testimony less relevant.

**B.      Testimony, If Any, Concerning Incidents Predating Sheriff Tucker's Administration Is Relevant**

Defendants next argue that references in four Declarations "to incidents allegedly occurring during Sheriff Trowbridge's administration are wholly irrelevant under FRE 401 and should be stricken by the Court." Mem. 10 (citing Exs. K (W. Carter Decl.); N (D. Day Decl.); and O (D. Doss Decl.); *see also id.* at 20-21 (citing Ex. N (L. Hollins Decl.)). As above, this argument arises from irrelevant incidents identified by Defendants in court records Defendants themselves submitted, not any incidents actually discussed in the Declarations. *See* Section II.A.2(c), *supra* (discussing these same arguments with respect to the Declarations of Demario Day, Domunique Doss, and Lester Hollins). Defendants also argue that "[t]he only justice court records relating to [Declarant Willie] Carter stem from a June 13, 2009 arrest." Mem. 16. Again, Defendants do not connect this 2009 incident to Mr. Carter's declaration, which concerns the MCSD's present-day practice of setting up roadblocks in the Camden, Mississippi area. *See* Ex. K. Instead, Defendants simply assert that "any claims" stemming from this 2009 arrest would be irrelevant. Mem. 16. As such, even if Defendants were correct that incidents pre-dating Sheriff Tucker's administration were categorically irrelevant, there would be nothing to strike from these four Declarations; to the contrary, the only materials that could properly be stricken under this theory are the irrelevant police and court records Defendants themselves attached as exhibits.

In any event, for the reasons discussed in Section II.A.2(a), *supra*, evidence of the

policies and customs challenged by Plaintiffs does not become categorically irrelevant merely because it predates some temporal marker, and Defendants' assertion that "[a]t issue in Plaintiffs' lawsuit are alleged racially discriminatory policies of the MCSD under Sheriff Tucker, not racially discriminatory policies under Sheriff Trowbridge" (Mem. 10, citing Compl. (ECF No. 1)) is inaccurate. To the contrary, the Complaint expressly alleges that "Sheriff Trowbridge was one of the key architects . . . of the Policing Program" (Compl. ¶ 115; *see also id.* ¶¶ 116-30) and that "[u]pon taking office, Sheriff Tucker immediately adopted the Policing Program in its entirety." *Id.* ¶ 134. As Plaintiffs explain more fully in their memorandum in support of Plaintiffs' motion for class certification, these allegations are borne out by substantial documentary and testimonial evidence.[15] Given Sheriff Tucker's unabated continuation of Sheriff Trowbridge's policies and practices, instances of racial discrimination that occurred under Sheriff Trowbridge's tenure would be both relevant to and probative of the policies in place under Sheriff Tucker's leadership.

### C.   <u>Federal Rule Of Evidence 104 Is Inapposite</u>

Defendants also argue in cursory fashion that the Declarations are inadmissible under Fed. R. Evid. 104(b), which governs conditional relevancy. *See* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). Defendants claim, without citing any authority, that

---

[15] *See* Motion for Class Certification at Ex. 77 (ECF 231-77), Memo from Sheriff Tucker to All Deputies/Employees (Jan. 3, 2012) ("The policies and procedures under the administration of Sheriff Toby Trowbridge shall remain in place and effective as the policies and procedures for the administration of Sheriff Randy Tucker."). Moreover, numerous deputies have testified that Sheriff Tucker did not implement new policies that changed the culture of the MCSD after taking the baton from Sheriff Trowbridge. *See, e.g., id.* at Ex. 21 (ECF 231-21), Sullivan Tr. 90:16-21; *id.* at Ex. 12 (ECF 231-12), Flax Tr. 89:6-8; *id.* at Ex. 28 (ECF 231-28), Wilson Tr. 42:7-23. In fact, many of the deputies who worked under Sheriff Trowbridge continue to work as deputies at the MCSD under Sheriff Tucker's leadership. *See id.* at Ex. 67 (ECF 231-67), MCSD Roster; *id.* at Ex. 78 (ECF 231-78), 2011 MCSO Roster-1-2.

