# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; HERBERT ANTHONY GREEN; KHADAFY MANNING; QUINNETTA MANNING; MARVIN MCFIELD; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and MADISON COUNTY SHERIFF'S DEPUTIES JOHN DOES #1 through #6, in their individual capacities,<br><br>Defendants. | Civil Action No.<br>3:17-cv-00347-WHB-LRA<br><br>**ORAL ARGUMENT REQUESTED** |

# PLAINTIFFS' RESPONSE IN OPPOSITION
## TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
## THE DECLARATION AND TESTIMONY OF RAHUL GUHA

Plaintiffs Latoya Brown, Lawrence Blackmon, Khadafy Manning, Quinnetta Manning, Nicholas Singleton, Steven Smith, Bessie Thomas and Betty Jean Williams Tucker ("Plaintiffs") respectfully submit this Response in opposition to Defendants' Motion *In Limine* to Exclude the Declaration and Testimony of Rahul Guha (ECF No. 272, "Defendants' Motion") in this civil rights action brought against defendants Madison County, Mississippi and Sheriff Randall Tucker ("Defendants").  Pursuant to L.U. Civ. R. 7(b)(6)(A), Plaintiffs respectfully request oral

argument on Defendants' Motion.[1]

1.      Defendants' Motion seeks to exclude the Summary Declaration of Rahul Guha, Ph.D. Submitted Pursuant to Federal Rule of Evidence 1006 (the "Summary Declaration"), filed in support of Plaintiffs' Motion for Class Certification (ECF No. 231). In connection with this action, Defendants and third parties such as the Madison County Justice Court have produced thousands of records reflecting all arrests and citations recorded by the Madison County Sheriff's Department ("MCSD") from 2012 to 2017, as well as a subset of "incident reports" prepared by the MCSD that Defendants have represented provide a "narrative" of MCSD encounters with individuals that result in arrests. Plaintiffs retained Dr. Guha to tabulate and summarize these data that were provided to Plaintiffs.

2.      Because the thousands of underlying records that Dr. Guha tabulated are voluminous and could not be conveniently examined in court, Dr. Guha presented his summary calculations in his Summary Declaration and accompanying exhibits, pursuant to Federal Rule of Evidence 1006 ("Rule 1006").

3.      As detailed in Dr. Guha's Summary Declaration, as well as in the Memorandum of Law accompanying this Response and in the Declaration of Dr. Rahul Guha, dated July 2, 2018, submitted herewith, the Summary Declaration contains accurate tabulations of the data that Dr. Guha was provided, and was prepared using transparent and reliable statistical methods.

4.      Dr. Guha's Summary Declaration easily meets the requirements for admissibility under Rule 1006, and Defendants make no argument to the contrary. Indeed, Defendants concede

---

[1] Because the issues presented by Defendants' Motion overlap with the issues presented by Plaintiffs' pending Motion for Class Certification (ECF No. 231), Plaintiffs request that argument on the instant Motion should be held jointly with argument on Plaintiffs' Motion for Class Certification.

that Dr. Guha "simply took the data" he was provided "as is, and performed the calculations requested by Plaintiffs' counsel." Defendants' Memorandum in Support of Defendants' Motion (ECF No. 273, "Defs.' Br.") at 14. Nor does Dr. Guha offer offer any conclusions as to the meaning of his tabulations. Thus, Dr. Guha's Summary Declaration squarely comports with Rule 1006, and this Motion should be denied, accordingly.

5. Defendants do not dispute that the statistics Dr. Guha has summarized reflect a stark disparity in the MCSD's arrest and citation rates between races. Rather than even attempting to demonstrate the Dr. Guha erroneously tabulated the data he was provided, however, Defendants instead criticize Dr. Guha for failing to account for some unknown quantity of explanatory variables (like whether or not an arrest was "discretionary") that Defendants speculate could have contributed to the documented disparity. But such purported factors simply are not reflected in the datasets that Dr. Guha has summarized. In any event, Defendants fail to cite any research or otherwise demonstrate how such purported factors would affect one race more than another.

6. Defendants contend that Dr. Guha's Summary Declaration should be excluded because "raw statistics are not proof of discriminatory intent." Defs.' Br. at 7. This argument conflates the relevance of evidence with sufficiency, and thus fails. And, despite Defendants' bald assertion to the contrary, the statistics summarized by Dr. Guha are plainly relevant to this action, as they tend to make it more probable that the MCSD disproportionately targets Madison County's Black population. Regardless, Plaintiffs do not rely solely on Dr. Guha's Summary Declaration, and Defendants' Motion ignores the extensive additional anecdotal and documentary evidence presented by Plaintiffs in this case.

7. Defendants further argue that Dr. Guha's Summary Declaration should be

excluded under Fed. R. Evid. 403. This argument fails because the Court is the sole decision-maker at the class certification stage and the "weighing of probative value against prejudice … has no logical application" where evidence is presented to a judge, rather than a jury. *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981). Even if Fed. R. Evid. 403 applied here, however, Defendants' argument about the purportedly prejudicial effect of Dr. Guha's "census benchmarking" would fail, as Defendants severely mischaracterize the role and purpose of census data in the Summary Declaration.

8.   Plaintiffs also rely on the accompanying Memorandum of Law in Opposition to Defendants' Motion In Limine to Exclude the Declaration and Testimony of Rahul Guha, which is incorporated herein as if set forth in full, and the exhibits listed below:

> Exhibit 1: Summary Declaration of Rahul Guha Submitted Pursuant to Federal Rule of Evidence 1006 (March 13, 2018);
>
> Exhibit 2: Declaration of Rahul Guha Submitted Pursuant to 28 U.S.C. § 1746 (July 2, 2018);
>
> Exhibit 3: Report of Dwight D. Steward, Ph.D. RE: Rahul Guha, Ph.D. (July 2, 2018);
>
> Exhibit 4: Report of Mark Dunston (May 8, 2018);
>
> Exhibit 5: Excerpts from the Deposition of Rahul Guha, Ph.D. (April 18, 2018);
>
> Exhibit 6: Excerpts from the Deposition of Dwight Steward, Ph.D. (June 22, 2018); and
>
> Exhibit 7: Excerpts from the Deposition of Mark Dunston (June 14, 2018).

WHEREFORE, for the reasons set forth herein and in Plaintiffs' accompanying Memorandum of Law, Defendants' Motion *In Limine* to Exclude the Declaration and Testimony of Rahul Guha should be denied.

Respectfully submitted on this 2nd day of July, 2018.

By: */s/ Joshua Tom___ ____*
       Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Christopher K. Shields (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
christopher.shields@stblaw.com
bonnie.jarrett@stblaw.com

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice*)
Jeffery Robinson (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2018, I caused the foregoing **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE THE DECLARATION AND TESTIMONY OF RAHUL GUHA** to be electronically filed with the Clerk of the Court using the CM/ECF system, through which copies have been served to:

WISE CARTER CHILD & CARAWAY, P.A.
Michael B. Wallace (Miss. Bar No. 6904)
Charles E. Ross (Miss. Bar No. 5683)
James E. Graves (Miss. Bar No. 102252)
Charles E. Cowan (Miss. Bar No. 104478)
T. Russell Nobile (Miss. Bar No. 100682)
Post Office Box 651
Jackson, MS 39205
(601) 968-5534
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com
trn@wisecarter.com

CURRIE JOHNSON & MYERS, P.A.
Rebecca B. Cowan (Miss. Bar No. 7735)
P.O. Box 750
Jackson, MS 39205
(601) 969-1010
bcowan@curriejohnson.com

KATIE BRYANT SNELL, PLLC
Katie Bryant Snell (Miss. Bar No. 103607)
P.O. Box 3007
Madison, Mississippi 39130-3007
(601) 460-9800
Katie@katiebryantsnell.com

PETTIS, BARFIELD & HESTER, P.A.
J. Lawson Hester (Miss. Bar No. 2394)
Jason E. Dare (MSB No. 100973)
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
(601) 987-5300
lhester@pbhfirm.com
jdare@pbhfirm.com

*/s/ Joshua Tom*
Joshua Tom

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; HERBERT ANTHONY GREEN; KHADAFY MANNING; QUINNETTA MANNING; MARVIN MCFIELD; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated, | Civil Action No. 3:17-cv-00347-WHB-LRA |

*Plaintiffs*,

v.

MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and MADISON COUNTY SHERIFF'S DEPUTIES JOHN DOES #1 through #6, in their individual capacities,

*Defendants*.

## SUMMARY DECLARATION OF RAHUL GUHA, PH.D.

## SUBMITTED PURSUANT TO FEDERAL RULE OF EVIDENCE 1006

March 13, 2018

# Table of Contents

I.     Qualifications ................................................................................................ 1

II.    Assignment ................................................................................................... 1

III.   Methodology ................................................................................................. 3

      A.       Data summary 1:  Arrests made by the MCSD .................................. 3

      B.       Data summary 2:  Citations issued by the MCSD ............................ 6

      C.       Data summary 3:  Incident reports ................................................... 8

             1.       Arrests from Stops at Roadblocks ....................................... 9

             2.       Apartment Walkthroughs ................................................... 10

             3.       Arrests from Traffic Stops ................................................. 10

## I.    Qualifications

1.    I am a Senior Vice President at Cornerstone Research, a financial and economic consulting firm.  I hold Ph.D. and M.S. degrees from Cornell University, an M.B.A. from the Indian Institute of Management, and a B.E. degree in Electronics and Telecommunications Engineering from Jadavpur University.  I have over 20 years of experience advising clients in litigation matters.

2.    I have been assisted in this matter by staff of Cornerstone Research, who worked under my direction.  Cornerstone Research and I are providing our services in this matter pro bono.

## II.    Assignment

3.    I have been asked by Simpson Thacher & Bartlett LLP, the American Civil Liberties Union of Mississippi Foundation, and the American Civil Liberties Union Foundation, Counsel for Plaintiffs in this action,[1] to perform the following calculations and to provide the following summaries based on data and documents produced by the Madison County Sheriff's Department ("MCSD"), and the Madison County Justice Court:

      a.    Data summary 1:  Tabulate and summarize the data in ACLU12TO17.CSV ("Arrest Data") by offense and race.  I understand that these data represent all individuals arrested by the MCSD and booked into the Madison County Detention Center from January 1, 2012 through September 20, 2017.[2]

      b.    Data summary 2:  Tabulate and summarize the data in "ACLU FOIA Request 02052018 V1.xlsx" ("Citations Data") by violation and race.

---

[1] Class Action Complaint for Declaratory and Injunctive Relief and Individual Damages, *Latoya Brown; Lawrence Blackmon; Herbert Anthony Green; Khadafy Manning; Quinnetta Manning; Marvin McField; Nicholas Singleton; Steven Smith; Bessie Thomas; and Betty Jean Williams Tucker, individually and on behalf of a class of all others similarly situated, v. Madison County, Mississippi; Sheriff Randall S. Tucker, in his official capacity; and Madison County Sheriff's Deputies John Does #1 through #6, in their individual capacities*, CIVIL ACTION NO. 3:17-cv-347 WHB-LRA, filed May 8, 2017 ("Complaint").

[2] I have been informed by Counsel that in an email dated November 29, 2017 from Charles Cowan to Isaac Rethy, Mr. Cowan confirmed that the Arrest Data on which this data summary is based "is a copy of the Madison County Detention Center jail docket for 01/10/2012 through 09/20/2017 and that it reflects only arrests made by the Madison County Sheriff's Department and not those made by other arresting agencies."  *See* Charles Cowan, email message to Isaac Rethy, November 29, 2017.

I understand that these data represent all citations issued to individuals in Madison County for the period from January 1, 2012 December 31, 2017.[3] These data include citations issued by the MCSD, as well as citations issued by other agencies operating within Madison County.[4] The summary data I present are limited to citations issued by the MCSD.[5]

c. Data summary 3:  Summarize selected categories of data in the subset of incident reports produced by the MCSD.  I understand that incident reports are filled out and filed by the MCSD officers after certain types of incidents take place, such as those involving arrests.[6]

4.    A list of materials I used in performing my calculations and creating my data summaries is included as Appendix A.

5.    The data and document sets on which these summaries and calculations are based are voluminous. Without the benefit of summaries and calculations, it may be inconvenient for the Court to examine the contents of these data and document sets.

6.    Because of the volume of the documents and data I was asked to summarize, I required the assistance of staff of Cornerstone Research, who worked under my direction.

---

[3] I have been informed by Counsel that the Citations Data was produced by the Madison County Justice Court in response to a records request pursuant to the Mississippi Public Records Act of 1983, Miss. Code Ann. § 25-61-1, *et seq.* dated November 17, 2017 seeking "[a]ll citations issued to individuals in Madison County for the period January 1, 2012 to the present." In response to this request, the Madison County Justice Court produced a spreadsheet of citations comprising the time period from January 1, 2012 to December 31, 2017, "ACLU FOIA Request 02052018 V1.xlsx."

[4] I have been informed by Counsel that the Citations Data includes citations issued by the following law enforcement agencies, as identified by the corresponding acronyms in parentheses:  Madison County Sheriff's Office (MSO); Mississippi Highway Patrol (MHP); Madison County Constable (CON); Pearl River Reservoir Patrol (PRV); Public Service Commission (PSC); and Department of Wildlife Fisheries and Park (WCD).

[5] I identified citations issued by the MCSD by selecting for citations issued by "MSO," which I understand indicates citations issued by the MCSD.

[6] I have been informed by Counsel that Defendants' response to Interrogatory Number 15 describes the MCSD's process for creating incident reports, as well as the circumstances under which an MCSD officer must prepare an incident report with a narrative. Defendants' response to Interrogatory Number 15 states "an incident report with a narrative is not prepared as a result of every encounter experienced by a MCSD officer, but if an arrest is made, an incident report is prepared." *See* Response by Defendants, Madison County, Madison County, Mississippi and Sherriff Randall Tucker, in His official capacity to Plaintiffs' First Set of Interrogatories, *Latoya Brown; Lawrence Blackmon; Herbert Anthony Green; Khadafy Manning; Quinnetta Manning; Marvin McField; Nicholas Singleton; Steven Smith; Bessie Thomas; and Betty Jean Williams Tucker, individually and on Behalf of a class of all other similarly situated, v. Madison County, Mississippi; Sheriff Randall S. Tucker, in his official capacity; and Madison County Sheriff's Deputies John Does #1 through #6, in their individual capacities,* CIVIL ACTION NO. 3:17-cv-347-WHB-LRA, dated October 20, 2017 ("Interrogatory Responses") at p. 13.

7.      My calculations and data summaries are based on data that was available to me as of the date of this declaration ("Declaration").  This Declaration is limited to presenting the results of these calculations and summaries.  I reserve the right to supplement this Declaration if additional data were to be made available to me or if I am asked to perform additional calculations or provide additional data summaries.

## III.   Methodology

### A.      Data summary 1:  Arrests made by the MCSD

8.      It is my understanding that the Arrest Data include all individuals arrested by MCSD and booked into the Madison County Detention Center from January 1, 2012 through September 20, 2017.  The data include information regarding the date of each arrest, the name, gender and race of the individual arrested, the offense for which the individual was arrested, and the corresponding offense code.  I understand that it is possible for an individual to be arrested and booked for more than one offense at the same time.

9.      My calculation is based on the Arrest Data after duplicates have been removed based on the combination of name, race, sex, date, and offense code.  I assume that such duplicates indicate that an individual was charged with multiple counts of the same offense, rather than such duplicates indicating two different arrest and booking incidents in a single day.  Removing these duplicates removes 2,559 observations, 10% of the total observations in the Arrest Data.

10.     I first tabulate the percentage of all arrests that are associated with Black individuals in the Arrest Data.  Exhibit 1 shows that 77% of all arrests are associated with Black individuals, compared with 20% of all arrests associated with white individuals, and 3% associated with individuals of other races.  Note that this calculation is conducted on a per-offense, rather than a per-individual basis (except for the removal of duplicates set forth above).  Thus, if an individual is arrested and charged with three unique offenses on one day, I count those arrests as three separate arrests.

11.     Next, I calculate the percentage of Black arrestees among all arrestees for each offense code.  Exhibit 2 shows the percentage of arrestees who are Black for each

offense code with more than 100 total arrests.  For example, this exhibit shows that Black individuals accounted for:

- 94% of arrests for no child restraint;[7]
- 88% of arrests for no seatbelt;[8]
- 87% of arrests for driving with a suspended or revoked license;[9]
- 85% of arrests for speeding on local highways; [10]
- 83% of arrests for no proof of liability insurance; [11]
- 83% of arrests for driving without a license;[12]
- 83% of arrests for driving without paying a license tax;[13]
- 80% of arrests for disobedience of a traffic control device;[14]
- 81% of arrests for driving without an up-to-date certificate of inspection;[15]
- 80% of arrests for improper vehicle equipment; [16]
- 77% of arrests for an improper turn (turning without a turn signal);[17] and
- 68% of arrests for careless driving.[18]

---

[7] This calculation is based on offense code 63-7-301.  I understand from Counsel that this offense code corresponds to arrests under Miss. Code § 63-7-301, entitled *Requirement; failure as negligence.*

[8] This calculation is based on offense code 63-2-1.  I understand from Counsel that this offense code corresponds to arrests under Miss. Code § 63-2-1, entitled *Seat belts required; definition; exemptions.*

[9] This calculation is based on offense code 63-1-57.  I understand from Counsel that this offense code corresponds to arrests under Miss. Code § 63-1-57, entitled *Driving after suspension or revocation.*

[10] This calculation is based on offense code 63-3-511.  I understand from Counsel that this offense code corresponds to arrests under Miss. Code § 63-3-511, entitled *Reduced speed limits, other officials.*

[11] This calculation is based on offense code 63-15-4.  I understand from Counsel that this offense code corresponds to arrests under Miss. Code § 63-15-4, entitled *Proof of insurance; insurance card; violations and penalties.*

[12] This calculation is based on offense code 63-1-5.  I understand from Counsel that this offense code corresponds to arrests under Miss. Code § 63-1-5, entitled *Operating vehicle without license; offense; penalty.*

[13] This calculation is based on offense code 27-19-131.  I understand from Counsel that this offense code corresponds to arrests under Miss. Code § 27-19-131, entitled *Consequences of violations.*

[14] This calculation is based on offense code 63-3-313.  I understand from Counsel that this offense code corresponds to arrests under Miss. Code § 63-3-313, entitled *Only police officer directive overrides signal.*

[15] This calculation is based on offense code 63-13-7.  I understand from Counsel that this offense code corresponds to arrests under Miss. Code § 63-13-7 (repealed in 2015), entitled *Requirement of periodic inspection and approval of motor vehicles, trailers, and school buses; display of certificate of inspection and approval; exemption of certain motor vehicles.*

[16] This calculation is based on offense code 63-7-7.  I understand from Counsel that this offense code corresponds to arrests under Miss. Code § 63-7-7, entitled *Breach as misdemeanor.* I also understand from Counsel that this statutory section is part of Chapter 7, entitled *Equipment and Identification General Provisions*, of Title 63, entitled *Motor Vehicles and Traffic Regulations.*

[17] This calculation is based on offense code 63-3-707.  I understand from Counsel that this offense code corresponds to arrests under Miss. Code § 63-3-707, entitled *Signaling turns and stops.*

[18] This calculation is based on offense code 63-3-1213.  I understand from counsel that this offense code corresponds to arrests under Miss. Code § 63-3-1213, entitled *Careless or imprudent driving.*

12.     Exhibit 2 also indicates the number of arrests of Black individuals for each offense code at the top of the bar.  For example, 193 Black individuals were arrested for no child restraint, while 548 Black individuals were arrested for no seatbelt.

13.     I have also marked the population percentage of Black individuals in Madison County as a dotted line on Exhibit 2.  According to data from the U.S. Census Bureau, 38.4% of the population of Madison County was Black as of July 1, 2016.[19]  All offense codes in the Arrest Data that have more than 100 arrests have a higher percentage of Black arrestees than the percentage of Black residents in Madison County.

14.     A full set of my tabulations for each offense code can be found in Appendix B. This Appendix shows that arrests corresponding to 251 out of 282 offense codes in the Arrest Data have a higher percentage of Black arrestees than the percentage of Black residents in Madison County.[20]

15.     I also calculate the racial profile of the arrested population as a ratio of the residential population of Madison County.  To do so, I first calculate the number of Black individuals arrested per offense code in the Arrest Data.  I then divide that number by the population of Black residents in Madison County as of July 1, 2016. This figure is the number of Black arrests per capita in Madison County for each offense code.  I calculate the same figure for non-Black residents of Madison County. The ratio between these two figures represents how much more frequently Black individuals are arrested for a particular offense code compared with non-Black individuals, accounting for the difference in the population between Black and non-Black individuals.  If Black and non-Black individuals were arrested under an offense code at equal rates, then this ratio would be 1, since the per capita number of Black arrestees would be the same as the per capita number of non-Black arrestees.

16.     The results of this calculation are presented in Appendix B.  The ratio between the number of per capita Black arrestees and non-Black arrestees for each offense is higher than 1 for 251 out of 282 offense codes.  For example, the value of this ratio is

---

[19] The variable "Black or African American alone, percent, July 1, 2016" is used as the Black percentage of the population in Madison County.  *See* "QuickFacts:  Madison County, Mississippi," *United States Census Bureau*, available at https://www.census.gov/quickfacts/fact/table/madisoncountymississippi,MS/PST045217, accessed 12/26/2017.

[20] There are six observations in "ACLU12TO17.CSV" that have no offense code and no offense description. These are displayed in the table as "Missing Code" and "Missing Offense."

11.72 for the no seatbelt offense code (Miss. Code § 63-2-1), indicating that the per capita number of Black arrestees under this offense code is over 11 times higher than the per capita number of non-Black arrestees under this offense code.

**B.      Data summary 2:  Citations issued by the MCSD**

17.      It is my understanding that the Citations Data represent all citations issued to individuals in Madison County for the period from January 1, 2012 through December 31, 2017.  These data include information such as the date of the ticket, the violation,[21] and the name, sex,  and race of the individual cited.  I understand that it is possible for an individual to receive a citation for multiple violations on the same day. I limit my calculations to citations issued by the MCSD only.[22]

18.      My calculations are based on the Citations Data after duplicates have been removed based on date, name, sex, race and violation.  I assume that such duplicates indicate a record-keeping discrepancy, or an instance in which an individual was issued multiple citations for the same violation in one incident, rather than such duplicates indicating two different encounters in which citations for the same violation were issued to the same person in a single day.   Removing duplicates as described removes 122 observations, which is 0.5% of the total Citations Data for the MCSD.

19.      I first tabulate the percentage of all citations that are associated with Black individuals in the Citations Data.[23]  Exhibit 3 shows that 72% of all citations are issued to Black individuals, compared with 23% of all citations issued to white individuals, and 5% issued to individuals of other races.

20.      Next, I calculate the percentage of citations issued to Black individuals relative to the total number of citations recorded in the dataset, within each violation

---

[21] The description of the violations in the Citations Data includes values that appear to refer to the same violation, but have minor differences.  For example, there are instances in which the same description appears as both proper case and upper case.  There are also many instances in which descriptions are similar, such as "CHILD RESTRAINT VIOLATION 3YRS" and "CHILD RESTRAINT VIOLATION 4YRS."  Some violations have slightly different spellings such as "DISREGARD FOR TRAFFIC DEVICE" and "DISREGARD FOR TRFC DEV."  Finally, some violations have strong similarities or word overlap, such as "EXPIRED TAG," "EXPIRED TAG/NO TAG," and "IMPROPER / EXP TAG."  For the purpose of this data summary, I have grouped violations into categories as a data cleaning measure.

[22] It is my understanding that citations for which the ticketing agency is "MSO" are citations issued by the MCSD.

[23] Note that this summary is conducted at the person-date-offense level, rather than at the individual level.  If an individual is issued three citations for different violations by the MCSD in one day, that is counted as three citations in this summary.

category.  Exhibit 4 shows the percentage of citations issued to Black individuals for each violation category.[24]  For example, this exhibit shows that Black individuals were issued:

- 94% of citations for a child restraint violation;
- 84% of citations for driving with a suspended license;
- 77% of citations for no proof of liability insurance;
- 76% of citations for following another vehicle too closely;
- 74% of citations issued for a seatbelt violation;
- 73% of citations for failure to yield;
- 71% of citations for improper equipment;
- 71% of citations for an improper turn;
- 63% of citations for an improper tag or no tag; and
- 62% of citations for reckless driving;

21.     Exhibit 4 also indicates the number of citations issued to Black individuals for each violation category at the top of the bar.  For example, 599 Black individuals were issued a citation for a child restraint violation, while 1412 Black individuals were issued citations for a seatbelt violation.

22.     I have also marked the population percentage of Black individuals in Madison County as a dotted line on this Exhibit.  According to data from the U.S. Census Bureau, 38.4% of the population of Madison County was Black as of July 1, 2016.[25] All violation categories in the Citations Data presented in Exhibit 4 have a higher percentage of Black individuals cited than the percentage of Black residents in Madison County.

23.     A full set of my tabulations for all violation categories can be found in Appendix C.  This Appendix shows that, for 23 out of 24 violation categories in the Citations Data, the percentage of Black individuals cited for the violation category is higher than the percentage of Black residents in Madison County.[26]

---

[24] I exclude the category "Speeding," which contained only one observation, from this exhibit.

[25] The variable "Black or African American alone, percent, July 1, 2016" is used as the Black percentage of the population in Madison County.  "QuickFacts:  Madison County, Mississippi," *United States Census Bureau*, available at https://www.census.gov/quickfacts/fact/table/madisoncountymississippi,MS/PST045217, accessed on 12/26/2017.

[26] There are 1,066 observations in "ACLU FOIA Request 02052018 V1.xlsx" that were not grouped into a violation category. These are displayed in the Appendix as "No Category Assigned."

24.     I also calculate the racial profile of the population issued citations as a ratio of the residential population of Madison County.  To do so, I first calculate the number of citations issued to Black individuals per violation category in the Citations Data.  I then divide that number by the population of Black residents in Madison County as of July 1, 2016.  This figure is the per capita number of citations issued to Black individuals for each violation category.  I calculate the same figure for non-Black residents of Madison County.  The ratio between these two figures represents how much more frequently citations are issued to Black individuals for each violation category compared to non-Black individuals, accounting for the difference in the population between Black and non-Black individuals.  If Black and non-Black individuals were issued citations for a particular violation at equal rates, then this ratio would be 1, since the per capita number of citations issued to Black individuals would be the same as the per capita number of citations issued to non-Black individuals.

25.     The results of these calculations are presented in Appendix C for each violation category.  The ratio between the number of citations issued per capita to Black individuals and non-Black individuals for each violation category is higher than 1 for all violation categories except speeding.  For example, the value of this ratio is 4.62 for the citations for a seatbelt violation, indicating that the per capita number of citations issued to Black individuals for this violation is more than four times higher than the per capita number of citations issued to non-Black individuals for this violation.

26.     I was also asked to calculate the racial distribution of citations issued for a seatbelt violation only.   In other words, I limit the Citations Data to individuals (as defined by unique name, race, and gender) who only have a citation issued for a seatbelt violation listed on a given day in the Citations Data.  Exhibit 5 shows that 67% of these individuals are Black, while 32% are white.  1% of these individuals are of some other race.

**C.     Data summary 3:  Incident reports**

27.     I understand that a number of incident reports from the time period 2012–2017 have also been produced in this matter.  I understand that incident reports are filled out and filed by MCSD officers after certain types of incidents take place, such as those involving arrests.

28.     It is my understanding that the incident reports produced by Defendants represent a subset of all incident reports filed during this time period.[27]  At the direction of Counsel, I have limited my summaries of these incident reports to the following categories of law enforcement activity:  arrests related to stops at roadblocks, apartment walkthroughs, and arrests related to traffic stops.

29.     The following methodology was followed in order to convert the PDF files produced by Defendants into data that could be summarized.  First, the PDF files of the incident reports were processed by text recognition software.  Next, keyword searches of the processed files were used in order to identify incident reports related to each topic of interest, the details of which are described below.  From the files identified by each keyword search, I further limited to the incident reports that also mentioned an arrest.  Finally, the status and race of individuals mentioned in the incident reports were parsed from the processed incident reports.

30.     At my direction, a team at Cornerstone Research has implemented this methodology and checked the results to ensure that the data have been objectively collected. [28]

### 1.     Arrests from Stops at Roadblocks

31.     Incident reports relating to arrests resulting from stops at roadblocks were identified by searching for the terms "road block," "roadblock," "check point," "checkpoint," or "safety check" within the set of PDF incident reports produced by Defendants (the "Roadblock Incident Reports").

---

[27] I have been informed by Counsel that Defendants' Memorandum of Authorities in Opposition to Plaintiffs' Motion to Compel, *Latoya Brown; Lawrence Blackmon; Herbert Anthony Green; Khadafy Manning; Quinnetta Manning; Marvin McField; Nicholas Singleton; Steven Smith; Bessie Thomas; and Betty Jean Williams Tucker, individually and on behalf of a class of all others similarly situated, v. Madison County, Mississippi; Sheriff Randall S. Tucker, in his official capacity; and Madison County Sheriff's Deputies John Does #1 through #6, in their individual capacities,* CIVIL ACTION NO. 3:17-cv-347 WHB LRA, dated November 3, 2017 ("Memorandum of Authorities") broadly describes the selection process Defendants undertook to produce incident reports in this action. Defendants represented that they have produced "incident reports arguably relevant to plaintiffs' claims in this case." Memorandum of Authorities at p. 3.

[28] Due to the quality of the files produced by Defendants, there may be files that are not identified by the methodology described above, but would have been identified as relevant by a manual review.  However, because I have defined an objective methodology for selecting the incident reports to include in this summary, I have no reason to believe that the incident reports represented here are a biased sample of the incident reports produced by Defendants in this matter.

32.     Exhibit 6 tabulates the number of arrests identified from the Roadblock Incident Reports, grouped by race.[29]  Exhibit 6 also shows the percentage of arrests by race out of the total number of arrests identified in the Roadblock Incident Reports. The total number of identified arrests is 1,265, with arrests of Black individuals representing 76% of total arrests.

### 2.    Apartment Walkthroughs

33.     Incident reports relating to apartment walkthroughs were identified by searching for the terms "walk through," "walkthrough," "walk thru," "walk-thru," "walk-through," or "apartment_walk_thru" (the "Apartment Walkthrough Incident Reports").

34.     A total of 418 Apartment Walkthrough Incident Reports were identified as relating to apartment walkthroughs by the keyword search methodology described above.  Exhibit 7 shows that of those, 41 were identified as reporting the arrest of an individual.  This represents 10% of the Apartment Walkthrough Incident Reports.  Of the arrested individuals identified from the Apartment Walkthrough Incident Reports, 90% are Black individuals.

### 3.    Arrests from Traffic Stops

35.     Incident reports relating to arrests made at traffic stops were identified by searching for the terms "stop," "V.T.O.," "D.U.I." or "traffic offenses," together with the term "arrest" (the "Traffic Stop Incident Reports").

36.     Exhibit 8 tabulates the number of arrests identified from the Traffic Stop Incident Reports, grouped by race.  Exhibit 8 also shows the percentage of arrests per race out of the total arrests identified from the Traffic Stop Incident Reports.  The total number of identified arrests is 3,227, with arrests of Black individuals representing 74% of total arrests.

37.     I was also asked to summarize incident reports documenting arrests resulting from traffic stops initiated because of seatbelt violations only.  Such incident reports were identified by searching for "seat belt," "seatbelt," "safety belt," or "buckl".

---

[29] An individual is considered an arrestee if the parsing methodology identifies the "Status" on the incident report for the individual as "ARREST".

Incident reports identified were then manually reviewed to evaluate whether the narrative of the incident report noted that the traffic stop was initially made because of a seatbelt violation and for no other reason.  Only incident reports for which the narrative of the incident report could be extracted by text parsing were manually reviewed.

38.     Exhibit 9 tabulates the number of arrests resulting from traffic stops initiated for seatbelt violations only from the set of incident reports identified by the keyword search methodology described above.  These identified arrests are presented grouped by race, with the number of arrests per race as a percentage of total arrests.  The total number of identified arrests is 102, with arrests of Black individuals representing 90% of total arrests.

Executed this 13th day of March, 2018

_____
     Rahul Guha



# Summary of Total Arrests
## Madison County Sheriff's Department 2012–2017

| Race | Number of Arrests | Percentage |
|------|-------------------|------------|
| Black | 17,631 | 77% |
| White | 4,669 | 20% |
| Other | 717 | 3% |
| **Total** | **23,017** | **100%** |

Source:  ACLU12TO17.CSV

Note:
[1]  The tabulation was conducted under the assumption that an individual can only be arrested once a day for the same offense code. For this reason, the data is de-duplicated by first name, last name, gender, race, date, and offense code.
[2]  Individuals identified with race "B" are grouped as "Black," individuals identified with race "W" are grouped as "White," and individuals identified with any other race are grouped as "Other."



# Black Percentage of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

Source: ACLU12TO17.CSV;  U.S. Census Bureau

Note:
[1]  Dashed line indicates that 38.4% of Madison County, MS was black as of July 1, 2016.
[2]  The number of arrests of Black individuals for an offense code is shown above the bar for the offense code.
[3]  Includes offense codes with more than 100 observations.
[4]  The descriptions of the offense codes correspond to the descriptions set forth in ACLU12TO17.CSV.  In certain instances, the descriptions appear to have been cut off in ACLU12TO17.CSV.

# Summary of Total Citations
## Madison County Sheriff's Department 2012–2017

| Race | Number of Citations | Percentage |
|------|--------------------:|:----------:|
| Black | 18,285 | 72% |
| White | 5,829 | 23% |
| Other | 1,339 | 5% |
| **Total** | **25,453** | **100%** |

Source:  ACLU FOIA Request 02052018 V1.xlsx

Note:
[1]  The tabulation was conducted under the assumption that an individual can only be cited once a day for the same violation.  For this reason, the data is de-duplicated by ticketing agency, name, gender, race, date, and violation.  I assume that if two observations have the same name, gender, and race then they are the same person.
[2]  Individuals identified with race "B" are grouped as "Black," individuals identified with race "W" are grouped as "White," and individuals identified with any other race are grouped as "Other."
[3]  This tabulation reflects only citations issued by the MCSD.  It is my understanding that citations for which the ticketing agency is "MSO" are citations issued by the MCSD.

# Black Percentage of Citations by Violation Category
## Madison County Sheriff's Department 2012–2017



Source:  ACLU FOIA Request 02052018 V1.xlsx; U.S. Census Bureau

Note:
[1]  Dashed line indicates that 38.4% of Madison County, MS was black as of July 1, 2016.
[2]  The number of citations of Black individuals for a violation category is shown above the bar for the violation category.  Categories with 10 or more citations are shown.
[3]  This tabulation reflects only citations issued by the MCSD.  It is my understanding that citations for which the ticketing agency is "MSO" are citations issued by the MCSD.
[4]  Violations are grouped by violation categories.  These categories are created as a data cleaning measure to combine citation violations that are similar.

**EXHIBIT 5**

# Individuals Cited For A Seatbelt Violation Only
## Madison County Sheriff's Department 2012–2017

| Race | Number of Citations | Percentage of Total |
|------|---------------------|---------------------|
| Black | 666 | 67% |
| White | 315 | 32% |
| Other | 12 | 1% |
| **Total** | **993** | **100%** |

Source:  ACLU FOIA Request 02052018 V1.xlsx

Note:
[1]  Citations where Race does not equal "B" or "W" are included in the "Other" race category.  I assume that two citations were issued to the same person if the name, race, and gender are equal.  This tabulation includes all people who were cited for only a Seatbelt Violation on a given day.  If a person was cited for a Seatbelt Violation only on two different days, each of those citations is counted.  "Seatbelt Violation" refers to a violation that is in the Seatbelt Violation category.
[2]  This tabulation reflects only citations issued by the MCSD.  It is my understanding that citations for which the ticketing agency is "MSO" are citations issued by the MCSD.

# Arrests From Incident Reports
# Related to Stops at Roadblocks[1]

## Madison County Sheriff's Department 2012–2017

| Race | Number of Arrests | Percentage of Total |
|------|-------------------|---------------------|
| Black[2] | 956 | 76% |
| White[3] | 277 | 22% |
| Hispanic[4] | 27 | 2% |
| Other[5] | 5 | 0% |
| **Total** | **1,265** | **100%** |

Source:  Incident Reports Produced by Defendants, MC-RFP-Inc. Rep. 000001 – MC-RFP-Inc. Rep. 059053.

Note:
[1]  A keyword search identified incident reports related to stops at roadblocks using the search term "road block OR roadblock OR check point OR checkpoint OR safety check."  This search resulted in 1,702 incident reports.  The incident reports were then parsed programmatically.  The parsed results contain 2,396 observations corresponding to individuals or entities listed in the "Persons" section of the incident report.  This tabulation is based on observations for which the person status is identified as "ARREST".  Duplicates based on incident report filename, parsed name, and parsed race are removed.  Observations for which the name is "NA" or for which race is not parsed as described below are removed.
[2]  Any person whose parsed race contains "BLACK" is grouped as "Black."
[3]  Any person whose parsed race contains "WHITE" is grouped as "White."
[4]  Any person whose parsed race is "HISPANIC" or "HISPAN1C" is grouped as "Hispanic."
[5]  Any person whose parsed race is "ASIAN ISLANDER,"  "A5IAN ISLANDER,"  "AMERICANINDIAN," or "OTHER" is grouped as "Other."



# Arrests From Incident Reports
# Related to Apartment Walkthroughs[1]
## Madison County Sheriff's Department 2012–2017

| Race | Number of Arrests | Percentage of Total |
|------|-------------------|---------------------|
| Black[2] | 37 | 90% |
| White[3] | 4 | 10% |
| Hispanic[4] | - | - |
| Other[5] | - | - |
| **Total** | **41** | **100%** |

Source:  Incident Reports Produced by Defendants, MC-RFP-Inc. Rep. 000001 – MC-RFP-Inc. Rep. 059053.

Note:
[1]  A keyword search identified incident reports related to apartment walkthroughs using the search term "walk through OR walkthrough OR walk thru OR walk-thru OR walk-through OR apartment_walk_thru." This search resulted in 418 incident reports.  The incident reports were then parsed programmatically.  The parsed results contain 460 observations corresponding to individuals or entities listed in the "Persons" section of the incident report.  This tabulation is based on observations for which the person status is identified as "ARREST".  Duplicates based on incident report filename, parsed name, and parsed race are removed.  Observations for which the name is "NA" or for which race is not parsed as described below are removed.
[2]  Any person whose parsed race contains "BLACK" is grouped as "Black."
[3]  Any person whose parsed race contains "WHITE" is grouped as "White."
[4]  Any person whose parsed race is "HISPANIC" or "HISPAN1C" is grouped as "Hispanic."
[5]  Any person whose parsed race is "ASIAN ISLANDER,"  "A5IAN ISLANDER,"  "AMERICANINDIAN," or "OTHER" is grouped as "Other."

# Arrests From Incident Reports
# Related to Traffic Stops[1]
## Madison County Sheriff's Department 2012–2017

| Race | Number of Arrests | Percentage of Total |
|---|---|---|
| Black[2] | 2,393 | 74% |
| White[3] | 707 | 22% |
| Hispanic[4] | 108 | 3% |
| Other[5] | 19 | 1% |
| **Total** | **3,227** | **100%** |

Source:  Incident Reports Produced by Defendants, MC-RFP-Inc. Rep. 000001 – MC-RFP-Inc. Rep. 059053.

Note:
[1]  A keyword search identified incident reports related to traffic stops using the search term "(stop OR v.t.o. OR d.u.i OR traffic offenses) AND arrest."  This search resulted in 4,404 incident reports.  The incident reports were then parsed programmatically.  The parsed results contain 6,930 observations corresponding to individuals or entities listed in the "Persons" section of the incident report.  This tabulation is based on observations for which the person status is identified as "ARREST".  Duplicates based on incident report filename, parsed name, and parsed race are removed.  Observations for which the name is "NA" or for which the race is not parsed as described below are removed.
[2]  Any person whose parsed race contains "BLACK" is grouped as "Black."
[3]  Any person whose parsed race contains "WHITE" is grouped as "White."
[4]  Any person whose parsed race is "HISPANIC" or "HISPAN1C" is grouped as "Hispanic."
[5]  Any person whose parsed race is "ASIAN ISLANDER,"  "A5IAN ISLANDER,"  "AMERICANINDIAN," or "OTHER" is grouped as "Other."

# Arrests From Incident Reports Related to Traffic Stops Initiated For A Seatbelt Violation Only[1]
## Madison County Sheriff's Department 2012–2017

| Race | Number of Arrests | Percentage of Total |
|---|---|---|
| Black[2] | 92 | 90% |
| White[3] | 6 | 6% |
| Hispanic[4] | 4 | 4% |
| Other[5] | - | - |
| **Total** | **102** | **100%** |

Source:  Incident Reports Produced by Defendants, MC-RFP-Inc. Rep. 000001 – MC-RFP-Inc. Rep. 059053.

Note:
[1]  A keyword search identified incident reports relating to traffic stops initiated for seatbelt violations only using the search term "seat belt OR seatbelt OR safety belt OR buckl."  This search resulted in 574 incident reports.  The incident reports were then parsed programmatically.  The parsed results contain 856 observations corresponding to individuals or entities listed in the "Persons" section of the incident report.  This tabulation is based on observations for which the person status is identified as "ARREST" and for which a manual review identified a traffic stop that was initially made because of a seatbelt violation and for no other reason.  Duplicates based on filename, parsed name, and parsed race are removed.  Observations for which name is "NA" or for which race is not parsed as described below are removed.
[2]  Any person whose parsed race contains "BLACK" is grouped as "Black."
[3]  Any person whose parsed race contains "WHITE" is grouped as "White."
[4]  Any person whose parsed race is "HISPANIC" or "HISPAN1C" is grouped as "Hispanic."
[5]  Any person whose parsed race is "ASIAN ISLANDER,"  "A5IAN ISLANDER,"  "AMERICANINDIAN," or "OTHER" is grouped as "Other."

**APPENDIX A**

# Documents Cited or Summarized by Rahul K. Guha

## Legal Pleadings

| | |
|---|---|
| Class Action Complaint for Declaratory and Injunctive Relief and Individual Damages, *Latoya Brown; Lawrence Blackmon; Herbert Anthony Green; Khadafy Manning; Quinnetta Manning; Marvin McField; Nicholas Singleton; Steven Smith; Bessie Thomas; and Betty Jean Williams Tucker, individually and on behalf of a class of all others similarly situated, v. Madison County, Mississippi; Sheriff Randall S. Tucker, in his official capacity; and Madison County Sheriff's Deputies John Does #1 through #6, in their individual capacities,* CIVIL ACTION NO. 3:17-cv-347 WHB LRA. | May 8, 2017 |
| Defendants' Memorandum of Authorities in Opposition to Plaintiffs' Motion to Compel, *Latoya Brown; Lawrence Blackmon; Herbert Anthony Green; Khadafy Manning; Quinnetta Manning; Marvin McField; Nicholas Singleton; Steven Smith; Bessie Thomas; and Betty Jean Williams Tucker, individually and on behalf of a class of all others similarly situated, v. Madison County, Mississippi; Sheriff Randall S. Tucker, in his official capacity; and Madison County Sheriff's Deputies John Does #1 through #6, in their individual capacities,* CIVIL ACTION NO. 3:17-cv-347 WHB LRA. | November 3, 2017 |
| Order Granting Motion to Compel, *Latoya Brown; Lawrence Blackmon; Herbert Anthony Green; Khadafy Manning; Quinnetta Manning; Marvin McField; Nicholas Singleton; Steven Smith; Bessie Thomas; and Betty Jean Williams Tucker, individually and on behalf of a class of all others similarly situated, v. Madison County, Mississippi; Sheriff Randall S. Tucker, in his official capacity; and Madison County Sheriff's Deputies John Does #1 through #6, in their individual capacities,C* IVIL ACTION NO. 3:17-cv-347 WHB LRA. | December 27, 2017 |
| Response by Defendants, Madison County, Madison County, Mississippi and Sherriff Randall Tucker, in his official capacity to Plaintiffs' First Set of Interrogatories, *Latoya Brown; Lawrence Blackmon; Herbert Anthony Green; Khadafy Manning; Quinnetta Manning; Marvin McField; Nicholas Singleton; Steven Smith; Bessie Thomas; and Betty Jean Williams Tucker, individually and on behalf of a class of all others similarly situated, v. Madison County, Mississippi; Sheriff Randall S. Tucker, in his official capacity; and Madison County Sheriff's Deputies John Does #1 through #6, in their individual capacities,* CIVIL ACTION NO. 3:17-cv-347 WHB LRA. | October 20, 2017 |

## Data

| | |
|---|---|
| "ACLU12TO17.CSV." | 2012–2017 |
| "ACLU FOIA Request 02052018 V1.xlsx." | 2012–2017 |
| Incident Reports Produced by Defendants, MC-RFP-Inc. Rep. 000001 – MC-RFP-Inc. Rep. 059053 | 2012–2017 |
| "QuickFacts: Madison County, Mississippi," *United States Census Bureau,* available at https://www.census.gov/quickfacts/fact/table/madisoncountymississippi, MS/PST045217, accessed on 12/26/2017. | |

## Miscellaneous

| | |
|---|---|
| Email from Charles Cowan Re: Latoya Brown, et al. v. Madison County, MS, et al., No. 3:17-cv-347 WHB LRA [EXT]. | November 29, 2017 |

**APPENDIX B**

# Summary of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

| Offense Code | Offense | Number of Arrests | | | Black Percentage | Per Capita Ratio of Black to Non-Black[5] |
|---|---|---|---|---|---|---|
| | | Total | Black | Non-Black | | |
| 63-15-4 | Failure of Owner or Operator o | 2,456 | 2,048 | 408 | 83% | 8.05 |
| 63-11-30(2)(A) | DUI - First Offense DUI | 2,129 | 1,425 | 704 | 67% | 3.25 |
| 41-29-139 | Controlled Substance Violation | 1,867 | 1,294 | 573 | 69% | 3.62 |
| 63-1-57 | Driving with Suspended/revoked | 1,820 | 1,588 | 232 | 87% | 10.98 |
| 63-1-5 | Motor Vehicle Violation - No/E | 1,293 | 1,074 | 219 | 83% | 7.87 |
| 63-3-1213 | Careless Driving | 789 | 535 | 254 | 68% | 3.38 |
| 63-2-1 | No Seatbelt | 623 | 548 | 75 | 88% | 11.72 |
| 41-29-139(c)(2)(B) | POSS OF MARIJUANA MOTOR VEHICLE | 610 | 479 | 131 | 79% | 5.87 |
| 27-19-131 | License plate: no tag, expired | 552 | 459 | 93 | 83% | 7.92 |
| 97-35-15 | Disturbing the Peace | 532 | 410 | 122 | 77% | 5.39 |
| 41-29-139(d)(1) | POSS OF PARAPHERNALIA | 520 | 318 | 202 | 61% | 2.53 |
| 63-7-7 | Improper Equipment on Vehicle | 477 | 380 | 97 | 80% | 6.28 |
| 97-1-1 | Conspiracy | 412 | 314 | 98 | 76% | 5.14 |
| 97-3-7(3) | Simple Domestic Violence;Simpl | 399 | 272 | 127 | 68% | 3.44 |
| 97-29-47 | Profanity/drunkenness in Publi | 383 | 272 | 111 | 71% | 3.93 |
| 13-5-34 | Contempt of Court for Failure | 372 | 220 | 152 | 59% | 2.32 |
| 63-3-313 | Disobedience of Traffic Contro | 357 | 287 | 70 | 80% | 6.58 |
| 97-9-73 | Fleeing LEA Vehicle / Resistin | 326 | 262 | 64 | 80% | 6.57 |
| 63-3-511 | Speeding on Local Highways | 313 | 265 | 48 | 85% | 8.86 |
| 97-35-7 | Failure to comply with request | 301 | 227 | 74 | 75% | 4.92 |
| 63-11-30(2)(B) | DUI - Second Conviction | 292 | 215 | 77 | 74% | 4.48 |
| 47-7-37 | Probation Violation | 240 | 188 | 52 | 78% | 5.80 |
| 63-7-301 | No Child Restraint | 205 | 193 | 12 | 94% | 25.80 |
| 97-9-79 | False Information or Identific | 204 | 185 | 19 | 91% | 15.62 |
| 41-29-139(a)(1) | C/S SELL, TRADE, BARTER DRUGS | 201 | 148 | 53 | 74% | 4.48 |

**APPENDIX B**

# Summary of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

| Offense Code | Offense | Number of Arrests | | | Black Percentage | Per Capita Ratio of Black to Non-Black[5] |
|---|---|---|---|---|---|---|
| | | Total | Black | Non-Black | | |
| 21-23-7 | Contempt of Court-Municipal Co | 200 | 172 | 28 | 86% | 9.85 |
| 97-17-33 | Burglary - All but Dwelling | 174 | 139 | 35 | 80% | 6.37 |
| 97-3-7(1) | Simple Assault-Bodily Injury | 166 | 135 | 31 | 81% | 6.99 |
| 97-37-5 | Felon Carrying Concealed Weapo | 152 | 125 | 27 | 82% | 7.43 |
| 63-3-1201 | Reckless Driving | 151 | 98 | 53 | 65% | 2.97 |
| 97-19-55 | Bad Checks - Penalties/Restitu | 150 | 121 | 29 | 81% | 6.69 |
| 97-19-39 | False Pretenses | 138 | 108 | 30 | 78% | 5.78 |
| 97-17-41 | Larceny - Grand | 120 | 74 | 46 | 62% | 2.58 |
| 97-3-7(2) | Aggravated Assault | 119 | 100 | 19 | 84% | 8.44 |
| 63-3-707 | Improper Turn (No Turn Signal) | 114 | 88 | 26 | 77% | 5.43 |
| 97-23-93 | Shoplifting | 112 | 93 | 19 | 83% | 7.85 |
| 99-21-1 | Foreign Warrant;Fugitive;Holdi | 111 | 68 | 43 | 61% | 2.54 |
| 97-37-35 | Possession of Stolen Firearm | 102 | 85 | 17 | 83% | 8.02 |
| 41-29-139(f) | Sale, Transfer, Manufacture, D | 101 | 64 | 37 | 63% | 2.77 |
| 97-21-33 | Forgery | 101 | 81 | 20 | 80% | 6.50 |
| 63-11-40 | Suspended Drivers License (Imp | 96 | 72 | 24 | 75% | 4.81 |
| 97-17-87 | Trespass, Willful | 96 | 62 | 34 | 65% | 2.93 |
| 97-17-23 | Burglary; Inhabited Dwelling H | 94 | 82 | 12 | 87% | 10.96 |
| 63-13-7 | Motor Vehicles;Requirement of | 93 | 75 | 18 | 81% | 6.68 |
| 63-11-30(2)(C) | DUI - Third or Subsequent Conv | 92 | 57 | 35 | 62% | 2.61 |
| 43-19-37 | Contempt of Court for Failure | 91 | 63 | 28 | 69% | 3.61 |
| 97-17-67 | Malicious Mischief | 85 | 60 | 25 | 71% | 3.85 |
| 67-1-81 (2) | Alcohol, Minor in possession of alcohol | 83 | 28 | 55 | 34% | 0.82 |
| 97-17-43 | Larceny - Petit | 81 | 47 | 34 | 58% | 2.22 |
| 97-23-19 | Embezzlement - Agents/trustees | 80 | 55 | 25 | 69% | 3.53 |

**APPENDIX B**

# Summary of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

| Offense Code | Offense | Number of Arrests | | | Black Percentage | Per Capita Ratio of Black to Non-Black[5] |
|---|---|---|---|---|---|---|
| | | Total | Black | Non-Black | | |
| 97-3-79 | Robbery - Armed | 76 | 72 | 4 | 95% | 28.88 |
| 97-17-70 | Receiving Stolen Property | 75 | 62 | 13 | 83% | 7.65 |
| 63-3-501 | Speeding on State Highway | 74 | 68 | 6 | 92% | 18.18 |
| 63-3-809 | Failure to Yield to Authorized | 70 | 54 | 16 | 77% | 5.41 |
| 97-3-7(1)(c) | Simple Assualt-Attempt By Phyi | 67 | 57 | 10 | 85% | 9.14 |
| 97-5-39(1) | Contributing to the Neglect or | 64 | 35 | 29 | 55% | 1.94 |
| 97-5-3 | Descertion or non -support of | 62 | 53 | 9 | 85% | 9.45 |
| 63-11-21 | DUI - Refusal to Submit to Tes | 61 | 33 | 28 | 54% | 1.89 |
| 97-19-21 | Fraud - Credit Card | 59 | 47 | 12 | 80% | 6.28 |
| 41-29-152 | Enhancement of Penalty for Dru | 54 | 46 | 8 | 85% | 9.22 |
| 97-17-33(1) | Burglary; All but Dwelling | 52 | 42 | 10 | 81% | 6.74 |
| 63-7-11 | Driving Without Headlights | 51 | 39 | 12 | 76% | 5.21 |
| 97-3-95 | Sexual Battery | 51 | 35 | 16 | 69% | 3.51 |
| 63-11-30(4) | DUI - Refusal or Inability to | 50 | 34 | 16 | 68% | 3.41 |
| 97-37-1 | Carrying a Concealed Weapon/Fa | 49 | 45 | 4 | 92% | 18.05 |
| 63-3-609 | Improper Lane Passing | 47 | 40 | 7 | 85% | 9.17 |
| 63-3-801 | Failure to Yield | 46 | 37 | 9 | 80% | 6.59 |
| 63-3-619 | Motor Vehicles; Distance to be | 45 | 38 | 7 | 84% | 8.71 |
| 63-3-403 | Leaving The Scene Of An Accide | 40 | 14 | 26 | 35% | 0.86 |
| 97-3-7(4) | Aggravated Domestic Violence | 39 | 31 | 8 | 79% | 6.22 |
| 97-15-29 | Littering | 38 | 27 | 11 | 71% | 3.94 |
| 49-7-101(1) | General Violations | 36 | 28 | 8 | 78% | 5.61 |
| 77-3-603 | Telehpone Harassment | 35 | 21 | 14 | 60% | 2.41 |
| 97-17-42 | Taking Away of a Motor Vehicle | 35 | 32 | 3 | 91% | 17.11 |
| 95-3-19 | Contempt of Court(Nuisance) | 32 | 24 | 8 | 75% | 4.81 |

**APPENDIX B**

# Summary of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

| Offense Code | Offense | Number of Arrests | | | Black Percentage | Per Capita Ratio of Black to Non-Black[5] |
|---|---|---|---|---|---|---|
| | | Total | Black | Non-Black | | |
| 27-19-31 | Motor Vehicle; Expired Tag | 29 | 26 | 3 | 90% | 13.90 |
| 47-7-27 | Parole Violation | 29 | 21 | 8 | 72% | 4.21 |
| 63-7-33 | Multiple-Beam Road-Lighting; F | 29 | 24 | 5 | 83% | 7.70 |
| 97-17-41(1)(a) | Grand Larceny; Personal Proper | 29 | 18 | 11 | 62% | 2.63 |
| 97-17-43(1) | Petit Larceny; Personal Proper | 28 | 25 | 3 | 89% | 13.37 |
| 97-3-53 | Kidnaping | 27 | 23 | 4 | 85% | 9.22 |
| 97-35-23 | Obstructing Public Streets, et | 27 | 24 | 3 | 89% | 12.83 |
| 21-13-1 | General Ordinances; penalties | 26 | 19 | 7 | 73% | 4.35 |
| 97-3-107 | Stalking | 26 | 15 | 11 | 58% | 2.19 |
| 63-7-31 | Motor Vehicles; Multiple-Beam | 25 | 18 | 7 | 72% | 4.13 |
| 97-3-19(1) | Murder | 23 | 21 | 2 | 91% | 16.84 |
| 63-11-30(2) | DUI - First/subsequent Convict | 21 | 11 | 10 | 52% | 1.76 |
| 41-29-144 | C/S PRESCRIPTION FRAUD | 20 | 9 | 11 | 45% | 1.31 |
| 97-15-37 | Obstructing Public Highway | 20 | 17 | 3 | 85% | 9.09 |
| 97-19-85 | Fradulent Use of Identificatio | 20 | 14 | 6 | 70% | 3.74 |
| 97-9-125 | Tampering | 20 | 18 | 2 | 90% | 14.44 |
| 97-1-5 | Accessory After the Fact | 19 | 18 | 1 | 95% | 28.88 |
| 97-21-59 | Counterfeit Instrument: Forger | 18 | 14 | 4 | 78% | 5.61 |
| 97-3-73 | Robbery | 18 | 15 | 3 | 83% | 8.02 |
| 41-29-521 | Contempt of Court for Violatio | 17 | 6 | 11 | 35% | 0.88 |
| 97-29-31 | Indecent Exposure | 17 | 14 | 3 | 82% | 7.49 |
| 97-29-49 | Prostitution;Unlawful to Engag | 17 | 15 | 2 | 88% | 12.03 |
| 97-5-1 | Child, Abandonment of Child un | 16 | 13 | 3 | 81% | 6.95 |
| 97-9-72 | Motor Vehicle:failure to stop | 15 | 14 | 1 | 93% | 22.46 |
| 63-3-601 | Driving in more than one lane | 14 | 12 | 2 | 86% | 9.63 |

# Summary of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

| Offense Code | Offense | Number of Arrests | | | Black Percentage | Per Capita Ratio of Black to Non-Black[5] |
|---|---|---|---|---|---|---|
| | | Total | Black | Non-Black | | |
| 97-17-35 | Burglary - Possession of Burgl | 14 | 12 | 2 | 86% | 9.63 |
| HLD Other Agency | Hold for other Agency | 14 | 9 | 5 | 64% | 2.89 |
| 43-47-19(1) | Unlawful for any Person to Abu | 12 | 9 | 3 | 75% | 4.81 |
| 63-3-505 | Speeding: Failure to decrease | 11 | 8 | 3 | 73% | 4.28 |
| 97-1-7 | Attempted Crime | 11 | 10 | 1 | 91% | 16.04 |
| 97-3-19(2) | Capital Murder | 11 | 11 | 0 | 100% | - |
| 97-37-29 | Shoot into Dwelling | 11 | 11 | 0 | 100% | - |
| 97-45-19 | Computer: Identity Theft or At | 11 | 10 | 1 | 91% | 16.04 |
| 63-3-1003 | Failure to Yield Right-of-Way | 10 | 9 | 1 | 90% | 14.44 |
| 63-7-59 | Window Tint Law | 10 | 9 | 1 | 90% | 14.44 |
| 99-37-7 | Contempt; Default in Payment o | 10 | 8 | 2 | 80% | 6.42 |
| 45-33-33 | Failure to Register Under Sex | 9 | 7 | 2 | 78% | 5.61 |
| 97-5-23 | Touching Child for Lustful Pur | 9 | 4 | 5 | 44% | 1.28 |
| 97-9-127 | RETALIATION AGAINST A PUBLIC SERVANT OR WITNESS | 9 | 8 | 1 | 89% | 12.83 |
| 63-3-703 | Improper Turning at Intersecti | 8 | 6 | 2 | 75% | 4.81 |
| 97-35-13 | Disturbance in Public Place | 8 | 6 | 2 | 75% | 4.81 |
| 97-35-47 | False Reporting of a Crime | 8 | 7 | 1 | 88% | 11.23 |
| 97-5-40 | Child Abuse - Condoning | 8 | 7 | 1 | 88% | 11.23 |
| 97-7-42 | Fraud - Food Stamps | 8 | 5 | 3 | 63% | 2.67 |
| 97-9-55 | Obstructing Justice/intimidati | 8 | 8 | 0 | 100% | - |
| 97-33-1 | Gambling Illegally | 7 | 7 | 0 | 100% | - |
| 97-43-5 | Rico - Racketeering | 7 | 7 | 0 | 100% | - |
| 99-19-81 | Habitual Offenders Sentenced t | 7 | 5 | 2 | 71% | 4.01 |

**APPENDIX B**

# Summary of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

| Offense Code | Offense | Number of Arrests | | | Black Percentage | Per Capita Ratio of Black to Non-Black[5] |
|---|---|---|---|---|---|---|
| | | Total | Black | Non-Black | | |
| 37-13-91 | Compulsory School Attendance R | 6 | 5 | 1 | 83% | 8.02 |
| 41-29-139(c) | C/S ILLEGAL POSS PRESCRIPTION DRUGS | 6 | 3 | 3 | 50% | 1.60 |
| 41-29-139(g) | Trafficking in Controlled Subs | 6 | 6 | 0 | 100% | - |
| 63-1-69 | Motor Vehicle Violation - Spec | 6 | 2 | 4 | 33% | 0.80 |
| 63-1-77 | Driving Commercial M/Vehicle w | 6 | 6 | 0 | 100% | - |
| 63-5-49(4) | Failure to Stop and Submit Veh | 6 | 6 | 0 | 100% | - |
| 97-19-67 | Bad Checks - Penalties/Restitu | 6 | 2 | 4 | 33% | 0.80 |
| 97-23-103 | Home Repair Fraud | 6 | 0 | 6 | 0% | 0.00 |
| 97-23-27 | Embezzlement - Property Borrow | 6 | 2 | 4 | 33% | 0.80 |
| 97-35-37 | Vagrancy | 6 | 3 | 3 | 50% | 1.60 |
| Missing Code[6] | Missing Offense[6] | 6 | 3 | 3 | 50% | 1.60 |
| 63-1-41 | Possession and Display of Lice | 5 | 4 | 1 | 80% | 6.42 |
| 63-7-64 | Motorcycle or Motor Scooter Cr | 5 | 2 | 3 | 40% | 1.07 |
| 97-17-41(4) | Grand Larceny;Motor Vehicle,Se | 5 | 3 | 2 | 60% | 2.41 |
| 97-5-33 | Exploitation of Children | 5 | 3 | 2 | 60% | 2.41 |
| 97-5-49 | SOCIAL HOST | 5 | 0 | 5 | 0% | 0.00 |
| 97-9-65 | Intimidation of Witness to Com | 5 | 4 | 1 | 80% | 6.42 |
| 29-7-21 | Fishing Without a License | 4 | 3 | 1 | 75% | 4.81 |
| 49-7-31(1)(vi) | Hunting - unlawful to hunt dee | 4 | 2 | 2 | 50% | 1.60 |
| 49-7-57 | Possession of Illegal Game | 4 | 2 | 2 | 50% | 1.60 |
| 63-13-19 | Motor Vehicles;Inspections by | 4 | 3 | 1 | 75% | 4.81 |
| 63-3-605 | Driving Upon One-Way Roadways | 4 | 3 | 1 | 75% | 4.81 |
| 7-5-303 | Insurance Fraud | 4 | 3 | 1 | 75% | 4.81 |
| 97-19-17 | Credit Cards - Forgery | 4 | 3 | 1 | 75% | 4.81 |

**APPENDIX B**

# Summary of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

| Offense Code | Offense | Number of Arrests | | | Black Percentage | Per Capita Ratio of Black to Non-Black[5] |
|---|---|---|---|---|---|---|
| | | Total | Black | Non-Black | | |
| 97-19-71(2) | Fraud; Food Stamps | 4 | 2 | 2 | 50% | 1.60 |
| 97-25-55(2) | Assault with Intent to Commit | 4 | 2 | 2 | 50% | 1.60 |
| 97-3-109 | Drive-by Shooting | 4 | 4 | 0 | 100% | - |
| 97-3-54 | Human Trafficking | 4 | 4 | 0 | 100% | - |
| 97-41-1 | Animals, Cruelty to | 4 | 4 | 0 | 100% | - |
| 97-5-39(2) | Child,Abuse/Battery Causing Se | 4 | 4 | 0 | 100% | - |
| 27-19-59 | Motor Vehicle;Improper Registr | 3 | 2 | 1 | 67% | 3.21 |
| 33-13-471 | Military - Absent without leav | 3 | 2 | 1 | 67% | 3.21 |
| 45-35-13 | Identification Cards;Unlawful | 3 | 2 | 1 | 67% | 3.21 |
| 63-11-30(5) | DUI-Mutilation/Disfigurement/D | 3 | 2 | 1 | 67% | 3.21 |
| 63-25-5(3)(A) | Motor Vehicle: Possession W/al | 3 | 3 | 0 | 100% | - |
| 63-3-321 | Destruction,Removal, Etc. of D | 3 | 2 | 1 | 67% | 3.21 |
| 63-3-516 | Speed Limits Within Highway Wo | 3 | 2 | 1 | 67% | 3.21 |
| 63-3-603 | Motor Vehicles;Driving on Road | 3 | 2 | 1 | 67% | 3.21 |
| 63-3-909 | Parking of Unattended Motor Ve | 3 | 3 | 0 | 100% | - |
| 97-1-3 | Accessory Before the Fact | 3 | 2 | 1 | 67% | 3.21 |
| 97-1-6 | Directing/causing Felony by Pe | 3 | 3 | 0 | 100% | - |
| 97-17-61 | Larceny;Taking or Carrying Awa | 3 | 2 | 1 | 67% | 3.21 |
| 97-17-97 | Trespass after Notice of Non-p | 3 | 1 | 2 | 33% | 0.80 |
| 97-19-83 | Fraud - by Mail/phone/newspape | 3 | 2 | 1 | 67% | 3.21 |
| 97-21-29 | Making and Uttering Instrument | 3 | 3 | 0 | 100% | - |
| 97-3-65(4)(a) | Rape | 3 | 3 | 0 | 100% | - |
| 97-3-75 | Robbery - Simple | 3 | 3 | 0 | 100% | - |
| 97-31-21 | Manufacturing or Distilling Un | 3 | 1 | 2 | 33% | 0.80 |
| 97-45-17 | Computer: Posting of Email/Ele | 3 | 2 | 1 | 67% | 3.21 |

**APPENDIX B**

# Summary of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

| Offense Code | Offense | Number of Arrests | | | Black Percentage | Per Capita Ratio of Black to Non-Black[5] |
|---|---|---|---|---|---|---|
| | | Total | Black | Non-Black | | |
| 97-7-43 | Impersonating an Officer | 3 | 2 | 1 | 67% | 3.21 |
| 97-9-45 | Escape - MDOC | 3 | 0 | 3 | 0% | 0.00 |
| 97-9-49(1) | Escape of Prisoners | 3 | 2 | 1 | 67% | 3.21 |
| 97-9-59 | Perjury Definitions | 3 | 3 | 0 | 100% | - |
| 41-29-146 | Controlled/counterfeit Substan | 2 | 1 | 1 | 50% | 1.60 |
| 43-13-213 | False/fraudulent claim for Med | 2 | 2 | 0 | 100% | - |
| 49-7-8 | Hunting and fishing w/o licens | 2 | 2 | 0 | 100% | - |
| 49-7-95 | Deer; Headlighting | 2 | 0 | 2 | 0% | 0.00 |
| 63-1-6 | Requirement of Motocycle Opera | 2 | 2 | 0 | 100% | - |
| 63-11-30(1) | Motor Vehicle:operation of mot | 2 | 2 | 0 | 100% | - |
| 63-13-9 | Motor Vehicles;Details of Insp | 2 | 2 | 0 | 100% | - |
| 63-25-5 | Motor Vehicle Chop Shop | 2 | 2 | 0 | 100% | - |
| 63-3-617 | Driving in Center of Highway/R | 2 | 1 | 1 | 50% | 1.60 |
| 63-5-7 | Vehicle:operation of oversized | 2 | 1 | 1 | 50% | 1.60 |
| 63-7-51 | Improper Equipment(Brakes) | 2 | 1 | 1 | 50% | 1.60 |
| 67-1-81 | Alcohol, Sale to Minors | 2 | 2 | 0 | 100% | - |
| 75-73-9 | Fraud - Innkeeper | 2 | 1 | 1 | 50% | 1.60 |
| 75-85-19 | Operation of Transient Busines | 2 | 2 | 0 | 100% | - |
| 97-15-13 | Hunting, Shooting on or Across | 2 | 0 | 2 | 0% | 0.00 |
| 97-17-29 | Burglary;Breaking Inner Door o | 2 | 1 | 1 | 50% | 1.60 |
| 97-17-41(1)(b) | Grand Larceny; Property of a C | 2 | 1 | 1 | 50% | 1.60 |
| 97-17-64 | Theft by Rental Agreement | 2 | 2 | 0 | 100% | - |
| 97-19-23 | Fraud - Credit Card | 2 | 2 | 0 | 100% | - |
| 97-19-33 | False Impersonation | 2 | 2 | 0 | 100% | - |
| 97-19-35 | False Personation | 2 | 1 | 1 | 50% | 1.60 |

**APPENDIX B**

# Summary of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

| Offense Code | Offense | Number of Arrests | | | Black Percentage | Per Capita Ratio of Black to Non-Black[5] |
|---|---|---|---|---|---|---|
| | | Total | Black | Non-Black | | |
| 97-21-37 | Counterfeit Instrument: Poss. | 2 | 2 | 0 | 100% | - |
| 97-21-49 | Counterfeit Instrument: Sale o | 2 | 2 | 0 | 100% | - |
| 97-23-23 | Embezzlement - Receiving Stole | 2 | 1 | 1 | 50% | 1.60 |
| 97-29-61 | Voyeurism (Peeping Tom) | 2 | 0 | 2 | 0% | 0.00 |
| 97-3-104 | Sexual Penetration of Incarcer | 2 | 2 | 0 | 100% | - |
| 97-3-117 | Carjacking/Attempted Carjackin | 2 | 2 | 0 | 100% | - |
| 97-3-117(2) | Armed Carjacking/Attempted Arm | 2 | 2 | 0 | 100% | - |
| 97-3-25 | Manslaughter | 2 | 2 | 0 | 100% | - |
| 97-3-65(1) | Statutory Rape | 2 | 2 | 0 | 100% | - |
| 97-33-9 | Gambling - unlawful to keep, e | 2 | 2 | 0 | 100% | - |
| 97-35-51 | Motor Vehicle; failure to stop | 2 | 2 | 0 | 100% | - |
| 97-45-15(1)(a) | Computer: Email/Electronic Com | 2 | 0 | 2 | 0% | 0.00 |
| 97-5-5 | Enticing child for concealment | 2 | 2 | 0 | 100% | - |
| 97-7-10 | Making Fraudulent Statements/r | 2 | 2 | 0 | 100% | - |
| 97-7-29 | Destroying,Injuring, etc Prope | 2 | 1 | 1 | 50% | 1.60 |
| 97-9-105 | Hindering prosecution in the First degree | 2 | 2 | 0 | 100% | - |
| 97-9-25 | Escape - Aid/abet | 2 | 1 | 1 | 50% | 1.60 |
| 97-9-29 | Escape - Aid-abed | 2 | 0 | 2 | 0% | 0.00 |
| 17-17-29 | Waste, Solid - Illegal Disposa | 1 | 1 | 0 | 100% | - |
| 19-5-317 | Abusive Calls to Emergency Tel | 1 | 1 | 0 | 100% | - |
| 23-15-17 | False Registration | 1 | 1 | 0 | 100% | - |
| 23-15-751 | Offenses by Registrar or Commi | 1 | 1 | 0 | 100% | - |
| 27-19-56(5) | Motor Vehicle;Handicapped, Ill | 1 | 1 | 0 | 100% | - |
| 27-3-79 | Tax Evasion | 1 | 0 | 1 | 0% | 0.00 |
| 37-41-2 | Interference with Operation of | 1 | 1 | 0 | 100% | - |

**APPENDIX B**

# Summary of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

| Offense Code | Offense | Number of Arrests | | | Black Percentage | Per Capita Ratio of Black to Non-Black[5] |
| | | Total | Black | Non-Black | | |
|---|---|---|---|---|---|---|
| 41-29-139(a)(2) | Counterfeit Substance: Possess | 1 | 1 | 0 | 100% | - |
| 41-29-141(1) | Controlled Substance:(Pharmaci | 1 | 1 | 0 | 100% | - |
| 41-29-313(1) | POSS OF PRECURSOR | 1 | 0 | 1 | 0% | 0.00 |
| 41-53-11 | Dogs Running at Large | 1 | 0 | 1 | 0% | 0.00 |
| 47-5-193 | Unlawful for Officer to Furnis | 1 | 1 | 0 | 100% | - |
| 47-5-198 | Sale, Possession of Use of Con | 1 | 1 | 0 | 100% | - |
| 49-7-21 | Hunting,Trapping or Fishing Wi | 1 | 0 | 1 | 0% | 0.00 |
| 49-7-55 | Unlawful Possession,etc. of an | 1 | 0 | 1 | 0% | 0.00 |
| 59-21-83 | Boats&Other Vessels;Operation | 1 | 0 | 1 | 0% | 0.00 |
| 63-13-3 | Motor Vehicles; Operation of V | 1 | 1 | 0 | 100% | - |
| 63-3-319 | Interference with Official Tra | 1 | 1 | 0 | 100% | - |
| 63-3-407 | Accident, Vehicle Unattended | 1 | 1 | 0 | 100% | - |
| 63-3-411 | Drivers Involved In Accidents | 1 | 1 | 0 | 100% | - |
| 63-3-515 | Speed Limits Near Schools and | 1 | 1 | 0 | 100% | - |
| 63-3-613 | Overtaking&Passing Upon Right | 1 | 1 | 0 | 100% | - |
| 63-3-701 | Starting of Stopped,Standing, | 1 | 1 | 0 | 100% | - |
| 67-1-17 | Unlawful Possession of Alochol | 1 | 1 | 0 | 100% | - |
| 67-3-70 | Beer/wine, Furnishing to less | 1 | 0 | 1 | 0% | 0.00 |
| 75-85-5 | Transient vendor transact busi | 1 | 1 | 0 | 100% | - |
| 83-39-29 | Bond-jumping | 1 | 0 | 1 | 0% | 0.00 |
| 97-11-11 | Bribery - to Influence Action | 1 | 1 | 0 | 100% | - |
| 97-11-13 | Bribery;Acceptance by Officer, | 1 | 1 | 0 | 100% | - |
| 97-11-25 | Embezzlement - Officers/truste | 1 | 0 | 1 | 0% | 0.00 |
| 97-11-53 | Bribery | 1 | 1 | 0 | 100% | - |
| 97-13-19 | Corrupt Conduct by Election Of | 1 | 1 | 0 | 100% | - |

**APPENDIX B**

# Summary of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

| Offense Code | Offense | Number of Arrests | | | Black Percentage | Per Capita Ratio of Black to Non-Black[5] |
|---|---|---|---|---|---|---|
| | | Total | Black | Non-Black | | |
| 97-13-39 | Intimidating Elector to Preven | 1 | 1 | 0 | 100% | - |
| 97-15-30(2) | Unlawful to Throw,Scatter,Spil | 1 | 1 | 0 | 100% | - |
| 97-17-25 | Burglary; Breaking Out of Dwel | 1 | 1 | 0 | 100% | - |
| 97-17-33(2) | Burglary; Church, Synagogue, T | 1 | 1 | 0 | 100% | - |
| 97-17-39(B) | Public Property, Church Buildi | 1 | 1 | 0 | 100% | - |
| 97-17-43(2) | Petit Larceny;Property of a Ch | 1 | 1 | 0 | 100% | - |
| 97-17-43(3) | Petit Larceny;Motor Fuel | 1 | 1 | 0 | 100% | - |
| 97-17-5 | Arson - Structure: Not Dwellin | 1 | 1 | 0 | 100% | - |
| 97-17-85 | Trespass upon Enclosed Land of | 1 | 0 | 1 | 0% | 0.00 |
| 97-19-37 | False Personation; Masqueradin | 1 | 1 | 0 | 100% | - |
| 97-19-71(4) | Fraud; Filing for Services Not | 1 | 1 | 0 | 100% | - |
| 97-29-45 | Telephone or Electronic Commun | 1 | 0 | 1 | 0% | 0.00 |
| 97-29-51 | Prostitution;Procuring Females | 1 | 1 | 0 | 100% | - |
| 97-29-63 | Photographing or filming anoth | 1 | 0 | 1 | 0% | 0.00 |
| 97-3-47 | Manslaughter (Culpable Neglige | 1 | 1 | 0 | 100% | - |
| 97-3-65 | Rape; Carnal Knowledge of Chil | 1 | 1 | 0 | 100% | - |
| 97-3-71 | Rape - Assault with Intent to | 1 | 1 | 0 | 100% | - |
| 97-35-1 | Bus, Disorderly Conduct on | 1 | 1 | 0 | 100% | - |
| 97-35-25 | Street, Obstructing | 1 | 1 | 0 | 100% | - |
| 97-37-17(2) | 97-37-17(2)        Weapons, P | 1 | 1 | 0 | 100% | - |
| 97-37-19 | Discharging/Displaying firearm | 1 | 1 | 0 | 100% | - |
| 97-37-35(1) | Possess,Receive,Retain,Acquire | 1 | 0 | 1 | 0% | 0.00 |
| 97-5-23(1) | Touching Child for Lustful Pur | 1 | 0 | 1 | 0% | 0.00 |
| 97-5-23(3) | Computer luring of person unde | 1 | 1 | 0 | 100% | - |

**APPENDIX B**

# Summary of Arrests by Offense Code
## Madison County Sheriff's Department 2012–2017

| Offense Code | Offense | Number of Arrests | | | Black Percentage | Per Capita Ratio of Black to Non-Black[5] |
|---|---|---|---|---|---|---|
| | | Total | Black | Non-Black | | |
| 97-5-27 | Sexually-oriented Material: Di | 1 | 0 | 1 | 0% | 0.00 |
| 97-5-7 | Child, Enticing from Parents | 1 | 1 | 0 | 100% | - |
| 97-7-13 | Conspiracy to Defraud State;De | 1 | 1 | 0 | 100% | - |
| 97-9-41 | Harboring a Fugitive | 1 | 1 | 0 | 100% | - |
| 97-9-49(2) | Escape - Inmates/trusties | 1 | 1 | 0 | 100% | - |
| 97-9-9 | Bribery;Commercial Bribery | 1 | 1 | 0 | 100% | - |
| 99-19-83 | Habitual Offenders Sentenced t | 1 | 1 | 0 | 100% | - |
| 99-23-1 | Peace Bond: Issuance of Warran | 1 | 1 | 0 | 100% | - |
| B26 | UTT B26-DRV WHILE LIC SUSPEND | 1 | 1 | 0 | 100% | - |
| B53 | UTT B53-EXPIRED TAG/NO TAG | 1 | 1 | 0 | 100% | - |
| D36 | UTT D36-NO PROOF OF LIAB INS | 1 | 1 | 0 | 100% | - |
| M14 | UTT M14-DISREGARD TRF DEV | 1 | 1 | 0 | 100% | - |

Source:  ACLU12TO17.CSV

Note:
[1]  Offenses are grouped by offense code.
[2]  This tabulation was conducted under the assumption that an individual can only be arrested once a day for the same offense.  For this reason, the data is de-duplicated by first name, last name, gender, race, date, and offense code.
[3]  Individuals identified with race "B" are grouped as "Black," and individuals identified with any other race are grouped as "Non-Black."
[4]  The descriptions of the offense codes correspond to the descriptions set forth in ACLU12TO17.CSV.  In certain instances, the descriptions appear to have been cut off in ACLU12TO17.CSV.
[5]  To calculate the Per Capita Ratio, I first calculate the number of Black individuals arrested per offense code.  I then divide that number by the population of Black residents in Madison County as of July 1, 2016.  This is 38.4% of 105,114 (the total population of Madison County).  This figure is the number of Black arrests per capita for each offense code in Madison County.  I calculate the same figure for Non-Black residents of Madison County (61.6% of 105,114).  The Per Capita Ratio is the number of Black arrests per capita, divided by the number of Non-Black arrests per capita.
[6]  There are six observations in ACLU12TO17.CSV that have no offense code and no offense description.  These are displayed in the table as "Missing Code" and "Missing Offense."

APPENDIX C

## Summary of Citations by Violation Category
### Madison County Sheriff's Department 2012–2017

| Violation Category | Number of Citations | | | Black Percentage | Per Capita Ratio of Black to Non-Black[4] |
|---|---|---|---|---|---|
| | Total | Black | Non-Black | | |
| No Proof Of Liability Insurance | 7,148 | 5,511 | 1,637 | 77% | 5.40 |
| Improper / No Tag | 2,849 | 1,800 | 1,049 | 63% | 2.75 |
| Improper / No Driver's License | 2,523 | 1,788 | 735 | 71% | 3.90 |
| Driving With A Suspended License | 2,465 | 2,070 | 395 | 84% | 8.41 |
| Seatbelt Violation | 1,902 | 1,412 | 490 | 74% | 4.62 |
| Disregard for Traffic Device | 1,806 | 1,081 | 725 | 60% | 2.39 |
| DUI | 1,352 | 864 | 488 | 64% | 2.84 |
| Careless Driving | 1,285 | 769 | 516 | 60% | 2.39 |
| No Category Assigned | 1,066 | 724 | 342 | 68% | 3.40 |
| Improper Equipment | 991 | 703 | 288 | 71% | 3.92 |
| Child Restraint Violation | 639 | 599 | 40 | 94% | 24.02 |
| Improper Passing | 204 | 129 | 75 | 63% | 2.76 |
| Reckless Driving | 201 | 125 | 76 | 62% | 2.64 |
| Failure To Yield | 190 | 138 | 52 | 73% | 4.26 |
| DUI Second Offense | 173 | 121 | 52 | 70% | 3.73 |
| Improper Turn | 124 | 88 | 36 | 71% | 3.92 |
| Speeding 10 - 19 MPH | 119 | 72 | 47 | 61% | 2.46 |
| Speeding 20 MPH And Over | 115 | 77 | 38 | 67% | 3.25 |
| DUI First Offense | 101 | 70 | 31 | 69% | 3.62 |
| Following Too Closely | 100 | 76 | 24 | 76% | 5.08 |
| Speeding 1 - 9 MPH | 55 | 33 | 22 | 60% | 2.41 |
| Move Over Law | 32 | 27 | 5 | 84% | 8.66 |
| Improper / No Inspection Sticker | 12 | 8 | 4 | 67% | 3.21 |
| Speeding | 1 | 0 | 1 | 0% | 0.00 |

Source:  ACLU FOIA Request 02052018 V1.xlsx;  U.S. Census Bureau

Note:
[1]  Violations are grouped by violation categories.  These categories are created as a data cleaning measure to combine citation violations that are similar.
[2]  The tabulation was conducted under the assumption that an individual can only be cited once a day for the same violation. For this reason, the data is de-duplicated by name, gender, date, race, violation, and ticketing agency.
[3]  Individuals identified with race "B" are grouped as "Black," and individuals identified with any other race are grouped as "Non-Black."
[4]  To calculate the Per Capita Ratio, I first calculate the number of Black individuals cited per violation category.  I then divide that number by the population of Black residents in Madison County as of July 1, 2016.  This is 38.4% of 105,114 (the total population of Madison County).  This figure is the number of Black citations per capita for each violation category in Madison County.  I calculate the same figure for Non-Black residents of Madison County (61.6% of 105,114).  The Per Capita Ratio is the number of Black citations per capita, divided by the number of Non-Black citations per capita.

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

LATOYA BROWN; LAWRENCE
BLACKMON; HERBERT ANTHONY
GREEN; KHADAFY MANNING;
QUINNETTA MANNING; MARVIN
MCFIELD; NICHOLAS SINGLETON;
STEVEN SMITH; BESSIE THOMAS; and
BETTY JEAN WILLIAMS TUCKER,
individually and on behalf of a class of all
others similarly situated,

    Plaintiffs,

      v.

MADISON COUNTY, MISSISSIPPI;
SHERIFF RANDALL S. TUCKER, in his
official capacity; and MADISON COUNTY
SHERIFF'S DEPUTIES JOHN DOES #1
through #6, in their individual capacities,

    Defendants.

Civil Action No.
3:17-cv-00347-WHB-LRA

**DECLARATION OF
RAHUL GUHA, Ph.D.**

I, RAHUL GUHA, declare the following under penalty of perjury pursuant to 28 U.S.C.

§ 1746:

    1.    I am a Senior Vice President at Cornerstone Research. I hold Ph.D. and M.S.

degrees from Cornell University, an M.B.A. from the Indian Institute of Management, and A

B.E. degree in Electronics and Telecommunications Engineering from Jadavpur University. I

have over 20 years of experience advising clients in litigation matters.

    2.    I submit this declaration in opposition to Defendants' Motion in Limine to

Exclude the Declaration and Testimony of Rahul Guha [ECF No. 272] ("Defendants' Motion to

Exclude") and in response to certain assertions made in the Rebuttal Expert Report RE: Rahul

Guha, Ph.D. of Dr. Dwight D. Steward, Ph.D. ("Report" or "Steward Report").  Dr. Steward also provided backup materials ("Steward Backup") to his Expert Report.

3.       I was retained by Simpson Thacher & Bartlett LLP, the American Civil Liberties Union of Mississippi Foundation, and the American Civil Liberties Union Foundation, Counsel for Plaintiffs in this action, to present a summary under Federal Rule of Evidence 1006 of certain data and documents produced by the Madison County Sheriff's Department ("MCSD"), the Madison County Justice Court and the Madison County Detention Center. I presented this summary on March 13, 2018 (the "Summary Declaration") in support of Plaintiffs' Motion for Class Certification [ECF No. 231-2].

4.       In my Summary Declaration, I tabulated and summarized the following three categories of data that were provided to me by Plaintiffs' counsel:[1]

      i.  <u>Data Summary 1</u>: My Summary Declaration tabulated and summarized the data in ACLU12TO17.CSV ("Arrest Data") by offense and race.  I understand that this file contains entries for all individuals arrested by the MCSD and booked into the Madison County Detention Center from January 1, 2012 through September 20, 2017.  This file was provided to me by Plaintiffs' counsel, and I understand that it was produced to Defendants simultaneously with my Summary Declaration on March 14, 2018.

      ii.  <u>Data Summary 2</u>: My Summary Declaration tabulated and summarized the data in ACLU FOIA Request 02052018 V1.xlsx ("Citation Data") by violation and race.  I understand that this file contains entries for all

---

[1] *See* Summary Declaration ¶ 3.

citations issued to individuals in Madison County, including citations issued by the MCSD. The summary data I present are limited to citations issued by the MCSD. This file was provided to me by Plaintiffs' counsel, and I understand that it was produced to Defendants simultaneously with my Summary Declaration on March 14, 2018.

    iii.    <u>Data Summary 3</u>: My Summary Declaration tabulated and summarized selected categories of data in the subset of incident reports prepared by the MCSD and selected by Defendants for production in this matter. I understand that incident reports are filled out and filed by MCSD personnel after certain types of incidents occur, such as those involving arrests. I used an optical character recognition ("OCR") program to render the PDF files produced by Defendants searchable. I then searched the incident reports for keywords and search terms provided by Plaintiffs' counsel and tabulated the results of those searches.

5.    My Summary Declaration tabulates and summarizes the data that were provided to me. In preparing the tabulations and summaries, I acted at the direction of Plaintiffs' counsel. I did not submit an expert report in this case, I submitted a Summary Declaration. In my Summary Declaration, I do not offer any opinions as to the meaning or cause of the various arrest and/or citation rates presented therein.

6.     Frequency counts and percentages are well-accepted means of summarizing data.[2] I have documented how the tabulations are calculated throughout my Summary Declaration. I have personally reviewed the data and code that created the summaries and tabulations included in my Summary Declaration, and am confident that the calculations are correct.

7.     In his Report, Dr. Steward asserts repeatedly that the tabulations and summaries in my Summary Declaration are inaccurate.[3] Specifically, he asserts that my numbers are not correct,[4] and that my tabulations are "just wrong."[5] Dr. Steward provides no evidence for his claims. Contrary to his assertion, I constructed the tabulations presented in my Summary Declaration accurately and without error in the ways that I described therein.[6]

8.     At the request of counsel, I reviewed the calculations Dr. Steward describes in his Report. As discussed in further detail below, nothing in Dr. Steward's Report causes me to believe that any of these summaries and tabulations in my Summary Declaration are inaccurate.

---

[2] *See* Christopher Clapham and James Nicholson, *The Concise Oxford Dictionary of Mathematics*, 4th Edition, Oxford University Press, 2009, *available at* http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.261.2766&rep=rep1&type=pdf, pp. 224, 372. The book defines "descriptive statistics" as "[the] part of the subject of statistics concerned with describing the basic statistical features of a set of observations. Simple numerical summaries, using notions such as mean, range and standard deviation, together with appropriate diagrams such as histograms, are used to present an overall impression of the data." The definition of "histogram" is "[a] diagram representing the frequency distribution of data grouped by means of class intervals." *See also* David M. Burton, *The History of Mathematics: An Introduction*, 7th Edition, McGraw-Hill, 2011, *available at* http://www.maths.sci.ku.ac.th/suchai/02731141/hmath2.pdf, p. 1. Burton states "[it] is commonly accepted that mathematics originated with the practical problems of counting and recording numbers."

[3] Steward Report, ¶¶ 20, 35–37, 44.

[4] Steward Report, ¶ 20.

[5] Steward Report, ¶ 35.

[6] *See, e.g.*, Summary Declaration, ¶ 7.

**I. My Summary Declaration Tabulates Data As It Was Provided by the MCSD and/or Madison County Detention Center, and Fully Discloses How the Summaries Are Tabulated**

9.      As a general matter, Dr. Steward's Report and Defendants' Motion to Exclude seem to suggest that my Summary Declaration is misleading because they assert my tabulations are more than simple data summaries. In particular, Dr. Steward's Report and Defendants' Motion to Exclude assert that my tabulations are in fact expert analysis, they object to the methodology of that alleged expert analysis, and they criticize that alleged expert analysis for not accounting for specific "relevant factors" they describe.[7] However, the data I was provided and instructed to tabulate do not contain information on such factors. Rather than try to make opaque and speculative assumptions, I tabulated and summarized the data as it was provided to me.

10.      Dr. Steward asserts that I "inappropriately double count[] arrests and citations throughout" my tabulations.[8] He observes that if an individual is arrested by MCSD, I count each offense that individual is charged with as separate arrests in my tabulations.[9] I clearly state and explain this in my Declaration and exhibits.[10] As I described in my deposition, I endeavored to make the minimum number of assumptions to summarize the data while also making clear any assumption that I did make; the tabulated data in my Summary Declaration reflect this.[11]

11.      Dr. Steward asserts that my tabulations "double count instances where multiple arrests for the same offense occurred during the adjudication process," and as support for this

---

[7] Steward Report, ¶¶ 8–9 and Defendants' Motion to Exclude, p. 1.

[8] Steward Report, ¶ 44.

[9] Steward Report, ¶ 44.

[10] Summary Declaration, ¶¶ 8–10, 17–18, Appendix B, and Appendix C.

[11] Deposition of Rahul K. Guha, Ph.D. (April 18, 2018), 117:12–118:9.

assertion, he cites to my deposition.[12]   As is clear in the deposition  excerpt he cites, however, I indicated that my tabulation  would count an individual  twice in the *hypothetical example* posed in my deposition.   However, Dr. Steward does not cite even a single  example  where this situation actually occurred in the data.  Nor does he acknowledge that even by his own description,  if such a hypothetical  scenario were to occur, it would indeed constitute  multiple  arrests, and thus would appropriately  be counted multiple  times in my tabulation  of arrests made by MCSD.

12.     Dr. Steward also claims  that my arrest tabulations  and summaries are "just wrong," claiming  specifically  that I attribute arrests of individuals  to incorrect offenses.[13]  Dr. Steward asserts that I should account for the difference between discretionary  and non-discretionary  arrests in my tabulations,[14]  but the datasets I summarize  do not include  such information.

13.     Contrary to Dr. Steward's opinion,  the tabulations  in my Summary Declaration are accurate.  The summaries I present do not differentiate  between arrest offenses based on which offense was the "cause" of the arrest, as this information  is not included  in the dataset I summarize.  I explained how this tabulation  was conducted in my Summary Declaration, including  that one individual  may be counted multiple  times if that individual  had multiple charges listed in the dataset on the same date.[15]  As I described in my deposition,  the purpose of

---

[12] Steward Report, ¶ 45.

[13] Steward Report, ¶¶ 35–36.

[14] Steward Report, ¶ 38.

[15] Summary  Declaration, ¶ 10.

conducting the tabulations in this way was to summarize the data included in produced datasets while making a minimum number of assumptions.[16]

14.     Not only does Dr. Steward misrepresent the tabulations in my Summary Declaration, he also provides no support for his opinion that certain individuals were "actually arrested" for other offenses, other than his assertion that this is the case.[17] For instance, the individual with arrest number 56104 had five associated charges on May 26, 2014, yet Dr. Steward asserts without support that he was "actually arrested" due to possession of a stolen firearm.[18] Dr. Steward claims to have arrived at this conclusion based on "a closer review of the underlying data," yet provides no explanation for what in the underlying data indicates that this charge was the reason for the person being "actually arrested."[19] This individual was also charged with four other offenses at the same time: "Controlled Substance Violation" (41-29-139), "Motor Vehicle Violation - No/E" (63-1-5), "Improper Turn (No Turn Signal)" (63-3-707), and "POSS OF MARIJUANA MOTOR VEHICLE" (41-29-139(c)(2)(B)), but Dr. Steward ignores these other charges in his Report.[20]

15.     Dr. Steward also asserts that the individual with arrest number 73318 was "actually arrested as a result of" a controlled substance violation on August 27, 2017.[21] Again, the dataset summarized shows that this individual had three charges on that day: "Improper Turn

---

[16] Deposition of Rahul K. Guha, Ph.D. (April 18, 2018), 117:12–118:9.

[17] Steward Report, ¶ 36.

[18] Steward Report, ¶ 37 and Steward Backup.

[19] Steward Report, ¶ 37.

[20] Steward Report, ¶ 37 and Steward Backup.

[21] Steward Report, ¶ 37.

(No Turn Signal)" (63-3-707), and two charges of "Controlled Substance Violation" (41-29-139).[22] The data contains no indication of the "actual" reason for the arrest.[23]

16.    Dr. Steward and Defendants also critique my Summary Declaration for not making adjustments for "calls for service."[24] My Summary Declaration does not attempt to discern whether each tabulated arrest was the result of a call for service, as this variable was not included in the files that I tabulated and summarized.[25]

17.    By contrast, my Summary Declaration is faithful to the records it summarizes, which do not categorically classify offense codes into "calls for service" or by how "serious" the offense was.[26]

## II. My Search of the Incident Reports Was Appropriate and Transparent

18.    The incident reports produced by Defendants were produced in an unsearchable format. In order to summarize the data contained in those incident reports, I used an OCR software program to process the files so that the text contained within became searchable. Use of OCR software is widely accepted as reliable, and is frequently used to search and summarize large quantities of data and/or documents that were originally provided in image format.[27]

---

[22] Steward Report, ¶ 37 and Steward Backup.

[23] *See* Steward Backup.

[24] Steward Report, ¶ 40.

[25] *See* the backup materials I provided in conjunction with my Summary Declaration.

[26] Steward Report, ¶¶ 40, 43.

[27] *See* Ali Mir Arif Mir Asif, Shaikh Abdul Hannan, Yusuf Perwej, and Mane Arjun Vithalro, "An Overview and Applications of Optical Character Recognition," *International Journal of Advance Research In Science And Engineering*, Vol. 3, No. 7, July 2014, *available at* https://www.researchgate.net/publication/267465115_An_Overview_and_Applications_of_Optical_Character_Recognition, p. 1.

19.     I used the search terms and keywords provided to me by counsel, and each exhibit of my Summary Declaration that summarizes incident reports lists the search terms used therein. I conducted these searches consistently across the documents, and have no reason to believe that either the OCR process or the search terms I used rendered the tabulations in my Summary Declaration misleading or inaccurate.

20.     I declare under penalty of perjury that the foregoing is true and correct.

Date: July 2, 2018

_____

Rahul Guha, Ph.D.

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| LATOYA BROWN; LAWRENCE | ) | |
| BLACKMON; HERBERT ANTHONY | ) | |
| GREEN; KHADAFY MANNING; | ) | |
| QUINNETTA MANNING; MARVIN | ) | |
| MCFIELD; NICHOLAS SINGLETON; | ) | |
| STEVEN SMITH; BESSIE THOMAS; | ) | |
| And BETTY JEAN WILLIAMS TUCKER, | ) | |
| Individually and on behalf of a class of | ) | |
| All others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3:17-cv-347WHB-LRA |
| | ) | |
| v. | ) | |
| | ) | |
| MADISON COUNTY, MISSISSIPPI; | ) | |
| SHERIFF RANDALL S. TUCKER, in his | ) | |
| Official capacity; and MADISON | ) | |
| COUNTY SHERIFF'S DEPUTIES | ) | |
| JOHN DOES #1 through #6, in their | ) | |
| Individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**Dwight D. Steward, Ph.D.**
**Rebuttal Expert Report**
**RE: Rahul Guha, Ph.D.**

**May 8, 2018**

EXHIBIT 3

**Table of Contents**

**Introduction and summary of my opinions**                                    **2**

**Overview of Dr. Guha's Summary Declaration Analysis**                        **5**

**Dr. Guha's data summaries and tabulations are misleading and inaccurate**    **7**

**Dr. Guha's tabulations of MCSD citation data is uninsightful**               **27**

**EXHIBIT 3**

**Introduction and summary of my opinions**

1.      My name is Dwight Steward, Ph.D. and I am an economist and statistician and have been retained to perform an analysis in this lawsuit.  In this report, I provide a rebuttal to the Plaintiff's statistical expert, Rahul Guha, Ph.D.

2.      As an economist and statistician, I have provided statistical and economic consultation and reports on racial discrimination issues in areas including police racial profiling, police use of force, employment, and financial lending.  I have provided statistical and economic research and expert witness testimony in court litigation and provided consultation in non-litigation settings to employers, governmental entities, and police agencies.

3.      In police agency projects, I have worked with civil rights organizations including the NAACP, LULAC, ACLU, and Texas Criminal Justice Coalition (TCJC), as well as police organizations such as the Police Executive Research Forum (PERF), on issues involving traffic stops, police searches, and police use of force.  My co-authored statistical research of the Texas Department of Public Safety (DPS) stop and search database was one of the first large scale statistical studies of police racial profiling data in Texas.  In addition, I worked for over seven years with the TCJC, ACLU, NAACP, and Texas police agencies on the statewide collection and analysis of police stop and search data and reports.  Our research on the analysis of racial profiling allegations in Texas police agencies' stops and searches was cited by police racial profiling researchers and received national media attention.  I have also assisted civil rights organizations and stakeholders, and members of the Texas State legislature, on the

2

EXHIBIT 3

development of a statewide repository for police agency racial profiling data and reports in Texas.  During the Texas State 77th Legislature, I provided testimony to the Texas State Senate Research in support of HB-1074 Bill: Racial Profiling in Texas.

4.      In addition, I have worked with economics professors from Sam Houston State University on the development of methodologies and traffic and population statistical baselines to study issues related to police racial profiling.  I have given presentations at professional meetings and to police agency organizations, including PERF, on issues related to the statistical analysis of police racial profiling and use of force.  I have also served as an expert witness for Plaintiffs and Defendants in legal cases involving allegations of police racial profiling.  In Regina Kelly et al. v. John Paschall et al., in the United States District Court for the Western District of Texas, Waco Division, I served as a statistical expert witness for the Plaintiffs.  In this case the Plaintiffs alleged that The South-Central Texas Narcotics Task Force, which was a group of police agencies set up for drug policing in Limestone and Robertson counties, were racially profiling African-Americans.  In this case, I analyzed incident level data, police agency level data, and numerous population and crime databases to study the Plaintiffs' allegations of police racial profiling.

5.      In addition to my work involving police agencies, I have served as an expert witness and consultant in federal and state court on statistical issues in numerous employment discrimination cases involving terminations, promotions, compensation, and hiring.  I have provided expert reports, deposition testimony, and trial testimony on statistical issues in employment matters in states including Mississippi,

3

EXHIBIT 3

Alabama, Louisiana, Georgia, Florida, Texas, Oklahoma, California, New Mexico, Arizona, Washington, Illinois, Iowa, Missouri, Massachusetts, New Jersey, New York, and Pennsylvania.   I have also presented research to numerous academic and professional groups on the issues related to the statistical analysis of discrimination in employment.

      6.     In addition, I have also held teaching positions in the Department of Economics at The University of Texas at Austin, the Red McCombs School of Business at The University of Texas at Austin, and the College of Business Administration at Sam Houston State University.   In my teaching positions, I have taught dozens of courses in statistics and its application to economic problems including discrimination.   Among my courses at the University of Texas at Austin, I designed and taught a semester length upper division course devoted to the study of economic and statistical models of racial and gender discrimination.

      7.     I hold a Ph.D. in Economics from the University of Iowa ('95) and a B.A. in Economics from The University of Texas at Austin ('90).   While at UT-Austin, I also earned a commission in the U.S. Army through Army R.O.T.C. and served stateside during Operation Desert Storm in the Field Artillery.   My full curriculum vitae is attached to this report.

      8.     In brief, it is my opinion that Dr. Guha's arrest and citation tabulations provide no useful insights in this case.   Dr. Guha states in his declaration that "without the benefit of summaries and calculations, it may be inconvenient for the Court to

4

EXHIBIT 3

examine the contents of these data and document sets" in this case.[1]  He further states that his declaration is limited to presenting the results of his summaries.

9.     In contrast to his assertions, the data summaries and tabulations that Dr. Guha presents are not objective, generally accepted calculations designed to help "the Court to examine the contents of these data and document sets".   Instead, Dr. Guha is clearly performing a statistical analysis of MCSD data based on census benchmarks, assumptions, and methodologies that he has chosen to employ in this case.   Dr. Guha's tabulations and summaries are clearly designed to create the impression that African-Americans are disproportionately arrested and cited by MCSD. However, Dr. Guha provides no context or understanding of the underlying data to help the Court understand his tabuations and summaries of MCSD arrest and citations data. The census benchmarking methodology that Dr. Guha explicitly states that he is utilizing to summarize the data in this case has been debunked by law enforcement and police racial profiling researchers for years.

10.     My analysis is discussed in more detail in the following sections of this report.   The case-related documents, treatises, and other information used to prepare this analysis are listed in Exhibit A, footnotes, and in the text of this report.  I respectfully reserve the right to make changes to this report.

**Overview of Dr. Guha's Summary Declaration Analysis**

11.     In Dr. Guha's March 13, 2018 declaration, which he refers to as a summary declaration, he performs three analyses of the MCSD arrest and citation data

---

[1] See March 13, 2018 Summary Declaration of Dr. Guha, Pg. 2 Para. 5.

**EXHIBIT 3**

in this case.  Dr. Guha states in his declaration that the data in this case is voluminous and "without the benefit of summaries and calculations, it may be inconvenient for the Court to examine the contents of these data and document sets."   Dr. Guha's declaration and deposition testimony indicate that he analyzed MCSD data at face value and did not obtain information regarding the underlying administrative and judicial processes that generated the MCSD arrest and citation data in this case.

12.    In his first analysis, Dr. Guha provides summary analyses of the records of the individuals who were arrested by MCSD and booked into Madison County Detention Center (MCDC) from January 1, 2012 through September 20, 2017. Using this data, he calculates the African-American percentage of arrests for each type of offense such as Burglary, Assault, and Improper Turn While Driving.  Dr. Guha then compares the racial distribution of the arrests for each type of offense to the general Madison County population.  Dr. Guha uses population data from the U.S. Census on all individuals aged 0 to 100 living in Madison County to establish his Census benchmark for the Madison County Detention arrest records.  The MCDC arrest records used by Dr. Guha in his Census benchmarking analysis include adult individuals who lived in Madison County as well as those who lived outside of Madison County.   It is my understanding that the MCDC generally does not house juvenile offenders.

13.    In his second analysis, Dr. Guha calculates the African-American percentage of citations for each type of violation, such as having no auto-insurance, driving with a suspended license, and reckless driving, issued by MCSD.  Dr. Guha then compares the racial distribution of the citations for each type of violations to the general

6

EXHIBIT 3

Madison County population.  Dr. Guha uses population data for all individuals living in Madison County to establish his Census benchmark for the Madison County Detention citation tabulations.  The MCSD citations used by Dr. Guha in his Census benchmarking exercise include motorists who lived in different areas of Madison County as well as those who lived outside of Madison County.  In Dr. Guha's third analysis he presents data tabulations of MCSD arrests that he believes were made at traffic roadblocks, apartment walkthrough, and traffic stops.

14.    Dr. Guha testified that the Plaintiffs' attorneys instructed him as to which arrest and citation data to tabulate and analyze.  Dr. Guha further testified that he determined and developed the Census population benchmark to analyze the MCSD arrest and citation data.  Dr. Guha also testified that the use of the type of Census population benchmarking that he uses to produce his analyses is "a fairly standard way of looking or presenting data."[2]  However, Dr. Guha, who identified himself as an antitrust economic expert, provided no studies, law enforcement research or other learned treatises in his declaration or at his deposition to support his use of Census benchmarking in this case.

15.    As will be discussed in the following sections, Dr. Guha's arrest and citation tabulations provide no useful insights in this case.

**Dr. Guha's data summaries and tabulations are misleading and inaccurate**

16.    In police racial profiling litigation, as well as in general research, arrest and citation data cannot provide useful insights without a thorough understanding

---

[2] See April 18, 2018 Deposition of Dr. Guha, Pg. 150 Ln. 13.

7

<span style="color:red">**EXHIBIT 3**</span>

of the underlying administrative and judicial processes that generated the law enforcement data. An understanding of these processes is required before useful tabulations can be performed let alone before analyses and summaries can be interpreted. In contrast to his assertions, the data summaries and tabulations that Dr. Guha presents are not objective, generally accepted calculations designed to help "the Court to examine the contents of these data and document sets."

17. Instead, Dr. Guha is clearly performing a statistical analysis of MCSD data based on census benchmarks, assumptions, and methodologies he has chosen to employ in this case. Dr. Guha testified that he chose the Census benchmark, as well as the methodology of comparison, that used to perform his statistical summaries.

> A. That's correct, that's what I said. I'm sorry, maybe I miss -- so it is the number of blacks arrested divided by the total number of blacks in the county.
>
> Q. Where did you come up with this concept? Did Simpson Thacher ask you to do that?
>
> MS. SIVASHANKER: Objection to form.
>
> A. No.
>
> Q. Did you decide to do it on your own?
>
> A. Yes. It's a fairly standard way of looking or presenting data.
>
> Q. You have you seen that in any literature relating to law enforcement?
>
> MS. SIVASHANKER: Objection to form.
>
> A. As I said, I don't do law enforcement, but this is a very standard way of looking at it.

8

EXHIBIT 3

Q. Is your answer no?

A. In law enforcement?

Q. Right.

A. No.[3]

18.     Dr. Guha's tabulations and summaries are clearly designed to create the impression that African-Americans are disproportionately arrested and cited by MCSD.   However, Dr. Guha provides no context or understanding of the underlying data to help the Court understand his tabulations and summaries of MCSD arrests and citations.   In fact, even when a small amount of context is considered, not only are Dr. Guha's tabulations misleading, but they are simply wrong.

19.     Specifically, the census benchmarking methodology that he explicitly states that he is utilizing in this case, has been debunked by law enforcement and police racial profiling researchers for many years.[4]   As previously described, Dr. Guha calculates the racial distribution of the MCSD offenses and then compares the racial distribution of the arrests for each type of offense to the general population of all ages living in Madison County.   For example, he purports to find that 77% of the arrests for 'improper turn' or 'turning without a turn signal' are African-American.   Dr. Guha then reports to find that after adjusting by the population in Madison County,

---

[3] See April 18, 2018 Deposition of Dr. Guha, Pg. 150 Ln. 1-25.

[4] It should be noted that Dr. Guha's Census benchmarking approach is similar to the Census benchmarking approach used by the Plaintiffs' statistical expert, Dr. Bryan Ricchetti.  I understand both Drs. Ricchetti and Guha are economists who work at Cornerstone. In both of their reports, they attempt to create population adjusted law enforcement activity, such as arrest rates and roadblock placement, by adjusting those rates by the number of people in Madison County.  It is not clear if Drs. Guha and Ricchetti, or their staffs, worked together in some manner in their analyses.

9

**EXHIBIT 3**

African-Americans are 5.43 times more likely than non-African-American motorists to be arrested by MCSD for improper turn.

20.    Even if Dr. Guha's numbers were correct, which they are not, his use of a general population census benchmark, which is generally acknowledged to be flawed, is completely inappropriate and uninformative in this case.   The census benchmark that Dr. Guha utilizes looks only at who lives in Madison County not who is actually at risk of being arrested by MCSD.   As is described below, it is widely known and undisputed that criminality and the demographics of a pool of individuals at risk of being arrested by law enforcement can and does differ from the demographics of the individuals living within a given location.

21.    It is a well-established and noncontroversial fact that the arrest rate of a particular racial group may differ from one another due to factors other than police racial profiling.   It is also well known that factors such as rates of parole, probation, and incarceration are different for different racial groups.   While many researchers, including myself, may wish that certain empirical facts did not exist, the requirement to account for those facts remains.   Simply ignoring these types of established factors in a statistical analysis will necessarily create erroneous inferences of police racial profiling in some instances where it in fact does not exist.   Conversely, in other instances, ignoring these types of factors in a statistical analysis will result in an analysis that is erroneously not suggestive of racial profiling.

22.    For instance, it is widely known that African-Americans are significantly more likely than Whites to be on probation, parole, or to have been

10

EXHIBIT 3

incarcerated.[5]   Other generally accepted and widely used data also clearly shows that involvement rates in criminal activity, either as a victim or perpetrator, are also different for different racial groups.   For instance, African-Americans are more likely than Whites to have been either a victim or perpetrator in a crime.[6]   It is reasonable to expect that related legal issues such as parole violations, probation violations and law enforcement warrants will also be different for different racial groups.   In contrast to Dr. Guha's misleading data tabulations, the outcomes of police agency actions, including MCSD, are in fact impacted by these deep-rooted historic socio-economic and demographic empirical facts.

23.   Dr. Guha's tabulations do not consider any of these types of established factors in his summary analysis of MCSD arrest rates and cannot provide the Court with any useful insights.   The census benchmarks that Dr. Guha's constructed do not even take into account the basic fact that the MCDC detention records generally do not include juvenile arrests or arrest records for persons age 0 to 17.[7]   Dr. Guha's census benchmark, which is a count of all individuals living in Madison County aged 0 to 100, is clearly incorrectly based on the assumption that juvenile arrests are included in the MCDC arrest records.

---

[5] Danielle Kaeble and Thomas P. Bonczar. Probation and Parole in the United States, 2015 and the references therein. U.S. Department of Justice Bureau of Justice Statistics. Revised February 2, 2017; E. Ann Carson, Ph.D. and Elizabeth Anderson. Prisoners in 2015 and the references therein. U.S. Department of Justice Bureau of Justice Statistics; and population data from the American Community Survey.

[6] Jennifer L. Truman, Ph.D. and Lynn Langton, Ph.D., BJS Statisticians. Criminal Victimization, 2014 and the references therein. U.S. Department of Justice Bureau of Justice Statistics. Revised September 29, 2015; and population data from the American Community Survey.

[7] I understand that juveniles that are being charged for a particular crime as an adult may be detained in the MCDC.

11

**EXHIBIT 3**

24.     Dr. Guha makes no attempt to create a census benchmark that accounts for this fact or any other generally acknowledged non-racial factors.  In fact, Dr. Guha provides no studies, law enforcement research or other learned treatises in his declaration or at his deposition to support his use of Census benchmarking in this case. At his deposition, Dr. Guha only provided an example of comparing the scoring output of two NBA basketball players, LeBron James and Steph Curry, as support for his methodology.   Dr. Guha was not aware of any law enforcement literature that supported his approach.

Q. This racial profile which we were just discussing, you said it was a standard way of looking at data.

A. That's correct.

Q. Do you have an opinion on that?

MS. SIVASHANKER: Objection to form.

A. I mean it is just -- I'm saying this is a -- this is a very common way with which people look at data. There is nothing particularly like special to this. And the example that I was about to give you is if somebody were to ask you, you know, who is scoring more this year in the NBA, Steph Curry or LeBron James, the answer wouldn't be well, LeBron got 3000 points and Steph Curry got 2000 points. That makes no sense because you don't know how many games each one of them has played. Right. So you always say, okay, Steph Curry is scoring 35 points a game and LeBron is scoring 30 points a game. So it is just normalizing things so two things become comparable. That's all this is.[8]

---

[8] See April 18, 2018 Deposition of Dr. Guha, Pg. 151 Ln. 5-25, Pg. 152 Ln. 1-3.

12

EXHIBIT 3

25.     In any event, it is evident even from a quick review of MCSD's arrest records and Dr. Guha's work files, that his census benchmark does not even faintly resemble the actual population at risk of being arrested by MCSD, or any police agency for that matter.   According to Dr. Guha's deposition testimony, he did not attempt to obtain an understanding of the underlying factors that generated the MCSD data.   His deposition testimony indicates that he did not question the underlying arrest data, request additional contextual information, or even determine if there was the need to obtain such information.

> Q. I believe you have already said you did not talk to anybody at the Madison County Justice Court office, did you?
>
> MS. SIVASHANKER: Objection to form.
>
> A. No, I did not.
>
> Q. You didn't make any inquiry how that data was collected, did you?
>
> MS. SIVASHANKER: Objection to form.
>
> A. No, I did not.[9]

Dr. Guha's deposition testimony indicates that he did not have a particular understanding of how the judicial process worked in regards to the MCSD arrest data. Dr. Guha testified that he did not know how outstanding arrest warrants were reflected in his data or how they may have impacted his summaries and calculations.

---

[9] See April 18, 2018 Deposition of Dr. Guha, Pg. 56 Ln. 10-20.

13

**EXHIBIT 3**

Q. Your data does not indicate which of the arrests were pursuant to a warrant or based upon a current violation, right?

MS. SIVASHANKER: Objection to form.  It was not your data but you can answer.

A. So, I'm not sure that it identifies the process, but to the extent that the existing -- preexisting offense leads to an arrest, that is a row of data.  It does show up if you look at Appendix B every single offense code will eventually show up.

Q. Let's go to Appendix B. Go to the first page which I think is 1 of 12 and look at the third one down, the control substance violation and you have 1,867 arrests there. Do you know how many of those were pursuant to a warrant and how many of those were based upon the officer smelling marijuana -- the officer seeing a controlled substance on the scene when he made the arrest?

MS. SIVASHANKER: Objection to form.
A. No.

Q. The same would be true for every category in Appendix B, right?

MS. SIVASHANKER: Objection to form.

A. I'm not sure that I understand what the question means? Can you take another row and ask a specific question?

Q. Let's say I'm on page 2 of 12 this time.

A. Okay.

Q. Let's say aggravated assault, offense code is 9737 (2) and you have 199 arrests.  Do you know how many of those arrests were pursuant to a warrant and how many of them were based upon the officer seeing an assault in progress?

MS. SIVASHANKER: Objection to form.

14

**EXHIBIT 3**

A. No I don't.[10]

Dr. Guha also testified that in some instances, and presumably in this case, further investigation of the data is unnecessary because many underlying factors are standardized and generally understood.

> Q. Do you ever go talk to the people who enter the data to learn their process and their thinking in entering the data?
>
> MS. SIVASHANKER: Objection to form.
>
> A. You know I'm trying to think of data that I commonly use. I commonly use data from sources like IMS which has data on pharmaceutical sales. There is no question of going to the source and asking how you entered the data. That is the data that you get and it is widely considered to be a reliable source and you use the data.
> If you were to work with stock price data, securities data you would download the data from the Crisp database and you would not go to the New York Stock Exchange and try to figure out whether some trades actually happened. So, no, I mean like you know for the vast majority of cases that I could think of, I mean going back and sort of trying to sort of figure out how the data were compiled you know is not feasible or sensible.[11]

26.   In contrast to Dr. Guha's deposition testimony, MCSD arrest and citation data in this case is not New York Stock Exchange stock price data or Pharmaceutical company drug pricing data.  As has been the case with other police agency projects that I worked on, police agency records are not standardized, and a thorough understanding of the data is required before reliable tabulations can be

---

[10] See April 18, 2018 Deposition of Dr. Guha, Pg. 122 Ln. 1-25, Pg. 123 Ln 1-18.
[11] See April 18, 2018 Deposition of Dr. Guha, Pg. 106 Ln. 25, Pg. 107 Ln. 1-23.

15

<span style="color:red">**EXHIBIT 3**</span>

constructed, let alone interpreted.  If Dr. Guha would have undertaken such an exercise, he would have quickly seen that his general population census benchmark data is an inaccurate representation of the actual portion of Madison County that is at risk of being arrested by MCSD.

27.     Dr. Guha's analysis does not take into account that many police agency arrests are the result of court order arrest warrants and not necessarily individual decisions made by police officers.   Generally, in these instances, the individual who was arrested was charged with an offense during some earlier time period and did not successfully resolve the legal issue with the court and an arrest warrant is issued.  I understand that an arrest warrant could be issued for any number of reasons such as probation or parole violations, failure to appear at court, and failure to pay a fine.  I also understand that if an officer-citizen contact occurs and there is an outstanding warrant for that individual then the officer has little to no discretion as to whether to arrest the individual or not.  These types of arrests are generally referred to as non-discretionary arrests by police researchers.

28.     In response to my request, MCSD provided information regarding arrests pursuant to outstanding warrant arrests from local trial courts.[12]  Even cursory summary tabulations of this data show that a significant portion of the African-American MCSD arrests in Dr. Guha's data are the result of outstanding arrest warrants issued by local trial courts.   Overall, the data shows that African-Americans are nearly four (4)

---

[12] See "Justice Court Warrant Arrest 1 from 01012012.csv" and "Warrant Module 01012012-09202017.csv".

16

EXHIBIT 3

times more likely to have been arrested as a result of having an outstanding court issued warrant than Whites in Madison County.

29.     Further, the warrant data shows that many of the arrests that Dr. Guha shows as being the result of minor traffic offenses are in fact the result of an outstanding arrest warrant.  For example, Dr. Guha's tabulations and underlying data indicates that on November 29 and 30, 2012, two African-Americans were arrested for improper equipment on vehicle.  However, neither of these individuals were actually arrested for improper equipment on vehicle.  Both of these individuals had outstanding warrants and were arrested subsequent to those warrants.  Similarly on July 5, 2012, Dr. Guha's tabulations state that two African-Americans were arrested for operating a vehicle without a license.   Both of these individuals were actually arrested for outstanding warrants.  This type of pattern is evident throughout Dr. Guha's arrest data calculations.

30.     Clearly, MCSD officers have limited to no discretion in the decision to arrest individuals with outstanding arrest warrants, regardless of their race.   The socio-economic demographic factors that may have generated or perpetuate the unfortunate racial disparity in arrest rates are clearly outside the control of police agencies including MCSD.  Dr. Guha's failure to even consider the impact of court order arrest warrants in his analysis further shows that without context, his raw tabulations and comparisons do not provide the court with any useful insights.

31.     If Dr. Guha would have studied, examined, and provided context from the arrest records of other police agencies he would have further seen the problems

17

**EXHIBIT 3**

with the Census benchmark that he selected in his arrest analysis.   Even cursory tabulations of the MCDC jail docket arrest data and publicly available FBI Uniform Crime Report (UCR) arrest data show that MCSD arrest rates are similar to other police agencies operating in racially diverse geographical areas.   These comparisons further illustrate that providing raw tabulations of law enforcement data that do not incorporate a solid understanding of the socio-economic factors process that generate the data, can incorrectly create an inference of police racial bias.

32.     For instance, in his summary tables Dr. Guha calculates that the African-American arrest rate for Larceny is 2.58 times greater than that of non-African-Americans.   Tabulations of FBI UCR arrest data shows that the MCSD arrest rate of African-Americans for Larceny is not inconsistent with that of other police agencies operating in racially diverse environments.   For example, Rankin County, Jackson County, and the City of Aberdeen are three municipalities in Mississippi. Rankin County is a county that borders Madison County, Jackson County is a county in Southeast Mississippi, and the City of Aberdeen is in Northeast Mississippi.   According to the U.S. Census Bureau, 38.4% of Madison County population is African-American. The data shows that 20.5% and 21.9% of the populations of Rankin County and Jackson County are African-American, respectively.[13]   The population of the City of Aberdeen is 67.3% African-American.

---

[13]

https://www.census.gov/quickfacts/fact/table/aberdeencitymississippi,madisoncountymississippi,rankincountymississippi,jacksoncountymississippi/PST045216

18

**EXHIBIT 3**

33.    The FBI UCR arrest data shows that the MCSD arrest rates calculated by Dr. Guha for African-Americans for Larceny are consistent with the African-American arrest rate for Rankin County Sheriff's Department, Jackson County Sheriff's Department, and the City of Aberdeen Police Department.[14]   These police agencies have African-American arrest rates for Larceny that are similar to or higher than MCSD.   The Rankin County Sheriff's Department and Jackson County Sheriff's Department, both of which have a lower percentage population of African-American residents than Madison County, have a higher Larceny arrest rate for African-Americans than the 2.58 arrest rate calculated by Dr. Guha.   Rankin County Sheriff's Department and Jackson County Sheriff's Department have African-American Larceny arrest rates of 3.39 and 10.19, respectively.   The City of Aberdeen, which has a higher percentage population of African-Americans, has a Larceny arrest rate for African-Americans that is 7.36 times that of non-African-Americans using Dr. Guha's arrest rate calculation methodology.

34.    These types of arrest rate patterns are evident throughout the arrests and offenses in the underlying data that Dr. Guha used to construct his tabulations and summaries.   These types of comparisons clearly illustrate the potential impact of socio-economic factors on the racial distribution of arrest rates that are outside of the control of any particular police agency, including MCSD.

35.    The usefulness of Dr. Guha's calculations is further undermined by the sheer inaccuracy of the arrest tabulations and summaries that he creates.   In a

---

[14] FBI UCR source: 36794-0001-Data.dta, downloaded from
https://www.icpsr.umich.edu/icpsrweb/NACJD/studies/36794/version/1.
Census source: https://www.census.gov/data/datasets/2016/demo/popest/counties-detail.html.

19

EXHIBIT 3

number of instances, Dr. Guha's fundamental lack of knowledge of the underlying data results in attributing an individual's arrest to an incorrect offense. For example, Dr. Guha's tabulations in Appendix C show that MCSD cited 88 African-Americans for 'Improper Turn/ Turning without a Turn signal'. Dr. Guha's tabulations in Appendix B indicate that MCSD arrested all 88 African-Americans for the 'Improper Turn/ Turning without a Turn signal' violation. Dr. Guha's tabulations are just wrong.

36.     A closer examination of Dr. Guha's underlying data shows that none of these 88 African-Americans were actually arrested for 'Improper Turn' by MCSD. Most of the individuals identified as being arrested as a result of an improper turn by Dr. Guha were actually arrested for an offense or offenses where the officer had little to no discretion in the decision to make the arrest.

37.     For instance, in Dr. Guha's data, arrest number 58212 of a 30-year-old African-American male that occurred on March 18, 2012 is classified as an arrest resulting from an improper turn. A closer review of the underlying data in Dr. Guha's tabulations shows that this person was not actually arrested as a result of making an improper turn. The underlying data shows that this individual was actually arrested as a result of a third DUI charge. Similarly, Dr. Guha's data indicates that arrest number 56104 of a 25-year-old African-American male that occurred on May 26, 2014 was the result of an improper turn. However, a closer review of the underlying data in Dr. Guha's tabulations shows that this person was actually arrested as a result of being in possession of a stolen firearm. Further, in Dr. Guha's data arrest number 73318 of a 34-year-old African-American female that occurred on August 27, 2017 is

20

EXHIBIT 3

classified as an arrest resulting from an improper turn.  A closer review of the underlying data in Dr. Guha's tabulations shows that this individual was not actually arrested as a result of making an improper turn.  Instead, this individual was actually arrested as a result of a Controlled Substance Violation.  This type of pattern is evident all throughout the arrest data tabulations that Dr. Guha presents in his declaration[15]..

38.    Dr. Guha's overall failure to account for the difference between discretionary arrests and non-discretionary arrests in tabulations compounds the problems with Dr. Guha's census benchmarks.  In police and law enforcement research, a discretionary arrest is one where the officer typically observes some type of law violation but may have some discretion in the decision to make an arrest, write a citation or other actions.  A non-discretionary arrest is typically one where an officer observes some type of crime, such burglary, assault, and armed robbery, and the officer has limited to no discretion on the decision to make an arrest.

39.    It is generally accepted that arrests where the officer has little or no discretion in the decision to make the arrest, provide no insights into an analysis of potential police racial bias or racial profiling.  Providing tabulations of these types of arrests provides the court with no insights into the allegations at issue in this case.  Instead of excluding these arrests from his tabulations, Dr. Guha just assumes, implicitly or explicitly, that these two types of arrests are fungible when in fact they are not.  Dr.

---

[15] Further, Dr. Guha testified that the the Plaintiffs' attorneys provided the search terms to use for incident report searches that Dr. Guha reports in his declaration.  Dr. Guha did not do any analysis as to whether these were good search terms for the categories that the reports were being pulled for use in his tabulations., The quality of Dr. Guha's data is also suspect.  Dr. Guha testified that computer software was used to read in incident reports.  Dr. Guha testified that he was not able to read all of the computer reports but he could not state how many of the incident reports that could not be read by his computer program.

EXHIBIT 3

Guha testified that he did not distinguish between discretionary and non-discretionary arrests when he performed his tabulations and summaries.

> Q. Do you have any information as to which of those offense codes are considered mandatory or discretionary from the standpoint of the officer making the arrest?
>
> MS. SIVASHANKER: Objection to form.
>
> A. No, I don't have an opinion on that.[16]

40.      Arrests that result from citizen calls to MCSD further illustrate how Dr. Guha's failure to account for the underlying factors in the arrest data makes his census benchmarking and arrest data tabulations and summaries useless in this case.  Citizen calls to MCSD for assistance, or what is typically referred to as 'calls for service', can occur when individuals call MCSD to report criminal activity of some sort.  It is generally acknowledged that if an officer is called to a location and observes criminal activity then an arrest can possibly occur.   Accordingly, if certain areas place more calls for MCSD services, it is likely that those areas will have more arrests regardless of the race of the citizens in that area.   The general population-based census benchmark that Dr. Guha uses in his tabulations do not account for this empirical fact.   Dr. Guha's deposition testimony indicates that he did not make adjustments or account for calls for service when constructing his arrest tabulations, summaries and census benchmarks.

> Q. For any offense code listed in Appendix B, did you take into account the percentage of the arrests that were a result of a call in as opposed to the sheriff's deputy just observing something when they were out and about?

---

[16] See April 18, 2018 Deposition of Dr. Guha, Pg. 157 Ln. 25, Pg. 158 Ln. 1-7

22

EXHIBIT 3

MS. SIVASHANKER: Objection to form. I think he answered.

A. I think I answered the question. That is not what that analysis is. I explained to you what a row of data is, it is data, name, sex, race, an offense code. That is what is being circulated here.

Q. And that row of data does not indicate whether it's a result of a citizen call or not, right?

MS. SIVASHANKER: Objection to form.

A. That's correct.

Q. You did not go back and look at underlying incident reports to determine if it was a result of a citizen call, did you?

A. I did not.[17]

Dr. Guha further testified:

Q. With regard to Appendix B, let's look at page 1, you see simple domestic violence down about halfway, offense code 9737 (3)?

A. Yes, I do.

Q. There were 399 total arrests, do you know what percentage of those 399 arrests were the result of a call for assistance from a person in Madison County and the sheriff's department responded as opposed to arrests just made because the sheriff's department saw something happen?

MS. SIVASHANKER: Objection to form.

A. I have not done that calculation.[18]

---

[17] See April 18, 2018 Deposition of Dr. Guha, Pg. 128 Ln. 13-25, Pg. 129 Ln. 1-10.

[18] See April 18, 2018 Deposition of Dr. Guha, Pg. 125 Ln. 3-17.

23

EXHIBIT 3

41.     MCSD Computer-Aided Dispatch (CAD) data clearly shows that the calls for police service varies throughout Madison County.   Many areas of Madison County that have a high proportion of African-American residents make a disproportionately high number of calls for police service to report crimes, such as burglary and criminal activity.   For instance, the area East of Canton that spans from approximately US-51 to MS-17 and encompasses Sharon and Farmhaven has a population that is approximately 69.5% African-American and 29.4% White according to census tract data.[19]   MCSD CAD report show that citizens in this area East of Canton make an average of 122 calls per 100 citizens in this area.

42.     In contrast, the area in Eastern Madison County that spans from US-51 to Rice Road has a population that is approximately 10.9% African-American and 81.8% White.[20]   MCSD calls for service show that citizens make an average of two calls per 100 citizens in this area.   The pattern of disproportionately higher number of calls for service from African-American areas of Madison County is evident throughout the underlying data that Dr. Guha utilizes in his declaration and summary tabulations.

43.     This pattern is even more pronounced for more serious property and personal crimes, such as burglary, assault, and murder.   The disproportionately higher number of calls for service from African-American areas, and the likely higher level of arrests that result from those calls from service, is clearly a factor that MCSD, or any police agency, does not control.   Dr. Guha's tabulations, which does not account for these factors, do not provide the court with any insights in this case.

---

[19] Census Tract 309

[20] Census Tract 302.02

24

EXHIBIT 3

44.     Finally, Dr. Guha inappropriately double counts arrests and citations throughout his tabulations.   Dr. Guha's double counting can, and does, produce any number of inaccuracies and nonsensical calculations.   In Dr. Guha's analysis, when an individual is arrested by MCSD Dr. Guha counts each separate offense that the person is charged with as a separate arrest.   For instance, if an officer stops a person for making an improper turn and then finds that the individual is driving under the influence of alcohol and subsequently arrests him for DUI, Dr. Guha's analysis double counts this one arrest as two arrests.   In his data tabulation, Dr. Guha will show one arrest for DUI and one arrest for improper turn.   This problem is magnified in Dr. Guha's tabulations, since some of the offenses listed on the jail docket that Dr. Guha defines as an arrest were carried over from a previous arrest or run-in with law enforcement.

> Q. If I'm pulled over at a traffic stop and I'm arrested on a certain date at a certain time for possession of marijuana and I'm charged with that offense code, and I'm also charged with not having a driver's license, and I'm also charged with not having my seatbelt on and I'm also charged with distribution of drugs based upon an outstanding warrant, would you count that as four arrests or one arrest?
>
> MS. SIVASHANKER: Objection to form.
>
> A. That would be four rows in the data. Those would not be removed. All four rows would remain in the data set because the offense codes are different.
>
> Q. Even though I was just arrested one time?
>
> MS. SIVASHANKER: Objection to form.
>
> A. Yes.[21]

---

[21] See April 18, 2018 Deposition of Dr. Guha, Pg. 105 Ln. 4-24.

**EXHIBIT 3**

45.     Equally as troubling, Dr. Guha's tabulations double count instances where multiple arrests for the same offense occurred during the adjudication process. Dr. Guha treats each of these arrests during the different stages of the adjudication process as separate unique arrests, even though they are for the same offense.  For instance, consider a person who is arrested for an offense in 2014, bailed out of jail, failed to appear in court, and is subsequently re-arrested for the initial offense in 2015. Dr. Guha's tabulations double count this instance and include the actual arrest for the offense in 2014 and an a separate, and clearly incorrect, arrest for the offense in 2015.

Q. Let's say I get arrested for aggravated assault and I'm taken to the jail and an entry is made in the jail docket and I bail out and then I get indicted and I'm arrested and another entry is made in the jail docket and I bail out again and then I get convicted and I'm arrested post-conviction and another entry is made in the jail docket. Would your data treat that as a duplicate, those three instances as a duplicates or would you treat it as three separate arrests?

MS. SIVASHANKER: Objection to form.

A. I think that depends on what the jail docket does with it. If it is all linked back to the original offense which in your example was aggravated assault, as I answered previously what I don't know is that when this particular data set a generated there are three arrests now, but they all pertain to one offense. What I don't know is whether in the data that I get, is that still one row of data or is three rows of data. The way the data is given to us it is not duplicate. As long as the dates are different that automatically is not clean. So it would remain in our data. What I don't know is if the way the jail docket generates this data set is if it treats it as one row of data. I would not do anything to remove the latter in your hypothetical example.

Q. Because they had different dates?

26

EXHIBIT 3

A. Correct.[22]

**Dr. Guha's tabulations of MCSD citation data is uninsightful**

46.    Dr. Guha's tabulations of MCSD citation data is similarly flawed and provide no useful insights to help the Court examine the contents of that data.  As with arrest, Dr. Guha's citation tabulations compare the racial distribution of the individuals who received citations for traffic violations such as speeding, careless driving, and improper equipment.   Dr. Guha uses the general population of people of all ages in Madison County as his Census benchmark for the citation tabulations that he presents in his declaration.  In brief, Dr. Guha's tabulations do not distinguish between the overall Madison County population and the actual relevant driving population in Madison County.  The census benchmarking methodology that he uses is not generally accepted among researchers as reliable and has been the subject of intense criticism and rebuke for over 15 years.[23]   These issues are discussed in more detail in this section of the report.

47.    Specifically, comparing the racial distribution of the MCSD citations rate to the overall population in Madison County is simply wrong.  It is a well established fact that the potential driving population in any given city or county at any given point in time can be substantially different from the overall population in the city or county.  This fact is particularly magnified in a county that is as diverse as Madison County.  Even a casual but closer look at the general census population data that Dr. Guha utilizes in his

---

[22] See April 18, 2018 Deposition of Dr. Guha, Pg. 113 Ln. 6-25, Pg. 114 Ln. 1-13.

[23] See "By the Numbers: A Guide for Analyzing Race Data from Vehicle Stops", Fridell (2004).

27

**EXHIBIT 3**

tabulations, shows that the potential driving population is substantially different if one were to take into account even basic and generally accepted factors such as geographic location, vehicle availability, and driving age.

48.     In his analysis, Dr. Guha uses a census benchmark of 38.4% for the African-American Madison County population in his tabulation.  In contrast to Dr. Guha's tabulations, there is substantial variation within the Madison County racial demographics that is not reflected in the aggregated average population statistics that he uses in his summary tables.   For example, there are is a substantially larger percentage of African-Americans residing in Camden and the surrounding area (postal code 39045) than would be suggested by Dr. Guha's rudimentary census population benchmark.   A look at the data shows that over 90.8% of the population is African-American, and not 38.4% as Dr. Guha assumes in his comparisons, in the Camden area.  Accordingly, it is reasonable to expect that the number of citations given to African-Americans could be higher in areas where there are more African-American drivers on the road all other factors being equal.

49.     The problems with Dr. Guha's tabulations are compounded by his failure to account for even basic factors such as potential vehicle availability rates or even driving age in his analyses.  Clearly, as Dr. Guha does in his summary declaration, including individuals who are not of driving age in an analysis of traffic citations is inappropriate.  Factors related to commuting patterns and the time of day of the stop further underscore the lack of reliability of Dr. Guha's tabulations.

28

EXHIBIT 3

50.     Dr. Guha compounds these problems by using an artificial census population baseline that is not even based on the year that the citation was issued. According to his declaration, he bases his calculations of the Madison County population on the population of the county as of July 1, 2016.  He then uses this census benchmark to compare the different types of citations for all years from 2012 to 2017.  It is well known that counties and cities, and their sub areas, are generally not static in population as Dr. Guha's census benchmark suggests.  Some areas of Madison County have gained more African-American residents while others have experienced a decrease in African-American inhabitants.

51.     In short, Dr. Guha makes no attempt to compare the racial distribution of the citations issued by MCSD to the racial distribution of the motorists who are actually driving on Madison County roads and potentially are at risk of receiving a citation.  Instead of comparing citations to the actual traffic on Madison County roads, Dr. Guha's tabulations compare the citations to population data of all ages who live in Madison County.  The literature in this area of research is abundant and clearly states that citations need to be compared to the population at risk of being cited and not the general population at large.[24]

**Conclusions**

---

[24] The literature also indicates there are differences in traffic behavior and use of safety equipment between different racial/ethnic groups. See for example (1) Hamdan, Huda, 2013, "Racial/Ethnic Differences in Fatality Rates from Motor Vehicle Crashes: An Analysis from a Behavioral and Cultural Perspective", (2) "Race and Ethnicity in Fatal Motor Vehicle Crashes 1999 - 2004: NHTS Technical Report", 2016.

**EXHIBIT 3**

52.     In sum, it is my opinion that Dr. Guha's arrest and citation tabulations provide no useful insights in this case.  In contrast to his assertions, the data summaries and tabulations that Dr. Guha presents are not objective, generally accepted calculations designed to help "the Court to examine the contents of these data and document sets."  Instead, Dr. Guha is clearly performing a statistical analysis of MCSD data based on census benchmarks, assumptions, and methodologies that he has chosen to employ in this case.  Dr. Guha's tabulations and summaries are clearly designed to create the impression that African-Americans are disproportionately arrested and cited by MCSD.  However, as was discussed, Dr. Guha provides no context or understanding of the underlying data to help the Court understand his tabulations and summaries of MCSD arrest and citations data.  The census benchmarking methodology that Dr. Guha explicitly states that he is utilizing to summarize the data in this case has been debunked by law enforcement and police racial profiling researchers for years.

Dwight D. Steward

30

**EXHIBIT 3**

**Exhibit A: Curriculum Vitae**

EXHIBIT 3



**employstats**

Economic & Statistical Research
Employment I Wage & Hour I Damages

Dr. Dwight Steward is an expert in the economic and statistical analysis of labor and employment related issues. He has experience in cases involving employment discrimination, wage and hour, lost earnings, and lost profits litigation.

As an expert witness, he has authored hundreds of reports, been deposed in over 200 cases and testified in over 60 trials. He has also testified in hearings, arbitrations, city council meetings, and before the Texas State legislature.

Dr. Steward writes regularly on employment related issues and frequently speaks to economic and legal professional groups. Dr. Steward's research on the statistical analysis of police racial profiling has received national attention. Dr. Steward has also taught in the University of Texas in the Department of Economics and the Red McCombs School of Business and in the College of Business at Sam Houston State University. He has taught numerous courses in statistics, labor economics, corporate finance, business policies, and the economics of the firm (microeconomics).

**Dwight Steward, Ph.D.**
**Economist and Statistician**

*EDUCATION*

Ph.D., Economics, University of Iowa; Dissertation title: 'Bank Mergers and Managerial Efficiency'

B.A., Economics, University of Texas at Austin; earned U.S. Army Officer Commission – Field Artillery

*SELECTED ACTIVITIES*

Visiting Scholar, University of Texas at Austin, Department of Economics, 2011-2012

President, University of Texas Army ROTC Alumni Association (Caissons), 2007-2009

Fellow, Texas Labor and Employee Relations Consortium, 2011 to present

Member, American Economic Association, Society for Human Resource Management, and National Association of Forensic Economists

Member, Beta Gamma Sigma Business Honor Society

Dissertation Scholar Fellow, Federal Reserve Bank of Atlanta, 1995

Field Artillery Officer, U.S. Army Reserve, 1990-1998, Honorably discharged; rank of First Lieutenant

*EMPLOYMENT*

Principal, EmployStats, 2008-present

Senior Lecturer, University of Texas at Austin, Department of Economics, 2010-2013, 1997-2003

Practice Director, Econ One, 2005-2008

Principal, Steward Research Group, 1997-2005

Senior Lecturer, University of Texas at Austin, Department of Economics, 1997-2003

Visiting Assistant Professor, College of Business, Sam Houston University, 1997-1999

Economist, Welch Consulting, 1995-1997

(512) 476-3711          dsteward@employstats.com          (650) 681-4359
Austin, TX                    www.employstats.com              Palo Alto, CA

Expert witness testimony list, full listing of speaking engagements, and writings available on request

**EXHIBIT 3**



# Expert Witness Testimony Listing
# Dwight Steward, Ph.D.

Balapuwaduge Mendis, on his own behalf and on behalf of all others similarly situated v. Schneider National Carriers, Inc., a Nevada Corporation, United States District Court Western District of Washington, deposition testimony February 2018.

Richard Patton v. Houston Independent School District, In the District Court of Harris County, Texas 295th Judicial District, deposition testimony January 2018.

Mandy Thompson and Kevin Torrez, individually and as next friends and representatives of Ayden Torrez, a minor v. St. David's Healthcare Partnership, L.P., LLP, d/b/a St. David's Medical Center; Jeff E. Hagen, M.D.; Jeff E. Hagen, M.D., P.A., d/b/a Austin OBGYN; and Maria E. Gutierrez, RNC, NP, MSN, In the District Court Travis County, Texas 353rd Judicial District, deposition testimony January 2018.

Jose Luis Alcantar, on behalf of himself and all others similarly situated v. Hobart Service, Hobart Food Equipment Group, Itw Food Equipment Group, LLC, and Does 1 through 100, inclusive, United States District Court, Central District of California, deposition testimony December 2017.

Karen Cunningham, Individually, as Heir at Law, and as Representative of the Estate of Steven Cunningham, Deceased; Sami Staley; Beatrice Cunningham; Jonathan Vigil; Andrew Tkaczyk; Zachary Johnson; James Riley; Timothy Irons; Charles Billings; Nathan Wilden; Christopher Davis; and Armando Cardona; and Daniel Luppino v. Nikki Hoke, as Representative of the Estate of Gregory M. Hoke, Deceased; Bordur Studios Coach Leasing LLC; and Big Sexy Grey Bus LLC; and Nikki Hoke, Individually, as Representative of the Estate of Gregory M. Hoke, Deceased, and as Next Friend of E.H. and H.H., minor children of Gregory M. Hoke, Deborah Hoke, Individually, and Russel Hoke, Individually v. Bridgestone Americas Tire Operations, LLC, a foreign Company which is the successor to Bridgestone/Firestone North American Tire, LLC, In the District Court of Hudspeth County, Texas 394th Judicial District, deposition testimony November 2017.

Jose F. Andino, individually and on behalf of himself and others similarly situated v. Kaiser Foundation Hospitals, a California Corporation, and Does 1 through 100, inclusive, Superior Court of the State of California For the County of Alameda, deposition testimony October 2017.

Jeffrey Fadness v. Charter Communications, Inc., In the District Court Travis County, Texas 261st Judicial District, deposition testimony October 2017.

Paris Shoots, Jonathan bell, Maxwell Turner, Tammy hope, Phillipp Ostrovsky, Brenda Brandt, Anissa Sanders, Najai McCutcheon, and Leticia Rodriquez, on behalf of themselves, the Proposed Rule 23 Classes and others similarly situated, v. IQOR Holdings, Inc., United States District Court District of Minnesota, deposition testimony August 2017.

EXHIBIT 3

Timothy K. Sargis and Dawn M. Sargis, Individually and as Next Friends of Madisyn Marie Loher, A Minor and as Personal representatives of the Estate of Michelle Loher, and Gary S. Loher, II v. HS Centex Trucking, LLC, Kevin Clay and USAA General Indemnity Company, In the District Court Coryell County, Texas 52nd Judicial District March 2017.

Stacey Burkhart and Brandon Burkhart Individually and As Parents and Next Friends of Austin Burkhart, a Minor v. United Regional Health Care System, Inc. d/b/a United Regional Hospital, United Regional Hospital, Texoma Women's Clinic, P.A. d/b/a The Women's Center, and Lawrence Y.H. Young, M.D., In the District Court 78th Judicial District Wichita County, Texas November 2016

Troy Slack, Jacob Grismer, Richard Erickson, Scott Praye, Gary H. Roberts, Robert P. Ullrich, Henry Ledesma, Timothy Helmick, Dennis Stuber, Eric Dublinkski, Sean P. Forney v. Swift Transportation Co., of Arizona, LLC., United States District Court Western District of Washington at Tacoma, deposition testimony November 2016

Richard Trusz v. UBS Realty Investors LLC and UBS AG, United States District Court District of Connecticut, deposition testimony September 2016

Amy L. Schneider and Janet E. Breneman, individually and on behalf of others similarly situated, v. Union Hospital, Inc., United States District Court Southern District of Indiana Terre Haute Division, deposition testimony June 2016

Corey Khansari, Debra Khansari and Michael Khansari v. The City of Houston, Chief of Police Charles A. McClelland, Jr., Officer William E. Rutherford, Officer Candace M. Bradshaw Vaughn, Officer Jillian McGowan, Officer Maria Hernandez, Officer Sean Hunter, Officer Jorge Luis Herrera, and Officer Walter Gaw, United States District Court Southern District of Texas Houston Division, trial testimony April 2016

Donald and Mary Trichel, individually and as Next Friends of Nicholas Trichel v. Union Pacific Railroad Company and Jeremy Ray Hampton, In the District Court of Harris County, Texas 125th Judicial District, deposition testimony April 2016

Virginia Nester and Robert Scott Nester, Individually and As Next Friends of C.N. and S.N., Minors v. Textron, Inc. d/b/a E-Z-GO United Rentals, Inc. f/k/a RSC Holdings, Inc. and/or RSC Equipment Rental, In the United States District Court for the Western District of Texas Austin Division, trial testimony March 2016

Chris Elliott O/B/O Himself and O/B/O All Other Similarly Situated, v. Schlumberger Technology Corporation and Schlumberger Limited (Schlumberger N.V.), United States District Court for the District of North Dakota Southeastern Division, deposition testimony March 2016

United States of America, ex rel. Louis Scutellaro v. Capitol Supply, Inc., United States District Court District of Columbia, deposition testimony February 2016

Monica Hague v. University of Texas Health Science Center at San Antonio, In the United States District Court for the Western District of Texas San Antonio Division, trial testimony January 2016

**EXHIBIT 3**

Arleen Delaronde v. Legend Classic Homes, Ltd., Bella Vista C.M.I., Ltd., In the United States District Court for the Southern District of Texas Houston Division, trial testimony December 2015

Genoveva Guzman and Abel Ochoa, Individually and as Parents and Next Friend of Maria Guadalupe Ochoa v. Tenet Healthcare Corporation, Hughan Frederick, M.D., Isis Obstetrics & Gynecology, LLC, A. Ellery, RN, North Fulton Hospitalist Group, LLC D/B/A North Fulton Regional Hospital A/K/A Tenet North Fulton Hospital, and John Does 1-10, In the State Court of Fulton County, State of Georgia, deposition testimony September 2015

Jose Arellano and Juan Montoya, individually, and on behalf of all others similarly situated v. Container Connection of Southern California, Inc., a California Corporation; and Does 1 through 100, Superior Court of the State of California for the County of Los Angeles, deposition testimony September 2015

Monica Hague v. University of Texas Health Science Center at San Antonio, In the United States District Court for the Western District of Texas San Antonio Division, deposition testimony August 2015

Jesus Holguin, Individually and o/b/o The Estate of Maria E. Holguin, Deceased, Estevan A. Gonzales, Jesus Ramon Holguin and Kassandra M. Holguin, Minor Children v. Baptist St. Anthony Health System, In the District Court of Potter County, Texas, deposition testimony July 2015

Mark Virant v. Encana Oil & Gas (USA), Inc. and Eric Marsh, Individually, In the District Court of Tarrant County, Texas 153 Judicial District, deposition testimony July 2015

Fred Devries, Ruby Teich, Janine Natoli, Rafael Santiago, Mark Malter, Adam Schwartz, individually and on behalf all others similarly situated v. Morgan Stanley & Co. LLC, f/k/a Morgan Stanley & Co. Incorporated, Morgan Stanley Smith Barney LLC, and Morgan Stanley, In the United States District Court for the Southern District of Florida, deposition testimony July 2015

Virginia Nester and Robert Scott Nester, Individually and As Next Friends of C.N. and S.N., Minors v. Textron, Inc. d/b/a E-Z-Go, United Rentals, Inc. f/k/a RSC Holdings, Inc. and/or RSC Holdings, Inc. and/or RSC Equipment Rental, In the United States District Court for the western District of Texas Austin Division, deposition testimony June 2015
Lisa Rindfleisch, Tiffany Melendez, Michelle Gentile, Laurie Baker and Christina Nelmes, on behalf of themselves and other similarly situated, v. Gentiva Health Services, Inc., In the United States District Court for the Eastern District of New York, deposition testimony June 2015

Karen Oubre, Individually and o/b/o The Estate of Larry Oubre, Deceased v. Kyle Mezger, M.D.; Christopher Thu, M.D.; and Capitol Anesthesiology Association, In the District Court of Travis County, Texas 126th Judicial District, Texas deposition testimony May 2015

Weird Times, LLC v. Sharon Ma and Doug Ma, In the District Court 353rd Judicial District Travis County, Texas, trial testimony March 2015

**EXHIBIT 3**

Armida Rodriguez and Chea Hill, individually, and on behalf of all other similarly situated and on behalf of the general public, vs. Burlington Coat Factory Warehouse Corporation, a New Jersey Corporation; Burlington Coat Factory of California LLC, a California Limited Liability Company; and Does 1 through 50, inclusive, United States District Court - Central District of California, deposition testimony February 2015

Guang Tian, Yan Nie, Jing Jian Wu, Zhen Sheng Yin, Tie Quan Ma, as individuals, and Ming Fang Tie, Yu Hong Chang, Yi Wu, Bao Jie Zhang, Chao Hui Liu, on Behalf of Themselves and all others similarly situated, and Christopher Cavaliere and Steven Lee, on behalf of themselves and as PAGA representatives v. Ma Laboratories, Inc., Abraham C. Ma, also known as Chih Keng Ma, and Christine Rao, also known as Ruiting C. Rao, Superior Court of the State of California County of Santa Clara Unlimited Jurisdiction, deposition testimony January 2015

Uzoamaka Enezuagu; Yoseph Awlachew; Kiflom Birhane; Desalgne Zema; Simon Gebrekiros; Jacqueline Jackson; Abebech Kassie; Abdou Ouedraogo; Raquel Pryce-King; Ephrem Tessema; Yonas Woldemicael; Shamara Wright; Helen Zegeye; Alemayehu Zeleke; Jekeia Sledge; Ann-Marie Glanville; Alex Garrett; Sara Kebeta; Getnet Retta; Emmanuel Vincent; Tatek Zema v. Board of Trustees of the University and Does 1 through 10 inclusive, Superior Court of the District of Columbia Civil Division, deposition testimony November 2014

Sergio Gutierrez, an individual; Hector Salazar, an individual, both individually on behalf of themselves and on behalf of all other similarly situated current and former employees of Defendant Commerce Casino v. California Commerce Club, Inc. doing business as Commerce Casino, and Does 1 through 50, inclusive, Superior Court of the State of California for the County of Los Angeles, deposition testimony November 2014

Yvette Anderson, et al., v. County of Ventura; and Does 1-10, inclusive, United States District Court, Central District of California, deposition testimony July 2014

Jesus Castro Romo v. The United States of America, United States District Court, District of Arizona, trial testimony July 2014

Ngan Huynh and Tuan M. Nguyen Individually and As Parents, Legal Guardians and Next Friends of Jonathan Nguyen, A Minor v. St. David's Healthcare Partnership, L.P.; LLP Individually and d/b/a St. David's North Austin Medical Center a/k/a North Austin Medical Center; Round Rock Hospital, Inc.,; St. David's Foundation p/k/a St. David's Health Care System, Inc.,; Renaissance Women's Group, P.A.; Tara A. Mills, M.D.; Devin M. Garza, M.D.; Kristen Barkow a/k/a Kristen Calnan, NP, In the District Court Travis County, Texas, 200th Judicial District, deposition testimony July 2014

Veronica Ochoa Valenzuela and Cesar De Viana, husband and wife v. Ford Motor Company, a Foreign Corporation, In the United States District Court for the District of Arizona, trial testimony May 2014

Johnson, et al v. York Claims Service, Inc., Superior Court of the State of California in and for the County of Sacramento, trial testimony May 2014

Michael Mercieca v. Tracey Rummel, and Microsoft Corporation, In the District Court 353rd Judicial District Travis County, Texas, trial testimony May 2014

**EXHIBIT 3**

Johnson, et al v. York Claims Service, Inc., Superior Court of the State of California in and for the County of Sacramento, deposition testimony April 2014

Yadira Hernandez v. R.E.S.A., Inc., d/b/a Keller Williams Realty and Carolina Salcedo Cuevas, In the District Court 131st Judicial District, Bexar County, Texas, trial testimony April 2014

Charles E. Amos, II v. Plan Administrator of Orion Healthcorp, Inc., Employee Benefit Plans, Orion Healthcorp, Inc., Employee Benefit Plans, Orion Healthcorp, Inc., RMI Physician Services Corporation, Chi T. "Cindy" Luu, Kimberly Singleton, RMI Physician Services Corporation Employee Benefit Plans, Plan Administrator of RMI Physician Services Corporation Employee Benefit Plans, In the United States District Court for the Southern District of Texas Houston Division, deposition testimony April 2014

Gerald Bramlett, v. Dimensional Investment LLC before the American Arbitration Association, Austin, Texas, arbitration testimony February 2014

Gerald Bramlett, v. Dimensional Investment LLC before the American Arbitration Association, Austin, Texas, deposition testimony December 2013

Renee M. Hawkins, Individually and on behalf of others similarly situation v. Alorica, Incorporated, United States District Court for the Southern District of Indiana Terre Haute Division, deposition testimony December 2013

Jodi Soukup, Individually, and as Parent, Legal Guardian and Next Friend of Ryan Burford, A Minor v. Methodist Healthcare Ministries of South Texas, Inc. d/b/a Southwest Texas Methodist Hospital, and/or d/b/a or a/k/a/ Methodist Hospital; Columbia/HCA Healthcare Corporation of Central Texas; Methodist Healthcare Ministries of South Texas Inc.; Patricia K. Brougher, M.D. and Patricia K. Brougher, M.D., P.A., In the District Court 45th Judicial District Bexar County, Texas, deposition testimony December 2013

Ben Deason v. Jennifer Newsom, in the 145th District Court in and for the County of Nacogdoches County, Texas, deposition testimony October 2013

Tracy Windrum, Individually, as representative of the Estate of Lancer Windrum, and on behalf of her minor children Bethany Windrum, Jacob Windrum, and Holly Windrum v. Victor Kareh, M.D., Harpaul Gill, M.D., North Cypress Medical Center, North Cypress Medical Center Operating Company, GP, LLC, North Cypress Medical Center Operating Company, LTD and Coresource, Inc., In the District Court of Harris County, Texas, 133rd Judicial District, trial testimony October 2013

Victoria "Anna" Janssen v. O'Reilly Automotive Stores, Inc., In the United States District Court for the Northern District of Texas Wichita Falls Division, Wichita Falls, Texas, trial testimony September 2013

Denise K. Aguilar v. St. David's Healthcare Partnership, LP, LLC d/b/a South Austin Medical Center, American Arbitration Association, Austin, Texas, deposition testimony August 2013

Deann Hojnacki v. Trisun Healthcare, LLC, Arbitration Austin, Texas, deposition testimony August 2013

**EXHIBIT 3**

Yadira Hernandez v. R.E.S.A., Inc., D/B/A Keller Williams Realty and Carolina Salcedo Cuevas, In the District Court 131st Judicial District, Bexar County, Texas, deposition testimony May 2013

Y. Hoang Do, M.D.  v. Texas Health and Human Services Commission, Office of Inspector General, Before the Health and Human Services Commission Appeals Division, Travis County, Texas, trial testimony May 2013

David Meyer, Individually and o/b/o The Estate of Doreen Rae Meyer, Deceased, Sunny Ruud, Brandy Cebula, and Jon Novitsky o/b/o Krystin Novitsky, Minor Child v. Stephen Bodi, P.A. and M.D.'s Cyber Clinic, P.A. D/B/A Northwest Diagnostic Clinic, In the District Court of Williamson County, Texas 368th Judicial District, deposition testimony March 2013

Instant Technology, LLC, an Illinois Limited Liability Company, v. Elizabeth Defazio, Laura Rehn, Megan Marker, Bethany Meek, Erin Bauer, Joel Katz, Andrea Katz, individuals and Connect Search, LLC, a Delaware Limited Liability Company, In the United States District Court for the Northern District of Illinois, Eastern Division, deposition testimony January 2013

United Biologics, LLC, D/B/A United Allergy Labs & Nicolas Hollis v. Texas Allergy, Asthma and Immunology Society; Stuart L. Abramson, MD, PHD; Wesley W. Stafford, MD; Theodore M. Freeman, MD; William R. McKenna, MD and Michael P. Vaughn, MD, PHD, In the District Court of Travis County, Texas 353rd Judicial District, deposition testimony January 2013

Lisa Rindfleisch, Tiffany Melendez, Michelle Gentile, Laurie Baker and Christina Nelmes, on behalf of themselves and others similarly situated, v. Gentiva Health Services, Inc., In the United States District Court Northern District of Georgia Atlanta Division, deposition testimony January 2013

Jose Luis Alcantar, on behalf of himself and all others similarly situated v. Hobart Service, et al., United States District Court for the Western District of Texas, deposition testimony January 2013

Certain Underwriters at Lloyd's London and Professional Liability Insurance Services, Inc. v. IMA of Kansas, Inc., In the District Court of Travis County, Texas 353rd Judicial District, trial testimony November 2012

Equal Employment Opportunity Commission v. Valero Refining – Texas LP, In the United State District Court for the Southern District of Texas Galveston Division, deposition testimony October 2012

United Biologics, LLC, Formerly d/b/a United Allergy Services, Formerly d/b/a United Allergy Labs & Nicolas Hollis v. Texas Allergy, Asthma and Immunology Society; Stuart L. Abramson, MD, PHD; Wesley W. Stafford, MD; Theodore M. Freeman, MD; William R. McKenna, MD, and Michael P. Vaughn, MD, PHD., In the District Court of Travis County, Texas 353rd Judicial District, deposition testimony October 2012

Y. Hoang Do, M.D. v. Texas Health and Human Services Commission, Office of Inspector General, before the Health and Human Services Commission Appeals Division, Texas, deposition testimony October 2012

Xochitl Segovia, v. Williams Brothers Construction Company, Inc., In the District Court of Harris County, Texas 333 Judicial District, trial testimony August 2012

EXHIBIT 3

ADP, Inc., a Delaware Corporation v. National Merchant Alliance, LLC, a Nevada Limited Liability Company, United States District Court for the Western District of Texas, deposition testimony June 2012

Dustin R. Thompson, v. J4 Development, LP, In the District Court of Travis County, Texas 200th Judicial District, deposition testimony June 2012

Certain Underwriters at Lloyd's London and Professional Liability Insurance Services, Inc. v. IMA of Kansas, Inc., In the District Court of Travis County, Texas 353rd Judicial District, deposition testimony May 2012

James R. Irion, III and Veniece M. Irion v. Sunrise Senior Living Management, Inc., D/B/A Brighton Gardens of Austin; and Prime Care Seven, LLC D/B/A Brighton Gardens of Austin, United States District Court Western District of Texas Austin Division, deposition testimony May 2012

Elsa Ortega on behalf of S.L.O. and J.L.O. minors, et al v. United States of America, Jose Vicente Gaytan-Alcaya, et al, v. United States of America; Elsa Ortega and John Doe Ortega, Husband and Wife, In the United States District Court for the District of Arizona, deposition testimony April 2012

William Kierre v. Gerry Lawler, M.D. and Hendrick Anesthesia Network, In the District Court of Taylor County 104th Judicial District, trial testimony April 2012

Dawn Leamon, v. KBR, Inc.; et al, In the United States District Court for the Southern District of Texas Houston Division deposition, testimony April 2012

Wilson Industries, L.P., v. Select Energy Services, LLC; and Bell Supply, LLC; In the District Court of Ector County, Texas 244th Judicial District, deposition testimony March 2012

Debra Nicholas v. San Antonio Water System, In the District Court 57th Judicial District Bexar County, Texas, trial testimony March 2012

Lielonnie R. Lewis v. Save Mart Supermarkets and Does One through Fifty, inclusive, Superior Court of the State of California in and for the County of Alameda, deposition testimony February 2012
Flordeliza Escano, Marila P. Maximo, Joel T. Catublas, and Penny Burney, on behalf of themselves and behalf of all other similarly situated, v. Kindred Healthcare Operating, Inc., a Delaware Corporation, Kindred Healthcare, Inc., a Delaware Corporation, Specialty Hospitals of Southern California, a business form unknown, and Does 1 through 100, United States District Court Central District of California (Western Division – Los Angeles), deposition testimony February 2012

Anthony Stout, on behalf of himself and others similarly situated, v. Universal Ensco, Inc., United States District Court Southern District of Texas Houston Division, deposition testimony November 2011

Lashone Purnell, as an individual and on behalf of all employees similarly situated, v. Sunrise Senior Living Management, Inc., and Does 1 through 50, inclusive, United States District Court Central District of California Southern Division, deposition testimony August 2011

**EXHIBIT 3**

Jamie Leigh Jones v. Halliburton Company d/b/a KBR Kellogg Brown & Root (KBR); Kellogg Brown & Root Services, Inc.; Kellogg Brown & Root International Inc.; Kellogg Brown & Root, LLC; Kellogg Brown & Root, Inc.; Kellogg Brown & Root Inc.; Kellogg Brown & Root, S. de R.L.; Kellogg Brown & Root (KBR), Inc.; KBR Technical Services, Inc.; Overseas Administrative Services, Ltd.; Eric Iler, Charles Boartz; Several John Doe Rapists and the United States of America, In the United States District Court for the Southern District of Texas (Houston Division), trial testimony June 2011

Debbie Goodwill, Individually and on Behalf of the Estate of Larry Goodwill, Cody Goodwill, and Wendy Christian v. United Parcel Service, Inc., et al, In the U.S. District Court for The Western District of Texas Austin Division, trial testimony June 2011

Veronica Ochoa Valenzuela and Cesar De Viana, husband and wife v. Ford Motor Company, a Foreign Corporation, In the United States District Court for the District of Arizona, deposition testimony May 2011

Jamie Leigh Jones v. Halliburton Company d/b/a KBR Kellogg Brown & Root (KBR); Kellogg Brown & Root Services, Inc.; Kellogg Brown & Root International Inc.; Kellogg Brown & Root, LLC; Kellogg Brown & Root, Inc.; Kellogg Brown & Root Inc.; Kellogg Brown & Root, S. de R.L.; Kellogg Brown & Root (KBR), Inc.; KBR Technical Services, Inc.; Overseas Administrative Services, Ltd.; Eric Iler, Charles Boartz; Several John Doe Rapists and the United States of America, In the United States District Court for the Southern District of Texas (Houston Division), deposition testimony May 2011

Michael L. Collier, Ph.D. v. Texas Tech University and John Whitmore in his Official Capacity, In the District Court 99th Judicial District Lubbock County, Texas, trial testimony May 2011

Debbie Goodwill, Individually and on Behalf of the Estate of Larry Goodwill, Cody Goodwill, and Wendy Christian Plaintiffs, Cecelia Center, Individually and as Administrator of the Estate of George Reagan Center Intervenors, v. United Parcel Service, Inc., Tire Centers, LLC d/b/a TCI, and The Goodyear Tire & Rubber Company, In the United States District Court for the Western District of Texas Austin Division, deposition testimony March 2011

Albert Kevin Martin, A/K/A Kevin Martin v. City of San Antonio and Its Agent, San Antonio Water System, In the District Court 224th Judicial District, Bexar County, Texas, trial testimony February 2011

Delanie Ney, v. iProfile, LLC, Accord Human Resources, Inc. Virgo Capital Fund I, LP, Hemanth Parasuram, Guhan Swaminathan and Arun Prakash, Arbitration Cause No. 701600042810, Austin, Texas, arbitration testimony January 2011

State of Texas ex rel., Ven-A-Care of the Florida Keys, Inc. v. Alpharma USPD f/k/a Barrenational, Inc., Purepac Pharmaceutical Co., Actavis Mid Atlantic LLC, Actavis Elizabeth LLC, Barr Pharmaceuticals, Inc., Barr Laboratories, Inc., Duramed Pharmaceuticals, Inc., Pliva, Inc. f/k/a Sidmak Laboratories, Inc., Odyssey Pharmaceuticals, Inc., PAR Pharmaceutical, Inc., PAR Pharmaceutical Companies, Inc., Watson Pharmaceuticals, Inc., Watson Pharma, Inc. f/k/a Schein Pharmaceutical, Inc., Rugby Laboratories, Inc., Oclassen Pharmaceuticals, Inc., Marsam Pharmaceuticals, Inc., and Andrx Pharmaceuticals, Inc., In the District Court of Travis County, Texas, 419th Judicial District, trial testimony, January 2011

**EXHIBIT 3**

Kevin Blackwell and Amber Blackwell, Individually and As Next Friend of K.B. and S.B., Minors v. Nissan Motor CO., LTD. And Nissan North America, Inc., In the United States District Court for the Eastern District of Texas Beaumont Division, deposition testimony January 2011

Nicholas Tableriou, Individually, and as Administrator of the Estate of Jane Tableriou, Deceased, Nicole Tableriou, and Brett Tableriou v. John Marsden, M.D., Marsden One GP, LLC, Marsden One, LTD., Marsden Management, LLC, and The American Institute of Gastric Banding, LTD., D/B/A True Results, In the District Court Travis County, Texas 261st Judicial District, deposition testimony October 2010

Prudence Adams v. Centex Freight Lines, LLC, In the District Court Travis County, Texas Judicial District, trial testimony October 2010

Jeanette Eberhart; Hamilton Beaux O'Keady-Elicock; Howard Hill; and Philip Marc Orlow v. Frye Claims Consultation and Administration, Inc. a California Corporation, In the Superior Court of the State of California, Alameda County, deposition testimony September 2010

Shaunetta Eddings, individually and on behalf of a class of similarly situation individuals, v. Health Net, Inc., In the United States District Court for the Central District of California, deposition testimony September 2010

Equal Employment Opportunity Commission and Connie Beseda, v. Zachry Industrial, Inc. (San Antonio) F/K/A Zachry Construction Corporation, (San Antonio), In the United States District Court for the Western District of Texas San Antonio Division, deposition testimony September 2010

Candice Warde Rodriguez, Individually and on Behalf of Benjamin Wallace Rodriguez, a Minor, v. The United States of America, In the United States District Court, Eastern District of New York, deposition testimony August 2010

Ronica R. Tabor on behalf of herself and all others similarly situated, Dacia S. Gray on behalf of herself and all others similarly situated, v. Hilti, Inc. a Domestic For Profit Business Corporation, and Hilti of America, Inc., a Foreign For Profit Business Corporation, In the United States District Court for the Northern District of Oklahoma, deposition testimony August 2010

State of Texas ex rel., Ven-A-Care of the Florida Keys, Inc. v. Alpharma USPD f/k/a Barrenational, Inc., Purepac Pharmaceutical Co., Actavis Mid Atlantic LLC, Actavis Elizabeth LLC, Barr Pharmaceuticals, Inc., Barr Laboratories, Inc., Duramed Pharmaceuticals, Inc., Pliva, Inc. f/k/a Sidmak Laboratories, Inc., Odyssey Pharmaceuticals, Inc., PAR Pharmaceutical, Inc., PAR Pharmaceutical Companies, Inc., Watson Pharmaceuticals, Inc., Watson Pharma, Inc. f/k/a Schein Pharmaceutical, Inc., Rugby Laboratories, Inc., Oclassen Pharmaceuticals, Inc., Marsam Pharmaceuticals, Inc., and Andrx Pharmaceuticals, Inc., In the District Court of Travis County, Texas, 419th Judicial District, deposition testimony July 2010

Randall Barnett v. City of Austin, et al.; 353rd Judicial District Court, Travis County, Texas, hearing testimony May 2010

Lugo, et al., v. Farmers Pride, In the United States District Court for the District of Pennsylvania, deposition testimony May 2010

EXHIBIT 3

William Kierre v. Gary Lawler, M.D. and Hendrick Anesthesia Network, In the District Court, Taylor County, Texas, 104th Judicial District, deposition testimony April 2010

Ann Otsuka, an individual and on behalf of all others similarly situated; Janis Keefe, an individual; Corinne Phipps, and individual; Justin Kiser, an individual; and Renee Davis v. Polo Ralph Lauren Corporation; Polo Retail, LLC; Polo Ralph Lauren Corporation, doing Business in California as Polo Retail Corporation; and Fashions Outlet of America, Inc., United States District Court Northern District of California, trial testimony March 2010

Wai Chan, On behalf of herself and all others similarly situated v. Wells Fargo Financial, Inc., In the United States District Court for the Western District of Missouri, deposition testimony February 2010

Billy Petty, Edward Petty and Amanda Stewart v. Devesh Ramnath, M.D., In the District Court Administratively transferred to the 95th Judicial District Dallas County, Texas, deposition testimony February 2010

Luna v. Weddington, In the District Court of Harris County, Texas Judicial District 234, trial testimony January 2010

Ann Otsuka, an individual and on behalf of all others similarly situated; Janis Keefe, an individual; Corinne Phipps, and individual; Justin Kiser, an individual; and Renee Davis v. Polo Ralph Lauren Corporation; Polo Retail, LLC; Polo Ralph Lauren Corporation, doing Business in California as Polo Retail Corporation; and Fashions Outlet of America, Inc., United States District Court Northern District of California, deposition testimony December 2009

Mark Scherer, Doug Paslay and Hazel Bailey, individually, and on behalf of all other similarly situated v. Duke Energy Fossil-Hydro California Inc., a Delaware Corporation, and Wood Group Power Operations, Inc. A Nevada Corporation and Does 1 to 50, in the Superior Court of the State of California, County of Los Angeles, deposition testimony December 2009

Michael K. McLennan, v. Applied Materials, Inc., United States District Court Western District of Texas Austin Division, deposition testimony December 2009

Wilfredo Cruz, Matthew Allbee, Guadalupe Varela, Raul Torres, and Ken Joseph, individually and on behalf of a class of similarly situation persons, v. Unilock Chicago, Inc., an Illinois Corporation, In the Circuit Court of the Sixteenth Judicial District Kane County, Illinois, deposition testimony December 2009

Daniel Friedenbach, Individually and on behalf of all survivors of the Estate of Lorie Frazier Friedenbach, v. Gary A. Croll, in the District Court of Dallas County, Texas, 14th Judicial District, deposition testimony November 2009

Fermin Cortez, et al., v. Nebraska Beef, Inc., and Nebraska Beef, LTD., David Chuol, et al., v. Nebraska Beef, LTD., The United States District  Court For The District of Nebraska, deposition testimony November 2009

EXHIBIT 3

Jeff Gebenus and Wesley Chong, individuals, on behalf of themselves and others similarly situated v. Rite Aid Corporation, a Delaware corporation, and Thrifty Payless, Inc., a California Corporation, in the Superior Court Of Washington For King County, deposition testimony November 2009

Margaret A. Guerra v. San Antonio Water System; Pending in the 73rd Judicial District Court, Bexar County, Texas, deposition testimony September 2009

David and Esther Luna v. Lloyd Damon Weddington, M.D. and Diabetes Center of America, In The District Court Of Harris County, Texas, 234Th Judicial District, deposition testimony September 2009

Wilfredo Cruz, Matthew Albee, Guadalupe Varela And Raul Torres, Individually and on behalf of a class of similarly situated persons, v. Unilock Chicago, Inc., An Illinois Corporation, and Jonathon Harn, An Individual, In the Circuit Court Of Sixteenth Judicial District, Kane County, Illinois, deposition testimony September 2009

Kent Schmidt, v. KMS Retail-Ben White, LPKMS Retail Euless, LA, Kent Stainback, d/b/a The Stainback Organization, Pete Becerra, Jimmy Evans Company, Ltd., In The District Court, 345th Judicial District, Travis County, Texas, deposition testimony August 2009

Howard Hopkins et al, v. The First American Corporation And First American Real Estate Tax Service, In The United States District Court Of Texas, Fort Worth Division, deposition testimony July 2009

Westin Casuarina Las Vegas, Hotel, Casino & Spa v. The Coaching Center, LLC, Before The American Arbitration Association, Arbitration meeting June 2009

Billy Ray Tratree v. B.P. Pipelines, Inc., Kelley Gleason and Roy Bowden, in the United States District Court for the Southern District of Texas, deposition testimony June 2009

Kent Schmidt, v. KMS Retail-Ben White, LPKMS Retail Euless, LA, Kent Stainback, d/b/a The Stainback Organization, Pete Becerra, Jimmy Evans Company, Ltd., In The District Court, 345th Judicial District, Travis County, Texas, deposition testimony May 2009

Juan Manual Lopez-Verduzco, v. CTNA, et al Arizona Superior Court, County Of Maricopa, deposition testimony April 2009

James J. Byerlotzer v. Key Energy Services, Inc., In The District Court Of Harris County, Texas 55Th Judicial District, deposition testimony March 2009

David Liszt and Karen Liszt v. Richard B. Stovall, MD.; Luis Mignucci, MD., Individually and d/b/a Luis Mignucci, MD., P.A., and d/b/a NeuroSpine Surgical Consultants; and Medical Center of Plano; In the 219th District Court of Collin County, Texas, deposition testimony March 2009

Marie Popek, Individually and on Behalf of Those Similarly Situated, v. Allied Barton Security Services LLC, a Delaware Limited Liability Company; Allied Barton Security Services LP, a Delaware Limited Partnership; and Does 1 through 30, inclusive, Superior Court of the State of California for the County of San Francisco, CA., deposition testimony December 2008

EXHIBIT 3

Charles Heath Leiber v. IE Miller Service L.P., IE Miller-Fowler L.L.C., and Noah Charles Lawson, In the District Court 12th Judicial District of Grimes County, Texas, deposition testimony November 2008

Billy Ray Tratree v. B.P. Pipelines, Inc., Kelley Gleason and Roy Bowden, in the United States District Court for the Southern District of Texas, deposition testimony November 2008

Doris H. Gray, a married woman, v. Motorola, Inc., a Delaware Corporation, In the Superior Court in and for Maricopa County in the State of Arizona, deposition testimony November 2008

Fred Klecka v. Allstate Insurance Company and Kathleen Abed, In The District Court 37th Judicial District, Bexar County, Texas, trial testimony November 2008

Esteban Barron v. Larry Paul Hatter, Jr., And Estes Express Lines d/b/a Estes Express Lines, Inc., In The District Court, 146Th Judicial District, Bell County, Texas, deposition testimony October, 2008

UNIVAR USA, Inc., v. Stacey B. Blanton, In The District Court Harris County, Texas 61st Judicial District, deposition testimony August 2008

Pedro Gonzalez v. City Of San Antonio, Acting By And Through Its Agent, City Public Service Board d/b/a CPS Energy, In The District Court 225th Judicial District Bexar County, trial testimony, San Antonio, Texas August 2008

Charles Young v. Brand Scaffold Services, LLC, In the Eastern District Court for the Eastern District of Texas, Beaumont Division, deposition testimony June 2008.

Al Scott, Individually And As Administrator Of The Estate Of Dottie Scott, Deceased, And Susan Scott And Sherri Scott v. Sandip V.Mathur, M.D. and Abilene Regional Medical Center In The 42nd Judicial District Court of Taylor County Texas, deposition testimony April 2008

International Association Of Firefighters, LOCAL 629 AFL-CIO, et al v. City Of Monroe, in the United States District Court, Western District Of Louisiana, Monroe Division, deposition testimony March 2008

Jennifer Jarmon and, Cassius Jarmon, Individually and as Co-Administrators of the estate of Cassidy Jarmon, Deceased, and as Next Friends to Callie Jarmon, a minor child v. Delbert J. Davison, Old American County Mutual, Prine Towing and Recovery, Inc. COPART, Inc., and Daimler Chrysler Corporation, In the District Court, 412th Judicial District, Johnson County, Texas, deposition testimony February 2008

Veronica Ramirez Aguilar, Individually, as representative of the estate of Mario Islas Minero, and on behalf of all wrongful death beneficiaries v. Heart Employee Leasing, Inc. D/B/A and Heart HR, and S and D Plumbing- Taylor LLC, In the District Court of Travis County, Texas, 353rd Judicial District, deposition testimony January 2008

Rolando Garcia v. Design Werks, Inc., In the District Court of Travis County, 98th Judicial District, deposition testimony January 2008

EXHIBIT 3

Wilford Vogt, James P. Gauthier, and Humberto Reyna, Jr., for themselves and all others similarly-situated United States District Court, for the Northern District Of Texas Dallas, Dallas Division v. Texas Instruments Incorporated, deposition testimony November 2007

Randall Barnett, In The District Court, 353RD Judicial District v. City Of Austin, Powell Austin Properties, Ltd., Powell Holdings, Inc., Makota, Inc., and Alejandro Herrera, Travis County, Texas, deposition testimony November 2007

Cynthia S. Escamilla v. United Services Automobile Association, a Reciprocal, and Michael Barry, arbitration November 2007

Cynthia S. Escamilla v. United Services Automobile Association, a Reciprocal, and Michael Barry, deposition testimony October 2007

Jesus F. Diaz, Individually, as next friend of Marco A. Montoya and Racquel A. Diaz, minors and as dependent Co-Administrator of the Estate of Maria E. Diaz; James L. Caldwell, as dependent Co-Administrator of the Estate of Maria E. Diaz; Alejandro E. Diaz' and Isidora Gonzales v. General Motors Company, Autonation USA d/b/a Champion Chevrolet, H. E. Butt Grocery Company and Gilbert E. Delgado III in the Probate Court, Travis County Texas, deposition testimony August 2007

Angela Kay Warden, and husband, Brent Warden v. Wendell B. Ashby, MD, In The 108th District Court, Potter County, Texas, trial testimony May 2007

Angela Kay Warden, and husband, Brent Warden v. Wendell B. Ashby, MD, In The 108th District Court, Potter County, Texas, deposition testimony May 2007

William Montano and Doris Lucero v. Christmas By Krebs Corp., In The United States District Court For The District Of New Mexico, deposition testimony March 2007

Daniel J. Davis, III and Yvonne Davis v. Worthy Warnack, M.D., Britt T. Daniel, M.D. and Margaret Hollar, D.O.; In the District Court Dallas County, Texas 95th Judicial District, deposition testimony February 2007

Julian James, Individually, Daphne Bates Harrison, et al. v. Harris County Sheriff's Department, et al, In the United States Court for the Southern District of Texas, Houston Division, trial testimony January 2007

Sheila K. Robinson, Plaintiff, in the District Court of Brazos County, Texas v. Texas A&M University, Defendant in the 85th Judicial District, College Station, Texas, trial testimony January 2007

Viridiana Mata, Individually and Alejandro Rodriguez Individually, and all on Behalf of Genoveva Rodriguez, a Minor v. Mission Hospital and Heather A. Daley, M.D. 370th Judicial District in the District Court of Hidalgo County, Texas, deposition testimony December 2006

Billy Ray Tratree v. B.P. Pipelines, Inc.; In the United States District Court for the Southern District of Texas Houston Division, trial testimony October 2006

EXHIBIT 3

Julian James, Individually; Daphne Bates Harrison, Individually, et al. v. Harris County Sheriff's Department and William Wilkinson; In the United States District Court for the Southern District of Texas Houston Division, deposition October 2006

Texas Health and Human Services Commission, Medicaid and other Health and Human Services Fraud and Abuse Program Integrity - Legal Action Relating to Dr. Turner Lewis, M.D., administrative hearing September 2006

Billy Ray Tratree v. B.P. Pipelines, Inc.; In the United States District Court for the Southern District of Texas Houston Division, trial testimony August 2006

Julian James, Individually, Daphne Bates Harrison, et al., v. Harris County Sheriff's Department, et al, In the United States Court for the Southern District of Texas, Houston Division, testimony deposition March 2006

Michael Gibson v. Ondeo Nalco Energy Services, Inc. and Ondeo Nalco Company In the United States District Court for the Southern District of Texas, Houston Division, trial testimony February 2006

Frederick L. Risker v. Mahnaz Naveed Shah, M.D., Kelsey –Seybold Medical Group, P.A., and Gramercy Surgery Center, Ltd. D/B/A Gramercy Outpatient Surgery Center, deposition testimony November 2005

Larry Butler and Cathy Butler, Individually and on Behalf of Brittany Butler, a minor, and Erin Ferguson v. Kyle Kennedy, Russell Kennedy, Randi K. Kennedy, and Dana Harris, deposition testimony September 2005

Cheryl Smith, Individually and as Guardian and Next Friend of Michelle Smith, an Incapacitated Person v. Reyna Jean Noble, Ross Road Boring, Co., and Bobby L. Lambright, and Mark Huber, Individually and on Behalf of Jessica Huber, A Minor v. Ross Road Boring, Co., and Bobby L. Lambright, deposition and trial testimony August 2005

Amy Adkins v. Futurion Associates, Inc., deposition testimony August 2005

Jennifer Passi, Individually and a/n/f of Gracelyn Ann and Grant Michael Passi, Minor Children and as Representative of the Estate of Michael Vincent Passi, deceased v. Dr. Emery W. Dilling and Dr. Staton L. Awtrey; In Travis County, Texas, deposition testimony August 2005

Tanya Valdez, as next friend of Alejandro Ruben Pando, a minor and Lelia Alvarez, Individually and as representative of the estate of Ruben Pando, Jr., deceased v. Brinker Texas, L.P. D/B/A On The Border Mexican Grill & Cantina, Brinker Chili's Texas, Inc. D/B/A On The Border Mexican Café, Brinker International, Inc, Chili's Beverage Company, Inc., and Marlene Muniz as independent administrative and personal representative of the estate of Felipe Ornelas, Jr., deposition testimony 2005

Vanessa Sinegaure, Individually and as a Representative of the Estate of Darnell Eugene Sineguare v. Bally Total Fitness Corporation, et al; In the 334th Judicial District Court, Harris County, Texas, deposition and trial testimony 2005

EXHIBIT 3

Jerry L. Bigelow, Individually and as Next Friend of B.B., J.N.B., J.T.B. and S.B., Minors v. Living Picture AG, Living Picture Ltd., Living Picture GmbH and New York Lighter Co., Inc.; U.S. District Court, Western District of Texas, Austin Division, deposition testimony 2005

Suresh Dutta v. David Pistenmaa, In the United States District Court for the Northern District of Texas, Dallas Division, deposition and trial testimony 2005

Carrie Bennett, Individually as Representative of the Estate of Roy Edward Bennett, Deceased, and as Next Friend of Lane Edward Bennett, Cody Lee Bennett and April Anne Bennett v. Stephens Martin Paving, LP, Mobile Products, Inc. D/B/A Lay-Mor ; In the District Court, Taylor County, Texas, 42nd Judicial District, deposition testimony 2005

Robert Edwin Wills v. Sysco Food Services of Austin, L.P. and Rickey Charles Green In the 82nd Judicial District Court of Robertson County, Texas, deposition testimony 2005

Michael Gibson v. Ondeo Nalco Energy Services, Inc. and Ondeo Nalco Company; In the United States District Court for the Southern District of Texas, Houston Division, deposition testimony 2005

Regina Kelly, et al. v. John Paschall et al.; In the United States District Court for the Western District of Texas; Waco Division, deposition testimony 2004 and 2005

Charles White v. Technip USA Corporation and Technip, Inc.; In the 11th Judicial District Court of Harris County, Texas, deposition testimony 2005

Mike Arismendez and Elva Arismendez v. Covenant Health Systems d/b/a Covenant Medical Center; In the 237th District Court of Lubbock County, Texas, deposition testimony 2005

Linda Webb, Individually and on behalf of others similarly situated, v. Barnes Group Inc States District Court, Northern District of Texas, Dallas Division; Consolidated Case No. 3-02CV2716-Rm class certification 2004

Margia Blankenship, et al. v. Marathon Oil, In the District Court of Harris County 281st Judicial District, class certification 2004

Margia Blankenship, et al. v. Marathon Oil, In the District Court of Harris County 281st Judicial District, deposition testimony 2004

Janet Herdman, et al. v. El Paso Energy Corporation et al., In the District Court of Harris County, Texas 234 Judicial District, deposition testimony 2004

Sylvia Garcia and Rachel Garcia, Individually and on Behalf of the Estate of Richard Garcia, Deceased v. Ted L. Phipps, M.D. and The Lubbock Digestive Disease Associates, P.A. and Covenant Health Systems d/b/a Covenant Medical Center In The 237th District Court of Lubbock County, Texas, deposition testimony 2004

Benavides v. Cushman et al, In the District Court of Harris County, Texas; 280th Judicial District, trial testimony 2004

EXHIBIT 3

Jason Malone v. D.R. Horton – Emerald, Ltd.; In the 129th Judicial District Court of Harris County, Texas, deposition testimony 2003

Donald Castleberry and Mary Castleberry v. R. Douglas Mills, M.D., Nurse Jane Doe, St. David's Healthcare System, L.P. d/b/a North Austin Medical Center and Capital Emergency Associates; In The 353rd Judicial District Court of Travis County, Texas, deposition testimony 2003

Hammer Trucking, Inc. v. St. Paul Fire and Marine Insurance Company, et al.; In the 271st Judicial District Court of Wise County, Texas, deposition testimony 2003

Rodney Wayne Hurt, M.D. v. Southwest Lincoln Mercury, deposition testimony 2003

Juan T. Gonzales v. S & B Engineers and Contractors, Ltd.; In the District Court of Harris County, Texas; 280th Judicial District, deposition testimony 2003

John McKelvey and Lawanda McKelvey v. Arctic Pipe Inspection, Inc.; In the 333rd Judicial District Court, Harris County, Texas, deposition testimony 2003

Gwendolyn Mason v. American Electric Power/Central Power and Light Company, In the United States District Court, Western District, deposition testimony 2003

Linda Webb, Individually and on behalf of others similarly situated, v. Barnes Group Inc States District Court, Northern District of Texas, Dallas Division; Consolidated Case No. 3-02CV2716-R deposition testimony 2003

Clawson v. Michael Landess and Covert Ford; In the district court of Travis County, Texas, 345th judicial district, deposition testimony 2003

Juan T. Gonzales v. S & B Engineers and Contractors, Ltd.; In the District Court of Harris County, Texas; 280th Judicial District, trial testimony 2003

Benavides v. Cushman et al, In the District Court of Harris County, Texas; 280th Judicial District, trial testimony 2003

Gwendolyn Mason v. American Electric Power/Central Power and Light Company, In the United States District Court, Western District, trial testimony 2003

Mandy De Leon v. Ivan Melendez, M.D et al., In the District Court, Hidalgo County, Texas, 332nd Judicial District, deposition testimony 2002

Nicole Terry, et al. v. Qwest Communications, Inc., Santos Ruiz Castillo, and Hertz Equipment Rental, Inc.; In the 82nd District Court of Robertson County, Texas, deposition testimony 2002

Maria Hilda Rodriguez v. Emerson Electric Co et al., In the United States District Court for the Southern District of Texas, McAllen Division, deposition testimony 2002

In Re: Ambrocio Suarez, Jr., Deceased; In the Probate Court #2 of Harris County, Texas, deposition testimony 2002

**EXHIBIT 3**

Robert L. Hunt and Lisa S. Hunt v. Century 21 Ripley Realty, Robert H. Carroll and Sylvia K. Carroll; in the District Court Williamson County, Texas, 26th Judicial District, deposition testimony 2002

Marcelyn K. Boone, Individually, and on behalf of similarly situated persons, Plaintiff v. Union Carbide Corporation, Defendant; United States District Court, Southern District of Texas, Galveston Division, deposition testimony 2002

Thomas J. Galland v. David L. Winn; In the District Court of Williamson County, Texas, 368th Judicial District, deposition testimony 2002

Tranquilino C. Munoz v. Newtron, Inc. and John Grant, In the District Court, Jefferson County, Texas 60th Judicial District, deposition testimony 2002

Kirk Chi v. Dell Computer Corporation; In the United States District Court, Western District of Texas, deposition testimony 2002

Pablo Reyes v. Glesby Marks Corporation; Atlas Air Conditioning Company, L.P.; Comfort Systems U.S.A., Inc.; Atlas-Accurate Holdings, L.L.C. and John Bolan; In the District Court of Harris County, Texas, 189th Judicial District, deposition testimony 2002

Gwendolyn Mason v. American Electric Power/Central Power and Light Company; In the Southern District of Texas, Corpus Christi Division, deposition and trial testimony 2002

Dario Ibarra v. Pat Haas, d/b/a Patrick Haas Construction and Barton Creek Lakeside, LLC, in the 345th Judicial District Court of Travis County, Texas, Personal Injury, deposition testimony 2002

Benavides v. Cushman et al, In the District Court of Harris County, Texas; 280th Judicial District, deposition testimony 2002

Alcatel USA, Inc. v. Cisco Systems, Inc., In the United States District Court for the Eastern District of Texas, Sherman Division, deposition testimony 2002

Thomas J. Galland v. David L. Winn; In the District Court of Williamson County, Texas, 368th Judicial District, trial testimony 2002

Mandy De Leon v. Ivan Melendez, M.D et al., In the District Court, Hidalgo County, Texas, 332nd Judicial District, trial testimony 2002

Juanita Fletcher v. City of Houston, In the 189th Judicial District Court, Harris County, Texas, trial testimony 2002

Keith Ferrell and Tracey Ware v Robert Robinson and the City of Houston, In the County Civil Court at Law Number One, Harris County, Texas, deposition testimony 2001

Barbara LaRoche v. Daughters of Charity Health Services of Austin, et al, In the 126th Judicial District Court of Travis County, Texas deposition testimony 2001

**EXHIBIT 3**

Brandenburg v. Georgetown Independent School District, United States District Court, Western District of Texas, trial testimony 2001

EEOC v. BP Amoco et al., In the United States District Court for the Southern District of Texas, Houston Division, deposition testimony 2000

Gomez v. United Parcel Service, United States District Court, Western District of Texas, deposition testimony 2000

Pineda v. The City of Houston, In the United States District Court for the Southern District of Texas, Houston Division, deposition testimony 2000

McDonald v. Dr. Sophia Burns, M.D., 268th District Court Fort Bend County, Texas, deposition testimony 2000

Michelle Toussaint v. Sonic Restaurant, In the 136th District Court of Jefferson County, Texas, deposition testimony 2000

Woolf v. Vincent, M.D., 9th District Court, Polk County Texas, deposition testimony 2000

Isaac Robinson as Next Friend of Chasity Amanda Robinson, Arizona Jackson and Earlean Murray, as Executive of the Estate of Ruby McDonald v. Dr. Sophia Burns, M.D. 268th District Court Fort Bend County, Texas, deposition testimony 2000

Olen Lovell III v. Texas Health Resources, Herman Methodist System, Arbitration Cause No. 1310010565, Dallas, Texas, arbitration 1999

Walker et al v. Facility Insurance Corporation, et al, In the District Court of Travis County, Texas 98th Judicial District, deposition testimony 1999

Milton Santiago v. American Airlines, Inc., In the 191st Judicial District Court, Dallas County, Texas, deposition testimony 1999

Brown v. Sysco, Inc., United States District Court, Western District of Texas, deposition testimony 1999

Walker et al v. Facility Insurance Corporation, et al, In the District Court of Travis County, Texas 98th Judicial District, Robinson/Daubert hearing testimony 1999

Mato v. Dr. Jack Baldauf, et.al, United States District Court, Western District of Texas, Austin, trial testimony 1999

Goode v. City of Austin and Fine Host Corp, United States District Court, Western District of Texas, deposition testimony 1998

Chambers v. Texas A&M et al., United States District Court, Western District of Texas, deposition testimony 1998

EXHIBIT 3

Chambers v. Texas A&M et al., United States District Court, Western District of Texas, trial testimony 1998

EXHIBIT 3

## INVITED PRESENTATIONS AND PUBLIC SPEAKING ENGAGEMENTS

Eastern Economics Association Conference, "Risk Shifting by Employee Terminations and Layoffs", Discussant, New York City February 2017

American Economics Association Annual Meeting, "Pitfalls of Forensic Economic Analysis: Employment", San Francisco, California, January 3, 2016.

Eastern Economics Association Conference, "Extending the Econometric Model of Worklife Expectancy", New York, New York, February 27, 2015.

Employment Law CLE, "What is wrong with this paycheck? Investigating allegations of FSLA and wage and hour violations using payroll, time and personnel records", San Francisco, California,
March 6, 2014

Employment Law CLE, "What is wrong with this paycheck? Investigating allegations of FSLA and wage and hour violations using payroll, time and personnel records", Oakland, California, March 5, 2014

Employment Law CLE, "What is wrong with this paycheck? Investigating allegations of FSLA and wage and hour violations using payroll, time and personnel records", Century City, California, January 30, 2014

Fulbright & Jaworski LLP, "Use of Economic Experts in Employment Litigation", Houston, Texas, April 18, 2013

Southern Economic Association Conference, "Economic Damage Valuations in South Africa", New Orleans, Louisiana, November 17, 2012

Houston Bar Association, Employment Section "Back Pay and Front Pay Calculations in Employment Termination", Houston, Texas, March 12, 2012

Allied Social Science Association Conference, Forensic Economics II "Household Services Production in Mexico", Chicago, Illinois, January 7, 2012

Texas Labor & Employee Relations Consortium hosted by CenterPoint Energy, "Employee Labor Unions and EEO Compliance", Houston, Texas, June 9, 2011

Allied Social Science Association Conference, "Using Economic, Statistical and Time Clock Evidence in Wage and Hour and Employment Lawsuits", Chicago, Illinois, April 2011

**EXHIBIT 3**

Employment Law CLE, "Using Economic, Statistical and Time Clock Evidence in Wage and Hour and Employment Lawsuits", San Francisco, California, March 4, 2011

Southern Economic Association Conference, "Calculating Economic Damages for Previously Incarcerated Individuals", Atlanta, Georgia, November 21, 2010

Employment Law CLE, "Using Economic, Statistical and Time Clock Evidence in Wage and Hour and Employment Lawsuits", Houston, Texas, October 21, 2010

Dallas Bar Association's Friday Clinic, "Valuing Economic Damages in Injury, Wrongful Death and Employment Cases", Dallas, Texas, September 10, 2010

American Association of Justice Annual Convention, "Evaluating Damages for the Incarcerated", Vancouver, Canada, July 2010

Academy of Economics and Finance, 37th Annual Meetings, "Valuing Employee Stock Options in a Breach of Contract Case", Houston, Texas, February 2010

American Economic Association Meetings, "Valuing Employee Stock Options in a Breach of Contract Case", Atlanta, Georgia, January 2010

Capital Area Paralegal Association CLE, "Valuing Economic Damages in Injury, Wrongful Death and Employment Cases", Austin, Texas, October 28, 2009

UT CLE, The 15th Annual Labor and Employment Law Conference, Austin, Texas, May 29 - 30, 2008

NAACP 71st Texas Annual meeting, "Police Use of Force and Racial Profiling Panel Discussion", McAllen, Texas, October 12, 2007

Western Economic Association International, Chairperson of Employment Discrimination and Wage and Hour Analysis Sessions, Seattle, Washington, June 29 – July 1, 2007

UT School of Law 14th Annual Employment Law CLE, Presented with Stephanie Botello, "Calculating, Proving, and Mitigating Damages Involving Re-employment", Austin, Texas, May 17, 2007

Iowa Economic Alumni Workshop, Tippie College of Business, "How Long do Mexican Migrants Work in the U.S.?", Iowa City, Iowa, April 21, 2007

Trialsmith CLE webinar series, "Calculating Economic Damages in Injury and Death Cases", February 8, 2007

**EXHIBIT 3**

American Economic Association Annual Meeting, Session Chairperson, "Economic Issues in Estimating Damages in Commercial and Personal Injury Cases", Chicago, Illinois, January 6, 2007

MADD National Diversity Forum II, speaker for "Profiling to Behavior" a moderated panel discussion, Dallas, Texas, May 16 – 18, 2006

Academy of Economics and Finance Meeting, "Valuing Employee Stock Option Grants in Litigation", Houston, Texas, February 10, 2006

American Economic Association Annual Meeting, "Estimating the Work Life Expectancy of Undocumented Mexican Migrant Workers", Boston, Massachusetts, January 2006

DRI 2005 Annual Meeting, speaker for employment law "Lies, Damn Lies, and Employment Statistics", Chicago, Illinois, October 21, 2005

Labor and Employment Roundtable, sponsored by Texas Lawyer, August 31, 2005

Austin Business District Roundtable, 'Economic Roundtable on the Future of the Austin and Texas Economy", July, 2005

Iowa Alumni Workshop, Department of Economics, Tippie College of Business: "Economics and Economists in the U.S. Legal System: A View from the Trenches", University of Iowa, April, 2005

Police Executive Research Forum: "Data Analysis Guidelines for Poststop Analyses", Las Vegas and Kansas City; 2004

Texas State Capitol Media Press Conference – Study Release, "An Examination of Consent Searches and Contraband Hit Rates at Texas Traffic Stops", Austin, Texas, 2005

Police Executive Research Forum, Racial Profiling Meeting: Denominator Conference, "Use of Census Data to Measure Racial Disparities in Traffic Stops", Las Vegas, Nevada, 2004

Austin City Council Meeting, West University Area Rezoning, "Rezoning Austin's West Campus, A Unique Opportunity for Smart Growth", Austin, Texas, 2004

African-American Economic Legislative Forum, Hosted by Representative Senfronia Thompson, Roundtable Speaker, Texas State Capitol, Austin, Texas, 2004

North Texas Police Racial Profiling Conference, The University of Texas at Arlington, Center for Mexican American Studies, "The 2002 Racial Profiling Data Revisited: A  Look to the Future", Arlington, Texas 2004

EXHIBIT 3

NAACP and LULAC Police - Community Town Hall Meeting, "A Look at Police Racial

Profiling Statistics in Fort Worth, Fort Worth, Texas, 2004

NAACP and LULAC Police - Community Town Hall Meeting, "A Look at Police Racial Profiling Statistics in Beaumont, Beaumont, Texas, 2004

NAACP and LULAC Police - Community Town Hall Meeting, "A Look at Police Racial Profiling Statistics in Houston, Houston, Texas, 2004

Texas State Capitol, Senator Royce West Legislative Roundtable of Police Racial Profiling Data Collection and SB 1074, Roundtable Speaker, Austin, Texas, 2004

Police - Community Relation Forum, "A Preliminary Look at Racial Profiling in Texas and the Huntsville Area", Huntsville, Texas, 2003

Economic Issues in the African-American Forum, "The Roots of African-American Economic Progress", Radio Program, KAZI, Austin, Texas 2003

Texas State Bar Advanced Employment Law CLE Seminar, "Lies, Damn Lies, and Statistics", Houston, Texas, 2003

Haynes and Boone, LLP, "Use and [Misuse] of Economics in Economic Damage Calculations", Austin, Texas, 2002

Texas Police Chief Forum on Racial Profiling, "Using Search Data and Stop Data to Measure Racial Profiling", University of Texas at Austin, Austin, Texas, 2002

Texas State Capitol Press Conference - Study Release, "Selecting Racially Balanced Texas Juries", Austin, Texas, 2003

Texas State Capitol, Press Conference-Study Release, "Cost savings and Efficiency in the Texas State Criminal Justice System", Austin, Texas, 2003

PowerCenter, "Drug treatment programs and Cost Savings in Texas", Houston, Texas, 2003

Texas State Senate Chambers, "Statistical Analysis of Police Racial Profiling Data", Austin, Texas 2001

This Week with Senator West, Television show, Roundtable Discussion, Topic: "Detecting Racial Profiling", Austin, Texas 2001

Texas State Capitol, Media Press Conference, "Release of NAACP Police Racial Profiling Study", Austin, Texas, 2000

EXHIBIT 3

College of Business Administration, Sam Houston State University, "Lending Discrimination", Huntsville, Texas 1998

Federal Reserve Bank of Chicago; Moderator, "Detecting Lending Discrimination in Credit Markets", Chicago, Illinois, 1997

Federal Reserve Board, "Bank Mergers and Managerial Efficiency", Washington D.C, 1995

**2/28/17**                    **EmployStats - Dwight Steward, Ph.D.**

**EXHIBIT 3**

## PUBLIC TECHNICAL REPORTS, PUBLICATIONS AND WORKING PAPERS

"Statistical Analysis of Employment Data in Discrimination Lawsuits and EEO Audits: A statistical guide for attorneys, human resource professionals and EEO compliance personnel", Econometrics Publishing, February 2010

"Back Pay and Front Pay Calculations in Employment Termination Cases: Accounting for re-employment and mitigation efforts" (Joint with Stephanie Botello, Ph.D.), 2008, available at Social Science Research Network

"Economic Damages Primer for Attorneys: The building blocks for valuing economic damages in personal injury, wrongful death, medical malpractice, and products liability cases", (Joint with Charles Mahla, Ph.D., Michael Sadler, Ph.D., Chad Shirley, Ph.D., Doug Berg, Ph.D., et al.), Econ One Research, Inc., September 2007

"How Long do Mexican Migrants Work in the U.S.?" (Joint with Amy Raub and Jeannie Elliott), Journal of Forensic Economics, Volume XIX No. 2

"Evaluating the Statistical and Economic Significance of Statistical Evidence in Employment Discrimination Cases, Expert Evidence Report", The Bureau of National Affairs, Inc., Vol. 5, No. 5; p. 117-119; March 7, 2005 and March 23, 2005

"Racial Differences in Interest Rates", Midwestern Business and Economic Review, p. 9 – 24, Number 34, Fall 2004

"Lies, Damn Lies, and Statistics: A View from a Statistical Expert", Texas State Bar Advanced Employment Law CLE Chapter 13.1, 2003

"Evaluating Statistical Evidence in Employment Discrimination Cases", Expert Evidence Report, Bureau of National Affairs, p. 117-119.

"An Examination of Consent Searches and Contraband Hit Rates at Texas Traffic Stops", (Co-Authored) Technical Report Prepared for NAACP, LULAC, and Texas Criminal Justice Reform Coalition 2005

"Racial Profiling: Texas Traffic Stops and Searches; A first look at the nation's most comprehensive racial profiling dataset", (Co-Authored) Technical Report Prepared for NAACP, LULAC, and Texas Criminal Justice Reform Coalition, 2004

"Re-Zoning Austin's West Campus: A Unique Opportunity for Smart Growth", Technical Report Prepared for the University Area Partners, 2004

"Drug Treatment Programs and Cost Savings in the Texas State Criminal Justice System", Technical Report Prepared for Justice Policy Institute and NAACP Voter Fund, 2003

"A Statistical Methodology to Help Courts Select Racially Balanced Texas Juries", Technical Report Prepared for the NAACP, 2003

"A5/2/2012Re-examination of Police Racial Profiling Using the Becker Model of Discrimination", co-authors Doug Berg and John Maroney, Working paper, 2002

EXHIBIT 3

"A Fixed-Effects Discrete Choice Model of Racial Profiling in Police Vehicle Searches", Working Paper, 2002

"A Preliminary Examination of Racial Profiling in Texas: A look at Police Search Rates in Texas", (Co-Authored), Technical Report Prepared for the NAACP, 2000

"A Note: Bootstrap Standard Errors and Confidence Intervals for Weak Axiom of Cost Minimization (WACM) Based Managerial Efficiency Estimates", Published Applied Economics Letters V.2., 1998

"Bank Mergers and Cost Efficiency", Ph.D. Dissertation, University of Iowa, 1995

"Racial Differences in Interest Rates: A Cluster Analysis Approach", Co-authors Doug Berg and Donald Bumpass (SHSU) (2002), Paper accepted for presentation at Economics and Finance Association, February 2003 meeting in Savannah, Georgia.

**EXHIBIT 3**



Employment | Wage and Hour | Economic Damages

# Fee Schedule

| **Personnel** | **Hourly Rate** |
|---|---|
| D. Steward | $595 |
| Economists (Ph.D. level) | $275 - $325 |
| Senior Analysts (experienced BA and MA/MS level) | $250 |
| Analysts | $195 |
| Clerical and General Research Assistance | $50 - $75 |

www.employstats.com

Effective November 7, 2017

<span style="color:red">**EXHIBIT 3**</span>

## Exhibit B: Documents

Num.    Description

| Num. | Description |
|------|-------------|
| 1. | [Arrest Warrant Data (4-17-2018)]/Jaildocket 01012012-09202017.csv |
| 2. | [Arrest Warrant Data (4-17-2018)]/Justice Court warrant arrest 1 from 01012012.csv |
| 3. | [Arrest Warrant Data (4-17-2018)]/Justice Court warrant arrest 2 from 01012012.csv |
| 4. | [Arrest Warrant Data (4-17-2018)]/Warrant Module 01012012-09202017.csv |
| 5. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Books and Academic Literature]/Altonji and Blank (1999).pdf |
| 6. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Books and Academic Literature]/Angrist and Pischke (2017).pdf |
| 7. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Books and Academic Literature]/Bertrand (2011).pdf |
| 8. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Books and Academic Literature]/Blau and Kahn (2000).pdf |
| 9. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Books and Academic Literature]/Chalfin and McCrary (2017).pdf |
| 10. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Books and Academic Literature]/Fridell (2004).pdf |
| 11. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Books and Academic Literature]/Greene (2008).pdf |
| 12. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Books and Academic Literature]/Impinen, et al. (2011).pdf |
| 13. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Books and Academic Literature]/Kaye and Freedman (2011).pdf |
| 14. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Books and Academic Literature]/Perrine, et al. (1989).pdf |
| 15. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Books and Academic Literature]/Ridgeway and MacDonald (2010).pdf |
| 16. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Books and Academic Literature]/Rubinfeld (2011).pdf |
| 17. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Code]/_README.txt |

**EXHIBIT 3**

| 18. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Code]/1_match_roadblock_coordinates_census_tracts.R |
|---|---|
| 19. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Code]/2_build_census_data.R |
| 20. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Code]/3_build_regression_dataset.sas |
| 21. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Code]/4_roadblock_regression.do |
| 22. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Code]/5_count_roadblocks_per_location_for_maps.sas |
| 23. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Code]/6_build_census_data_for_roadblock_maps.sas |
| 24. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Code]/7_Create Maps.R |
| 25. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Code]/crplotr_1.0.2.5.tar |
| 26. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Code]/crplotr_1.0.2.5.tar.gz |
| 27. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Code]/header.sas |
| 28. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/_README.txt |
| 29. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000001.freelist |
| 30. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000001.gdbindexes |
| 31. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000001.gdbtable |
| 32. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000001.gdbtablx |
| 33. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000001.TablesByName.atx |
| 34. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

| | Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000002.gdbtable |
|---|---|
| 35. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000002.gdbtablx |
| 36. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000003.gdbindexes |
| 37. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000003.gdbtable |
| 38. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000003.gdbtablx |
| 39. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.CatItemsByPhysicalName.atx |
| 40. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.CatItemsByType.atx |
| 41. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.FDO_UUID.atx |
| 42. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.freelist |
| 43. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.gdbindexes |
| 44. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.gdbtable |
| 45. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.gdbtablx |
| 46. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.spx |
| 47. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000005.CatItemTypesByName.atx |
| 48. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting |

**EXHIBIT 3**

| | |
|---|---|
| | Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000005.CatItemTypesByParentTypeID.atx |
| 49. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000005.CatItemTypesByUUID.atx |
| 50. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000005.gdbindexes |
| 51. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000005.gdbtable |
| 52. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000005.gdbtablx |
| 53. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.CatRelsByDestinationID.atx |
| 54. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.CatRelsByOriginID.atx |
| 55. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.CatRelsByType.atx |
| 56. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.FDO_UUID.atx |
| 57. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.freelist |
| 58. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.gdbindexes |
| 59. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.gdbtable |
| 60. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.gdbtablx |
| 61. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.CatRelTypesByBackwardLab |

**EXHIBIT 3**

| | el.atx |
|---|---|
| 62. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.CatRelTypesByDestItemTypeID.atx |
| 63. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.CatRelTypesByForwardLabel.atx |
| 64. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.CatRelTypesByName.atx |
| 65. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.CatRelTypesByOriginItemTypeID.atx |
| 66. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.CatRelTypesByUUID.atx |
| 67. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.gdbindexes |
| 68. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.gdbtable |
| 69. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.gdbtablx |
| 70. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000009.freelist |
| 71. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000009.gdbindexes |
| 72. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000009.gdbtable |
| 73. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000009.gdbtablx |
| 74. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

| | Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000009.spx |
|---|---|
| 75. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000b.gdbindexes |
| 76. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000b.gdbtable |
| 77. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000b.gdbtablx |
| 78. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000c.gdbindexes |
| 79. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000c.gdbtable |
| 80. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000c.gdbtablx |
| 81. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000d.gdbindexes |
| 82. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000d.gdbtable |
| 83. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000d.gdbtablx |
| 84. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000e.gdbindexes |
| 85. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000e.gdbtable |
| 86. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000e.gdbtablx |
| 87. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000f.gdbindexes |
| 88. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

| | |
|---|---|
| | Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000f.gdbtable |
| 89. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000f.gdbtablx |
| 90. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000010.gdbindexes |
| 91. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000010.gdbtable |
| 92. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000010.gdbtablx |
| 93. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000011.gdbindexes |
| 94. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000011.gdbtable |
| 95. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000011.gdbtablx |
| 96. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000012.gdbindexes |
| 97. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000012.gdbtable |
| 98. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000012.gdbtablx |
| 99. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000013.gdbindexes |
| 100. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000013.gdbtable |
| 101. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000013.gdbtablx |
| 102. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

| | Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000014.gdbindexes |
|---|---|
| 103. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000014.gdbtable |
| 104. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000014.gdbtablx |
| 105. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000015.gdbindexes |
| 106. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000015.gdbtable |
| 107. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000015.gdbtablx |
| 108. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000016.gdbindexes |
| 109. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000016.gdbtable |
| 110. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000016.gdbtablx |
| 111. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000017.gdbindexes |
| 112. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000017.gdbtable |
| 113. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000017.gdbtablx |
| 114. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000018.gdbindexes |
| 115. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000018.gdbtable |
| 116. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

| | |
|---|---|
| | Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000018.gdbtablx |
| 117. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000019.gdbindexes |
| 118. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000019.gdbtable |
| 119. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000019.gdbtablx |
| 120. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001a.gdbindexes |
| 121. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001a.gdbtable |
| 122. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001a.gdbtablx |
| 123. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001b.gdbindexes |
| 124. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001b.gdbtable |
| 125. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001b.gdbtablx |
| 126. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001c.gdbindexes |
| 127. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001c.gdbtable |
| 128. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001c.gdbtablx |
| 129. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001d.gdbindexes |
| 130. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

| | Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001d.gdbtable |
|---|---|
| 131. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001d.gdbtablx |
| 132. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001e.gdbindexes |
| 133. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001e.gdbtable |
| 134. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001e.gdbtablx |
| 135. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001f.gdbindexes |
| 136. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001f.gdbtable |
| 137. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001f.gdbtablx |
| 138. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000020.gdbindexes |
| 139. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000020.gdbtable |
| 140. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000020.gdbtablx |
| 141. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000021.gdbindexes |
| 142. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000021.gdbtable |
| 143. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000021.gdbtablx |
| 144. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

| | Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000022.gdbindexes |
|---|---|
| 145. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000022.gdbtable |
| 146. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000022.gdbtablx |
| 147. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000023.gdbindexes |
| 148. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000023.gdbtable |
| 149. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000023.gdbtablx |
| 150. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000024.gdbindexes |
| 151. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000024.gdbtable |
| 152. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000024.gdbtablx |
| 153. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000025.gdbindexes |
| 154. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000025.gdbtable |
| 155. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000025.gdbtablx |
| 156. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000026.gdbindexes |
| 157. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000026.gdbtable |
| 158. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

|      | Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000026.gdbtablx |
|------|------------------------------------------------------------------|
| 159. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000027.gdbindexes |
| 160. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000027.gdbtable |
| 161. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000027.gdbtablx |
| 162. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000028.gdbindexes |
| 163. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000028.gdbtable |
| 164. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000028.gdbtablx |
| 165. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/gdb |
| 166. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/timestamps |
| 167. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2016_5YR_PLACE]/ACS_16_5YR_DP05_metadata.csv |
| 168. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2016_5YR_PLACE]/ACS_16_5YR_DP05_with_ann.csv |
| 169. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2016_5YR_PLACE]/ACS_16_5YR_DP05.txt |
| 170. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_2016_5YR_PLACE]/aff_download_readme_ann.txt |
| 171. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_12_5YR_S0101_metadata.csv |
| 172. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

EXHIBIT 3

| | Data]/[ACS_5YR_TRACT_AGE]/ACS_12_5YR_S0101_with_ann.csv |
|---|---|
| 173. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_12_5YR_S0101.txt |
| 174. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_13_5YR_S0101_metadata.csv |
| 175. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_13_5YR_S0101_with_ann.csv |
| 176. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_13_5YR_S0101.txt |
| 177. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_14_5YR_S0101_metadata.csv |
| 178. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_14_5YR_S0101_with_ann.csv |
| 179. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_14_5YR_S0101.txt |
| 180. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_15_5YR_S0101_metadata.csv |
| 181. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_15_5YR_S0101_with_ann.csv |
| 182. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_15_5YR_S0101.txt |
| 183. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_16_5YR_S0101_metadata.csv |
| 184. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_16_5YR_S0101_with_ann.csv |
| 185. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_AGE]/ACS_16_5YR_S0101.txt |
| 186. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

| | Data]/[ACS_5YR_TRACT_AGE]/aff_download_readme_ann.txt |
|---|---|
| 187. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_12_5YR_S2301_metadata.csv |
| 188. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_12_5YR_S2301_with_ann.csv |
| 189. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_12_5YR_S2301.txt |
| 190. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_13_5YR_S2301_metadata.csv |
| 191. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_13_5YR_S2301_with_ann.csv |
| 192. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_13_5YR_S2301.txt |
| 193. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_14_5YR_S2301_metadata.csv |
| 194. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_14_5YR_S2301_with_ann.csv |
| 195. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_14_5YR_S2301.txt |
| 196. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_15_5YR_S2301_metadata.csv |
| 197. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_15_5YR_S2301_with_ann.csv |
| 198. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_15_5YR_S2301.txt |
| 199. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_16_5YR_S2301_metadata.csv |
| 200. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

| | |
|---|---|
| | Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_16_5YR_S2301_with_ann.csv |
| 201. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/ACS_16_5YR_S2301.txt |
| 202. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_EMPLOYMENT]/aff_download_readme_ann.txt |
| 203. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_12_5YR_DP04_metadata.csv |
| 204. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_12_5YR_DP04_with_ann.csv |
| 205. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_12_5YR_DP04.txt |
| 206. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_13_5YR_DP04_metadata.csv |
| 207. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_13_5YR_DP04_with_ann.csv |
| 208. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_13_5YR_DP04.txt |
| 209. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_14_5YR_DP04_metadata.csv |
| 210. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_14_5YR_DP04_with_ann.csv |
| 211. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_14_5YR_DP04.txt |
| 212. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_15_5YR_DP04_metadata.csv |
| 213. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_15_5YR_DP04_with_ann.csv |
| 214. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

| | Data]/[ACS_5YR_TRACT_HOUSING]/ACS_15_5YR_DP04.txt |
|---|---|
| 215. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_16_5YR_DP04_metadata.csv |
| 216. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_16_5YR_DP04_with_ann.csv |
| 217. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/ACS_16_5YR_DP04.txt |
| 218. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_HOUSING]/aff_download_readme_ann.txt |
| 219. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_12_5YR_B19013_metadata.csv |
| 220. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_12_5YR_B19013_with_ann.csv |
| 221. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_12_5YR_B19013.txt |
| 222. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_13_5YR_B19013_metadata.csv |
| 223. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_13_5YR_B19013_with_ann.csv |
| 224. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_13_5YR_B19013.txt |
| 225. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_14_5YR_B19013_metadata.csv |
| 226. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_14_5YR_B19013_with_ann.csv |
| 227. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_14_5YR_B19013.txt |
| 228. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

| | |
|---|---|
| | Data]/[ACS_5YR_TRACT_INCOME]/ACS_15_5YR_B19013_metadata.csv |
| 229. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_15_5YR_B19013_with_ann.csv |
| 230. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_15_5YR_B19013.txt |
| 231. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_16_5YR_B19013_metadata.csv |
| 232. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_16_5YR_B19013_with_ann.csv |
| 233. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/ACS_16_5YR_B19013.txt |
| 234. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_INCOME]/aff_download_readme_ann.txt |
| 235. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_12_5YR_B02001_metadata.csv |
| 236. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_12_5YR_B02001_with_ann.csv |
| 237. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_12_5YR_B02001.txt |
| 238. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_13_5YR_B02001_metadata.csv |
| 239. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_13_5YR_B02001_with_ann.csv |
| 240. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_13_5YR_B02001.txt |
| 241. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_14_5YR_B02001_metadata.csv |
| 242. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census |

**EXHIBIT 3**

| | Data]/[ACS_5YR_TRACT_RACE]/ACS_14_5YR_B02001_with_ann.csv |
|---|---|
| 243. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_14_5YR_B02001.txt |
| 244. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_15_5YR_B02001_metadata.csv |
| 245. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_15_5YR_B02001_with_ann.csv |
| 246. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_15_5YR_B02001.txt |
| 247. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_16_5YR_B02001_metadata.csv |
| 248. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_16_5YR_B02001_with_ann.csv |
| 249. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/ACS_16_5YR_B02001.txt |
| 250. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Census Data]/[ACS_5YR_TRACT_RACE]/aff_download_readme_ann.txt |
| 251. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Roadblock Data]/[1_raw_data_files]/1_Master CAD Report - To Be Produced.csv |
| 252. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Roadblock Data]/[1_raw_data_files]/2_Roadblock Locations (Handwritten).xlsx |
| 253. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Roadblock Data]/[1_raw_data_files]/3_Unlisted Roadblocks.xlsx |
| 254. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Roadblock Data]/[2_cleaned_addresses]/1_Raw CAD Data and Clean Address Tab.xlsx |
| 255. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Roadblock Data]/[2_cleaned_addresses]/2_Roadblock Locations (Handwritten) - Raw Data and Formatted For R.xlsx |
| 256. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting |

**EXHIBIT 3**

| | Materials]/[Expert Report Production File]/[data]/[1. input]/[Roadblock Data]/[2_cleaned_addresses]/3_Unlisted Roadblocks - Raw Data and Formatted For R.xlsx |
|---|---|
| 257. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Roadblock Data]/[3_unique_addresses_geocoding_input]/1_Unique List of Clean Addresses From CAD.csv |
| 258. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Roadblock Data]/[3_unique_addresses_geocoding_input]/2_ROAD~1.XLS |
| 259. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Roadblock Data]/[3_unique_addresses_geocoding_input]/3_Unlisted Roadblocks - Unique List of Addresses.xlsx |
| 260. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Roadblock Data]/[4_geocoding_output]/1_Geographic Coordinates For CAD Addresses.csv |
| 261. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Roadblock Data]/[4_geocoding_output]/2_Geographic Coordinates for Roadblock Locations (Handwritten).xlsx |
| 262. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Roadblock Data]/[4_geocoding_output]/3_Geographic Coordinates for Unlisted Roadblocks.csv |
| 263. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000001.freelist |
| 264. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000001.gdbindexes |
| 265. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000001.gdbtable |
| 266. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000001.gdbtablx |
| 267. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000001.TablesByName.atx |
| 268. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000002.gdbtable |
| 269. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape |

EXHIBIT 3

| | Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000002.gdbtablx |
|---|---|
| 270. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000003.gdbindexes |
| 271. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000003.gdbtable |
| 272. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000003.gdbtablx |
| 273. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.CatItemsByPhysicalName.atx |
| 274. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.CatItemsByType.atx |
| 275. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.FDO_UUID.atx |
| 276. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.freelist |
| 277. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.gdbindexes |
| 278. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.gdbtable |
| 279. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.gdbtablx |
| 280. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000004.spx |
| 281. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000005.CatItemTypesByName.atx |
| 282. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000005.CatItemTypesByParentTypeID.atx |

**EXHIBIT 3**

| 283. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000005.CatItemTypesByUUID.atx |
|------|------|
| 284. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000005.gdbindexes |
| 285. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000005.gdbtable |
| 286. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000005.gdbtablx |
| 287. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.CatRelsByDestinationID.atx |
| 288. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.CatRelsByOriginID.atx |
| 289. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.CatRelsByType.atx |
| 290. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.FDO_UUID.atx |
| 291. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.freelist |
| 292. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.gdbindexes |
| 293. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.gdbtable |
| 294. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000006.gdbtablx |
| 295. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.CatRelTypesByBackwardLabel.atx |
| 296. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape |

EXHIBIT 3

| | |
|---|---|
| | Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.CatRelTypesByDestItemTypeID.atx |
| 297. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.CatRelTypesByForwardLabel.atx |
| 298. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.CatRelTypesByName.atx |
| 299. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.CatRelTypesByOriginItemTypeID.atx |
| 300. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.CatRelTypesByUUID.atx |
| 301. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.gdbindexes |
| 302. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.gdbtable |
| 303. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000007.gdbtablx |
| 304. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000009.freelist |
| 305. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000009.gdbindexes |
| 306. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000009.gdbtable |
| 307. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000009.gdbtablx |
| 308. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000009.spx |
| 309. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape |

**EXHIBIT 3**

| | |
|---|---|
| | Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000b.gdbindexes |
| 310. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000b.gdbtable |
| 311. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000b.gdbtablx |
| 312. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000c.gdbindexes |
| 313. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000c.gdbtable |
| 314. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000c.gdbtablx |
| 315. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000d.gdbindexes |
| 316. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000d.gdbtable |
| 317. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000d.gdbtablx |
| 318. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000e.gdbindexes |
| 319. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000e.gdbtable |
| 320. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000e.gdbtablx |
| 321. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000f.gdbindexes |
| 322. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000f.gdbtable |
| 323. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape |

EXHIBIT 3

| | Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000000f.gdbtablx |
|---|---|
| 324. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000010.gdbindexes |
| 325. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000010.gdbtable |
| 326. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000010.gdbtablx |
| 327. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000011.gdbindexes |
| 328. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000011.gdbtable |
| 329. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000011.gdbtablx |
| 330. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000012.gdbindexes |
| 331. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000012.gdbtable |
| 332. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000012.gdbtablx |
| 333. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000013.gdbindexes |
| 334. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000013.gdbtable |
| 335. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000013.gdbtablx |
| 336. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000014.gdbindexes |
| 337. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape |

**EXHIBIT 3**

| | |
|---|---|
| | Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000014.gdbtable |
| 338. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000014.gdbtablx |
| 339. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000015.gdbindexes |
| 340. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000015.gdbtable |
| 341. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000015.gdbtablx |
| 342. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000016.gdbindexes |
| 343. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000016.gdbtable |
| 344. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000016.gdbtablx |
| 345. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000017.gdbindexes |
| 346. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000017.gdbtable |
| 347. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000017.gdbtablx |
| 348. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000018.gdbindexes |
| 349. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000018.gdbtable |
| 350. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000018.gdbtablx |
| 351. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape |

**EXHIBIT 3**

| | Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000019.gdbindexes |
|---|---|
| 352. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000019.gdbtable |
| 353. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000019.gdbtablx |
| 354. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001a.gdbindexes |
| 355. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001a.gdbtable |
| 356. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001a.gdbtablx |
| 357. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001b.gdbindexes |
| 358. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001b.gdbtable |
| 359. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001b.gdbtablx |
| 360. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001c.gdbindexes |
| 361. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001c.gdbtable |
| 362. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001c.gdbtablx |
| 363. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001d.gdbindexes |
| 364. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001d.gdbtable |
| 365. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape |

**EXHIBIT 3**

| | |
|---|---|
| | Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001d.gdbtablx |
| 366. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001e.gdbindexes |
| 367. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001e.gdbtable |
| 368. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001e.gdbtablx |
| 369. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001f.gdbindexes |
| 370. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001f.gdbtable |
| 371. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a0000001f.gdbtablx |
| 372. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000020.gdbindexes |
| 373. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000020.gdbtable |
| 374. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000020.gdbtablx |
| 375. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000021.gdbindexes |
| 376. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000021.gdbtable |
| 377. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000021.gdbtablx |
| 378. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000022.gdbindexes |
| 379. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape |

**EXHIBIT 3**

| | Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000022.gdbtable |
|---|---|
| 380. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000022.gdbtablx |
| 381. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000023.gdbindexes |
| 382. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000023.gdbtable |
| 383. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000023.gdbtablx |
| 384. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000024.gdbindexes |
| 385. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000024.gdbtable |
| 386. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000024.gdbtablx |
| 387. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000025.gdbindexes |
| 388. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000025.gdbtable |
| 389. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000025.gdbtablx |
| 390. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000026.gdbindexes |
| 391. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000026.gdbtable |
| 392. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000026.gdbtablx |
| 393. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape |

**EXHIBIT 3**

|      | Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000027.gdbindexes |
|------|---------------------------------------------------------------------|
| 394. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000027.gdbtable |
| 395. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000027.gdbtablx |
| 396. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000028.gdbindexes |
| 397. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000028.gdbtable |
| 398. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/a00000028.gdbtablx |
| 399. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/gdb |
| 400. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[ACS_2015_5YR_TRACT_28_MISSISSIPPI.gdb]/timestamps |
| 401. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[tl_2017_28_place]/tl_2017_28_place.cpg |
| 402. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[tl_2017_28_place]/tl_2017_28_place.dbf |
| 403. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[tl_2017_28_place]/tl_2017_28_place.prj |
| 404. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[tl_2017_28_place]/tl_2017_28_place.shp |
| 405. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[tl_2017_28_place]/tl_2017_28_place.shp.ea.iso.xml |
| 406. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[tl_2017_28_place]/tl_2017_28_place.shp.iso.xml |
| 407. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape |

EXHIBIT 3

| | Files]/[tl_2017_28_place]/tl_2017_28_place.shp.xml |
|---|---|
| 408. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[1. input]/[Shape Files]/[tl_2017_28_place]/tl_2017_28_place.shx |
| 409. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/CAD_Mapped.csv |
| 410. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/CAD_Roadblocks_Mapped.csv |
| 411. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/Census_Data.csv |
| 412. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/Handwritten_Roadblocks_Mapped.csv |
| 413. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/Imputed_Roadblocks_Mapped.csv |
| 414. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/n_roadblocks_by_tract.sas7bdat |
| 415. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/Number Of Roadblocks Per Location - For R.xlsx |
| 416. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/regression_input.dta |
| 417. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/Roadblocks Per Capita - Per Census Tract Group.xlsx |
| 418. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/roadblocks_census_CAD.csv |
| 419. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/unique_roadblocks.sas7bdat |
| 420. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/Weighted Average Black Population Percentage 2012 to 2017 Per Census Tract.csv |
| 421. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[2. Datasets]/Weighted Average Black Population Percentage Per Census Tract Group.csv |
| 422. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[3. Output]/Appendix_C.xml |
| 423. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[3. Output]/Exhibit 2.pdf |
| 424. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting |

EXHIBIT 3

| | Materials]/[Expert Report Production File]/[data]/[3. Output]/Exhibit 3 - Map Without Text Boxes - From R.pdf |
|---|---|
| 425. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[3. Output]/Exhibit 4.pdf |
| 426. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[data]/[3. Output]/Exhibit_6.xml |
| 427. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Exhibits and Appendices]/Appendix C.xlsx |
| 428. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Exhibits and Appendices]/Exhibit 2.pdf |
| 429. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Exhibits and Appendices]/Exhibit 3.pdf |
| 430. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Exhibits and Appendices]/Exhibit 4.pdf |
| 431. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Exhibits and Appendices]/Exhibit 6.xlsx |
| 432. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Exhibits and Appendices]/Exhibits 1, 5.xlsx |
| 433. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Exhibits and Appendices]/Exhibits 1, 5.xlsx |
| 434. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Other]/Sobriety Checkpoint & Roadblock Policy.pdf |
| 435. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/[Expert Report Production File]/[Publicly Available Sources]/US Census Bureau - Madison County Census Tract Map.pdf |
| 436. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/Ricchetti Report Appendices.pdf |
| 437. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/Ricchetti Report Exhibits.pdf |
| 438. | [Class Certification 03142018]/[Expert Disclosures]/[Expert Report and Supporting Materials]/Ricchetti Report.pdf |
| 439. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Code]/1. Import arrest data.sas |
| 440. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Code]/2. Analyze arrest data.sas |
| 441. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Code]/3. Import citations raw data and categorization.sas |
| 442. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Code]/4. Analyze citations data.sas |
| 443. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting |

EXHIBIT 3

| | |
|---|---|
| | materials]/[FRE 1006 Production File]/[Code]/5. Import and analyze incident report parsed results.sas |
| 444. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Code]/header.sas |
| 445. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[1. Input]/ACLU FOIA Request 02052018 V1.xlsx |
| 446. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[1. Input]/ACLU12TO17.CSV |
| 447. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[1. Input]/parsed_results.xlsx |
| 448. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[1. Input]/Seatbelt Search - Flagging - For SAS.xlsx |
| 449. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[2. Datasets]/aclu_foia_request_02052018.sas7bdat |
| 450. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[2. Datasets]/arrests_raw.sas7bdat |
| 451. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[2. Datasets]/categories_for_citations.sas7bdat |
| 452. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[2. Datasets]/Citations Categories - For SAS.xlsx |
| 453. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[2. Datasets]/parsed_results.sas7bdat |
| 454. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[2. Datasets]/Seatbelt Search - Flagging - For SAS.xlsx |
| 455. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[3. Output]/Incident Report Apartment Walkthroughs - From SAS.xlsx |
| 456. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[3. Output]/Incident Report Roadblock Arrests - From SAS.xlsx |
| 457. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[3. Output]/Incident Report Traffic Stops - From SAS.xlsx |
| 458. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[3. Output]/Incident Report Traffic Stops Seatbelt Violation - From SAS.xlsx |
| 459. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[3. Output]/Individuals Cited For Seatbelt Violation Only - From SAS.xlsx |

**EXHIBIT 3**

| 460. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[3. Output]/Summary of Arrests by Offense Code - From SAS.xlsx |
|------|------|
| 461. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[3. Output]/Summary of Citations by Violation Category - From SAS.xlsx |
| 462. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[3. Output]/Summary of Total Arrests - From SAS.xlsx |
| 463. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Data]/[3. Output]/Summary of Total Citations - From SAS.xlsx |
| 464. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Exhibits and Appendices]/[Excel]/ARREST~2.XLS |
| 465. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Exhibits and Appendices]/[Excel]/Arrests From Incident Reports Related to Apartment Walkthroughs.xlsx |
| 466. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Exhibits and Appendices]/[Excel]/Arrests From Incident Reports Related to Stops at Roadblocks.xlsx |
| 467. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Exhibits and Appendices]/[Excel]/Arrests From Incident Reports Related to Traffic Stops.xlsx |
| 468. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Exhibits and Appendices]/[Excel]/Black Percentage of Arrests by Offense Code.xlsx |
| 469. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Exhibits and Appendices]/[Excel]/Black Percentage of Citations and Summary of Citations by Violation Category.xlsx |
| 470. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Exhibits and Appendices]/[Excel]/Individuals Cited For Seatbelt Violation Only.xlsx |
| 471. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Exhibits and Appendices]/[Excel]/Summary of Arrests by Offense Code.xlsx |
| 472. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Exhibits and Appendices]/[Excel]/Summary of Total Arrests.xlsx |
| 473. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/[FRE 1006 Production File]/[Exhibits and Appendices]/[Excel]/Summary of Total Citations.xlsx |
| 474. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting |

**EXHIBIT 3**

| | materials]/[FRE 1006 Production File]/[Publicly Available Sources]/US Census Bureau QuickFacts - Madison County, Mississippi.pdf |
|---|---|
| 475. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/Guha Declaration Appendices.pdf |
| 476. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/Guha Declaration Exhibits.pdf |
| 477. | [Class Certification 03142018]/[Expert Disclosures]/[fre 1006 declaration and supporting materials]/Guha Summary Declaration.pdf |
| 478. | [Class Certification 03142018]/[Pleadings]/231 Plaintiffs' Motion for Class Certification.pdf |
| 479. | [Class Certification 03142018]/[Pleadings]/231-1.pdf |
| 480. | [Class Certification 03142018]/[Pleadings]/231-10.pdf |
| 481. | [Class Certification 03142018]/[Pleadings]/231-100.pdf |
| 482. | [Class Certification 03142018]/[Pleadings]/231-101.pdf |
| 483. | [Class Certification 03142018]/[Pleadings]/231-102.pdf |
| 484. | [Class Certification 03142018]/[Pleadings]/231-103.pdf |
| 485. | [Class Certification 03142018]/[Pleadings]/231-104.pdf |
| 486. | [Class Certification 03142018]/[Pleadings]/231-105.pdf |
| 487. | [Class Certification 03142018]/[Pleadings]/231-106.pdf |
| 488. | [Class Certification 03142018]/[Pleadings]/231-107.pdf |
| 489. | [Class Certification 03142018]/[Pleadings]/231-108.pdf |
| 490. | [Class Certification 03142018]/[Pleadings]/231-109.pdf |
| 491. | [Class Certification 03142018]/[Pleadings]/231-11.pdf |
| 492. | [Class Certification 03142018]/[Pleadings]/231-110.pdf |
| 493. | [Class Certification 03142018]/[Pleadings]/231-111.pdf |
| 494. | [Class Certification 03142018]/[Pleadings]/231-112.pdf |
| 495. | [Class Certification 03142018]/[Pleadings]/231-113.pdf |
| 496. | [Class Certification 03142018]/[Pleadings]/231-12.pdf |
| 497. | [Class Certification 03142018]/[Pleadings]/231-13.pdf |
| 498. | [Class Certification 03142018]/[Pleadings]/231-14.pdf |
| 499. | [Class Certification 03142018]/[Pleadings]/231-15.pdf |
| 500. | [Class Certification 03142018]/[Pleadings]/231-16.pdf |
| 501. | [Class Certification 03142018]/[Pleadings]/231-17.pdf |
| 502. | [Class Certification 03142018]/[Pleadings]/231-18.pdf |
| 503. | [Class Certification 03142018]/[Pleadings]/231-19.pdf |
| 504. | [Class Certification 03142018]/[Pleadings]/231-2.pdf |

EXHIBIT 3

| 505. | [Class Certification 03142018]/[Pleadings]/231-20.pdf |
| 506. | [Class Certification 03142018]/[Pleadings]/231-21.pdf |
| 507. | [Class Certification 03142018]/[Pleadings]/231-22.pdf |
| 508. | [Class Certification 03142018]/[Pleadings]/231-23.pdf |
| 509. | [Class Certification 03142018]/[Pleadings]/231-24.pdf |
| 510. | [Class Certification 03142018]/[Pleadings]/231-25.pdf |
| 511. | [Class Certification 03142018]/[Pleadings]/231-26.pdf |
| 512. | [Class Certification 03142018]/[Pleadings]/231-27.pdf |
| 513. | [Class Certification 03142018]/[Pleadings]/231-28.pdf |
| 514. | [Class Certification 03142018]/[Pleadings]/231-29.pdf |
| 515. | [Class Certification 03142018]/[Pleadings]/231-3.pdf |
| 516. | [Class Certification 03142018]/[Pleadings]/231-30.pdf |
| 517. | [Class Certification 03142018]/[Pleadings]/231-31.pdf |
| 518. | [Class Certification 03142018]/[Pleadings]/231-32.pdf |
| 519. | [Class Certification 03142018]/[Pleadings]/231-33.pdf |
| 520. | [Class Certification 03142018]/[Pleadings]/231-34.pdf |
| 521. | [Class Certification 03142018]/[Pleadings]/231-35.pdf |
| 522. | [Class Certification 03142018]/[Pleadings]/231-36.pdf |
| 523. | [Class Certification 03142018]/[Pleadings]/231-37.pdf |
| 524. | [Class Certification 03142018]/[Pleadings]/231-38.pdf |
| 525. | [Class Certification 03142018]/[Pleadings]/231-39.pdf |
| 526. | [Class Certification 03142018]/[Pleadings]/231-4.pdf |
| 527. | [Class Certification 03142018]/[Pleadings]/231-40.pdf |
| 528. | [Class Certification 03142018]/[Pleadings]/231-41.pdf |
| 529. | [Class Certification 03142018]/[Pleadings]/231-42.pdf |
| 530. | [Class Certification 03142018]/[Pleadings]/231-43.pdf |
| 531. | [Class Certification 03142018]/[Pleadings]/231-44.pdf |
| 532. | [Class Certification 03142018]/[Pleadings]/231-45.pdf |
| 533. | [Class Certification 03142018]/[Pleadings]/231-46.pdf |
| 534. | [Class Certification 03142018]/[Pleadings]/231-47.pdf |
| 535. | [Class Certification 03142018]/[Pleadings]/231-48.pdf |
| 536. | [Class Certification 03142018]/[Pleadings]/231-49.pdf |
| 537. | [Class Certification 03142018]/[Pleadings]/231-5.pdf |
| 538. | [Class Certification 03142018]/[Pleadings]/231-50.pdf |

**EXHIBIT 3**

| 539. | [Class Certification 03142018]/[Pleadings]/231-51.pdf |
| 540. | [Class Certification 03142018]/[Pleadings]/231-52.pdf |
| 541. | [Class Certification 03142018]/[Pleadings]/231-53.pdf |
| 542. | [Class Certification 03142018]/[Pleadings]/231-54.pdf |
| 543. | [Class Certification 03142018]/[Pleadings]/231-55.pdf |
| 544. | [Class Certification 03142018]/[Pleadings]/231-56.pdf |
| 545. | [Class Certification 03142018]/[Pleadings]/231-57.pdf |
| 546. | [Class Certification 03142018]/[Pleadings]/231-58.pdf |
| 547. | [Class Certification 03142018]/[Pleadings]/231-59.pdf |
| 548. | [Class Certification 03142018]/[Pleadings]/231-6.pdf |
| 549. | [Class Certification 03142018]/[Pleadings]/231-60.pdf |
| 550. | [Class Certification 03142018]/[Pleadings]/231-61.pdf |
| 551. | [Class Certification 03142018]/[Pleadings]/231-62.pdf |
| 552. | [Class Certification 03142018]/[Pleadings]/231-63.pdf |
| 553. | [Class Certification 03142018]/[Pleadings]/231-64.pdf |
| 554. | [Class Certification 03142018]/[Pleadings]/231-65.pdf |
| 555. | [Class Certification 03142018]/[Pleadings]/231-66.pdf |
| 556. | [Class Certification 03142018]/[Pleadings]/231-67.pdf |
| 557. | [Class Certification 03142018]/[Pleadings]/231-68.pdf |
| 558. | [Class Certification 03142018]/[Pleadings]/231-69.pdf |
| 559. | [Class Certification 03142018]/[Pleadings]/231-7.pdf |
| 560. | [Class Certification 03142018]/[Pleadings]/231-70.pdf |
| 561. | [Class Certification 03142018]/[Pleadings]/231-71.pdf |
| 562. | [Class Certification 03142018]/[Pleadings]/231-72.pdf |
| 563. | [Class Certification 03142018]/[Pleadings]/231-73.pdf |
| 564. | [Class Certification 03142018]/[Pleadings]/231-74.pdf |
| 565. | [Class Certification 03142018]/[Pleadings]/231-75.pdf |
| 566. | [Class Certification 03142018]/[Pleadings]/231-76.pdf |
| 567. | [Class Certification 03142018]/[Pleadings]/231-77.pdf |
| 568. | [Class Certification 03142018]/[Pleadings]/231-78.pdf |
| 569. | [Class Certification 03142018]/[Pleadings]/231-79.pdf |
| 570. | [Class Certification 03142018]/[Pleadings]/231-8.pdf |
| 571. | [Class Certification 03142018]/[Pleadings]/231-80.pdf |
| 572. | [Class Certification 03142018]/[Pleadings]/231-81.pdf |

**EXHIBIT 3**

| 573. | [Class Certification 03142018]/[Pleadings]/231-82.pdf |
| 574. | [Class Certification 03142018]/[Pleadings]/231-83.pdf |
| 575. | [Class Certification 03142018]/[Pleadings]/231-84.pdf |
| 576. | [Class Certification 03142018]/[Pleadings]/231-85.pdf |
| 577. | [Class Certification 03142018]/[Pleadings]/231-86.pdf |
| 578. | [Class Certification 03142018]/[Pleadings]/231-87.pdf |
| 579. | [Class Certification 03142018]/[Pleadings]/231-88.pdf |
| 580. | [Class Certification 03142018]/[Pleadings]/231-89.pdf |
| 581. | [Class Certification 03142018]/[Pleadings]/231-9.pdf |
| 582. | [Class Certification 03142018]/[Pleadings]/231-90.pdf |
| 583. | [Class Certification 03142018]/[Pleadings]/231-91.pdf |
| 584. | [Class Certification 03142018]/[Pleadings]/231-92.pdf |
| 585. | [Class Certification 03142018]/[Pleadings]/231-93.pdf |
| 586. | [Class Certification 03142018]/[Pleadings]/231-94.pdf |
| 587. | [Class Certification 03142018]/[Pleadings]/231-95.pdf |
| 588. | [Class Certification 03142018]/[Pleadings]/231-96.pdf |
| 589. | [Class Certification 03142018]/[Pleadings]/231-97.pdf |
| 590. | [Class Certification 03142018]/[Pleadings]/231-98.pdf |
| 591. | [Class Certification 03142018]/[Pleadings]/231-99.pdf |
| 592. | [Class Certification 03142018]/[Pleadings]/232 Memo.pdf |
| 593. | [Guha Deposition]/Exhibit 1.pdf |
| 594. | [Guha Deposition]/Exhibit 2.pdf |
| 595. | [Guha Deposition]/Exhibit 3.pdf |
| 596.. | [Guha Deposition]/RAHUL K. GUHA,PH.D., ct.pdf |
| 597. | [Guha Deposition]/RAHUL K. GUHA,PH.D., full.pdf |
| 598. | [Ricchetti Deposition]/BRYAN RICCHETTI, PH.D., ct.pdf |
| 599. | [Ricchetti Deposition]/BRYAN RICCHETTI, PH.D., full.pdf |
| 600. | [Ricchetti Deposition]/Ricchetti 001.pdf |
| 601. | [Ricchetti Deposition]/Ricchetti 002.pdf |
| 602. | [Ricchetti Deposition]/Ricchetti 003.pdf |
| 603. | [Ricchetti Deposition]/Ricchetti 004.pdf |
| 604. | [Ricchetti Deposition]/Ricchetti 005.pdf |
| 605. | [Ricchetti Deposition]/Ricchetti 006.pdf |
| 606. | [Ricchetti Deposition]/Ricchetti 007.pdf |

**EXHIBIT 3**

| 607. | [Ricchetti Deposition]/Ricchetti 008.pdf |
|------|------------------------------------------|
| 608. | [Ricchetti Deposition]/Ricchetti 009.pdf |
| 609. | [Ricchetti Deposition]/Ricchetti 010.pdf |
| 610. | [Ricchetti Deposition]/Ricchetti 011.pdf |
| 611. | [Ricchetti Deposition]/Ricchetti 012.pdf |
| 612. | Agency Codes for Other Arrests in 2012-2017.csv |
| 613. | Arrests 2012-2017 (Other Agencies Only).csv |
| 614. | Complaint Searchable.pdf |
| 615. | FY16 MOHS Grant Application.docx |
| 616. | Jail Docket 2012-2017 (MCSD ARRESTS ONLY).CSV |
| 617. | Madison County Justice Court Citations 2012-2017.xlsx |
| 618. | Master CAD Report.csv |
| 619. | Roadblock Locations from 1.1.12 through 8.24.17.csv |
| 620. | US v Johnson II.pdf |
| 621. | 12-21-17 - Brown - Tucker - Compressed.pdf |
| 622. | 12-21-17 - Brown - Williams - Compressed.pdf |
| 623. | 12-21-17 - Brown - Sandridge - Compressed.pdf |
| 624. | 12-21-17 - Brown - Thompson - Compressed.pdf |
| 625. | Declaration of Mark Sandridge |
| 626. | 2018 05 02 Letter to Defs. with Enclosure.pdf |
| 627. | Letter to Kavitha Sivashanker 04252018.pdf |

**EXHIBIT 3**

**Exhibit C: Signed Declaration**

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LATOYA BROWN, et al.                                          **PLAINTIFFS**

v.                                              CIVIL ACTION NO. 3:17-cv-347 WHB LRA

MADISON COUNTY, MISSISSIPPI; et al.                          **DEFENDANTS**

## DECLARATION OF DWIGHT STEWARD

I, Dwight Steward, make the following declaration based on personal knowledge:

1.      I have been retained by the Defendants in the above referenced matter as expert.  I submit that the foregoing Report Regarding Dr. Rahul Guha's Declaration from May 8, 2018 is a true and accurate copy of the report I provided to Defendants in this matter.  I declare that the information and opinions contained in the report are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

May 8, 2018

DWIGHT STEWARD

**EXHIBIT 3**

# EXHIBIT 4

Mark S. Dunston
PO Box 1706
Ocean Springs, MS 39566
(228) 348.1189

T. Russell Nobile
Wise Carter Child & Caraway, P.A.
2510 14th Street, Suite 1125
Gulfport, MS  39501

May 8, 2018

Mr. Nobile,

As requested, I have reviewed the materials you provided me in reference to *Brown, et.al. v. Madison County, et.al*.  After reviewing those materials, I have reached certain opinions and offer the following:

1.      Qualifications

-      I am a certified law enforcement officer and trainer, beginning my career in law enforcement in 1984.
-      In my career I have served as a patrol officer, a narcotics detective, academy trainer, academy director, SWAT team member, SWAT commander, sergeant, captain, and chief of police.
-      As a law enforcement trainer, I have trained thousands of federal, state, and local law enforcement officers from every state in the United States, the territories of Puerto Rico and the U.S. Virgin Islands, and internationally, including Hong Kong, China, Canada and Brazil.
-      I have trained law enforcement officers in person and through training media including television, video and written word on topics including police use of force, officer survival, and arrest procedures.
-      As a law enforcement executive I have written, enacted and enforced numerous policies and procedures relative to the operation of a law enforcement agency.
-      I am a graduate of the 191st session of the FBI National Academy.
-      I am a graduate of the 20th Senior Management Institute for Police.
-      I have authored numerous articles published in national law enforcement periodicals.
-      I am the author of one book and contributing author to two additional books on law enforcement.
-      My work has been cited in other authors' works.

1

EXHIBIT 4

- I have conducted, delivered and published research on issues concerning police use of force and officer survival.
- I have lectured and delivered research findings at national and international professional peer association conferences.
- I have testified in both state and federal court districts in five states on the topics of police and security procedures, use of force, and policy.
- I have included my curriculum vitae and fee schedule with this document

2. Testimony Previous Four Years

- McClain v. MS Highway Patrol
- Burton v. City of Jackson, MS and MS Bureau of Narcotics
- Williams V. City of Natchez, MS
- Gammel v. Coahoma Co. Community College, MS
- State of CA vs. Deputy Dayle Long
- Skinner v. Hinds CO SO, MS
- Salvato v. Marion CO, FL
- Hasskamp v. Orange CO, FL
- Brown v. Orange CO, FL
- Washington v. City of Waldo, FL
- State of MS v Terry Beadles
- Hale v City of Biloxi, MS
- Patel v. City of Madison, AL
- Perez v Collier Co., FL
- Hajali v. New Castle Co. and Daller
- Docher v St. Lucie County, FL

3. Material Reviewed

- Complaint
- Thomas' Second Request Supplemental Responses
- Tucker's Second Request Supplemental Responses
- Manning's Second Request Supplemental Responses
- Brown's Second Request Supplemental Responses
- Blackmon's Third Supplemental Responses
- Singleton's Second Supplemental Responses
- Manning's Second Supplemental Responses
- Smith's Second Supplemental Responses
- Pate Declaration
- Day Declaration
- Dr. Ricchetti's Expert Report
- Depositions:
  - Defendant's 30(b)6
  - Chandler

2

**EXHIBIT 4**

- Thomas
- Tucker
- Sullivan
- D. Smith
- Thompson
- Flax
- Gibson
- Williams
- Hall
- Waldrop
- Fish
- K. Manning
- Brown
- Blackmon
- Sandridge
- Singleton
- Griffin
- Q. Manning
- Sheriff Tucker
- Howard
- Moore
- S. Smith
- Wilson
- Jones
- Squires
- Baxter
- Weisenberger
- Lyons
- Loveall
- Barnes
- Freeman
- McDonald
- Dr. Ricchetti
- Dr. Guha
- Dr. Guha Declaration
- Affidavits
  - Spann
  - Harris
  - Hollins
  - Bracey
  - Tillman
  - Q. Smith
  - Davis
  - Thompson
  - Guise
  - Davis

3

<span style="color:red">EXHIBIT 4</span>

- Carter
- McDonald

- Declarations
  - Blackmon
  - L. Brown
  - K. Manning
  - Q. Manning
  - N. Singleton
  - S. Smith
  - B. Thomas
  - B. Tucker
  - J. Bacon
  - M. Bracy
  - A. Brown
  - B. Brown
  - W. Carter
  - R. Davis
  - V. Davis
  - D. Day
  - D. Doss
  - U. Guise
  - K. Harris
  - L. Hollins
  - A. Howard
  - D. Jones
  - L. Jones
  - A. McKay
  - A. Mitchell
  - E. Pate
  - D. Smith
  - Q. Smith
  - J. Spann
  - T. Thompson
  - M. Tillman
  - E. Wilder
  - M. Williams

- MCSO CAD Report
- Excel Printout of Citations 2012-2017
- Complaints File
- MCSO Incident Reports 2012-2017
- MCSO Jail Docket 2013-2016
- MCSO Emails
- MCSO Narcotics Reports
- Citizen Requests for MCSO Enhanced Service

4

**EXHIBIT 4**

-       MCSO Roadblock Locations 1/6/12-8/24/17
-       Plaintiffs' Motion for Class Certification and Memorandums
-       Defendant's Motion and Filings for Summary Judgement

4.       Assignment

I was asked to review the above listed material and conduct a site visit in order to offer my opinion on Madison County Sheriff's Office (MCSO) policies and practices including, among other things, MCSO checkpoint/roadblock protocols; data collected on MCSO traffic citations and arrests, both discretionary and non-discretionary; warrant arrests and warrantless arrests; the difference between initial arrests, post-indictment capias arrests, and post-conviction arrests; specific arrests presented in videos of those arrest incidents.

I employed comparative methodology in determining my opinions relating to the plaintiffs' claims and in measuring the agency's practices and individual officer's actions. This method of comparing the agency's practices and officer's actions of against that, which is generally, accepted practice and training in the law enforcement profession is a common and consistently applied method when evaluating a law enforcement agency's practices and an officer's actions.  I have also relied upon my thirty-four plus years of law enforcement, my training, experience and education, as well as my having trained more than forty thousand law enforcement officers and law enforcement executives from every state in the United States as well as other countries utilizing well known and regarded training programs, and my personal knowledge of the training and operational standards in the law enforcement profession.  Therefore, all of my opinions are within a reasonable degree of professional certainty.

## REVIEW OF MADISON COUNTY SHERIFF'S OFFICE

### 1.       Overview of MCSO Policies and Procedures and Practices

I reviewed the MCSO policy manual and found the policies to be consistent with those found throughout the law enforcement profession, particularly those agencies within the State of Mississippi.  As a law enforcement executive who regularly reviews policy manuals and researches current best practices in the law enforcement profession, I approve of the MCSO policies and would consider those policies operationally sound. Also, as a trainer who has trained policy management and risk management for law enforcement agencies around the United States, I consider MCSO's policies to be within the parameters that I have instructed.

### 2.       Plaintiffs' Claims Related to MCSO Policies, Customs and/or practices.

I was also asked to review the Plaintiffs' claims related to MCSO's policies, customs, and practice.  The Plaintiffs set forth several contentions regarding allegedly deficient policies

5

**EXHIBIT 4**

by the MCSO.  Below I address each specific contention identified in Plaintiffs' Second Supplemental Responses and Objections to Defendants' First Set of Interrogatories. This is document 234-2 in the record.  Each contention (a through i) is listed in below in bold.

> **a.    The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks without appropriate procedural safeguards, including (i) roadblocks conducted using unmarked cars, (ii) roadblocks conducted using cars without emergency lighting engaged and/or using flashlights as a primary light source, (iii) roadblocks conducted by plainclothes or undercover officers, including narcotics officers and members of the "NET Team," "Jump Out Detail," and/or "Apartment Detail," (iv) roadblocks conducted in inadequately lit areas, (v) "roving" roadblocks, and (vi) roadblocks at which officers do not stop every car, but instead use their discretion to only stop certain vehicles.**

It is unclear what plaintiffs mean by "appropriate procedural safeguards." Appropriateness varies tremendously depending on countless factors, such as available manpower, objective, location, time of day, weather, whether there are exigent circumstances, funding for operation, or concerns about officer safety. This is not an exhaustive list of factors that influence whether law enforcement operations are "appropriate."  Further, for a policy and practice to be effective it needs to incorporate the use of officer discretion.  The failure to accommodate officer discretion will rob law enforcement actions of valuable insight while undermining effectiveness and, potentially, increasing risk to officers and the public.

The fact that law enforcement agencies use unmarked law enforcement vehicles for safety checkpoints sometimes does not violate any standard.  MCSD always uses cars with blue lights on.  The policies and practices for law enforcement agencies must allow for officer discretion given that situations where law enforcement actions are taken vary greatly.  The tactics deployed by law enforcement professionals often depend on the circumstances and situation on the ground.  Law enforcement professionals rarely work in ideal situations. National and local policies to ensure effective enforcement must allow for officers' discretion.   The use of unmarked law enforcement vehicles for checkpoints is not uncommon in the law enforcement profession.  I do not know of any policies that mandate that plain clothes officers cannot conduct checkpoints so long as they have clothing that make them readily visible to oncoming motorists.   Again, how each checkpoint is executed depends on numerous factors and the immediate circumstances.

I conducted a site survey and review along with MCSO personnel of many of the specific locations used for checkpoints, including those in and around Canton Estates.  I have personal experience conducting, managing, and reviewing similar operations in similar situations.  As a law enforcement executive who regularly reviews such issues, I would approve of the locations visited.

**EXHIBIT 4**

The plaintiffs claim that MCSO deputies should be stopping every vehicle driving through a checkpoint, but instead use deputies' discretion to stop certain vehicles.  This assertion is not supported by the evidence.[1]  But, regardless I do not see any support from Plaintiffs for this position.  Officers must be allowed to use their discretion in carrying out law enforcement activities.  Preventing law enforcement officers from using their discretion at checkpoints would cause significant problems and limit the effectiveness of these operations and reduce efficiency.  I am aware of no policy that mandates all cars must be stopped in all situations, but understand that the MCSD stops all cars approaching a checkpoint unless traffic is backed up or all officers present at the checkpoint are busy investigating drivers.  It is a common practice, and is trained throughout the law enforcement profession, that officers predetermine the frequency of vehicles being selected for stopping at a checkpoint.  This may include every vehicle, but more often than not it is a frequency determination of every other vehicle, every third vehicle, etc. Situational issues (e.g., traffic flow, weather) and resources (e.g., manpower) often necessitate that officers not stop every vehicle.

> **b.      The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks at which officers require persons other than the driver to produce identification or provide other information, or otherwise search or detain persons without reasonable suspicion or probable cause.**

Law enforcement officers throughout the profession are trained on the legality of issues pertaining to traffic stops.   As a law enforcement trainer, I have instructed law enforcement officers throughout the country on traffic stop practices.  Part of that training is related to the passengers in a vehicle.  Training of this type is generated from the United States Supreme Court case of Maryland v. Wilson 519 US 408 (1997), in which the Court advised that, *(i)n summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.*

This ruling allows a law enforcement officer to safely adapt to any given situation on a traffic stop or other vehicle related encounter.  For example, with this ruling, officers can order all passengers out of a vehicle suspected of being involved in a violent crime, or as a matter of caution, be able to order passengers out of a vehicle that is equipped with illegally dark tinted windows through which the officer cannot view the vehicle's occupants.

---

[1] Out of the 20 MCSD officers who were deposed by plaintiffs, only one narcotics officer, Josh Fish, testified that he did not stop every car that passes through a checkpoint.  Furthermore, Sheriff Tucker testified that his officers must stop every **vehicle** and check **each** driver's license, unless of course, traffic backs up unduly.  Tucker Depo., 129:10-15).

**EXHIBIT 4**

    **c.    The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks at which Madison County Sheriff's Department personnel stop, question, detain, and/or search pedestrians in the vicinity of the roadblock without reasonable suspicion or probable cause and/or on the basis of race.**

It is my understanding the pedestrian field interviews conducted by MCSO deputies during checkpoints has been in response to investigating trespassing and other complaints from property managers who previously requested MCSO's assistance with such matters or because a pedestrian appears impaired or is interfering with the checkpoint or officer safety.  This type of law enforcement activity is common in locations where property owners or property managers request assistance with ensuring trespassers, etc. are not loitering on their properties.  I reviewed no material in this case that would cause me, as a law enforcement executive or trainer, to support the argument that MCSO has a policy, custom or practice as an organization of conducting pedestrian stops without reasonable suspicion, or merely conducting a consensual encounter inquiry.

Law enforcement officers are instructed that reasonable suspicion is not precisely defined, however, as pointed out in Attorney Devallis Rutledge's POLICE Magazine June 7, 2011 article:

> *The term "reasonable suspicion" is not of constitutional derivation but was fashioned by the court to describe a level of suspicion lower than probable cause. The court has struggled to provide meaningful definitions of both terms, and law enforcement officers have likewise struggled to understand and apply the court's vague, general pronouncements. In Ornelas v. U.S., the court acknowledged the problem:*

>> *"Articulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible. They are commonsense, non-technical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. As such, the standards are not readily, or even usefully, reduced to a neat set of legal rules." (Ornelas v. U.S.)*

Rutledge continued:

> *"(a)s with the concept of "probable cause," the lower standard of "reasonable suspicion" was not easily defined. "The concept of reasonable suspicion, like probable cause, is not readily or even usefully reduced to a neat set of legal rules," but "the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause." (U.S. v. Sokolow)*

> *The court has said that both the quantity and the quality of information constituting reasonable suspicion may be below the level needed for PC. "Reasonable suspicion is a less demanding standard than probable cause*

8

<span style="color:red">**EXHIBIT 4**</span>

> *not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." (Alabama v. White)* (Policemag.com 6/7/11)

> **d.     The Madison County Sheriff's Department's policy, custom, and/or practice of stopping, questioning, detaining, and/or searching pedestrians travelling through majority-Black areas of Madison County without reasonable suspicion or probable cause and/or on the basis of race, including as implemented by narcotics officers and members of the "NET Team," "Jump Out Detail," and/or "Apartment Detail."**

I reviewed no material in this case that would cause me, as a law enforcement executive or trainer, to support the argument that MCSO has a policy, custom or practice of conducting pedestrian stops without reasonable suspicion.  In the case of preventing trespassing on properties whose management or ownership has requested enhanced law enforcement presence, this is a practice that is commonly found in law enforcement.  Agencies generally receive written requests and permission to enforce trespassing and other nuisance investigations on commercial and privately-owned properties.

> **e.     The Madison County Sheriff's Department's policy, custom, and/or practice of conducting vehicular roadblocks for the purpose of checking for outstanding warrants, including but not limited to as described in the Notices produced at (i) MC T. CHASTAIN LAPTOP 17, (ii) MC MAD. COUNTY MAIN SERVER 1, and (iii) MC – SANDRIDGE DESKTOP 23, as well as the Notice annexed to the Complaint and the incident report produced at Bates numbers MC-RFP-Inc. Rep. 010886-010887.**

Law enforcement as a profession is generally guided and trained on conducting checkpoints from United States Supreme Court case law in the cases of *Indianapolis v. Edmonds* 532 U.S. 32 (2000) and *Michigan State Dept. of Police v. Sitz* 496 U.S. 444 (1990).  From *Edmonds*, the Court guides that:

> *(a) The rule that a search or seizure is unreasonable under the Fourth Amendment absent individualized suspicion of wrongdoing has limited exceptions. For example, this Court has upheld brief, suspicionless seizures at a fixed checkpoint designed to intercept illegal aliens,* United States *v.* Martinez-Fuerte, *428 U. S. 543, and at a sobriety checkpoint aimed at removing drunk drivers from the road,* Michigan Dept. of State Police *v.* Sitz, *496 U. S. 444. The Court has also suggested that a similar roadblock to verify drivers' licenses and registrations would be permissible to serve a highway safety interest.* Delaware *v.* Prouse, *440 U. S. 648, 663. However, the Court has never approved a checkpoint program whose*

9

<span style="color:red">**EXHIBIT 4**</span>

*primary purpose was to detect evidence of ordinary criminal wrongdoing. Pp. 3-7.*

*(b) The latter purpose is what principally distinguishes the checkpoints at issue from those the Court has previously approved, which were designed to serve purposes closely related to the problems of policing the border or the necessity of ensuring roadway safety. Petitioners state that the* Sitz *and* Martinez-Fuerte *checkpoints had the same ultimate purpose of arresting those suspected of committing crimes. Securing the border and apprehending drunken drivers are law enforcement activities, and authorities employ arrests and criminal prosecutions to pursue these goals. But if this case were to rest at such a high level of generality, there would be little check on the authorities' ability to construct roadblocks for almost any conceivable law enforcement purpose. The checkpoint program is also not justified by the severe and intractable nature of the drug problem. The gravity of the threat alone cannot be dispositive of questions concerning what means law enforcement may employ to pursue a given purpose. Rather, in determining whether individualized suspicion is required, the Court must consider the nature of the interests threatened and their connection to the particular law enforcement practices at issue. Nor can the checkpoints' purpose be rationalized in terms of a highway safety concern similar to that in* Sitz*, or merely likened to the antismuggling purpose in* Martinez-Fuerte*.    Neither* Whren *v.* United  States, *517  U. S.  806, nor* Bond *v.* United  States, *529  U. S.  334, precludes an inquiry into the checkpoint program's purposes. And if the program could be justified by its lawful secondary purposes of keeping impaired motorists off the road and verifying licenses and registrations, authorities would be able to establish checkpoints for virtually any purpose so long as they also included a license or sobriety check. That is why the Court must determine the primary purpose of the checkpoint program. This holding does not alter the constitutional status of the checkpoints approved in* Sitz *and* Martinez-Fuerte*, or the type of checkpoint suggested in* Prouse*. It also does not affect the validity of border searches or searches in airports and government buildings, where the need for such measures to ensure public safety can be particularly acute. Nor does it impair police officers' ability to act appropriately upon information that they properly learn during a checkpoint stop justified by a lawful primary purpose. Finally, the purpose inquiry is to be conducted only at the programmatic level and is not an invitation to probe the minds of individual officers acting at the scene.*

MCSO's practice has been to conduct safety checkpoints throughout the county, which Dr. Ricchetti's report confirms in paragraph 38.  If during the course of the checkpoints they perform a driver's license inquiry or warrants check on an individual during the checkpoint encounter, law enforcement officers are generally, according to the Court, acting appropriately upon information they properly learn during the checkpoint when justified by a lawful primary purpose.  As a law enforcement executive who has trained

**EXHIBIT 4**

hundreds of law enforcement executives on risk management and quality practices, I approve of a law enforcement officer inquiring further on the Mississippi Criminal Justice Information System, or any other common source for such information, if that officer is conducting the initial checkpoint encounter for a legitimate law enforcement purpose. The MCSO policy and practice appear for this to be performed in this manner.

When a checkpoint notice specifically stated warrants checks for a purpose of the checkpoint, it was rejected by MCSO command and remanded for corrective action.  This is exactly how law enforcement managers and supervisors should oversee line officers. Further, I am aware of no legal requirement to post notices of check points.  Most agencies do not, in my experience.

> **f.     The Madison County Sheriff's Department's policy, custom, and/or practice of disproportionately conducting traffic stops in majority-Black areas, conducting pretextual traffic stops on the basis of race, and disproportionately issuing citations to and making arrests of Black individuals during traffic stops.**

I address my opinion of this plaintiffs' claim below in Section 4 of my report, below.

> **g.     The Madison County Sheriff's Department's policy, custom, and/or practice of discriminatorily arresting, citing, and/or charging Black individuals at higher rates, and/or with greater severity, than white persons engaged in the same or similar conduct.**

I address my opinion of this plaintiffs' claim below in Section 4 of my report, below.

> **h.     The Madison County Sheriff's Department's policy, custom, and/or practice of entering the homes of Black residents of Madison County without warrants or other valid legal justification in the course of serving warrants and/or conducting investigations, and of conducting unreasonable and warrantless searches of such premises in connection therewith.**

Law enforcement officers throughout the profession are trained on when an officer may enter a person's residence to serve an arrest warrant, for a felony or misdemeanor.  This training is generated from the United States Supreme Court case of *Payton v. New York*, 445 U.S. 573 (1980) from which officers learn that:  *(A)n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.*

Because Mississippi law enforcement officers work within the 5th Circuit Court of Appeals area, they are also guided by 5th Circuit Court of Appeals rulings, such as *United States v. Woods*. In *Woods*, the 5th Circuit Court of Appeals stated the following:

11

EXHIBIT 4

> *Due to the lack of authority on point, it is difficult to define the Payton "reason to believe" standard, or to compare the quantum of proof the standard requires with the proof that probable cause requires. We think it sufficient to hold that in order for law enforcement officials to enter a residence to execute an arrest warrant for a resident of the premises, the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry… In evaluating this on the spot determination, as to the second Payton prong, courts must be sensitive to common sense factors indicating a resident's presence.*

The MCSO's serving of arrest warrants at an arrestee's residence, and in doing so, entering the arrestee's residence to look for the arrestee is consistent with that which is trained to law enforcement officers throughout the profession.

As is claimed in the Blackmon complaint, MCSO Deputy Scott McDonald and Lt. Jeff Waldrop went to 320 Martin Luther King, Jr. Dr. to serve an arrest warrant on Herbert Anthony Green, who the issuing court specifically indicated, on the warrant, resided at that address.  Upon attempting to serve the arrest warrant, the deputies encountered Mr. Blackmon at the entrance door to the residence.  Mr. Blackmon resisted the deputies' entering the residence, further causing the deputies to believe Mr. Blackmon was Mr. Green.  After showing Mr. Blackmon the warrant and gaining entry into the house the deputies temporarily detained Mr. Blackmon in handcuffs while the deputies determined Mr. Blackmon's identity and secured the residence looking for Mr. Green.

After no more than fifteen to twenty minutes, according to Mr. Blackmon's testimony, the deputies did not locate Mr. Green, determined Mr. Blackmon was not Mr. Green, and released Mr. Blackmon from a temporary detention.  Approximately one month later, Mr. Green was arrested at 320 Martin Luther King, Jr. Drive.

Law enforcement officers are instructed by SCOTUS case law, as I previously discussed, on matters concerning entering a residence listed as the address for a person wanted by a court on a warrant.  As a law enforcement trainer, giving my students the same scenario as faced by Deputy McDonald and Lt. Waldrop, would direct my students to the same, or similar, conclusion.  As a law enforcement executive, I approve of the deputies' actions.

**i.     The Madison County Sheriff's Department's deliberate indifference to violations of the Fourth and Fourteenth Amendments by its personnel, as demonstrated by (i) the Madison County Sheriff's Department's failure to adequately train, supervise, and/or discipline officers with respect to unconstitutional policing practices and with respect to officers' exercise of discretion in conducting law enforcement activities, (ii) the Madison County Sheriff's Department's failure to adequately investigate or otherwise respond to citizen complaints, (iii) the Madison County Sheriff's Department's failure to maintain data**

12

**EXHIBIT 4**

**and/or statistics regarding incidents involving the use of force and the racial composition of persons subject to the Madison County Sheriff's Department's policing activities, and (iv) the Madison County Sheriff's Department's culture of racial discrimination and of explicitly or implicitly condoning, authorizing, and/or acquiescing to racially discriminatory attitudes, statements, and actions by Madison County Sheriff's Department personnel.**

The plaintiffs claim that the MCSO is deliberately indifferent towards its citizens exhibited by a lack of training, supervision and complaint investigation. As to MCSO's training, the sworn officers of the MCSO are certified by the Mississippi Board on Law Enforcement Officers Standards and Training (BLEOST). Statutorily, the only training required for sheriff's deputies in the State of Mississippi is basic certification training. Any in-service or advanced training for a deputy past that initial certification is above the statutory requirements.

One training issue specifically mentioned by plaintiffs is the lack of training on discretionary decisions to conduct a traffic stop, write a citation, etc. As a trainer who has taught at several academies in the State of Mississippi and directed the training at two of those academies, I am not aware of any academy in the state or elsewhere that has a course on discretion. An officer's discretionary decisions are based on that officer's perception of what is occurring at that moment of contact with a person on a call or a motorist on a traffic stop. As an executive, I am aware that an officer's discretion to give a warning or issue a citation or make an arrest is the ultimate authority given to law enforcement officers.

MCSO's supervisory practices are similar to those found throughout law enforcement agencies within the State of Mississippi. MCSO supervisors review and approve or remand reports filed by deputies, supervisors respond to scenes in support of deputies and in response to requests for supervisors after uses of force.

Complaints filed with the MCSO are directed by the Sheriff to Chief Deputy Williams. The complaints outlined in the plaintiffs' claims reflect that Chief Williams was aware of the complaints and after making his review, made a decision on the individual complaint's merits. This action is similar to what is found in sheriff's offices throughout the state. MCSO also has a process documenting use of force. Officers must complete a use of force report for any action that involves deployment of taser or discharge of MCSO firearms. Each use of force report is reviewed by supervisors.

As noted above, I reviewed MCSO Policies and Procedures Manual. Section 34(c) provides that "Law enforcement officers will remember that he/she are sworn to protect and serve all citizens of this community equally. Race, color, religion, age, sex, political belief or other personal opinions shall not interfere with the equal administration of justice to all citizens within this jurisdiction."

**3.      Sobriety/Safety Checkpoint Protocols.**

13

**EXHIBIT 4**

I reviewed MCSO's Policy and Procedures Manual, Part 2, Tab A, Sobriety Checkpoint Guidelines.  The MCSO Checkpoint Policy contains directions that are consistent with those recommended by the National Highway Traffic Safety Administration's (NHTSA) "*Saturation Patrols and Sobriety Checkpoints Guide, A How-to Guide for Planning and Publicizing Impaired Driving Enforcement Efforts*" (2002).   (See Attachment 1 to my report)

Additionally, model policies offered to agencies throughout the country possess language and directions similar to those found in MCSO's policy.  One such model policy, offered by the Legal and Liability Risk Management Institute, and the Kentucky League of Cities, states in the opening:  *It shall be the policy of this law enforcement agency to implement a traffic safety checkpoint program. This will be done as part of a comprehensive enforcement program. To ensure standardization of this program a clear and concise set of written guidelines has been developed governing procedures on how checkpoints will be operated within this jurisdiction.*  This is similar to that used by MCSO.

Further in the model policy, similar to MCSO's policy, it states:

> *To implement this policy this agency must:*
> **a.** *Satisfy federal, state and local legal requirements.*
> **b.** *Conduct checkpoints with a minimal amount of intrusion or motorist inconvenience.*
> **c.** *Assure the safety of the general public as well as law enforcement Officers/deputies involved.*
> **d.** *Provide for an objective site selection process based on relevant data.*

The Kentucky Model Policy continues with several similarities to MCSO's policy.  (See attachment 2 to my report).

My review of the materials in this case indicates to me that the plaintiffs are confusing or comingling the terms traffic stop and checkpoint, or roadblock.  There are distinct differences in the two practices and in how the actions take place.  A traffic stop is a discretionary act by an officer who has observed or has reasonable suspicion to believe, a motorist has committed a violation of a state statute or local ordinance.  Traffic stops are generally singular in nature, meaning an officer in a patrol car signals a driver by means of emergency warning equipment on the police vehicle to pull to the side of the road or other safe location.

Mississippi statutes generally address some of these issues in the following statutes:

> <u>*Miss. Code Ann. 99-3-3 Time or Place*</u>: Arrests for criminal offenses, and to prevent a breach of the peace, or the commission of a crime, may be made at any time or place.

14

<span style="color:red">**EXHIBIT 4**</span>

*99-3-1 Who May Make Arrests*:  Arrests for crimes and offenses may be made by the sheriff or his deputy or by any constable or conservator of the peace within his county, or by any marshal or policeman of a city, town or village within the same, or by any United States Marshal or Deputy United States Marshal, or, when in cooperation with local law enforcement officers, by any other federal law enforcement officer who is employed by the United States government, authorized to effect an arrest for a violation of the United States Code, and authorized to carry a firearm in the performance of his duties. Private persons may also make arrests.

*99-3-43 Criminal History Background Check to be Conducted*: (1)  When a state, county or local law enforcement officer stops a person with the intent to effectuate an arrest of the person, if the officer has the capability of doing so, the officer shall, at the time of the stop or as soon as possible thereafter, conduct a criminal history background check on the person being arrested using the National Crime Information Center (NCIC) database. If the stop results in the officer arresting the person, the officer shall make a notation of the person's criminal history at the time of arrest. If the criminal history cannot be obtained at the time of the arrest, it must be accessed and noted at the person's booking. The Federal Bureau of Investigation arrest numbers or system identification numbers of prior arrests or convictions shall be noted and become a part of the person's law enforcement record until the disposal of the matter giving rise to the grounds for arrest. A copy of the person's NCIC driver's license query shall become a part of the person's law enforcement record until the disposal of the matter giving rise to the grounds for arrest.

(2)  Subsection (1) of this section shall apply without regard to whether the person:
  (a)  Is arrested for a misdemeanor or felony offense;
  (b)  Is issued a citation in lieu of continued custody; or
  (c)  Is arrested without a warrant.

Conducting a safety checkpoint or roadblock generally involves an officer, or officers, in a generally fixed location stopping motorists as the motorists approach the checkpoint location.  Generally, officers utilize a guideline for which vehicles will be stopped and which will pass unchecked.  Vehicles and drivers who require further investigation, such as drivers who approach the checkpoint and do not possess a driver's license, will be moved to a pull off location out of the way of traffic.

While a traffic stop will take place depending on the location of the traffic violation, checkpoints are generally set up in locations where the law enforcement agency has determined it is needed in response to varying factors.  There are numerous factors that go into this decision, as mentioned above. These factors can include citizen complaints about traffic violators, officer safety, traffic flow, weather, personnel available to conduct,

15

**EXHIBIT 4**

DUI grant functions (especially those functions required by grant funding agencies for specific targeted holidays and dates), near bars and nightclubs, late-night restaurants, and areas of special concern, such as places where there is a potential for pedestrians to be in harm's way.  For example, larger churches in communities where the church is located on a road where traffic is an issue, or a school zone where there are children crossing the streets and being dropped off near or at the school.  Checkpoints can be located anywhere, but often are not physically in the middle of intersections where traffic would approach from 360 degrees.  Checkpoints commonly are located on a road approaching an intersection near somewhere that allows room for officers to operate and pull people to the side.  Given the location, there is not always room to pull completely off.  Determining checkpoint locations is often the role of a shift, or unit, supervisor.  For example, an agency with a specific traffic unit will generally authorize the traffic unit supervisor to make such determinations.    It is my understanding that Deputy Sandridge and Deputy Thompson have primary roles during the relevant time period.  Further, the location of a MCSO checkpoint is approved by a supervisor.

**4.      Arrests**

In Dr. Rahul Guha's analysis declaration, Appendix B, the percentages of arrests for black arrestees vs. non-black arrestees and the county's black population percentage there are several statutory offenses listed.  Dr. Guha's analysis indicates a high number of traffic offense arrests and citations for black motorists in Madison County.  For example, Dr. Guha's data shows that 88% of citations for not wearing a seatbelt were issued to black drivers and 94% for citations for not having children properly restrained in a moving vehicle.

This would appear, along with other numbers on Dr. Guha's charts, to superficially demonstrate bias toward black drivers.  However, his data does not provide any context or benchmark that would show similarly-situated Caucasian drivers.   As a law enforcement executive who regularly reviews such data for law enforcement management and resource allocation, I or any other law enforcement executive would also read with interest the data on what is commonly referred to as non-discretionary arrests.  A discretionary arrest, or citation, is an event that would more than likely start with an officer observing a violation of the law.  That officer then has the discretion to stop the person the officer sees breaking the law.  More often than not, this involves a traffic violation, or as an example, a person walking down the street intoxicated.  The officer then has the discretion to issue a citation, make an arrest, or give a warning or some other non-custodial remedy.   What matters to the review is how officers are exercising discretion, not all arrests or citations.

A non-discretionary arrest involves a criminal act that generally eliminates an officer's discretion to enforce the law and make an arrest.  Most non-discretionary arrests involve a crime victim, or victims.  For example, burglary, assault, aggravated assault, armed robbery and murder would be crimes affecting a victim.  Dr. Guha's analysis reflects non-discretionary arrests, or victim-based crimes, as equally high.  For example, arrest rates for black arrestees in Madison County are shown in Dr. Guha's analysis as arrests for

16

**EXHIBIT 4**

burglary 80%, simple assault 81%, aggravated assault 84%, shoplifting 83%, and armed robbery 95%.

I also have some concerns about Dr. Guha's lack of understanding with law enforcement data. His tables and calculations do not attempt to separate out the most important information, assuming such information is even available from the data he used, which I doubt. Each law enforcement agency and jurisdiction have their own unique processes for record keeping. His calculations are based on his assumption that the data is collected in manner that accommodates this type of tabulation and calculation. However, his type of over simplified calculations recognize that MCSO and local courts may not keep their records in a manner that accommodate these types of calculations and he would need to undertake local discussion with personnel to understand what type of sorting and arranging needs to be done to provide meaningful information for this type of review, assuming such information is even available.

For example, Exhibit 9 of Dr. Guha's Declaration claims he identified 102 unique traffic stops initiated for drivers or vehicle occupants not wearing safety restraints, which resulted in arrests. In this exhibit, Dr. Guha suggests he identified 102 arrests for seat belt violations. What is missing from Dr. Guha's analysis is the arrestees in these 95 incidents generally were arrested for charges other than a seatbelt or restraint violation. My review of the incident reports cited in Exhibit 9 revealed that a majority of those persons arrested were arrested for other offenses, not just seatbelt or restraint related violations. As is often the case in law enforcement incidents, the reason for the arrest has little or nothing to do with the initial reason for the encounter. In the Exhibit 9 incident reports, I read numerous drug related arrests, drivers arrested for not possessing a driver's license, outstanding warrants and people wanted by the Mississippi Department of Corrections (MDOC).

To a law enforcement executive these numbers reveal that the volume of discretionary, often officer-initiated, arrests are on par with those non-discretionary arrests made in response to victims seeking law enforcement to investigate and arrest their attacker or thief. Also, as an executive, I found Dr. Guha's statistical analysis to not include the fact that law enforcement executives must take into account the context of the data collected. Dr. Guha testified at deposition (106:5-107:23) that he finds context not feasible or sensible when looking at data collection. For a law enforcement executive, it is very important. For example, officers working in metropolitan statistical areas like Madison County, or the MS Gulf Coast, find themselves interacting, responding to calls and making investigative stops on persons from multiple jurisdictions. MCSO deputies do not just practice law enforcement on Madison County residents and it is not just Madison County residents committing infractions. Having that data separated would let a law enforcement executive view a larger picture of how enforcement is affecting citizens of his or her jurisdiction.

Importantly, every traffic stop, search, arrest, and citation is unique and must be evaluated on the individual facts. Lumping all of this data into vague concepts does not provide

**EXHIBIT 4**

sufficient information for a law enforcement professional to draw any reliable conclusion. This information is largely meaningless, even more so since neither Dr. Guha nor Dr. Ricchetti do not provide any analysis.

Additionally, the MCSO performs many services for citizens and property managers within Madison County who have specifically requested the MCSO to enhance law enforcement presence in their respective areas. A majority of these areas are majority black population. This would mean to me, as a law enforcement executive, that officers tasked with assisting the citizens and property managers who have requested enhanced law enforcement presence that officers would more often make contact with traffic violators and others who are black citizens.

Another factor to consider that would provide context for a law enforcement executive when determining how to allocate resources, such as a Neighborhood Enforcement Team, or enhanced patrol presence, is reviewing the population areas containing the higher crime rates, not arrests necessarily, but criminal activity reported to law enforcement.

*Targets Moving Through Justice System*
My review of the data on MCSO arrests included the arrests made on warrants and writs of capias. Generally, arrest data can become skewed due to the movement through the criminal justice system. For example, a person is arrested for a violation and booked into jail, then bonded out with an assigned court date. That person's arrest will show as an arrest. Then, if the person does not appear in court as ordered, the bench will issue a warrant for that person's arrest for failing to appear. Then, that person is arrested on the warrant, and will still have the original charge outstanding. If the person again fails to appear or fails to follow the sentence handed down by the court, another warrant will be issued by the bench. Such warrant arrests are considered non-discretionary for law enforcement officers and are not generated by a law enforcement officer, but by a judge or magistrate. Dr. Guha lumps these all together. MCSO are not exercising discretion when the grand jury indicts someone, or when someone pleads guilty to a crime or is otherwise booked into the jail post-conviction.

Additionally, if the person was initially arrested for a felony crime, their first arrest would be shown as an arrest, followed by the grand jury handing down a true-bill of the case against that person. This is an indictment, which creates another warrant, or capias. That person is again arrested and rebooked on the same charge. This can cause data to be skewed without separating the individual events that occur involving the same person. Another factor not addressed is the differentiation between stops and actual arrests. I have not read any data that indicates the number of stops, traffic or otherwise and how that correlates to citations and/or arrests. Nor have I reviewed any data suggesting which citation recipients or arrestees were not citizens of Madison County. This would be important to know since there are two interstates located in Madison County and it shares a major commercial corridor with neighboring Hinds County. The Census included Madison County in the five-county Jackson Metropolitan Statistical Area showing that even the Census Bureau does not view Madison County's population isolated as Dr. Guha's calculations suggest. Further, this says nothing about how those represented by

18

**EXHIBIT 4**

counsel and unrepresented people are processed through the system.  It would not be uncommon for those represented by counsel to be "arrested" fewer times as they move through the system.  This is something that Dr. Guha's calculations do not account for.  From his deposition he does not even seem to recognize this important factor, which would be important to know.

It is my opinion the percentage of discretionary citations and arrests reflected in the data listed in discovery directly correlate to the percentage of non-discretionary arrests and would indicate to me, or any other law enforcement executive, where law enforcement resources should be allocated.

Such law enforcement resources include specialized law enforcement units.  The MCSO has a unit entitled Neighborhood Enhancement Team (NET).  Many agencies employ the NET strategy in response to high crime neighborhoods.  NET activities are often decided by a number of factors, including neighborhood requests, business requests, crime statistics, majority of calls for service (especially 911 emergency calls) etc.  If the MCSO has a large amount of crime occurring in a particular part of Madison County, a law enforcement executive would direct NET resources to those areas.  NET, being a versatile unit, can be assigned to assist other department units including patrol when conducting safety checkpoints.  It is a common practice in the law enforcement profession for specialized units to participate with or conduct such duties, especially in well-known high-crime areas.

## 5.     Review of Specific Incidents

 a.     MCSO CAD 2015-4075

On March 19, 2015, Deputy Bradley Sullivan conducted a traffic stop after observing the driver of a vehicle operating the vehicle without wearing a seatbelt.  During the deputy's traffic investigation, the driver, Jaylan Milner refused to cooperate with Deputy Sullivan's requests for Jaylan Milner to roll down the driver's door window.  The passenger, Joshua Milner informed Deputy Sullivan that the window was cracked open and that was good enough.  At about this time, a Madison County Constable arrived to assist Deputy Sullivan with the traffic stop.

Deputy Sullivan requested Joshua's identification, to which, Joshua refused.  Deputy Sullivan approached the passenger side of the vehicle and requested that Joshua exit the vehicle.  Joshua verbally refused.  Deputy Sullivan then opened the passenger door and repeatedly requested Joshua to exit the vehicle.  After several attempts, Joshua exited the vehicle.

Deputy Sullivan then requested Joshua to submit to a pat-down, which Joshua verbally and physically resisted.  In response to Joshua's physical resistance, Deputy Sullivan, assisted by Constable Weisenberger, attempted to control Joshua by placing Joshua against the vehicle.  At about this point, Jaylan exited the driver's side and verbally threatened the officers.  Constable Weisenberger ultimately controlled Jaylan, while

**EXHIBIT 4**

Deputy Sullivan finally gained control of Joshua.  Both Jaylan Milner and Joshua Milner were arrested.

First, the reason for Deputy Sullivan conducting a traffic stop on the Milner vehicle was consistent with enforcement of Mississippi Statute 63-2-1, Safety Belt Usage, section 1, which states, *(w)hen a passenger motor vehicle is operated in forward motion on a public road, street or highway within this state, every operator and every passenger shall wear a properly fastened safety seat belt system, required to be installed in the vehicle when manufactured pursuant to Federal Motor Vehicle Safety Standard 208.*

Second, Deputy Sullivan's actions of leaving the driver and addressing the passenger for identification was consistent with what I have trained officers to do in similar situations. Requesting the passenger, in this case, Joshua Milner, to exit the vehicle is consistent with what law enforcement officers have been trained for the past twenty years based on the United States Supreme Court case of Maryland v. Wilson 519 US 408 (1997), in which the Court advised that, *(i)n summary, danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.*

Deputy Sullivan had requested Joshua Milner to produce identification, to which Joshua refused.  Deputy Sullivan repeatedly requested Joshua to exit the vehicle, which Joshua refused several times until finally exiting the vehicle, and when Deputy Sullivan requested Joshua to submit to a pat-down, Joshua physically resisted.  Joshua Milner's actions at this point could cause an officer to believe that Joshua had violated Mississippi Statute 97-35-7, Disorderly Conduct; failure to comply with requests or commands of law enforcement officers.

As a trainer I would direct my students to perform in a manner similar to that displayed by Deputy Sullivan during this stop.  As a law enforcement executive, who regularly reviews such actions, I would approve of Deputy Sullivan's actions when interacting with Jaylan and Joshua Milner.

b.      MCSO CAD 2016-2097, 2016-2098

On February 9, 2016 at around 2 a.m., MCSO Deputy Rylon Thompson observed an oncoming vehicle with high beam headlights on.  After signaling the driver to dim the headlights, but getting no response, Deputy Thompson conducted a traffic stop.  Deputy Thompson made contact with the driver, Rolanda Johnson and issued Ms. Johnson a citation for failing to dim the headlights.  Deputy Thompson's actions were consistent with other Mississippi law enforcement officers when enforcing Mississippi Statute 63-3-37 Multiple-beam road-lighting equipment; control by the operator.  The statute states: *Whenever a motor vehicle is being operated on a highway or shoulder adjacent thereto during the times specified by law, the driver shall use a distribution of light, or composite*

**EXHIBIT 4**

*beam, directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle, subject to the requirement that whenever the driver of a vehicle approaches an oncoming vehicle within five hundred feet, such driver shall use a distribution of light or composite beam so aimed that the glaring rays are not projected into the eyes of the oncoming driver.*

After issuing Ms. Johnson a citation, Deputy Thompson advised Ms. Johnson that Deputy Thompson smelled the aroma of marijuana coming from the vehicle. When Deputy Thompson inquired further, Ms. Johnson's answers and actions caused Deputy Thompson to request Ms. Johnson's consent to search the vehicle. Ms. Johnson consented. Deputy Thompson discovered a small amount of marijuana in the vehicle and charged Ms. Johnson with only possession of paraphernalia.

During the stop, MCSO Sergeant Slade Moore assisted Deputy Thompson. At some point during the stop, a male identified as Joseph Stuckey approached the stop location. After Sergeant Moore requested Mr. Stuckey to get out of the roadway and move to a safer place to observe the stop, Mr. Stuckey refused. Sergeant Moore arrested Mr. Stuckey for Mississippi Statute <u>97-35-7, Disorderly Conduct; failure to comply with requests or commands of law enforcement officers.</u>

Deputy Thompson's and Sergeant Moore's actions were consistent with what I have trained officers to perform in similar situations and as a law enforcement executive reviewing such actions, I would approve of their performance.

c.      MCSO CAD 2016-18449, 18450

On November 27, 2016 at around 1:20 a.m., MCSO Sergeant Slade Moore, along with several other MCSO deputies, were providing traffic safety on Interstate 55 at the scene of a motor vehicle accident. During the deputies' time at the scene, several family members associated with one of the accident vehicles arrived. Many of the family members were observed walking around both northbound and southbound lanes of Interstate 55, in the dark. For everyone's safety, Sergeant Moore requested everyone not involved in the accident to leave away from the scene, and for everyone involved in the accident to remain with one of the vehicles until the investigating state troopers could finish communicating with them.

Destiny Jones, a female involved in the accident, became disorderly and refused to comply with Sergeant Moore's requests. Additionally, Ms. Jones acted in a disorderly manner when an investigating state trooper requested Ms. Jones to exit the vehicle so the trooper could gather information.

Sergeant Moore arrested Ms. Jones for disorderly conduct. When attempting to physically arrest Ms. Jones, Ms. Jones pulled away from Sergeant Moore's attempts at control. At the same time, John Leach, Ms. Jones' husband physically interfered with Sergeant Moore's arrest of Ms. Jones. Ultimately, MCSO Deputy James Hall was able

EXHIBIT 4

to gain control of, and arrest, Mr. Leach and Sergeant Moore was able to control and arrest Ms. Jones.

The safety of persons at a traffic scene is of paramount importance to law enforcement officers.  This particular accident scene proves the point if a person isn't going to avoid striking a marked state trooper vehicle, with flashing blue lights, the safety of a person walking around the interstate is definitely in jeopardy.  As can be seen on the relative videos of this incident (Disks 200-203) the MCSO deputies on scene were wearing highly reflective/contrast vests as approved by the National Highway Traffic Safety Administration (NHTSA).  Requesting persons to clear the area or remain in a vehicle within a contained area is consistent with those practices I as a law enforcement executive require of my officers and those officers who I have trained.

Sergeant Moore attempted several times to gain compliance from Ms. Jones.  Each time, Ms. Jones resisted.  Ms. Jones' actions were consistent with what I, or other officers in similar circumstances, would consider disorderly under Mississippi Statute 97-35-7, Disorderly Conduct; failure to comply with requests or commands of law enforcement officers.

Additionally, interfering with a law enforcement officer performing his or her duties, as was done by Mr. Leach, an officer can charge an arrestee under Mississippi Statute 97-9-103 Hindering prosecution or apprehension, section (d): *For the purposes of this article, a person "renders criminal assistance" to another if he knowingly: section (d)  Prevents or obstructs, by means of force, deception or intimidation, anyone from performing an act that might aid in the discovery, apprehension, prosecution or conviction of the other person.*

Deputy Hall's described actions when arresting Mr. leach were consistent with what I have instructed other officers to do in similar situations and as a law enforcement executive, I would approve of the deputy's actions.

d.      MCSO CAD 2016-17715

On November 11, 2016 at around 1:20 p.m., MCSO Deputy Jason Barnes was conducting a roadblock when Deputy Barnes made contact with a dump truck driver, Maurice Edwards.  Mr. Edwards was wanted on an outstanding Justice Court warrant for a seatbelt violation.  Deputy Barnes decided to allow Mr. Edwards, who had a valid driver's license, to drive the tow truck to the MCSO and turn himself in on the warrant.

This was a warrant-based arrest, and as discussed previously in my report, warrant arrests are considered non-discretionary arrests.  A warrant, specifically a failure to appear, or failure-to-pay warrant, is originated from the bench as a result of a failure on the arrestee's part to comply with the court's orders.  These arrests are charges based on the arrestee already having been ticketed or arrested previously.

e.      MCSO CAD 16-19279

22

EXHIBIT 4

On December 11, 2016 MCSO Deputy Tyler Burnell, along with other deputies, was located at Hwy 16 and Avondale Rd conducting a safety checkpoint.  Deputy Burnell saw a vehicle driver conduct an illegal U-turn and drive away from the check point location.  MCSO Deputy McFarland attempted a traffic stop on the vehicle, but the driver, later identified as Kimber Luckett, chose to flee from the deputy.  Deputy Burnell then joined Deputy McFarland with attempting to stop the fleeing driver.

After a lengthy pursuit, Ms. Luckett stopped the vehicle as it approached a Leake County Sheriff's vehicle and fled on foot.  Ms. Luckett fell to the ground, at which time Deputy Burnell was able to reach Ms. Luckett.  Ms. Luckett continued to resist Deputy Burnell's attempts at control, causing Deputy Burnell to deploy a TASER on Ms. Luckett.  Ms. Luckett continued to resist Deputy Burnell's attempts at control, requiring Deputy Burnell to cycle the TASER a second and a third time.  After the third TASER cycle, Ms. Luckett complied with Deputy Burnell's control attempts and was taken into custody without further action.  Deputy Burnell charged Ms. Luckett with several traffic violations and felony fleeing and eluding in a motor vehicle.

Deputy Burnell's description of Ms. Luckett's initial traffic violation is consistent with Mississippi Statute 65-5-19, which states: *It is unlawful for any person (1) to drive a vehicle over, upon, or across any curb, central dividing section, or other separation or dividing line on controlled-access facilities; (2) to make a left turn or a semicircular or U-turn except through an opening provided for that purpose in the dividing curb section, separation, or line; (3) to drive any vehicle except in the proper lane provided for the purpose and in the proper direction and to the right of the central dividing curb, separation section, or line; (4) to drive any vehicle into the controlled-access facility from a local service road except through an opening provided for that purpose in the dividing curb or dividing section or dividing line which separates such service road from the controlled-access facility proper. Any person who violates any of the provisions of this section is guilty of a misdemeanor and, upon arrest and conviction therefor, shall be punished by a fine of not less than five dollars ($ 5.00) nor more than one hundred dollars ($ 100.00), or by imprisonment in the city or county jail for not less than five days nor more than ninety days, or by both such fine and imprisonment.*

Ms. Luckett's continued fleeing from the deputies as seen on the MVR is consistent with what a law enforcement officer would charge a driver under Mississippi Statute 97-9-72 (2), which states: *Any person who is guilty of violating subsection (1) of this section by operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine not to exceed Five Thousand Dollars ($ 5,000.00), or by commitment to the custody of the Mississippi Department of Corrections for not more than five (5) years, or both.*

Additionally, given the details of Deputy Burnell's report, Ms. Luckett's actions of fleeing on foot and physically resisting Deputy Burnell's control attempts would be consistent with

**EXHIBIT 4**

Mississippi Statue 97-9-73, which states: *It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest or the lawful arrest of another person by any state, local or federal law enforcement officer, and any person or persons so doing shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than Five Hundred Dollars ($ 500.00), or by imprisonment in the county jail not more than six (6) months, or both.*

Deputy Burnell's use of a TASER to control Ms. Luckett is consistent with what I have instructed law enforcement officers throughout the country to perform when confronting an arrestee who, after leading law enforcement on a pursuit, and then fleeing on foot, and then physically continue to resist an officer's arrest attempts. As a law enforcement executive who regularly reviews such incidents, I would approve of Deputy Burnell's use of the TASER to gain compliance from Ms. Luckett.

f.    MCSO CAD 15-8117

On May 23, 2015 at around 3:50 p.m., MCSO Deputy Christopher Abels saw the driver of a white Ford Explorer fail to stop when faced with a stop sign. Using blue lights, Deputy Abels signaled the driver to pull over. The driver pulled into a gas station/grocery store, at which time Deputy Abels saw the driver, later identified as John Dillard, exit the Explorer and begin to walk away. Deputy Abels verbally directed Mr. Dillard to return to Deputy Abels. According to Deputy Abels' Mr. Dillard had an odor of intoxicating beverages emanating from Mr. Dillard. Deputy Abels saw an opened bottle of beer inside Mr. Dillard's vehicle passenger area. Deputy Abels learned from Mr. Dillard that Mr. Dillard did not have a driver's license in his possession. Deputy Abels offered Mr. Dillard an opportunity to take a portable breath test, which Mr. Dillard refused. Mr. Dillard also advised Deputy Abels that Mr. Dillard would not pass a breath test.

Deputy Abels then attempted to arrest Mr. Dillard, but instead of submitting to an arrest, Mr. Dillard chose to physically resist. After several control attempts, Mr. Dillard continued to physically resist arrest. Deputy Abels deployed a TASER to Mr. Dillard, at which time Mr. Dillard went to the ground and complied with the remaining arrest procedure. Deputy Abels used no further force on Mr. Dillard.

Deputy Abels then request emergency medical services (EMTs) to treat Mr. Dillard's abrasions. Deputy Abels also notified MCSO Sergeant William Weisenberger, who then arrived on the scene. EMTs transported Mr. Dillard to a medical facility for treatment. After Mr. Dillard's medical release, Deputy Abels transported Mr. Dillard to MCSO.

The charges for which Deputy Abels charged Mr. Dillard are consistent with 63-11-30, Operating a vehicle while under influence of alcohol, which states: *It is unlawful for a person to drive or otherwise operate a vehicle within this state if the person:*
- *(a)  Is under the influence of intoxicating liquor;*

Mississippi Statue 97-9-73 Resisting arrest, which states: *It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his*

EXHIBIT 4

*lawful arrest or the lawful arrest of another person by any state, local or federal law enforcement officer, and any person or persons so doing shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than Five Hundred Dollars ($ 500.00), or by imprisonment in the county jail not more than six (6) months, or both.*

Deputy Abels use of a TASER was consistent with what I have trained law enforcement officers throughout the country to do when attempting to control an arrestee who has continuously refused and physically resisted an officer's arrest attempts.  As a law enforcement executive who regularly reviews such incidents, I would approve of Deputy Abels' use of a TASER.  Additionally, it is my opinion that Deputy Abels acted in a manner consistent with good police practices when Deputy Abels acquired immediate medical attention for Mr. Dillard.

g.      MCSO CAD 15-19058

On November 28, 2015, MCSO Deputy Joel Evans was conducting a safety checkpoint on Canton Parkway when a driver operating a Grey Chevrolet SUV approached the checkpoint.  Deputy Evans reported that while conversing with the driver, Deedre Day, Deputy Evans smelled marijuana odor coming from Mr. Day's car.  After Deputy Evans requested Mr. Day to pull the vehicle to a specific location, Mr. Day chose to drive about fifty yards further the requested.  When Deputy Evans regained contact with Mr. Day, Deputy Evans observed three of the car's windows were now down and the odor of cologne was now present.  Deputy Evans saw a bottle of cologne on the passenger seat, where previously it had not been.

Mr. Day agreed to a field sobriety test, which Deputy Tyler Burnell conducted.  After the field sobriety test, Deputy Evans searched Mr. Day's vehicle, finding marijuana and a .40 semiautomatic handgun.  Further search revealed a pill bottle containing marijuana and a loaded semiautomatic pistol magazine.

Deputy Evans charged Mr. Day with possession of marijuana, in possession of a firearm. Deputy Evans charging Mr. Day with an enhanced charge is consistent with Mississippi Statute 41-29-139(c), which states:

*It is unlawful for any person knowingly or intentionally to possess any controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this article.*

And, with Mississippi Statute 41-29-152(1), which states: *Any person who violates Section 41-29-313 or who violates Section 41-29-139 with reference to a controlled substance listed in Schedule I, II, III, IV or V as set out in Sections 41-29-113 through 41-29-121, Mississippi Code of 1972, inclusive, and has in his possession any firearm, either at the time of the commission of the offense or at the time any arrest is made, may be punished by a fine up to twice that authorized by Section 41-29-139 or 41-29-313, or by a term of*

25

**EXHIBIT 4**

*imprisonment or confinement up to twice that authorized by Section 41-29-139 or 41-29-313, or both.*

Deputy Evans was conducting a safety checkpoint within MCSO jurisdiction. Upon making contact with Mr. Day, Deputy Evans acted in a manner consistent with what I have trained law enforcement officers throughout the country to perform. When a person is operating a motor vehicle and the officer smells an odor consistent with marijuana, or other illegal substance, the officer should investigate further, as it would be against good law enforcement practices to let a person who may be under the influence to continue operating a motor vehicle.

After conducting what was reported as a field sobriety test consistent with those with which I am familiar, along with Deputy Evans' personal observation of marijuana odor, Deputy Evans' observation of Mr. Day's failure to follow directions on the stop, Mr. Day having rolled down the windows of the SUV, and Deputy Evans' observation that Mr. Day had sprayed cologne, which would mask the smell of marijuana, Deputy Evans conducted a probable cause search of Mr. Day's SUV. The search uncovered the previously described items.

Law enforcement officers throughout the profession are instructed through the United States Supreme Court's ruling in <u>Carroll v. United States</u> *267 U.S. 132 (1925)* and subsequent rulings that referenced Carroll, that applies to searches of vehicles that are supported by probable cause to believe that the vehicle contains contraband. In this class of cases, a search is not unreasonable if based on objective facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.

As a law enforcement trainer who has instructed officers throughout the country on matters concerning an officer's development of the totality of circumstances that lead to possessing probable cause for an arrest or a search, and as a law enforcement executive who regularly reviews such incidents, I would approve of Deputy Evans' actions.

h.    MCSO CAD 16-4699

On March 25, 2016 at around 2:30 a.m., MCSO Deputy Rylon Thompson was working a safety checkpoint on Countyline Rd., within MCSO's jurisdiction. Deputy Thompson contacted the driver of a tan Chevrolet HLT. While speaking with the vehicle's driver, Deputy Thompson reported to have smelled the odor of burned marijuana coming from inside the car. Deputy Thompson advised the driver that Deputy Thompson would be conducting a probable cause search (see my previous opinion above on law enforcement officers' training on probable cause vehicle searches).

Upon conducting the vehicle search, Deputy Thompson discovered a glass pipe containing marijuana residue in a purse found on the rear seat. A passenger, Alyasia Jordan, advised she was the owner of the marijuana. Deputy Thompson arrested Ms. Jordan for possession of marijuana.

EXHIBIT 4

As a law enforcement trainer who has instructed officers throughout the country on matters concerning an officer's development of the totality of circumstances that lead to possessing probable cause for an arrest or a search, and as a law enforcement executive who regularly reviews such incidents, I would approve of Deputy Thompson's actions.

As for Deputy Thompson continuing the probable cause search of the vehicle to include Ms. Jordan's purse, throughout the law enforcement profession, officers are trained on the probable cause search of a person's purse when a passenger in a vehicle that was lawfully stopped.  That training stems mainly from the United States Supreme Court case, Wyoming v. Houghton *526 U.S. 295 (1999)*, where the Court instructs officers that police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search.

I base my opinions on information provided to me to date, on references in my report and on current, and period current, generally accepted training and operational procedures in the law enforcement profession, Mississippi statutes and my experience and training as a law enforcement officer, executive, and trainer.  I currently receive $150 per hour for my time.  My CV and fee schedule are attached to this report.  If I am provided new information concerning this case, including trial testimony, I may provide further opinions.  I will also serve to rebut any opinions offered by plaintiffs' experts.  I reserve the right to attend the trial of this matter and provide further opinions dependent upon trial testimony.

Professionally,

Mark S. Dunston

**EXHIBIT 4**

**MARK S. DUNSTON**
**PO Box 1706   Ocean Springs, MS 39566-1706    228 348-1189**

**Current Position:**     Chief of Police, Ocean Springs (MS) PD
                          Ocean Springs, MS  USA

## Professional Associations and Positions:

**International Law Enforcement Educators and Trainers Association** *(ILEETA)*
-          Member 2006 – 2010

**American Society of Law Enforcement Trainers** *(ASLET)*
-          Member 1988 - 2004
-          State Director (MS) 1990 - 1995
-          Elected to Board of Directors 1995 - 1999

**National Law Enforcement Credentialing Board** *(NLECB)*
-          Job Task Analysis Committee 1995 - 1996
-          Test Development Committee 1996

**Police Marksman Magazine National Advisory Board**
-          Member of Board 1991 - 2000

**International Association for Identification** *(IAI)*
-          Certified Senior Crime Scene Analyst 1992

**FBI National Academy Associates** 1997 to present

**MS Association of Chiefs of Police** 2007 to present
-          Chair, Training Committee 2016 to present

**ASIS International** 2010 to present

**American Board for Certification in Homeland Security (ABCHS)** 2012 to present
-          CHS-I Certification

**Texas Commission on Law Enforcement (TCOLE)**
-          Advisory Board Member 2015 to present

## Education and Leadership Awards:

Graduate, 20th Session
Police Executive Research Forum/ Harvard University Kennedy School of Government
Senior Management Institute, Boston, MA 1997

Graduate, 191st Session
FBI National Academy, Quantico, VA 1997

Leadership in Criminal Justice Training Award, *PPCT International Trainer Conference, 1998*

**EXHIBIT 4**

**Training and Instructor Certifications:**

State of Mississippi, Peace Officer Standards and Training (POST) Professional Instructor Certification History:
- Use of Force/Liability
- Firearms
- Arrest Techniques
- Subject Control/Defensive Tactics
- Impact Weapons
- Criminal Investigations
- Law Enforcement Driving
- Police Officers' Rights

**PPCT Management Systems Instructor Trainer History**
- Use of Force/Subject Control Instructor Trainer
- Impact Weapons Instructor Trainer
- Pressure Point Control Instructor Trainer
- Spontaneous Knife Defense Instructor Trainer
- Violent Patient Management Instructor Trainer
- Close Quarter Combat Instructor

**Firearms and Lethal Force Instructor Training History**
- Federal L.E. Training Center Firearms Instructor, SAPP, FIMWITP
- NRA Firearms Instructor
- Glock Firearms Instructor, Armorer
- NMLETC Firearms Course Developer
- Talon International Applegate Shooting Method Instructor

**Other Instructor Training History**
- TASER Instructor
- Police Defensive and Pursuit Driving Instructor (FLETC)
- Counter Terrorism/Assault Driving Instructor (FLETC)
- Instructor Development (FLETC Behavioral Sciences)
- OC Agent Use of Force Instructor/Trainer
- ASP Instructor, Instructor Trainer 1990-1992
- Monadnock PR-24 Instructor 1986-1989

**Professional Development Training History**
- ASLET Conference 1998-2006
- ILEETA Conference 2007
- PPCT Management Systems International Conference 1993-2002
- MS Assoc. of Chiefs of Police Training Conference 1996, 2007-2017
- FBINAA Training Conference (MS) 2007-2017
- Chicago Kent Law School Section 1983 Litigation Conference 2008
- TASER Use of Force, Risk Management and Legal Strategies 2011, 2013
- FBINAA International Conf. 2010

## Publications:

**Books and Monographs**
- <u>Street Signs</u> © 1992, Performance Dimensions Publishing,  *An identification guide on gangs and criminal symbols.*
- <u>Total Survival</u> © 1993, Performance Dimensions Publishing, *Author of Chapter 15, Reading the Streets*
- Featured author in <u>The Best of The Police Marksman</u>, Vol. II,   © 2002

29

**EXHIBIT 4**

- Content editor, <u>Sharpening the Warrior's Edge</u>, Siddle , © 1998
- Contributing Editor, <u>On Combat</u>, Grossman, © 2004
- <u>Critical Issues in Use of Force, What Law Enforcement Executives Should Know</u> © 2011 , *Author of Chapter 3 Use of Force Policy* IL Law Enforcement Executive Forum and Western IL University
- <u>Guidelines for Investigating Officer-Involved Shootings, Arrest-Related Deaths, and Deaths in Custody</u> © 2018, *Co-Author, Chapter 6, Officer-Involved Incident Investigation Guidelines*

**Video and Televised Training**

**Individual Video**

- "Gangs and Identification", LE Net, © 1991
- "Street Signs", Performance Dimensions Publishing, © 1992  A*ccompanying video to book.*
- "Officer Survival Tips", Performance Dimensions  Publishing, © 1994
- "Leadership Issues", Performance Dimensions Publishing © 2000

**Law Enforcement Television Network** *(LETN)*

- Several training programs for LETN 1994 - 2009
- Use of Force content expert for network 1996 – 2003
- Co-Hosted "Command Center" Management Series 1997- 1999
- Regular panelist, Executive Forum 2000- 2001

**Professional Security Television Network** *(PSTN)*

- Gangs and Their Signs, 1994
- Use of Force, 1995
- Security and Security Management Issues, 1994-2000
- Officer Survival Searches and Frisks, 2009
- Officer Survival Handcuffing Tactics, 2009

**PULSE Emergency Medicine TV Network**

- Controlling Assaultive Patients 1999

**POLICEONE.COM Video**

- Active Shooter Response Preparation and Tactics 2008
- Leadership Paradox 2008
- Use of Force/4th Amendment Issues 2008

**Mass Media Appearances (Content Expert)**

- CBS News Louisville, KY
- CBS News San Antonio, TX
- FOX News Dallas, TX
- Crime Line with Ed Nowicki (Nationally Syndicated Radio Program)

**Research Papers Delivered**

- "Basic Training Needs Assessment" *MS Assoc. of Chiefs of Police 2017*
- "Impact Weapon Training Analysis" *Delivered to MS BLEOST and Academy Directors, 1993*
- "Use of Force Policy Considerations on OC Agent Selection" *Distributed by MS Municipal Services Risk Mgt., 1993*

**EXHIBIT 4**

- "Physical Training Standards" *Delivered to MS BLEOST, 1993*
- "Analysis of BLEOST Physical Training Standards" *Delivered to MS BLEOST, 1995*
- "Ground Fighting and Assaults on Police Officers"
  *Delivered to PPCT International Conference, 2000*
- "Ground Fighting and Assaults on Police Officers"
  *Delivered to the ASLET Conference, Orlando, F, 2000*
- "Pursuit Policy in MS Police Agencies, The "Brister Effect", *MACP 2010*

**Periodicals and Professional Journals**

- Several articles on law enforcement topics for:
  - *The Police Marksman Magazine*
  - *Police Magazine*
  - *The Journal of the American Society of Law Enforcement Trainers (ASLET)*
  - *ITOA News (Illinois Tactical Officers Association)*

- Most Recent Publications:
  - Calibre Press Street Survival Textbook, "Critical History", © 2003
  - Police Marksman Magazine, "Ground Assaults on Officers", © December 2004
  - Litigation Body Armor: Developing Sound Pursuit and Use of Force Protocol © 2010

**Internet Publications and Training**

- Training Section for Criminal Justice Training Network *"Search, Seizure and Arrest Issues"* 1998
- Policy Issue for OFFICERNET.COM, "*A Little Policy Never Hurt Anyone*", 2000
- Calibre Press Newsline *"Critical History, A Review of Officer Survival History"* 2003

## Training Conducted:

**Basic Level Law Enforcement Training and Lectures**

- MS State Academy
- University of Southern MS/Harrison Co SO Academy
- Hinds Community College, Jackson, MS
- No. FL Comm. College FL
- Greater Jackson County Law Enforcement Training Consortium
- Palace Casino Resort Security Risk Management, Biloxi, MS
- Margaritaville Casino Security, Biloxi, MS
- Approx. 10,000 officers annually for Calibre Press Street Survival Seminar *(2000-2003)*

**Instructor Level Training/Lectures**

  *Several, including:*
- National Nuclear Security Administration (United States)
- Cuiaba, Brazil (AG's office, Federal Police, Military Police)
- Rondonopolis, Brazil (AG's office, Federal Police, MP)
- St. Croix/St. Thomas, US Virgin Islands Police
- Hong Kong, China Correctional Services Staff Training Institute
- US Fish & Wildlife, Federal Law Enforcement Training Center
- US Park Service Special Operations Ranger School
- Honolulu PD Academy

EXHIBIT 4

- New Orleans PD Academy
- Jefferson Parish, LA Academy
- Jackson, MS PD Academy
- East Texas Police Academy
- United States Armed Forces Units *(all branches)*
- United States Department of Defense
- United States Coast Guard TACLETS, Miami, FL
- Hard Rock Casino Biloxi Security Management/Risk Management
- Minot, ND PD and Surrounding Agencies

**Peer Conference Presentations**

- MS Municipal Risk Management for Law Enforcement Executives Ridgeland, MS 2018
- MS Municipal Risk Management for Law Enforcement Executives Vicksburg, MS 2017
- MS Municipal Risk Management for Law Enforcement Executives Oxford, MS 2017
- MS Assoc. of Chiefs of Police, 2016 Conference, Risk Mgt. for Law Enforcement Executives
- MS Municipal Risk Management for Law Enforcement Executives Grenada, MS 2015
- MS Municipal Risk Management for Law Enforcement Executives Hattiesburg, MS 2015
- Valdosta State University Chiefs' Conference, GA 2014
- CLEAT Leadership Conference, Austin, TX 2013
- Western IL University, Executive Institute, Use of Force Executive Summit 2010
- ASLET  2006, Albuquerque, NM Keynote Speaker
- ASLET 2005, Jacksonville, FL, Served on an expert panel for use of force training issues.
- ASLET 2001, Orlando, FL, Delivered presentation on Officer Survival and Use of Force
- ASLET 1995, Anchorage, AK, Delivered presentation on Survival Learning Theory
- ASLET 1994, Washington, DC, Delivered Stress Response Research Instruction
- MS Assoc. for Professionals in Corrections, 1990 Management of Use of Force
- MS DARE Officers Conference, 1994, Gangs
- PPCT Management International 1995, Stress Response Training Issues
- PPCT Management International 1997, Skills for Performance in Off. Surv. Training
- PPCT Management International 2000, Stress Response Training Issues
- MS Assoc. of Chiefs of Police, 1997, Training on a Budget

## Expert Testimony and Depositions Given Past Four Years:

- Williams V. City of Natchez, MS
- Gammel v. Coahoma Co. Community College, MS
- State of CA vs. Deputy Dayle Long
- Skinner v. Hinds CO SO, MS
- Salvato v. Marion CO, FL
- Hasskamp v. Orange CO, FL
- Brown v. Orange CO, FL
- Washington v. City of Waldo, FL
- State of MS v Terry Beadles
- Hale v City of Biloxi, MS
- Patel v. City of Madison, AL
- Perez v Collier Co., FL
- Hajali v. New Castle Co. and Daller
- Docher v St. Lucie County, FL

**EXHIBIT 4**

**Employment Credentials:**

| | | |
|---|---|---|
| - | **March 2015 – Present** | Chief of Police<br>Ocean Springs, MS Police Department |
| - | **August 2007 – March 2015** | Deputy Chief of Police<br>Ocean Springs, MS Police Department |
| - | **July 2003 – August 2007** | Captain, Training and Standards<br>Ocean Springs, MS Police Department |
| - | **March 2000 – December 2003**<br>and October 2010 – Dec 2012 | Instructor<br>Calibre Press Street Survival Program<br>Dallas, TX (Corporate Office) |
| - | **April 1998 – March 2000** | Training Coordinator/Trainer<br>Mississippi Police Corps<br>University of Southern Mississippi<br>Hattiesburg, MS |
| - | **September 1996 – April 1998**<br>*(Interim July 2001-September 2001)* | Chief of Police<br>City of Long Beach, MS |
| - | **May 1996 - September 1996** | Director of Training/Content Expert,<br>Law Enforcement Television Network<br>Carrollton, TX |
| - | **October 1991 - May 1996** | Director (Captain)<br>North Mississippi Law Enforcement Training Center<br>Commander, Special Operations Group<br>Tupelo Police Department, City of Tupelo, MS |
| - | **September 1989 - October 1991** | Specialized Training Coordinator and Instructor<br>MS Law Enforcement Officers' Training Academy<br>Jackson, MS |
| - | **November 1988 – Sept. 1989** | Police Officer, HRU Team Member<br>City of Panama City Beach, FL |
| - | **May 1985 - November 1988** | Police Officer - Police Sergeant<br>City of Ocean Springs, MS |
| - | **January 1984 - May 1985** | Deputy (Res.) Jackson County SO, Pascagoula, MS |

33

**EXHIBIT 4**

**Mark S. Dunston**
**PO Box 1706**
**Ocean Springs, MS 39566-1706**
**(228) 348-1189**

**Litigation Consultant Letter of Agreement/Fee Schedule**

This letter serves as an agreement and contract between _____ (client) and
Mark S. Dunston. The client, in retaining the services of Mark S. Dunston, agrees to the
following fee schedule and obligations of both parties.

1.  Hourly fee for service is $ 150.00 US per hour.
2.  Initial retainer of three thousand dollars ($3,000.00 US) is required prior to
    delivery of opinion or report.
3.  After completion of retainer of service, billing will continue at $150.00 US
    per hour. All invoices are net 30 days.
4.  Settlement of a case does not warrant a refund of any fees paid.
5.  Travel is paid in advance or direct billed to the client by the source, i.e. hotel,
    airline, etc.
6.  Travel will not exceed current reasonable and customary rates (full coach fare
    air travel, current government rate mileage, etc.)
7.  Deposition requires minimum of eight hours, $1200.00, paid in advance of
    deposition testimony. After eight hours, hourly fee applies. Travel time above
    minimum hours for deposition will be calculated in advance and paid in advance at
    hourly rate.
8.  The use of the name Mark S. Dunston in any form indicating that Mark S. Dunston
    has been retained is to be considered contractual and requires the
    minimum retainer payment.
9.  The fees paid to Mark S. Dunston are for his time. The client will not
    consider it a payment to influence his opinion or testimony.
10. Any work product requested of Mark S. Dunston will be delivered to the
    client by the agreed scheduled date.

On behalf of the client, I, _____, agree to the
                              Print Name
terms as set forth in the above Letter of Agreement and Fee Schedule.


_____                    _____

Signature                                          Mark S. Dunston
For the Client


_____ Date

34

**EXHIBIT 4**

## EXAMPLES OF NON-DISCRETIONARY ARRESTS

| | MSCA | General Description |
|---|---|---|
| 1 | 99-21-1 | Foreign Warrant;Fugitive;Holdi |
| 2 | 97-9-9 | Bribery;Commercial Bribery |
| 3 | 97-9-65 | Intimidation of Witness to Com |
| 4 | 13-5-34 | Contempt of Court for Failure |
| 5 | 97-9-105 | Hindering prosecution in the First degree |
| 6 | 97-9-125 | Tampering |
| 7 | 97-9-127 | RETALIATION AGAINST A PUBLIC SERVANT OR WITNESS |
| 8 | 97-9-25 | Escape - Aid/abet |
| 9 | 97-9-29 | Escape - Aid-abed |
| 10 | 97-9-41 | Harboring a Fugitive |
| 11 | 97-9-45 | Escape - MDOC |
| 12 | 97-9-49(1) | Escape of Prisoners |
| 13 | 97-9-49(2) | Escape - Inmates/trusties |
| 14 | 97-9-55 | Obstructing Justice/intimidati |
| 15 | 97-45-19 | Computer: Identity Theft or At |
| 16 | 97-5-1 | Child, Abandonment of Child un |
| 17 | 97-5-23 | Touching Child for Lustful Pur |
| 18 | 97-5-23(1) | Touching Child for Lustful Pur |
| 19 | 97-5-23(3) | Computer luring of person unde |
| 20 | 97-5-27 | Sexually-oriented Material: Di |
| 21 | 97-5-3 | Descertion or non -support of |
| 22 | 97-5-33 | Exploitation of Children |
| 23 | 97-5-39(1) | Contributing to the Neglect or |
| 24 | 97-5-39(2) | Child,Abuse/Battery Causing Se |
| 25 | 97-5-40 | Child Abuse - Condoning |
| 26 | 97-5-49 | Social Host |
| 27 | 97-37-17(2) | 97-37-17(2)          Weapons, P |
| 28 | 97-37-19 | Discharging/Displaying firearm |
| 29 | 97-37-29 | Shoot into Dwelling |
| 30 | 97-37-35 | Possession of Stolen Firearm |
| 31 | 97-37-35(1) | Possess,Receive,Retain,Acquire |
| 32 | 97-37-5 | Felon Carrying Concealed Weapo |
| 33 | 97-41-1 | Animals, Cruelty to |
| 34 | 97-3-107 | Stalking |
| 35 | 97-3-109 | Drive-by Shooting |
| 36 | 97-3-117 | Carjacking/Attempted Carjackin |
| 37 | 97-3-117(2) | Armed Carjacking/Attempted Arm |
| 38 | 97-3-19(1) | Murder |
| 39 | 97-3-19(2) | Capital Murder |
| 40 | 97-3-25 | Manslaughter |

**EXHIBIT 4**   1

| | EXAMPLES OF NON-DISCRETIONARY ARRESTS | |
|---|---|---|
| | MSCA | General Description |
| 41 | 97-3-47 | Manslaughter (Culpable Neglige |
| 42 | 97-3-53 | Kidnaping |
| 43 | 97-3-54 | Human Trafficking |
| 44 | 97-3-65 | Rape; Carnal Knowledge of Chil |
| 45 | 97-3-65(1) | Statutory Rape |
| 46 | 97-3-65(4)(a) | Rape |
| 47 | 97-3-7(1) | Simple Assault-Bodily Injury |
| 48 | 97-3-7(1)(c) | Simple Assualt-Attempt By Phyi |
| 49 | 97-3-7(2) | Aggravated Assault |
| 50 | 97-3-7(3) | Simple Domestic Violence;Simpl |
| 51 | 97-3-7(4) | Aggravated Domestic Violence |
| 52 | 97-3-71 | Rape - Assault with Intent to |
| 53 | 97-3-73 | Robbery |
| 54 | 97-3-75 | Robbery - Simple |
| 55 | 97-3-79 | Robbery - Armed |
| 56 | 97-3-95 | Sexual Battery |
| 57 | 97-19-17 | Credit Cards - Forgery |
| 58 | 97-19-21 | Fraud - Credit Card |
| 59 | 97-19-23 | Fraud - Credit Card |
| 60 | 97-19-33 | False Impersonation |
| 61 | 97-19-35 | False Personation |
| 62 | 97-19-37 | False Personation; Masqueradin |
| 63 | 97-19-39 | False Pretenses |
| 64 | 97-19-55 | Bad Checks - Penalties/Restitu |
| 65 | 97-19-67 | Bad Checks - Penalties/Restitu |
| 66 | 97-19-71(2) | Fraud; Food Stamps |
| 67 | 97-19-71(4) | Fraud; Filing for Services Not |
| 68 | 97-19-83 | Fraud - by Mail/phone/newspape |
| 69 | 97-19-85 | Fradulent Use of Identificatio |
| 70 | 97-21-29 | Making and Uttering Instrument |
| 71 | 97-21-33 | Forgery |
| 72 | 97-21-37 | Counterfeit Instrument: Poss. |
| 73 | 97-21-49 | Counterfeit Instrument: Sale o |
| 74 | 97-21-59 | Counterfeit Instrument: Forger |
| 75 | 97-23-103 | Home Repair Fraud |
| 76 | 97-23-19 | Embezzlement - Agents/trustees |
| 77 | 97-23-23 | Embezzlement - Receiving Stole |
| 78 | 97-23-27 | Embezzlement - Property Borrow |
| 79 | 97-23-93 | Shoplifting |
| 80 | 97-25-55(2) | Assault with Intent to Commit |
| 81 | 97-17-23 | Burglary; Inhabited Dwelling H |

EXHIBIT 4   2

| | **EXAMPLES OF NON-DISCRETIONARY ARRESTS** | |
|---|---|---|
| | <u>MSCA</u> | <u>General Description</u> |
| 82 | 97-17-25 | Burglary; Breaking Out of Dwel |
| 83 | 97-17-29 | Burglary;Breaking Inner Door o |
| 84 | 97-17-33 | Burglary - All but Dwelling |
| 85 | 97-17-33(1) | Burglary; All but Dwelling |
| 86 | 97-17-33(2) | Burglary; Church, Synagogue, T |
| 87 | 97-17-35 | Burglary - Possession of Burgl |
| 88 | 97-17-39(B) | Public Property, Church Buildi |
| 89 | 97-17-41 | Larceny - Grand |
| 90 | 97-17-41(1)(a) | Grand Larceny; Personal Proper |
| 91 | 97-17-41(1)(b) | Grand Larceny; Property of a C |
| 92 | 97-17-41(4) | Grand Larceny;Motor Vehicle,Se |
| 93 | 97-17-42 | Taking Away of a Motor Vehicle |
| 94 | 97-17-43 | Larceny - Petit |
| 95 | 97-17-43(1) | Petit Larceny; Personal Proper |
| 96 | 97-17-43(2) | Petit Larceny;Property of a Ch |
| 97 | 97-17-43(3) | Petit Larceny;Motor Fuel |
| 98 | 97-17-5 | Arson - Structure: Not Dwellin |
| 99 | 97-17-61 | Larceny;Taking or Carrying Awa |
| 100 | 97-17-64 | Theft by Rental Agreement |
| 101 | 97-17-67 | Malicious Mischief |
| 102 | 97-17-70 | Receiving Stolen Property |
| 103 | 97-17-85 | Trespass upon Enclosed Land of |
| 104 | 97-17-87 | Trespass, Willful |
| 105 | 97-17-97 | Trespass after Notice of Non-p |
| 106 | 97-19-17 | Credit Cards - Forgery |
| 107 | 7-5-303 | Insurance Fraud |
| 108 | 75-73-9 | Fraud - Innkeeper |

EXHIBIT 4

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**LATOYA BROWN, et al.**                                              **PLAINTIFFS**

**v.**                                          **CIVIL ACTION NO. 3:17-cv-347 WHB LRA**

**MADISON COUNTY, MISSISSIPPI; et al.**                          **DEFENDANTS**

<u>**DECLARATION OF MARK DUNSTON**</u>

I, Mark Dunston, make the following declaration based on personal knowledge:

1.    I have been retained by the Defendants in the above referenced matter as expert.  I submit that the foregoing report from me dated May 8, 2018 is a true and accurate copy of the report I provided to Defendants in this matter. I declare that the information and opinions contained in the report are true and correct to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

May 8, 2018                                    _____
                                                    MARK DUNSTON

**EXHIBIT 4**

# EXHIBIT 5

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

JACKSON DIVISION

----------------------------------x

LATOYA BROWN; LAWRENCE BLACKMON;
HERBERT ANTHONY GREEN;  KHADAFY
MANNING; QUINETTA MANNING; MARVIN
McFIELD, NICHOLS SINGLETON; STEVEN
SMITH; BESSIE THOMAS; and BETTY JEAN
WILLIAMS TUCKER, individually and on behalf
of a class of all other similarly situated,
                          Plaintiffs,
                                  Civil Action No.
          -against-                 3:17-cv-347 WHB LRA

MADISON COUNTY, MISSISSIPPI,
SHERIFF RANDAL S. TUCKER, in his
official capacity; and MADISON COUNTY
SHERIFF'S DEPUTIES JOHN DOES #1 through
#6, in their individual capacities,

                          Defendants.

----------------------------------x

                    April 18, 2018
                    8:58 a.m.


     Deposition of RAHUL K. GUHA, PH.D, taken
by Defendants, pursuant to Notice, at the
offices of Simpson Thacher & Bartlett, 425
Lexington Avenue, New York, New York, before
William Visconti, a Shorthand Reporter and
Notary Public within and for the State of New
York.

RAHUL K. GUHA, PH.D.,   4/18/2018

Page 83

| | | |
|---|---|---|
| 11:03:22 | 1 | MS. SIVASHANKER:   Objection to |
| 11:03:22 | 2 | form. |
| 11:03:24 | 3 | A.    No, I don't. |
| 11:03:40 | 4 | Q.    Does your calculations as |
| 11:03:43 | 5 | reflected in Exhibit 4 assume that all the |
| 11:03:47 | 6 | citations that you looked at were of Madison |
| 11:03:53 | 7 | County residents? |
| 11:03:54 | 8 | MS. SIVASHANKER:   Objection to |
| 11:03:54 | 9 | form. |
| 11:03:54 | 10 | A.    It doesn't make an assumption one |
| 11:03:57 | 11 | way or the other in that regard. |
| 11:03:58 | 12 | Q.    Going back to arrests, does your |
| 11:04:02 | 13 | calculations with regard to arrests assume that |
| 11:04:04 | 14 | all the arrests in Madison County were of |
| 11:04:08 | 15 | Madison County residents? |
| 11:04:09 | 16 | MS. SIVASHANKER:   Objection to |
| 11:04:10 | 17 | form. |
| 11:04:10 | 18 | A.    It doesn't make an assumption one |
| 11:04:12 | 19 | way or the other in that regard. |
| 11:04:19 | 20 | Q.    Well, if you did not consider |
| 11:04:29 | 21 | whether people who received citations in |
| 11:04:35 | 22 | Madison County were Madison County residents or |
| 11:04:37 | 23 | not, then the benchmark of population |
| 11:04:42 | 24 | black/white in Madison County as reflected by |
| 11:04:44 | 25 | the dotted line in Exhibit 4 is not meaningful, |

RAHUL K. GUHA, PH.D., 4/18/2018

| | | |
|---|---|---|
| 11:04:46 | 1 | is it? |
| 11:04:47 | 2 | MS. SIVASHANKER:   Objection to |
| 11:04:47 | 3 | form. |
| 11:04:49 | 4 | A.    I wouldn't agree with that. |
| 11:04:51 | 5 | Q.    Why did you put that benchmark in |
| 11:04:53 | 6 | there? |
| 11:04:54 | 7 | A.    It is purely a benchmark.  It |
| 11:04:57 | 8 | literally is what it is.  I mean it's a benchmark which |
| 11:05:02 | 9 | is the proportion of Madison County residents |
| 11:05:05 | 10 | that are black. |
| 11:05:07 | 11 | Q.    But that has no correlation with |
| 11:05:10 | 12 | your citation data because you don't know who |
| 11:05:15 | 13 | receives citations that lives in Madison County |
| 11:05:17 | 14 | as opposed to outside of Madison County, right? |
| 11:05:19 | 15 | MS. SIVASHANKER:   Objection to |
| 11:05:20 | 16 | form. |
| 11:05:20 | 17 | A.    I'm not sure that I understand the |
| 11:05:22 | 18 | question.  Can you show me anywhere in my |
| 11:05:25 | 19 | declaration where I have asserted a correlation? |
| 11:05:28 | 20 | I mean it's a benchmark and that's what it is. |
| 11:05:30 | 21 | Q.    So you would agree you're not |
| 11:05:32 | 22 | saying there is a correlation; is that correct? |
| 11:05:35 | 23 | MS. SIVASHANKER:   Objection to |
| 11:05:35 | 24 | form. |
| 11:05:35 | 25 | A.    I have described it in my |

11:05:39   1    declaration.  I mean it's a benchmark and

11:05:41   2    that's all it is.  I'm not sure like -- I know

11:05:45   3    that I have not made any particular assertions

11:05:48   4    about correlations.  So I'm not sure how to

11:05:50   5    answer that question.

11:06:18   6          Q.     Referring to Exhibit 4 and

11:06:36   7    Exhibit 2, why did you use the racial breakdown

11:06:44   8    of the population in Madison County as a

11:06:45   9    benchmark?

11:06:46  10               MS. SIVASHANKER:   Objection to

11:06:48  11          form.

11:06:48  12          A.     It's just a benchmark that allows

11:06:54  13    you to evaluate the proportion of arrests and

11:06:58  14    compare it with the demographic composition.

11:07:03  15          Q.     And you chose that benchmark

11:07:06  16    despite the fact that you admit that you don't

11:07:09  17    know the proportion of arrests that were

11:07:12  18    Madison County residents or not Madison County

11:07:14  19    residents?

11:07:15  20               MS. SIVASHANKER:   Objection to

11:07:17  21          form.

11:07:17  22          A.     That's correct.

11:07:18  23          Q.     And the same is true with

11:07:21  24    citations, right?

11:07:22  25               MS. SIVASHANKER:   Objection to

11:47:34  1    various means.  I believe what I said and we

11:47:37  2    can go back to the court reporter is what I

11:47:41  3    said is that it is neither necessary nor

11:47:43  4    feasible to go back and check as to sort of

11:47:47  5    manually how a particular data set was created.

11:47:50  6    I mean that is just not standard practice in a

11:47:53  7    wide variety of situations.

11:48:08  8          Q.    Would it have been feasible with

11:48:10  9    the Madison County Sheriff's Department data to

11:48:15  10   figure out whether a separate entry is made for

11:48:18  11   each arrest that may occur as the person goes

11:48:21  12   through the judicial process?

11:48:23  13              MS. SIVASHANKER:   Objection to

11:48:24  14        form.

11:48:24  15         A.    I don't know the answer to that.

11:48:37  16         Q.    Now, I want to be clear on this.

11:48:41  17   If I get pulled over and I'm arrested for

11:48:46  18   reckless driving, possession of marijuana, not

11:48:50  19   having a license -- if I get pulled over and

11:48:53  20   I'm arrested and I'm charged with multiple

11:48:56  21   offenses, did you treat that as one arrest or

11:49:00  22   multiple arrests?

11:49:01  23              MS. SIVASHANKER:   Objection to

11:49:07  24        form.

11:49:07  25         A.    Multiple.

RAHUL K. GUHA, PH.D.,   4/18/2018

Page 117

```
11:49:10   1          Q.      Multiple?

11:49:11   2          A.      Yes.

11:49:19   3          Q.      Because it was different offense

11:49:21   4     codes, right?

11:49:22   5                  MS. SIVASHANKER:   Objection to

11:49:22   6          form.

11:49:22   7          A.      That's correct.  As I say in

11:49:25   8     paragraph 10, "Thus, if an individual is arrested

11:49:29   9     and charged with three unique offenses on one

11:49:32  10     day, I count those arrests as three separate

11:49:35  11     arrests."

11:49:37  12          Q.      So it's me, one person, I get

11:49:41  13     arrested one time but I get charged with

11:49:44  14     multiple offense codes, you say that I got

11:49:46  15     arrested three or four times?

11:49:48  16                  MS. SIVASHANKER:   Objection to

11:49:49  17          form.

11:49:49  18          A.      That's exactly -- that's what's

11:49:54  19     said.  The reason for doing that is my task

11:49:58  20     here is to do some calculation and summarize

11:50:01  21     the data and in the process of doing that I

11:50:05  22     want to make as few assumptions as possible.

11:50:08  23                  So for example, let's say in the

11:50:11  24     morning you were arrested for reckless driving

11:50:17  25     and you were let go and later at night you were
```

RAHUL K. GUHA, PH.D.,   4/18/2018

Page 118

11:50:22    1    arrested for driving under the influence.

11:50:26    2    Right.  Now that is two different arrests.  Now

11:50:31    3    I think you could have an example where a

11:50:33    4    person was arrested and charged with two

11:50:35    5    different things, as you said the offense code

11:50:37    6    is different.

11:50:40    7              My task was to summarize and do

11:50:42    8    calculations, make as few assumptions as

11:50:45    9    possible.

11:50:45   10         Q.     And in that latter situation you

11:50:47   11    treated it if I was charged with three things

11:50:51   12    you would count it is a three separate arrests?

11:50:55   13         A.     In both the situation, the one in

11:50:58   14    which you were arrested in the morning and late

11:51:00   15    at night and the second example both are

11:51:03   16    treated as two separate arrests.  The reason is

11:51:06   17    as given in my capacity of summarizing and

11:51:09   18    doing these calculations, my objective was to

11:51:12   19    sort of make as few assumptions as possible.

11:51:15   20    And simply do the calculation and therefore

11:51:17   21    there is no way to tell the difference between

11:51:20   22    those two examples.  I treated them as

11:51:22   23    different arrests.

11:51:27   24         Q.     I just want to be clear on this

11:51:29   25    and I think we are clear.  I'm not badgering

11:51:32  1    you, but if I'm arrested at a house at nine

11:51:42  2    o'clock at night on Monday and I'm charged with

11:51:47  3    sexual battery, burglary and a probation

11:51:50  4    violation and in your summary that is going to

11:51:54  5    be three separate arrests?

11:51:55  6                    MS. SIVASHANKER:    Objection to

11:51:55  7            form.

11:51:55  8            A.    I believe so.

11:51:58  9            Q.    Let's go to paragraph 9 of your

11:52:14  10   declaration.  You talk about removing duplicates

11:52:25  11   based upon a combination of name, race, sex,

11:52:29  12   date and offense code.  I think you already

11:52:33  13   answered this, but did your arrest -- did your

11:52:39  14   summary of the arrest data take into account in

11:52:47  15   any way an arrest based upon an outstanding

11:52:50  16   warrant?

11:52:53  17                    MS. SIVASHANKER:    Objection to

11:52:54  18            form.

11:52:54  19            A.    I'm looking at Appendix B because

11:53:17  20   if that shows up as a separate offense code it

11:53:19  21   should be there in Appendix B but I don't

11:53:24  22   remember that off the top of my head.

11:53:25  23            Q.    Let's me give you a hypothetical.

11:53:31  24   Let's say that I'm pulled over for speeding in

11:53:38  25   Madison County.  When they pull me over for

RAHUL K. GUHA, PH.D.,   4/18/2018

Page 180

```
14:14:43  1              MR. ROSS:   I have no further
14:14:49  2         questions.
14:14:51  3              MS. SIVASHANKER:   We have no
14:14:52  4         questions.
14:14:53  5              (TIME NOTED:  2:14 P.M.)
          6
          7                            _____
          8                            RAHUL K, GUHA, PH.D
          9
         10         Subscribed and sworn to before me
         11         this _____ day of _____, 2018
         12
         13         _____
         14
         15
         16
         17
         18
         19
         20
         21
         22
         23
         24
         25
```

```
 1              C E R T I F I C A T E

 2  STATE OF NEW YORK     )

 3                        : ss.

 4  COUNTY OF NEW YORK  )

 5      I, WILLIAM VISCONTI, a Shorthand Reporter and

 6  Notary Public within and for the State of New York,

 7  do hereby certify:

 8      That prior to being examined, the witness named in

 9  the foregoing deposition was duly sworn to testify the truth,

10  the whole truth, and nothing but the truth;

11      That said deposition was taken down by me in

12  shorthand at the time and place therein named and

13  thereafter reduced by me to typewritten form and that the

14  same is a true, correct, and complete transcript of said

15  proceedings.

16      Before completion of the deposition, review of the

17  transcript [ X ] was [   ] was not requested.  If requested,

18  any changes made by the deponent (and provided to the

19  reporter) during the period allowed are appended hereto.

20      I further certify that I am not interested in the

21  outcome of the action.

22      Witness my hand this         day of 2018.

23

24                              _____

25                              WILLIAM VISCONTI
```

# EXHIBIT 6

1                         D. STEWARD
                UNITED STATES DISTRICT COURT

2

        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

3

                      NORTHERN DIVISION

4

      --------------------------------------

5

    LATOYA BROWN; LAWRENCE BLACKMON;
6   HERBERT ANTHONY GREEN;
    KHADAFY MANNING; QUINNETTA MANNING;
7   MARVIN McFIELD; NICHOLAS SINGLETON;
    STEVEN SMITH; BESSIE THOMAS; and
8   BETTY JEAN WILLIAMS TUCKER,
    individually and on behalf of a
9   class of all others similarly
    situated,
10

            Plaintiffs,
11                                     Civil Action No.
    vs.
12                                 3:17-CV-00347-WHB-LRA
    MADISON COUNTY, MISSISSIPPI;
13  SHERIFF RANDALL S. TUCKER, in his
    official capacity; and MADISON
14  COUNTY SHERIFF'S DEPUTIES JOHN
    DOES #1 THROUGH #6, in their
15  individual capacities,
16          Defendants.
17  --------------------------------------
18
19

            DEPOSITION OF DWIGHT STEWARD, PhD
20

                    Jackson, Mississippi
21

                  Friday, June 22, 2018
22
23

    Reported by:  DEBRA AMOS ISBELL, CCR,RDR,CRR
24

    Job No: 143371
25

1                        D. STEWARD

2   multiple charges, I believe, at the stop.  And

3   obviously, here, I believe, was the biggest charge out

4   of it.  But I also confirmed for this particular

5   instance -- I actually had the Madison County

6   Sheriff's Department confirm for me what the actual

7   arrest and offense was for those 88 African-Americans.

8        Q.    When you say you had the Madison County

9   Sheriff's Department confirm that information, did you

10  send them, I guess, the 88 African-Americans that had

11  been arrested for the improper turn, turning without a

12  signal violation, and then ask them to, I guess,

13  provide to you in some format what the actual cause of

14  the arrest was?

15       A.    I identified the 88 African-American arrests

16  in Dr. Guha's report and asked them to give me the

17  additional information.  It was clear to me from the

18  report that the highest offense is the arresting

19  offense.  But I needed confirmation of that.

20       Q.    And why do you say it was clear to you from

21  the report that the highest offense is the arresting

22  offense?

23       A.    I guess the best way to say that is when you

24  look at the data, you can see that -- for example, in

25  this particular case, you'll have the improper turn,

1                          D. STEWARD

2    maybe it's a seatbelt, and then you have the DUI.  And

3    my understanding of certain offenses like DUI, they

4    are arrestable offenses.  So that's the one that you

5    would be arrested for because that's something they

6    have to do in terms of taking the person to jail.  So

7    that's kind of the reasoning.

8        Q.    And in terms of you saying that that was the

9    kind of thing they would be arrested for in terms of

10   taking the person to jail, you're not a policing

11   expert, though; correct?

12       A.    No, I'm not.

13       Q.    And so would it be possible for someone to

14   also just get arrested in that example -- I think you

15   gave an example of improper turn, a seatbelt

16   violation, and a DUI.  Presumably you could also be

17   arrested for the improper turn violation as well; is

18   that correct?

19            MR. NOBILE:  Objection.  Assumes facts not

20   in evidence, mischaracterization, form, compound.

21       A.    Absolutely not in this example.  It may be

22   hypothetically, some other data, some other

23   department.  But in this example the answer is no.

24   These 88 -- I've confirmed it -- were arrested as a

25   result of some arrestable offense.  It wasn't an

1                          D. STEWARD

2    improper turn.  So the answer in this particular case

3    is no, absolutely not.

4        Q.    And when you say you've confirmed it, you

5    confirmed it meaning the MCSD told you that this was

6    the reason this individual was arrested, among the

7    charges that they had?

8        A.    That's one of the things, yes.  When I look

9    at the data as well, you can see in these cases,

10   there's, I believe, at least -- I don't remember the

11   percentage of it.  Some of it it's just clear that

12   there is something like a DUI, there was a felon with

13   a weapon, in possession of a stolen weapon.  Things

14   that, in my experience, have been things that you

15   would be arrested for, that are arrestable offenses.

16             So there's that.  And then, because I'm not

17   a police expert, I can confirm those with Madison

18   County Sheriff's Department.

19       Q.    You say that:  "It's just clear that there

20   is something like a DUI, there was a felon with a

21   weapon, in possession of a stolen weapon.  Things

22   that, in my experience have been things that you would

23   be arrested for."  What is the basis of your

24   understanding that those are things that are

25   arrestable offenses?

D. STEWARD

1

2          MR. NOBILE:  I just want to be clear.

3    You're talking about if a DUI charge is secondary and

4    incident to an improper turn arrest?

5          MS. SIVASHANKER:  No.  I'm just trying to

6    get his understanding.  He's saying that there are

7    certain offenses that are going to be arrestable

8    offenses and certain offenses that are not.

9    Q.     And I'm just trying to get a basis of an

10   understanding of where you're getting that information

11   and that understanding from.

12   A.     Sure.  So generally it comes from the

13   experience that I've had with these cases in terms of

14   looking at arrest data and what people actually get

15   arrested for.  And again, I've had discussions in this

16   particular case with Madison County Sheriff's

17   Department about the arrest data.  And, for example,

18   they've also described some of the types of offenses,

19   DUI being one, where they have very little discretion

20   over that.  They have to make an arrest.  They also

21   describe some other offenses, and that also fit in

22   with my prior understanding of what offenses you could

23   be arrested for.

24   Q.     And is it fair to say that different

25   counties or states might have different ways of

Page 341

1                          D. STEWARD

2          MR. NOBILE:  No questions from us.

3          (THE DEPOSITION OF DWIGHT STEWARD, PhD

4          WAS CONCLUDED AT 4:17 P.M.)

5

6

7                    _____

8                    DWIGHT STEWARD, PhD

9

10     Subscribed and sworn to before me

11     this _____ day of _____ 2018.

12

13     _____    _____

14     (Notary Public)                 My Commission Expires:

15

16

17

18

19

20

21

22

23

24

25

Page 342

D. STEWARD

C E R T I F I C A T E

1

2

3

     I do hereby certify that the foregoing

4

proceedings were taken down by me and transcribed

5

using computer-aided transcription and that the

6

foregoing is a true and correct transcript of said

7

proceedings.

8

9

     I further certify that I am neither of

10

counsel nor of kin to any of the parties, nor am I in

11

anywise interested in the result of said cause.

12

13

     I further certify that I have earned the

14

certifications awarded by the National Court Reporters

15

Association of RPR,RMR,RDR,CRR,CRC,RSA and am duly

16

licensed by the Alabama, Illinois, Louisiana and

17

Mississippi Boards of Court Reporting as a Certified

18

Court Reporter.
Dated: June 25, 2018

19

20

21

_____

DEBRA AMOS ISBELL, CCR,RDR,CRR

22

ALABAMA - ACCR #21 (expires 9/30/18)
ILLINOIS - CSR #084.004798 (expires 5/31/19)

23

LOUISIANA - CCR #2014003 (expires 12/31/18)
MISSISSIPPI - CSR #1809 (expires 4/10/19)

24

NCRA (expires 12/31/2018)

# EXHIBIT 7

1

UNITED STATES DISTRICT COURT

2

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

3

NORTHERN DIVISION

4

--------------------------------------

5

LATOYA BROWN; LAWRENCE BLACKMON;
6   HERBERT ANTHONY GREEN;
KHADAFY MANNING; QUINNETTA MANNING;
7   MARVIN McFIELD; NICHOLAS SINGLETON;
STEVEN SMITH; BESSIE THOMAS; and
8   BETTY JEAN WILLIAMS TUCKER,
individually and on behalf of a
9   class of all others similarly
situated,
10

Plaintiffs,
11                                    Civil Action No.
vs.
12                                 3:17-CV-00347-WHB-LRA
MADISON COUNTY, MISSISSIPPI;
13   SHERIFF RANDALL S. TUCKER, in his
official capacity; and MADISON
14   COUNTY SHERIFF'S DEPUTIES JOHN
DOES #1 THROUGH #6, in their
15   individual capacities,
16          Defendants.
17   --------------------------------------
18
19

DEPOSITION OF CHIEF MARK DUNSTON
20

Gulfport, Mississippi
21

Thursday, June 14, 2018
22
23

Reported by:  DEBRA AMOS ISBELL, CCR,RDR,CRR
24

Job No: 143369
25

1                         M. Dunston
2     Did you graduate high school?
3          A.    I did.
4          Q.    Did you attend college?
5          A.    I've got some hours.
6          Q.    And how many hours do you have in college?
7          A.    30, maybe 40.
8          Q.    And what college or colleges?
9          A.    I had some hours from Hinds Community
10    College up in -- the Rankin County branch and hours
11    from the University of Virginia from my attending the
12    FBI National Academy.
13         Q.    Any other colleges or universities?
14         A.    No.
15         Q.    Did you ever take any graduate courses?
16         A.    At the university level?  No.
17         Q.    So besides what we've just mentioned, do you
18    have any other education?
19         A.    Yes, I do.  If you'll look on page -- you
20    said my CV started at 28?
21         Q.    Okay.  Let me rephrase that.  Besides what's
22    in your -- your CV is your law enforcement experience,
23    and, you know, it doesn't appear to be really focused
24    on your like university or college experience.  So I
25    want to talk about what's not listed in your CV.  So

                          M. Dunston

1  let's limit my question about any other education to

2  what's not already listed in your CV.

3      A.    Nothing that's not listed in my CV.

4      Q.    And so there's hours that you took in

5  college that you mentioned at the University of

6  Virginia and Hinds Community College.  What kind of

7  classes were those?

8      A.    Criminal justice.

9      Q.    Were there any kinds of classes that you

10 took that were not criminal justice?

11     A.    No.

12     Q.    Did any of those classes involve statistics?

13     A.    No.

14     Q.    Did any of them involve math?

15     A.    I believe I did -- I believe I had to take a

16 math when I first started the JC program.

17     Q.    And so this is math at the University of

18 Virginia or at Hinds?

19     A.    That would have been at Hinds.

20     Q.    And how many hours was the math requirement?

21     A.    If it was math, I think it would have only

22 been one course, three-hour credit.

23     Q.    And do you remember the title of that class?

24     A.    I couldn't tell you.

M. Dunston

1

2    Q.    And did you take math in high school?

3    A.    Yes, I did.

4    Q.    How far did you get?  Because I know, you

5  know, some people, for example, take, you know, like

6  advanced algebra and some people take -- not

7  everybody, for example, will take advanced algebra.

8  So how far did you get in math in high school?

9    A.    I believe -- I went to high school in the

10 '70s.  We went -- I don't know.  I guess in my junior

11 and senior years we had calculus.  I think that's

12 about it.  I don't think I went to anything above

13 calculus.

14   Q.    Did you take any statistics courses in high

15 school?

16   A.    Gee, if I did, I don't remember that.

17   Q.    What about economics courses?

18   A.    Yes, actually we did have an economics

19 class.

20   Q.    Was this in high school?

21   A.    High school, yes.

22   Q.    Did you take any economics courses at Hinds

23 or at the University of Virginia?

24   A.    No.

25   Q.    Have you ever taken any econometrics

1                          M. Dunston

2    courses?

3        A.    No.

4        Q.    Have you ever taken any computer science

5    courses?

6        A.    Yes.  But that was back in the days when

7    they were teaching us how to write code.  Nothing

8    current.

9        Q.    And so that was -- the computer science, was

10   that in high school or was that in your college

11   courses?

12       A.    No.  That was -- and I'm sorry, I have to

13   plug this in.  I forgot about that.  There were some

14   technical courses that you could do at local -- it

15   wasn't college.  It was more of an adult education,

16   nonaccredited, community learning.  And they were

17   teaching ordinary people how to write all those

18   bizarre codes that were coming out in the '80s for

19   computers.  It was way before Windows and everything.

20       Q.    I gotcha.

21       A.    So that's the limit of it.

22       Q.    And this is -- the computer science courses

23   which I'm still talking about, this was back in the

24   '80s?

25       A.    Oh, yes.

1                          M. Dunston

2        Q.     And about how many hours do you think that

3   was?

4        A.     Just a couple.  It didn't interest me.

5        Q.     So besides that course that we just talked

6   about back in the '80s, have you ever taken any other

7   coding courses?

8        A.     No, no.

9        Q.     So what is your current job title?

10       A.     Chief of police.

11       Q.     Where are you the chief of police?

12       A.     The City of Ocean Springs, Mississippi.

13       Q.     And when did you start in that position?

14       A.     That position?  It's been a few years.  I

15   was appointed March of 2015, so three, three and a

16   half -- three years and three months ago.

17       Q.     Describe your current job responsibilities,

18   please.

19       A.     I'm the executive of the organization, if

20   you will.  It's like the chief executive officer of

21   any organization.  I have a staff underneath me.  I

22   have a professional assistant.  I have a deputy chief.

23   I have three captains.  Each captain runs a division

24   of the department.  One captain is over everything in

25   uniform.  One captain is over everything in

Page 342

```
 1                    M. Dunston

 2          (THE DEPOSITION OF CHIEF MARK DUNSTON

 3           WAS CONCLUDED AT 6:35 P.M.)

 4

 5                   _____

 6  :35:32p

 6                    CHIEF MARK DUNSTON

 7

 8    Subscribed and sworn to before me

 9    this _____ day of _____ 2018.

10

11  _____     _____

12  (Notary Public)               My Commission Expires:

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 343

1                          M. Dunston
                      C E R T I F I C A T E
2

3

           I do hereby certify that the foregoing
4

   proceedings were taken down by me and transcribed
5

   using computer-aided transcription and that the
6

   foregoing is a true and correct transcript of said
7

   proceedings.
8

9

           I further certify that I am neither of
10

   counsel nor of kin to any of the parties, nor am I in
11

   anywise interested in the result of said cause.
12

13

           I further certify that I have earned the
14

   certifications awarded by the National Court Reporters
15

   Association of RPR,RMR,RDR,CRR,CRC,RSA and am duly
16

   licensed by the Alabama, Illinois, Louisiana and
17

   Mississippi Boards of Court Reporting as a Certified
18

   Court Reporter.
19

    DATED: 6-19-2018
20

21        _____
          DEBRA AMOS ISBELL, CCR,RDR,CRR
22        ALABAMA - ACCR #21 (expires 9/30/18)
          ILLINOIS - CSR #084.004798 (expires 5/31/19)
23        LOUISIANA - CCR #2014003 (expires 12/31/18)
          MISSISSIPPI - CSR #1809 (expires 4/10/19)
24        NCRA (expires 12/31/2018)
25