# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; HERBERT ANTHONY GREEN; KHADAFY MANNING; QUINNETTA MANNING; MARVIN MCFIELD; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and MADISON COUNTY SHERIFF'S DEPUTIES JOHN DOES #1 through #6, in their individual capacities,<br><br>    Defendants. | Civil Action No.<br>3:17-cv-00347-WHB-LRA<br><br><br>**ORAL ARGUMENT REQUESTED** |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE THE DECLARATION AND TESTIMONY OF RAHUL GUHA

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

AMERICAN CIVIL LIBERTIES UNION OF
    MISSISSIPPI FOUNDATION
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408

AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2610

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND ............................................................................................... 3

ARGUMENT ..................................................................................................... 5

I.      LEGAL STANDARD ............................................................................. 5

II.     THE COURT SHOULD DENY DEFENDANTS' MOTION TO EXCLUDE THE SUMMARY DECLARATION OF DR. GUHA .................. 7

        A.      Dr. Guha's Summary Declaration Easily Satisfies The Requirements Of Rule 1006 ............................................................. 7

        B.      As A Summary Declarant, Dr. Guha Does Not Offer Conclusions Regarding The Data He Summarized ............................... 11

        C.      Defendants Fail To Establish That Dr. Guha's Tabulation Was Unreliable .......... 13

                1.      Dr. Guha's Calculations Accurately Reflect The Contents Of The Records He Was Provided .......................... 13

                2.      Defendants Fail To Demonstrate That Dr. Guha's Tabulations Are Mathematically Incorrect ............................ 14

                3.      No Law Enforcement Expertise Is Required To Calculate The Data Provided ........................................... 17

III.    DEFENDANTS' OTHER EVIDENTIARY OBJECTIONS ARE SIMILARLY WITHOUT MERIT ........................................................ 18

        A.      The Statistics Dr. Guha Summarizes Support An Inference That The MCSD Targets Black Persons, And Are Only Part Of the Evidence Plaintiffs Have Presented ............................. 18

        B.      Defendants' Rule 403 Arguments Fail ............................................. 20

                1.      Rule 403 Is Inapplicable ...................................... 20

                2.      Dr. Guha's Summary Declaration Is Plainly Relevant, and Is Admissible Even If Rule 403 Applies ........................ 21

CONCLUSION ................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Bear Stearns Cos., Inc. Securities, Derivative, and ERISA Litig.*,
   763 F. Supp. 2d 423 (S.D.N.Y. 2011) ........................................................................ 11

*Canadian St. Regis Band of Mohawk Indians v. New York*,
   Nos. 5:82-CV-0783, 5:82-CV-1114, 5:89-CV-0829,
   2013 WL 3992830 (N.D.N.Y. Jul. 23, 2013) ........................................................ 11

*Dixon v. Henderson*,
   186 F. Appx. 426 (5th Cir. 2006) ............................................................................ 20

*DL v. Dist. of Columbia*,
   Civ. No. 05-1437, 2015 WL 6446087 (D.D.C. Oct. 23, 2015) ............................ 10

*Donovan v. Janitorial Servs., Inc.*,
   672 F.2d 528 (5th Cir. 1982) ................................................................................... 14

*Gray v. County of Riverside*,
   No. EDCV 13-00444-VAP, 2014 WL 5304915 (C.D. Cal. Sept. 2, 2014) ........... 10

*Gulf States Utils. Co. v. Ecodyne Corp.*,
   635 F.2d 517 (5th Cir. 1981) ................................................................................... 20

*Harris v. Tunica Cty.*,
   Civ. No. 3:14-cv-00218, 2017 WL 104319 (N.D. Miss. Jan. 10, 2017) .................. 6

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018) .................................................................... 20

*In the Matter of M&M Wireline & Offshore Servs., LLC*,
   No. 15-4999, 2017 WL 430063 (E.D. La. Jan. 31, 2017) ...................................... 20

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977) .................................................................................................. 19

*Irons v. Aircraft Serv. Int'l, Inc.*,
   392 F. App'x 305 (5th Cir. 2010) ....................................................................... 5, 15

*Johnson v. Holmes*,
   No. 3:16-cv-00016, 2018 WL 1404410 (W.D. Va. Mar. 19, 2018) ...................... 21

*Linde v. Arab Bank, PLC*,
   922 F. Supp. 2d 316 (E.D.N.Y. 2013) ................................................................... 12

*McLaurin v. Church Mut. Ins. Co.*,
No. 2:12CV235-KS-MTP, 2014 WL 232116 (S.D. Miss. Jan. 22, 2014) ............................ 22

*Moore v. Napolitano*,
926 F. Supp. 2d 8 (D.D.C. 2013) ................................................................................. 19

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
No. 4:09-CV-2556, 2016 WL 4679025 (S.D. Tex. Sept. 7, 2016) ................................ 8

*Richardson v. Cheshier & Fuller, L.L.P.*,
No. 6:07-cv-256, 2008 WL 5122122 (E.D. Tex. Dec. 3, 2008) .................................... 11

*Right of Way Maintenance Co. v. Gyro-Trac Inc.*,
303 Fed. Appx. 229 (5th Cir. 2008) .............................................................................. 6

*Rodriguez v. City of Los Angeles*,
No. CV 11-01135 DMG, 2013 WL 12203108 (C.D. Cal. May 29, 2012) .................... 8, 9, 10

*Shell Offshore, Inc. v. Tesla Offshore, L.L.C.*
Civ. No. 13-6278, 2016 WL 541445 (E.D. La. Feb. 11, 2016) ................................... 6

*Stockwell v. City & Cty. of San Francisco*,
749 F.3d 1107 (9th Cir. 2014) ...................................................................................... 19

*United States ex rel. Liotine v. CDW Gov't Inc.*,
No. 05-33-DRH, 2012 WL 2807040 (S.D. Ill. 2012) ................................................... 6, 12

*United States v. Bishop*,
264 F.3d 535 (5th Cir. 2001) ........................................................................................ 5

*United States v. Duncan*,
919 F.2d 981 (5th Cir. 1991) ........................................................................................ 5

*United States v. Hoffman*,
Crim. No. 14-022, 2015 WL 1509488 (E.D. La. Apr. 1, 2015) ................................... 6

*United States v. Jennings*,
724 F.2d 436 (5th Cir. 1984) ........................................................................................ 8

