**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; HERBERT ANTHONY GREEN; KHADAFY MANNING; QUINNETTA MANNING; MARVIN MCFIELD; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated, | Civil Action No. 3:17-cv-00347-WHB-LRA |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and MADISON COUNTY SHERIFF'S DEPUTIES JOHN DOES #1 through #6, in their individual capacities, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION TO EXCLUDE THE REPORT**
**AND TESTIMONY OF WILLIAM R. FUNDERBURK**

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

AMERICAN CIVIL LIBERTIES UNION OF
    MISSISSIPPI FOUNDATION
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408

AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2610

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................3

    A.    Mr. Funderburk's Report and Testimony ...................................................4

    B.    Dr. Bryan Ricchetti's Rebuttal Expert Report ...........................................5

    C.    Dr. Patricia Frontiera's Rebuttal Expert Report ........................................6

ARGUMENT .............................................................................................................7

I.    COURTS CAN AND SHOULD EXCLUDE EXPERT TESTIMONY THAT IS UNRELIABLE, IRRELEVANT, AND UNSUPPORTED...................................7

II.    MR. FUNDERBURK'S REPORT AND TESTIMONY DO NOT REFLECT THE USE OF RELIABLE PRINCIPLES AND METHODS .............................................9

    A.    Mr. Funderburk's Report And Testimony Should Be Excluded Because He Primarily Relies On Unverified Statements From A Fact Witness Which Is Not A Reliable Methodology ..........................................................................9

        1.    Mr. Funderburk's Assessment Of Geocoded Roadblock Locations Simply Summarize Unverified Statements From A Fact Witness .............9

        2.    Mr. Funderburk's Interview Of A Fact Witness Does Not Constitute A Reliable Methodology Or Reflect "Ground Truth" Validation .................11

    B.    Mr. Funderburk's Unsupported And Conclusory Opinions Regarding Dr. Ricchetti's Analyses Are Unreliable .......................................................14

        1.    Mr. Funderburk's Conclusory And Incorrect Opinion That Street Intersections Cannot Be Accurately Geocoded Must Be Excluded ..........15

        2.    Mr. Funderburk's Unqualified Opinions Regarding Dr. Ricchetti's Statistical Analyses Should Be Excluded ....................................................15

        3.    Mr. Funderburk Performs No Analysis And Identifies No Methodology To Establish That Census Tract Boundary Issues Impact Dr. Ricchetti's Analysis .............................................................................18

        4.    Mr. Funderburk's Opinions Concerning Issues With Use Of A Match-Score Cutoff And Coordinate Reference Systems Are Unreliable And Misleading ................................................................................................19

CONCLUSION ........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*21ST Mortg. Corp. v. Nat'l Sec. Fire & Cas. Co.*,
No. 1:10CV214-HSO-JMR,
2011 WL 13104513 (S.D. Miss. July 12, 2011) ...................................................18

*Allamon v. Acuity Specialty Prod., Inc.*,
No. 1:10-CV-294-TH,
2011 WL 13196209 (E.D. Tex. July 21, 2011) ....................................................18

*Benefield v. Estate of Lockhart*,
No. 1:15CV190-HSO-JCG,
2017 WL 1088120 (S.D. Miss. Mar. 15, 2017) ....................................................14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) .................................................................................passim

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
705 F.3d 518 (5th Cir. 2013) .........................................................................10

*Herrera v. Werner Enters., Inc.*,
Civ. No. SA-14-CV-385-XR,
2015 WL 12670443 (W.D. Tex. Sept. 28, 2015) ..................................................17

*Hunt v. McNeil Consumer Healthcare*,
297 F.R.D. 268 (E.D. La. 2014) ........................................................................9

*In re Pool Prod. Distribution Mkt. Antitrust Litig.*,
166 F. Supp. 3d 654 (E.D. La. 2016) ..................................................................8

*Jacked Up, LLC v. Sara Lee Corp.*,
No. 3:11-CV-3296-L,
2018 WL 2064126 (N.D. Tex. May 2, 2018) ...................................................7, 14

*Johnson v. Arkema, Inc.*,
685 F.3d 452 (5th Cir. 2012) .................................................................7, 15, 18

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .......................................................................................8

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008) ...........................................................................17

*Modica v. Maple Meadows Homeowners Ass'n*,
No. Civ. A. 13-0036,
2014 WL 1663150 (E.D. Pa. Apr. 2, 2014) .........................................................10

*Molina v. Collin Cty., Texas*,
   No. 4:17-CV-00017,
   2017 WL 4876194 (E.D. Tex. Oct. 27, 2017) ........................................................................17

*Moore v. Int'l Paint, L.L.C.*,
   547 F. App'x 513 (5th Cir. 2013) ..............................................................................................7

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*,
   Nos. 2:15-CV-512-WCB, 2:16-CV-198-WCB,
   2017 WL 1319553 (E.D. Tex. Apr. 10, 2017)..................................................2, 9, 10, 11, 14

*Savoy v. State Farm Fire & Cas. Co.*,
   No. Civ. A. 06-0517,
   2006 WL 2795475 (E.D. La. Sept. 26, 2006)..............................................................8, 17, 19

*Thomas v. Deloitte Consulting LP*,
   No. 3-02-CV-0343-M,
   2004 WL 1960097 (N.D. Tex. Sept. 2, 2004) ...........................................................................8

*Trustees of Boston Univ. v. Everlight Elecs. Co.*,
   141 F. Supp. 3d 147 (D. Mass. 2015)......................................................................................11

*United States v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004) .............................................................................................7-8

*Walker v. WTM, Inc.*,
   No. 2:09CV65KS-MTP,
   2010 WL 4038730 (S.D. Miss. Sept. 30, 2010) ......................................................................7

*Wilson v. Woods*,
   163 F.3d 935 (5th Cir. 1999) .............................................................................................8, 16

