IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**LATOYA BROWN; et al**                                                              **PLAINTIFFS**

**v.**                                                                          **Civ. No. 3:17cv347-WHB-LRA**

**MADISON COUNTY, MISSISSIPPI; et al**                                          **DEFENDANTS**

**DEFENDANTS' REBUTTAL IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE THE DECLARATION AND TESTIMONY OF RAHUL GUHA**

Plaintiffs do not dispute that, before this Court can certify a class, they must provide "significant proof" of their claims as required by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). As "significant proof" of intentional discrimination on the part of Sheriff Randy Tucker, Madison County's sole policymaker with regard to law enforcement, Plaintiffs rely solely upon "[t]he statistical imbalances identified in the data summarized by Dr. Guha, coupled with Dr. Ricchetti's rigorous statistical analysis and the extensive anecdotal and documentary evidence submitted by Plaintiffs." [Dkt. # 306 at 19]. Defendants have already moved to strike much of that "anecdotal and documentary evidence," consisting of hearsay newspaper articles and unsupported opinion in affidavits. [Dkt. # 274 and 285]. This brief will explain the insufficiency of the statistical analysis offered by Dr. Guha regarding "statistical *imbalances*," and another brief will explain why Dr. Ricchetti's roadblock analysis proves nothing about discrimination against actual Black persons.

Plaintiffs claim that Dr. Guha is simply doing arithmetic, as permitted by Fed. R. Evid. 1006. [Dkt. # 306 at 6-7]. They say that his arithmetic qualifies as the sort of statistical evidence that is admissible to prove discrimination, even if not sufficient. [Dkt. #306 at 18-19]. They say

that other evidence combines with Dr. Guha's declaration to constitute significant proof, thereby establishing its probative value. [Dkt. #306 at 19].

Dr. Guha's evidence fails on two levels. First, it does not provide the sort of statistical evidence admitted in other discrimination cases, rendering it irrelevant under Fed. R. Evid. 401. Second, there are significant problems with Dr. Guha's arithmetic, rendering it inadmissible under Fed. R. Evid. 1006 cases.

Statistics are almost never sufficient to prove intentional discrimination, and they are relevant to unintentional discrimination only when matched against the relevant benchmark. The racial breakdown of an employer's electricians is relevant only when compared against the racial breakdown of electricians in the local market, not the total local population per the census. For Dr. Guha's racial breakdown of arrests to be relevant, it would have to be compared to the breakdown of the population at risk of being arrested or cited, but neither Dr. Guha nor anyone else on behalf of Plaintiffs offers that evidence. Properly benchmarked statistical evidence was available in *Wal-Mart*, but, even when combined with anecdotal evidence at least as strong as offered here, it did not constitute significant proof of unintentional discrimination. Even if marginally relevant, a jury should never be allowed to consider his summaries as evidence of Sheriff Tucker's intent under Fed. R. Evid. 403, and this Court should not consider it now.

Dr. Guha's testimony should also be excluded because it is an overt attempt to introduce expert opinion under the guise of Fed. R. Evid. 1006 summaries. Plaintiffs argue that Dr. Guha simply analyzed Madison County's data, but his charts provide comparative analysis and census-based indices that are not solely based on Madison County's data. Plaintiffs dismiss Defendants' arguments that the summaries are misleading and inaccurate, without ever acknowledging they

themselves allege in their certification motion that Madison County's data is so "incomplete and inaccurate" as to give rise to a constitutional violation.

I.   DR. GUHA'S STATISTICS AND ALLEGED "IMBALANCES" ARE NOT PROBATIVE OF WHETHER BLACKS ARE TREATED DIFFERENTLY THAN SIMILARLY SITUATED WHITES.

Because Plaintiffs' theories require proof of intentional discrimination, the only statistics that could matter are those that which might prove Sheriff Tucker's discriminatory intent to target Black *persons*. Class proponents must bridge the wide conceptual gap that separates individual claims from class claims under Fed. R. Civ. P. 23.[1] *Wal-Mart*, 564 U.S. at 352 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58 (1982)). The only *Wal-Mart* bridge that might apply here is to provide "significant proof that [Sheriff Tucker] operated under a general policy of discrimination." 564 U.S. at 353. Thus, Plaintiffs' claims require significant proof of discriminatory intent. Any testimony that is not probative of discriminatory intent is not relevant and therefore non-helpful. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) (citing 3 *Weinstein & Berger*, § 702[02], pp. 702-18).

