**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **LATOYA BROWN; et al.** | **PLAINTIFFS** |
| **v.** | **CIVIL ACTION NO. 3:17-cv-347 WHB LRA** |
| **MADISON COUNTY, MISSISSIPPI; et al.** | **DEFENDANTS** |

**MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS'
UNTIMELY DESIGNATION OF NEW EXPERT WITNESS JUSTIN MCCRARY, PH.D.
[DKT. #302-4; DKT. #304-2]**

Defendants, Madison County, Mississippi, and Sheriff Randall C. Tucker, by and through counsel, file the following Memorandum in support of their Motion to Exclude Plaintiffs' Untimely Designation of Justin McCrary, Ph.D. as a new expert witness in this matter pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 37.

## INTRODUCTION

The eight remaining individual plaintiffs filed the instant class-action lawsuit on May 8, 2017. They claim intentional racial discrimination on the part of Sheriff Tucker, who is Madison County's sole law enforcement policymaker. Plaintiffs assert claims under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964, alleging that the operations of the Madison County Sheriff's Department ("MCSD") have violated their Fourth and Fourteenth Amendment rights, and they request declaratory and injunctive relief, including numerous judicial mandates covering all aspects of the MCSD.

**STATEMENT OF THE FACTS**

On February 27, 2018, Magistrate Judge Anderson executed a Stipulated Scheduling Order, which required, *inter alia*, Plaintiffs submit *all* expert reports in support of their motion for class certification by March 14, 2018. [Dkt. # 202, ¶1]. Plaintiffs submitted a single expert report in support of their motion for class certification from economist and statistician Dr. Bryan Ricchetti. [Dkt. # 231-1]. Dr. Ricchetti has claimed expertise in "analyzing economic data related to socioeconomic and demographic characteristics (including race) and economic outcomes," [*id.* at 2, ¶1], and provided a statistical analysis (model) that Plaintiffs contend evidences the existence of a policy of Sheriff Tucker of intentionally discriminating against Blacks through placement of roadblocks throughout Madison County. Following Plaintiffs' designation of Dr. Ricchetti, Defendants filed their response to Plaintiffs' motion for class certification on May 8, 2018, designating their own economist and statistician, Dr. Dwight Steward. [Dkt. #267]. Defendants that same day filed a motion to exclude Dr. Ricchetti's opinions as unreliable pursuant to F.R.E. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). [Dkt. #270].

Without seeking leave of Court and almost four months after their designation deadline and completion of expert discovery, Plaintiffs designated Justin McCrary, Ph.D., as an expert witness both to support their reply in support of class certification and their opposition to Defendants' motion to exclude Dr. Ricchetti. [Dkt. #302-4; Dkt. #304-2]. Plaintiffs offer varying descriptions of exactly what field Dr. McCrary is an expert in. They describe him as an expert on "academic literatures concerning crime and concerning racial discrimination," "statistical analysis related to discrimination and crime," and "measurement error." [Dkt. # 303, at 3]. Dr. McCrary describes himself as an economist "with expertise in economic modeling, statistical methods, and law and economics, among other subjects." [Dkt. #302-4, at 4, ¶1].

Dr. McCrary, like Plaintiffs' initial expert, Dr. Ricchetti, has a Ph.D. in economics and works as a senior adviser at the same economic and consulting firm, Cornerstone Research Group, that employs Dr. Ricchetti. *See* McCrary Cornerstone Biography, Exhibit "A" to the Motion. In fact, Dr. McCrary's education and expertise is remarkably similar to Dr. Ricchetti's. *Compare* [Dkt. #302-4 at 4-6 (McCrary)] *with* [Dkt. #226-1 at 4-5 (Ricchetti)]. Dr. McCrary's report discusses his added expertise in statistics relating to crime and claims that the purpose of his report is to review the reports of Dr. Ricchetti and Defendants' expert Dr. Dwight Steward "and comment on Dr. Steward's claims that Dr. Ricchetti's methodology is not a widely-accepted methodology in the academic literature on the economics of crime." [Dkt. #302-4 at 7, ¶14]. Essentially, Dr. McCrary's opinion contains three subparts that conclude Dr. Ricchetti's roadblock model "has been used in both academic research and relied on by Courts" [*id*. at 9, ¶21], that his statistical analysis "comparing differences across neighborhoods in policing or any other outcome of interest can be reliable methodology" [*id*. at 13, ¶31], and that the measurement errors identified by Dr. Steward "are highly unlikely to affect Dr. Ricchetti's conclusions, except by making them somewhat conservative from a statistical perspective." [*Id*. at 17, ¶37].

