IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**LATOYA BROWN; et al.**                                                                **PLAINTIFFS**

**v.**                                                         **CIVIL ACTION NO. 3:17-cv-347 WHB LRA**

**MADISON COUNTY, MISSISSIPPI; et al.**                                                  **DEFENDANTS**

---

**MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS'
UNTIMELY DESIGNATION OF NEW EXPERT WITNESS PATRICIA FRONTIERA,
PH.D. [DKT. #302-3; DKT. #304-3; DKT. #307-2]**

---

Defendants, Madison County, Mississippi, and Sheriff Randall C. Tucker, by and through counsel, file the following Memorandum in support of their Motion to Exclude Plaintiffs' Untimely Designation of Patricia Frontiera, Ph.D. as a new expert witness in this matter pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 37.

## INTRODUCTION

The eight remaining individual plaintiffs filed the instant class-action lawsuit on May 8, 2017. They claim intentional racial discrimination on the part of Sheriff Tucker, who is Madison County's sole law enforcement policymaker. Plaintiffs assert claims under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964, alleging that the operations of the Madison County Sheriff's Department ("MCSD") have violated their Fourth and Fourteenth Amendment rights, and they request declaratory and injunctive relief, including numerous judicial mandates covering all aspects of the MCSD.

## STATEMENT OF THE FACTS

Magistrate Judge Linda Anderson executed a Stipulated Scheduling Order on February 27, 2018, which required, *inter alia*, Plaintiffs to submit *all* expert reports in support of their motion for class certification by March 14, 2018. [Dkt. # 202, ¶1]. Plaintiffs submitted a single expert report in support of their motion from economist and statistician Dr. Bryan Ricchetti. [Dkt. # 231-1]. Dr. Ricchetti was the sole expert designated by Plaintiffs to show that the MCSD has a policy of intentionally discriminating against Blacks. Dr. Ricchetti claimed expertise in "analyzing economic data related to socioeconomic and demographic characteristics (including race) and economic outcomes," [*id*. at 2, ¶1], and provided a statistical analysis (model) that Plaintiffs contend evidences, through geocoding, the existence of a policy of Sherriff Tucker of intentionally discriminating against Blacks through placement (through geocoding) of roadblocks throughout Madison County.

As part of his statistical analysis, Dr. Ricchetti utilized a "geocoding analysis of the locations of the roadblocks" in Madison County, which Dr. Ricchetti opines "show[s] a clustering of roadblocks in substantially Black communities." [*Id*. at 6, ¶6]. Dr. Ricchetti converted address information for 2,004 roadblock locations into geocoded geographic coordinates for mapping. Once geocoded, Dr. Ricchetti stated that he assigned each roadblock location "to a census tract in Madison County based on its geographic coordinates." [*Id*. at p. 13, ¶23]. There are only 21 total census tracts in Madison County, although there are many more than 21 neighborhoods. At his deposition, Dr. Ricchetti testified that the program used in his analysis was ArcGIS.[1]  *See* Dr. Ricchetti Deposition Excerpts, Exhibit "A" to the Motion, at 162:8-14, 167:2-8. However, he

---

[1] ArcGIS is a sophisticated geographic information system software program used for a variety of geographic based analyses. It is complicated and, in terms of conducting complex geocoding tasks, requires technical expertise. [Dkt. #270-4 at ¶28].

Case 3:17-cv-00347-WHB-LRA   Document 319   Filed 07/30/18   Page 3 of 17

admitted that he did not actually perform the geocoding of the roadblock locations himself. *Id*. at 163:5-6. Instead, his "team working under [his] supervision used [ArcGIS], which ultimately gave us [the] locations." *Id*. at 167:25, 168:1-10. Dr. Frontiera, the subject of this Motion, was not part of his "team" that performed the geocoding.

Overall, Dr. Ricchetti's team plotted 2,004 roadblocks that occurred in Madison County between the years 2012 and 2017. *Id.* at 194:2-10. When faced with inquiries about the locations input into the ArcGIS program and whether his model actually used correct roadblock locations, Dr. Ricchetti equivocated on the accuracy of his actions. *Id*. at 208:5-25, 209:19-25, 210:1-14 ("My understanding is that they were using ArcGIS and I just need to understand whether there's this boundary issue you're discussing. I just want to double-check that."); 210:16-25, 211:1-8 (explaining that he would have to consider whether his analysis changed with a change in his understanding of the underlying data). It is undisputed that Dr. Ricchetti's entire statistical analysis depended upon his ability, as an expert economist and statistician, to reliably and accurately assign roadblocks to one of Madison County 21 census tracts. However, neither he, nor any of the individuals who assisted him with the ArcGIS geocoding process Dr. Ricchetti has identified are geographers. *Id*. at 196:4-14.

