UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; HERBERT ANTHONY GREEN; KHADAFY MANNING; QUINNETTA MANNING; MARVIN MCFIELD; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and MADISON COUNTY SHERIFF'S DEPUTIES JOHN DOES #1 through #6, in their individual capacities,<br><br>    Defendants. | Civil Action No.<br>3:17-cv-00347-WHB-LRA<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION TO EXCLUDE THE REPORT
AND TESTIMONY OF WILLIAM R. FUNDERBURK**

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

AMERICAN CIVIL LIBERTIES UNION OF
    MISSISSIPPI FOUNDATION
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408

AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2610

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .....................................................................................................................................2

I. DEFENDANTS' OPPOSITION ONLY FURTHER CONFIRMS THAT MR. FUNDERBURK'S REPORT AND TESTIMONY DO NOT REFLECT THE USE OF RELIABLE PRINCIPLES AND METHODS .............................................2

   A. Mr. Funderburk Improperly Acted As A Mouthpiece For A Fact Witness In Rendering His Opinions ...................................................................................2

   B. Dr. Frontiera Concluded That Mr. Funderburk Did Not Apply A Proper Ground Truth Methodology And His Analysis Was Flawed .................................5

   C. Courts Consistently Find That An Expert's Transmission Of Unverified Statements From A Fact Witness Constitutes An Unreliable Methodology That Necessitates Exclusion .......................................................................7

II. MR. FUNDERBURK'S CONCLUSORY OPINIONS ARE UNRELIABLE AND DO NOT ASSIST THE TRIER OF FACT .......................................................................11

   A. Mr. Funderburk's Opinion Concerning The Geocoding Of Intersections Is Conclusory And Misleading .......................................................................11

   B. Mr. Funderburk's Unqualified And Conclusory Opinions On Dr. Ricchetti's Statistical Analysis Should Be Excluded ...........................................11

   C. Mr. Funderburk's Opinions Regarding Census Tract Boundary Issues Remain Unreliable .............................................................................................12

   D. Mr. Funderburk's Opinions Concerning Issues With Use Of A Match-Score Cutoff And Coordinate Reference Systems Are Misleading .....................13

CONCLUSION ...............................................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*Allamon v. Acuity Specialty Prod., Inc.*,
   No. 1:10-CV-294-TH, 2011 WL 13196209 (E.D. Tex. July 21, 2011) .................................13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ..............................................................................................................1

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
   705 F.3d 518 (5th Cir. 2013) .............................................................................................8, 9

*Hunt v. McNeil Consumer Healthcare*,
   297 F.R.D. 268 (E.D. La. 2014) ..................................................................................7, 8, 10

*MGM Well Servs., Inc. v. Mega Lift Sys., LLC*,
   No. Civ. A. H-05-1634, 2007 WL 150606 (S.D. Tex. Jan. 16, 2007) ............................4, 7, 10

*Modica v. Maple Meadows Homeowners Ass'n*,
    No. Civ. A. 13-0036, 2014 WL 1663150 (E.D. Pa. Apr. 2, 2014) .........................................10

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*,
   No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) ....................4, 6, 8, 10

*Stinson Air Ctr., LLC v. XL Specialty Ins. Co.*,
   No. SA-03-CA-61-FB, 2005 WL 5979096 (W.D. Tex. July 8, 2005) ................................4, 10

*United States v. Mejia*,
   545 F.3d 179 (2d Cir. 2008) ..................................................................................................8

**Rules**

Fed. R. Evid. 702 ................................................................................................................1, 10

Fed. R. Evid. 703 .......................................................................................................................7

Plaintiffs respectfully submit this Reply Memorandum of Law in further support of their Motion to Exclude the Report and Testimony of William R. Funderburk ("Motion").[1]

