UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; HERBERT ANTHONY GREEN; KHADAFY MANNING; QUINNETTA MANNING; MARVIN MCFIELD; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and MADISON COUNTY SHERIFF'S DEPUTIES JOHN DOES #1 through #6, in their individual capacities,<br><br>    Defendants. | Civil Action No.<br>3:17-cv-00347-WHB-LRA<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE DESIGNATION OF
<u>REBUTTAL EXPERT WITNESS ROBERT MCNEILLY</u>**

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

AMERICAN CIVIL LIBERTIES UNION OF
   MISSISSIPPI FOUNDATION
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408

AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street
New York, NY 10004
(212) 549-2610

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

I.   THE MCNEILLY REBUTTAL IS TIMELY PURSUANT TO THE PLAIN
     TERMS OF THE FEBRUARY 27 SCHEDULING ORDER ........................................... 3

II.  EVEN IF THE MCNEILLY REBUTTAL IS CONSIDERED UNTIMELY,
     THERE IS JUST CAUSE FOR ADMITTING IT ............................................................ 6

     A.   Plaintiffs Had Good Reason To Submit The McNeilly Rebuttal On
          July 2, 2018 ............................................................................................................. 7

     B.   The McNeilly Rebuttal Is Relevant And Important ............................................... 7

     C.   Defendants Will Not Be Prejudiced By Admission Of The
          McNeilly Rebuttal ................................................................................................. 10

     D.   The Fourth *Hamburger* Factor Is Inapplicable Because There Is No
          Potential Prejudice to Defendants ......................................................................... 12

CONCLUSION ............................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Cases**

*Allen v. Muskogee*,
    119 F.3d 837 (10th Cir. 1997) ................................................................................................ 8

*Bah v. City of New York*,
    No. 13-CV-6690 (PKC), 2017 WL 435823 (S.D.N.Y. Jan. 31, 2017) .................................... 9

*Century Indem. Co. v. Marine Group, LLC*,
    No. 3:08-CV-1375-AC, 2015 WL 5521986 (D. Ore. Sept. 16, 2015) ..................................... 4

*Escobar v. City of Houston*,
    No. CIV.A 04-1945, 2007 WL 2900581 (S.D. Tex. Sept. 29, 2007) ...................................... 8

*Hamburger v. State Farm Mut. Auto. Ins. Co.*,
    361 F.3d 875 (5th Cir. 2004) ................................................................................................... 7

*Hostetler v. Dillard*,
    No. 3:13CV351-WHB-RHW, 2014 WL 11514964
    (S.D. Miss. Aug. 29, 2014) ............................................................................................ 4, 6, 7

*McReynolds v. Matthews*,
    No. 1:16-CV-318-HSO-MTP, 2017 WL 5573194 (S.D. Miss. Nov. 20, 2017) ...................... 5

*Midwest Feeders, Inc. v. Bank of Franklin*,
    No. 5:14cv78-DCB-MTP, 2016 WL 4074432 (S.D. Miss. July 29, 2016) ............................. 7

*Moreno v. Northside I.S.D.*,
    No. SA-11-CV-746-XR, 2013 WL 3716531 (W.D. Tex. July 12, 2013) ................................ 8

*Morgan v. Commercial Union Assur. Companies*,
    606 F.2d 554 (5th Cir. 1979) ................................................................................................... 6

*Russo v. City of Cincinnati*,
    953 F.2d 1036 (6th Cir. 1992) ................................................................................................. 8

*Sanders-Burns v. City of Plano*,
    594 F.3d 366 (5th Cir. 2010) ................................................................................................... 8

Plaintiffs Latoya Brown, Lawrence Blackmon, Khadafy Manning, Quinnetta Manning, Nicholas Singleton, Steven Smith, Bessie Thomas, and Betty Jean Williams Tucker ("Plaintiffs") respectfully submit this memorandum in opposition to Defendants' Motion To Exclude Plaintiffs' Untimely [Dkt. #304-4] Designation of Robert McNeilly As New Expert Witness (ECF No. 320) ("Motion")[1] in this civil rights action brought against defendants Madison County, Mississippi ("Madison County") and Sheriff Randall Tucker, sued herein in his official capacity ("Sheriff Tucker," and with Madison County, "Defendants"). Pursuant to L.U. Civ. R. 7(b)(6)(A), Plaintiffs respectfully request oral argument on Defendants' Motion.[2]

