UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; HERBERT ANTHONY GREEN; KHADAFY MANNING; QUINNETTA MANNING; MARVIN MCFIELD; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and MADISON COUNTY SHERIFF'S DEPUTIES JOHN DOES #1 through #6, in their individual capacities,<br><br>Defendants. | Civil Action No.<br>3:17-cv-00347-WHB-LRA<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO EXCLUDE DESIGNATION OF
<u>REBUTTAL EXPERT WITNESS PATRICIA FRONTIERA, PH.D.</u>**

Plaintiffs Latoya Brown, Lawrence Blackmon, Khadafy Manning, Quinnetta Manning, Nicholas Singleton, Steven Smith, Bessie Thomas, and Betty Jean Williams Tucker ("<u>Plaintiffs</u>") respectfully submit this Response in opposition to Defendants' Motion To Exclude Plaintiffs' Untimely Designation of New Expert Witness Patricia Frontiera, Ph.D. (ECF No. 318) ("<u>Motion</u>") in this civil rights action brought against defendants Madison County, Mississippi ("<u>Madison County</u>") and Sheriff Randall Tucker, sued herein in his official capacity ("<u>Sheriff</u>

Tucker," and with Madison County, "Defendants"). Pursuant to L.U. Civ. R. 7(b)(6)(A), Plaintiffs respectfully request oral argument on Defendants' Motion.[1]

1. Defendants' Motion seeks to exclude as untimely the Rebuttal Expert Report of Dr. Patricia Frontiera ("Frontiera Rebuttal"). Defendants ignore the Court's February 27, 2018 Scheduling Order (ECF No. 202, "February 27 Scheduling Order"), which expressly states that the deadline for "*any rebuttal expert reports* and/or declarations on behalf of Plaintiffs, and related disclosures, will be July 2, 2018." In accordance with the February 27 Scheduling Order, on March 14, 2018, Plaintiffs submitted the Report of Dr. Bryan Ricchetti in support of their Motion for Class Certification (ECF No. 231-1, "Ricchetti Report"). In response, on May 8, 2018, Defendants submitted the Rebuttal Expert Report of Mr. William Funderburk. (ECF No. 267-21, "Mr. Funderburk's Report"). Thus, on July 2, 2018, Plaintiffs properly submitted the Frontiera Rebuttal in support of their Reply Memorandum in Further Support of their Motion for Class Certification (ECF No. 304) and in direct rebuttal to newly-raised arguments by Mr. Funderburk concerning purported deficiencies associated with the straightforward geocoding methodology applied by Dr. Ricchetti in his analysis.

2. Defendants suggest that the February 27 Scheduling Order only permits an expert who previously filed an initial report in support of Plaintiffs' Motion for Class Certification to then file a rebuttal report. This is wholly unsupported by the February 27 Scheduling Order, which states that "any rebuttal expert reports" submitted by Plaintiffs shall be submitted by July 2, 2018. Furthermore, Federal Rule of Civil Procedure 26(a)(2) imposes no requirement that a

---

[1] Because the issues presented by Defendants' Motion overlap with the issues presented by Plaintiffs' pending Motion for Class Certification (ECF No. 231), Plaintiffs request that argument on the instant Motion should be held jointly with argument on Plaintiffs' Motion for Class Certification.

rebuttal expert be an initially disclosed expert and courts in this District hold that new experts may properly offer rebuttal reports.

3. The Frontiera Rebuttal offers proper and timely rebuttal opinions and testimony in response to assertions in Mr. Funderburk's Report concerning technical aspects of the geocoding software used by Dr. Ricchetti and purported deficiencies in Defendants' own data used to locate roadblocks (based on Mr. Funderburk's single interview with one deputy at the Madison County Sheriff's Department). Plaintiffs submitted the Frontiera Rebuttal to address the unreliability and lack of scientific support for Mr. Funderburk's newly raised arguments. As such, the Frontiera Rebuttal is properly within the scope of appropriate rebuttal testimony.

4. Defendants themselves effectively concede that Mr. Funderburk raises distinct issues not addressed in the Ricchetti Report by designating Mr. Funderburk as an expert in addition to the other expert they retained to rebut the Ricchetti Report, Dr. Dwight Steward. Defendants cannot now argue that they can designate a separate expert to specifically address purported geocoding issues, but that Plaintiffs cannot do the same in rebuttal. Defendants cannot have it both ways, and their Motion should be denied.

