# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

LATOYA BROWN, ET AL.                                    PLAINTIFFS

v.                        CIVIL ACTION NO. 3:17-cv-347 WHB LRA

MADISON COUNTY, MISSISSIPPI, ET AL.                     DEFENDANTS

---

### REBUTTAL IN SUPPORT OF [DKT. #320] MOTION TO EXCLUDE PLAINTIFFS' UNTIMELY DESIGNATION OF ROBERT MCNEILLY AS NEW EXPERT WITNESS

---

**Robert McNeilly is not a "rebuttal" expert witness for plaintiffs; instead, he provides opinions on a fundamental issue that plaintiffs bore the burden of proving from the inception of this case and should have been designated by plaintiffs' March 4, 2018, expert witness deadline.**

Plaintiffs failed to timely designate McNeilly as an expert witness and should not now be given a second chance to "get it right" by trying to label McNeilly as a "rebuttal" expert witness. To have satisfied their burden of proof on class certification by designating experts by their expert witness designation deadline, plaintiffs must have provided opinions showing that (1) Sheriff Tucker adopted and acted upon an intentionally racially discriminatory policy that resulted in a deprivation of their constitutional rights, *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984); and (2) he "act[ed] with discriminatory purpose," *i.e.,* that not only did he act on his own with full awareness of the consequences of his acts, but that he undertook an act "because of, not merely in spite of, his action's adverse effects upon an identifiable group." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (internal citations and quotation marks omitted). *See also Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997) ("in order to state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the

governmental official was motivated by intentional discrimination on the basis of race."); *Clayton ex rel. Hamilton v. Tate Cnty. Sch. Distr.,* 2014 WL 1202515 at *3 (5th Cir. Mar. 25, 2014) ("'[D]isparate impact alone' is not enough; rather, a 'party who wishes to make out an Equal Protection claim must prove the existence of purposeful discrimination motivating the state action which caused the complained-of injury.'") (quoting *Johnson v. Rodriguez,* 110 F.3d 299, 306 (5th Cir. 1997).

From the beginning of their lawsuit, plaintiffs knew the adoption and implementation of intentionally racially discriminatory policies by Sheriff Tucker was an essential element of their claims.   In fact, plaintiffs concede in their Preliminary Statement in their brief opposing defendants' Motion to Exclude McNeilly [Dkt. # 326, Pg. 4] that the merits of their claims against Madison County and Sheriff Tucker depend on their proving that Sheriff Tucker engaged in intentional "unconstitutional racially discriminatory policing" toward Black citizens of Madison County.   In other pleadings, they have further agreed that they must present "significant proof" of Sheriff Tucker's unconstitutional racially discriminatory policies under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011) (citations omitted).

Plaintiffs' full knowledge of their burden of proof is self-evident in their Complaint where they describe in detail Sheriff Tucker's alleged intentionally racially discriminatory policies numerous times.  [Dkt. # 1].  After months of discovery, plaintiffs summarized these alleged intentionally racially discriminatory policies more succinctly in discovery responses they provided four months before their expert witness deadline.  [Dkt. ## 218-2; 220-1; 222-2; 228-1; 233-2; 234-2].  Citing nine separate policies, plaintiffs claimed the MCSD's conducting of unconstitutional vehicular roadblocks based on racial motivations; conducting pretextual traffic stops on the basis of race; "arresting, citing, and/or charging Black individuals at higher rates,

and/or with greater severity, than white persons engaged in the same or similar conduct;" and "enter[ing] the homes of Black residents of Madison County without warrants or other valid legal justification" and conducting warrantless searches violated their rights to equal protection.   *Id.*

By the time their expert witness designation deadline arrived, plaintiffs were well aware that they needed expert witnesses to address the merits of their unconstitutional racially discriminatory vehicular roadblock policy claims because they designated Dr. Bryan Ricchetti to support these claims through statistical opinion evidence, which defendants have moved to exclude in a separate motion.  [Dkt. # 270].   Despite their awareness of the need for expert testimony on the other policies they had identified, plaintiffs apparently made a conscious decision not to designate any expert to address these alleged unconstitutional policies.

Plaintiffs' own pleadings, discovery responses, and timely designation of Dr. Ricchetti described above defeat any argument they make that their untimely designation of McNeilly falls within the rebuttal expert designations in *Hostetler v. Dillard,* 2014 WL 11514964, at *1, *2 (S.D. Miss. August 29, 2014) and *Midwest Feeders, Inc. v. Bank of Franklin,* 2016 WL 4074432, at *1, *3 (S.D. Miss. July 29, 2016).   In both these cases, the defendants designated an expert who addressed an issue that was not essential to the plaintiffs' claims and, as a result, had not been raised by the plaintiffs during their initial designation of experts.[1]

Plaintiffs also cannot designate McNeilly out of time under the tests set forth in *Hamburger v. State of Farm Mut. Auto Ins. Co.,* 361 F.3d 875, 883 (5th Cir. 2004).   They appear to concede in their response opposing defendants' Motion to Exclude that defendants have prevailed on three of the four *Hamburger* tests.   While addressing the remaining *Hamburger* test, no prejudice to the

