IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


LATOYA BROWN, ET AL.                                    PLAINTIFFS


VS.                          CIVIL ACTION NO. 3:17-cv-347-WHB-LRA


MADISON COUNTY, MISSISSIPPI, ET AL.                     DEFENDANTS


OPINION AND ORDER

This cause is before the Court on Plaintiffs' Motion for Class
Certification.   Having considered the pleadings as well as
supporting and opposing authorities, the Court finds the Motion
should presently be denied because membership in all of the
proposed classes cannot be ascertained, and there is doubt as to
whether all of the class members have been harmed in essentially
the same way.[1]  The Court, however, will not now dismiss the class
action claim but, instead, will grant Plaintiffs an opportunity to
amend their Complaint to cure the defects discussed by the Court
herein.  As Plaintiffs will be granted an opportunity to amend
their Complaint, the Motions of Defendants for Summary Judgment on
the claims alleged in the current complaint will be dismissed,

---

[1]  Because the Court finds the Motion for Class
Certification should be dismissed because of pleading issues, and
it is not required to consider the merits of class certification,
all motions filed in conjunction with the Motion for Class
Certification, which include motions seeking to strike
evidence/pleadings in support and/or opposition to that Motion,
will be denied as moot.

without prejudice.

## I.   Factual Background and Procedural History

Plaintiffs in this civil action are all Black residents of Madison County, Mississippi, who allege that they have been subjected to one or more racially-discriminatory policing policy. According to Plaintiffs, for the past twenty years the Madison County Sheriff's Department ("MCSD") has implemented a "coordinated top-down program" under which Blacks are methodically targeted for suspicionless searches and seizures.  Plaintiffs further allege:

> Pursuant to the Policing Program, the MCSD employs a series of integrated tactics to systematically conduct unreasonable searches and seizures of persons, homes, cars, and property on the basis of race.  During the course of these illegal searches and seizures, MCSD deputies routinely detain members of the Black community without probable cause, and often issue citations and make arrests either without legal justification or to recover outstanding fines and fees, typically for minor infractions.

Compl., ¶ 52.  The tactics allegedly used by the MCSD include the concentrating of vehicular roadblocks in and around predominately Black neighborhoods, apartment complexes, and businesses, which has resulted in greater number of Blacks being stopped and arrested. Id. at ¶¶ 57-76.  Plaintiffs maintain that the primary purpose of the roadblock system used by the MCSD is to "target Black motorists, their passengers, and their vehicles for unreasonable searches and seizures."  Id. at ¶ 76. The other alleged purposes for the roadblock policy include the unconstitutional general

interest in crime control, and the desire to enrich the coffers of the county.  Id. at ¶¶ 77-79.  Plaintiffs maintain that any claim by the MCSD that the roadblocks are conducted to verify drivers' licenses, vehicle registrations, or other traffic safety purposes is pretextual.  Id. at ¶ 80.

Another allegedly racially discriminatory policing tactic used by the MCSD is pedestrian checkpoints, which Plaintiffs maintain are also concentrated in predominantly Black neighborhoods.  Id. at ¶ 81.  According to Plaintiffs, any individual stopped during a pedestrian checkpoint is typically required to produce a driver's license or some other form of identification that is then run through police data bases to determine whether there are grounds for arresting the individual.  Id. at ¶ 87.  Plaintiffs allege that the "primary purpose of these pedestrian checkpoints is to conduct a fishing expedition to find any possible basis, no matter how tenuous, for issuing citations to and/or arresting members of the Black community."  Id. at ¶ 88.

The third allegedly discriminatory policing tactic about which Plaintiffs complain is that MCSD deputies, while engaging in unrelated duties, frequently enter the homes of Black residents without consent, warrant, or probable cause, and then conduct warrantless searches and seizures.  Id. at ¶¶ 91-96.  Plaintiffs further allege that MCSD deputies will detain and/or restrain Black individuals who are not suspected of wrong-doing.  Id.

