**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

LATOYA BROWN; LAWRENCE
BLACKMON; KHADAFY MANNING;
QUINNETTA MANNING; NICHOLAS
SINGLETON; STEVEN SMITH; BESSIE
THOMAS; and BETTY JEAN WILLIAMS
TUCKER, individually and on behalf of a
class of all others similarly situated,

    Plaintiffs,

       v.

MADISON COUNTY, MISSISSIPPI;
SHERIFF RANDALL S. TUCKER, in his
official capacity; and MADISON COUNTY
SHERIFF'S DEPUTY SLADE MOORE, in
his individual capacity,

    Defendants.

Civil Action No.
3:17-cv-00347-CWR-LRA

**<u>ORDER AND CONSENT DECREE</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................. 1

      A.  The Action ............................................................................................... 1

      B.  Mutual Recognition of Principles ........................................................... 1

II.     GENERAL PROVISIONS ................................................................................... 1

III.    POLICING POLICIES ........................................................................................ 3

      A.  Unbiased Policing Policy ........................................................................ 3

      B.  Checkpoint Policy .................................................................................... 3

      C.  Pedestrian Stop Policy ............................................................................ 3

      D.  Training and Implementation ................................................................... 3

      E.  Supervision ............................................................................................. 4

IV.    COMMUNITY ADVISORY BOARD ................................................................ 5

      A.  Establishment of Community Advisory Board ....................................... 5

      B.  Data Provision ........................................................................................ 9

V.     MISCELLANEOUS .......................................................................................... 10

*EXHIBIT A: UNBIASED POLICING POLICY* ...................................................... 13

*EXHIBIT B: CHECKPOINT POLICY* ..................................................................... 15

*EXHIBIT C: PEDESTRIAN STOP POLICY* ............................................................ 22

## I.      INTRODUCTION

### A.      <u>The Action</u>

1.      This class action lawsuit for declaratory and injunctive relief (the "<u>Action</u>") was filed on May 8, 2017, against Madison County, Mississippi ("<u>Madison County</u>"), and Sheriff Randall C. Tucker ("<u>Sheriff Tucker</u>"), in his official capacity (hereinafter referred to individually and collectively as "<u>Defendants</u>").  The individual plaintiffs are Latoya Brown, Lawrence Blackmon, Khadafy Manning, Quinnetta Thomas Manning, Nicholas Singleton, Steven Smith, Bessie Thomas, and Betty Jean Williams Tucker (hereinafter referred to individually and collectively as "<u>Plaintiffs</u>"). Plaintiffs and Defendants are from time to time referred to hereinafter individually as a "Party" and collectively as the "Parties."

2.      Plaintiffs allege that Defendants, through the Madison County Sheriff's Department (the "<u>MCSD</u>"), engage in policing policies, practices, and customs that violate the Fourth and Fourteenth Amendments to the United States Constitution and Title VI of the Civil Rights Act of 1964, 42 U.S. § 2000d.  Defendants deny Plaintiffs' allegations.

### B.      <u>Mutual Recognition of Principles</u>

The Parties recognize the importance of the rights protected by the Fourth and Fourteenth Amendments to the United States Constitution.  Accordingly, and in the interest of avoiding costly and protracted litigation, the Parties have reached a settlement of all the claims in the Action which includes the imposition of this Order and Consent Decree (the "<u>Consent Decree</u>").

## II.     GENERAL PROVISIONS

1.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. Venue is proper in the Southern District of Mississippi pursuant to 28 U.S.C. § 1391.

2.      This Consent Decree shall become effective and binding upon the Parties immediately upon the Court's entry hereof (the "<u>Effective Date</u>").

3.      The Consent Decree shall be in effect for four (4) years unless extended by the Court upon a showing that Defendants have not substantially complied with the consent decree.

4.      The Court shall retain jurisdiction to enforce the terms of the Consent Decree, including but not limited to the power to ensure that the Community Advisory Board established by Section IV hereof is provided with all necessary and relevant information and documents provided for in that Section IV.

5.      Any action to enforce this Consent Decree shall only be brought in the United States District Court of the Southern District of Mississippi, Northern Division.

6.      The Consent Decree shall be enforceable by each of the named individual Plaintiffs.  No Defendant shall object to the standing of any then-existing named Plaintiff in any contempt proceeding to enforce any provision of this Consent Decree.

