UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| LATOYA BROWN; LAWRENCE BLACKMON; KHADAFY MANNING; QUINNETTA MANNING; NICHOLAS SINGLETON; STEVEN SMITH; BESSIE THOMAS; and BETTY JEAN WILLIAMS TUCKER, individually and on behalf of a class of all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>MADISON COUNTY, MISSISSIPPI; SHERIFF RANDALL S. TUCKER, in his official capacity; and and MADISON COUNTY SHERIFF'S DEPUTY SLADE MOORE, in his individual capacity,<br><br>   Defendants. | Civil Action No.<br>3:17-cv-00347-CWR-LRA |

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION FOR ENTRY OF CONSENT DECREE**

Plaintiffs Latoya Brown, Lawrence Blackmon, Khadafy Manning, Quinnetta Thomas Manning, Nicholas Singleton, Steven Smith, Bessie Thomas, and Betty Jean Williams Tucker ("Plaintiffs") and Defendants Madison County, Mississippi ("Madison County" or the "County") and Sheriff Randall S. Tucker, in his official capacity (the "Sheriff"; together with the County, "Defendants"; with Plaintiffs, the "Parties") respectfully submit this Joint Motion ("Joint Motion") for entry of the Consent Decree attached as Exhibit A to the Joint Motion ("Consent Decree") as an Order of this Court.

## INTRODUCTION

The Parties seek entry of the Consent Decree to resolve Plaintiffs' claims for declaratory and injunctive relief under 42 U.S.C. §§ 1983 and 2000d. In their operative Complaint, Plaintiffs allege that Defendants, through the Madison County Sheriff's Department (the "MCSD") violate the Fourth and Fourteenth Amendments to the United States Constitution in connection with pedestrian stops and vehicular checkpoints conducted by the MCSD. Plaintiffs seek certification of two classes of persons similarly situated. Defendants deny Plaintiffs' allegations. Plaintiffs and Defendants agree that it is in the Parties' best interest to fully and finally resolve this matter on mutually agreeable terms in order to avoid further protracted litigation. The Consent Decree resolves Plaintiffs' claims for declaratory and injunctive relief without certification of a class, and thus no parties other than Plaintiffs and Defendants provide or receive releases for any claims in connection with the resolution of Plaintiffs' claims and the entry of the Consent Decree.

The Parties have entered into the Consent Decree pursuant to a confidential Settlement Agreement (the "Settlement Agreement"). The Settlement Agreement also provides for monetary payments to be made to the Plaintiffs. The parties have agreed that the terms and amount of those payments are confidential. In addition, Plaintiffs Khadafy Manning and Quinnetta Thomas Manning (the "Manning Plaintiffs") have entered into a separate agreement with the County, Sheriff Tucker, and Defendant Slade Moore, sued by the Manning Plaintiffs in his individual capacity in Plaintiffs' Second Amended Complaint. That portion of the Parties' comprehensive settlement of this litigation resolves claims for money damages brought by the Manning Plaintiffs in connection with an incident that occurred in June 2016 at Quinnetta Thomas Manning's then-apartment (the "Apartment Incident"). The agreement (the "Apartment Incident Agreement") provides for monetary payments to the Manning Plaintiffs and for

dismissal with prejudice of the Manning Plaintiffs' claims for damages. The parties thereto have agreed that the terms of the Apartment Incident Agreement should remain confidential, although it is available to the Court upon request.

## **PROCEDURAL HISTORY**

This proposed class action, brought pursuant to 42 U.S.C. §§ 1983 and 2000d, was filed on May 8, 2017. Plaintiffs' original Complaint asserted class claims for declaratory and injunctive relief for alleged violations of the Fourth Amendment and the Fourteenth Amendment to the United States Constitution. As summarized by Judge Barbour, the Complaint asserted that the MCSD "has implemented a coordinated top-down program" under which Black persons are "methodically targeted for suspicionless searches and seizures" through (1) "the concentrating of vehicular roadblocks in and around predominantly Black neighborhoods, apartment complexes, and businesses," (2) "pedestrian checkpoints," (3) frequent entries to "the homes of Black residents without consent, warrant, or probable cause," and (4) pedestrian stops "conducted by plainclothes deputies who 'jump-out' of unmarked vehicles, and allegedly detain and search individuals without reasonable suspicion of wrongdoing or probable cause." (Opinion and Order, ECF No. 340, at 2-4.) In addition, the Manning Plaintiffs asserted individual claims for damages against Defendants and certain unknown MCSD deputies, sued as John Does, arising from a June 2016 incident in which, as alleged, MCSD deputies entered Ms. Manning's home without a warrant, coerced the Manning Plaintiffs to sign false witness statements, and used excessive force and physical violence against Mr. Manning. (*See id.* at 14-15.)

