# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

LATOYA BROWN et al.,                                                      PLAINTIFFS

V.                                    CIVIL ACTION NO. 3:17-CV-347-CWR-LRA

MADISON COUNTY, MISSISSIPPI et al.                            DEFENDANTS

## ORDER GRANTING MOTION FOR ENTRY OF CONSENT DECREE

This matter is before the Court on the Plaintiffs' and Defendants' Joint Motion For Entry of Consent Decree. After review of the facts, relevant law, the settlement agreement, the Consent Decree itself, and the presentations of counsel at the hearing on the Motion, the Court finds the Consent Decree to be fair, adequate and reasonable. Accordingly, and as discussed in the following, the Court grants the Joint Motion.

**I.    Background**

The Plaintiffs filed their original class action complaint for declaratory and injunctive relief on May 8, 2017. The complaint also made individual claims for monetary damages for Plaintiffs Khadafy Manning and Quinnetta Thomas Manning. Plaintiffs alleged that the Madison County Sheriff's Department (MCSD) methodically targeted Black individuals for unlawful searches and seizures, which were often accompanied by unjustified and excessive force. The complaint painted a picture of a Sheriff's Department and County flagrantly subjecting Black residents to intrusive searches for no reason, seizures by plainclothes deputies deployed in unmarked cars during "Jump Out" patrols, and unwarranted breaking into of their "homes, cars, and property" – all based on race. According to the complaint, the Black community of Madison County has been "under a permanent state of siege," fearful of even contacting law enforcement

officials. The Defendants denied the Plaintiffs' allegations, and the Court declined Plaintiffs' request to allow this case to proceed as a class action.

After significant factual discovery and months-long settlement negotiations overseen and facilitated by Magistrate Judge Anderson, the Parties have agreed to resolve this matter. The terms of this resolution are captured in three documents: the Consent Decree, the Settlement Agreement, and the Apartment Incident Agreement. The Parties have agreed separately to maintain the confidentiality of the Settlement Agreement and the Apartment Incident Agreement (the "Agreements"). The Defendants have moved for this Court to enter a protective order as to the Agreements, which the Court will address separately.

The Consent Decree captures commitments by the Parties that would purport to address the Plaintiffs' claims for declaratory and injunctive relief without certification of a settlement class, thus leaving third parties free to pursue their own claims should they believe their constitutional rights have been violated in the way in which this Consent Decree seeks to redress. Namely, MCSD agrees to adopt, implement, and train its officers on three policies: an Unbiased Policing Policy, a Checkpoint Policy, and a Pedestrian Stops and Enforcement Policy. Madison County and MCSD will also establish a five-member Community Advisory Board (CAB). The five members will be appointed by the Madison County Board of Supervisors, with each supervisor required to appoint one member from his or her district. The CAB will have the authority to: (1) review MCSD data regarding vehicular checkpoints and pedestrian stops; (2) receive civilian complaints concerning the MCSD; (3) make recommendations to the MCSD regarding its compliance with the Consent Decree; and (4) file enforcement proceedings against Defendants in this Court after following a multi-step process outlined in the Consent Decree. The

Parties have agreed that the Consent Decree will remain in effect for four years, unless this Court finds that the Defendants have not substantially complied with its terms.

## II. Legal Standard

"In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (citation omitted). The Court must analyze "the facts and law relevant to the proposed compromise." *Id.* (citation omitted). The Court's role is not to adjudicate the dispute in this analysis, however, since "[t]he very purpose of the compromise is to avoid the delay and expense of such a trial." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982) (citation omitted).

## III. Discussion

Before the Court is the Parties' request to approve the Consent Decree, which encapsulates the bulk of the Parties' settlement terms and addresses the Plaintiffs' claims for declaratory and injunctive relief. It is not the Court's role to "substitute its own judgment" for that of the Parties' counsel. *Cotton*, 559 F.2d at 1330 (citation omitted). The Court has been presented with no evidence of "fraud, collusion, or the like" influencing the Consent Decree. *Id.* Because of this, the Court grants the Joint Motion and enters the Consent Decree.

