**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**LATOYA BROWN et al.,**                                                          **PLAINTIFFS**

**V.**                                                     **CIVIL ACTION NO. 3:17-CV-347-CWR-LRA**

**MADISON COUNTY, MISSISSIPPI et al.**                                      **DEFENDANTS**

<u>**ORDER**</u>

This matter is before the Court on the Defendants' unopposed Motion for Protective

Order. Defendants have not shown good cause for entry of the protective order. Accordingly, and

as discussed below, the Court denies the Defendants' Motion.

**I.      Background**

The Plaintiffs filed their original class action complaint on May 8, 2017, seeking

declaratory and injunctive relief. Plaintiffs also made individual claims for monetary damages

for Plaintiffs Khadafy Manning and Quinnetta Thomas Manning. Plaintiffs alleged that the

Madison County Sheriff's Department (MCSD) methodically targeted Black individuals for

unlawful searches and seizures, which were often accompanied by unjustified and excessive

force. The Defendants denied the Plaintiffs' allegations, and the Court denied Plaintiffs' request

to allow this case to proceed as a class action.

After significant factual discovery and months-long settlement negotiations overseen and

facilitated by Magistrate Judge Anderson, the Parties agreed to resolve this matter. The terms of

this resolution are captured in three documents: the Consent Decree, the Settlement Agreement,

and the Apartment Incident Agreement.

The Consent Decree captures commitments by the Parties that would purport to address

the Plaintiffs' original complaint and desired declaratory and injunctive relief. The Court

approved the Consent Decree at the October 3, 2019, hearing on the Parties' Joint Motion for Entry of Consent Decree and by subsequent written order. *See* Docket No. 374.

The Parties have agreed separately to maintain the confidentiality of the Settlement Agreement and the Apartment Incident Agreement (the "Agreements"). The Defendants now move to enter a protective order as to the Agreements. Accordingly, the Parties have not filed the Agreements with this Court but have provided them for *in camera* examination.

The Defendants state that the protective order as to the Agreements would be used "to prevent any of their contents" from being "released to anyone." The Plaintiffs do not oppose the Motion.

## II.     Legal Standard

A "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "'Good cause' exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order." *David v. Signal Int'l, L.L.C.*, Civil Action No. 2:08-CV-1220, 2011 WL 13205814, at *3 (E.D. La. Mar. 11, 2011) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). The party seeking the protective order bears the burden of showing its necessity, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quotation omitted)).

"In entering a confidentiality order protecting a public entity. . . the district court should consider the effect of the order on state freedom of information laws." *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 931 (5th Cir. 1996) (citing *Pansy*, 23 F.3d at 791). "Courts also

weigh relevant public interests in this analysis." *Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016). "[T]here should be a strong presumption against the confidentiality of any settlement entered into with a public entity or of any information otherwise disclosable under a public records law." *The Sedona Guidelines: Best Practices Addressing Protective Order, Confidentiality & Public Access in Civil Cases March 2007 Post-Public Comment Version*, 8 SEDONA CONF. J. 141, 177 (2007) [hereinafter *The Sedona Guidelines*] (citing *Pansy*, 23 F.3d at 792).[1]

### III.   Discussion

In evaluating this motion, one must understand that "[w]e live in an open and democratic society that depends upon an informed citizenry and public participation in government. Open public meetings laws and federal and state freedom of information laws facilitate such participation by providing citizens with the right to access to information concerning their government." *Id.* at 142.

Openness and government transparency remain important even in the context of settlement negotiations. While "[t]here is a strong public policy in favor of settlement," *id.* at 172, when agreements are made by or for public entities and officials, whether at the federal, state or local level – unlike agreements between private litigants – the public "possesses a significant interest in monitoring and oversight of public officials and entities, even in litigation," *id.* at 177. By definition, the actions of government officials and entities affect the public, whom

---

[1] The Sedona Conference is a nonpartisan, nonprofit "research and educational institute dedicated to the advanced study of law and policy in the areas of antitrust law, complex litigation and intellectual property rights." *See* THE SEDONA CONFERENCE, https://thesedonaconference.org (last visited Oct. 10, 2019). It includes working groups composed of judges, attorneys, law professors and experts in a variety of subject matters. *See The Sedona Conference Working Group Series*, THE SEDONA CONFERENCE, https://thesedonaconference.org/wgs (last visited Oct. 10, 2019); *see also Aguilar v. Immigration & Customs Enf't Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350, 355 (S.D.N.Y. 2008) (noting the work of the electronic discovery working group).

they represent. Therefore, "when a public entity enters into a settlement, no expectation of confidentiality should exist." *Id.* at 177.