"[u]nder Rule 104, the Plaintiffs must present evidence of race discrimination other than the Witnesses' mere subjective belief, which they have not." *See* Mem. 10 & n.3.[16]

Defendants' argument misunderstands conditional relevance and attempts to convert it into a requirement that evidence be corroborated in order to be admissible. Rule 104(b), however, is not applicable when the evidence, on its own, has the tendency to make the fact more or less probable. *Wolpert v. Abbott Labs.*, No. CIV.A. 08-4849 JBS, 2012 WL 1600437, at *3 n.1 (D.N.J. May 7, 2012) ("Conditional relevance analysis is called for when . . . the conditionally relevant evidence is truly irrelevant in the absence of proof of the condition."). Here, the relevancy of the Plaintiffs' accounts in their Declarations does not depend on the fulfillment of any condition of fact. Their sworn statements, on their own, are relevant, since they tend to prove the existence of the policies challenged by Plaintiffs and the typicality of Plaintiffs' claims. As such, the relevancy of the Declarations is not conditioned on the ultimate conclusion of a finding of race discrimination or of the existence of any MCSD policy, but instead tends to prove those points. *See, e.g.*, *Abramson v. Am. Univ.*, No. 86-1413, 1988 WL 152020, at *2 (D.D.C. June 13, 1988) (rejecting argument that "the testimony of plaintiff's four witnesses may only be admitted after plaintiff proves there was a pattern of discrimination," and holding that testimonial evidence of discrimination "does not come within the strictures of Rule 104(b)").

### D.    *Heck v. Humphrey* Does Not Provide A Basis For Striking The Declarations

Finally, Defendants seek to strike portions of certain Declarations on the grounds that their "claims and allegations should be barred by *Heck v. Humphrey*," 512 U.S. 477 (1994). Under *Heck*, a plaintiff who has been convicted of a crime is barred from bringing suit under § 1983 to recover damages for a violation of his or her constitutional rights if judgment in his favor

---

[16] Defendants only rely on Fed. R. Evid. 104 in discussing the Declaration of James Bacon. Mem. 14.

would necessarily imply that his or her conviction is invalid. 512 U.S. at 486-87. *Heck*, however, is not a rule of evidence, and the possibility that a claim arising from an incident could be subject to a defense under *Heck* does not call into question the admissibility of evidence of such an incident. Thus, even where Defendants have presented evidence that certain incidents described in certain Declarations resulted in criminal convictions—largely, convictions for traffic offenses—*Heck* presents no basis to grant Defendants' motion.[17]

### 1.     *Heck* Is Not A Rule Of Evidence

The law is clear that "*Heck* . . . does not control the admissibility of evidence, or 'serve as an evidentiary bar.'" *Marks v. Smith*, No. 15-5454, 2017 WL 2214977, at *2 (E.D. La. May 8, 2017) (quoting *Simpson v. Thomas*, 528 F.3d 685, 695 (9th Cir. 2008)). Defendants' unsupported assertion to the contrary—that "[i]f a party cannot collaterally attack a prior conviction in a civil action," a witness "logically cannot" present evidence concerning the incident underlying the conviction (Mem. 13)—is simply wrong.

In *Simpson v. Thomas*, the Ninth Circuit found the district court had "improperly barred evidence under *Heck*." 528 F.3d at 696. The court held that "*Heck* does not create a rule of evidence exclusion and therefore may not be used to bar relevant evidence." *Id.* at 687. The court instructed that even if the district court ultimately determined that the plaintiff's § 1983 suit was barred by *Heck*, the plaintiff would still be "entitled to tell the jury the entire story." *Id.* at 696. Courts around the country have relied on *Simpson* to hold that *Heck* does not preclude the admission of relevant evidence, even if a civil rights claim based on that evidence might imply

---

[17] Plaintiffs do not concede that any claims these Declarants might assert arising from these incidents would be barred by *Heck*, or that *Heck* bars these Declarants or any other persons from membership in the class proposed by Plaintiffs. Plaintiffs will address Defendants' substantive arguments concerning *Heck* in Plaintiffs' reply briefing in further support of the pending motion for class certification.

the invalidity of a state court criminal conviction. *See, e.g.*, *Melton v. Murphy*, No. 05-366, 2008 WL 2697333, at *2 (E.D. Pa. Jul. 9, 2008) (denying motion *in limine* to exclude evidence that implied the invalidity of a state court conviction on the grounds that "*Heck* does not create an evidentiary bar"), *aff'd in part*, 344 F. Appx. 806 (3d Cir. 2009); *Hardesty v. Barcus*, No. CV-11-103-M-DWM-JCL, 2012 WL 5906797, at *7 (D. Mon. Nov. 26, 2012) (denying motion *in limine* to exclude evidence that contradicted facts underlying offenses to which the plaintiff pled no contest because *Heck* "does not create a rule as to the admissibility of evidence").

In *Marks*, 2017 WL 2214977, for example, the Eastern District of Louisiana followed *Simpson* in denying a motion *in limine* to exclude evidence concerning "the facts and circumstances surrounding" a traffic stop and vehicle search, which resulted in the plaintiff's arrest and conviction. *Id.* at *2. The *Marks* court explained that "[t]he application of *Heck* focuses only on whether a claim is itself viable, not on whether a particular piece of evidence is admissible." *Id.* Even though the *Marks* court had already "precluded the [p]laintiff from bringing any *claim* that collaterally attack[ed] her conviction of marijuana by contesting the validity of her traffic stop," the *Marks* court found that "the [p]laintiff [was] still entitled to tell the jury the entire story" by presenting the evidence at issue. *Id.* (emphasis in original).

Here, too, Plaintiffs are entitled to tell the Court the "entire story" of Defendants' unconstitutional policing practices through the Declarations. Defendants' reliance on *Heck* as a rule of evidence is misplaced and should be rejected.

### 2. Defendants' *Heck* Argument, Even If Correct, Would Not Warrant Wholesale Exclusion Of The Declarations

Even if Defendants were correct that *Heck* could serve as a bar to witness testimony (it cannot), such a bar would not apply to much of the testimony set forth in the Declarations.

Defendants do not assert *Heck* arguments with respect to nine of the Declarations.[18] Of the sixteen remaining Declarations, only eight actually discuss incidents that led to convictions (in most cases, convictions for traffic violations).[19] And, as discussed below, the purported *Heck* issues raised by Defendants with respect to the final eight Declarations arise solely from court records cited by Defendants, not any incident actually set forth in any Declaration. Even if Defendants' *Heck* arguments had legal merit, they would not apply to these eight Declarations.

- Anthony Brown's Declaration discusses a 2014 roadblock. Ex. I (A. Brown Decl.) ¶¶ 2-6. Defendants attempt to raise a *Heck* issue through a 2012 incident in which Mr. Brown pleaded guilty to a stop sign violation, but this separate incident is simply irrelevant to Mr. Brown's Declaration. Mem. 15.

- Willie Carter's Declaration addresses stops at six roadblocks in Camden, Mississippi. Ex. K (W. Carter Decl.) ¶ 3. Defendants attempt to create a *Heck* issue based on records of a 2009 conviction, but even assuming that this conviction had some connection to one of these six stops (something Defendants do not demonstrate), it would not affect the rest of Mr. Carter's testimony. Mem. 16.

- Domunique Doss's Declaration discusses roadblock stops in 2010 and 2012. Ex. O (D. Doss Decl.) ¶ 6. Defendants cite records relating to a 2008 incident resulting in a traffic conviction, asserting vaguely that "[i]t is unclear whether either of the [2010 or 2012] incidents actually refer to [the] earlier arrest of Doss" reflected in those records. Mem. 18. This is pure speculation and does not create a *Heck* issue.

- Kenneth Harris' Declaration concerns roadblock stops within the past year. Ex. Q (K. Harris Decl.) ¶¶ 2-7. Defendants attempt to manufacture *Heck* issues by citing court records relating to incidents occurring between 2012 and 2015, but these are facially unrelated to the roadblocks discussed in Mr. Harris's Declaration. Mem. 19-20.

- Lester Hollins' Declaration concerns roadblocks at the entrance to his Ridgeland-area

---

[18] Specifically, Defendants do not assert *Heck* arguments with respect to Exs. G (J. Bacon Decl.); J (B. Brown Decl.); L (R. Davis Decl.); N (D. Day Decl.); U (L. Jones Decl.); Y (D. Smith Decl.); AA (J. Spann Decl.); BB (M. Tillman Decl.); DD (E. Wilder Decl.).

[19] *See* Mem. 14 (discussing conviction of Michael Bracey); *id.* at 17 (discussing conviction of Veronica Davis); *id.* at 19 (discussing conviction of Undrea Guise); *id.* at 21-22 (discussing conviction of Destiny Jones); *id.* at 22-23 (discussing conviction of Archie McKay); *id.* at 23-24 (discussing conviction of Earnest Pate, Jr.); *id.* at 26-27 (discussing conviction of Terrance Thompson); *id.* at 28 (discussing conviction of Michelle Williams). In addition to incidents that resulted in convictions, the Declarations of Mr. McKay, Mr. Pate, and Mr. Thompson also describe additional incidents that Defendants do not, and cannot, contend implicate *Heck*. *See* Ex. V (A. McKay Decl.) ¶ 3 ("The officer checked my license and let me go."); Ex. X (E. Pate Decl.) ¶¶ 10-11; Ex. BB (T. Thompson Decl.) ¶ 12-16.

apartment complex over the last four years. Ex. R (L. Hollins Decl.) ¶¶ 2-3. To create
purported *Heck* issues, Defendants cite court records which include plainly irrelevant
documents related to a 2005 conviction.[20] Mem. 20-21.

- Antonio Howard's Declaration also concerns roadblocks in Ridgeland. Ex. S (A. Howard
  Decl.) ¶ 3. Defendants cite criminal records relating to a conviction for possession of
  marijuana. Mem 21. Even assuming that this conviction had some connection to the
  roadblocks that are the subject of Mr. Howard's declaration (something Defendants do not
  demonstrate), it would not affect the rest of Mr. Howard's testimony.

- Antonio Mitchell's Declaration describes stops at more than ten roadblocks in the last three
  years, and an incident involving the MCSD jump out patrol that occurred within the last year.
  Ex. W (A. Mitchell Decl.) ¶¶ 2, 12-14. Defendants cite court records dating from 2007 to
  2015. Most of these records are plainly irrelevant; the only record that falls within the last
  three years relates to a marijuana possession conviction in December 2015. Mem. 23. There
  is no evidence that this conviction is related to the roadblocks at issue in Mr. Mitchell's
  declaration, but even assuming it is, it would not affect the rest of Mr. Mitchell's testimony.

- Quincy Smith's Declaration states that he was arrested at a roadblock in 2015 based on
  alleged unpaid fines, which Mr. Smith subsequently paid. *See* Ex. Z (Q. Smith Decl.) ¶¶ 9-
  10. Defendants incorrectly assert, based on this, that Mr. Smith "admits that he pleaded guilty
  to the charges against him as a result of the 2015 incident," but an arrest based on prior
  unpaid fines does not result in a new conviction, and thus creates no *Heck* issues. Mem. 25.
  In keeping with this, the court records submitted by Defendants (*see* Ex. WW) contain no
  record of any 2015 convictions.

Thus, even if Defendants were correct that *Heck* created a rule of evidence that could apply to

bar the Declarants from offering evidence, the Declarations would, in substantial part, remain

unaffected, because the great majority of testimony in the Declarations concerns incidents that

have no connection to criminal convictions of the Declarants.

## III.   DEFENDANTS' ALTERNATIVE REQUEST FOR FURTHER DISCOVERY SHOULD BE REJECTED

During the discovery period, Plaintiffs both disclosed the identities of the Declarants and

produced executed copies of the Declarations. Nonetheless, as Defendants concede, Defendants

---

[20] The records attached for Mr. Hollins also include records of a 2015 conviction. Defendants have
provided no evidence that this incident involved a stop at a roadblock, which is the subject of Mr.
Hollins's Declaration. Even if *Heck* applied to this incident, it would only affect one of the several
incidents described in the Declaration, and would not justify striking the Declaration in its entirety.

made no attempt whatsoever to schedule depositions of any of the Declarants, including the 13 Declarants whose Declarations were produced to Defendants seven weeks before class certification discovery closed. Instead, because, according to Defendants, they "have always regarded" the Declarations as "inadmissible" (Mem. 29), Defendants waited until four months after the close of class certification discovery and filed the instant motion to strike. Now, at the very end of their motion, Defendants request, in the alternative, that the Court grant Defendants "an opportunity to depose the Witnesses." *Id.* Under the circumstances of this case and this motion, Defendants' request is inappropriate.

Defendants made a strategic choice to allow discovery to close without attempting to take the depositions they now seek.[21] Defendants did so based on the assumption that the Court would share their view of the admissibility of the Declarations. Defendants were, of course, entitled to make that choice and forego discovery, but they now should be required to face the consequences of their decision. Defendants' motion provides no legitimate justification for reopening discovery months after it closed—and, presumably, then permitting further briefing to address any new evidence adduced during that supplemental discovery period—simply because Defendants' analysis of the admissibility of the Declarations is proved wrong. *See, e.g.*, *Gander Mountain Co. v. Cabela's, Inc.*, No. 04-CV-3125, 2007 WL 2026751, at *8 (D. Minn. July 10, 2007) ("It was entirely [defendant's] choice not to obtain discovery. . . . [Defendant] must live with the consequences of its litigation strategy. Discovery will not be reopened.").

This is all the more true when the tenuousness of Defendants' legal positions on this motion is considered. Defendants are represented by numerous experienced counsel from four

---

[21] Plaintiffs oppose Defendants' request for an evidentiary hearing for the reasons set forth in Plaintiffs' concurrently-filed opposition to that motion.

separate law firms—nine of whom have entered appearances—and have devoted extensive resources to this case. Yet Defendants chose to forego discovery regarding the Declarations in favor of a motion that primarily seeks to apply Fed. R. Evid. 403 weighing of probative value versus prejudice at the class certification stage where it does not apply, and that asks the Court to be the first to convert the rule of *Heck v. Humphrey* into an evidentiary bar, without citing any authority and in contravention of all prior rulings on the issue. If Defendants' novel theories of evidence law are found lacking (as they should be), Plaintiffs should be entitled to progress toward the disposition of their motion for class certification without Defendants further delaying or complicating these proceedings.

## <u>CONCLUSION</u>

For all these reasons, this Court should deny Defendants' Motion to Strike Declarations.

Dated: June 7, 2018

By:   /s/ Joshua Tom
Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Christopher K. Shields (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
christopher.shields@stblaw.com
bonnie.jarrett@stblaw.com

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice*)
Jeffery Robinson (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiffs*

35

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2018, I caused the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DECLARATIONS** to be electronically filed with the Clerk of the Court using the CM/ECF system, through which copies have been served to:

WISE CARTER CHILD & CARAWAY, P.A.
Michael B. Wallace (Miss. Bar No. 6904)
Charles E. Ross (Miss. Bar No. 5683)
James E. Graves (Miss. Bar No. 102252)
Charles E. Cowan (Miss. Bar No. 104478)
T. Russell Nobile (Miss. Bar No. 100682)
Post Office Box 651
Jackson, MS 39205
(601) 968-5534
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com
trn@wisecarter.com

CURRIE JOHNSON & MYERS, P.A.
Rebecca B. Cowan (Miss. Bar No. 7735)
P.O. Box 750
Jackson, MS 39205
(601) 969-1010
bcowan@curriejohnson.com

KATIE BRYANT SNELL, PLLC
Katie Bryant Snell (Miss. Bar No. 103607)
P.O. Box 3007
Madison, Mississippi 39130-3007
(601) 460-9800
Katie@katiebryantsnell.com

PETTIS, BARFIELD & HESTER, P.A.
J. Lawson Hester (Miss. Bar No. 2394)
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
(601) 987-5300
lhester@pbhfirm.com

*/s/ Joshua Tom*
Joshua Tom