*United States v. Johnson*,
122 F. Supp. 3d 272 (M.D.N.C. 2015) ......................................................................... 19

*United States v. Valencia*,
600 F.3d 389 (5th Cir. 2010) ........................................................................................ 6

*Williams v. Cerberonics, Inc.*
871 F.2d 452 (4th Cir. 1989) ........................................................................................ 21

iii

*Williams v. Hargrove*,
    Civ. No. 1:16-CV-266-KS-MTP,
    2018 WL 1598669 (S.D. Miss. Apr. 2, 2018)............................................................ 10, 13, 14

**Rules**

Fed. R. Evid. 1006 ............................................................................................................ 1, 5, 7

Fed. R. Evid. 401 ............................................................................................................... 18, 21

Fed. R. Evid. 403 ............................................................................................................... 3, 19

Fed. R. Evid. 702 ............................................................................................................... 16

L.U. Civ. R. 7(b)(6)(A) ...................................................................................................... 1

Plaintiffs Latoya Brown, Lawrence Blackmon, Khadafy Manning, Quinnetta Manning, Nicholas Singleton, Steven Smith, Bessie Thomas and Betty Jean Williams Tucker ("Plaintiffs") respectfully submit this memorandum in opposition to Defendants' Motion In Limine to Exclude the Declaration and Testimony of Rahul Guha (ECF No. 272, "Defs.' Motion" or "Defendants' Motion") and Defendants Memorandum in Support of Defendants' Motion ("Defs.' Brief" or "Defendants' Brief") in this civil rights action brought against defendants Madison County, Mississippi ("Madison County") and Sheriff Randall Tucker, sued herein in his official capacity (together with Madison County, "Defendants"). Pursuant to L.U. Civ. R. 7(b)(6)(A), Plaintiffs respectfully request oral argument on Defendants' Motion.[1]

## PRELIMINARY STATEMENT

Defendants' Motion *in Limine* to Exclude Dr. Guha's Summary Declaration and Testimony is perhaps most striking for what it does not argue: that Dr. Guha's Summary Declaration (the "Guha Summary Declaration" or "Guha Summary Decl.") fails to meet the standards for admission under Federal Rule of Evidence 1006. Nor could Defendants plausibly argue that Dr. Guha's Summary Declaration is not admissible under Rule 1006. In seeming recognition of this fact, Defendants instead focus on issues that are immaterial and ultimately irrelevant to the admissibility of a summary declaration. Indeed, as Defendants themselves concede, Dr. Guha "simply took the data" that was provided to him "as is, and performed the calculations requested by Plaintiffs' counsel." Defs.' Br. at 14. Reflecting the very embodiment

---

[1] Because the issues presented by this Motion overlap with the issues presented by Plaintiffs' pending Motion for Class Certification (ECF No. 231), Plaintiffs request that argument on the instant Motion should be held jointly with argument on Plaintiffs' Motion for Class Certification.

1

of what a Rule 1006 summary calculation is meant to be, that admission from Defendants is sufficient in itself for the Court to deny Defendants' Motion.

Defendants' Motion misses the mark for a number of reasons. Defendants mischaracterize the nature of Dr. Guha's Summary Declaration and try to create issues concerning the preparation and organization of the records he summarizes, even though the underlying datasets reflect the Madison County Sheriff Department's ("MCSD") *own* arrest and citation records. Further, Defendants inappropriately view Dr. Guha's Summary Declaration in total isolation from all other evidence on the record in this case, and argue that, to the extent Dr. Guha's Summary Declaration is not case-dispositive, it must be excluded. In addition to wrongly conflating admissibility and sufficiency, this argument conveniently ignores the copious and well-documented additional evidence that has been presented by Plaintiffs in this case.

Defendants further criticize the Summary Declaration as being "inaccurate" and "misleading" for failing to account for some unknown quantity of other alleged explanatory variables that, by Defendants' own admission, do not appear in the datasets that Dr. Guha is summarizing. Despite these criticisms, Defendants never actually offer any alternative calculations or controvert the stark racial disparities in arrest and citation rates reflected in the data Dr. Guha summarizes. Defendants' contention that other purported factors, not found in the data summarized by Dr. Guha, may be relevant to an analysis of the ultimate merits of Plaintiffs' claims presents no basis for excluding Dr. Guha's calculations on class certification or discounting those calculations when considering Plaintiffs' motion.

In any event, Dr. Guha offers no conclusions or opinions as to the meaning of his tabulations, and that the tabulations lead to an inference supporting Plaintiff's theory of the case is not a basis for exclusion. Perhaps most tellingly, Defendants never argue that Dr. Guha made

2

errors in tabulating the voluminous records that he was provided in this action. Finally, because

Dr. Guha's Summary Declaration has been submitted at the class certification stage and not for a

jury, there is no validity to the argument that such statistics are unfairly prejudicial and should be

excluded under Federal Rule of Evidence 403. Defendants' Motion is similarly unsupported by

any other Federal Rules of Evidence to which they cite, and should be denied in full.

## BACKGROUND

Plaintiffs' Motion for Class Certification seeks to certify a class and two subclasses

consisting of Black individuals subject to the unconstitutional racially discriminatory policing

practices of the Madison County Sheriff's Department. Specifically, Plaintiffs move for

certification of "a class of all Black persons who presently or in the future will reside in or travel

through Madison County" and two subclasses: "all Black persons who travel or will travel by car

through majority Black areas of Madison County" and "all Black persons who travel or will

travel by foot in Madison County's majority-Black neighborhoods." In connection with this

action, Defendants and third parties such as the Madison County Justice Court have produced

tens of thousands of records reflecting all arrests and citations recorded by the MCSD from 2012

through 2017, as well as a subset of "incident reports" prepared by the MCSD that Defendants

have represented provide a "narrative" of MCSD encounters with individuals that result in

arrests. *See* Ex. 1, Guha Summary Decl. ¶ 3(a)-(c).

Because the MCSD's arrest and citation data are voluminous, Plaintiffs retained Dr. Guha

to perform calculations and provide summaries of the data at the aggregate level. Many of the

arrest and citation records that Plaintiffs received were provided in vast spreadsheets containing

data for each individual arrest or citation. For instance, Dr. Guha's "Arrest Data" summary[2] reflects the data contained in the file ACLU12TO17.CSV, which has 25,576 entries for individuals arrested by the MCSD and booked into the Madison County Detention Center, and includes information for each, including the date of arrest, the offense, and the race of the arrestee. Among other things, Plaintiffs instructed Dr. Guha to tabulate the racial composition of individuals arrested and/or cited for each offense. Separately, Plaintiffs instructed Dr. Guha to search the incident reports produced by MCSD for selected search terms related to particular relevant arrest categories (e.g., "roadblock", "seatbelt", etc.)[3], and then record and tabulate the race of arrestees in incident reports that matched the search terms. Dr. Guha performed the requested tabulations and prepared nine summary exhibits, along with a declaration detailing his methodology and any assumptions reflected therein, which Plaintiffs filed pursuant to Federal Rule of Evidence 1006 in support of their Motion for Class Certification on March 14, 2018. Dr. Guha's tabulations showed, among other things, that 77% percent of all arrests made by the MCSD are of Black individuals,[4] and that 72% of all citations issued by the MCSD are issued to Black individuals. *Id.*, ¶ 19.

Defendants—both in their motion and in the Rebuttal Expert Report RE: Rahul Guha, Ph.D., prepared by Dr. Dwight Steward in support of their Motion (the "Steward Report" or

---

[2] *See id.*, ¶¶ 8-9.

[3] Dr. Guha notes in Exhibits 6, 7, 8 and 9 the search terms he used in each exhibit. *See, e.g.,* Ex. 1, Guha Summary Decl. Exhibit 6, note 1 (providing search terms used for roadblock arrests).

[4] As Dr. Guha explained in his Summary Declaration, this calculation was conducted on a per-offense basis. *Id.*, ¶ 10.

"Steward Rep.")[5]—mischaracterize Dr. Guha's tabulations, and rather than critiquing the actual manner in which Dr. Guha calculated the data that was provided to him, seem to suggest that the arrest and citation data they provided (which include Defendants' own records) somehow does not reflect the MCSD's arrest and citation rates. They argue that Dr. Guha should have somehow incorporated some unknown quantity of extraneous factors that the MCSD also does not include in the records provided. However, neither Defendants' Motion nor Dr. Steward's Report assert that Dr. Guha did not correctly tabulate the data he was provided, or that Dr. Guha's Summary Declaration fails to meet the requirements of Federal Rule of Evidence 1006. Accordingly, Defendants fail to provide a valid basis for excluding Dr. Guha's Summary Declaration or discounting the calculations set forth therein.

## ARGUMENT

### I.   LEGAL STANDARD

Federal Rule of Evidence 1006 provides that a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006 ("Rule 1006"). Rule 1006 "requires only that the underlying records be voluminous and that in-court examination be inconvenient." *United States v. Duncan*, 919 F.2d 981, 988 (5th Cir. 1991). Under this rule, courts have "broad discretion" to admit summaries, *Irons v. Aircraft Serv. Int'l, Inc.*, 392 F. App'x 305, 314 (5th Cir. 2010), and the use of summary testimony and documents is "broadly interpreted." *United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001). While the underlying information upon which a Rule 1006 summary is based must still be admissible, the writings or data being summarized

---

[5] *See* Ex. 3, Steward Rep. (ECF No. 272-3).

need not themselves be admitted into evidence. *United States v. Valencia*, 600 F.3d 389, 417 (5th Cir. 2010) (holding that requiring the admission of underlying records "would contravene the plain language and purposes of Rule 1006."). In particular, the Fifth Circuit has recognized that a summary of a database's contents is admissible under Rule 1006 even if the database itself has not been admitted into evidence. *Id.* at 417-18. However, the proponent of a Rule 1006 summary must make the underlying records available for examination by the other parties at a reasonable place. *United States v. Hoffman*, Crim. No. 14-022, 2015 WL 1509488, at *2 (E.D. La. Apr. 1, 2015) (quoting Fed. R. Evid. 1006).

 "[A]lthough summaries must accurately reflect the underlying records or testimony, they cannot be excluded simply because they *might* be inaccurate." *Right of Way Maintenance Co. v. Gyro-Trac Inc.*, 303 Fed. Appx. 229, 230 (5th Cir. 2008) (emphasis in original) (citation omitted). Relatedly, a summary declarant need not establish that the underlying data being summarized is "complete" or even "accurate" for a summary to be admissible under Rule 1006, so long as the contents of the data being summarized are accurately described by the declarant. *See, e.g., United States ex rel. Liotine v. CDW Gov't Inc.*, No. 05-33-DRH, 2012 WL 2807040, at *4 (S.D. Ill. 2012) ("The fact that the reports may reflect missing or fabricated data or mistaken assumptions goes to the weight accorded the reports and not to their admissibility.").

Courts disfavor motions in limine to exclude evidence, including summary evidence, at the earlier stages of litigation before trial. *Shell Offshore, Inc. v. Tesla Offshore, L.L.C.*, Civ. No. 13-6278, 2016 WL 541445, at *3 (E.D. La. Feb. 11, 2016) (declining to grant motion in limine to exclude "appropriate and potentially admissible" Rule 1006 summary until trial). "Evidence should not be excluded unless it is clearly inadmissible *on all potential grounds*." *Harris v.*

*Tunica Cty.*, Civ. No. 3:14-cv-00218, 2017 WL 104319 at *1 (N.D. Miss. Jan. 10, 2017) (emphasis in original).

## II.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO EXCLUDE THE SUMMARY DECLARATION OF DR. GUHA

As set forth below, Dr. Guha's Summary Declaration indisputably satisfies the admissibility requirements of Rule 1006. Defendants ignore whether the actual requirements of Rule 1006 are satisfied, and instead focus their arguments on the *meaning* of Dr. Guha's calculations (rather than the accuracy thereof), and whether Dr. Guha's calculations will somehow unfairly prejudice Defendants, even though there is no risk of unfair prejudice at the class certification stage, where there is no jury. Because the Rule 1006 criteria are indisputably met and Defendants' other evidentiary objections are entirely without merit, Defendants' Motion should be denied.

### A.    <u>Dr. Guha's Summary Declaration Easily Satisfies The Requirements Of Rule 1006</u>

Dr. Guha summarized spreadsheets containing over 25,000 arrest records for individuals booked into the Madison County Detention Center by the MCSD from January 1, 2012 through September 20, 2017,[6] over 25,000 records for individuals who were issued citations by the MCSD from January 1, 2012 through December 31, 2017,[7] and over 59,000 pages of incident reports produced by the MCSD in this matter.[8] Rule 1006 exists to allow parties to make summaries of such voluminous records and databases available to a judge or jury, in recognition

---

[6] *See* Ex. 1, Guha Summary Decl., ¶ 3(a).

[7] *See id.*, ¶ 3(b).

[8] *See id*., ¶ 3(c).

of the plain fact that presenting a summary "offers the only practicable means of making their contents available to judge and jury." Advisory Committee Notes, Fed. R. Evid. 1006 (citing 4 Wigmore § 1230). While courts do not typically apply a strict baseline as to what constitutes "voluminous", the tens of thousands of underlying records summarized here by Dr. Guha clearly qualify as voluminous, and could not otherwise be easily examined by the Court. *Cf. United States v. Jennings*, 724 F.2d 436, 441–42 (5th Cir. 1984) (chart summarizing 200 pages of documents admissible under Rule 1006); *Rodriguez v. City of Los Angeles*, No. CV 11-01135 DMG, 2013 WL 12203108, at *4 (C.D. Cal. May 29, 2012) (overruling evidentiary objection to Rule 1006 declarations summarizing combined 11,000 pages of police records). Defendants do not argue otherwise in their Motion.

It is further undisputed that Plaintiffs have made available and Defendants have had the opportunity to examine the underlying records summarized in Dr. Guha's Summary Declaration. Indeed, Defendants provided the datasets underlying two of Dr. Guha's three summaries, and the third dataset was received via a public records request from the Madison County Justice Court, which is located next door to the MCSD office, and reflects the MCSD's own citation activity. In any event, Plaintiffs provided and/or identified by Bates number all such materials to Defendants. [9] Because of this, Defendants do not dispute that the examination requirement of Rule 1006 is also satisfied. *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, No. 4:09-CV-2556, 2016 WL 4679025, at *2 (S.D. Tex. Sept. 7, 2016) (denying a motion to strike a Rule 1006 summary where offering party had made the underlying documents available to opposing party as required by Rule 1006).

---

[9] Ex. 2, Guha July 2 Decl., ¶ 4;

At the outset of his Summary Declaration, Dr. Guha transparently describes the tabulations and summaries that he conducted concerning three datasets reflecting arrest and citation rates based on records from the Madison County Justice Court and the MCSD itself.[10] Put simply, Dr. Guha tabulated and summarized the data by offense and race in two spreadsheets that were provided to him, and separately conducted a keyword search across the tens of thousands of incident reports produced by Defendants to tabulate and classify the number of reports that hit on certain search terms provided by Plaintiffs' counsel. Such summaries are widely accepted by courts, both in support of motions for class certification and in cases concerning selective enforcement and discrimination by law enforcement agencies, and Dr. Guha's summary is similarly appropriate here.

For instance, in *Rodriguez v. City of Los Angeles*, a class action against the Los Angeles Police Department alleging that its gang injunction program violated the First, Fourth and Fourteenth Amendments, the district court denied the LAPD's evidentiary objection and motion to strike Rule 1006 declarations submitted by plaintiffs that summarized thousands of pages of arrest reports and gang injunction service records that had been produced by the LAPD. 2013 WL 12203108, at *1, 4 (C.D. Cal. Feb. 15, 2013). There, as Defendants do here, the LAPD objected to the declarations summarizing arrest rates as offering improper analysis and interpretation of the summarized records. *Id.* at 4. However, the court overruled these objections and admitted the declarations, noting that because the underlying arrest records were indeed

---

[10] Ex. 1, Guha Summary Decl., ¶ 3; *see also* Ex. 2, Guha July 2 Decl., ¶ 4.

voluminous and had been produced by Defendants, the plaintiffs' "preparation of a summary for the convenience of the [c]ourt is appropriate under Fed. R. Evid. 1006." *Id*.[11]

Significantly, any argument by the non-proffering party regarding the purported inaccuracy or incompleteness of the data being summarized provides no basis to exclude the summary so long as what is being summarized is identified. *See Williams v. Hargrove*, Civ. No. 1:16-CV-266-KS-MTP, 2018 WL 1598669, at *3 (S.D. Miss. Apr. 2, 2018) (admitting Rule 1006 summary of defendant coroner's records in lawsuit alleging discrimination against Black-owned funeral homes, and overruling objection that summary failed to incorporate other factors or data that could have affected racial disparity); *DL v. Dist. of Columbia*, Civ. No. 05-1437, 2015 WL 6446087, at *5-6 (D.D.C. Oct. 23, 2015) (denying defendant's motion to exclude Rule 1006 summary and rejecting arguments concerning alleged errors in preparation of summary where scope of summary was clearly identified, as "there is nothing inherently inappropriate about omitting certain material or information from a summary, provided such material is clearly identified."). Here, Dr. Guha clearly and expressly identifies the datasets that he is summarizing in his Summary Declaration, and Defendants are in possession of all such documents. Thus, Defendants know exactly what data Dr. Guha is summarizing. Moreover, Defendants' arguments concerning the recording issues with the underlying data ring particularly hollow when it is their own records that are being summarized. *Gray v. County of Riverside*, No. EDCV 13-00444-VAP, 2014 WL 5304915, at *24 (C.D. Cal. Sept. 2, 2014) (granting motion for class certification and overruling objection to Fed. R. Evid. 1006 summary exhibit that organized and categorized

---

[11] The court simultaneously certified the plaintiffs' principal class. *Id.* at *15.

court orders issued by Defendant county's court system where the summarized "court orders were organized based on Defendant's coding system").

**B.**      **As A Summary Declarant, Dr. Guha Does Not Offer Conclusions Regarding The Data He Summarized**

Dr. Guha presents a compilation of data, rather than offering conclusions or expert opinion testimony, and is thus appropriately presented as a summary declarant. *See Richardson v. Cheshier & Fuller, L.L.P.*, No. 6:07-cv-256, 2008 WL 5122122, at *4 (E.D. Tex. Dec. 3, 2008) (holding that under Rule 1006, a witness's testimony describing "the contents of a summary of voluminous business records and the methods she used to create the summary … is not considered expert testimony"); *Canadian St. Regis Band of Mohawk Indians v. New York*, Nos. 5:82-CV-0783, 5:82-CV-1114, 5:89-CV-0829, 2013 WL 3992830, at *14-15 (N.D.N.Y. Jul. 23, 2013) (declaration by a statistician providing summary statistics of census data was not an expert opinion because the accompanying charts did "not contain complex calculations" but simply "compile[d] the block data" using "a basic calculation that cannot reasonably be contested"); *see also Bear Stearns Cos., Inc. Securities, Derivative, and ERISA Litig.*, 763 F. Supp. 2d 423, 582 (S.D.N.Y. 2011) ("As a compilation of data, rather than an expert report, consideration of the [summary] Declaration does not require the court to make any finding of fact or inquiry into [witness's] qualifications as an expert or his methodology."). Dr. Guha's Summary Declaration presents no conclusion regarding the meaning of his tabulations of the cause of any disparity in the numbers; rather, he "simply took the data, as is, and performed the calculations requested by Plaintiffs' counsel," as Defendants concede. Defs.' Br. at 14; *see also* Defendants' Brief in Opposition to Plaintiffs' Motion For Class Certification (ECF No. 268) at 13 (noting that "Dr Guha offers no opinion on the data").

11

Nor does Dr. Guha's Summary Declaration become an expert opinion to the extent it leads to an inference that supports Plaintiffs' theory of the case over that of Defendants. *United States v. Armstrong*, 619 F.3d 380, 384 (5th Cir. 2010) (presence of an inference itself is not prejudicial in a Rule 1006 declaration). Indeed, Defendants agree that a summary may include only evidence favoring one party. *See* Defs.' Br. at 6 (citing *United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001)); *see also Linde v. Arab Bank, PLC*, 922 F. Supp. 2d 316, 333 (E.D.N.Y. 2013) (rejecting defendant's argument that summary witness's testimony would be "misleading and confusing because plaintiffs have cherry-picked a subset of transactions that will show a skewed picture of the [at-issue] transactions," and admitting summary report because witness identified which subset of transactions were being identified, and thus accurately describe[d] the limit of his analysis"). Because he makes no such conclusions, Dr. Guha is properly presented as a summary witness. *See id.* at 332-34 (determining that CPA and former Branch Chief in the SEC's Division of Enforcement was a Rule 1006 witness, not an expert witness, because his summary of bank transactions did not offer opinions).[12]

---

[12] In any event, even if the Court were to consider the statistical methods and summary of data presented in Dr. Guha's Summary Declaration to constitute expert testimony, Dr. Guha unquestionably possesses the requisite knowledge, experience, training, and education to present statistical evidence. Dr. Guha, who holds a Ph.D. in Management with a focus on quantitative methods from Cornell and has over 20 years of experience working with clients in litigation matters, used a reliable, widely accepted methodology, has personally reviewed the data and code used to create the tabulations, and is confident that his calculations are correct. Ex. 2, Guha July 2 Decl., ¶ 6; *see also Liotine* 2012 WL 2807040, at *4 (denying motion to exclude Rule 1006 declaration as improper expert testimony and holding that while "the [c]ourt understands [the declarant] to be an expert in order to accomplish the task he was asked to complete, *i.e.,* to use his specialized computer knowledge to summarize data within the parameters that have been given to him," the declarant "will not, however, give expert testimony; rather, he will only testify about the evidence he compiled from the exhibits, which will be in evidence and are from [defendant]"); *id.* ("Dr. Albright is just a witness qualified by knowledge, skill, experience, training, or education to input data and then explain the results. Dr. Albright is not opining on the meaning of those results; rather, he is just reporting what he found and the jury can assess for itself what it means.").

### C.   Defendants Fail To Establish That Dr. Guha's Tabulation Was Unreliable

#### 1.   Dr. Guha's Calculations Accurately Reflect The Contents Of The Records He Was Provided

As Defendants themselves argue, Dr. Guha "simply took the data, as is, and performed the calculations requested by Plaintiffs' counsel." Defs.' Br. at 14. Defendants repeatedly assail Dr. Guha's calculations as "misleading and inaccurate", seemingly because he did not account for various purportedly explanatory factors that are not reflected in any of the datasets he summarized or make certain speculative assumptions about the datasets Defendants provided. Defs.' Br. at 15-17. However, Defendants never actually demonstrate that any of these other purported factors makes Dr. Guha's tabulations of arrest and citation rates incorrect, or that accounting for such factors would have a material impact on arrest rates by race. That is, Defendants merely hint at the existence of factors not recorded in the summarized datasets that Defendants contend are potentially relevant to the disparity in arrest rates, without actually presenting any empirical evidence of such factors. Defendants' hypotheticals offer scant support to Defendants, and do not bear on the admissibility of Dr. Guha's Summary Declaration.

A recent decision from Judge Starrett in this District is particularly informative here. In *Williams v. Hargrove*, a group of Black funeral home owners brought claims under Title VI of the Civil Rights Act and 42 U.S.C. § 1983 against Harrison County and its county coroner, alleging that the defendants discriminated against them by favoring the services of white-owned funeral homes over Black-owned funeral homes. 2018 WL 1598669, at *1 (S.D. Miss. Apr. 2, 2018). The plaintiffs submitted a pre-trial motion *in limine* to admit summary charts under Rule 1006, including a chart that tabulated the race and designated funeral home for each decedent for whom an autopsy was performed from 2012 to 2016, as well as a "release form" chart that "merely takes all the cases where the release form was signed by [coroner] or his deputies and

13

identifies them by race and funeral home." *Id.* The defendants objected to these charts as being misleading, inaccurate and prejudicial. In particular, the defendants criticized the charts for not including other variables (which were not reflected in the coroner's dataset), such as family preference, arguing that the coroner did not necessarily control which funeral home handled the body after autopsy. *Id.* at *3. The court rejected such arguments as insufficient to exclude the summaries, and noted that "while Defendants are free to present evidence or argument that [the coroner] did not make the decision in these cases, such an argument does not affect the accuracy of the chart and table, which purport only to present each case by race and funeral home." *Id.* And further, the court refused to admit another summary chart prepared by the plaintiffs that *did* add columns in an attempt to account for other variables like family preference, finding that the chart "d[id] not accurately reflect the underlying files, many of which have no information as to who made the funeral home decision." *Id.* Here, too, Dr. Guha's summaries tabulate each record by race and offense as those data are contained in the underlying dataset, and Dr. Guha does not try to speculate as to the potential causal impact of other factors not contained in the data.[13] Accordingly, Dr. Guha's Summary Declaration is admissible.

2.    Defendants Fail To Demonstrate That Dr. Guha's Tabulations Are Mathematically Incorrect

Defendants have not offered a competing tabulation or summary of the MCSD's arrest and citation records that would call into doubt Dr. Guha's calculations. *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982) (admission of summaries proper where appellant failed to identify any discrepancy between original records admitted into evidence and the

---

[13] Dr. Guha endeavored to make the minimum number of assumptions (while making clear any assumptions he did make). See Ex. 2, Guha July 2 Decl., ¶ 10; Ex. 5, Guha Tr. at 117:18–118:9.

representation of that data in the disputed summaries); *Irons*, 392 F. App'x at 314 (upholding use of Rule 1006 summary where "[a]ppellants have identified no discrepancy between the original records and the data included in the summary"). Defendants and their experts speculate that some combination of unrecorded socioeconomic factors and data entry practices of the MCSD and the Madison County Detention Center should have been incorporated into Dr. Guha's summary; the relationship (if any) between such factors, arrest rates, and race is purely speculative, at best. By contrast, in preparing his summary, Dr. Guha stuck to tabulating the concrete, empirical data he was provided.

Notably, neither Defendants nor Dr. Steward actually offer a competing tabulation of the racial composition of the MCSD's arrest or citation records using Dr. Guha's underlying datasets. That is, Defendants do not dispute that 17,631 of the 23,017 entries in the Madison County Detention Center's booking records (as produced to Plaintiffs) have race designated as "Black", or that that figure is approximately 77% of the total number of arrests.[14] That is what Dr. Guha said he was tabulating, and Defendants do not seem to challenge his math there. Defendants' expert Dr. Steward has vaguely stated that he ran "cursory" tabulations comparing the MCSD arrest rates in Madison County for certain crimes to Uniform Crime Report data from select other counties in Mississippi; the fact that Dr. Steward found these other counties also had disparities in arrest rates does nothing to discredit Dr. Guha's tabulations, or otherwise suggest that Madison County does not, in fact, have a stark disparity in arrest rates by race. *See* Ex. 3, Steward Rep., ¶ 31-32, 34. While the parties may argue about the cause and/or meaning of disparities in arrest rates, Defendants and Dr. Steward essentially concede that the disparities

---

[14] *See* Ex 1, Guha Summary Decl. Exhibit 1.

reflected in Dr. Guha's summary are correct, and that there is indeed a stark racial disparity in arrest rates.

Defendants and their experts also protest that Dr. Guha's summary statistics do not account for "calls for service" or whether an arrest was discretionary or not. These variables, however, are simply not contained in the underlying datasets. Dr. Guha clearly stated and explained his methodology and how he counted arrests, and Defendants' arguments about the ostensible significance of these other data points have no effect on the admissibility or reliability of Dr. Guha's summary of the available data. In any event, even if the Court were to accept at face value Defendants' arguments regarding the alleged issues with Dr. Guha's "statistics" (it should not), it would do little to shrink the obvious disparity in arrest and citation rates between races reflected in Defendants' own data. For instance, Defendants fault Dr. Guha's tabulation for allegedly "double counting" arrests and failing to account for "non-discretionary" arrests such as warrant-based arrests, as well as for failing to consider where "calls for service" may have originated. See Defs.' Br. at 15-18.[15] But Defendants cite no research or data suggesting that these purported factors might somehow affect one race more than another. Thus, Defendants' arguments regarding Dr. Guha's "statistics" similarly fail to diminish the weight of Dr. Guha's Summary Declaration.

---

[15] Moreover, Dr. Guha *does* make clear his assumptions regarding the data. For instance, Exhibit 1 to Dr. Guha's Summary Declaration, a table reflecting the total arrests made by the MCSD as entered in the Madison County Detention Center's logs, expressly states "the tabulation was conducted under the assumption that an individual can only be arrested once a day for the same offense code." Ex. 1, Guha Summary Decl. Exhibit 1; *see also* Ex. 2, Guha July 2 Decl., ¶ 10.

3.      No Law Enforcement Expertise Is Required To Calculate The Data
        Provided

Defendants suggest that Dr. Guha does not "understand what is going on with the data"

(Defs.' Br. at 14) because he lacks the "understanding of the criminal justice system" they allege

is necessary to compute arrest data contained in a spreadsheet. Defs.' Br. at 2. Notably, however,

Defendants' expert Dr. Steward, the authority cited for many of their contentions regarding the

importance of law enforcement expertise when calculating police data, disclaims that he,

himself, is "not a police expert". Ex. 6, Steward Tr. 310:16-17; *see also id.* 309:8-12 ("Q:

[Y]ou're not a policing expert, though; correct? A: No, I'm not."). Regardless, Dr. Guha's

Summary Declaration does not interpret the data in a manner that would require law enforcement

expertise; he simply summarizes the data that has been provided.

Defendants also rely on portions of the report of Mark Dunston, Defendants' policing

expert. *See* Ex. 4, Report of Mark Dunston, at 16-19. However, Mr. Dunston is not presented as

an expert with respect to data or statistics.[16] Mr. Dunston's criticisms of Dr. Guha's tabulations

are largely duplicative of Dr. Steward's criticisms, and include observations about the

characteristics of law enforcement data and statements about the types of information and

tabulations he believes would be "important to know". Ex. 4, Dunston Report, at 18-19. Mr.

Dunston's opinions similarly relate to the interpretation of Dr. Guha's tabulations, not their

accuracy, and Mr. Dunston does not claim that Dr. Guha's tabulations are incorrect. For

example, with respect to Dr. Guha's tabulations of arrests associated with traffic stops for

---

[16] To the extent Defendants seek to rely on Mr. Dunston as an expert in statistical analysis, Mr. Dunston's
report and testimony are inadmissible under Federal Rule of Evidence 702 because he is not qualified to
serve as an expert in this field and his opinions on statistics are not based on reliable methods. *See* Ex. 7,
M. Dunston Tr. 14:10-16:3 (demonstrating Mr. Dunston's lack of qualifications in statistics and related
fields).

seatbelt violations, in Exhibit 9 to his Summary Declaration, Mr. Dunston states that, based on his review of incident reports, "a majority of those persons arrested were arrested for other offenses, not just seatbelt or restraint-related violations." *Id.* at 17. But Exhibit 9 to Dr. Guha's Summary Declaration does not include any tabulations about the *reason* for which each individual was *arrested*. Rather, Exhibit 9 presents tabulations of "Arrests From Incident Reports Related To Traffic Stops Initiated For a Seatbelt Violation Only." Ex. 1, Guha Summary Decl. Exhibit 9. Thus, while Mr. Dunston may have conducted tabulations differently or may have chosen to tabulate different categories of data, his criticisms have no bearing on the accuracy of Dr. Guha's tabulations. Chief Dunston's opinions, to the extent they are relevant at all, relate to the weight and interpretation of Dr. Guha's tabulations, not their admissibility.

## III.   DEFENDANTS' OTHER EVIDENTIARY OBJECTIONS ARE SIMILARLY WITHOUT MERIT

Perhaps recognizing the total lack of support for excluding Dr. Guha's Summary Declaration under Rule 1006, Defendants piece together objections based on other Rules of Evidence. As set forth below, these objections, too, are without merit.

### A.   The Statistics Dr. Guha Summarizes Support An Inference That The MCSD Targets Black Persons, And Are Only Part Of the Evidence Plaintiffs Have Presented

Defendants argue, without citing any authorities relevant to the class certification inquiry, that "raw statistics" such as those set forth by Dr. Guha are not case-dispositive "proof" of discriminatory intent. Defs.' Br. at 7. This does not, however, mean that this data is irrelevant. Dr. Guha's Summary Declaration was filed in support of Plaintiffs' motion to certify a class bringing challenges under the Fourth and Fourteenth Amendments and the Civil Rights Act to the MCSD's longstanding policy of racially profiling and targeting Black persons. It goes without saying that tabulating and comparing the MCSD's arrest and citation data by race would

18

be "of consequence in determining the action," and would thus support class certification. Fed. R. Evid. 401; *see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 (1977) ("[S]tatistical analyses have served and will continue to serve an important role in cases in which the existence of discrimination is a disputed issue.") (internal quotation omitted); *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1115-16 (9th Cir. 2014) (plaintiffs' "fail[ure] to conduct a regression analysis to take account of alternative explanations, unrelated to age, for any statistical imbalance" was not grounds to deny certification; to the contrary, "[i]n highlighting the questions of statistical proof of disparate impact and causation, the [defendant] has strengthened, not weakened, the case for certification, as it has identified a common question, the resolution of which will uniformly affect all members of the class"). Regardless, Plaintiffs do not rely on Dr. Guha's statistical summary alone. Rather, the statistical imbalances identified in the data summarized by Dr. Guha, coupled with Dr. Ricchetti's rigorous statistical analysis and the extensive anecdotal and documentary evidence submitted by Plaintiffs, provide significant proof of the challenged policy, and thus support class certification. *See Moore v. Napolitano*, 926 F. Supp. 2d 8, 30 (D.D.C. 2013) (finding that plaintiffs established commonality and granting class certification where "plaintiffs' statistical and anecdotal evidence raises an inference of discrimination").[17]

---

[17] *United States v. Johnson*, cited heavily by Defendants (including in a page-long block quotation), is inapposite in multiple regards. 122 F. Supp. 3d 272 (M.D.N.C. 2015). First, the *Johnson* decision did not involve a Rule 1006 summary. But more importantly, *Johnson* is a post-trial ruling in a non-class action that focuses entirely on whether statistical analyses can constitute sufficient proof of discrimination at trial, not on whether such data is admissible evidence at the class certification stage. *Id*. at 281-82.

### B.     **Defendants' Rule 403 Arguments Fail**

####        1.     Rule 403 Is Inapplicable

As an initial matter, Defendants' bid to exclude Dr. Guha's Summary Declaration under
Fed. R. Evid. 403 as "unfairly prejudicial" fails because the Court is the sole decision-maker at
the class certification stage, and the "weighing of probative value against prejudice … has no
logical application" where evidence is presented to a judge, rather than a jury. *Gulf States Utils.
Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981); *see also Dixon v. Henderson*, 186 F.
Appx. 426, 429-30 (5th Cir. 2006) ("[T]he provision of Fed. R. Evid. 403 allowing for the
exclusion of evidence if the probative value is outweighed by the danger of unfair prejudice ha[s]
no application" where the judge is the sole decision maker.). To the extent that any particular
piece of evidence might raise "improper inferences," the Fifth Circuit has explained that a judge
can "[c]ertainly … exclude those improper inferences from his mind in reaching a decision."
*Gulf States*, 635 F.2d at 519. In keeping with this, courts in the Fifth Circuit reject challenges
under Fed. R. Evid. 403 in proceedings where the judge, not a jury, is the decision-maker. *In the
Matter of M&M Wireline & Offshore Servs., LLC*, No. 15-4999, 2017 WL 430063, at *7 n.95
(E.D. La. Jan. 31, 2017) (collecting cases). That same rule applies with equal, if not greater force
in the class certification context, both because the Court is the sole decision-maker at class
certification, and because the rules of evidence are not strictly applied at the class certification
stage. See, e.g., *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 469
n.7 (S.D.N.Y. 2018) ("declin[ing] to apply Rule 403" because "Rule 403's concerns regarding
unfair prejudice and misleading the jury have less force in the class certification context, where
the Court serves as the trier of fact").

None of the cases cited by Defendants in support of their position that data or summary statistics can be unduly prejudicial without the testimony of a sponsoring expert involved a class certification motion. Instead, each of Defendants' cases concerned information that a party sought to show to a jury at trial, and further, none concerned a Rule 1006 summary. *See Williams v. Cerberonics, Inc.* 871 F.2d 452, 455 n.1 (4th Cir. 1989) (affirming the exclusion of statistics offered *in jury trial* where "without expert testimony, the limited probative value of the evidence was plainly outweighed by the possibility it might mislead or confuse *the jury*" (emphasis added)); *Johnson v. Holmes*, No. 3:16-cv-00016, 2018 WL 1404410, at *7 (W.D. Va. Mar. 19, 2018) (excluding evidence under Rule 403 the day before jury trial was scheduled to commence, and noting limited relevance where "the statistics do not break down citations and arrests by particular kind of crime"). Thus, these cases are inapposite, and Defendants' arguments concerning unfair prejudice wholly miss the mark.

        2.    <u>Dr. Guha's Summary Declaration Is Relevant, and Is Admissible Even If Rule 403 Applies</u>

Even if weighing prejudice against probative value under Rule 403 were proper here (it is not), Defendants' argument that the Summary Declaration should be excluded because of Dr. Guha's use of "census benchmarking" is meritless. First, the summary statistics clearly have probative value in this case alleging racial targeting, and Defendants' bald assertion that a disparity between the racial composition of individuals arrested by the MCSD and the population of Madison County "do[es] not make it 'more or less probable' that the MCSD targets Black citizens" (Defs.' Br. at 17 (quoting Fed. R. Evid. 401)) is not supported by any literature, statistics, or common sense. Dr. Guha's summaries indicate that the MCSD arrests and cites Black persons far more than white persons, even though only 38% of Madison County's population is Black. Ex. 1, Guha Summary Decl., ¶¶ 10, 19. Whether or not they are case-

dispositive, the summaries presented by Dr. Guha are consistent with, and corroborate, Plaintiffs'

contentions regarding the MCSD's policy of racially profiling and targeting Black persons, just

as hypothetical data that showed the MCSD arrested Black persons at rates that were

proportionate to, or lower than, their share of Madison County's population would suggest the

absence of discrimination. The test for relevance under Fed. R. Evid. 401 "is not stringent,"

*McLaurin v. Church Mut. Ins. Co.*, No. 2:12CV235-KS-MTP, 2014 WL 232116, at *1 (S.D.

Miss. Jan. 22, 2014), and Dr. Guha's summaries plainly make it more probable that the MCSD

targets Black persons.

Nor does the use of census data present any basis for excluding Dr. Guha's Summary

Declaration. In arguing that Dr. Guha's census benchmarking is somehow unduly prejudicial or

confusing, Defendants misrepresent and distort the role of census data in Dr. Guha's tabulations.

In two of Dr. Guha's nine summary exhibits, Dr. Guha measures the total number of arrests

(Exhibit 2) and citations (Exhibit 4), respectively, and calculates the percentage of those

arrests/citations that were of Black persons.[18] Taking Exhibit 4 as an example, Dr. Guha counted

599 recorded citations of Black persons for "Child Restraint Violations", which accounted for

approximately 94% of the 639 total citations issued for "Child Restraint Violations" from 2012

to 2017.[19] Dr. Guha then plotted the citations in a bar graph that reflects the percentage of

---

[18] Census data is used in only *two* of the nine summary exhibits prepared by Dr. Guha. Even if
Defendants' criticism of Dr. Guha's use of the percentage of Madison County's population that is Black
as a benchmark had merit (it does not), Dr. Guha does not incorporate or use Census data in the majority
of his summaries (specifically, Exhibits 1, 3, 5, 6, 7, 8 and 9 of his Summary Declaration). Thus,
Defendants arguments about Census benchmarking are not even applicable to most of Dr. Guha's
Summary Declaration.

[19] *See also* Appendix C to Guha Summary Declaration for gross data on Child Restraint Violation
citations.

citations for that violation that were issued to Black individuals. He then, for reference, added a simple dashed line across that bar graph that reflects the percentage of the population of Madison County that is Black. Ex. 1, Guha Summary Decl., ¶¶ 13, 22. He also provides a straightforward explanation in Appendix C of how he calculated the "Per Capita Ratio of Black to Non-Black" citations for each offense. As Dr. Guha explained in his deposition, listing the percentage of the County's residents that are black as a benchmark simply provides a point of reference. Ex. 5, Guha Tr. 84:7-10.[20] Such use of Madison County's demographic data in a limited number of exhibits is straightforward and in no way renders Dr. Guha's tabulations inaccurate or unfairly prejudicial. Defendants' remaining arguments based on Fed. R. Evid. 403 should be rejected, accordingly.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny in its entirety Defendants' Motion *In Limine* to Exclude the Declaration and Testimony of Rahul Guha.

Dated: July 2, 2018

By: */s/ Joshua Tom*
   Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Christopher K. Shields (*pro hac vice*)

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

---

[20] While Defendants suggest that Dr. Guha should have excluded juveniles from his benchmark, census data indicates that only 36.7% of Madison County's population age 20 and older is Black. *See* Annual County Resident Population Estimates by Age, Sex, Race, and Hispanic Origin: April 1, 2010 to July 1, 2016, available at *U.S. Census Bureau*, https://www.census.gov/data/datasets/2016/demo/popest/counties-detail.html. This demonstrates that age does not account for the yawning racial disparity in the MCSD's arrest rates.

Brooke Jarrett (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
christopher.shields@stblaw.com
bonnie.jarrett@stblaw.com

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice*)
Jeffery Robinson (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2018, I caused the foregoing **Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion *In Limine* to Exclude the Declaration and Testimony of Rahul Guha** to be electronically filed with the Clerk of the Court using the CM/ECF system, through which copies have been served to:

WISE CARTER CHILD & CARAWAY, P.A.
Michael B. Wallace (Miss. Bar No. 6904)
Charles E. Ross (Miss. Bar No. 5683)
James E. Graves (Miss. Bar No. 102252)
Charles E. Cowan (Miss. Bar No. 104478)
T. Russell Nobile (Miss. Bar No. 100682)
Post Office Box 651
Jackson, MS 39205
(601) 968-5534
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com
trn@wisecarter.com

CURRIE JOHNSON & MYERS, P.A.
Rebecca B. Cowan (Miss. Bar No. 7735)
P.O. Box 750
Jackson, MS 39205
(601) 969-1010
bcowan@curriejohnson.com

KATIE BRYANT SNELL, PLLC
Katie Bryant Snell (Miss. Bar No. 103607)
P.O. Box 3007
Madison, Mississippi 39130-3007
(601) 460-9800
Katie@katiebryantsnell.com

PETTIS, BARFIELD & HESTER, P.A.
J. Lawson Hester (Miss. Bar No. 2394)
Jason E. Dare (MSB No. 100973)
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
(601) 987-5300
lhester@pbhfirm.com
jdare@pbhfirm.com

*/s/ Joshua Tom*
Joshua Tom