**Rules**

Fed. R. Evid. 1006 ............................................................................................................................3

Fed. R. Evid. 702 ....................................................................................................................passim

Fed. R. Evid. 703 ...................................................................................................................10, 11

Fed. R. Evid. 801(c) ......................................................................................................................10

L.U. Civ. R. 7(b)(6)(A) ...................................................................................................................1

Plaintiffs Latoya Brown, Lawrence Blackmon, Khadafy Manning, Quinnetta Manning, Nicholas Singleton, Steven Smith, Bessie Thomas, and Betty Jean Williams Tucker ("Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion to Exclude the Report and Testimony of William R. Funderburk (Ex. 1, ECF No. 267-21, "Mr. Funderburk's Report" or "Funderburk Rep.") submitted by Defendants Madison County, Mississippi ("Madison County") and Sheriff Randall Tucker ("Sheriff Tucker," and with Madison County, "Defendants") ("Motion").[1] Pursuant to L.U. Civ. R. 7(b)(6)(A), Plaintiffs respectfully request oral argument on the Motion.[2]

## PRELIMINARY STATEMENT

In response to Plaintiffs' Class Certification Motion and the expert report of Dr. Bryan Ricchetti (ECF No. 231-1, "Ricchetti Report" or "Ricchetti Rep."), Defendants submitted Mr. Funderburk's Report, along with various other papers. Using widely accepted methodology supported by substantial peer-reviewed academic literature, the Ricchetti Report and statistical analyses therein provide strong evidence that the Madison County Sheriff's Department ("MCSD") engages in racial discrimination by disproportionately conducting roadblocks in Black neighborhoods in Madison County. In response, Defendants rely on Mr. Funderburk's Report in an attempt to critique the process by which Dr. Ricchetti geocoded the locations of MCSD roadblocks to determine the census tract in which each roadblock was located. Mr. Funderburk's Report and opinions, however, rely upon unreliable principles and methodologies and reflect a lack of familiarity with the academic literature concerning geocoding best practices.

---

[1] Exhibits to the Motion are cited as "Ex. __."

[2] Because the issues presented by this Motion overlap with the issues presented by Plaintiffs' pending Motion for Class Certification (ECF No. 231, "Class Certification Motion"), Plaintiffs request that argument on the instant Motion be held jointly with argument on the Class Certification Motion.

One of Mr. Funderburk's primary opinions relates to his review and evaluation of geocoded roadblock locations. He claims that his "methodology" for such review reflects "ground truth validation," when it, in fact, actually involves taking the inadmissible statements of a fact witness and couching such statements as expert testimony. Specifically, Mr. Funderburk relies upon the unverified, unsworn, and inadmissible statements of MCSD Deputy Rylon Thompson as the sole basis for Mr. Funderburk's opinion that Dr. Ricchetti's analysis purportedly reflects certain geocoding errors. As courts in the Fifth Circuit consistently have found, expert opinions must be excluded where they simply restate the opinions of others. *See Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, Nos. 2:15-CV-512-WCB, 2:16-CV-198-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017) (collecting cases). Here, Mr. Funderburk also did not review a statistically random sample and did not attempt to validate any of the information provided by Deputy Thompson was accurate. Mr. Funderburk simply testified at his deposition that it was "acceptable technique to rely on somebody who was there and who did it" (Ex. 4, Funderburk Tr. 64:8-17), and, yet, he did not verify that Deputy Thompson was present at each of the roadblocks arbitrarily selected for his review.

Mr. Funderburk's Report and testimony also reflect numerous conclusory and impermissible *ipse dixit* assertions. Plaintiffs submit the Rebuttal Expert Report of Dr. Patricia Frontiera in response to Dr. Funderburk's Report (Ex. 2, "Frontiera Rebuttal" or "Frontiera R.R."), which demonstrates the unreliable methodologies and misstatements found throughout Mr. Funderburk's Report. For instance, Mr. Funderburk summarily opines, without support from literature or otherwise, that "using intersection-only information introduces a variety of errors in geopositional accuracy and precision." (Funderburk Rep. ¶ 49.) As Dr. Frontiera concludes, however, "street intersections can be and are regularly geocoded with acceptable levels of

2

accuracy and precision," a conclusion soundly supported by the relevant academic literature cited in the Frontiera Rebuttal. (Frontiera R.R. ¶ 30.) Indeed, Mr. Funderburk does not cite to nor does he appear to have considered any peer-reviewed academic literature in forming the opinions expressed in his Report.

Mr. Funderburk's Report and testimony do not meet the stringent standards for expert opinions set forth under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (hereinafter "*Daubert*"). For the foregoing reasons and those set forth in detail herein, Mr. Funderburk's Report and testimony must be excluded in their entirety as methodologically unreliable, irrelevant, and otherwise inadmissible.

## BACKGROUND

Plaintiffs filed their Class Certification Motion on March 14, 2018. (ECF No. 231.) In support of the Class Certification Motion, Plaintiffs submitted the Ricchetti Report (ECF No. 231-1), the Summary Declaration of Rahul Guha, Ph.D., Submitted Pursuant to Federal Rule of Evidence 1006 (ECF No. 231-2), and significant other evidentiary support. In the Ricchetti Report, Dr. Ricchetti conducted statistical analyses, including a multivariate regression analysis, to determine whether "there is a relationship between the location and frequency of the [MCSD] roadblocks and the percentage of the population that is Black in communities where roadblocks are set up." (Ricchetti Rep. ¶ 7.) Among other findings, Dr. Ricchetti's regression model found a statistically significant correlation between the number of roadblocks and the Black population percentage, indicating that "even after controlling for variables that are predictive of differences in traffic behavior, roadblocks are statistically significantly more likely to occur in areas with a higher percentage of Black residents." (Ricchetti Rep. ¶ 46.)

In opposition to the Class Certification Motion and the Ricchetti Report, Defendants submitted Mr. Funderburk's Report, along with various other papers. In response to Mr.

Funderburk's Report, Plaintiffs submitted the Rebuttal Expert Report of Dr. Bryan Ricchetti (Ex.

3, "<u>Ricchetti Rebuttal</u>" or "<u>Ricchetti R.R.</u>") and the Frontiera Rebuttal.

### A.    <u>Mr. Funderburk's Report and Testimony</u>

Mr. Funderburk is a Field Applications Scientist with the University of Southern

Mississippi's Gulf Coast Geospatial Center. (Funderburk Rep. ¶ 1.) Mr. Funderburk has no prior

experience as an expert witness or consultant. (*Id*. ¶ 9; Funderburk Tr. 11:6-19.)

In Mr. Funderburk's Report, he claims to have reviewed and evaluated the methodology

used by Dr. Ricchetti, characterizing it as "geographic analysis and geocoding." (Funderburk

Rep. ¶ 11.) Mr. Funderburk asserts that, using the ArcGIS software program, he "reviewed Dr.

Ricchetti's findings and attempted to verify some of the geocoded locations using ground truth."

(*Id*. ¶ 42.) As part of Mr. Funderburk's alleged "geographic analysis," he provides an

"incomplete list of geocoding and census tract assignment errors" that he purportedly identified

in Dr. Ricchetti's analysis. (*Id*. ¶ 48.) Mr. Funderburk's Report provides little information

concerning how Mr. Funderburk identified these "errors." Mr. Funderburk simply states that he

"interviewed [MCSD] Deputy Rylon Thompson" for purposes of his review, and that "[b]ased

on [his] discussion with Deputy Thompson, it does not appear that the address information kept

by MCSD contains enough information to perform geographic analysis such as geocoding." (*Id*.

¶ 46.)

At Mr. Funderburk's June 20, 2018 deposition, he testified that the data points identified

for this analysis were not "a random subset" of data. (Funderburk Tr. 160:25-161:2.) He also

testified that these data points were "just randomly [in a non-scientific sense] navigated to very

quickly [w]ith Deputy Thompson" (*id*. 160:16-21), and that Mr. Funderburk identified "just a

few examples" and did not "pick[] apart the entire dataset" as "it would have taken [him] much

longer" to do that. (*Id*. 43:7-9.) Mr. Funderburk further testified that the sole basis for his

opinions regarding where roadblocks had actually occurred in connection with this review were the locations at which MCSD Deputy Thompson identified them as having occurred. (*See id.* 62:22-63:2.)

In addition, Mr. Funderburk opines, without support from literature or otherwise, that "using intersection-only information introduces a variety of errors in geopositional accuracy and precision" (Funderburk Rep. ¶ 49), and that "[t]he intersection-only addresses are inadequate to allow the precise or accurate geocoding for anything beyond the software programs [*sic*] estimated center of the roadways." (*Id*. ¶ 14.) Mr. Funderburk further states that since approximately 23% of the roadblock locations, representing 36% of the total roadblocks, straddle two or more census tracts, this renders an analysis based on assignment of these roadblocks to a specific census tract invalid. (*Id*. ¶ 58.) Dr. Frontiera finds that these claims are inaccurate, and do not comport with the relevant academic literature nor do they involve the application of reliable methodologies. (Frontiera R.R. ¶¶ 9-10, 28-31, 69-89.)

Similarly, Mr. Funderburk attempts to critique Dr. Ricchetti's use of a match score as an indicator of accurate geocoding (Funderburk Rep. ¶ 61), and also asserts that coordinate reference system issues purportedly undermine the quality and validity of Dr. Ricchetti's analysis. (*Id*. ¶¶ 71-87). The Frontiera Rebuttal identifies the problems and inaccuracies with Mr. Funderburk's critiques on these points and others. (*See, e.g.*, Frontiera R.R. ¶¶ 10-16.)

### B.   Dr. Bryan Ricchetti's Rebuttal Expert Report

On July 2, 2018, Plaintiffs submitted the Ricchetti Rebuttal, in response to Mr. Funderburk's Report and the Rebuttal Expert Report of Dr. Dwight D. Steward to the Ricchetti Report (ECF No. 267-16). In the Ricchetti Rebuttal, Dr. Ricchetti highlights that "[a]s Mr. Funderburk's own analysis shows, the vast majority of intersections in the MCSD data can be cleanly delineated into individual census tracts." (Ricchetti R.R. ¶ 3.) Dr. Ricchetti also explains

how Mr. Funderburk did not perform "*any tests* to show that the existence of roadblocks on census boundaries affected [Dr. Ricchetti's] conclusions." (*Id.* ¶ 48.) Further, any concern that a roadblock on a boundary was assigned to an incorrect census tract "amounts to a very standard methodological issue that is widely studied in econometrics – measurement error." (*Id.* ¶ 51.) Overall, Mr. Funderburk did "not use widely accepted statistical methods" to test whether Dr. Ricchetti's findings were sensitive to the various data issues he purportedly identified, and he completely ignored the fact that the methods used by Dr. Ricchetti "are widely accepted in both academia and by the Courts." (*Id.* ¶ 1.)

### C.     Dr. Patricia Frontiera's Rebuttal Expert Report

In response to Mr. Funderburk's Report, Plaintiffs also have submitted the Frontiera Rebuttal. Dr. Frontiera received her Ph.D. in Environmental Planning from UC Berkeley and currently serves as the D-Lab geospatial topic area lead. (Frontiera R.R. ¶¶ 1, 4.) She develops the geospatial workshop curriculum, teaches workshops, and consults on geospatial topics. (*Id.* ¶¶ 1-5.) Dr. Frontiera reviewed the Ricchetti Report and Dr. Ricchetti's analysis, and concluded that Dr. Ricchetti "followed best practices resulting in a high level of overall geocoding quality." (*Id.* ¶ 9.)

In contrast, in reviewing Mr. Funderburk's Report and opinions, she finds that "Mr. Funderburk frequently overstates many of his claims." (*Id.* ¶ 10.) Dr. Frontiera concludes that "Mr. Funderburk's misstatements appear to stem from (1) a failure to consider the ultimate purpose of Dr. Ricchetti's geocoding, (2) a failure to meet the academic standard of a randomized evaluation, and (3) a lack of familiarity with the academic literature surrounding geocoding best practices." (*Id.*) Dr. Frontiera further does not agree "that Dr. Ricchetti needed to have retained an expert geographer or geospatial professional in order to obtain reliable and

accurate geocoded locations from ArcGIS," contrary to the implications in Mr. Funderburk's Report (*Id.* ¶ 11.)

## ARGUMENT

## I.  COURTS CAN AND SHOULD EXCLUDE EXPERT TESTIMONY THAT IS UNRELIABLE, IRRELEVANT, AND UNSUPPORTED

Federal Rule of Evidence 702 "assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). Under *Daubert* and Federal Rule of Evidence 702, an expert may testify in the form of an opinion only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Walker v. WTM, Inc.*, No. 2:09CV65KS-MTP, 2010 WL 4038730, at *4 (S.D. Miss. Sept. 30, 2010) (tracking the addition of the *Daubert* factors into Federal Rule of Evidence 702).

The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence that it is admissible. *See Jacked Up, LLC v. Sara Lee Corp.*, No. 3:11-CV-3296-L, 2018 WL 2064126, at *4 (N.D. Tex. May 2, 2018). To satisfy the reliability prong, an expert's opinion may be based on his or her training, education, observations, and professional experience, but cannot be based on "unsupported speculation or subjective belief." *Id.* at *3 (citation omitted). An opinion based on "insufficient, erroneous information" is not reliable. *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (citation omitted). A court's "gatekeeping function requires more than simply taking the expert's word for it" that the proposed methodology or analysis has a valid basis. *United States v. Frazier*, 387 F.3d 1244,

1261 (11th Cir. 2004) (citation omitted); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (citation omitted)). Thus, the *Daubert* standard is applied to expert opinions, including at the class certification stage, to ensure the expert's testimony is reliable at every step and in every aspect, including with respect to "the methodology [used], the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 166 F. Supp. 3d 654, 662 (E.D. La. 2016) (citation omitted).

Courts evaluating expert testimony under Rule 702 "should also be mindful of other applicable rules" including rules governing hearsay and relevance. *Daubert*, 509 U.S. at 595. Where an expert opinion is not helpful to the trier of fact and irrelevant to the claims at issue, courts exclude such opinions. *See, e.g.*, *Savoy v. State Farm Fire & Cas. Co.*, No. Civ. A. 06-0517, 2006 WL 2795475, at *3-4 (E.D. La. Sept. 26, 2006) (granting motion to exclude expert testimony where the expert opinion would not be helpful to the trier of fact, since the expert offered "little more than … conclusory statements based on the facts in the case"); *Thomas v. Deloitte Consulting LP*, No. 3-02-CV-0343-M, 2004 WL 1960097, at *6 (N.D. Tex. Sept. 2, 2004) (excluding a statistics expert report as irrelevant, as the study of the defendant's promotion history was not relevant for a failure to promote claim). Courts also refuse to allow an expert witness to testify where they find that "the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937-38 (5th Cir. 1999).

## II.   MR. FUNDERBURK'S REPORT AND TESTIMONY DO NOT REFLECT THE USE OF RELIABLE PRINCIPLES AND METHODS

### A.   Mr. Funderburk's Report And Testimony Should Be Excluded Because He Primarily Relies On Unverified Statements From A Fact Witness Which Is Not A Reliable Methodology

Under the *Daubert* standard, an expert is obligated to form his own opinions by applying his own experience and methodology; an expert may not simply "parrot" the statements and opinions of others as his expert opinion. *Robroy*, 2017 WL 1319553, at *9 (collecting cases); *see also Hunt v. McNeil Consumer Healthcare*, 297 F.R.D. 268, 275 (E.D. La. 2014) (same). Mr. Funderburk's opinions and assertions concerning purported inaccuracies in the roadblock records and locations are unreliable, as they are not based on a review of a statistically random sample of roadblock locations and rather on unverified information and opinions from a fact witness concerning a purely arbitrary subset of MCSD roadblocks. *See* Frontiera R.R. ¶ 53; Funderburk Tr. 160:25-161:2 ("This was not a random subset of this data.").

### 1.   Mr. Funderburk's Assessment Of Geocoded Roadblock Locations Simply Summarize Unverified Statements From A Fact Witness

In his Report, Mr. Funderburk purports to have "investigate[d] information about geocoded roadblock locations" and "evaluate[d] the ability to conduct comprehensive geographic analysis for roadblocks in Madison County." (Funderburk Rep. ¶ 11.) Upon closer examination, however, the vast majority of Mr. Funderburk's opinions are revealed to be nothing more than a regurgitation of unverified information he obtained from a single interview with MCSD Deputy Rylon Thompson. (Funderburk Tr. 16:7-13; 62:14-64:13.) Mr. Funderburk states that "[b]ased on [his] discussion with Deputy Thompson, it does not appear that the address information kept by MCSD contains enough information to perform geographic analysis such as geocoding." (Funderburk Rep. ¶ 46.) Mr. Funderburk testified that the sole basis for his opinions regarding where roadblocks actually occurred was the locations at which Deputy Thompson identified

them as having occurred. (*See* Funderburk Tr. 62:22-63:2 ("Q. And so the basis for your statement that's where the roadblocks actually occurred, that's where Deputy Thompson identified them as having occurred? A. Yes.").)) Mr. Funderburk further testified that it was "an acceptable technique to rely on somebody who was there and who did it," and he did not need to verify that any of the information provided by Deputy Thompson actually was correct. (Funderburk Tr. 64:8-17.) As Dr. Frontiera finds, Mr. Funderburk did not (i) confirm that Deputy Thompson was, in fact, present at each of the roadblocks arbitrarily selected for review, or (ii) take any steps to validate the accuracy of Deputy Thompson's recollections. (*See* Frontiera R.R. ¶ 56; *see also* Funderburk Rep. ¶ 46; Funderburk Tr. 62:22-63:2.)

Expert opinions should be excluded where, as here, they simply restate the opinions of others. *See, e.g.*, *Robroy*, 2017 WL 1319553, at *9-10 (excluding expert's testimony where "it simply parrot[ed] deposition evidence and exhibits produced during the pretrial process"); *Modica v. Maple Meadows Homeowners Ass'n*, No. Civ. A. 13-0036, 2014 WL 1663150, at *1 n.3 (E.D. Pa. Apr. 2, 2014) (excluding report because "a significant portion of Mr. Miller's report summarizes deposition testimony" and "[a] party may not filter fact evidence and testimony through his expert merely to lend credence to the same" (citations omitted)); *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) (holding that an expert may not "simply parrot impermissible hearsay evidence, thereby allowing a party to circumvent rules against hearsay").

In addition, Deputy Thompson's out-of-court statements offered to provide the truth of the matter asserted are classic, inadmissible hearsay under Rule 801(c) of the Federal Rules of Evidence. Rule 703 provides that "expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are 'of a type reasonably relied upon by experts in the

particular field in forming opinions … upon the subject.'" *Daubert*, 509 U.S. at 595 (quoting Fed. R. Evid. 703). However, courts in the Fifth Circuit consistently have held that "Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Robroy*, 2017 WL 1319553, at *9 (citations omitted); *see also Trustees of Boston Univ. v. Everlight Elecs. Co.*, 141 F. Supp. 3d 147, 149 (D. Mass. 2015) (same).

Regardless, even if Deputy Thompson's statements were "independently admissible," which they are not, they remain inadmissible as "substantive expert evidence" from Mr. Funderburk. *Robroy*, 2017 WL 1319553, at *10.[3]

### 2. Mr. Funderburk's Interview Of A Fact Witness Does Not Constitute A Reliable Methodology Or Reflect "Ground Truth" Validation

Mr. Funderburk does not bring any independent expertise to his review and evaluation of the geocoded roadblock locations. Mr. Funderburk claims that his "methodology" reflects "ground truth validation" and he purports that it "is completely reliable in this case." (Funderburk Tr. 63:7-9.) Nowhere in Mr. Funderburk's Report, however, does he provide any support for how interviewing a fact witness (particularly one employed by the party on whose behalf one is opining) for their unverified, unsworn, and inadmissible opinions provides a

---

[3] In support of Defendants' Daubert Motion and Motion in Limine to Exclude the Report and Testimony of Dr. Ricchetti, Defendants submitted the Declaration of Lieutenant Mark Sandridge (ECF No. 270-6, "Sandridge Declaration") and the Declaration of Rylon Thompson (ECF No. 270-7, "Thompson Declaration," and with the Sandridge Declaration, "Defendants' Declarations"). Defendants' Declarations are near substantive duplicates of one another, and they further include several paragraphs and exhibits regarding roadblock locations that track almost exactly the language found and exhibits identified in paragraphs 48(a)-(i) and 48(k) of Mr. Funderburk's Report. However, despite the nearly identical substance between paragraph 48 of his Report and Defendants' Declarations, Mr. Funderburk testified that he had never reviewed the Thompson Declaration, but did review the Sandridge Declaration *after* preparing his Report. (Funderburk Tr. 61:7-17, 82:8-24, 88:7-10.)

reliable form of ground truth validation. Rather, for the reasons set forth in detail below, "Mr. Funderburk presents an 'incomplete' (by his own admission) and statistically biased assessment of the positional accuracy of the geocoded roadblock locations in Dr. Ricchetti's report." (Frontiera R.R. ¶ 46.)

First, Mr. Funderburk did not engage in "ground truth validation," and his attempt to present his review of certain geocoded roadblock locations as falling within such methodological framework is a misnomer. As Dr. Frontiera explains, ground truthing "refers to the process of comparing geocoded point locations to the location of the real world features they represent;" "[c]oordinates for the real world feature are obtained by (1) physically visiting the site and using a GPS; (2) reviewing the site on high-resolution imagery such as Google Maps or Google Earth satellite imagery; or less typically (3) from a database of known coordinate locations." (Frontiera R.R. ¶ 48.) What Mr. Funderburk calls "ground truthing," in fact, reflects his attempts to verify the accuracy of the underlying data through a fact witness. Specifically, "Mr. Funderburk compared locations geocoded by Dr. Ricchetti to the locations where [MCSD] Deputy Thompson believed the roadblocks physically existed, not to the physical locations on the ground representing the addresses in the *Compiled Unique Roadblocks* [attached as Appendix D to Mr. Funderburk's Report]." (*Id*. ¶ 53.) Dr. Frontiera notes how "it is clear that Deputy Thompson brought to Mr. Funderburk's review process additional knowledge about roadblock locations that was not included in the information provided as the input to the geocoding software…." (*Id*. ¶ 57.) Thus, the exercise performed by Mr. Funderburk only would reveal "data recording errors," if anything, which is why "[g]round truthing requires that a statistically random sample of the geocoded points be selected for review." (*Id*. ¶¶ 49, 58.)

12

Here, Mr. Funderburk did not select or review a statistically random sample of geocoded roadblock locations. (*See id.* ¶ 53; Funderburk Tr. 160:25-161:2 ("This was not a random subset of this data.").) Instead, Mr. Funderburk reviewed an arbitrary and, by his own admission, "incomplete" subset of MCSD roadblock locations (Funderburk Rep. ¶ 48), and he testified that "these points were just randomly [in a non-scientific sense] navigated to very quickly [w]ith [MCSD] Deputy Thompson." (Funderburk Tr. 160:16-21.) Dr. Frontiera found Mr. Funderburk's assessment inherently biased as a result, because "a visual review of a map of the geocoded locations will naturally draw one's eyes to the errors, be they few or many, rather than the correct locations." (Frontiera R.R. ¶ 54.)

Finally, Mr. Funderburk did not physically visit any of the roadblock locations he discusses in his Report. (Funderburk Tr. 19:3-20:24.) While Mr. Funderburk testified that he reviewed the roadblock locations with MCSD Deputy Thompson using print-outs of some mapped imagery (*see id.* 139:2-140:18), as discussed earlier, Mr. Funderburk's sole source regarding the roadblock locations were the locations at which Deputy Thompson identified them as having occurred. (*See id.* 62:22-63:2.) [4] As a result, Mr. Funderburk based "his assessment of positional accuracy on the assumption that Deputy Thompson's assertions regarding the roadblock locations and not the addresses and street intersections listed for each roadblock in the table of *Compiled Unique Roadblocks*, identifies their true locations." (Frontiera R.R. ¶ 60.) Unsurprisingly, Mr. Funderburk testified that he had never used this type of (clearly unreliable)

---

[4] Mr. Funderburk justified his lack of proper ground truth validation by claiming that "we can't go back in time to when the roadblocks were occurring and go and take ground truth measurements or GPS point of that information." (*Id.* 19:8-16.)  But, as set forth above, Mr. Funderburk provided no explanation for why Deputy Thompson's personal recollections of roadblock locations in the past could suffice as a valid and reliable ground truth method, and Mr. Funderburk did not even confirm that Deputy Thompson was present at each of the roadblocks reviewed.

methodology (*i.e.*, relying on an interviewed subject's historical recollection regarding coordinate locations) previously in his scientific work. (Funderburk Tr. 26:5-9 (Q: "Have you ever used that specific methodology [used with Deputy Thompson] other than in preparing this report?" A: "Well, yes. But not as a scientist.")). Mr. Funderburk further testified that he had not seen this research "technique" discussed in any literature that he had peer-reviewed, nor had he used it himself in any paper that he had published. (*Id*. at 38:8-39:2.) The only "scientific" literature he could point to concerning such methodology was literature that his wife, who he described as "a rhetorician," allegedly would be familiar with. (*Id*. at 29:23-31:5.)

In short, Mr. Funderburk did not use a reliable methodology for forming his opinions, but rather solely acts as the "mouthpiece" of Deputy Thompson and Deputy Thompson's inadmissible statements and opinions. As such, Mr. Funderburk's Report and testimony should be excluded as unreliable under *Daubert* and Rule 702. *See Robroy*, 2017 WL 1319553, at *10 (excluding expert testimony where the expert "brought no expertise to the enterprise other than the ability to read and to copy what she ha[d] read").

**B.   Mr. Funderburk's Unsupported And Conclusory Opinions Regarding Dr. Ricchetti's Analyses Are Unreliable**

Mr. Funderburk's Report and testimony frequently rely upon conclusory assertions and statements with little to no support, and they should be excluded as unreliable on this basis as well. Courts routinely exclude expert opinions that are conclusory, speculative, and unsupported. *See, e.g., Jacked Up, LLC*, 2018 WL 2064126, at *6–7, 10 (affirming exclusion of expert testimony since the projections "rested upon unsupported assumptions"); *Benefield v. Estate of Lockhart*, No. 1:15CV190-HSO-JCG, 2017 WL 1088120, at *12 (S.D. Miss. Mar. 15, 2017) (prohibiting expert testimony where it was "speculative and unreliable" and the expert did not show that the opinion was "based on sufficient facts or data"). Under *Daubert* and Rule 702,

"[t]he reliability prong mandates that expert opinion … be *more than unsupported speculation* or subjective belief." *Johnson*, 685 F.3d at 459 (emphasis added).

### 1.    Mr. Funderburk's Conclusory And Incorrect Opinion That Street Intersections Cannot Be Accurately Geocoded Must Be Excluded

Mr. Funderburk provides the conclusory, misleading, and incorrect opinion that one "would not be able to accurately geocode roadblocks near an intersection or an approaching street with intersection-only address information." (Funderburk Rep. ¶ 15.)  He further claims that "using intersection-only information introduces a variety of errors in geopositional accuracy and precision," in an attempt to critique Dr. Ricchetti's geocoding analysis. (*Id*. ¶ 49.)

As Dr. Frontiera finds, "street intersections can be and are regularly geocoded with acceptable levels of accuracy and precision," as soundly supported by the relevant academic literature she cites in the Frontiera Rebuttal. (Frontiera R.R. ¶ 30; *see also* Ricchetti R.R. ¶ 3 ("[T]he vast majority of intersections in the MCSD data can be cleanly delineated into individual census tracts … [I]t is common in academic research to analyze patterns across different geographic units, like census tracts.")). Dr. Frontiera generally concludes that Mr. Funderburk's misstatements appear to arise from "a lack of familiarity with the academic literature surrounding geocoding best practices." (Frontiera R.R. ¶ 10.) Indeed, Mr. Funderburk does not cite to any academic literature in his Report, nor does he appear to have considered any academic literature in forming his opinion concerning street intersections (or for that matter, concerning any of his opinions). (*See* Funderburk Rep. generally, App'x B.)

### 2.    Mr. Funderburk's Unqualified Opinions Regarding Dr. Ricchetti's Statistical Analyses Should Be Excluded

Mr. Funderburk's Report is ridden with conclusory and unsupported opinions regarding purported errors in Dr. Ricchetti's statistical analyses of the data. (*See, e.g.*, Funderburk R.R. § 5 ("Given that the geographic analyses are the premise to the statistical argument, the statistical

analyses are invalid.")). Yet, Defendants do not appear to be offering Mr. Funderburk as an expert in statistical analysis. Indeed, at Mr. Funderburk's deposition, recognizing Mr. Funderburk's lack of expertise in this area, Defendants' counsel vociferously objected as to questions regarding Mr. Funderburk's "statistical analysis or his interpretation of Dr. Ricchetti's statistical analysis" as "approaching an area of inquiry that's beyond what he's been proffered for." (Funderburk Tr. 155:3-24.) Nonetheless, Mr. Funderburk's Report makes several assertions related to statistics and the statistical impact of geocoding-related issues on Dr. Ricchetti's analyses. These portions of Mr. Funderburk's Report and testimony are inadmissible, because Mr. Funderburk is not qualified to provide any opinions on the validity of Dr. Ricchetti's statistical analyses or the statistical effect of any purported geocoding errors on Dr. Ricchetti's overall methodology.

An individual's qualification to testify as an expert is a question of law, and a court "should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson*, 163 F.3d at 937 (upholding district court's finding that mechanical engineer who had some experience with accident reconstruction was not an expert in accident reconstruction). Mr. Funderburk does not have a doctorate in math, statistics, or economics (or any other subject). (Funderburk Rep., App'x A.) While Mr. Funderburk testified that he was pursuing a mathematics undergraduate degree, he had not completed that degree as of the date of his deposition. (Funderburk Tr. 14:6-20.) Mr. Funderburk further does not even account for or address the basic statistical concept of "measurement error" in his opinions, and Mr. Funderburk admitted at his deposition that that he was not familiar with the term "classical measurement error." (*Id*. 15:24-16:2; 155:3-6.) In short, Mr. Funderburk is not qualified to opine on any statistical analyses conducted by Dr. Ricchetti, and the portions of

Mr. Funderburk's Report and testimony bearing upon such issues should be excluded. *See, e.g.*, *Herrera v. Werner Enters., Inc.*, Civ. No. SA-14-CV-385-XR, 2015 WL 12670443, at *3 (W.D. Tex. Sept. 28, 2015) (finding that while experts were qualified in the biomechanics and mechanical engineering fields, they were not doctors and thus could not testify to medical opinions as to the cause of injuries); *Molina v. Collin Cty., Texas*, No. 4:17-CV-00017, 2017 WL 4876194, at *2 (E.D. Tex. Oct. 27, 2017) (concluding that an officer with general knowledge of use of force in police work was not qualified to testify regarding use of force in canine deployment).

Even if Mr. Funderburk is found sufficiently qualified to opine on certain statistical issues, Dr. Funderburk's conclusory and speculative opinions regarding these issues still necessitate their exclusion by this Court. *See, e.g., Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("An expert's opinions that are without factual basis and are based on speculation or conjecture are … inappropriate material for consideration…. An expert's conclusory opinions are similarly inappropriate."); *Savoy*, 2006 WL 2795475, at *3-4 (excluding expert testimony where the expert offered "little more than … conclusory statements"). Mr. Funderburk summarily asserts that "the geographic analyses are the premise to the statistical argument," and so the statistical analyses are invalid "as well." (Funderburk Rep. § 5.) Yet, Mr. Funderburk does not explain what, if any, statistical analysis *he himself* conducted to conclude that any supposed errors in the geographic analysis would render Dr. Ricchetti's statistical analysis invalid, nor does he point to any academic literature supporting such assertion. And the reason is Mr. Funderburk does not conduct any such statistical analyses. (Funderburk Tr. 163:15-18.) Rather, Mr. Funderburk simply asserts that "[g]iven he [Dr. Ricchetti] used invalid geographic layers and coinciding datasets to build his data, Dr.

Ricchetti's statistical analysis would be unreliable and invalid." (Funderburk Rep. ¶ 86.) Unsupported opinions such as these are insufficient to meet the reliability standards required under *Daubert* and Rule 702. *See Johnson*, 685 F.3d at 459.

    **3.**    **Mr. Funderburk Performs No Analysis And Identifies No Methodology To Establish That Census Tract Boundary Issues Impact Dr. Ricchetti's Analysis**

Mr. Funderburk's *ipse dixit* assertion that census tract boundary issues impact Dr. Ricchetti's analysis also is not the product of reliable principles and methods sufficient to meet *Daubert* and Rule 702. *See, e.g.*, *Allamon v. Acuity Specialty Prod., Inc.*, No. 1:10-CV-294-TH, 2011 WL 13196209, at *6 (E.D. Tex. July 21, 2011) (excluding an expert opinion that was "nothing more than his *ipse dixit*"); *21ST Mortg. Corp. v. Nat'l Sec. Fire & Cas. Co.*, No. 1:10CV214-HSO-JMR, 2011 WL 13104513, at *4 (S.D. Miss. July 12, 2011) (granting motion to exclude expert opinion where his proffered testimony constituted "impermissible *ipse dixit*"). Mr. Funderburk summarily asserts that since, according to his calculations, approximately 23% of the roadblock locations, representing 36% of the total roadblocks, straddle two or more census tracts, this renders an analysis based on assignment of these roadblocks to a specific census tract invalid. (Funderburk Rep. ¶ 58.) As Dr. Frontiera concludes, Mr. Funderburk's opinion is inaccurate, does not comport with the relevant academic literature, and does not involve application of a reliable methodology. (Frontiera R.R. ¶¶ 9-10, 28-31, 69-89.)

Mr. Funderburk performs no actual analysis to quantify or test his summary assertion that data would be "rendered invalid" (Funderburk Rep. ¶ 58), or that Dr. Ricchetti's "census-tract assignments are completely unreliable and uninsightful regarding the location of roadblocks" (Funderburk Rep. ¶ 16.) As Dr. Ricchetti finds, "Mr. Funderburk [did not] offer *any tests* to show that the existence of roadblocks on census boundaries affect [his] conclusions." (Ricchetti R.R. ¶ 47.) Rather, Mr. Funderburk simply states that "[a]s [*sic*] geographer and professional in

the geospatial industry, if I run into issues such as a geocoded location that straddles two or more census tracts, I develop a transparent, reliable, and repeatable methodology, perform ground truth validations on a subset of data points, and assign rules for geocoded locations that occur over two or more census tract boundaries to ensure accuracy and precision." (Funderburk Rep. ¶ 54.) However, Mr. Funderburk, in fact, does none of this (or any other analysis) in critiquing Dr. Ricchetti's opinion in summary fashion.

In contrast to Mr. Funderburk's conclusory opinion, Dr. Frontiera provides ample support in the academic literature that "[d]ata collected within and aggregated to census tracts are widely used in research to assess the socio-economic characteristics of populations within a study area." (Frontiera R.R. ¶ 70.) She performed a spatial selection analysis using a twenty-meter buffer distance around census tract boundary lines to determine what impact, if any, roadblocks located on census tract boundaries had on Dr. Ricchetti's analysis. (*Id*. ¶¶ 76, 81.) Dr. Frontiera's spatial selection query identified 82 roadblock points representing 662 roadblocks within twenty meters of a census tract boundary line. (*Id*. ¶ 82). Through her analysis, she concluded, contrary to Mr. Funderburk's unsupported opinion, that "there were more roadblocks that could have been assigned to [census] tracts with a higher black population than roadblocks that could have been assigned to tracts with a lower black population," and that, as a result, Dr. Ricchetti's results "are, if anything, more conservative" than the true distribution. (*Id*. ¶¶ 88-89.)

Mr. Funderburk's attempts to provide conclusory and unsupported opinions based on his experience as a geographer does not pass muster under *Daubert* and Rule 702, and thus such opinions should be excluded. *See Savoy*, 2006 WL 2795475, at *3-4.

### 4.  Mr. Funderburk's Opinions Concerning Issues With Use Of A Match-Score Cutoff And Coordinate Reference Systems Are Unreliable And Misleading

Mr. Funderburk critiques Dr. Ricchetti's use of a match score as an indicator of accurate

geocoding, but, once again, he only speculates that this approach "*might* have actually injected more error into the data," without any further explanation or quantification. (Funderburk Rep. ¶ 32 (emphasis added)). As set forth in the Frontiera Rebuttal, "a geocoding match score is a standard metric for evaluating the quality of geocoded locations." (Frontiera R.R. ¶ 13.) Mr. Funderburk's opinion reflects a complete lack of familiarity and understanding of the relevant academic literature on geocoding best practices. (*Id.* ¶ 10.) In fact, "[h]igher thresholds for match scores are associated with an overall higher level of geocoding accuracy and precision," and Dr. Frontiera finds that "Dr. Ricchetti's analysis used a conservatively high threshold of 90 relative to thresholds used in academic papers." (*Id.* ¶ 13.) Dr. Funderburk's speculative and misleading opinion on Dr. Ricchetti's use of a match-score cutoff as somehow creating error in the data should be excluded as unreliable. (Funderburk Rep. ¶¶ 60-70.)

In addition, Mr. Funderburk asserts that coordinate reference system issues purportedly undermine the quality and validity of Dr. Ricchetti's analysis. (*Id.* ¶¶ 71-87.) However, other than broad sweeping conclusory assertions (an issue pervading the entirety of Mr. Funderburk's opinions in this case as set forth herein) that Dr. Ricchetti "did not geocode properly," Mr. Funderburk fails to explain how this information is relevant to Dr. Ricchetti's analysis. (*Id.* ¶ 85.) As Dr. Frontiera concludes, coordinate reference system issues do not significantly impact the results of Dr. Ricchetti's analysis (Frontiera R.R. ¶¶ 62-68.) Dr. Frontiera explains that, even where two coordinate systems are used, given Dr. Ricchetti's methodology to identify the census tract in which a roadblock resides only considers topological spatial relationships and his analysis does not require the positional accuracy that would make such differences relevant, such differences do not impact Dr. Ricchetti's analysis. (*Id.*)

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs'

Motion and exclude Mr. Funderburk's Report and testimony.


Dated: July 2, 2018

By: */s/ Joshua Tom*
    Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Christopher K. Shields (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
christopher.shields@stblaw.com
bonnie.jarrett@stblaw.com

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice*)
Jeffery Robinson (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2018, I caused the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF WILLIAM R. FUNDERBURK** to be electronically filed with the Clerk of the Court using the CM/ECF system, through which copies have been served to:

WISE CARTER CHILD & CARAWAY, P.A.
Michael B. Wallace (Miss. Bar No. 6904)
Charles E. Ross (Miss. Bar No. 5683)
James E. Graves (Miss. Bar No. 102252)
Charles E. Cowan (Miss. Bar No. 104478)
T. Russell Nobile (Miss. Bar No. 100682)
Post Office Box 651
Jackson, MS 39205
(601) 968-5534
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com
trn@wisecarter.com

CURRIE JOHNSON & MYERS, P.A.
Rebecca B. Cowan (Miss. Bar No. 7735)
P.O. Box 750
Jackson, MS 39205
(601) 969-1010
bcowan@curriejohnson.com

KATIE BRYANT SNELL, PLLC
Katie Bryant Snell (Miss. Bar No. 103607)
P.O. Box 3007
Madison, Mississippi 39130-3007
(601) 460-9800
Katie@katiebryantsnell.com

PETTIS, BARFIELD & HESTER, P.A.
J. Lawson Hester (Miss. Bar No. 2394)
Jason E. Dare (MSB No. 100973)
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
(601) 987-5300
lhester@pbhfirm.com
jdare@pbhfirm.com

*/s/ Joshua Tom*
Joshua Tom

22