Defendants' certification opposition explained that statistical analysis *rarely* is sufficient to establish discriminatory intent. [Dkt. # 268 at 39]. The leap from individual to class claims requires this Court to determine what, if any, proof of intentional discrimination is provided by Dr. Guha's descriptive statistics and alleged "imbalances." This Court must therefore determine whether Dr. Guha's summaries possess sufficient probative value of discriminatory intent to justify receiving them in evidence.[2]

---

[1] That gap need not be bridged should the Court grant the pending dispositive motions regarding the individual claims. [Dkt. # 209, 211, 218, 220, 222, 228, and 256]. Without individual claims, there cannot be class claims.

[2] Plaintiffs argue any Fed. R. Evid. 401 and 403 concerns should be ignored. Plaintiffs are under the false belief that there is some sort of special dispensation under the Federal Rules of Evidence and Civil Procedure for class certification. Judge Sullivan recently explained in *Campbell v. Nat'l R.R. Passenger Corp.*, 2018 WL 1997254

A. **Statistics cannot prove discriminatory intent here.**

There are two types of discrimination: disparate treatment or disparate impact. The first type, in which *all* Plaintiffs' claims fall, involve allegations that the Defendant intentionally discriminated against a protected class. Intent or purpose claims require a showing the defendant intentionally treats a protected class less favorably than others because of their class. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

In only very rare instances will statistics alone support finding discriminatory intent, and the Court must look to other evidence. *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266–68 (1977). Statistics are generally viewed as insufficient evidence of intent. *United States v. Mesa-Roche*, 288 F.Supp.2d 1172 (D. Kan. 2003) (ruling consistent with higher courts that refuse to infer from the statistical evidence the discriminatory intent necessary for an equal protection violation). In *Chavez v. Illinois State Police,* 251 F.3d 612 (7th Cir. 2001), the Seventh Circuit provided a thorough discussion of the use of statistics to prove intentional discrimination by law enforcement.[3] The court discussed the character of statistics needed to prove effect or, in limited instances, intent, *id.* at 634-48, before finding that statistics may not be the sole proof of discriminatory intent for a constitutional violation.[4] *Id.* at 648.

---

(D.D.C. Apr. 26, 2018), the "decisions in [*Wal-Mart*] and *Comcast* [*Corp. v. Behrend*, 569 U.S. 27 (2013)], …have since shifted this landscape [regarding "the absence of 'traditional rules and procedures' at the class certification stage"]. *Id.* at *21 (denying class certification on Title VII claims involving allegations of intentional and effect-based claims). The Supreme Court "strongly hinted" in *Wal-Mart* that courts should apply the same standards to experts at the class-certification stage as they would at later-stage proceedings. *Id.* at *18-19. Because proof on the merits is necessary for certification, the Fifth Circuit has "likened the degree of proof required to the standards used in preliminary injunction proceedings," and stated a court must "engage in a thorough analysis, weigh the relevant factors, require both parties to justify their allegations, and *base its ruling on admissible evidence*." *Unger v. Amedysis, Inc.*, 401 F.3d 316, 325 (5th Cir. 2005) (emphasis added).

[3]   The court noted there were two exceptions where statistics alone might show discriminatory intent: violation of Title VII and the jury venire context. *Id.*, at 640.

[4]   The Middle District of North Carolina cited *Chavez* extensively in *U.S. v. Johnson*, 122 F.Supp.3d 272 (M.D.N.C. 2015). Plaintiffs dismiss the relevance of *Johnson*, arguing that it is a "non-class" ruling on the merits. [Dkt. # 306 at 24 n.17]. Those distinctions are immaterial on the question of the character of evidence and proof

Because Dr. Guha's descriptive statistics do not satisfy *Chavez*, they are irrelevant under Rule 401, are no significant proof and are prejudicial under Rule 403, and certainly cannot contribute significant proof.

> B.   **Even if statistics could be used to prove intent, Dr. Guha's use of census benchmarks has been overwhelmingly rejected by courts.**

*Chavez* explains in detail how Dr. Guha's census benchmarking misses the mark. 251 F.3d at 640-45. There, plaintiffs' experts compared census data to police records for stops, detentions, and searches to show that minority motorists were stopped at a significantly higher rate than white motorists. *Id.* at 641. On appeal, the Seventh Circuit ruled that it was "clear" that the statistics cannot prove discriminatory effect and were "simply insufficient as a matter of law." *Id.* at 641. The court explained:

> The crux of the matter lies in the population benchmarks. As already noted, the plaintiffs compared the numbers from [police task force reports] with the representation of whites, African-Americans, and Hispanics ostensibly in the Illinois population and on Illinois roads. We find that these population benchmarks can not provide an adequate backdrop for assessing the racial composition of drivers faced by [the police task force], and thus can not indicate whether [task force] officers disproportionately stop, detain, and search Hispanic and African-Americans.

*Id.* at 643.

Census benchmarking offers no insight into whether discrimination occurred, even when presented with a sponsoring expert.[5] In employment cases, Plaintiffs must "finely tune" their

---

required to show discrimination in the law enforcement context. Statistics that would not be admissible to support a claim can hardly serve as the significant proof necessary to convert an individual claim to a class action.

[5]   Plaintiffs contend their case focuses on residents, not drivers. Yet, almost every offense specifically identified by Dr. Guha in his declaration is a driving-based offense. [Dkt. # 231-2]. For example, ¶¶ 11 and 20 only discuss offenses that impact drivers. *Id.* Likewise, Appendix C, Exhibit Nos. 4, 5, 6, 8 and 9 attached to his declaration speak to driving-based offenses. Other attachments are largely comprised of driving-based offenses, *e.g.*, Appendix B and Exhibit No. 2. As explained in Defendants' Rebuttal in Support of their Motion to Exclude Dr. Ricchetti, drivers are even more central to the at-risk population analyzed by Dr. Ricchetti's opinions.

statistical evidence to compare the employer's actual workforce hires to the available workforce.[6] Census benchmarking offers no insight into whether discrimination occurred, even when presented with sponsoring expert. *E.E.O.C. v. Olson's Dairy Queens, Inc.*, 989 F.2d 165, 168 (5th Cir. 1993) (holding that the usefulness of statistics in assessing discriminatory practices depends on the validity of the basic reference population as the pole star being compared to the work force of the employer). *Chavez* held that current statistics without a proper benchmark could not even prove discriminatory effect. 251 F.3d at 641. Certainly, such evidence cannot prove intent.

Here, Dr. Guha uses the total population of Madison County as a benchmark for his analysis. [Dkt. # 272-2, Dr. Guha Tr.: 84:5-10]. This is the wrong benchmark, for the same reason a total population benchmark was wrong in *Chavez*. And, Plaintiffs have proffered no other testimony to "tie in" Dr. Guha's statistics by providing a proper benchmark. Thus, Dr. Guha's statistics are inadmissible under F.R.E. 401, 403, and 104.

### C. Uncontested descriptive statistics showing disparities were <u>not</u> significant proof in *Wal-Mart*.

Even if the statistics are admissible under Fed. R. Evid. 401 and 403, Plaintiffs need more. Dr. Guha declares that the use of "descriptive statistics" is "well-accepted." [Dkt. # 305-2 at ¶6]. While that may be true in some in some contexts, even the dissenters in *Wal-Mart* noted that before the Court were "largely uncontested descriptive statistics" in favor of certification. *Wal-Mart*, 564 U.S. at 370 (Ginsburg, J., dissenting). Yet, even combined with anecdotal evidence, the Supreme Court determined that significant proof was "entirely absent." *Id.* at 353. If descriptive statistics showing an overall disparity submitted *with* a sponsoring expert were not significant proof in *Wal-*

---

[6] *See D.H. v. City of New York*, 2018 WL 2356653, at *10 (S.D.N.Y. Jan. 9, 2018) (finding that raw statistics showing the racial and gender composition of arrestees, even if combined with municipal demographics, was an "unhelpful baseline" for determining the existence of disparate treatment under Title VI).

*Mart*, they most certainly cannot be where, as here, the proponent offers the same *without* a sponsoring expert to opine about the causes of the disparity. [Dkt. # 306 at 16].

**II.   DR. GUHA'S DECLARATION IS AN OVERT ATTEMPT TO INTRODUCE DUBIOUS SOCIAL SCIENCE OPINIONS VIA FED. R. EVID. 1006.**

Dr. Guha's analysis is an obvious effort to repackage debunked social science to avoid scrutiny under *Daubert* and Fed. R. Evid. 702.[7] Plaintiffs cite no case wherein Fed. R. Evid. 1006 was used to admit non-expert summaries of descriptive statistics. *See also Ram v. New Mexico Dep't of Env't*, 2006 WL 4079623 (D.N.M. Dec. 15, 2006) (rejecting arguments that expert descriptive statistical analysis was alternatively admissible under Fed. R. Evid. 1006).[8] Dr. Guha's second declaration confirms that his original declaration contained statistical analysis. [Dkt. # 305-2 at ¶6]. Plaintiffs, however, fail to cite a single case in which non-expert descriptive statistics were admitted to prove discriminatory intent. Dr. Guha's latest declaration and Plaintiffs' responses confirm that his testimony is an effort to introduce expert opinion on discriminatory intent.[9]

Dr. Steward explained that Dr. Guha provides analysis, despite Plaintiffs' contrary claims. [Dkt. 267 # ¶ 35]. For example, Appendix B to Dr. Guha's declaration includes a disparity index providing "per capita ratio of Black to Non-Black" arrests. Plaintiffs plainly attempt to use this

---

[7]   Defendants previously explained that Dr. Guha's analysis has been rejected even with a sponsoring witness [Dkt. # 273 at 12] and that his declaration is an obvious attempt to admit expert opinion. [*Id.* at 19].

[8]   Defendants previously cited two cases from the Fourth Circuit wherein such statistics were excluded because the proponent did not provide a sponsoring expert. [Dkt. #273 at 13 (citing *Johnson v. Holmes*, 2018 WL 1404410 (W.D. Va. Mar. 19, 2018), and *Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir. 1989))].

[9]   Plaintiffs argue that Dr. Guha does not provide any conclusion regarding the "cause" of alleged racial disparities. [Dkt. #306 at 16]. Yet his analysis obviously attempts to prove the *existence* of racial disparities in arrest and citation rates. The existence of such a disparity is the exact type of "descriptive statistics" that the Supreme Court concluded in *Wal-Mart* was not significant under Fed. R. Civ. P. 23. In *Campbell*, Judge Sullivan held that an expert's statistical evidence that minorities were underrepresented in hiring and promotions and overrepresented in disciplinary actions (*i.e.*, disparities) was not significant proof of disparate impact, much less discriminatory intent. 2018 WL 1997254 at *31.

analysis to show the existence of a disparity as proof that MCSD operated under a general policy to discriminate, per *Wal-Mart*.[10]  And it is not just Appendix B; the same ratio is provided in Appendix C where Dr. Guha analyzes citations of drivers.  [Dkt. #231-2].  Exhibits 2 and 4 to Guha's declaration also include a graphic depiction of his arrest and citation calculations and the 2016 census estimates for Blacks in Madison County.  This depiction with the census information transposed over the alleged citation and arrest rates, clearly seeks to provide analysis of disparities by relating Black population to Black arrest and citation rates, and to prove the *existence* of racial disparities.

Whether Rule 1006 allows Dr. Guha to calculate arrest totals, nothing in Rule 1006 allows him to compare those totals to census data or any other benchmark.[11]  None of the cases cited in Plaintiffs' response stretch Rule 1006 to the degree that Plaintiffs seek here.  None included challenged summaries that provided comparative analysis or census-based indices.

### A. Dr. Guha's summaries rely on more than Madison County data.

Plaintiffs maintain that Dr. Guha simply summarized Madison County's own data, but that is simply not the case.  Nothing in Madison County's data identified 2016 census estimates or otherwise included data for calculating per capita percentages of arrests or citations.  It would certainly be news to the Department of Commerce that its census data is now Madison County's.[12]  Non-expert charts and summaries may be excluded where, as here, they contain information not present in the underlying data.  "Charts and summaries are, for instance, inadmissible if they

---

[10]    Plaintiffs have denied that Dr. Guha established a disparity based on the argument that the word "index" does not appear in Guha's exhibits.

[11]    Dr. Guha admits he has no expertise to know what a valid benchmark in the law enforcement field may be. [Dkt. # 272-2, Dr. Guha Tr.: 9:20-24 and 84:2-85:22].

[12]    13 U.S.C. § 2 (providing that the Bureau of the Census is an agency of the Department of Commerce).

contain information not present in the original or duplicate materials on which they are based.... Care must be taken to insure that summaries accurately reflect the contents of the underlying documents...." *Universal Furniture Int'l, Inc. v. Collezione Europa, USA, Inc.*, 599 F. Supp. 2d 648, 656 (M.D.N.C. 2009) (citing *United States v. Drougas*, 748 F.2d 8, 25 (1st Cir. 1984)).  Here, Dr. Guha's summaries include information not contained in the Madison County data that he purportedly summarized, which Rule 1006 does not permit.

> B.   **Madison County records cannot be both constitutionally deficient justifying class certification, yet complete and accurate under the Federal Rules of Evidence, as plaintiffs argue.**

Plaintiffs' dismiss Defendants' claims that Dr. Guha's summaries of Madison County's data are "misleading and inaccurate." [Dkt. #306 at 18].  Yet, their certification brief includes an entire section labeled, "**2. The MCSD Does Not Maintain Complete Or Accurate Records**." [Dkt. # 232 at 32-33 (emphasis in original)].  In that context, Plaintiffs argue that "[t]he MCSD does not track citation or arrest rates by race […] the records that do exist are not comprehensive." Neither Dr. Guha nor Plaintiffs explain how his summaries transform allegedly incomplete and inaccurate data into accurate reliable evidence under the Federal Rules of Evidence.[13]

Plaintiffs make these arguments without recognizing the inherent conflicts.  Plaintiffs have no constitutional right to require MCSD keep records in the manner that Plaintiffs desire.  Neither Dr. Guha nor Plaintiffs ever explain how these alleged inaccuracies that they contend violate their constitutional rights are resolved when a non-expert converts the data into summaries.  Logically,

---

[13]   Throughout their response Plaintiffs seek to shift their burden as the summaries' proponents, demanding that Defendants present empirical evidence [Dkt. # 306 at 18] or competing tabulations [*Id.* at 19].

if the underlying data is so unreliable to give rise to a constitutional violation, as Plaintiffs contend, that data (and any summary thereof) must also be unreliable under the Federal Rules of Evidence.[14]

### C. Dr. Guha's Has No Foundation For Explaining Search Terms Given To Him Plaintiffs' Counsel.

Dr. Guha used search terms provided by Plaintiffs' counsel. [Dkt. #306 at 9]. Dr. Guha did no inquiry himself to determine if the search terms were really adequate to accurately capture the underlying data for the particular law enforcement activity he purports to summarize (*e.g.*, apartment walk-throughs, DUI arrests, pedestrian arrests, etc.), *see* [Dkt. # 272-2, Dr. Guha Tr.: 95, and Plaintiffs' counsel cannot testify as to the adequacy of the search terms.[15] Thus, Dr. Guha's summaries lack a proper foundation. Before a summary is admitted, the proponent must lay a proper foundation as to the admissibility of the material that is summarized and show that the summary is accurate. *Needham v. White Labs., Inc.*, 639 F.2d 394, 403 (7th Cir. 1981) (citations omitted); *see also United States v. Johnson*, 594 F.2d 1253, 1256 (9th Cir. 1979) (holding it is an error for the trial court to place the burden on the opponent to show that a foundation is lacking). This is illustrated well with regard to the search terms for apartment walk-throughs. The search terms provided could pick up walk-throughs in other areas, such as a neighborhood or a festival, in addition to apartments. *See* [Dkt. # 272-2, Guha Tr.: 90-91. As yet two other examples, his search terms for DUI arrests at traffic stops would include DUI arrests at roadblocks, which are

---

[14] Defendants previously explained how Dr. Guha's statistics inflate arrest rates, *e.g.*, counting a single arrest as multiple arrests on a single day. [Dkt. # 273 at 13-19, citing Dr. Steward's Report, Dkt. # 267-35 at 26-27]. Plaintiffs' response further illustrates this point by giving this Court the false impression that Madison County records show MCSD arrested over 25,000 individuals during the period covered by Dr. Guha's records. [Dkt. # 306 at 12].

[15] The search terms for the various searches are set forth in footnote no. 1 in Exhibit Nos. 6 through 9 of Dr. Guha's report. [Dkt. # 262-2 at 20-23].

different activities.  [Dkt. # 272-2, Dr. Guha Tr.: 99:6-:14].   More fundamentally, Dr. Guha himself cannot defend the adequacy or accuracy of any of the search terms he uses.

While Dr. Guha's summaries may accurately show the results of his searches, this in no way means that the results of the searches are a fair representation of the underlying data.  To know the latter, the search terms themselves must be good search terms.  Dr. Guha did not address this point, by his own admission.  [Dkt. # 272-2, Dr. Guha Tr.: 95:1-:10].  As such, Guha and Plaintiffs ask this Court to assume they are good search terms, which is not a proper foundation for the searches.   "[T]he court must ascertain with certainty that [summaries] are based upon and fairly represent competent evidence already before the jury."  *See also United States v. Ogba*, 526 F.3d 214, 225 (5th Cir. 2008) (summary charts are admissible only where "they accurately reflect the underlying records or testimony, particularly when they are based, in part, on the government's factual assumptions").

## CONCLUSION

Defendants respectfully request an order from this Court striking and excluding Dr. Guha's declaration.

Respectfully submitted this 23rd day of July, 2018.


**MADISON COUNTY, MISSISSIPPI and SHERIFF RANDALL C. TUCKER, IN HIS OFFICIAL CAPACITY**

BY:   */s/ Russ Nobile*
      T. Russell Nobile (MSB #100682)
      WISE CARTER CHILD & CARAWAY, P.A.
      2510 14th Street, Suite 1125
      Gulfport, Mississippi  39501
      Telephone: 228-867-7141
      Facsimile: 228-867-7142
      trn@wisecarter.com

11

and

Michael B. Wallace (MSB #6904)
Charles E. Ross (MSB #5683)
James E. Graves (MSB #102252)
Charles E. Cowan (MSB #104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi  39205-0651
Telephone: 601-968-5534
Facsimile: 601- 944-7738
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com

OF COUNSEL:

Rebecca B. Cowan (MSB #7735)
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Dr.
Jackson, Mississippi  39232
P.O. Box 750
Jackson, Mississippi  39205-0750
Telephone: 601-969-1010
Facsimile:  601-969-5120
bcowan@curriejohnson.com

Katie Bryant Snell (MSB# 103607)
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi  39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

J. Lawson Hester
Jason Edward Dare
PETTIS, BARFIELD & HESTER, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi  39211
Telephone: 601-987-5300
lhester@pbhfirm.com
jdare@pbhfirm.com

## **CERTIFICATE OF SERVICE**

      I, T. Russell Nobile, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

Joshua Tom, Esq.
Paloma Wu, Esq.
American Civil Liberties Union of Mississippi Foundation
233 E. Capitol Street
Jackson, MS 39201
JTom@aclu-ms.org
PWu@aclu-ms.org

Jonathan K. Youngwood, Esq. (*pro hac vice*)
Janet A. Gochman, Esq. (*pro hac vice*)
Isaac Rethy, Esq. (*pro hac vice*)
Nihara K. Choudhri, Esq. (*pro hac vice*)
Kavitha Satya Sivashanker, Esq. (*pro hac vice*)
Brooke Jarrett, Esq. (*pro hac vice*)
Jumin Lee, Esq. (*pro hac vice*)
Christopher K. Shields, Esq. (*pro hac vice*)
Simpson Thatcher & Bartlett, LLP
425 Lexington Avenue
New York, NY  10017
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
kavitha.sivashanker@stblaw.com
bonnie.jarrett@stblaw.com
christopherjumin.lee@stblaw.com
christopher.shields@stblaw.com

Ezekiel Edwards, Esq. (*pro hac vice*)
Jeffery Robinson, Esq. (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
eedwards@aclu.org
jrobinson@aclu.org

So, certified this the 23rd day of July, 2018.

                                                        */s/ T. Russell Nobile*