Dr. McCrary's report consists almost entirely of opinions meant to bolster the opinions of Dr. Ricchetti and to add the persuasive weight of a second economist/statistician behind Dr. Ricchetti's opinions. In short, Plaintiffs use Dr. McCrary, a Ph.D. economist, to shore up Dr. Ricchetti, also a Ph.D. economist, since apparently Plaintiffs do not believe that Dr. Ricchetti can sufficiently defend his own report. As discussed below, Dr. McCrary, an expert designated solely to bolster the opinions of the same type of expert Plaintiffs previously designated, is not a proper rebuttal expert, and established precedent from this Court requires his opinions be excluded.

# ARGUMENT

**Dr. McCrary's opinions should be excluded pursuant to Fed. R. Civ. P. 37 because Plaintiffs' belated disclosure of them violated Fed. R. Civ. P. 26(a)(2)(D) and Local Rule 26(a)(2) without just cause.**

The Stipulated Scheduling Order entered in this matter [Dkt. #202, ¶1] required Plaintiffs serve expert designations in support of their motion for class certification on March 14, 2018. Plaintiffs did not designate Dr. McCrary until July 8, 2018, almost four months after the imposed deadline. Plaintiffs' untimely designation of Dr. McCrary violates both Fed. R. Civ. P. 26(a)(2)(D), which mandates parties disclose their experts "at the times and in the sequence that the court orders," and Local Rule 26 (a)(2) ("Absent a finding of just cause, failure to make full expert disclosures by the expert designation deadline is grounds for prohibiting introduction of that evidence . . .").

Fed. R. Civ. P. 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." If this Court finds that the disclosure (or portions of it) violate Fed. R. Civ. P. 26, the Fifth Circuit has adopted a four-factor test to determine if just cause for the failure exists. *Hamburger v. State Farm Mut. Auto. Ins. Co.,* 361 F.3d 875, 882-83 (5th Cir. 2004) (citations omitted). The four factors are: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Id*.

    **A.**     **Dr. McCrary's opinions are not those of a proper rebuttal expert, and Plaintiffs' explanation to the contrary is an insufficient explanation to establish just cause for his late designation.**

Plaintiffs have not explained why they failed to designate Dr. McCrary by the time of their March 14, 2018, deadline to designate experts. Plaintiffs easily could have included primary elements of the designation of Dr. McCrary, a colleague of their original expert economist/statistician, Dr. Ricchetti, with their motion for class certification, but they did not. Plaintiffs can only contend that the designation of Dr. McCrary is a timely "rebuttal" expert designation and that his opinions are meant solely to rebut those of Dr. Steward's.

> **i. Designating an entirely new "rebuttal" expert in the same field as the proponent's original expert is a highly disfavored act and inconsistent with this Court's common practice.**

The scheduling order dictated that "rebuttal expert reports and/or declarations on behalf of Plaintiffs, and related disclosures" were due July 2, 2018. [Dkt. #202 at 2, ¶6.] Plaintiffs apparently read this provision to entitle them to designate entirely new experts in addition to submitting rebuttal reports from their original experts. In this matter, the parties entered into a court-entered stipulation that allowed Plaintiffs to submit rebuttal expert reports, but the stipulated order did not manifest any intent to allow an entirely new designation of experts.

Designating entirely new experts, much less a new expert in the same field as a party's original expert is not a common or favored process for proffering expert testimony in this Court, as this Court explained in *Estate of Vaughn v. KIA Motors Am., Inc.*, Civil Action No. 3:05-CV-38BS, 2006 WL 1806454, at *1, *2 (S.D. Miss. June 29, 2006).

In *Estate of Vaughn*, this Court noted that the expert designation process is ordinarily controlled by this Court's orders: "[I]t has long been the practice in this Court, under the authority of Rule 26(a)(2)(C), to set a deadline in the case management order for plaintiff's designation of expert(s) and a deadline for defendant's designation of expert(s) thirty days after plaintiff's deadline." Where this practice has been changed, it should not be interpreted to allow for an

5

entirely new designation and the idea that parties should be able to designate entirely new experts on rebuttal is disfavored:

> The Court can foresee very few situations when a rebuttal witness designation would be necessary. In the vast majority of cases, a plaintiff has no reason to designate a new rebuttal expert after the defendant's expert is designated. Ordinarily, where rebuttal expert testimony is necessary, a plaintiff will choose to use the same expert that plaintiff originally designated to rebut the defendant's expert, in which case a new designation is unnecessary. Under these circumstances, the plaintiff's expert can simply supplement his report as required by Rule 26(e)(1). **Only when the defendant's expert raises new issues in his report that were not raised in the plaintiff's expert's report and the plaintiff must call a new expert to rebut that information is there a need for a rebuttal expert designation.** Because a new rebuttal expert designation by a plaintiff is rarely necessary, the Court sees no reason why it should depart from its customary practice regarding designation of experts.

*Id*. (emphasis added).

Consistent with this Court's logic in *Estate of Vaughn*, this Court upheld the striking of an expert report from an entirely new rebuttal expert witness in *Shaidnagle v. Adams County, Miss.*, 2015 WL 72161, at *1, *4 (S.D. Miss. Jan. 6, 2015), overruling objections to 2014 WL 11427966, at *1. In *Shaidnagle*, the plaintiff designated a non-physician expert witness as a "nationally recognized expert in the field of suicide prevention within jails, prisons and juvenile facilities" and the expert opined that the plaintiff's decedent was a suicide risk at the time he committed suicide in a correctional facility. 2014 WL 11427966, at *1. Later, the defendants designated a psychiatrist who testified that the decedent was not, in fact, a suicide risk given the circumstances. *Id*. at *2. The plaintiff, in turn, designated a new "rebuttal" physician expert witness who they designated as "an expert in the field of suicide prevention within jails," the same field as their original expert witness. *Id*. The defendants filed a motion to strike the new "rebuttal" expert on the basis that it was not timely since the expert should have been part of the plaintiff's original designation. *Id*. at *5.

The Magistrate Judge granted the motion, finding that the new expert did not offer an opinion on a subject matter raised for the first time by the defendants' expert. *Id*. The plaintiff's original expert had opined that the decedent was a suicide risk, while the defendants' expert had opined why the decedent was not a suicide risk. *Id*. The Magistrate Judge held that suicide risk was not a "new issue" raised by the defendants' expert that entitled them to offer an entirely new rebuttal expert. *Id*. Furthermore, the Magistrate Judge found that even assuming it was a "new issue," the newly designated "rebuttal" expert was an expert "*in the same field as her primary liability expert*" and that "*[i]f qualified, the [original expert] should be just as capable as refuting any 'new issues' raised by [the defendants' expert's] written expert report as [the plaintiff's original expert] since both witnesses share the same field of expertise*." *Id*. (citation omitted) (emphasis added). Thus, the new expert was not a "rebuttal expert", and the designation was not timely under Fed. R. Civ. P. 26(a)(2)(D)(ii). *Id*. The District Judge agreed with the Magistrate Judge's rationale in granting the motion to strike the untimely "rebuttal" expert on the basis espoused by the Magistrate Judge's opinion. 2015 WL 72161, at *4 (denying objection to Magistrate Judge's order granting motion to strike because record supported finding that suicide risk was not a new issue and that experts "were qualified in the same field").

As evidenced by this Court's opinion in *Shaidnagle*, untimely and improper "rebuttal" opinions from an expert when those opinions are duplicative of those of the proponent's original expert in the same field should be excluded. Not only is Plaintiffs' designation of a new economist/statistician with "rebuttal" opinions substantially the same as those of the original expert in the same field a disfavored practice, *see Estate of Vaughn* 2006 WL 1806454, at *1, but allowance of his testimony needlessly duplicates the rebuttal opinions of Dr. Ricchetti.

      **ii.**     **Whether Dr. Ricchetti's opinion is reliable and consistent with academic literature on the subject is an issue upon which Dr. Ricchetti's original opinion**

**should be based and not the proper subject of rebuttal testimony from Dr. McCrary, an entirely new expert witness.**

Even if one assumes what Plaintiffs have done is consistent with the terms of the stipulated scheduling order and this Court's ordinary practice, this Court should nevertheless exclude Dr. McCrary's opinions because they are not the proper subject of "rebuttal" expert testimony. Plaintiffs should not be able to designate an entirely new expert in the same field to bolster or supplement Dr. Ricchetti's report under the guise that the inherent reliability of Dr. Ricchetti's opinion and its consistency with the existing academic literature is a "new issue" raised for the first time in Dr. Steward's expert report. Although Plaintiffs assert that Dr. McCrary's report is meant to rebut Dr. Steward's opinion, in essence, its primary function amounts to a *de facto* "supplement" of Dr. Ricchetti's original expert report. Opinions that are meant solely to bolster the original expert report of Dr. Ricchetti are not the proper subject of a new expert in the same field and they should be excluded as untimely.

The Fifth Circuit defines "rebuttal" as "a term of art, denoting evidence introduced by a Plaintiff to meet new facts brought out in his opponent's case in chief." *Morgan v. Commercial Union Assur. Cos.,* 606 F2d 554, 555 (5th Cir. 1979). In *Morgan*, the Court affirmed the trial court's exclusion of a non-disclosed witness the defendant sought to call at trial to impeach the plaintiff's claim that he had no back problems prior to an incident involving the defendant, holding that the defendant should have known that this claim would be part of the plaintiff's case in chief and identified the witness in the pretrial order. The Court concluded that "a . . . witness whose purpose is to contradict an expected and anticipated portion of the [opponent's] case in chief can never be considered a 'rebuttal witness,' or anything analogous to one." *Id.* at 556.

Similarly, Plaintiffs offer Dr. Ricchetti's statistical analysis as part of its central argument in their motion for class certification (*i.e.*, alleged disparate roadblock placement equals evidence

of intentional discrimination), and Plaintiffs should have been aware that challenging the reliability of that analysis would be a central theme of Defendants' defense on class certification.

Here, Plaintiffs utilize Dr. Ricchetti's statistical model to establish that Sheriff Tucker maintains an official policy of intentionally discriminating against Blacks in Madison County. *See Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984). The idea that Dr. Ricchetti's model should be reliable and consistent with the pertinent academic literature was a front-and-center part of Dr. Ricchetti's expert opinion as Dr. Ricchetti himself noted in his original report:

> My analysis in this report relies on a statistical technique called multiple regression analysis. Multiple regression analysis is a widely accepted and common statistical technique in both academia and litigation . . . Courts have relied on multiple regression analysis in a variety of discrimination matters. For example, the Federal Judicial Center's Reference Manual for Scientific Evidence (a document designed to aid federal judges in assessing scientific evidence) dedicates an entire chapter to multiple regression analysis, including applications to questions of discrimination.

[Dkt. #231-1 at 9-10, ¶16 (footnotes omitted)].[1] Paragraphs 17 through 20 of Dr. Ricchetti's report discusses other specific aspects of why he believes his statistical analysis was reliable and consistent with academic literature.

Certainly, it was wise for Dr. Ricchetti's report to explain the basis for the reliability of his statistical method and explain how it was allegedly supported by the academic literature because Plaintiffs, as the proponent of the expert testimony, have the ultimate burden to establish that Dr. Ricchetti's statistical model is indeed reliable. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004) (holding that the proponents of expert testimony "ha[ve] the burden of showing that the testimony is reliable."). Regardless of the reasons why Dr. Ricchetti discussed in detail his basis for the reliability of his statistical model and how it was consistent with the academic literature,

---

[1] Many of the footnotes omitted in this excerpt from Dr. Ricchetti's initial report cite a series of academic articles that purportedly support the reliability of the model he has used. Dr. McCrary's "rebuttal" expert opinion goes further to supplement the authorities Dr. Ricchetti listed in his initial report.

that report directly places at issue those topics and Plaintiffs should not have the opportunity to bolster Dr. Ricchetti's original opinions about reliability and consistency because of their ultimate concerns that his opinions are methodologically shaky. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001) ("[F]airness does not require that a plaintiff, whose expert witness testimony has been found inadmissible under *Daubert*, be afforded a second chance to marshal other expert opinions and shore up his case."). Perhaps more fundamentally, why does Dr. Ricchetti need another economist to say the literature supports his own regression analysis? If Dr. Ricchetti cannot do it himself, that only shows the weakness of Dr. Ricchetti's expertise in the field.

Plaintiffs could not have been surprised when Defendants designated their economist/statistician expert, Dr. Dwight Steward, who contended the opposite, that Dr. Ricchetti's statistical model was, in fact, *not* reliable and *not* consistent with the academic literature on the subject. To remedy this ailment, Plaintiffs submitted a rebuttal expert report of Dr. Ricchetti and attempted to further bolster the reliability and consistency arguments of Dr. Ricchetti's by utilizing another member of their shared field. Simply put, this is *not* proper expert rebuttal testimony under these circumstances and this is an insufficient explanation for Plaintiffs failing to designate Dr. McCrary as part of their initial expert designation. *See McReynolds v. Matthews,* 2017 WL 5573194, *3, *4 (S.D. Miss November 20, 2017) (striking testimony of purported rebuttal expert because testimony from defendant's expert could not have constituted new information establishing grounds for rebuttal).

Courts routinely hold that rebuttal expert testimony should be limited to "new unforeseen facts brought out in the other side's case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006) (citation omitted). *See United States v. Lamoreraux*, 422 F.3d 750, 755 (8th Cir.

2005) ("The principal objective of rebuttal is to permit a litigant to counter new, unforeseen facts brought out in the other side's case."). Because Dr. McCrary's testimony is analogous to previous testimony provided by Dr. Ricchetti, it is improper rebuttal evidence and merely an attempt to bolster Dr. Ricchetti's original opinion as part of Plaintiffs' case in chief.

> **B.  Dr. McCrary's expert opinion is not important to Plaintiffs' motion for class certification.**

The second *Hamburger* factor supports exclusion because a review of Dr. McCrary's opinions reveals that his opinions substantially mirror those found in Dr. Ricchetti's rebuttal expert opinion. *Compare* [Dkt. #3041 at 16-19, ¶¶ 28-39 (Dr. Ricchetti discussing how his methodology is supported in the field and by pertinent academic literature)] *with* [Dkt. #302-4 at 7-12, ¶¶16-28 (Dr. McCrary discussing Dr. Ricchetti's model and its alleged consistency with the academic literature)]. *Compare also* [Dkt. #3041 at 26-29, ¶¶51-60 (Dr. Ricchetti discussing the effect of measurement error on his analysis)] *with* [Dkt. #302-4 at 15-18, ¶¶33-41 (Dr. McCrary discussing effect of measurement error on Dr. Ricchetti's analysis)]. Dr. McCrary does not possess any unique qualifications that somehow make his "rebuttal" expert opinion supersede that of Dr. Ricchetti's. To describe Dr. McCrary's expert opinion as duplicative would be an understatement.

This Court addressed this very factor in a similar scenario in *Dockery v. Fischer*, No. 3:13-cv-326-WHB-JCG, 2015 WL 12683196, at *1 (S.D. Miss. June 3, 2015). There, it held that the duplicative nature of a "rebuttal" expert's opinion weighed in favor of striking an untimely rebuttal expert report. *Id*. at *3. In *Dockery*, "the experts whose methodology was challenged by [defendants' expert] ha[d] submitted a declaration refuting [the defendants' expert's] opinions." This Court noted that in such a scenario, where "the certification experts themselves have proffered explanations as to the reason [the defendants' expert's] opinions are allegedly flawed, [the rebuttal expert's] similar opinions are likely cumulative and, therefore, have minimal importance." *Id*.

11

If Dr. McCrary's opinions were vital to Plaintiffs' defense of their motion for class certification, the report should have been part of Plaintiffs' original expert designation. *Hamburger,* 361 F.3d at 883 (citation omitted). "[T]he importance of proposed testimony cannot 'singularly override the enforcement of local rules and scheduling orders.'" *Hamburger*, 361 F.3d at 883 (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990)). Plaintiffs' failure to designate Dr. McCrary as an initial expert witness and produce a report from him in their initial designation requires him to be excluded as an expert witness in this matter.

### C. Defendants would suffer prejudice should McCrary's report not be excluded.

Plaintiffs were required to designate their experts on March 14, 2018, in this matter. [Dkt. #202, ¶ 1]. Defendants took the depositions of the expert witness designated by Plaintiffs, Dr. Bryan Ricchetti, and their Fed. R. Evid. 1006 witness, Dr. Rahul Guha, by traveling to Chicago, Illinois, and New York, New York, at their own expense. Defendants designated their three expert witnesses, one of whom was Dr. Dwight Steward, an economist/statistician, on May 8, 2018. Plaintiffs deposed all three experts by July 2, 2018.

With Plaintiffs' designation of Dr. McCrary as a new "rebuttal" expert witness, Defendants are deprived of the ability to depose him since the original stipulated scheduling order does not contemplate discovery relating to new "rebuttal" experts. Defendants have already endured the high costs of discovery in this matter. [Dkt. #290, at pp. 29-32 (describing the extensive discovery the parties have engaged in during the litigation of this suit as part of Defendants' rebuttal brief in support of their motions for summary judgment on the class claims of the individual plaintiffs)]. *See Dockery*, 2015 WL 12683196, at *1 (noting that prejudice would result to defendants in that they would be "deprived of any opportunity to conduct discovery as to the basis/substance of [the rebuttal expert's] opinions or to designate an expert to rebut those opinions"); *Bailey v. Stanley*

12

*Access Techs., Inc.,* 3:14-CV-72-SA-JMV, 2015 WL 6828921, at *1, *16-17 (N.D. Miss. Nov. 6, 2015) ("[T]he Fifth Circuit has noted that a delay of even a few weeks in disclosing expert testimony disrupts the court's schedule and the opponent's preparation and, therefore, is prejudicial.") (citation omitted).  This third *Hamburger* factor clearly weighs against allowing Plaintiffs to designate McCrary.

### D. Plaintiffs' failure to timely designate Dr. McCrary should not result in a continuance of the class certification proceedings.

This Court held in *Robbins v. Ryan's Family Steak Houses East, Inc.*, 223 F.R.D. 448, 454 (S.D. Miss. 2004), that, if other *Hamburger* factors "support striking an expert's designation, then a district court is not required to continue a trial."  *Id.  See also Francois v. Colonial Freight Sys., Inc.,* 3:06-cv-434-WHB-LRA, 2007 WL 4564866, at *1, *7 (S.D. Miss. Dec. 21, 2007) ("Since the first and third factors militate against permitting the [expert] testimony," plaintiff's expert witness should be barred from testifying at trial).   If a continuance would "result in additional expense in defending the lawsuit and would not serve to enforce local rules or court imposed scheduling order," the new expert opinions should be excluded.  *Bailey*, 2015 WL 6828921, at *17.  Plaintiffs' belated attempt to designate a second economist/statistician expert to bolster the same opinions of their initial statistician/economist expert satisfies the first three of the exclusionary factors identified in *Hamburger*.  As a result, the fourth *Hamburger* factor is also satisfied, requiring his report and opinions be excluded.

### CONCLUSION

For the above and foregoing reasons, Defendants move this Court to exclude the untimely and irrelevant report and opinions from Plaintiffs' proposed "rebuttal" statistician/economist expert, Justin McCrary, Ph.D., under Rule 26(a)(2)(D) and Local Rule 26 (a)(2).

This the  30th day of July, 2018.

**MADISON COUNTY, MISSISSIPPI and SHERIFF RANDALL C. TUCKER, IN HIS OFFICIAL CAPACITY**

BY: /s/ *Charles E. Cowan*

OF COUNSEL:

Michael B. Wallace (MSB #6904)
Charles E. Ross (MSB #5683)
James E. Graves (MSB #102252)
Charles E. Cowan (MSB #104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi 39205-0651
Telephone: 601-968-5534
Facsimile: 601- 944-7738
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com

T. Russell Nobile (MSB #100682)
WISE CARTER CHILD & CARAWAY, P.A.
2510 14th Street, Suite 1125
Gulfport, Mississippi 39501
Telephone: 228-867-7141
Facsimile: 228-867-7142
trn@wisecarter.com

Rebecca B. Cowan (MSB #7735)
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Dr.
Jackson, Mississippi 39232
P.O. Box 750
Jackson, Mississippi 39205-0750
Telephone: 601-969-1010
Facsimile: 601-969-5120
bcowan@curriejohnson.com

Katie Bryant Snell (MSB# 103607)
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi 39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

J. Lawson Hester
Jason Edward Dare
PETTIS, BARFIELD & HESTER, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
Telephone: 601-987-5300
lhester@pbhfirm.com
jdare@pbhfirm.com

## CERTIFICATE OF SERVICE

I, Charles E. Cowan, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

Joshua Tom, Esq.
American Civil Liberties Union of Mississippi Foundation
233 E. Capitol Street
Jackson, MS 39201
JTom@aclu-ms.org
PWu@aclu-ms.org

Jonathan K. Youngwood, Esq. (*pro hac vice*)
Janet A. Gochman, Esq. (*pro hac vice*)
Isaac Rethy, Esq. (*pro hac vice*)
Nihara K. Choudhri, Esq. (*pro hac vice*)
Kavitha Satya Sivashanker, Esq. (*pro hac vice*)
Brooke Jarrett, Esq. (*pro hac vice*)
Christopher K. Shields, Esq. (*pro hac vice*)
Simpson Thatcher & Bartlett, LLP
425 Lexington Avenue
New York, NY  10017
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
kavitha.sivashanker@stblaw.com
bonnie.jarrett@stblaw.com
christopher.shields@stblaw.com

Ezekiel Edwards, Esq. (*pro hac vice*)
Jeffery Robinson, Esq. (*pro hac vice)*
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
eedwards@aclu.org
jrobinson@aclu.org

So, certified this the 30th day of July, 2018.

  /s/  *Charles E. Cowan*
CHARLES E. COWAN