Following Plaintiffs' designation of Dr. Ricchetti, Defendants filed their response to Plaintiffs' motion for class certification on May 8, 2018, designating several experts, including a geographer, William Funderburk. [Dkt. #267]. That same day, Defendants filed a motion to exclude Dr. Ricchetti's opinions as unreliable pursuant to F.R.E. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). [Dkt. #270]. Now, without seeking leave of Court and almost four months after their designation expert deadline and completion of expert discovery, Plaintiffs have designated Patricia Frontiera, Ph.D., as an expert witness to support their reply in

3

support of class certification, their response to Defendants' motion to exclude Dr. Ricchetti, and their motion to exclude report and testimony of Defendants' expert William Funderburk. [Dkt. #302-3; Dkt. #304-3; Dkt. #307-2].

Dr. Frontiera is a geospatial data scientist at the University of California, Berkeley, the same school where Dr. Justin McCrary, another one of Plaintiffs' new experts, teaches. [Dkt. #307-2, at 4]. Dr. Frontiera's opinions have five (5) primary components, which conclude: (1) Dr. Ricchetti's initial report "followed best practices resulting in a high level of overall geocoding quality;" (2) Dr. Ricchetti did not need to retain an expert geographer or geospatial professional in order to perform his roadblock analysis; (3) Dr. Ricchetti could accurately geocode roadblocks at intersections and the positional accuracy of the geocoding is high; (4) the flaws in Dr. Ricchetti's geocoding analysis are not, in fact, errors in the geocoding, but errors in the underlying data; and (5) based on her own analysis, she has confirmed that Dr. Ricchetti's analysis was reliable and that any "incremental error to roadblock assignment likely resulted in undercounting of [the] number of roadblocks within census tracts with a relatively high black population percentage." [Dkt. #302-3, at ¶¶9-16].

Dr. Frontiera's report's sole purpose is to lend the credibility to Dr. Ricchetti's report of an expert capable of performing the complex geocoding analysis Dr. Ricchetti utilized. This in and of itself shows that Dr. Ricchetti and his "team" do not possess the necessary expertise. Dr. Frontiera explains away the multitude of errors in his analysis, thereby qualifying the errors as one in the data and not Dr. Ricchetti's geocoding analysis. Dr. Frontiera's report bootstraps the persuasive weight of a new expert actually qualified to perform the analysis from the outset and her designation at this late time warrants the exclusion of her "rebuttal expert report" in toto. Accordingly, Dr. Frontiera, an expert designated solely to bolster the subject matter of a previously

designated expert's opinion, is not a proper rebuttal expert, and established precedent from this Court requires her opinions be excluded.

## ARGUMENT

**Dr. Frontiera's opinions should be excluded pursuant to Fed. R. Civ. P. 37 because Plaintiffs' belated disclosure of them violated Fed. R. Civ. P. 26(a)(2)(D) and Local Rule 26(a)(2) without just cause.**

The Stipulated Scheduling Order entered in this matter [Dkt. #202, ¶1] required Plaintiffs to serve expert designations in support of their motion for class certification on March 14, 2018. Plaintiffs did not designate Dr. Frontiera until July 8, 2018, almost four months after their imposed deadline. Plaintiffs' untimely designation of Dr. Frontiera violates both Fed. R. Civ. P. 26(a)(2)(D), which mandates parties disclose their experts "at the times and in the sequence that the court orders," and Local Rule 26 (a)(2) ("Absent a finding of just cause, failure to make full expert disclosures by the expert designation deadline is grounds for prohibiting introduction of that evidence . . ."). Where a "party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37. If this Court finds that Dr. Frontiera's disclosure (or portions of it) violate Rule 26, this Court should apply a four-factor test to determine if just cause for Plaintiffs' failure exists. *Hamburger v. State Farm Mut. Auto. Ins. Co.,* 361 F.3d 875, 882-83 (5th Cir. 2004) (citations omitted). The four factors are: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Id*.

    **A.**    **Dr. Frontiera's opinions are not those of a proper rebuttal expert and Plaintiffs' explanation to the contrary is an insufficient explanation to establish just cause for her late designation.**

Plaintiffs will contend that the designation of Dr. Frontiera is timely and that they did not have to designate Dr. Frontiera by their March 14, 2018, expert designation deadline because she is not part of their case-in-chief, but instead offers only "rebuttal" expert opinions offered solely to rebut those of Mr. Funderburk and Defendants' economist and statistician expert, Dr. Dwight Steward.  Plaintiffs should have included the purported expertise of Dr. Frontiera as part of their original expert designation in this case.  The unsurprising *Daubert* challenge to the entirety of Dr. Ricchetti's original expert opinion does not entitle Plaintiffs to a "redo" of their original expert designation.  This Court, therefore, should exclude the designation of Dr. Frontiera as untimely and outside the scope of proper rebuttal expert testimony.

> **i.  Designating a new expert in rebuttal in order to prop up the proponent's original expert's opinion is a highly disfavored act and inconsistent with this Court's common practice.**

The scheduling order dictated that "rebuttal expert reports and/or declarations on behalf of Plaintiffs, and related disclosures" would be due July 2, 2018.  [Dkt. #202, at ¶6].  Apparently Plaintiffs read this provision in the stipulated scheduling order as one that entitled them to designate entirely new experts in addition to submitting rebuttal reports from their original experts. The scheduling order contemplated expert discovery periods for all parties' designations. Defendants deposed Dr. Ricchetti and Dr. Rahul Guha (Plaintiffs' timely designated expert and F.R.E. 1006 summary witness, respectively) while Plaintiffs deposed Mark Dunston, Dr. Steward, and Mr. Funderburk (Defendants' three timely designated experts).  No new discovery period was provided for with respect to the recent designation of the new onslaught of Plaintiffs' experts. What Plaintiffs have done here, by designating entirely new experts after their time for initial expert designations has expired, is not a favored process for proffering expert testimony in this Court.

This Court explained how this practice turned the ordinary tiered process of designating experts on its head in *Estate of Vaughn v. KIA Motors Am., Inc.*, Civil Action No. 3:05-CV-38BS, 2006 WL 1806454, at *1, *2 (S.D. Miss. 2006). In *Estate of Vaughn,* this Court noted that the expert designation process is ordinarily controlled by these Court's orders: "[I]t has long been the practice in this Court, under the authority of Rule 26(a)(2)(C), to set a deadline in the case management order for plaintiff's designation of expert(s) and a deadline for defendant's designation of expert(s) thirty days after plaintiff's deadline." Where this practice has been changed, it should not be interpreted to allow for an entirely new designation as this practice is disfavored:

> The Court can foresee very few situations when a rebuttal witness designation would be necessary. In the vast majority of cases, a plaintiff has no reason to designate a new rebuttal expert after the defendant's expert is designated. Ordinarily, where rebuttal expert testimony is necessary, a plaintiff will choose to use the same expert that plaintiff originally designated to rebut the defendant's expert, in which case a new designation is unnecessary. Under these circumstances, the plaintiff's expert can simply supplement his report as required by Rule 26(e)(1). **Only when the defendant's expert raises new issues in his report that were not raised in the plaintiff's expert's report and the plaintiff must call a new expert to rebut that information is there a need for a rebuttal expert designation.** Because a new rebuttal expert designation by a plaintiff is rarely necessary, the Court sees no reason why it should depart from its customary practice regarding designation of experts.

*Id*. (emphasis added).

Consistent with this Court's logic in *Estate of Vaughn*, another decision from this district upheld the striking of an expert report from an entirely new rebuttal expert witness in *Shaidnagle v. Adams County, Miss.*, 2015 WL 72161, at *1, *4 (S.D. Miss. Jan. 6, 2015), overruling objections to 2014 WL 11427966, at *1. In *Shaidnagle*, the plaintiff designated an expert "in the field of suicide prevention within jails, prisons and juvenile facilities" and the expert opined that the plaintiff's decedent was a suicide risk at the time he committed suicide in a correctional facility.

7

2014 WL 11427966, at *1. When it came time to designate their experts, the defendants designated a psychiatrist who testified that the decedent was not, in fact, a suicide risk given the circumstances. *Id*. at *2. The plaintiff took the opportunity to designate a new "rebuttal" expert witness who they designated as "an expert in the field of suicide prevention within jails." *Id*. The defendants filed a motion to strike the new "rebuttal" expert on the basis that it was not timely since the plaintiff should have designated this witness as part of her original designation. *Id*. at *5.

The Magistrate Judge granted the motion, finding that the new expert did not offer an opinion on a subject matter raised for the first time by the defendants' expert. *Id*. The plaintiff's original expert had opined that the decedent was a suicide risk, while the defendants' expert had opined why the decedent was not a suicide risk. *Id*. The Magistrate Judge held that suicide risk was not a "new issue" raised by the defendants' expert that entitled them to offer an entirely new rebuttal expert. *Id*. Furthermore, the Magistrate Judge found that, even assuming it was a "new issue," the original expert should be qualified to render the rebuttal opinion: "[I]f qualified, the [original expert] should be just as capable as refuting any 'new issues' raised by [the defendants' expert's] written expert report as [the plaintiff's original expert] since both witnesses share the same field of expertise." *Id*. (citation omitted).

Thus, the new expert in *Shaidnagle* was not a "rebuttal expert" and the plaintiff's designation of the new expert was not timely under Fed. R. Civ. P. 26(a)(2)(D)(ii). *Id*. The District Judge agreed with the Magistrate Judge's rationale in granting the motion to strike the untimely "rebuttal" expert on the basis espoused by the Magistrate Judge's opinion. 2015 WL 72161, at *4 (denying objection to Magistrate's Judge's order granting motion to strike because record supported finding that suicide risk was not a new issue and that experts "were qualified in the same

field"). Although the plaintiff vigorously argued her new rebuttal expert was necessary because her new expert was a physician, while her original expert was not a physician, the District Judge noted that the two experts should have both been qualified to form the same opinion as the experts could develop their expertise "through different qualifications." *Id*., at *4.

As evidenced by the Court's opinion in *Shaidnagle*, untimely and improper "rebuttal" opinions from a new expert, especially when those opinions are meant to bolster or "come at" the central issue in another manner, should be excluded. The geocoding issue is in no way a new issue in this litigation. Dr. Ricchetti himself introduced the issue with his initial report, which was based on geocoding. Not only is Plaintiffs' designation of Dr. Frontiera as an entirely new "rebuttal" expert designation to bolster the original expert (who should be qualified to form the same opinion or perform the same analysis) a disfavored practice, *see Estate of Vaughn*, 2006 WL 1806454, at *1, but allowance of the testimony needlessly duplicates the rebuttal opinions of Dr. Ricchetti.

> **ii.    Dr. Ricchetti's statistical model, through use of geocoding roadblock locations, is a central issue upon which Dr. Ricchetti's original opinion was based, and his geocoding is not the proper subject of rebuttal testimony from Dr. Frontiera, an entirely new expert witness.**

Assuming Plaintiffs' designation of a new expert is consistent with both the terms of the stipulated scheduling order and this Court's ordinary practice, which Defendants deny, this Court should nevertheless exclude Dr. Frontiera's opinions because they are not the proper subject of "rebuttal" expert testimony. The inherent reliability of Dr. Ricchetti's statistical model through the use of geocoding is not a "new issue" raised for the first time in Mr. Funderburk's expert report. Although Plaintiffs assert that Dr. Frontiera's expert report is meant to respond to criticism of Mr. Funderburk, in essence, its primary function amounts to a de facto "supplement" of Dr. Ricchetti's original expert report. Dr. Frontiera's opinions are offered solely to bolster the original expert

report of Dr. Ricchetti, and are not the proper subject of a new "rebuttal" expert. They should therefore be exclude as untimely.

The Fifth Circuit defines "rebuttal" as "a term of art, denoting evidence introduced by a Plaintiff to meet new facts brought out in his opponent's case in chief." *Morgan v. Commercial Union Assur. Cos.,* 606 F2d 554, 555 (5th Cir. 1979). In *Morgan*, the Court affirmed the district court's exclusion of a non-disclosed witness the defendant sought to call at trial to impeach the plaintiff's claim that he had no back problems prior to an incident involving the defendant, holding that the defendant should have known that this claim would be part of the plaintiff's case in chief and identified the witness in the pretrial order. The Court concluded that "a . . . witness whose purpose is to contradict an expected and anticipated portion of the [opponent's] case in chief can never be considered a 'rebuttal witness,' or anything analogous to one." *Id.* at 556.

Here, Plaintiffs have offered Dr. Ricchetti's statistical model as part of their central argument in their motion for class certification (*i.e.*, alleged disparate roadblock placement equals evidence of intentional discrimination). In fact, Dr. Ricchetti's opinion on roadblocks is the only expert testimony Plaintiffs have offered in support of their claim that Sheriff Tucker maintains an official policy of discriminating against Blacks in Madison County. *See Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984). Plaintiffs should have been aware that challenging the reliability of Dr. Ricchetti's analysis, including the portion that utilizes geocoding, would be a central theme of Defendants' defense on class certification. The idea that the geocoding in Dr. Ricchetti's statistical model should be reliable is a front-and-center part of Dr. Ricchetti's expert opinion since the purpose of his analysis was "to assess whether there is a relationship between the location and frequency of the roadblocks and the percentage of the population that is Black in communities where roadblocks are set up," [Dkt. #231-1, ¶7], and his "geocoding analysis of the

location of the roadblocks corroborate[d]" his conclusion that the MCSD set up more roadblocks in "substantially" Black census tracts. [*Id*. at ¶10]. Dr. Ricchetti's report directly places at issue these topics, and Plaintiffs should not have the opportunity to bolster Dr. Ricchetti's original opinions about reliability and consistency because of their ultimate concerns that his opinions are methodologically flawed. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001) ("[F]airness does not require that a plaintiff, whose expert witness testimony has been found inadmissible under *Daubert*, be afforded a second chance to marshal other expert opinions and shore up his case.").

Why Plaintiffs needed to designate Dr. Frontiera to bolster the geocoding analysis found in Dr. Ricchetti's initial report is not clear, since Dr. Ricchetti doubles down on reliability of his geocoding analysis in his own expert rebuttal report. [Dkt. #302-2 at ¶¶ 51-60 (opining that data errors for purposes of his geocoding analysis does not affect his findings), ¶60-67 (addressing no change in his geocoding analysis when taking into account problematic addresses)]. If Dr. Ricchetti is not qualified or competent to defend his own geocoding analysis, that only shows the weakness of Dr. Ricchetti's initial statistical analysis, which relied, in large part, on geocoding.

Plaintiffs could not have been surprised when Defendants scrutinized Dr. Ricchetti's statistical model's utilization of geocoding and contended that his geocoding was not reliable. To remedy this ailment, Plaintiffs submitted a rebuttal expert report of Dr. Ricchetti, but now attempt to further bolster Dr. Ricchetti's geocoding analysis by utilizing another expert. Simply put, this is *not* proper expert rebuttal testimony under these circumstances and is an insufficient explanation for Plaintiffs failing to designate Dr. Frontiera as part of their initial expert designation. *See McReynolds v. Matthews,* 2017 WL 5573194, *3, *4 (S.D. Miss Nov. 20, 2017) (striking testimony

11

of purported rebuttal expert because testimony from defendant's expert could not have constituted new information establishing grounds for rebuttal).

Courts routinely hold that rebuttal expert testimony should be limited to "new unforeseen facts brought out in the other side's case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006) (citation omitted). *See United States v. Lamoreraux*, 422 F.3d 750, 755 (8th Cir. 2005) ("The principal objective of rebuttal is to permit a litigant to counter new, unforeseen facts brought out in the other side's case."). The reliability of Dr. Ricchetti's geocoding analysis is not a new issue and to the extent Dr. Frontiera's testimony parrots testimony provided by Dr. Ricchetti, it is improper rebuttal evidence and merely an attempt to bolster Dr. Ricchetti's original opinion as part of Plaintiffs' case in chief.

### B. Dr. Frontiera's expert opinion is not important to Plaintiffs' motion for class certification, and, if important, it constitutes an impermissible, untimely supplementation of Dr. Ricchetti's initial expert report.

The second *Hamburger* factor supports exclusion here. Plaintiffs find themselves between a proverbial rock and a hard place. On one hand, if Dr. Ricchetti is qualified and competent to perform the geocoding analysis he used to form his expert opinions in this matter, then he should be able to defend his own geocoding analysis in his own expert rebuttal opinion and explain how that analysis is reliable. He certainly seems to say that he is competent to address whether any "data errors" might have affected his analysis, since he concludes that they did not. [Dkt. #302-2 at ¶¶ 51-67]. To that extent, Dr. Frontiera's testimony is duplicative on the reliability of Dr. Ricchetti's analysis, is not important to Plaintiff's motion for class certification, and should be excluded consistent with the legal authorities cited above.[2] On the other hand, if Dr. Ricchetti is

---

[2] In *Dockery v. Fischer*, No. 3:13-cv-326-WHB-JCG, 2015 WL 12683196, at *1 (S.D. Miss. June 3, 2015), the court held that the duplicative nature of a "rebuttal" expert's opinion weighed in favor of striking an untimely rebuttal expert report. *Id.* at *3. In *Dockery*, "the experts whose methodology was challenged by [defendants' expert] ha[d] submitted a declaration refuting [the defendants' expert's]

12

not qualified or adept enough to perform a complex geocoding analysis, then Dr. Ricchetti's opinions should be excluded pursuant to Fed R. Civ. P. 702 and *Daubert*.  Plaintiffs cannot utilize Dr. Frontiera's testimony as a de facto supplement of Dr. Ricchetti's initial report in order to correct his lack of expertise and issues inherent in his original geocoding analysis.[3]  *See Kirola v. City and County of San Fran.*, No. C-07-3685 SBA (EMC), 2010 WL 373817, at *1 (N.D. Cal. Jan. 29, 2010) (holding that plaintiffs were not entitled to "re-do" their initial expert report under the basis that it constitutes proper rebuttal); *Companhia Energetica Potiguar v. Catterpillar, Inc.*, 14-CV-24277-M2016 WL 3102225, at *1, *6 (S.D. Fla. June 2, 2016) (noting that supplementation of a report is not allowed simply to remedy a deficient initial expert report); *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (holding that supplementation cannot make up for an expert's inadequate or incomplete preparation).  *See also Campbell v. United States*, 470 Fed. App'x 153, 157 (4th Cir. 2012) ("To construe supplementation [under Rule 26] to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert opinion preparation.").

In either instance, Plaintiffs' failure to designate Dr. Frontiera as an initial expert witness and produce a report from her in their initial designation requires her to be excluded as an expert witness in this matter.

### C. Defendants would suffer prejudice should Dr. Frontiera's expert report not be excluded.

---

opinions."  This Court noted that in such a scenario, where "the certification experts themselves have proffered explanations as to the reason [the defendants' expert's] opinions are allegedly flawed, [the rebuttal expert's] similar opinions are likely cumulative and, therefore, have minimal importance."  *Id.*

[3] Certainly, there are portions of Dr. Frontiera's opinion that seem to include material and analysis that should have been in Dr. Ricchetti's initial report. [Dkt. #302-3 at ¶26 (identifying, for the first time, the geocoding script and service Dr. Ricchetti's team utilized to geocode the roadblock locations with ArcGIS), ¶¶32-42 (explaining the use of match score and position accuracy in geocoding, two topics Dr. Ricchetti presumably is not qualified to discuss)].  Plaintiffs have offered no explanation why these opinions were not included in Dr. Ricchetti's initial report.

Plaintiffs were required to designate their experts on March 14, 2018, in this matter. [Dkt. #202, ¶ 1].  Defendants took the depositions of the expert witness designated by Plaintiffs, Dr. Bryan Ricchetti, and their non-expert Fed. R. Evid. 1006 witness, Dr. Rahul Guha, by traveling to Chicago, Illinois, and New York, New York, at their own expense.  Defendants then designated their three expert witnesses, one of whom was Dr. Dwight Steward, an economist/statistician, on May 8, 2018, after taking these depositions.  Defendants rightfully believed that the report of Dr. Ricchetti, along with his deposition, was the full basis (reliable or not) of his opinion.

With Plaintiffs' designation of Dr. Frontiera as a new "rebuttal" expert witness, Defendants are deprived of the ability to depose her since the original stipulated scheduling order does not contemplate discovery relating to new "rebuttal" experts.  Defendants have already endured the high costs of discovery in this matter. [Dkt. #290, at pp. 29-32 (describing the extensive discovery the parties have engaged in during the litigation of this suit)].  *See Dockery*, 2015 WL 12683196, at *1 (noting that prejudice would result to defendants in that they would be "deprived of any opportunity to conduct discovery as to the basis/substance of [the rebuttal expert's] opinions or to designate an expert to rebut those opinions"); *Bailey v. Stanley Access Techs., Inc.,* 3:14-CV-72-SA-JMV, 2015 WL 6828921, at *16, *17 (N.D. Miss. Nov. 6, 2015) ("[T]he Fifth Circuit has noted that a delay of even a few weeks in disclosing expert testimony disrupts the court's schedule and the opponent's preparation and, therefore, is prejudicial.") (citation omitted).  This factor clearly weighs against allowing Plaintiffs to designate Dr. Frontiera.

### D. Plaintiffs' failure to timely designate Dr. Frontiera should not result in a continuance of the class certification proceedings.

This Court wrote in *Robbins v. Ryan's Family Steak Houses East, Inc.*, 223 F.R.D. 448, 454 (S.D. Miss. 2004), that if other three factors "support striking an expert's designation, then a

district court is not required to continue a trial." *Id. See Francois v. Colonial Freight Systems, Inc.,* 3:06-cv-434-WHB-LRA, 2007 WL 4564866, at *1, *7 (S.D. Miss. Dec. 21, 2007) ("Since the first and third factors militate against permitting the [expert] testimony," plaintiff's expert witness should be barred from testifying at trial). The same logic should apply to a continuation of these class proceedings and a reopening of the class expert discovery process. Because such a continuance would almost certainly "result in additional expense in defending the lawsuit and would not serve to enforce local rules or court imposed scheduling order," Dr. Frontiera's expert report should be excluded. *Bailey*, 2015 WL 6828921, at *17. Because the first three factors support exclusion, the fourth factor is also satisfied, requiring Dr. Frontiera's expert report be excluded.

## CONCLUSION

For the above and foregoing reasons, Defendants move this Court to exclude the untimely and irrelevant report and opinions from Plaintiffs' proposed "rebuttal" expert, Dr. Patricia Frontiera, under Rule 26(a)(2)(D) and Local Rule 26 (a)(2).

This the 30th day of July, 2018.

        **MADISON COUNTY, MISSISSIPPI and SHERIFF RANDALL C. TUCKER, IN HIS OFFICIAL CAPACITY**

        BY: /s/ *Charles E. Cowan*

        OF COUNSEL:

        Michael B. Wallace (MSB #6904)
        Charles E. Ross (MSB #5683)
        James E. Graves (MSB #102252)
        Charles E. Cowan (MSB #104478)
        WISE CARTER CHILD & CARAWAY, P.A.
        Post Office Box 651
        Jackson, Mississippi 39205-0651
        Telephone: 601-968-5534

Facsimile: 601- 944-7738
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com

T. Russell Nobile (MSB #100682)
WISE CARTER CHILD & CARAWAY, P.A.
2510 14th Street, Suite 1125
Gulfport, Mississippi  39501
Telephone: 228-867-7141
Facsimile: 228-867-7142
trn@wisecarter.com

Rebecca B. Cowan (MSB #7735)
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Dr.
Jackson, Mississippi 39232
P.O. Box 750
Jackson, Mississippi 39205-0750
Telephone: 601-969-1010
Facsimile:  601-969-5120
bcowan@curriejohnson.com

Katie Bryant Snell (MSB# 103607)
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi 39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

J. Lawson Hester
Jason Edward Dare
PETTIS, BARFIELD & HESTER, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
Telephone: 601-987-5300
lhester@pbhfirm.com
jdare@pbhfirm.com

**CERTIFICATE OF SERVICE**

I, Charles E. Cowan, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

Joshua Tom, Esq.
American Civil Liberties Union of Mississippi Foundation
233 E. Capitol Street
Jackson, MS 39201
JTom@aclu-ms.org
PWu@aclu-ms.org

Jonathan K. Youngwood, Esq. (*pro hac vice*)
Janet A. Gochman, Esq. (*pro hac vice*)
Isaac Rethy, Esq. (*pro hac vice*)
Nihara K. Choudhri, Esq. (*pro hac vice*)
Kavitha Satya Sivashanker, Esq. (*pro hac vice*)
Brooke Jarrett, Esq. (*pro hac vice*)
Christopher K. Shields, Esq. (*pro hac vice*)
Simpson Thatcher & Bartlett, LLP
425 Lexington Avenue
New York, NY  10017
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
kavitha.sivashanker@stblaw.com
bonnie.jarrett@stblaw.com
christopher.shields@stblaw.com

Ezekiel Edwards, Esq. (*pro hac vice*)
Jeffery Robinson, Esq. (*pro hac vice)*
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
eedwards@aclu.org
jrobinson@aclu.org

So, certified this the 30th day of July, 2018.

                                                 /s/  *Charles E. Cowan*
                                                CHARLES E. COWAN