## PRELIMINARY STATEMENT

Mr. Funderburk relies upon unreliable principles and methodology and impermissibly transmits statements from a fact witness as his own expert testimony. Defendants' opposition cannot, and does not, show otherwise. Rather, Defendants now attempt to reconstruct Mr. Funderburk's analysis, claiming, for the first time, that Mr. Funderburk spent weeks reviewing Dr. Ricchetti's geocoded data and only used MCSD Deputy Rylon Thompson's interview as a "final" review to confirm Mr. Funderburk's prior findings. This after-the-fact manufacturing of Mr. Funderburk's methodology is not supported by Mr. Funderburk's Report or by his sworn deposition testimony. He previously testified that his sole source regarding certain alleged errors in the roadblock locations was Deputy Thompson. Defendants still provide no explanation for why several portions of Mr. Funderburk's Report repeat nearly *verbatim* the statements in the Thompson Declaration, or how Mr. Funderburk is independently qualified to opine on whether the roadblock locations provided in the MCSD data used by Dr. Ricchetti accurately reflect the purported "proper" roadblock locations. Yet, Defendants ask this Court to treat Mr. Funderburk's opinions as expert testimony. This is not permissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (Br. 9-14.)

In comparing Mr. Funderburk's Report and prior testimony to the statements in the Declaration he now files in opposition to the Motion (DX 1, "Mr. Funderburk's Declaration"), a

---

[1] Terms not defined herein are defined in Plaintiffs' opening brief ("Br. __"). Exhibits to the Motion are cited as "PX __"; and exhibits to Defendants' opposition are cited as "DX __." Defendants' opposition brief is cited as "Opp. __."

1

number of inconsistencies emerge. Mr. Funderburk previously testified, for example, that he never has used the method of relying on an interviewed subject's historical recollections to geocode locations in his scientific work. (Br. 13-14.) He now contradicts his prior sworn testimony to claim that geographers rely on this type of information "all the time." (Funderburk Decl. ¶ 4.) Defendants further misconstrue Dr. Frontiera's rebuttal opinions. Dr. Frontiera finds that ground truthing, *when performed properly*, can be used to verify the accuracy of geocoded results. (PX 2, Frontiera R.R. ¶ 48.) Here, as Dr. Frontiera concludes, Mr. Funderburk's interview of a fact witness does not constitute reliable ground truth validation. (*Id.* ¶¶ 53-57.)

Mr. Funderburk also provides numerous conclusory opinions that Dr. Ricchetti's analysis "may" contain errors, but Mr. Funderburk makes no attempt to quantify these supposed errors or ascertain how such errors impact Dr. Ricchetti's analysis. For instance, while Mr. Funderburk critiques any analysis of data involving roadblock locations located on census tract boundaries, if Mr. Funderburk had done appropriate testing, he would have found that any potential issues only made Dr. Ricchetti's results "if anything, more conservative." (Frontiera R.R. ¶ 89.) Defendants justify Mr. Funderburk's lack of analysis as him having no "burden" to perform such tests. But without showing how "alleged" errors affected Dr. Ricchetti's analysis, Mr. Funderburk only provides a number of misleading opinions that do not assist the trier of fact. Accordingly, Mr. Funderburk's Report and testimony should be excluded.

## ARGUMENT

**I.    DEFENDANTS' OPPOSITION ONLY FURTHER CONFIRMS THAT MR. FUNDERBURK'S REPORT AND TESTIMONY DO NOT REFLECT THE USE OF RELIABLE PRINCIPLES AND METHODS**

### A.    Mr. Funderburk Improperly Acted As A Mouthpiece For A Fact Witness In Rendering His Opinions

Defendants' opposition frames Mr. Funderburk's interview of a single fact witness as

2

reliable "ground truth validation," but Defendants cannot overcome the fact that Mr. Funderburk merely acted as the "mouthpiece" for MCSD Deputy Rylon Thompson's inadmissible hearsay statements. (Opp. 4-5.) Indeed, Mr. Funderburk testified that he had never used this methodology (*i.e.*, relying on an interviewed subject's historical recollection regarding coordinate locations) previously in his *scientific* work. (PX 4, Funderburk Tr. 26:5-9.) Yet, now, in an effort to avoid his opinions from being excluded and in direct contradiction to his prior testimony, Mr. Funderburk claims that "[g]eographers rely on first hand and eye witness accounts as primary sources of information in their research all the time." (Funderburk Decl. ¶ 4). Suffering from the same problems as Mr. Funderburk's Report, Mr. Funderburk's Declaration does not include any citations to any academic or other sources to support this blanket assertion (or any of the broad, unsupported conclusory assertions made therein), and it further improperly provides rebuttal expert testimony in the guise of a sworn declaration. Thus, it should be disregarded.

Defendants also argue that the declarations submitted by MCSD Lieutenant Mark Sandridge and Deputy Thompson are admissible, and thus, on that basis, Mr. Funderburk's reliance on Deputy Thompson was appropriate. (Opp. 6-7.) As Plaintiffs' opening brief states, however, even if Deputy Thompson's statements were "independently admissible," which they are not, they remain *inadmissible* as "substantive expert evidence" from Mr. Funderburk.[2] (Br. 11.) Tellingly, several paragraphs of Mr. Funderburk's *expert* report and the exhibits attached thereto regarding roadblock locations are *nearly identical* in substance to portions of the

---

[2] Notably, Defendants claim that the Thompson Declaration is part of the record (Opp. 6), but Defendants did not submit the Thompson Declaration in support of their Opposition to Plaintiffs' Motion for Class Certification. (ECF No. 267.) It was solely submitted in support of their motion to exclude the report and testimony of Dr. Bryan Ricchetti. (ECF No. 270.) Given the Thompson Declaration does not actually appear anywhere in the record on Plaintiffs' Motion for Class Certification, this further supports that Mr. Funderburk opinions reflect a clear attempt to couch a fact witness' statements as expert testimony.

Thompson Declaration and the Sandridge Declaration. (*Id.* 11 n.3.) Defendants avoid addressing this duplication in their opposition, providing no rationale for why statements from a fact witness should be allowed as expert testimony through a party's copy-and-paste job. Fifth Circuit courts consistently have found expert testimony unreliable in such circumstances. *See MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, No. Civ. A. H-05-1634, 2007 WL 150606, at *4 (S.D. Tex. Jan. 16, 2007) (excluding expert opinion that simply parroted a fact witness's statements); *Stinson Air Ctr., LLC v. XL Specialty Ins. Co.*, No. SA-03-CA-61-FB, 2005 WL 5979096, at *3 (W.D. Tex. July 8, 2005) (same).

Defendants further claim that Mr. Funderburk has "sworn" that the information from Deputy Thompson is the type of information experts rely on in his field. (Opp. 14.) Mr. Funderburk also testified, under oath, in his deposition that he had never used this methodology in his scientific work previously. (Funderburk Tr. 26:5-9.) Nevertheless, whether sworn or not, Mr. Funderburk's assertions that certain roadblock locations are incorrect are impermissible as expert opinions when such assertions simply have been parroted from a fact witness. *See Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1319553, at *9 (E.D. Tex. Apr. 10, 2017). Mr. Funderburk does not cite to any academic literature or publications for his contention that he may transmit information from Deputy Thompson as his own expert opinion. Rather, he asks this Court to simply take his word for it. Mr. Funderburk claims to have identified two "prominent" examples where geographers used first-hand witness accounts (Opp. 14) and he asserts that geographers use such fact witness recollections "all the time" (Funderburk Decl. ¶ 4), but he provides no sources for these claims.

For the first time in this action, Mr. Funderburk also maintains he performed a "complete review" of Dr. Ricchetti's geocoded data for "several weeks" before he met Deputy Thompson.

4

(Funderburk Decl. ¶¶ 5, 14; Opp. 4.) Mr. Funderburk now states that the interview with Deputy Thompson "allowed me to test and *confirm my initial findings* regarding the errors I identified in Dr. Ricchetti's geographic analysis." (Funderburk Decl. ¶ 16 (emphasis added).) Putting aside that these statements are not found in Mr. Funderburk's Report or his prior testimony, even if Mr. Funderburk engaged with the geocoded data prior to his meeting with Deputy Thompson, Mr. Funderburk testified that his sole source regarding alleged errors in the roadblock locations were based upon Deputy Thompson's identification of where such roadblocks they reviewed together purportedly occurred. (Funderburk Tr. 62:22-63:2.) Therefore, Mr. Funderburk could not have identified any such geocoding "errors" in Dr. Ricchetti's analysis prior to being fed this information by Deputy Thompson. In fact, beyond his single interview with Deputy Thompson, Mr. Funderburk did not consult anyone else at the MCSD or review any other information to identify the alleged "true" roadblock locations for his report. (*Id.* 16:7-13, 62:22-64:13, 88:7-15.) Ultimately, Deputy Thompson did not confirm anything in a "final review"—rather, he made assertions about roadblock locations that Mr. Funderburk then repeated in his report. (Opp. 5.)

### B. Dr. Frontiera Concluded That Mr. Funderburk Did Not Apply A Proper Ground Truth Methodology And His Analysis Was Flawed

Defendants' only argument that Mr. Funderburk applied a proper ground truthing methodology is a misreading of the opinions in the Frontiera Rebuttal. (Opp. 14-16.) As discussed at length in Plaintiffs' opening brief, Dr. Frontiera found that Mr. Funderburk did *not* apply a reliable and proper form of "ground truthing." (Br. 11-14.) Dr. Frontiera concluded that "[t]he ground truthing analysis conducted by Mr. Funderburk and Deputy Thompson was flawed" and inadequate, due to, among other reasons, that (i) Mr. Funderburk did not review a random sample of the geocoded locations with Deputy Thompson, and (ii) "Mr. Funderburk compared locations geocoded by Dr. Ricchetti to locations where Deputy Thompson believed the

5

roadblocks physically existed, not the physical locations on the ground representing the addresses in the *Compiled Unique Roadblocks*." (Frontiera R.R. ¶ 53.) Dr. Frontiera found that "[a]ny discrepancy in Dr. Ricchetti's analyses of this type would be due to imprecise address recording in the *Compiled Unique Roadblocks* [data]," not geocoding errors. (*Id*.)

Defendants argue that Dr. Frontiera "does not explain how she is in a better position than Mr. Funderburk to judge the quality of Deputy Thompson's knowledge and answers to Mr. Funderburk's ground truth questions." (Opp. 9.) This argument fundamentally misunderstands Dr. Frontiera's opinions. Dr. Frontiera explains that the exercise Mr. Funderburk undertook—in asking Deputy Thompson to identify based on his memory a non-random sample of roadblock locations—does not constitute valid ground truthing. (Frontiera R.R. ¶¶ 47-57; Br. 11-14.) While Mr. Funderburk opines that the data produced by the MCSD and analyzed by Dr. Ricchetti does not accurately reflect certain roadblock locations, his only basis for such critique is Deputy Thompson's statements. More specifically, regardless of Deputy Thompson's competency, Mr. Funderburk failed to apply reliable methods and instead turned another individual's statements into his own *expert* opinion. *See Robroy*, 2017 WL 1319553, at *9.

Defendants further ignore Dr. Frontiera's critique that Mr. Funderburk did not apply proper ground truthing methods because he did not use a random sample creating "statistical bias." (Frontiera R.R. ¶¶ 49, 53-54.) Defendants associate scientific random sampling with how efficiently Mr. Funderburk reviewed the data or as impacting the number of errors he may have identified. (Opp. 16.) For Mr. Funderburk's opinions to constitute valid, reliable expert testimony, however, Mr. Funderburk should have used a random sample to ensure his critique was representative of the data set as a whole, rather than a few select locations Deputy Thompson purposefully chose for Mr. Funderburk's review. (Frontiera R.R. ¶¶ 49, 60.)

Defendants claim that Dr. Frontiera establishes that ground truthing is "necessary" for the geocoding analysis (Opp. 15 n.11), but Dr. Frontiera never asserts that such an analysis should have been performed by Dr. Ricchetti. Dr. Frontiera only states that ground truthing is a "widely used method for evaluating the accuracy and precision of geocoded results." (Frontiera R.R. ¶ 48.)[3] Dr. Frontiera does explain that ground truthing can be accomplished by "a person with first-hand knowledge of the location of the roadblocks." (Frontiera R.R. ¶ 52.) As Defendants admit, however, Deputy Thompson did not have first-hand knowledge of all of the MCSD roadblocks as he was not present at all of them, but he apparently could surmise their locations based on "knowledge of the routine practice of the MCSD." (Opp. 13 n.10.) Defendants claim this failure is "immaterial" (Opp. 13 n.10), but it is material to whether Mr. Funderburk used a reliable ground truthing methodology, which he did not. (Frontiera R.R. ¶ 56.)

## C. Courts Consistently Find That An Expert's Transmission Of Unverified Statements From A Fact Witness Constitutes An Unreliable Methodology That Necessitates Exclusion

Courts in the Fifth Circuit routinely exclude expert opinions that simply transmit information from other sources. *See, e.g.*, *Hunt v. McNeil Consumer Healthcare*, 297 F.R.D. 268, 275 (E.D. La. 2014) (rejecting an expert opinion that merely parroted the opinions of other experts); *MGM Well Servs., Inc.*, 2007 WL 150606, at *4 (disallowing an expert opinion that was based almost entirely on an interested party's account). Federal Rule of Evidence 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions

---

[3] In addition, Dr. Ricchetti manually checked all of the roadblock locations in the CAD data produced by Defendants to identify cases where the census tract classification may have changed, whether due to geocoding error or errors in the data. In conducting this sensitivity analysis, Dr. Ricchetti found that "[i]n all cases, [his] results are unchanged." (PX 3, Ricchetti R.R. § 3.2, ¶¶ 61-67.) Defendants conveniently ignore this analysis in their opposition.

7

the expert purports to base his opinion." *Robroy*, 2017 WL 1319553, at *9 (excluding expert's opinion that simply relayed deposition testimony). Expert reports must demonstrate independent analysis beyond repeating information gleaned from other sources. *See United States v. Mejia*, 545 F.3d 179, 197-98 (2d Cir. 2008) (reversing verdict after expert improperly repeated information he learned from witnesses to the jury).

Mr. Funderburk has done exactly that. Deputy Thompson informed Mr. Funderburk of certain roadblock locations that apparently contradicted Defendants' own data (*i.e.*, data produced by the MCSD). Mr. Funderburk then regurgitated Deputy Thompson's statements to conclude that Dr. Ricchetti's analysis therefore must be flawed. Mr. Funderburk "did not analyze his source materials so much as repeat their contents." *Mejia*, 545 F.3d at 198. Defendants do not refute, nor can they, that Mr. Funderburk relied on Deputy Thompson's account of purported accurate roadblock locations without consulting any other source in advance of finalizing his report.[4] (Funderburk Tr. 16:7-13, 62:22-64:13, 88:7-15.) Rather, Defendants now contend that fact witness interviews are the type of information experts reasonably rely on in Mr. Funderburk's field. However, Mr. Funderburk did not "undertake the kind of independent evaluation that *Daubert* and Rule 702 require." *Hunt*, 297 F.R.D. at 275. Instead, he simply relayed unverified information from an external source.

Defendants' sole reliance on *Factory Mutual* is inapposite. The testimony the court found

---

[4] *See supra* Section I(A). Defendants on rebuttal cannot craft a new argument that Mr. Funderburk used Deputy Thompson's information only to "confirm and illustrate" the findings Mr. Funderburk "formulated from his review of the data long before he ever met Deputy Thompson." (Opp. 12.) Defendants have not provided any source, other than Deputy Thompson, for Mr. Funderburk's conclusions regarding the purported accuracy of certain roadblock locations. While Defendants mention the Sandridge Declaration in passing (Opp. 6-7), Mr. Funderburk only reviewed that *after* he had completed his report. (Funderburk Tr. 88:7-15.) Thus, Mr. Funderburk's opinions regarding certain purported geocoding errors are derived from the claimed "first-hand" knowledge of Deputy Thompson, as evidenced by the nearly verbatim language in Mr. Funderburk's Report and the Thompson Declaration.

ultimately admissible in that case is not equivalent to what Mr. Funderburk did in this case. There, in order to calculate the depreciation levels of equipment at a waste treatment facility, the expert appraiser, among other things, had used this precise methodology in the past, educated witnesses on how to calculate depreciation prior to interviewing them, and interviewed several witnesses who had first-hand knowledge of the facility. *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524-25 (5th Cir. 2013). In contrast, here, Mr. Funderburk has not previously used this methodology in his prior scientific work, he did not educate Deputy Thompson on the importance of the relationship between roadblock locations and census tract boundaries, he relied on an account by a witness who was not physically present at every MCSD roadblock location, and he took no steps to independently verify or investigate the information provided by Deputy Thompson. (Br. 12-14.) Even more importantly, the methodology employed by an appraiser of equipment destroyed in an explosion cannot be directly applied to Mr. Funderburk's expert opinion as a geographer on the geocoded placement of MCSD roadblocks. Regardless, the *Factory Mutual* court explained that an expert must do "more than just repeat information gleaned from external sources," which Mr. Funderburk failed to do here. 705 F.3d at 525.

Further, it is telling that Defendants rely solely on this single case cited by Plaintiffs in opposing Plaintiffs' Motion, spending pages of their opposition attempting to show that Mr. Funderburk's testimony is analogous to the expert testimony presented in that case. (Opp. 12-14.) Defendants fail to identify any other cases in this Circuit or otherwise to support their argument that Mr. Funderburk is permitted to relay a fact witness' account without any independent analysis as his own expert opinion. That is because the controlling precedent is abundantly clear that an expert may not simply transmit statements from fact witnesses as expert testimony. (Br. 9-11.) Mr. Funderburk's Report and opinions should be excluded on this basis.

Defendants also attempt to distinguish Plaintiffs' cases by arguing the experts there summarized different source material, such as deposition testimony in *Modica v. Maple Meadows Homeowners Ass'n*, No. Civ. A. 13-0036, 2014 WL 1663150 (E.D. Pa. Apr. 2, 2014) or other experts' opinions in *Hunt*, 297 F.R.D. at 275.[5] But the underlying source of the information is not the pertinent question. An expert cannot act as a mouthpiece for any information, regardless of the source, without applying an independent analysis to the content. *See Hunt*, 297 F.R.D. at 275. Moreover, courts are particularly skeptical when experts rely on and summarize "evidence proffered by the party that hired him." *See Robroy*, 2017 WL 1319553, at *9. In *Stinson Air*, for example, the court found expert testimony unreliable where the expert failed to conduct any independent review of the information and instead relied on the "representations of a party with an interest in the outcome of th[e] lawsuit." 2005 WL 5979096, at *3. Similarly, in *MGM Well Servs., Inc.*, the defendant's expert based his opinions "almost entirely" on information from "an interested party" as opposed to his own "independent evaluation of the information." 2007 WL 150606, at *4. In excluding thef expert's report and testimony, the court emphasized that the expert did not perform his own calculations, but simply opined that plaintiff's account was incorrect "because [the interested party] told him so." *Id.* Mr. Funderburk did the same here, concluding that certain of Dr. Ricchetti's geocoded locations were

---

[5] Defendants argue *Robroy*, 2017 WL 1319553, and *Modica*, 2014 WL 1663150, do not apply, since in those cases, the expert was unqualified or the testimony was not proper expert testimony under Federal Rule of Evidence 702, respectively. (Opp. 11, 12 n.9.) However, in both cases, the court specifically stated there were multiple reasons to exclude the expert testimony. *See Robroy*, 2017 WL 1319553, at *8 ("There are *several* problems with [the expert's] prospective testimony") (emphasis added); *Modica*, 2014 WL 1663150 at *1 n.3 ("[The expert's testimony] is inadmissible for *three* reasons") (emphasis added). Both cases clearly hold that one reason to exclude an expert opinion is that the expert simply relays information from other sources, as Mr. Funderburk has done here. Thus, while there may be multiple reasons to exclude an expert opinion, one alone suffices. *See, e.g.*, *Hunt*, 297 F.R.D. at 275 (excluding expert opinion solely on the basis that it parroted other sources).

10

wrong because Deputy Thompson told him so.

## II. MR. FUNDERBURK'S CONCLUSORY OPINIONS ARE UNRELIABLE AND DO NOT ASSIST THE TRIER OF FACT

### A. Mr. Funderburk's Opinion Concerning The Geocoding Of Intersections Is Conclusory And Misleading

Defendants assert that Plaintiffs mischaracterized Mr. Funderburk's opinion concerning the geocoding of intersections, but, in fact, Mr. Funderburk provides the misleading opinion that one "would not be able to accurately geocode roadblocks near an intersection or an approaching street with intersection-only address information." (PX 1, Funderburk Rep. ¶ 15.) Defendants argue that since Dr. Ricchetti "only geocoded the centerlines of intersections," his analysis only reflects the relationship between "race and nearby intersections" and not "race and true roadblock location[s]." (Opp. 17.) But Defendants and Mr. Funderburk fail to recognize that any roadblock not near a census border is completely unaffected by this critique. (*See* Frontiera R.R. ¶ 92; Ricchetti R.R. ¶ 60.) For roadblocks well within a single census tract, precision is not required for accuracy, as even if the roadblock was located several "feet out from the intersection" (Funderburk Rep. ¶ 15), the census tract assignment remains the same. (Frontiera R.R. ¶ 92.) In fact, the "vast majority" of intersections in the data "can be cleanly delineated into individual census tracts." (Ricchetti R.R. ¶ 3.) Once again, Mr. Funderburk's misstatements concerning geocoding intersections appears to stem from his "lack of familiarity with the academic literature surrounding geocoding best practices." (Frontiera R.R. ¶ 10.)

### B. Mr. Funderburk's Unqualified And Conclusory Opinions On Dr. Ricchetti's Statistical Analysis Should Be Excluded

Defendants admit that they did not designate Mr. Funderburk as a statistical expert, but try to get around his lack of qualification by claiming that he "is not offering an opinion on statistics." (Opp. 18.) Defendants claim that "[g]eocoding is the basis for Dr. Ricchetti's

11

regression analysis; therefore, if the geocoding is inaccurate it naturally follows that Dr. Ricchetti's statistical analysis is based on unreliable information." (*Id.* 3.) However, Defendants provide no support, legal or otherwise, for why Mr. Funderburk apparently is broadly "qualified to opine about the effect ... errors in a geographic analysis would have on *any* analysis of that geographic analysis." (*Id.* 18 (emphasis added).) Mr. Funderburk did not conduct any analysis to support a conclusion that any supposed errors in the geographic analysis would render Dr. Ricchetti's statistical analyses invalid, and Defendants acknowledge that Mr. Funderburk does "not offer any statistical analysis in his report." (*Id.*) Mr. Funderburk's summary assertion that "the geographic analyses are the premise to the statistical argument," and so the statistical analyses are invalid "as well" must be excluded as unreliable. (Funderburk Rep. § 5; Br. 21.)

### C. Mr. Funderburk's Opinions Regarding Census Tract Boundary Issues Remain Unreliable

Mr. Funderburk claims Dr. Ricchetti "did not properly assign roadblocks to census tracts" (Funderburk Rep. ¶ 56). But instead of conducting any analysis to evaluate the effect of census tract boundary issues on Dr. Ricchetti's analysis, Dr. Funderburk summarily concludes that "some straddling roadblocks … *can* have profound impacts on the number of roadblocks per census tract." (*Id.* ¶ 53 (emphasis added).) Indeed, Defendants' opposition confirms that Mr. Funderburk conducted no analysis to test the impact of potential census tract boundary issues. (Opp. 19-20). Rather, Defendants offer that Mr. Funderburk "could have done more to quantify or test the impact that this error had on Dr. Ricchetti's regression analysis," and then make a circular argument that Mr. Funderburk did not have to undertake such testing, as Defendants do not bear the burden of demonstrating the inadmissibility of Dr. Ricchetti's analysis. (*Id.* 19.) Yet, Defendants are seeking to exclude Dr. Ricchetti's opinions based, in part, on Mr. Funderburk's Report and testimony. (ECF No. 270.) Without Mr. Funderburk "doing more," Mr. Funderburk's

12

opinions provide no reliable information, other than his cursory conclusion that there *could* be issues with the census tract boundary issues and those *could* impact Dr. Ricchetti's analysis.

In contrast, Dr. Frontiera did conduct the pertinent testing, performing a spatial selection analysis to evaluate the effect of the census tract boundaries on Dr. Ricchetti's analysis and finding that Dr. Ricchetti's analysis was "if anything, more conservative," as "there were more roadblocks that could have been assigned to tracts with a higher black population than roadblocks that could have been assigned to tracts with a lower black population." (Frontiera R.R. ¶¶ 76, 81, 88-89.) As Dr. Frontiera explains, "[d]ata collected within and aggregated to census tracts are widely used in research to assess the socio-economic characteristics of populations within a study area." (*Id.* ¶ 70.)

Defendants contend that Mr. Funderburk did not have the "burden to quantify Dr. Ricchetti's errors" (Opp. 20), but without a quantification of the effect of deviations in the precision of roadblock locations on census tract assignment, the fact finder is left with nothing from Mr. Funderburk except his misleading and unreliable *ipse dixit* assertions. *See Allamon v. Acuity Specialty Prod., Inc.*, No. 1:10-CV-294-TH, 2011 WL 13196209, at *6 (E.D. Tex. July 21, 2011) (excluding an expert opinion that was "nothing more than his *ipse dixit*").

### D. Mr. Funderburk's Opinions Concerning Issues With Use Of A Match-Score Cutoff And Coordinate Reference Systems Are Misleading

As set forth in Plaintiffs' opening brief, Mr. Funderburk's conclusions regarding the use of a match-score cutoff are misleading. (Br. 19-20.) He simply "believe[s]" that Dr. Ricchetti's methods "*might* have actually injected more error into the data." (Funderburk Rep. ¶ 32 (emphasis added).) Once again, Mr. Funderburk provides no quantification of such purported error. Instead of addressing Mr. Funderburk's inability to provide a reliable critique of Dr. Ricchetti, Defendants claim the only basis to strike Mr. Funderburk's testimony is that "Dr.

13

Frontiera disagrees with him." (Opp. 20.) Yet, Defendants do not refute the fact that Dr. Frontiera provides evidence from several academic sources to demonstrate that Dr. Ricchetti's threshold of ninety is "conservatively high" by comparison. (Frontiera R.R. ¶¶ 13, 36.) And Mr. Funderburk fails to offer a match-score cutoff that Dr. Ricchetti should have used. Therefore, Mr. Funderburk's vague assertions that a ninety match-score threshold *might* have caused problems should be excluded as unreliable and misleading. (Br. 19-20.)

Mr. Funderburk's opinion regarding coordinate reference systems similarly is misleading. Once again, Mr. Funderburk summarily contends that there could be issues with the coordinate reference systems. (Funderburk Rep. ¶ 71 ("[T]hese technical issues *may* [sic] me even greater concern.") (emphasis added).) His summary conclusion again fails to quantify or explain what error would result. Defendants' opposition confirms Mr. Funderburk's lack of quantification. (Opp. 21.) In comparison, Dr. Frontiera explained that there are two widely used families of datum as coordinate reference systems: NAD83 and WGS84. (Frontiera R.R. ¶ 63.) She states that "it is common practice to treat [the two] geographic coordinates as though they were referenced to the same coordinate reference system." (*Id.* ¶ 64.) Thus, Dr. Frontiera explains, any coordinate reference system differences "did not play a significant role in Dr. Ricchetti's analysis." (*Id.* ¶ 68.) Instead of offering evidence of any errors in Dr. Ricchetti's analysis, Mr. Funderburk merely concluded errors could potentially exist. Mr. Funderburk's opinions are nothing more than a collection of possible errors that he believes "may," "might," or "can" happen. Since he does not provide any evidence that Dr. Ricchetti's results actually were flawed, Mr. Funderburk's Report does not assist the Court and his opinions should be excluded.

## CONCLUSION

For all of these reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion and exclude Mr. Funderburk's Report and testimony.

Dated: August 17, 2018

By: /s/ *Joshua Tom*
    Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Christopher K. Shields (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
christopher.shields@stblaw.com
bonnie.jarrett@stblaw.com

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice*)
Jeffery Robinson (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2018, I caused the foregoing **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF WILLIAM R. FUNDERBURK** to be electronically filed with the Clerk of the Court using the CM/ECF system, through which copies have been served to:

WISE CARTER CHILD & CARAWAY, P.A.
Michael B. Wallace (Miss. Bar No. 6904)
Charles E. Ross (Miss. Bar No. 5683)
James E. Graves (Miss. Bar No. 102252)
Charles E. Cowan (Miss. Bar No. 104478)
T. Russell Nobile (Miss. Bar No. 100682)
Post Office Box 651
Jackson, MS 39205
(601) 968-5534
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com
trn@wisecarter.com

CURRIE JOHNSON & MYERS, P.A.
Rebecca B. Cowan (Miss. Bar No. 7735)
P.O. Box 750
Jackson, MS 39205
(601) 969-1010
bcowan@curriejohnson.com

KATIE BRYANT SNELL, PLLC
Katie Bryant Snell (Miss. Bar No. 103607)
P.O. Box 3007
Madison, Mississippi 39130-3007
(601) 460-9800
Katie@katiebryantsnell.com

PETTIS, BARFIELD & HESTER, P.A.
J. Lawson Hester (Miss. Bar No. 2394)
Jason E. Dare (MSB No. 100973)
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
(601) 987-5300
lhester@pbhfirm.com
jdare@pbhfirm.com

*/s/ Joshua Tom*
Joshua Tom