## PRELIMINARY STATEMENT

Once again, Defendants have filed a baseless procedural motion in an attempt to avoid engaging on the merits of Plaintiffs' claims that the Madison County Sheriff's Department ("MCSD") is engaged in unconstitutional racially discriminatory policing. Defendants' Motion improperly seeks to exclude as untimely the Rebuttal Expert Report of Chief Robert McNeilly (ECF No. 304-4) ("McNeilly Rebuttal" or "McNeilly R.R."), even though the McNeilly Rebuttal was filed within the deadline plainly set forth in the Court's February 27, 2018 Scheduling Order (ECF No. 202, "February 27 Scheduling Order"). Chief McNeilly, the former chief of police of the Pittsburgh Bureau of Police and a law enforcement expert with over four decades of experience, submitted a rebuttal expert report disputing the rose-colored assessment of the MCSD's policies presented by Defendants' proffered expert, Mark Dunston. The McNeilly Rebuttal provides robust expert analysis explaining that, contrary to Chief Dunston's assertions,

---

[1] Citations to "Defs.' Br." refer to Defendants' "Memorandum in Support of Motion to Exclude Plaintiffs' Untimely [Dkt. #304-4] Designation of Robert McNeilly as New Expert Witness." (ECF No. 321).

[2] Because the issues presented by this Motion overlap with the issues presented by Plaintiffs' pending Motion for Class Certification (ECF No. 231, "Motion for Class Certification"), Plaintiffs request that argument on the instant Motion be held jointly with argument on the Motion for Class Certification.

1

the MCSD's policies are substandard and these deficiencies create an environment in which racial discrimination is more likely to occur. (McNeilly R.R. ¶ 20.)

Disregarding the express language of the February 27 Scheduling Order, Defendants incorrectly claim that the McNeilly Rebuttal should have been submitted along with Plaintiffs' Motion for Class Certification and prior to the Dunston report it directly rebuts. Even assuming Defendants' interpretation of the February 27 Scheduling Order is somehow correct, however, the McNeilly Rebuttal should be admitted for just cause because it is a rebuttal report that logically should be filed after the report it rebuts, it is relevant and important to the central issue of this case (*i.e.*, whether Defendants are engaged in discriminatory policing practices), and Defendants will suffer absolutely no prejudice if the McNeilly Rebuttal is admitted.

Thus, for all of the foregoing reasons and those set forth herein, the Court should deny Defendants' Motion.

## BACKGROUND

On July 2, 2018, Plaintiffs submitted the McNeilly Rebuttal as an exhibit to and in support of Plaintiffs' Reply Memorandum in Further Support of the Motion for Class Certification (ECF No. 304). Robert McNeilly is a law enforcement expert, with four decades of policing experience. Notably, Chief McNeilly served as chief of police of the Pittsburgh Bureau of Police from 1996 to 2006. (McNeilly R.R. ¶ 4.) He currently works as a consultant and as a monitor for the U.S. Department of Justice consent decree covering the New Orleans Police Department. (*Id.* ¶¶ 1-2.) The McNeilly Rebuttal directly responds to opinions expressed in the Report of Mark Dunston (ECF No. 267-13, "Dunston Report"), which Defendants submitted in connection with their Response to Plaintiffs' Motion for Class Certification (ECF No. 267). In particular, Chief McNeilly explains his disagreement with Chief Dunston's opinion that the

MCSD's policies and practices are adequate and operationally sound. Chief McNeilly summarizes his findings as follows:

> After reviewing the materials and Chief Dunston's Report, I disagree with Chief Dunston's opinions regarding the [MCSD's] policies, procedures, and practices. Chief Dunston stated that MCSD's policies were sufficient as long as the policies themselves do not specifically violate explicit legal requirements, and are consistent with Chief Dunston's view of "generally accepted policing practices," a standard that Chief Dunston does not explain in his report and that seems to reflect his overall sense of policing practices in Mississippi law enforcement agencies. *See* Dunston Tr. 39:14-40:4. I disagree. There are best practices and there are substandard practices. All law enforcement agencies should comply with best practices. I conclude that the MCSD does not employ best practices for written policies, training, supervision (including the lack of an early intervention system), non-biased policing (including inadequate community policing), complaints/internal affairs investigations, roadblocks, pedestrian stops, home entry, record-keeping and forms. In my expert opinion, the policies, practices, and procedures of the [MCSD], as well as the attitudes expressed by senior management of the department, are indicative of an environment that turns a blind eye to and fosters biased policing.

(McNeilly R.R. ¶ 20.) Drawing on his extensive law enforcement experience as well as his review of national policing standards, Chief McNeilly provides a robust analysis contradicting and rebutting Chief Dunston's opinions. The McNeilly Rebuttal demonstrates that the MCSD's policies and practices are deficient in several respects and that these deficiencies can create conditions conducive to racial discrimination.

## ARGUMENT

### I. THE MCNEILLY REBUTTAL IS TIMELY PURSUANT TO THE PLAIN TERMS OF THE FEBRUARY 27 SCHEDULING ORDER

The February 27 Scheduling Order expressly permitted the McNeilly Rebuttal to be filed on July 2, 2018. The February 27 Scheduling Order states: "The deadline for submission of (i) Plaintiffs' reply brief in further support of Plaintiffs' motion for class certification and (ii) ***any rebuttal expert reports*** and/or declaration on behalf of Plaintiffs, and related disclosures, will be July 2, 2018." (Sched. Order ¶ 6 (emphasis added).) Plaintiffs timely submitted the McNeilly

Rebuttal on the deadline established in the Scheduling Order. Accordingly, Defendants' Motion to exclude the McNeilly Rebuttal should be denied on this basis alone.

Defendants' Motion does not explain why the deadline set forth in paragraph 6 of the February 27 Scheduling Order does not apply to the McNeilly Rebuttal. Defendants do not dispute, nor could they, that the McNeilly Rebuttal seeks to rebut the Dunston Report. Instead, Defendants simply assume that the deadline set for rebuttal expert reports applies only to experts who previously submitted reports in support of Plaintiffs' opening papers on the Motion for Class Certification. This interpretation, however, is not supported by the February 27 Scheduling Order, as it is inconsistent with the plain language of paragraph 6 that clearly sets the deadline for "any rebuttal expert reports" as July 2, 2018.

Federal Rule of Civil Procedure 26(a)(2) "does not distinguish between initial and rebuttal experts and imposes no requirement that a rebuttal expert also have been an initially disclosed expert." *Century Indem. Co. v. Marine Group, LLC*, No. 3:08-CV-1375-AC, 2015 WL 5521986, at *2 (D. Ore. Sept. 16, 2015). Courts in this District also impose no such requirement. For example, in *Hostetler v. Dillard*, the plaintiffs' deadline for designating experts was June 2, 2014 and the defendants' deadline was July 2, 2014. No. 3:13CV351-WHB-RHW, 2014 WL 11514964, at *1 (S.D. Miss. Aug. 29, 2014). On June 2, 2014, the plaintiffs designated Tim Pepper, an appraiser, as an expert. *Id.* On July 2, 2014, the defendants designated a tax expert, Janet Clark, CPA, as their expert. *Id.* On August 4, 2014, the plaintiffs designated their own tax expert, John Paris, a CPA, to rebut the testimony of defendants' tax expert (Ms. Clark). *Id.* The defendants argued that Mr. Paris's report was untimely because the plaintiffs should have designated him on June 2, 2014, which was the deadline for filing initial expert reports. *Id.* The court rejected the defendants' argument, finding that Mr. Paris was properly designated as an

4

expert insofar as Mr. Paris "is a rebuttal expert, designated for the limited purpose of contradicting or rebutting Clark's opinion" on tax issues. *Id.* at *2. Similarly, here, Plaintiffs were entitled to submit a rebuttal report from a new expert to address opinions about policing standards asserted for the first time by Defendants' policing expert.

Defendants argue that Chief McNeilly is not a proper rebuttal expert because (i) he touches on issues that are "essential, if not the only element of Plaintiffs' case," and (ii) essential elements of claims are not "proper grounds for a rebuttal." (Defs.' Br. 5 (citing *McReynolds v. Matthews*, No. 1:16-CV-318-HSO-MTP, 2017 WL 5573194, at *3, *4 (S.D. Miss. Nov. 20, 2017)).) Defendants claim that Plaintiffs should have anticipated the Dunston Report by disclosing a policing expert on the March 14, 2018 initial report deadline. But Defendants' reliance on *McReynolds*, a ruling arising in the summary judgment context, is misplaced. In *McReynolds*, a plaintiff seeking attorneys' fees as damages failed to retain an initial expert to establish that her fees were reasonable in the summary judgment context, even though a fundamental element of such a claim under Mississippi law is that the party seeking the fee must prove the reasonableness of the fees sought as part of her case-in-chief. *Id.* at *4. The *McReynolds* court reasoned that "an expert's rebuttal statement is not an opportunity for a correction or filling in the gaps of the party's case-in-chief," and that McReynolds could not present evidence on an essential element for the first time with a late-filed expert report. *Id.*

Unlike in *McReynolds*, the McNeilly Rebuttal is not a belated attempt to introduce expert testimony essential to Plaintiffs' burden on the Motion for Class Certification. Rather, the McNeilly Rebuttal responds to and rebuts expert testimony presented for the first time in the Dunston Report concerning whether the MCSD's policies are consistent with "generally accepted policing standards." But even assuming that this question is properly framed, and that

5

the answer to this question will be relevant at the merits stage of this case, it is not an "essential element" of what Plaintiffs must show under Federal Rule of Civil Procedure 23. Plaintiffs are not required to prove the merits of their claims through their Motion for Class Certification or the expert reports submitted therewith. However, once Defendants introduced affirmative expert testimony on this new issue, Plaintiffs were entitled to introduce rebuttal testimony from their own expert. Thus, the circumstances here are more analogous to *Hostetler*, where the court permitted the plaintiffs to submit a rebuttal report from a new accounting expert for the purpose of contradicting specialized expert opinions from the defendants' accounting expert. *See Hostetler*, 2014 WL 11514964, at *2.[3] In *Hostetler*, it was immaterial that the expert had not been previously disclosed, because the expert was a "rebuttal expert, designated for the limited purpose of contradicting or rebutting" another expert's opinion, as McNeilly is here. *Id.*

## II.   EVEN IF THE MCNEILLY REBUTTAL IS CONSIDERED UNTIMELY, THERE IS JUST CAUSE FOR ADMITTING IT

As discussed above, the McNeilly Rebuttal is timely under the plain terms of the February 27 Scheduling Order. However, even assuming the McNeilly Rebuttal was considered somehow untimely, which it is not, it should be admitted because Plaintiffs had just cause for submitting the McNeilly Rebuttal on July 2, 2018. The Fifth Circuit has held that courts should consider the following factors when deciding whether to exclude an untimely designated expert report: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a

---

[3] Defendants' reliance on *Morgan v. Commercial Union Assur. Cos.*, 606 F.2d 554 (5th Cir. 1979), is likewise misplaced. (Defs.' Br. 4.) In *Morgan*, the defendant did not disclose its expert at a *pre-trial conference*, yet sought to call the expert *at trial* to testify that back pain was a pre-existing condition, despite knowing long in advance that Plaintiff was seeking damages for back injuries sustained in an automobile accident. *Id.* at 555-56. Plaintiffs here do not seek to spring a surprise witness *at trial*, and therefore *Morgan* does not insulate Defendants' proffered testimony on a new issue from criticism.

continuance to cure such prejudice." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004). The first three *Hamburger* factors weigh in favor of admitting the McNeilly Rebuttal. The fourth factor is inapplicable as admission of the McNeilly Rebuttal would not prejudice Defendants.

      A.      <u>**Plaintiffs Had Good Reason To Submit The McNeilly Rebuttal On July 2, 2018**</u>

With respect to the first *Hamburger* factor, Plaintiffs submitted the McNeilly Rebuttal on July 2, 2018 for the simple reason that the McNeilly Rebuttal responds to the Dunston Report, which only was submitted on May 8, 2018. The Dunston Report was submitted along with Defendants' Response to Plaintiffs' Motion for Class Certification and the McNeilly Rebuttal was submitted with Plaintiffs' reply. Obviously Plaintiffs could not have gone back in time to designate a policing expert when they first became aware of the Dunston Report on May 8, 2018.

Recognizing that parties often need to submit a report from a new expert to address new issues raised by another party's expert, courts routinely permit parties to submit an otherwise untimely rebuttal report from a new expert. *See, e.g.*, *Hostetler*, 2014 WL 11514964, at *1-2 (denying a motion to strike an arguably untimely report filed by a new expert because the report was "in the nature of a rebuttal expert . . . designated for the limited purpose of contradicting or rebutting" another expert); *Midwest Feeders, Inc. v. Bank of Franklin*, No. 5:14cv78-DCB-MTP, 2016 WL 4074432, at *3 (S.D. Miss. July 29, 2016) (denying motion to strike as untimely plaintiff's rebuttal expert report submitted by expert who was not disclosed at plaintiff's "initial" expert deadline).

      B.      <u>**The McNeilly Rebuttal Is Relevant And Important**</u>

The McNeilly Rebuttal is relevant and important as it directly responds to an expert report that Defendants affirmatively submitted. Defendants cannot contend that Chief Dunston's

7

Report is relevant, yet Chief McNeilly's Report on the same topic is not. Chief McNeilly's expert opinion that deficiencies in the MCSD's policies and procedures "are indicative of an environment that turns a blind eye to and fosters biased policing," is self-evidently relevant to Plaintiffs' civil rights claims. (McNeilly R.R. ¶ 20.)

Courts routinely admit expert testimony related to whether law enforcement policies are consistent with national standards. *See Moreno v. Northside I.S.D.*, No. SA-11-CV-746-XR, 2013 WL 3716531, at *7 (W.D. Tex. July 12, 2013) (admitting expert reports "regarding nationally recognized police standards governing the use of excessive force, as well as the specific departmental excessive force guidelines to which the officer was subject"); *see also Escobar v. City of Houston*, No. Civ. A 04-1945, 2007 WL 2900581, at *11 (S.D. Tex. Sept. 29, 2007) ("Several circuit courts consider expert opinions on the adequacy of a city's training program, including opinions that rely on national training standards. Such expert testimony is relevant, although not dispositive, to determining whether a municipality's training program was constitutional."); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1047 (6th Cir. 1992) ("expert testimony may prove the sole avenue available to plaintiffs to call into question the adequacy of a municipality's training procedures" and "disregard[ing] expert testimony" would improperly risk "insulating a municipality from liability for injuries resulting directly from its indifference to the rights of citizens"); *Allen v. Muskogee*, 119 F.3d 837, 844 (10th Cir. 1997) (denying the defendant's motion for summary judgment where the plaintiff's expert "characterized the officers' actions in th[e] case as diametrically opposed to proper police procedures").[4]

---

[4] Defendants cite several cases in the § 1983 context for the proposition that "when officers have received training required by . . . law, the plaintiff must show that the legal minimum of training was inadequate." (*See, e.g.*, Defs.' Br. 6 (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).) But these cases are consistent with one of the central points of the McNeilly Rebuttal, which is that the MCSD's policies are inadequate even if they technically comply with minimum statutory requirements. (*See, e.g.*, McNeilly R.R. ¶ 28 ("Just because training isn't mandated by a state doesn't mean training

Defendants' argument about the purported irrelevance of the McNeilly Rebuttal is belied by the fact that it was Defendants who introduced expert testimony concerning policing standards into class certification motion practice. The McNeilly Rebuttal directly responds to and rebuts the opinions expressed by Chief Dunston. Indeed, the McNeilly Rebuttal contains over one hundred references to the Dunston Report and Chief Dunston's deposition testimony. If Chief McNeilly's rebuttal opinions are not relevant or important then the same must be true of Chief Dunston's opinions because the McNeilly Rebuttal addresses the very *same* subject matter as the Dunston Report.[5]

Moreover, Defendants' argument confuses the basic and critical difference between *relevant* evidence and *legally sufficient* evidence. Regardless of whether a law enforcement agency's failure to comply with best practices is, by itself, *sufficient* to establish a constitutional violation, the MCSD's systematic failure to comply with best practices is undoubtedly evidence *relevant* to the issue of whether the MCSD maintains policies, customs, or practices that violate the Constitution. Defendants cite *Bah v. City of New York*, No. 13-CV-6690 (PKC), 2017 WL 435823, at *6 (S.D.N.Y. Jan. 31, 2017) for the proposition that "Section 1983 provides a remedy for the violation of rights protected by the Constitution or federal law. It does not provide a remedy for violations of best police practices." (Defs.' Br. 7.) But Defendants fail to note that the court in *Bah* admitted expert testimony about policing best practices. The court stated that "[t]he

---

shouldn't be conducted for officers and deputies. . . . Best practices expect a department to conduct more than just mandatory training. A department should be conducting regular training and training in areas of high risk/low frequency.").)

[5] Defendants also attempt to challenge the importance of the McNeilly Rebuttal by claiming that "Plaintiffs only refer to [Chief McNeilly's] opinions in one paragraph by citing three paragraphs found in his report." (Defs.' Br. 2.) By this standard, however, Chief Dunston's testimony about policing standards and the adequacy of the MCSD's policies also is not important or relevant because Defendants' opposition to the Motion for Class Certification contains only a handful of vague citations to Chief Dunston's opinions on these subjects. (ECF No. 268, at 8, 12, 14, 26, and 44 n.37.)

9

jury arriving at an answer to the question of whether the defendant officers' actions conformed with accepted police practices is not an end in and of itself, but rather *a means by which the jury can understand the full set of circumstances . . .* so as better to conduct their analysis." *Id.* at *12 (emphasis added). Here, the McNeilly Rebuttal provides evidence of policing best practices and such evidence is important to assessing whether the MCSD engaged in unconstitutional and racially discriminatory policing.

Defendants also cite cases stating that a constitutional violation cannot be established based on evidence that better policies were possible. (*See* Defs.' Br. 7-8, n.3.) But these cases are inapposite because the McNeilly Rebuttal does not simply opine that the MCSD's policies and practices are not as good as they could be. Instead, Chief McNeilly specifically explains why the failure to follow best practices creates an environment in which constitutional violations are more likely to occur.[6]

### C. Defendants Will Not Be Prejudiced By Admission Of The McNeilly Rebuttal

Defendants will suffer no prejudice if the McNeilly Rebuttal is admitted. The only potential prejudice Defendants identify is the delay and costs purportedly associated with deposing Chief McNeilly.[7] Defendants' behavior following the filing of the McNeilly Rebuttal, however, shows that a delay would not prejudice Defendants at all. After Plaintiffs filed the

---

[6] *See, e.g.*, McNeilly R.R. ¶ 56 ("[MCSD's] attitudes of indifference toward monitoring and enforcing non-biased policing, combined with the lack of meaningful policies, practices, and procedures, can create an environment that is conducive to racial discrimination."); ¶ 82 ("The fact the department doesn't document the race of individuals stopped in roadblocks and the results of all stops during the roadblocks and general traffic stops creates a question as to whether MCSD is engaged in discrimination."); ¶ 80 ("Using roadblocks without necessary procedural safeguards is counter to community policing efforts, inconveniences the entire public by creating a dragnet, creates tension with the community it may be intended to serve, and creates the opportunity for discrimination either consciously or unconsciously.").

[7] In light of Defendants' failure to seek Chief McNeilly's deposition in the weeks following the submission of his rebuttal report, Plaintiffs do not concede that Defendants are entitled to depose Chief McNeilly at this time.

10

McNeilly Rebuttal on July 2, 2018, Plaintiffs heard nothing from Defendants until Defendants filed this Motion to exclude (along with two other motions to exclude) on July 30, 2018. Rather than seeking to depose Chief McNeilly in the several weeks following the submission of the McNeilly Rebuttal, Defendants instead chose to wait nearly a month and then file this Motion. This is despite the fact that briefing on ancillary motions concerning Plaintiffs' Motion for Class Certification remained ongoing throughout that time period, having been extended by stipulation at Defendants' request up to August 17, 2018. (ECF No. 310, "Unopposed Motion for Scheduling Order.") Yet, as has been their practice throughout this litigation, Defendants filed this Motion without conferring with Plaintiffs and made no effort to resolve their purported concerns about the timing of the McNeilly Rebuttal with Plaintiffs prior to filing of this Motion.[8] Defendants now claim delay would result from admission of the McNeilly Rebuttal, but they made the conscious decision to burden this Court with yet another procedural and baseless motion here. If Defendants were not prejudiced by their own strategic choice to not take Chief McNeilly's deposition and instead file this late procedural Motion, then they surely will not be prejudiced by any further purported delay associated with admitting the McNeilly Rebuttal.

Defendants also suggest that they would be prejudiced by the cost of deposing Chief McNeilly. However, the costs associated with deposing Chief McNeilly would be the same whether he was designated on March 14, 2018 or on July 2, 2018. Defendants provide no basis for claiming that Defendants will be prejudiced by any extra costs resulting from Chief McNeilly's rebuttal report being submitted on July 2, 2018, rather than some earlier date. It was Defendants who chose to respond to Plaintiffs' initial expert report and Fed. R. Evid. 1006

---

[8] Defendants' failure to meet and confer with Plaintiffs prior to filing this Motion also is inconsistent with and in violation of Local Rule 37(a) and Paragraph 6(F)(4) of the Court's Case Management Order (ECF No. 30).

declaration with no fewer than four reports from three experts, as well as two motions to exclude. Defendants have pursued anything but a low-cost litigation strategy in this action, and their alleged concerns over expenses now should not hamper Plaintiffs' ability to fully and fairly respond.

### D. The Fourth *Hamburger* Factor Is Inapplicable Because There Is No Potential Prejudice to Defendants

Because Defendants have suffered no prejudice, there is no need to address the fourth *Hamburger* factor regarding the availability of a continuance to cure potential prejudice.

### CONCLUSION

For all of these reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to exclude the McNeilly Rebuttal.

Dated: August 20, 2018

By: */s/ Joshua Tom*
    Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Christopher K. Shields (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
christopher.shields@stblaw.com
bonnie.jarrett@stblaw.com

AMERICAN CIVIL LIBERTIES UNION OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Ezekiel Edwards (*pro hac vice*)
Jeffery Robinson (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2018, I caused the foregoing **Memorandum of Law in Opposition to Defendants' Motion To Exclude Designation of Rebuttal Expert Witness Robert McNeilly** to be electronically filed with the Clerk of the Court using the CM/ECF system, through which copies have been served to:

WISE CARTER CHILD & CARAWAY, P.A.
Michael B. Wallace (Miss. Bar No. 6904)
Charles E. Ross (Miss. Bar No. 5683)
James E. Graves (Miss. Bar No. 102252)
Charles E. Cowan (Miss. Bar No. 104478)
T. Russell Nobile (Miss. Bar No. 100682)
Post Office Box 651
Jackson, MS 39205
(601) 968-5534
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com
trn@wisecarter.com

CURRIE JOHNSON & MYERS, P.A.
Rebecca B. Cowan (Miss. Bar No. 7735)
P.O. Box 750
Jackson, MS 39205
(601) 969-1010
bcowan@curriejohnson.com

KATIE BRYANT SNELL, PLLC
Katie Bryant Snell (Miss. Bar No. 103607)
P.O. Box 3007
Madison, Mississippi 39130-3007
(601) 460-9800
Katie@katiebryantsnell.com

PETTIS, BARFIELD & HESTER, P.A.
J. Lawson Hester (Miss. Bar No. 2394)
Jason E. Dare (MSB No. 100973)
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
(601) 987-5300
lhester@pbhfirm.com
jdare@pbhfirm.com

By: */s/ Joshua Tom*
    Joshua Tom