5. Even if the Frontiera Rebuttal was not timely designated, exclusion is inappropriate under the four factor test set out in *Hamburger v. State Farm Mutual Automobile Insurance Co.*, 361 F.3d 875 (5th Cir. 2004). First, Plaintiffs submitted the Frontiera Rebuttal on July 2, 2018 in direct response to Mr. Funderburk's Report, which was submitted on May 8, 2018. Second, the Frontiera Rebuttal is relevant and important because it rebuts Mr. Funderburk's conclusory and unreliable opinions and establishes that Mr. Funderburk's arguments are unsupported by either relevant academic literature or reliable methodologies. Third, Defendants will suffer no prejudice from the admission of the Frontiera Rebuttal as they

never attempted to depose Dr. Frontiera and have suffered no increase in costs or delays due to the timing of her disclosure. Moreover, Defendants cannot be prejudiced by a report that responds to Defendants' newly-raised arguments calling into question the reliability of their own data. Finally, the availability of a continuance to cure any prejudice is inapplicable here. Defendants waited for nearly a month to file this Motion after the Frontiera Rebuttal was submitted and then filed this Motion without conferring with Plaintiffs beforehand or making any efforts to resolve consensually their ostensible timing concerns, contrary to the requirements set forth in Local Rule 37(a) and Paragraph 6(F)(4) of the Case Management Order (ECF No. 30).

6. Plaintiffs also rely on the accompanying Memorandum of Law in Opposition to Defendants' Motion, which is incorporated herein as if set forth in full, and the exhibit listed below:

**Exhibit 1**: Excerpts from Transcript of Deposition of Dr. Dwight Steward (June 22, 2018)

WHEREFORE, for the reasons set forth herein and in Plaintiffs' accompanying Memorandum of Law, Defendants' Motion To Exclude Plaintiffs' Untimely Designation of New Expert Witness Patricia Frontiera, Ph.D. should be denied.

Respectfully submitted on this 20th day of August, 2018.

By: /s/ *Joshua Tom*
    Joshua Tom

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Christopher K. Shields (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
christopher.shields@stblaw.com
bonnie.jarrett@stblaw.com

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (Miss. Bar No. 105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice*)
Jeffery Robinson (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org
jrobinson@aclu.org

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2018, I caused the foregoing **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESS PATRICIA FRONTIERA, PH.D** to be electronically filed with the Clerk of the Court using the CM/ECF system, through which copies have been served to:

WISE CARTER CHILD & CARAWAY, P.A.
Michael B. Wallace (Miss. Bar No. 6904)
Charles E. Ross (Miss. Bar No. 5683)
James E. Graves (Miss. Bar No. 102252)
Charles E. Cowan (Miss. Bar No. 104478)
T. Russell Nobile (Miss. Bar No. 100682)
Post Office Box 651
Jackson, MS 39205
(601) 968-5534
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com
trn@wisecarter.com

CURRIE JOHNSON & MYERS, P.A.
Rebecca B. Cowan (Miss. Bar No. 7735)
P.O. Box 750
Jackson, MS 39205
(601) 969-1010
bcowan@curriejohnson.com

KATIE BRYANT SNELL, PLLC
Katie Bryant Snell (Miss. Bar No. 103607)
P.O. Box 3007
Madison, Mississippi 39130-3007
(601) 460-9800
Katie@katiebryantsnell.com

PETTIS, BARFIELD & HESTER, P.A.
J. Lawson Hester (Miss. Bar No. 2394)
Jason E. Dare (MSB No. 100973)
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
(601) 987-5300
lhester@pbhfirm.com
jdare@pbhfirm.com

*/s/ Joshua Tom*
Joshua Tom

# EXHIBIT 1

1                      D. STEWARD
                UNITED STATES DISTRICT COURT
2
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
3
                     NORTHERN DIVISION
4
     ---------------------------------------
5
     LATOYA BROWN; LAWRENCE BLACKMON;
6    HERBERT ANTHONY GREEN;
     KHADAFY MANNING; QUINNETTA MANNING;
7    MARVIN McFIELD; NICHOLAS SINGLETON;
     STEVEN SMITH; BESSIE THOMAS; and
8    BETTY JEAN WILLIAMS TUCKER,
     individually and on behalf of a
9    class of all others similarly
     situated,
10
             Plaintiffs,
11                                        Civil Action No.
     vs.
12                                        3:17-CV-00347-WHB-LRA
     MADISON COUNTY, MISSISSIPPI;
13   SHERIFF RANDALL S. TUCKER, in his
     official capacity; and MADISON
14   COUNTY SHERIFF'S DEPUTIES JOHN
     DOES #1 THROUGH #6, in their
15   individual capacities,
16           Defendants.
17   -----------------------------------------
18
19
              DEPOSITION OF DWIGHT STEWARD, PhD
20
                    Jackson, Mississippi
21
                   Friday, June 22, 2018
22
23
     Reported by:  DEBRA AMOS ISBELL, CCR,RDR,CRR
24
     Job No: 143371
25

1                    D. STEWARD

2  correct, in this section of the report?

3      A.    I'm discussing different census tracts and

4  different issues; that's correct.

5      Q.    And I know in -- I think in paragraph 45 you

6  refer to figure 1, which is a map that's attached, I

7  think, to the end of your report; correct?

8      A.    Yes, ma'am.

9      Q.    And then in paragraph 46 I think you refer

10 to figures 2, 3 and 4, which are also additional maps

11 attached to your report; correct?

12     A.    Yes.

13     Q.    Did you prepare these maps for your report?

14 And you can turn to them.  I'm sorry.  It's pages 43

15 through 46 of your report.

16     A.    Figure 1 was prepared by my office.  Figures

17 2, 3 and 4 were prepared by Mr. Funderburk.

18     Q.    And for figures 2 to 4, did you ask

19 Mr. Funderburk to prepare those figures for you?

20     A.    Yes.

21     Q.    And did you or your team independently

22 verify in any way the creation of these figures by

23 Mr. Funderburk?

24           MR. NOBILE:  Objection.  Are you talking

25 about from a map standpoint or data standpoint?

1                     D. STEWARD

2      Q.    First we're just going to talk generally, if
3  you did any sort of independent verification of these
4  four -- I'll call them exhibits, but it's really
5  figures 2 to 4.
6      A.    My staff and I reviewed the data.  We looked
7  at the maps that he prepared.  But I did not do an
8  assessment of his analysis.
9      Q.    And would it be fair to say that you trusted
10 the mapping that he did in figures 2 to 4 in these
11 exhibits were correct or accurate?
12     A.    Well, no.  I would say -- well, yes, I did
13 trust it.  But like I said before, I see the same
14 pattern when I do it as well.  It's just he could do
15 it more efficiently in terms of creating the maps.
16 But I see the exact same patterns in the data.
17     Q.    And you said he could do it more
18 efficiently.  Can you explain that?  What do you mean
19 he could do it more efficiently than you or your team?
20     A.    Yes.  He is a GIS expert, so he had access
21 to this data.  I have access to some of it as well.
22 But he could produce this, and that was the focus, I
23 understand, of his report.  So it made sense just to
24 use his maps.
25     Q.    And you agree you're not presenting yourself

1                         D. STEWARD

2    today as a GIS expert or a geocoding expert; correct?

3        A.    That's correct.

4        Q.    Do you have any specific expertise in

5    geocoding specifically or using this kind of software

6    that goes into geocoding?

7              MR. NOBILE:  Objection.  Form, compound.

8    BY MS. SIVASHANKER:

9        Q.    Let me actually just break it up because

10   that's a fair objection.  Do you have any specific --

11   I'm just going to start with do you have any specific

12   expertise in geocoding?

13       A.    I have used it in different cases before.

14   It comes up where we have to take a location and get

15   information about where it is.  So geocode.

16       Q.    And when you've done it in other cases on

17   geocoding, what system or program do you use to

18   geocode?

19       A.    Typically for us in the instances that I've

20   had to deal with it, it's been straightforward, not

21   anything really detailed.  So we would just use the

22   publicly available Google Maps a lot of times for what

23   we needed to do.  We also use Stata.  Stata has some

24   built-in modules.  We use a program from Texas A&M.

25   They have a service as well.  So those have been the

Page 175

1                    D. STEWARD
2   main ways that we would do geocoding when we need to.
3       Q.    And are you familiar with the ArcGIS
4   program?
5       A.    Yes.
6       Q.    And is that a program you've ever used
7   before?
8       A.    No.
9       Q.    In looking at these figures, we'll call it 1
10  through 4 -- and I know you said figure 1, I think, is
11  one your team prepared -- do you know if there are
12  shape files underlying these figures?
13      A.    I don't.
14      Q.    And just speaking about figure 1, which I
15  think you said you and your team prepared, it sounds
16  like you don't -- are there any shape files underlying
17  this first figure, the one that your team prepared or
18  you prepared?
19      A.    No.
20      Q.    And sorry.  Just to clarify that, for
21  figure 1, did you personally prepare that figure or
22  did members of your team prepare that for you?
23      A.    Members of my team.
24      Q.    And as part of your work, did you conduct
25  any sort of analysis regarding placing roadblocks into

1                    D. STEWARD

2   performed or not performed in his report, did you do
3   tests beyond -- do you specifically routinely do tests
4   beyond these three tests that you mention here?  And
5   when I say tests, I mean these three examples that you
6   point out here.
7        A.    Yes, ma'am.  I just described that.  Like I
8   said, these are examples of the ones that I found.
9        Q.    And where would the other examples be that
10  you found?
11       A.    I didn't list them.
12       Q.    And are they in any sort of written list or
13  some sort of analysis that you have that might not be
14  found in this report?
15       A.    No.
16       Q.    Did you communicate at all with
17  Mr. Funderburk in preparing -- as part of your work in
18  this case?
19       A.    I don't recall actually -- I don't recall
20  talking to him.  At some point we got his maps that he
21  had created.  But I can't recall right now exactly how
22  that worked.  I just know he was working on that
23  same -- the same maps, so it just made sense to use
24  his maps.  But I don't recall exactly how that worked.
25       Q.    But you didn't have any like, for example,

1                      D. STEWARD

2    phone conversations with Mr. Funderburk about either

3    of your engagements in this case or your work in this

4    case?

5         A.    No, I don't recall one, no.

6         Q.    And beyond what you've read in

7    Mr. Funderburk's report, which I think you said you

8    reviewed as part of your deposition preparation for

9    today, you didn't do any sort of further analysis or

10   tests of what Mr. Funderburk did in terms of his

11   report in this case; is that correct?

12        A.    That's correct.

13        Q.    And in looking at the geocoding methodology

14   here, do you feel that you're qualified to provide an

15   expert opinion on Dr. Ricchetti's geocoding

16   methodology in this case?

17        A.    Yes, ma'am, to the extent that I've

18   discussed here.  Because I'm not talking about his

19   methodology.  I'm saying something is wrong.  And that

20   I'm qualified to say.  Because you have to have right

21   data to do what he does.  So step 1 is the data is

22   incorrect.  See, I'm very qualified to say that

23   because, again, I'm looking at these issues that are

24   incorrect, and then I show you the actual economic

25   impact of that.  So yes, ma'am, that's well inside my

1           D. STEWARD
2  qualifications.
3     Q.    And if that's well inside your
4  qualifications, do you see any necessity for
5  Mr. Funderburk's report in this case, for the opinions
6  that he provided?
7           MR. NOBILE: Objection. Form.
8     A.    Well, first of all, that's outside of my
9  area. I don't decide who the defendants want to
10 retain as experts. But my understanding of what he
11 does is different from what I'm doing. The only thing
12 I'm doing here is showing you essentially the economic
13 impact of that. If you read paragraphs 31 and 32,
14 these are real factors that impact the reliability of
15 his analysis. That's what I'm focusing on.
16          I don't believe Mr. Funderburk is doing
17 that. But again, I don't know. I think he's
18 focusing -- I understand he's focusing more on the GIS
19 aspect of it. But I'm just telling you that these
20 issues matter, these problems matter.
21    Q.    And is it fair to say that you did not test
22 every single roadblock location through this Google
23 Maps method that you used of every roadblock in terms
24 of its placement, did you?
25          MR. NOBILE: Objection.

1         D. STEWARD

2   Mischaracterization, asked and answered.  Go ahead.

3        A.    As I sit here, I can't recall how many we
4   ran through the Google Maps.

5        Q.    And do you recall how many roadblocks you
6   did test for placement errors?

7        A.    It was quite a few.  But I don't recall the
8   number, no.

9        Q.    Do you recall if it was more than 10?

10       A.    Like I said, I don't recall the number.  It
11  was quite a few.

12       Q.    And in terms of these tests for placement
13  errors, did you perform these tests or did members of
14  your team perform those for you?

15       A.    These would have been members of my team
16  would have performed these.

17       Q.    And if a roadblock's geocoded location,
18  based on how you've mapped them, contains an error but
19  both the actual location and what you believe is the
20  correct location are within the same census tract, how
21  would that affect Dr. Ricchetti's results?

22       A.    Well, we still have a very big problem.  And
23  as I've described in the report, the census tract
24  itself is wrong.  It's the wrong method.  Because, as
25  I've shown through these maps, the census tract is not

1             D. STEWARD
           C E R T I F I C A T E
2
3
       I do hereby certify that the foregoing
4
proceedings were taken down by me and transcribed
5
using computer-aided transcription and that the
6
foregoing is a true and correct transcript of said
7
proceedings.
8
9
       I further certify that I am neither of
10
counsel nor of kin to any of the parties, nor am I in
11
anywise interested in the result of said cause.
12
13
       I further certify that I have earned the
14
certifications awarded by the National Court Reporters
15
Association of RPR,RMR,RDR,CRR,CRC,RSA and am duly
16
licensed by the Alabama, Illinois, Louisiana and
17
Mississippi Boards of Court Reporting as a Certified
18
Court Reporter.
19  Dated: June 25, 2018
20
21  _____
         DEBRA AMOS ISBELL, CCR,RDR,CRR
22       ALABAMA - ACCR #21 (expires 9/30/18)
         ILLINOIS - CSR #084.004798 (expires 5/31/19)
23       LOUISIANA - CCR #2014003 (expires 12/31/18)
         MISSISSIPPI - CSR #1809 (expires 4/10/19)
24       NCRA (expires 12/31/2018)