---

[1]  A more thorough discussion of the courts' treatment of the rebuttal expert witnesses in both these cases can be found in defendants' [Dkt. # 336, Pgs. 3-6] Rebuttal supporting their Motions to Exclude Dr. McCrary, another expert witness plaintiffs designated well after their expert witness deadline.

defendants by their untimely designation of McNeilly, plaintiffs never address the fact that defendants were under specific scheduling orders regarding the deadlines for taking the depositions of plaintiffs' designated expert and *Fed.R.Evid.* 1006 witness, which defendants satisfied.   Plaintiffs also do not question whether defendants will be burdened with additional attorneys' fees and expenses should they have to depose McNeilly and then file a sur-rebuttal expert opinion outside the established expert witness designation deadlines.   Defendants, on the other hand, have cited numerous decisions within this district that have consistently held that a plaintiff's late designation of an expert is prejudicial to a defendant if the designation disrupts a defendant's preparation in the case, *Bailey v. Stanley Access Technologies, Inc.,* 2015 WL 6828921, at *17 (S.D. Miss. Nov. 6, 2015); requires a defendant to depose the untimely designated expert, *Roberson v. U.S.,* 2014 WL 7149744, at *2 (S.D. Miss. Dec. 15, 2014); and results in a defendant's incurring additional expenses defending the lawsuit, *Stafford v. Government Employees Insurance Company*, 2017 WL 5690948, at 6 (S.D. Miss. July 29, 2017).

**Had plaintiffs timely designated McNeilly, his opinions would have been excluded under *Fed.R.Evid.* 702 because they apply the wrong standards to the issues in this case under Mississippi and Fifth Circuit law and are, therefore, irrelevant.**

Contrary to plaintiffs' claim that defendants have confused the "critical difference between *relevant* evidence and *legally sufficient* evidence while arguing the relevancy of McNeilly's opinions, [Dkt. #326, Pg. 12], the *Federal Rules of Evidence* first require that evidence must be relevant before it is can be admitted and afforded any legal weight by a court or jury.   Rule 402 defines "[r]elevant evidence" as evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence."

4

As for expert opinion evidence, *Daubert v. Merrell Dow Pharm, Inc.,* 509 U.S. 579, 579, 589 (1993), requires a court to pre-screen an expert witness's opinions and make sure that the opinion complies with Rule 702.   *See also Roman v. Western Mfg., Inc.,* 691 F.3d 686, 692 (5th Cir. 2012).   Rule 702 provides that an expert's testimony is admissible only (1) if it qualifies as scientific, technical or other specialized knowledge and (2) if it will assist the trier of fact to understand the evidence or resolve a disputed factual issue. *Id.   Daubert*, 509 U.S. at 589.   The second part of Rule 702's test involves an inquiry into the relevancy of an expert's opinion. *Id.* at 590-91.   In short, if an expert's opinion will not aid the trier of fact to determine a fact that is in issue in a case, the opinion is irrelevant. *Hagan v. Jackson Cnty., Miss.,* 2016 WL 1091107, at *5 (S.D. Miss. March 21, 2016) (citing *Daubert,* 509 U.S. at 591*)*.

Fifth Circuit law recognizes that unless a plaintiff establishes that a governmental entity has failed to meet Mississippi's minimum standards for training its officers or that these standards are inadequate, he or she has no cause of action under § 1983.   *Skinner v. Hinds County, Miss.,* 2014 WL 317872, at *9 (S.D. Miss. Jan. 29, 2014) (citing *O'Neal v. City of San Antonio,* 344 F. App'x 885, 888 (5th Cir. 2009).   McNeilly's opinions never address Mississippi or Fifth Circuit law or, for that matter, the United States Constitution.[2]   His opinions, which are based solely on "best practices," apply the wrong standard and are irrelevant to plaintiffs' claims.[3]

---

[2]   A glaring example of McNeilly's application of incorrect practice standards is demonstrated by his opinion that "the policies, practices, and procedures of the Madison County Sherriff's Department, as well as the attitudes expressed by senior management of the department, are indicative of an environment that ***turns a blind eye to and fosters biased policing***."   [Dkt. # 304-4, Pg. 7].   This standard is completely contradictory with the Supreme Court's holding in *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009), that a plaintiff must prove discriminatory intent or purpose by a governmental decision maker before establishing an equal protection claim under § 1983.   A blind eye is never sufficient to show intent or purpose since an act must be conducted because of, not merely in spite of, any alleged discriminatory purpose.

[3]   McNeilly's opinions, which are summarized at the beginning of his report, are that "the MCSD does not employ best practices for written policies, training, supervision (including the lack of an early intervention system), non-biased policing (including inadequate community policing), complaints/internal affairs investigations, policies practices, and procedures . . ." [Dkt. # 304-4, Pg. 7].

Plaintiffs' argue that McNeilly's expert opinions are relevant because other courts have allowed the introduction of expert opinions that "rely on national training standards," [Dkt. # 326, Pg. 11], but a review of McNeilly's expert report shows that he never relies on *any* nationally recognized training standards while providing his opinions.  Instead, he gives only one recurring opinion -- that "[t]here are best practices and there are substandard practices," and any practice that is not best practices is automatically substandard and deficient.  (Dkt. #304-4, Pg. 7].   He leaves no middle ground for deciding the constitutionality of the alleged intentional racially discriminatory policies by Sheriff Tucker identified by plaintiffs by applying any other standard. In other words, it is McNeilly's opinion that a law enforcement agency that does not employ "best practices" is acting in a racially discriminatory manner despite the fact that its "substandard practices" may be applied equally to both Whites and Blacks.   More importantly, he never rebuts Mark Dunston's opinions by applying nationally accepted training standards.  Instead, he insists that only "consent decrees contain the 'best practices' for policing, including traffic stops, internal affairs investigations, and early warning systems . . .," and not applicable case law.   [Dkt. # 304-4, Pg. 14].   His expert opinions, therefore, are irrelevant and should be excluded on this basis.

**Defendants' Motion to Exclude is not a discovery-related matter governed by any good faith resolution by the parties under the Case Management Order [Dkt. #30] entered in this matter.**

Defendants' motion addresses evidentiary issues regarding what evidence will be admitted to support plaintiffs' claims of intentional racially discriminatory policies adopted and acted on by Sheriff Tucker.   Further, had the motion involved a discovery-related issue, it would have been futile for defendants to approach plaintiffs and request that they withdraw McNeilly's expert opinion since it is obvious that plaintiffs would have rejected the request.  *See, e.g., Reynolds v. Werner Enterprises, Inc.*, 2016 WL 4821651 at *1, *2 (S.D. Miss. Sep. 13, 2016)

(holding that courts will waive meet-and-confer requirements when it is obvious the controversy could not have been resolved without judicial intervention).

WHEREFORE, PREMISES CONSIDERED, for the reasons set forth above, McNeilly was not a rebuttal expert witness for plaintiffs and, because plaintiffs designated McNeilly late in the case, his expert opinions should be excluded from evidence.

This the 4th day of September, 2018.

Respectfully submitted,

**MADISON COUNTY, MISSISSIPPI and SHERIFF RANDALL C. TUCKER, IN HIS OFFICIAL CAPACITY**

BY:  /s/  Rebecca B. Cowan

OF COUNSEL:

Rebecca B. Cowan (MSB #7735)
CURRIE JOHNSON & MYERS, P.A.
1044 River Oaks Dr.
Jackson, Mississippi 39232
P.O. Box 750
Jackson, Mississippi 39205-0750
Telephone: 601-969-1010
Facsimile:  601-969-5120
bcowan@curriejohnson.com

Michael B. Wallace (MSB #6904)
Charles E. Ross (MSB #5683)
James E. Graves (MSB #102252)
Charles E. Cowan (MSB #104478)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, Mississippi  39205-0651
Telephone: 601-968-5534
Facsimile: 601- 944-7738
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com

and

T. Russell Nobile (MSB #100682)
WISE CARTER CHILD & CARAWAY, P.A.
2510 14th Street, Suite 1125
Gulfport, Mississippi  39501
Telephone: 228-867-7141
Facsimile: 228-867-7142
trn@wisecarter.com

Katie Bryant Snell (MSB# 103607)
KATIE BRYANT SNELL, PLLC
P.O. Box 3007
Madison, Mississippi 39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

J. Lawson Hester
Jason Edward Dare
PETTIS, BARFIELD & HESTER, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
Telephone: 601-987-5300
lhester@pbhfirm.com
jdare@pbhfirm.com

8

## CERTIFICATE OF SERVICE

I, Rebecca B. Cowan, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following:

Joshua Tom, Esq.
American Civil Liberties Union of Mississippi Foundation
233 E. Capitol Street
Jackson, MS 39201
JTom@aclu-ms.org
PWu@aclu-ms.org

Jonathan K. Youngwood, Esq. (*pro hac vice*)
Janet A. Gochman, Esq. (*pro hac vice*)
Isaac Rethy, Esq. (*pro hac vice*)
Nihara K. Choudhri, Esq. (*pro hac vice*)
Kavitha Satya Sivashanker, Esq. (*pro hac vice*)
Brooke Jarrett, Esq. (*pro hac vice*)
Jumin Lee, Esq. (*pro hac vice*)
Christopher K. Shields, Esq. (*pro hac vice*)
Simpson Thatcher & Bartlett, LLP
425 Lexington Avenue
New York, NY  10017
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
nchoudhri@stblaw.com
kavitha.sivashanker@stblaw.com
bonnie.jarrett@stblaw.com
christopherjumin.lee@stblaw.com
christopher.shields@stblaw.com

Ezekiel Edwards, Esq. (*pro hac vice*)
Jeffery Robinson, Esq. (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
eedwards@aclu.org
jrobinson@aclu.org

So, certified this the 4th day of September, 2018.

    /s/  Rebecca B. Cowan
        Rebecca B. Cowan