3

The final discriminatory policing tactic about which Plaintiffs complain is referred to as "Jump-Out Patrols". These patrols are conducted by plainclothes deputies who "jump-out" of unmarked vehicles, and allegedly detain and search individuals without reasonable suspicion of wrong-doing or probable cause. Id. at ¶¶ 97-104. Again, Plaintiffs allege that the Jump-Out Patrols are frequently conducted in Black neighborhoods and in the vicinity of Black businesses. Id. Plaintiffs allege that the tactics used under the MCSD Policing Program have resulted in a disproportionate rate of arrests between Whites and Blacks in Madison County. Id. at ¶ 106 (alleging that almost three quarters of the individuals arrested in Madison County between May and September of 2016 were Black).

According to Plaintiffs, the racially discriminatory policing policies about which they complain were initiated in the 1980's, and were adopted and expanded at the time Randall Tucker ("Tucker") became Sheriff of Madison County, in 2012. Id. at ¶¶ 134-35. For example, Plaintiffs allege that Tucker has maintained the pre-existing General Roadblocks Policy that allows MCSD deputies to "conduct random roadblocks." Plaintiffs challenge this policy on the grounds that it does not place explicit, neutral limitations on conduct that can be used by deputies when performing the roadblocks, and it does not require deputies to use race-neutral criteria when selecting roadblock locations. Id. at ¶¶ 139-40.

4

Plaintiffs also allege that Tucker has exhibited deliberate indifference toward the constitutional violations resulting from the policing policies used by the MCSD as evidenced by his (1) failing to investigate complaints of racially discriminatory practices, (2) hiring a deputy who had a history of using excessive force, (3) choosing to not establish rules or regulations that would prohibit racial bias, (4) deciding to not maintain data regarding the policies for statistical purposes, and (5) ceasing to maintain records of complaints made against MCSD deputies. Id. at ¶¶ 146-68. Likewise, Plaintiffs allege that Madison County has exhibited deliberate indifference toward the constitutional violations resulting from the policing policies used by the MCSD as evidenced by its failing to (1) establish policies to prohibit racially discriminatory policing practices and/or unreasonable searches and seizures, (2) train and supervise MCSD personnel in order to prevent them from using unconstitutional policing policies, (3) monitor MCSD deputies to ensure that the policing policies they use comply with constitutional requirements, and/or (4) discipline MCSD deputies who use racially discriminatory policing practices. Id. at ¶¶ 169-74.

Based on these allegations, Plaintiffs filed a Complaint in this Court seeking relief under 42 U.S.C. §§ 1983 and 2000(d) against Madison County, Sheriff Tucker, and multiple John Doe Deputies. In their Complaint, Plaintiffs first request that they

be permitted to proceed as the following class:

> People who (1) are, or who appear to be, Black and those
> in their company, and (2) were, are, or will be in
> Madison County, and (3) were, are, or will be subject to
> the MCSD's policy, custom, and/or practice of
> systematically executing unreasonable searches and
> seizures of persons, homes, cars, and property on the
> basis of race.

<u>Id.</u> at ¶ 300.  As to themselves and the putative class members,
Plaintiffs request relief under Section 1983 on claims that their
constitutional rights, as protected by the Fourth and Fourteenth
Amendments, have been violated because the policing policies and
practices used by the MCSD are targeted at Blacks, and have
resulted in unreasonable searches and seizures (i.e. searches and
seizures that are conducted without reasonable suspicion or
probable cause, and are often accompanied by the use of excessive
force).  <u>Id.</u> at ¶¶ 310-15.  Plaintiffs, individually and on behalf
of the class, also request relief under 42 U.S.C. § 2000(d) on the
grounds that the subject policing polices have been partially
funded with federal dollars.  <u>Id.</u> at ¶¶ 321-24.  In addition to
seeking declaratory relief, Plaintiffs request that the Court issue
an injunction:

(1) barring the "MCSD from continuing its policy, practice, and/or
custom of unreasonably searching and seizing persons ... in the
absence of reasonable suspicion or probable cause and on the basis
of race ... ";

(2) requiring Madison County to establish an independent civilian complaint review board to investigate complaints against the MCSD, and to empower that board with the authority to (a) investigate the policies and practices of the MCSD, (b) subpoena documents and hear testimony during the course of its investigations, and (c) take binding disciplinary action against MCSD deputies who are found to have violated any individual's civil rights;

(3) requiring that Madison County and Tucker institute training, discipline, and promotion policies that are designed to eliminate the current policies and practices of MCSD that have caused the constitutional rights violations about which they complain;

(4) requiring that Madison County and Tucker appropriately and adequately supervise MCSD personnel;

(5) requiring that Madison County and Tucker implement measures under which deputies would be required to document, among other things, the locations and results (i.e. number and nature of issued citations/arrests, and the race and gender of those cited/charged) of roadblock and checkpoint stops;

(6) requiring that Madison County and Tucker retain the documentation referenced above in a computerized database;

(7) requiring that Madison County and Tucker publically disclose data gathered through the above referenced documentation;

(8) requiring that Madison County and Tucker monitor and audit the policies and practices of the MCSD to ensure they comply with constitutional and statutory requirements;

(9) requiring that Madison County and Tucker (1) "acknowledge the role of policing in past and present injustice and discrimination" and (2) acknowledge "how it is a hurdle to the promotion of community trust"; and

(10) requiring that Madison County and Tucker "embrace a guardian mind set to build public trust and legitimacy by adopting procedural justice as the guiding principle for internal and external policies and practices to guide their interactions with the citizens they serve."

Plaintiffs have now moved for certification of their class action claim.


## II. Analysis

Plaintiffs have moved for class action certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure. It is well settled that the district court must conduct a "rigorous analysis" of all of the requirements for certification under Rule 23, see Castano v. American Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996)(citing General Tel. Co. of Southwest v. Falcon, 457 U.S. 147 (1982)), and that Plaintiffs bear the burden of proving that those requirements are satisfied. See e.g. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule — that is,

8

he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). As a general rule, a district court has broad discretion when deciding a motion for class certification. See Allison v. Citgo Petroleum Corp., 151 F.3d 402, 408 (5th Cir. 1998). In exercising its discretion, the court may not consider the merits of the plaintiffs' claims at the certification stage, see Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974), but may permissibly look past the pleadings to the record and any other completed discovery when deciding whether a class should be certified.

For a lawsuit to proceed as a class action, all of the requirements of Rule 23(a) and at least one of the alternative requirements of Rule 23(b) must be satisfied. See Allison, 151 F.3d at 411. Rule 23(a) of the Federal Rules of Civil Procedure provides:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). As Plaintiffs have moved for certification

9

under Rule 23(b)(2), they also bear the burden of showing:

> (b) Types of Class Actions.  A class action may be maintained if  Rule 23(a) is satisfied and if:
>
> ...
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final  injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

FED. R. CIV. P. 23(b)(2).

In their Motion for Class Certification, Plaintiffs now seek to certify classes different than the one presented in their Complaint.   Again,  in  the  Complaint,  Plaintiffs  requested certification of the following class:

> People who (1) are, or who appear to be, Black and those in their company, and (2) were, are, or will be in Madison County, and (3) were, are, or will be subject to the  MCSD's  policy,  custom,  and/or  practice  of systematically  executing  unreasonable  searches  and seizures of persons, homes, cars, and property on the basis of race.

Compl., ¶ 300.  In moving for class certification, however, Plaintiffs now seek to certify and represent a "Targeting Class", which would be comprised of "all Black persons who presently or in the future will reside in or travel through Madison County."  See Mot. for Class Cert. [Docket No. 231], 3.  Plaintiffs also seek to certify and represent two subclasses.  The first subclass is referred to as the "Roadblock Subclass", which would be comprised of "all Black persons who travel or will travel by car through majority-Black areas of Madison County."  Id. The second subclass

10

is the "Pedestrian Subclass", which would be comprised of "all Black persons who travel or will travel by foot in Madison County's majority-Black neighborhoods." <u>Id.</u> Plaintiffs contend that the common questions with respect to the proposed classes include:

> [W]hether (i) the MCSD has a policy of targeting Black communities and racially profiling Black individuals, and whether this policy violates the Equal Protection Clause; (ii) whether the MCSD has a policy, custom, or consistent practice of conducting roadblocks in majority-Black areas of Madison County for purposes of crime control, and whether the roadblocks carried out pursuant to this policy are consistent with the requirements of the Fourth and Fourteenth Amendments; and (iii) whether the MCSD has a policy, custom, or consistent practice of engaging in searches and seizures of Black persons in Madison County in the absence of individualized reasonable suspicion, and if so, whether the searches and seizures carried out pursuant to this policy are consistent with the requirements of the Fourth and Fourteenth Amendments.

<u>Id.</u> at 3-4.

Before conducting a Rule 23 analysis with respect to any of the proposed classes, the Court must determine whether membership in those classes is ascertainable by objective criteria. <u>See</u> <u>e.g.</u> <u>Frey v. First Nat'l Bank SW</u>, 602 F. App'x 164, 168 (5th Cir. 2015)("We have stated that "in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.")(internal citations omitted). Although the Court recognizes that the strict ascertainability requirements associated with class action claims seeking damages under Rule 23(a) do not apply with the same vigor to class actions complaints seeking prospective injunctive relief under Rule 23(b)(2), here the

11

Court would have no ability to ascertain the membership of the proposed subclasses.

The Roadblock Subclass sought to be certified by Plaintiffs would be comprised of Black persons traveling by car "<u>through majority-Black areas of Madison County</u>." Similarly, the Pedestrian Subclass would be comprised of Black persons traveling on foot "<u>in Madison County's majority-Black neighborhoods</u>." These subclasses beg the questions of "What constitutes a majority-Black area or a majority-Black neighborhood?", and "Where are such areas and/or neighborhoods are geographically located in Madison County?" Thus this case differs greatly than those upon which Plaintiffs rely in arguing that an ascertainability requirement does not apply in civil rights actions.

For example, Plaintiffs cite to <u>Marrow v. Washington</u>, 277 F.R.D. 172 (E.D. Tex. 2011), a case in which a class comprised of members of racial or ethnic minority groups who were subject to being stopped by law enforcement for alleged traffic violations was certified. In <u>Marrow</u>, however, the class was specifically limited to individuals who were traveling in, through, or near the City of Tenaha, Texas. Similarly, in the case of <u>Johnson v. City of Opelousas</u>, a class was certified comprising of "all persons who have been or in the future will be arrested or detained under § 18.8.1 of the Opelousas Code". Because the class was limited to individuals who were arrested or detained under a city ordinance,

membership in the class would have necessarily been limited to individuals within the boundaries of the city.  In both of these cases, membership in the classes was readily ascertainable based on the class definition that delineated specific geographic boundaries, i.e. city limits.

Here, because the phrases majority-Black areas and majority-Black neighborhoods are vague and ambiguous, the Court finds Plaintiffs have failed to show that membership in those classes can be ascertained with any degree of certainty.  Additionally, because membership in the subclasses cannot be ascertained with any degree of certainty, it is impossible to find that the majority of the subclass members face future harm as is required to certify a class under Rule 23(b)(2).  See  Maldonado v. Ochsner Clinic Found., 493 F.3d 521, 525 (5th Cir. 2007)(explaining that "Rule 23(b)(2) certification is ... inappropriate when the majority of the class does not face future harm.").  For these reasons, the Court finds the Motion for Class Certification, to the extent it seeks to certify the proposed Roadblock Class and Pedestrian Class, should be denied.

The Court likewise finds that the Targeting Class, which would be comprised of "all Black persons who presently or in the future will reside in or travel through Madison County", cannot presently be certified.  According to the pleadings, the common question respecting this class is "whether the MCSD has a policy of

13

targeting Black communities and racially profiling Black individuals, and whether this policy violates the Equal Protection Clause." Mot. for Class Cert., 3.  Even if the Court were to find that the requirements of Rule 23(a) were satisfied with respect to this proposed class, it could not presently find that the requirements of Rule 23(b)(2) have likewise been satisfied.

The United States Court of Appeals for the Fifth Circuit recently again held that the following three requirements must be satisfied before a class can be certified under Rule 23(b)(2): "(1) class members must have been harmed in essentially the same way; (2) injunctive relief must predominate over monetary damage claims; and (3) the injunctive relief sought must be specific." Ward v. Hellerstedt, --- F. App'x ---, 2018 WL 5045675, at 10 (5th Cir. Oct 16, 2018)(internal citations omitted).  "[S]atisfaction of these requirements is premised on common behavior by the defendant toward the class, as opposed to the presence of common issues." Id. Class members are "'harmed in essentially the same way' where they have each been subject to the same allegedly wrongful *policy*, despite variations in the degree of damages suffered by each." Id.

Here, the policy underlying the common question presented by the Targeting Class concerns the targeting of Black communities and the racial profiling of Black individuals.  It has not been shown, however, that all of class representatives have been subjected to the alleged policy.  For example, in the Complaint, Plaintiffs

14

Khadafy and Quinnetta Manning allege that MCSD deputies stormed their apartment, and demanded that they sign false witness statements regarding one of their neighbors.  Compl. at ¶ 211. When they refused, the deputies allegedly hand-cuffed Khadafy Manning and choked him.  Id. at 221.  After Khadafy Manning again refused to sign the false witness statement, the deputies allegedly dragged him out of his apartment, shoved him into a patrol car, and beat him on the head and chest.  Id. at ¶¶ 228 and 231.  Khadafy Manning further alleges that several months later, MCSD deputies retaliated against him by again placing him in hand-cuffs, searching his vehicle, and issuing him a citation for driving with a suspended license.  Id. at 237-38.

While the alleged actions taken by the MCSD deputies are constitutionally suspect, there has been no showing that they were taken based on a wide-spread policy aimed at targeting Black communities and/or engaging in racial profiling.  Instead, the allegations suggest that the Mannings were specifically sought out by the MCSD deputies based on their living in close proximity to the neighbor against whom the deputies wanted false witness statements, and then Khadafy Manning was allegedly subjected to a false arrest and the use of excessive force when he refused to provide such statement.  Because the allegations in the Complaint do not show that the Mannings were subjected to the same Black community-wide targeting/racial profiling policies that form the

15

common question underlying the Targeting Class, i.e. they were not harmed in essentially the same way as the other putative members of the class, the Targeting Class cannot presently be certified under Rule 23(b)(2).

In sum, the Court finds that the class and subclasses proposed by Plaintiffs in this case cannot now be certified because the members of the subclasses are not ascertainable, and it has not been shown that all of the members of Targeting Class, which would necessarily include class representatives Khadafy and Quinnetta Manning, have been harmed by the allegedly discriminatory policy that forms the common question with respect to that class.  As opposed to dismissing the class action claim at this time, however, the Court will grant Plaintiffs leave to amend their Complaint to attempt to cure the defects in their allegations.  As Plaintiffs will be granted leave to amend their Complaint, the Motions of Defendants for Summary Judgment will be dismissed, without prejudice, thereby permitting Defendants to again seek summary judgment after the amended complaint is filed or the time period for so doing has expired.

## IV.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Class Certification [Docket No. 231] is hereby denied.

16

IT IS FURTHER ORDERED that Plaintiffs are hereby granted thirty days, up to and including February 4, 2019, to file an Amended Complaint in this case setting forth the proposed classes they seek to certify, and correcting the pleading deficiencies identified in this Opinion and Order.

IT IS FURTHER ORDERED that the Motions of Defendants for Summary Judgment on Plaintiffs' claims [Docket Nos. 209, 211, 218, 220, 222, 228, and 256] are hereby dismissed without prejudice thereby permitting Defendants to again seek summary judgment after the amended complaint is filed, or the time period for so doing has expired.

IT IS FURTHER ORDERED that all other motions filed in conjunction with the class certification issue [Docket Nos. 237, 263, 269, 270, 272, 274, 285, 291, 307, 316, 318, and 320] are hereby dismissed as moot.

SO ORDERED this the 4th day of January, 2019.


                        s/ William H. Barbour, Jr.
                        UNITED STATES DISTRICT JUDGE

17