7.      Plaintiffs may substitute another Madison County adult resident as a named Plaintiff in the place of any currently named Plaintiff, upon a showing that good cause (including but not limited to the factors expressly enumerated in Rule 25 of the Fed. R. Civ. P.) exists for withdrawal of the current Plaintiff as to which substitution is sought, subject to the approval of the Court.  Plaintiffs shall submit, along with any motion to substitute, a declaration signed by the proposed substituted plaintiff stating that he or she is an adult Black resident of Madison County and that he or she has been subject to one or more vehicular checkpoints(s) and/or pedestrian stop(s) conducted by the MCSD on May 8, 2014 or later.  Defendants shall not object to substitution other than on grounds that (i) good cause does not exist for withdrawal of the current Plaintiff or (ii) Plaintiffs have failed to submit with the motion a declaration containing the terms set forth in this paragraph.  Disinterest alone by a named Plaintiff shall not constitute good cause.  In the event that, at some point in the future, the Court must resolve the merits of

2

the Second Amended Complaint, Defendants may nevertheless contest whether any substituted

Plaintiff has proven an injury which may be redressed under federal law.

### III.     POLICING POLICIES

#### A.      Unbiased Policing Policy

The MCSD will adopt the Unbiased Policing Policy attached hereto as Exhibit A.

#### B.      Checkpoint Policy

The MCSD will adopt the Checkpoint Policy attached hereto as Exhibit B.

#### C.      Pedestrian Stop Policy

The MCSD will adopt the Pedestrian Stop Policy attached hereto as Exhibit C.

#### D.      Training and Implementation

1.      Defendants shall implement and ensure compliance by the MCSD and MCSD

personnel with the policies described in Sections III.A., III.B., and III.C. above and set forth in

Exhibits A, B, and C to this Consent Decree (the "Agreed Policies").  For the avoidance of

doubt, during the pendency of the Consent Decree, Defendants shall not amend, revise, or

otherwise modify the Agreed Policies unless such amendment, revision, or modification is

expressly authorized by further order of the Court.

2.      The MCSD shall utilize an appropriately qualified training officer to oversee and

review the development and implementation of the MCSD's training program as set forth in this

section.

3.      The MCSD shall (i) distribute to all MCSD personnel copies of the Agreed

Policies as soon as practicable following Court approval of the Consent Decree; (ii) conduct an

in-person training concerning the Agreed Policies; (iii) ensure that all MCSD personnel read and

familiarize themselves with the Agreed Policies; and (iv) ensure that all newly hired MCSD

personnel are informed of the contents of these policies.

4.      At each annual meeting of MCSD personnel that is held during the term of the Consent Decree, the MSCD shall conduct anti-bias training which shall include reference to and discussion of the Unbiased Policing Policy.  The MCSD shall maintain a sign in sheet of personnel attending the Annual Meeting.

5.      The MCSD shall create and retain records showing that the training referred to in Sections III.D.3. and III.D.4. has been accomplished, along with sign in sheets, and shall provide copies of such records to the Community Advisory Board established pursuant to Section IV of this Consent Decree and to Plaintiffs.

6.      The MCSD shall maintain a complete, up-to-date manual of all MCSD policies and procedures that includes an index and is organized and maintained in a manner that makes it easily accessible and clear to deputies, employees, and others.  Deputies and employees will have access to the manual in hard copy form and/or in a readily usable electronic format. Revisions and updates to MCSD policies and procedures referenced herein will be incorporated into the manual.  The policy and procedure manual in hard copy form shall be signed and dated by the Sheriff of Madison County.  Any changes to the policies and procedures will also be incorporated, dated, and signed by the Sheriff.

7.      The MCSD will not request that any other law enforcement agency take any actions that would in any way serve to circumvent the Consent Decree and/or the Agreed Policies, including but not limited to provisions in paragraph III.F of the Checkpoint Policy.

**E.      Supervision**

The MCSD shall develop and implement a system of regular performance evaluations for MCSD personnel, including both deputies and supervisors, which shall include evaluations of compliance by such personnel with MCSD policies.  These evaluations shall be conducted at

least annually. Written records of such evaluations must be maintained in each officer's personnel file.

## IV.     COMMUNITY ADVISORY BOARD

### A.     <u>Establishment of Community Advisory Board</u>

1.      Within one (1) month of the Effective Date, Defendants will establish a Community Advisory Board ("<u>CAB</u>") with five board members.  Each Supervisor with the Madison County Board of Supervisors shall appoint one (1) board member to the CAB from his or her designated district. The CAB members shall be appointed to serve for a one (1) year term, and may be reappointed for additional one (1) year terms.  If at any time a CAB member resigns or can no longer serve, the Supervisor who appointed the board member shall appoint a replacement within 30 days of such CAB member's resignation.  The following persons are not eligible to serve on the Community Advisory Board:  (a) current employees of the MCSD at the time of appointment; and (b) current Madison County employees at the time of appointment. Should any CAB member accept employment by the MCSD or Madison County, the board member shall immediately resign from the CAB and be replaced in the manner described in this paragraph.

2.      The CAB shall meet in person, at least quarterly, and shall make reasonable recommendations to the Sheriff of Madison County regarding compliance with the terms of the Consent Decree in regard to the MCSD's implementation of and compliance with the Checkpoint Policy and the Pedestrian Stop and Enforcement Policy, the MCSD's conducting of checkpoints and/or pedestrian stops, the provision of Policing Data as set forth in Section IV.B, and the provisions of Sections III.D.3, III.D.4, and III.D.5 regarding training, record-keeping, and disclosure.  At least three (3) of the five (5) CAB Members shall constitute a quorum at a meeting.  If a quorum is not present at a quarterly meeting, the meeting shall be rescheduled in

order for the meeting to take place with a quorum within the quarter. Any action required or permitted to be taken by the CAB must be taken upon the affirmative vote of a majority of the CAB Members constituting a quorum, which vote shall constitute a valid decision of the CAB. The CAB shall keep minutes of each meeting (including the identities of the CAB members in attendance, the length and date of the meeting, and a summary of the discussions held). Copies of the minutes will be maintained by the CAB in unredacted form until the Consent Decree is terminated. Within 30 days after each meeting of the CAB a copy of the minutes will be provided to Plaintiffs. Any confidential information found in these minutes shall be redacted if required by Mississippi and/or federal law.

      3.     The Sheriff of Madison County will include on his or her website (the "MCSD website"), in a prominent location, information regarding the formation and existence of the CAB. The names of each CAB member and their contact information will be placed on the MCSD website. Each CAB meeting will be announced two weeks in advance on the MCSD website. Each CAB meeting will begin with a reasonable time, but not more than one hour, unless extended by the CAB in its discretion, for the members of the public to present any complaints or comments they have regarding the MCSD. All other portions of the CAB meeting shall not be open to the public. The CAB will have the discretion to reasonably manage the time, order, and the manner of how these complaints are presented during the open comment period.

      4.     Civilian complaints regarding the MCSD may be made to the CAB. The public will be informed on the MCSD website that they can make complaints about the MCSD to the CAB member from the relevant supervisory District through writing that member or talking to that member in person; by scheduling of an in-person, private appointment with such CAB member; or by submitting a complaint in written form to the CAB. All civilian complaints

having to do with the MCSD's conducting of checkpoints or pedestrian stops will be forwarded to the Sheriff for his or her review.  The Sheriff shall, within a reasonable time, inform the CAB of his response to the complaint with a reasonably detailed explanation and, if any, a list of any documents or other materials he or she reviewed while arriving at his response.  The Sheriff's response will be subject to the provisions of the Public Records Act. All complaints unrelated to checkpoints or pedestrian stops will be forwarded to the Sheriff without the CAB having any further obligations.

5.      Individual members of the CAB may make a written recommendation regarding any alleged non-compliance with the Consent Decree in regard to the MCSD's implementation of and compliance with the Checkpoint Policy and the Pedestrian Stop and Enforcement Policy, the MCSD's conducting of checkpoints and/or pedestrian stops, the provision of Policing Data as set forth in Section IV.B, and the provisions of Sections III.D.3, III.D.4, and III.D.5 regarding training, record-keeping, and disclosure.  If any such CAB member makes such a written recommendation, that member shall provide a copy to the CAB and the Sheriff of Madison County.  That written recommendation shall remain confidential between the CAB and the Sheriff for forty-five (45) days after it is delivered in order for the Sheriff to respond to that recommendation.  The Sheriff's response to the recommendation shall contain a reasonably detailed explanation and, if any, a list of any documents or other materials he or she reviewed while arriving at his response.  The CAB member shall then provide to Plaintiffs the recommendation and the Sheriff's response and disclose whether that member is satisfied with the Sheriff's response.  Any information provided by the Sheriff in the response to the CAB member's recommendation or the disclosure by the CAB member to Plaintiffs shall be subject to

the provisions of the Mississippi Public Records Act.  The CAB member and Plaintiffs shall then have standing to initiate a contempt proceeding regarding that written recommendation.

6.      The CAB itself may, by a majority vote, make a written recommendation to the Sheriff of Madison County regarding any alleged non-compliance with the Consent Decree in regard to the MCSD's implementation of and compliance with the Checkpoint Policy and the Pedestrian Stop and Enforcement Policy, the MCSD's conducting of checkpoints and/or pedestrian stops, the provision of Policing Data as set forth in Section IV.B, and the provisions of Sections III.D.3, III.D.4, and III.D.5 regarding training, record-keeping, and disclosure.  The CAB shall provide a copy of such recommendation to the Sheriff of Madison County.  That written recommendation shall remain confidential between the CAB and the Sheriff for forty-five (45) days after it is delivered in order for the Sheriff to respond to that recommendation. The Sheriff's response to the recommendation shall contain a reasonably detailed explanation and, if any, a list of any documents or other materials he or she reviewed while arriving at his response. The CAB shall then provide to Plaintiffs the recommendation and the Sheriff's response and disclose whether the CAB is satisfied with the Sheriff's response.  Any information provided by the Sheriff in the response to the CAB recommendation or the disclosure by the CAB to Plaintiffs shall be subject to the provisions of the Mississippi Public Records Act. The CAB, by majority vote, and Plaintiffs shall then have standing to initiate a contempt proceeding regarding that written recommendation.

7.      The CAB's and a CAB member's standing to file a contempt proceeding regarding the terms of the Consent Decree shall expire upon the expiration of the four (4) year term of the Consent Decree, unless extended pursuant to Section II.2 above.

8.      The CAB and CAB members shall have the authority to make reasonable requests for information from the MCSD relating to recommendations or civilian complaints, as set forth in Sections IV.A.4, 5, and 6 above.  Such information shall be provided within thirty (30) days to the CAB without the need for a public records request and at the expense of the MCSD; provided, the Sheriff will not provide any requested information if the particular information is exempt from the Public Records Act. If the Sheriff withholds information pursuant to a claimed exemption under the Public Records Act, the Sheriff will identify with reasonable specificity the exemption claimed and the records withheld in his or her response to the request.

9.      The CAB shall not have any law enforcement authority or authority to manage or operate the MCSD.  The authority of the CAB shall be limited to that stated this Section IV.

10.      The Parties do not waive their right to seek documents or other materials withheld from the CAB or Plaintiffs pursuant to the provisions of the Public Records Act in connection with any subsequent Court proceedings.

**B.      Data Provision**

1.      The MCSD will provide to the CAB and to Plaintiffs, on a quarterly basis, certain data and information regarding Checkpoints and Pedestrian Stops as described below (the "Policing Data").  The Policing Data shall be provided within thirty (30) days of the end of any calendar quarter to both the CAB and to Plaintiffs with the MCSD bearing the cost of data preparation and delivery.  Data shall be provided in electronic OCR readable format, if available. Otherwise, data shall be provided in hard copy.  A form of the Summary Report referenced in Checkpoint Policy in §VII.7 is attached as Exhibit 2 to the Checkpoint Policy.

2.      The Policing Data will include the following:

a.      **For Each Checkpoint**

The Summary Report referenced in the Checkpoint Policy in §VII.7.

9

b.    **For Pedestrian Stops**

All incident reports prepared as a result of or in connection with a pedestrian stop as required by the Pedestrian Stops and Enforcement Policy.

3.    Any member of the CAB shall have the right to make requests for any incident report relating to a checkpoint that is listed in the summary provided to the CAB, up to a total of twenty-five (25) per quarter across all CAB members.  The CAB may also request incident reports beyond this first twenty-five (25) by majority vote.  The incident report shall be provided within thirty (30) days to the CAB without the need for a public records request and at the expense of the MCSD.  Plaintiffs also shall have the right to request any incident report relating to a checkpoint that is listed in the summary without the need for a public records request, with up to twenty-five (25) incident reports per quarter provided without charge.  If Plaintiffs request more than twenty-five (25) incident reports in any quarter, the MCSD can charge the same amount as if the additional reports had been requested and produced pursuant to the Mississippi Public Records Act.  MCSD will provide incident reports requested by Plaintiffs within thirty (30) days of a written request.

4.    Any incident report relating to a pedestrian stop or a checkpoint provided under Section IV to the CAB or to Plaintiffs shall be redacted if required by Mississippi and/or federal law.

## V.    MISCELLANEOUS

1.    Defendants' consent to the imposition of this Consent Decree is not an admission by Defendants that any Defendant, the MCSD, or any deputy or employee of the MCSD has engaged in any unconstitutional, illegal, or otherwise improper conduct.

2.      Nothing in this Consent Decree is intended to limit the lawful authority of the Madison County Board of Supervisors or of the Sheriff of Madison County to oversee the operations of the MCSD.

3.      Except as otherwise set forth herein, the parties shall bear their own costs and fees, provided, however, that Defendants are responsible for providing necessary support and resources to the MCSD to enable the MCSD to fulfill its obligations under this Consent Decree, and as otherwise necessary to ensure that the requirements of this Consent Decree are fully implemented and sustained.

4.      If, after the Effective Date hereof, any provision of this Consent Decree is held to be illegal, invalid, or unenforceable, the remaining provisions shall continue in full force and effect.

5.      This Consent Decree shall be binding on the Parties and any successors thereto, including any person substituted as Plaintiff pursuant to Section II.7 hereof, and any Sheriff of Madison County who may succeed Sheriff Randy Tucker while this Consent Decree remains in effect.

6.      Upon the entry of the Consent Decree by the Court, Defendants' obligation to maintain documents, tangible items and/or electronically stored information (ESI) in connection with the Action shall cease; provided, however, that this does not alter or impair any obligations of Defendants to maintain records as required by this Consent Decree.  These documents are:

1.      Training documents, including policies and sign in sheets;

2.      Performance evaluations for MCSD personnel;

3.      Minutes from CAB meetings;

4.      Incident reports for checkpoints, including those relating to arrests and searches;

4.      Incident reports for pedestrian stops;

5.      Documents provided to the CAB by the MCSD;

6.      Complaints received by the CAB or MCSD and any responses to those complaints;

7.      Written recommendations made by the CAB or any of its members and responses to those recommendations;

8.      Information required to be posted to the MCSD website;

9.      Records required by Section IV.B.4 the Unbiased Policing Policy; and

10.     Records required by Sections III.A, III.D, III.F, VI, VII, and VIII.2 of the Checkpoint Policy.

[*Remainder of page intentionally left blank*]

12

*EXHIBIT A: UNBIASED POLICING POLICY*

## UNBIASED POLICING POLICY

### I.        PURPOSE

The purpose of this policy is to emphasize this agency's commitment to unbiased, equitable treatment of all persons.

### II.       POLICY

Persons having contact with members of this agency shall be treated in a fair, impartial, equitable, and objective manner, in accordance with law, and without consideration of their individual demographics as defined in this policy.

### III.      DEFINITIONS

*Biased Policing*: Discrimination in the performance of law enforcement duties or delivery of police services, based on personal prejudices or partiality of officers toward classes of individuals or persons based on individual demographics.

*Fair and Impartial Treatment*: The belief that persons, irrespective of race or other distinctions, shall be treated in the same basic manner under the same or similar circumstances. This does not mean that all persons in the same or similar circumstances can or must be treated identically. Reasonable concessions and accommodations may be, and sometimes should be made, when dealing with individuals with physical or mental disabilities, injury, illness, or similar conditions, or when information about them necessitates different treatment.

*Individual Demographics*: For the purposes of this policy, personal characteristics, to include, but not limited to race, ethnic background, national origin, gender, gender identity, sexual orientation, religion, socioeconomic status, age, disability, cultural group, or political status.

*Police Services*: Sometimes referred to as community caretaking functions, these are actions and activities that may not directly include enforcement of the law but that contribute to the overall well-being and safety of the public. These include, but are not limited to, such tasks as assistance at fire scenes, traffic accidents, and medical emergencies; lifesaving services; crime prevention; preventive patrol; traffic control; public information; education; and similar activities.

### IV.      PROCEDURES

####         A.        Fair and Impartial Treatment

                1.        Biased policing is prohibited both in enforcement of the law and the delivery of police services.

2.      Officers shall take equivalent enforcement actions and provide equal services to all persons in the same or similar circumstances.

3.      Officers shall not consider individual demographics when performing law enforcement duties or delivering police services except when such characteristics are part of a specific subject description.

4.      Unless exigent circumstances exist, officers shall not engage in a law enforcement matter when it involves a family member, friend, relative, or other person with whom he or she has a personal relationship, such that the officer's objectivity may be, or may appear to be, compromised. In situations where the officer is personally involved, he or she will summon other officers for assistance.

**B.    Compliance**

1.      Officers who witness or who are aware of instances of biased policing shall report the incident to a supervisor. Also, where appropriate, officers are encouraged to intervene at the time the biased policing incident occurs.

2.      Depending on the nature and seriousness of the incident, supervisors may provide the involved officer(s) with informal, non-punitive intervention such as training and counseling.

3.      All external complaints and internal complaints that cannot be resolved effectively and appropriately by supervisory personnel—or that are determined to be potentially serious in nature—shall be forwarded to the Chief Deputy for investigation.

4.      The Chief Deputy shall maintain data relating specifically to complaints of biased policing. Information shall be provided to the Chief Deputy in a manner most suitable for administrative review, problem identification, and development of appropriate corrective actions.

**C.    Training**

All employees will receive basic and periodic in-service training and, where deemed necessary, remedial training on subjects related to police ethics, cultural diversity, police-citizen interaction, standards of conduct, conducting motor vehicle stops, implicit bias, and related topics suitable for preventing incidents of biased policing.

*EXHIBIT B: CHECKPOINT POLICY*

<u>POLICY AND PROCEDURE</u>
<u>CHECKPOINT POLICY</u>

**I.      PURPOSE**

The purpose of this policy is to provide procedures for the physical construction and operation of all Department checkpoints in order to maximize the deterrent effect and increase the perception of "risk of apprehension" of motorists who would operate a vehicle while impaired by alcohol or other drugs or who are in violation of other traffic safety laws in the State of Mississippi.  This policy governs all checkpoints or roadblocks constructed or operated by Department personnel.

**II.     POLICY**

It shall be the policy of this department to implement a checkpoint program. This will be done as part of a comprehensive enforcement program. To ensure standardization of this program a clear and concise set of written guidelines has been developed governing procedure on how checkpoint will be operated within this Department.

To implement this policy this agency must:

1.      Conduct checkpoints only for constitutionally acceptable purposes.  Checkpoints or roadblocks shall not be conducted for purposes of general crime control or deterrence, narcotics interdiction or to check for outstanding warrants.

2.      Satisfy federal, state and local legal requirements.

3.      Conduct checkpoints with a minimal amount of intrusion or motorist inconvenience.

4.      Assure the safety of the general public as well as law enforcement officers involved.

5.      Provide for an objective site selection process based on relevant data without relying in any way on the race or ethnicity of the residents of a particular location or the perceived race or ethnicity of motorists passing through a particular location.

6.      Officer selection should be based on experience and training.

7.      Operational procedure will be covered during a briefing period prior to each checkpoint.

### III.    PROCEDURES

A.    A method for selecting motorists to be stopped, e.g., every vehicle, every fifth vehicle, etc. should be decided prior to each checkpoint to ensure objectivity.  Exceptions shall not be made to the method for selecting motorists to be stopped absent specific unusual circumstances.  Any exceptions must be documented.

B.    The role of each officer at each checkpoint should be determined.

C.    A predetermined area should be identified for the removal of vehicles that require further investigation.

D.    A record will be maintained containing the information set forth in Section VIII.

E.    Checkpoints are to be set up only by the patrol division of the Department using at least one marked MCSD vehicle, but any deputy or MCSD officer may assist in the checkpoint while wearing official MCSD identifying clothing.

F.    In order to avoid checkpoints where visitors to or residents of a housing complex cannot enter or exit the complex without passing through the checkpoint, checkpoints may not be conducted within one-quarter mile of the housing complexes identified in Exhibit 1. Provided, however, this provision shall not apply in the event of exigent circumstances or if prior written approval is obtained from the Sheriff or his or her Chief Deputy.

G.    All checkpoints must be approved by a MCSD patrol shift supervisor or supervisory officer responsible for MCSD's DUI enforcement grant (if any).

H.    MCSD personnel conducting a checkpoint shall not run or cause to be run, searches for outstanding warrants concerning drivers or their passengers in whole or in part on the basis of race or ethnicity.

I.    All interactions with pedestrians at checkpoints shall be governed by the Pedestrian Stops and Enforcement Policy and any other applicable MCSD policy.

J.    The department must be able to objectively outline criteria utilized in the site selection process:

1.    Traffic experiences.

a.    Unusual incidence of alcohol/drug or other traffic related crashes;

b.    Alcohol/drug impaired driving violations;

c.    Unusual number of night-time single vehicle crashes;

d.    Any other documented alcohol/drug or other traffic related vehicular Incidents;

e.    The location of establishments that sell liquor by the drink;

16

      f.      Special holidays or other occasions; and

      g.      Other objective criteria that may arise from time to time.

2.      Select locations which permit the safe flow of traffic through the checkpoint.

      a.      Consideration should be given to posted speed limits, traffic volume and visibility.

      b.      Ensure sufficient adjoining space is available to pull vehicles off the traveled portion of the roadway.

      c.      Consider other conditions that may pose a hazard.

      d.      The site should have sufficient visibility from each direction and sufficient illumination.

## IV.  PERSONNEL

1.      A sworn, uniformed officer will be assigned to provide on-scene supervision of the checkpoint.

2.      The checkpoint will be staffed by a sufficient number of uniformed personnel to assure a safe and efficient operation. Any officers not in official uniform must be wearing clothing that clearly identifies the officer as a MCSD officer

## V.  MOTORISTS WARNINGS/SAFETY METHODS

1.      Special care is required to warn approaching motorist of the checkpoint.

2.      Basic equipment may include, but is not limited to:

      a.      Warning signs placed in advance of the checkpoint.

      b.      Flares, fugues, or similar devices.

      c.      Safety cones or similar devices.

      d.      Marked patrol vehicles. Absent exigent circumstances, at least one marked patrol car with blue lights on must be at each checkpoint.

3.      The use, placement and types of traffic control devices must comply with federal, state, or local transportation codes.

## VI.  CONTINGENCY PLANNING

Any deviation from these procedures must thoroughly be documented with the reason for the deviation (i.e. traffic backing up, intermittent inclement weather).

## VII.    DATA COLLECTION AND EVALUATION

To monitor and ensure standardization, consistency, and compliance with policy, the following information must be recorded for each checkpoint:

1.    Time, date, and location of the checkpoint (including the cross streets that are in the closest proximity to the checkpoint's location).

2.    Objective reasons for conducting the checkpoint, which may include the following:

        a.    Unusual incidence of alcohol/drug or other traffic related crashed;

        b.    Alcohol/drug impaired driving violations;

        c.    Unusual number of vehicle crashes;

        d.    Any other documented alcohol/drug or other traffic related vehicular incidents;

        e.    The location of establishments that sell liquor by the drink;

        f.    Special holidays or other occasions (with such reason to be stated); and

        g.    Other objective criteria that may arise from time to time (which shall be described with reasonable particularity).

3.    The predetermined order of selecting motorists at the checkpoint.

4.    Identity of the supervisor who authorized the checkpoint.

5.    If the checkpoint is moved to a new location outside the area described by originally-recorded cross streets (e.g., to a different intersection), the new location will be treated as a new checkpoint.

6.    A record of any vehicular search, issuance of citation or arrest made at the checkpoint.  For the purpose of recorded information under this Section only, a "vehicular search" shall mean the search of any portion of the vehicle not in plain view or if a driver or any passenger exits the vehicle.

        a.    Incident reports, including written descriptions of the relevant facts and circumstances, shall be created for each arrest and for each vehicular search, regardless of whether the search results in an arrest.

18

7.    A summary report, which, at a minimum includes:

    a.    The information set forth in VII.1 through VII.5 above.

    b.    Citation numbers for each citation issued, the race of the person cited, and the offense for which the person was cited.

    c.    Incident report numbers for each arrest, the race of the person arrested, and the offense for which the person was arrested.

    d.    Each incident number for a vehicular search, along with the race of the person(s) subject to each vehicular search, and the result of the vehicular search (*e.g.*, arrest, citation, no action taken).

## VIII.  EXIGENT CIRCUMSTANCES CHECKPOINTS OR ROADBLOCKS

1.    Checkpoints (or roadblocks) not in compliance with this Policy may be established under constitutionally permissible exigent circumstances.  To the extent practicable, such checkpoints or roadblocks must comply with the requirements of this Policy.

2.    Documentation shall be prepared describing the exigent circumstances that justified the creation of the checkpoint or roadblock.

*[Remainder of page intentionally left blank]*

## CHECKPOINT POLICY
## EXHIBIT 1

*Canton Estates Apartments*
388 Ricks Dr. Canton, MS 39046

*Canton Family Units*
390 Ricks Dr. Canton, MS 39046

*Canton Garden Apartments*
619 MLK Dr. Canton, MS 39046

*Camden Park Apartments and Camden Park Phase II*
106 and 107 Parkview Dr. Canton, MS 39046

*Cypress Meadows Apartments*
373 S. Canal Street, Canton, MS 39046

*Joe Pritchard Homes*
201 Dobson Avenue, Canton, MS 39046

*Madison Heights Apartments*
707 Mace St. Canton, MS 39046

*Madison Park Apartments* (f/k/a *Meadows at Old Canton Apartments*)
110 Pine Knoll Drive, Ridgeland, MS 39157

*Pecan Village Apartments*
Hwy 16 West Canton, MS 39046

*Pinebrook Apartments*
107-109 Pine Knoll Drive, Ridgeland, MS 39157

*Sam Estes Estates*
101 King Ranch Cir. Canton, MS 39046

*Canton Manor*
1145 Tisdale Avenue, Canton, MS  39046

*Crestview Apartments*
1119 Hwy. 49, Flora, MS  39071

*Pride Garden Apartments*
264 Bannerman Drive, Flora, MS  39071

<u>**CHECKPOINT POLICY**</u>
<u>**EXHIBIT 2**</u>

[*Remainder of page intentionally left blank; see next page*]

# SUMMARY REPORT ON CHECKPOINT

| Date | Time | Location | Supervisor |
|------|------|----------|------------|
|      |      |          |            |

Prepared by: _____

Order of Selecting Motorist: _____

| **Reason for Checkpoint:** | **Check one or more** |
|----------------------------|------------------------|
| Unusual incidence of alcohol/drug or other traffic related crashes |  |
| Alcohol/drug impaired driving violations |  |
| Unusual number of vehicle crashes |  |
| Other documented alcohol/drug or other traffic incidents |  |
| Location of establishments that sell liquor by the drink |  |
| Special holiday or other occasion (Describe): |  |
| Other (Describe): |  |

| **Citation Number** | **Race** | **Offense** |
|---------------------|----------|-------------|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

| Incident Report No. | Race | Offense |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

| Incident Report No. | Race | Result of Search |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

*EXHIBIT C: PEDESTRIAN STOP POLICY*

## PEDESTRIAN STOPS AND ENFORCEMENT POLICY

It is the policy of the Madison County Sheriff's Department that all pedestrian stops should be initiated based on reasonable suspicion to believe that the individual being stopped has, is or is about to commit a violation of the law. A pedestrian is considered any individual who is not a driver or passenger of a vehicle and who is walking or standing at the time he or she is approached by an officer.  A "pedestrian stop" is an encounter between an officer and a pedestrian in which, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he or she was not at liberty to ignore the police presence and go about his or her business.

This policy does not prevent an officer from stopping a pedestrian for the purpose of questioning him so long as the person is free to leave and/or declines to answer any of the officer's questions at any point.

In the absence of reasonable suspicion, a person's failure to stop, failure to answer questions, decision to end the encounter or departure may not be used to justify the detention, search, citation or arrest of such person.

For the purposes of this Policy, personal characteristics, to include, but not be limited to race, ethnic background, national origin, gender, gender identity, sexual orientation, religion, socioeconomic status, age, disability, cultural group or political status should not be considered while making a pedestrian stop except when such characteristics are part of a specific subject description.

An incident report containing a narrative should be prepared on all pedestrian stops that result in a pat down, frisk, search and/or seizure of property or an arrest of a pedestrian.

22

**IT IS SO AGREED.**

This the <u>20th</u> day of September, 2019.

For Plaintiffs LATOYA BROWN, LAWRENCE BLACKMON, KHADAFY MANNING,
QUINNETTA MANNING, NICHOLAS SINGLETON, STEVEN SMITH, BESSIE THOMAS,
and BETTY JEAN WILLIAMS TUCKER:

_____
Joshua Tom

AMERICAN CIVIL LIBERTIES UNION
  OF MISSISSIPPI FOUNDATION
Joshua Tom (MSB #105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
Ezekiel Edwards (*pro hac vice*)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org

*Attorneys for Plaintiffs*

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
bonnie.jarrett@stblaw.com

23

For Defendants MADISON COUNTY, MISSISSIPPI and SHERIFF RANDALL C. TUCKER:

_Michael B. Wallace_
Michael B. Wallace

WISE CARTER CHILD & CARAWAY,
   P.A.
Michael B. Wallace (MSB #6904)
Charles E. Ross (MSB #5683)
James E. Graves (MSB #102252)
Charles E. Cowan (MSB #104478)
Post Office Box 651
Jackson, Mississippi 39205-0651
Telephone: 601-968-5534
Facsimile: 601- 944-7738
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com

KATIE BRYANT SNELL, PLLC
Katie Bryant Snell (MSB #103607)
P.O. Box 3007
Madison, Mississippi 39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

CURRIE JOHNSON & MYERS, P.A.
Rebecca B. Cowan (MSB #7735)
1044 River Oaks Dr.
Jackson, MS 39232
P.O. Box 750
Jackson, Mississippi 39205-0750
Telephone: 601-969-1010
Facsimile: 601-969-5120
bcowan@curriejohnson.com

PETTIS, BARFIELD & HESTER, P.A.
J. Lawson Hester (MSB #2394)
Jason Edward Dare (MSB # 100973)
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
Telephone: (601) 987-5300
Facsimile: (601) 987-5353
lhester@pbhfirm.com
jdare@phhfirm.com

*Attorneys for Defendants*

The foregoing is hereby **APPROVED** and **ORDERED** in the United States District

Court for the Southern District of Mississippi, Northern Division, this _____ day of

_____, 2019.

_____
CARLTON W. REEVES.
UNITED STATES DISTRICT JUDGE

24