Defendants filed their Answer, which denied Plaintiffs' allegations, on June 29, 2017.[1] (ECF No. 20.) The Court held a preliminary conference on August 8, 2017 and subsequently entered a scheduling order that bifurcated discovery into class certification and merits phases. (ECF No. 30.) Class certification discovery took place between August 2017 and February 2018. Among other written discovery, Defendants produced 90,000 pages of documents, including incident reports and emails. Plaintiffs took 21 depositions of MCSD personnel, including of the Sheriff and the Chief Deputy, as well as depositions of members of the Madison County Board of Supervisors, former Madison County Sheriff Toby Trowbridge, and other third parties. Defendants also deposed each of the eight Plaintiffs.[2]

Plaintiffs moved for class certification on March 14, 2018. (ECF No. 231.) Plaintiffs sought to certify one overarching class (the "Targeting Class") as to Plaintiffs' Fourteenth Amendment claims and two subclasses (the "Roadblock Subclass" and the "Pedestrian Stop Subclass") as to both Fourth and Fourteenth Amendment claims. Plaintiffs cited documentary and testimonial evidence; an expert report presenting statistical analysis of vehicular checkpoint placement in Madison County[3]; a summary declaration presenting other data concerning MCSD arrest and citation rates by race; and declarations from potential members of the class and subclasses describing alleged incidents involving the MCSD. (ECF Nos. 231-1–2; 231-37–61.)

---

[1] Defendants also filed a motion to strike certain allegations concerning the Madison County Board of Supervisors, which was denied by Order dated March 16, 2018. (ECF No. 242.)

[2] The claims of Herbert Anthony Green and Marvin McField, who were initially named as plaintiffs, were dismissed without prejudice for lack of prosecution by Order dated March 16, 2018. (ECF No. 242.)

[3] "Roadblocks" are referred to herein and in the proposed Consent Decree as "vehicular checkpoints."

In opposing class certification, Defendants filed four expert reports, a motion to deny class certification based on the necessity doctrine, motions to strike certain evidence relied on by plaintiffs, including a *Daubert* motion, and a conditional motion for an evidentiary hearing. (ECF Nos. 237, 285, 269, 274, 270, 272.)  Plaintiffs, in turn, submitted four expert reports in response and one *Daubert* motion.  (ECF Nos. 304, 307.)  Defendants thereafter moved to strike certain of Plaintiffs' experts' responsive reports on procedural grounds.  (ECF Nos. 316, 318, 320.)  Defendants also filed motions for summary judgment concerning the claims for declaratory and injunctive relief brought by each Plaintiff, which Plaintiffs opposed.  (ECF Nos. 209, 211, 218, 220, 222, 228, 256, 260.)  Briefing on the parties' class certification and summary judgment motions was completed in August 2018.

On January 4, 2019, Judge Barbour denied class certification without prejudice, finding that "the phrases majority-Black areas and majority-Black neighborhoods are vague and ambiguous" in the definitions of the Roadblock Subclass and the Pedestrian Stop Subclass, and thus these classes, as defined, lacked ascertainability.  (ECF No. 340 at 13.)  Judge Barbour also ruled that the "Targeting Class cannot presently be certified" because—focusing specifically on the claims of the Manning Plaintiffs arising from the Apartment Incident—"[i]t has not been shown . . . that all of class representatives have been subjected to the alleged policy."  (*Id.* at 14.)  Judge Barbour granted Plaintiffs until February 4, 2019 "to file an Amended Complaint in this case setting forth the proposed classes they seek to certify, and correcting the pleading deficiencies identified in this Opinion and Order," and denied without prejudice or dismissed as moot all other pending motions.  (*Id.* at 17.)  The action was then reassigned from Judge Barbour to this Court by administrative order dated January 15, 2019.  (ECF No. 341.)

On February 4, 2019, Plaintiffs filed an amended complaint (ECF No. 342) and a renewed motion for class certification. (ECF No. 343.) Plaintiffs' renewed motion sought certification of two classes (the "Roadblock Class" and the "Pedestrian Stop Class"). The proposed Roadblock Class consists of "Black persons who have been or will be subject to the MCSD's policy of conducting vehicular roadblocks in Madison County at least in part on the basis of the racial composition of the surrounding location" and the proposed Pedestrian Stop Class consists of "Black persons who have been or will be subject to the MCSD's policy of conducting pedestrian stops on the basis of race." (ECF No. 344 at 2.) Plaintiffs also sought leave to file a Second Amended Complaint to name former MCSD Deputy Slade Moore as a defendant with respect to the Manning Plaintiffs' damages claims in place of the previously-named John Doe defendants (ECF. No. 345).

On February 12, 2019, before expiration of their time to respond to the Amended Complaint or Plaintiffs' motions, Defendants moved for a stay and sought a settlement conference. (ECF Nos. 347, 349.) The Court granted Defendants' motions, but provided that Defendants answer the Amended Complaint and respond to Plaintiffs' motion for leave to file the Second Amended Complaint by February 26, 2019. (Text Only Order, Feb. 26, 2019.) Defendants did not oppose Plaintiffs' motion for leave, and the Court subsequently granted the motion and lifted the stay for the limited purpose of allowing Plaintiffs to file and serve the Second Amended Complaint. (ECF Nos. 360, 362.) Plaintiffs filed the Second Amended Complaint on June 11, 2019 and effected service on Slade Moore on June 18, 2019. (ECF Nos. 363, 365.) The deadlines for Defendants and for Slade Moore to respond to the Second Amended Complaint remain stayed. (ECF No. 362.)

Over the last several months, the Parties have engaged in extensive, arms-length settlement discussions overseen and facilitated by Magistrate Judge Anderson, including in-person settlement conferences on May 20, 2019, June 10, 2019, and August 14, 2019, as well as a telephonic settlement conference on June 27, 2019.  The Parties themselves, along with their counsel, have participated in these negotiations.  The Parties, through counsel, have also engaged in extensive bilateral settlement negotiations, including telephonic meet-and-confers and the exchange of letters and drafts.  After months of negotiations aided by the Court, the Parties have agreed to a comprehensive resolution of this litigation that is embodied in the Consent Decree, the Settlement Agreement, and the Apartment Incident Agreement.[4]

## ARGUMENT

I. **LEGAL STANDARD**

Settlement via consent decree is encouraged by the courts.  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  Courts have recognized that "[b]ecause of the consensual nature of [consent] decree[s], voluntary compliance is rendered more likely," while "[a]t the same time, the parties … minimize costly litigation and adverse publicity and avoid the collateral consequences of adjudicated guilt."  *United States v. City of Jackson, Miss.*, 519 F.2d 1147, 1152 n.9 (5th Cir. 1975).  In determining whether to approve a proposed consent decree, a court should determine that the settlement is "fair, adequate and reasonable and is not the product of collusion between the parties."  *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (citing *Cotton*, 559 F.2d at 1330).  In making this determination, judges should "undertake an analysis

---

[4] Because the Parties have agreed to maintain the confidentiality of the Settlement Agreement and the Apartment Incident Agreement, the parties have not filed those agreements as exhibits to this Joint Motion.  However, the Parties are prepared to submit copies of those agreements to the Court for *in camera* review should the Court so request.

7

of the facts and the law relevant to the proposed compromise," *Cotton*, 559 F.2d at 1330, including the nature of the litigation and the purpose to be served by the consent decree. *United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir. Dec. 1981). There is a "strong presumption" in favor of finding a settlement to be fair, in particular where the Court has overseen settlement conferences between the parties. *Sandoz v. Cingular Wireless LLC,* 2018 WL 6577640, at *5, 6 (W.D. La. Dec. 3, 2018). Accordingly, the court may rely on the judgment of experienced counsel for the parties and, absent evidence of fraud or collusion, should be hesitant to substitute its own judgment for that of the parties. *Cotton*, 559 F.2d at 1330.

## II. THE CONSENT DECREE IS FAIR AND REASONABLE AND SHOULD BE ENTERED AS AN ORDER OF THE COURT

The Consent Decree should be approved because it is the product of an agreement that was carefully arrived at after months of intensive, arm's length litigation and negotiation between the Parties, all of whom were represented by competent and experienced counsel. These negotiations followed more than a year of extensive and contentious litigation, including substantial motion practice. Considerable discovery related to class certification was taken, including more than 35 depositions. Plaintiffs and Defendants have remained in an adversarial posture throughout this extensively-litigated case, which provides further assurance to the Court that the Consent Decree reached by the Parties is fair. *City of Miami*, 614 F.2d at 1332.

Counsel for Plaintiffs and Defendants have for many months engaged in a process of compromise in which "in exchange for the savings of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *U.S. v. Armour & Co.*, 402 U.S. 673, 681 (1971). The length and intensity of these negotiations—including in-person settlement conferences held before Magistrate Judge Anderson—indicates that the agreement contained in the Consent Decree was arrived at through good faith bargaining

by both sides, and reflects compromises made by the Parties to avoid the risks associated with further litigation. *R.C. by Ala. Disabilities Advocacy Program v. Nachman*, 969 F. Supp. 682, 690-91 (M.D. Ala. 1997), *aff'd sub nom. R.C. v. Nachman*, 145 F.3d 363 (11th Cir. 1998) (agreements that are the outcome of "ordinary" settlement negotiations are not collusive). Further, the Court's oversight of multiple settlement conferences underscores that the Consent Decree is the result of arms-length bargaining and good faith negotiations, and therefore fair, adequate and reasonable. *See Sandoz*, 2018 WL 6577640, at *6.

The terms of the Consent Decree are fair, reasonable, and adequate. The Consent Decree provides for the adoption and implementation by the MCSD of three policies—an Unbiased Policing Policy, a Checkpoint Policy, and a Pedestrian Stops and Enforcement Policy—and for training of MCSD personnel on those policies.[5] Each policy addresses issues of concern in Plaintiffs' Second Amended Complaint and renewed motion for class certification, and reflects the input of both Plaintiffs and Defendants. The Consent Decree also provides for the creation of a five-member Community Advisory Board that will be appointed by each of the members of the Madison County Board of Supervisors. Among other things, the Community Advisory Board will be empowered to review data provided by the MCSD regarding vehicular checkpoints and pedestrian stops, receive civilian complaints concerning the MCSD, make recommendations to the MCSD regarding its compliance with the Consent Decree, and file enforcement proceedings against Defendants in this Court under certain circumstances.

---

[5] The summary of certain provisions of the Consent Decree in this memorandum of law is provided by the Parties to the Court for informational purposes only. It does not modify the provisions of the Consent Decree, which are intended to bind the Parties in accordance with their terms and are controlling in the event of a dispute.

In addition, the Consent Decree also requires the MCSD to provide data regarding vehicular checkpoints and pedestrian stops to Plaintiffs on a quarterly basis.  The Consent Decree further provides for the development and implementation of a system of regular performance evaluations for MCSD personnel.  The Parties have agreed that the Consent Decree shall remain in effect for four years from the date of its approval by this Court, unless extended by this Court upon a showing that Defendants have not substantially complied with its terms.  Finally, rather than seeking to certify a settlement class, the Consent Decree provides that Plaintiffs (along with the Community Advisory Board, as discussed above) will have the right to enforce the terms of the Consent Decree, and creates a procedure for substitution of plaintiffs in appropriate circumstances.

The Consent Decree is reasonable in light of the significant additional resources, time, and money that both Plaintiffs and Defendants would be forced to spend in order to litigate this case further.  As with class discovery, merits discovery could be expensive for all Parties.  Motion practice related to class certification and/or summary judgment would also take up significant time and would impose further burdens and expense on the Parties and the Court.  If the case does not settle, a trial might not take place for a year or longer.  And potential appeals to the Fifth Circuit after a final judgment would result in further uncertainty or the passage of even more time.  Delays in resolving the case would harm Plaintiffs, because Plaintiffs would not obtain the injunctive relief they seek unless and until they prevail at trial or on appeal.  Entering the Consent Decree now, by contrast, provides virtually immediate relief.  Thus, it is fair, adequate and reasonable for the Parties to enter the Consent Decree at this point in the litigation.

The Consent Decree is also fair to third parties.  The terms of the Consent Decree provide for reforms to MCSD policies and practices that will inure to the benefit of the community

served by the MCSD. Moreover, no claims of unnamed members of the putative classes pleaded in Plaintiffs' Second Amended Complaint will be prejudiced by entry the Consent Decree. Because certification of a settlement class is not contemplated, claims of third parties will not be released by this Court's approval and entry of the Consent Decree.[6] Courts have approved consent decrees entered into without certification of a settlement class under similar circumstances. *See, e.g.*, *Collins v. City of Milwaukee*, No. 2:17-cv-234, Dkt. Nos. 133, 135 (E.D. Wis. July 23, 2018) (approving consent decree entered without certification of a settlement class in proposed policing class action).

## CONCLUSION

The Parties entered this Consent Decree with a common goal of protecting the constitutional rights of all members of the Madison County community and enhancing the MCSD's ability to provide non-discriminatory policing services. The Consent Decree is fair, adequate, and reasonable, and the Parties respectfully request that this Court enter it as an Order of the Court.

---

[6] For the same reasons, the monetary payments to Plaintiffs contemplated by the Settlement Agreement and the Apartment Incident Agreement do not prejudice the rights of any third parties or call into question the fairness, reasonableness, or adequacy of the Consent Decree. That monetary relief was also the result of good faith, arms-length negotiations between the Parties under the supervision of the Court. *See, e.g.*, *Collins v. City of Milwaukee,* No. 2:17-cv-234, Dkt. Nos. 133, 135 (E.D. Wis. July 23, 2018) (approving non-class settlement agreement which provided both for policy changes by municipal police department and for payment of attorneys' fees to named plaintiffs); *M.W. v. Achievement First Crown Heights, et al.*, No. 1:15-cv-6342, Dkt. No. 93 (E.D.N.Y. Dec. 20, 2017) (approving non-class settlement which provided for policy changes and confidential payments to named plaintiffs).

Dated: September 23, 2019

By: /s/ *Joshua Tom*  
    Joshua Tom

AMERICAN CIVIL LIBERTIES UNION
OF MISSISSIPPI FOUNDATION
Joshua Tom (MSB #105392)
233 East Capitol Street
Jackson, MS 39201
(601) 354-3408
JTom@aclu-ms.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Ezekiel Edwards (*pro hac vice*)
125 Broad Street
New York, NY 10004
(212) 549-2610
eedwards@aclu.org

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Kavitha S. Sivashanker (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Brooke Jarrett (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
irethy@stblaw.com
kavitha.sivashanker@stblaw.com
nchoudhri@stblaw.com
bonnie.jarrett@stblaw.com

*Attorneys for Plaintiffs*

By: /s/ *Michael B. Wallace*  
    Michael B. Wallace

WISE CARTER CHILD & CARAWAY, P.A.
Michael B. Wallace (MSB #6904)
Charles E. Ross (MSB #5683)
James E. Graves (MSB #102252)
Charles E. Cowan (MSB #104478)
Post Office Box 651
Jackson, Mississippi 39205-0651
Telephone: 601-968-5534
Facsimile: 601- 944-7738
mbw@wisecarter.com
cer@wisecarter.com
jeg@wisecarter.com
cec@wisecarter.com

CURRIE JOHNSON & MYERS, P.A.
Rebecca B. Cowan (MSB #7735)
1044 River Oaks Dr.
Jackson, MS 39232
P.O. Box 750
Jackson, Mississippi 39205-0750
Telephone: 601-969-1010
Facsimile: 601-969-5120
bcowan@curriejohnson.com

KATIE BRYANT SNELL, PLLC
Katie Bryant Snell (MSB #103607)
P.O. Box 3007
Madison, Mississippi 39130-3007
Telephone: 601-460-9800
katie@katiebryantsnell.com

PETTIS, BARFIELD & HESTER, P.A.
J. Lawson Hester (MSB #2394)
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
Telephone: (601) 987-5300
Facsimile: (601) 987-5353
lhester@pbhfirm.com

*Attorneys for Defendants*

5

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2019, I caused the foregoing **MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR ENTRY OF CONSENT DECREE** to be electronically filed with the Clerk of the Court using the CM/ECF system, which has generated and delivered electronic notice of filing to all counsel of record who have consented to electronic service.

*/s/ Joshua Tom*
Joshua Tom