The matter merits some additional discussion, however, considering recent statements attributed to Madison County's Board of Supervisors President Trey Baxter, which the Parties brought to the Court's attention.[1] The Madison County Journal reports that "Baxter said he would make his appointment but that he did not see the council's role as vital."[2] The article

---

[1] *See* Tyler Cleveland, *Supervisors settle ACLU lawsuit over roadblocks*, MADISON COUNTY JOURNAL (Sept. 11, 2019, 12:00 PM), http://onlinemadison.com/MobileContent/Default/News/Article/Supervisors-settle-ACLU-lawsuit-over-roadblocks/-3/592/42789.
[2] *Id.*

quotes Baxter saying that he is "confident (Sheriff Randy Tucker) is capable of running his own department. But we're going to go along with the four-year agreement that is in place."[3]

Although the Board "speaks and acts only through its minutes," *Lefoldt v. Horne, L.L.P.*, No. 18-60581, 2019 WL 4231355, at *3 (5th Cir. Sept. 6, 2019) (citing *Wellness, Inc. v. Pearl River Cty. Hosp.*, 178 So. 3d 1287, 1290 (Miss. 2015)), as the President of the Board of Supervisors, Baxter's statements are deeply concerning. The comments attributed to him do not align with the Parties' own compromise, which shows that the CAB is central to the ongoing monitoring and enforcement of the MCSD's compliance with the Consent Decree. Perhaps more importantly, the CAB provides the Plaintiffs and other Madison County Residents who may be harmed by MCSD with a relatively independent third-party to hear their complaints and act on them. Given the significant time and effort of the Parties to reach this agreement and their assertions that it was reached through "arms-length bargaining and good faith negotiations," the Court fully expects all the Parties to follow the terms of the Consent Decree. Nevertheless, they have decided to empower the CAB to make sure MCSD operates in accordance with the Constitution.

Civilian oversight is not a silver bullet for addressing police misconduct, however. Its early attempts failed for a host of reasons, including lack of resources and "resistance from police unions and local politicians."[4] Now, over 150 civilian oversight bodies have been created

---

[3] *Id.*

[4] JOSEPH DE ANGELIS ET AL., CIVILIAN OVERSIGHT OF LAW ENFORCEMENT: ASSESSING THE EVIDENCE 6 (Sept. 2016), https://d3n8a8pro7vhmx.cloudfront.net/nacole/pages/161/attachments/original/1481727974/NACOLE_AccessingtheEvidence_Final.pdf?1481727974 (citation omitted).

across the United States.[5] They are difficult to generalize because they have different models and varied goals, primarily based on the needs and context of their local communities.[6]

Notwithstanding their unique nature, civilian oversight bodies require certain circumstances to be successful. This includes, among other things, adequate resources, independence, full cooperation of law enforcement, and support from political stakeholders.[7] Absent these factors, many oversight agencies have become dysfunctional, unable to meet the requirements of the agreements or policies that led to their establishment.[8] In many instances, such agencies were eventually abolished.[9]

Baxter's comments suggest that CAB may not have his support, which is again concerning given his role on the Board of Supervisors. According to the Consent Decree, the CAB is dependent on Madison County and MCSD for "providing necessary support and resources." The Madison County Board of Supervisors will also effectively decide whether the CAB will be truly independent based on the members they appoint. As with any agreement, the overall success of this compromise is dependent upon the genuine efforts and cooperation of the Board of Supervisors, MCSD, and all other actors who have a stake in this process.

It is the Court's hope that the Parties do not merely "go along" with the Consent Decree in the short-term interest of settling a lawsuit but commit with sincerity to its stated principle to "recognize the importance of the rights protected by the Fourth and Fourteenth Amendments to

---

[5] *See* Olugbenga Ajilore, *How Civilian Review Boards Can Further Police Accountability and Improve Community Relations*, SCHOLARS STRATEGY NETWORK (June 25, 2018), https://scholars.org/brief/how-civilian-review-boards-can-further-police-accountability-and-improve-community-relations.
[6] *See* ANGELIS ET AL., *supra* note 5 at 49–50; *see also* Stephen Clarke, *Arrested Oversight: A Comparative Analysis and Case Study of How Civilian Oversight of the Police Should Function and How it Fails*, 43 COLUM. J.L. & SOC. PROBS. 1, 11–20 (2009) (comparing four types of civilian-oversight bodies).
[7] *See* ANGELIS ET AL., *supra* note 5 at 36.
[8] *Id.* at 18–22.
[9] *Id.* at 6–7.

the United States Constitution." Otherwise, the life of this Consent Decree may be extended beyond four years.[10]

**IV. Conclusion**

The Joint Motion for Entry of Consent Decree is granted.

**SO ORDERED**, this the 11th day of October, 2019.

s/ Carlton W. Reeves<br>UNITED STATES DISTRICT JUDGE

---

[10] At the hearing, counsel for the Sheriff and the additional Defendants suggested strongly that the life of this decree will not have to be extended.