As a general policy, for example, federal regulations bar the United States Department of Justice from entering settlement agreements or consent decrees that are subject to confidentiality provisions and "against seeking or concurring in the sealing of such documents." 28 C.F.R. § 50.23. Additionally, for claims brought under the Fair Labor Standards Act, there is a general prohibition against settlements absent additional scrutiny by a court or the Department of Labor. *See Bodle v. TXL Mortg. Corp.* 788 F.3d 159, 164 (5th Cir. 2015) (collecting cases). Moreover, multiple states now have laws limiting the use of settlements that conceal potential dangers to the public. *See* Elizabeth E. Spainhour, *Unsealing Settlements: Recent Efforts to Expose Settlement Agreements That Conceal Public Hazards*, 82 N.C. L. REV. 2155, 2157 (2004) (discussing Florida's Sunshine in Litigation Act which voids any settlement agreements "concealing potential public health and safety hazards"); *see also id.* at 2157 n. 13 (listing laws passed by other states to address the confidentiality of settlements made by public entities and/or concerning public hazards).

The "public possesses a fundamental interest in supervising the use and expenditure of public funds." Laurie Kratky Doré, *Settlement, Secrecy, and Judicial Discretion: South Carolina's New Rules Governing the Sealing of Settlements*, 55 S. C. L. REV. 791, 809–10 (2004). Stated simply, "public litigants stand in a different light than private parties with respect to access and courts should favor revelation and openness with respect to government and other institutional activity." *Id.* at 810 (citation and quotations omitted). While there is strong policy favoring settlements, "there is a strong presumption against the confidentiality of any settlement entered into with a public entity or of any information otherwise disclosable under a public

records law." *The Sedona Guidelines*, at 177 (citing *Pansy*, 23 F.3d at 792). "Only exceptional circumstances should warrant the confidentiality of these types of settlements." *Id.*

"Public policy provides a basis for preserving the confidentiality of settlement agreements when practical." *Troupe v. Barbour*, No. 3:10-CV-153-HTW-MTP, 2015 WL 5097209, at *4 (S.D. Miss. Aug. 28, 2015). Accordingly, protection from disclosure may be in order during settlement negotiations, even for the protection of public entities. In *Troupe*, for example, Judge Wingate found that while settlement discussions were ongoing, the public's interest in accessing documents from a public entity were outweighed by the public interest in promoting settlement. *See id.* at *5 ("At this stage of litigation, while the parties are immersed in settlement negotiations, maintaining the Protective Order is 'likely in the long run to best serve the interest of the public and the parties alike.'") (citation omitted).

Here, the Defendants' request comes after the close of settlement negotiations. However, the Defendants suggest that the promise of the ongoing confidentiality of the Agreements played a significant role in the Parties reaching settlement. In support, they also cite to Local Rule 83.7(j) which states that "all communications made in mediation or settlement conference are confidential. Mediation- and settlement conference-related communications are not subject to disclosure . . ." It follows that the grant of a protective order may encourage future parties to enter settlement negotiations and agreements, knowing that their final terms and conditions would be protected from third parties not only during their settlement conferences but at the close of negotiations through Court order.

Under these circumstances, however, other public interest factors outweigh the strong interest in encouraging settlement negotiations. Under the Mississippi Public Records Act, public

entities have a duty to provide the public access to public records. *See* Miss. Code. Ann. § 25-61-1. However, the Act includes a provision exempting certain records privileged by law:

> The provisions of this chapter shall not be construed to conflict with, amend, repeal or supersede any constitutional law, state or federal statutory law, or **decision of a court of this state or the United States** which at the time this chapter is effective or thereafter specifically declares a public record to be confidential or privileged, or provides that a public record shall be exempt from the provisions of this chapter.

Miss. Code. Ann. § 25-61-11 (emphasis added). While the Parties have not yet submitted a proposed protective order to the Court, the Defendants' Motion states specifically the Defendants' concern that the Settlement Agreement and the Apartment Incident Agreements may be made available through public records requests. The Motion also states that the purpose of the protective order will be to "prevent any of their contents to be released to anyone." "[W]here it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law." *Ford v. City of Huntsville*, 242 F.3d 235, 242 (5th Cir. 2001) (quoting *Pansy*, 23 F.3d at 791). The order the Defendants seek would almost assuredly do just that.

The Defendants have raised the important interest of supporting the confidentiality of settlement negotiations and the potential injury of losing some benefit of their bargain should the terms of the Agreements be disclosed. However, they have failed to persuade that this interest outweighs the presumption against granting confidentiality orders that protect public entities when the order will likely conflict with freedom of information laws, especially since their Motion comes after the close of settlement negotiations. Moreover, the Parties have already agreed to maintain the confidentiality of the Agreements. Unlike a situation where one party is

25

opposed to maintaining confidentiality, the Defendants can prevent disclosure – by the Plaintiffs at least – through a separate action.

## IV.     Conclusion

The Defendants' Motion for Protective Order is denied.

**SO ORDERED**, this the 21st day of October, 2019.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE
